## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON, ALICIA PEARLMAN, and PATRICK YANG, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PELOTON INTERACTIVE, INC., | |
| Defendant. | |

Plaintiffs Eric Fishon, Alicia Pearlman, and Patrick Yang (collectively, "Plaintiffs"),

individually and on behalf of all others similarly situated (collectively, the "Class," as more fully

defined below), bring this class action complaint against Defendant Peloton Interactive, Inc.

("Peloton" or "Defendant").  Plaintiffs make the following allegations upon personal knowledge

as to their own acts, upon information and belief, and their attorneys' investigation as to all other

matters, alleging as follows:

## I.    NATURE OF THE ACTION

1.    This action arises out of Peloton's misrepresentations and material omissions to

Plaintiffs and the other Class members regarding the "ever-growing" size of its on-demand

fitness class library and its recent impermissible and self-serving deletion of approximately 57%

of that library.

2.      Peloton is an exercise equipment and media company that was founded in 2012. Peloton claims that it "is reinventing fitness with live & on-demand boutique studio classes you can take anytime with the Peloton Bike, Peloton Tread & Peloton digital."[1]

3.      Peloton's main products are its luxury stationary bicycle ("Peloton Bike") and luxury treadmill ("Peloton Tread") (collectively, "hardware") that, through their built-in interactive touchscreens, allow users to watch live and pre-recorded (or "on-demand") fitness classes through a monthly subscription service, aiming to provide the experience of a live fitness class from the comfort of users' homes.  In addition, Peloton sells a subscription-only app known as Peloton Digital, which allows users without the Peloton hardware to access the live streaming and on-demand fitness library.

4.      Peloton's business initially started with its Peloton Bike, which offers live streaming and on-demand "spinning" classes from the comfort of consumers' homes. "Spinning" classes are popular indoor cycling instruction classes, initially popularized in the mid-1990s, that consist of professional coaches providing real-time instruction, guidance, and encouragement to riders, over a soundtrack of popular and other songs.  Peloton has recently expanded this concept of interactive instructional fitness classes, over soundtracks of popular music, to Peloton Tread and other weightlifting, strength training, outdoor running, yoga, meditation, stretching, and cardio-fitness classes.

5.      While other fitness companies market and sell similar fitness hardware, in-studio workout classes, and instructional home workout media, Peloton differentiates itself by marketing access to an "ever-growing" digital library of fitness classes led by professional

---

[1] *See* https://twitter.com/onepeloton (last accessed Dec. 6, 2019).

instructors, available on-demand 24 hours per day, 7 days per week, from the comfort of one's home for a flat monthly subscription fee.

6.    Peloton's "ever-growing" on-demand library is central to its marketing because it needs to ensure that customers spending thousands of dollars on the Peloton hardware and accompanying workout classes will not run out of new classes over time and will also be able to take and retake older classes.  The size of the on-demand digital library has always been, and continues to be, central to Peloton's marketing[2] because "the hardware is only as good as the app and subscription that comes with it."[3]

7.    The importance of Peloton's "ever-growing" on-demand library to its business model is demonstrated by the company's pre-IPO filing, classifying Peloton as a "technology," "media," and "software" company.[4]  John Foley, its CEO and co-founder, has described Peloton as a "media company akin to Netflix" with "*10,000 classes on-demand*" (emphasis added).[5]  The company also recently invested $45 million to build the "best digital television streaming studio in the world."[6]

8.    Peloton markets and sells its subscription-based, on-demand fitness library for a monthly price of $39 to purchasers of the Peloton Bike and Peloton Tread ("Peloton Membership"), which, in addition to the live and on-demand classes, provides, among other features, advanced metrics and a live interactive leaderboard that allows users to compete against

---

[2] *See* https:///onepeloton.com/bike/classes (last accessed Dec. 6, 2019).

[3] *See* https://www.forbes.com/sites/bizcarson/2019/09/26/peloton-ceo-john-foley-faces-the-skeptics-again-this-time-buyers-in-its-8-billion-ipo/#3b8f0f6f4349 (last accessed Dec. 6, 2019).

[4] *See* https://fortune.com/2019/09/25/peloton-ipo-filing-media-company/

[5] *See* https://www.bizjournals.com/newyork/news/2018/08/03/peloton-ceo-were-becoming-a-media-company.html (last accessed Dec. 6, 2019).

[6] *Id.*

each other.  Subscribers to the Peloton app ("Peloton Digital") pay a monthly price of $19.49 for access to Peloton's live streaming and on-demand library (together, the "Subscription Service").[7] The Subscription Service's content is coextensive across all platforms and includes the same live and on-demand bike, treadmill, free weight, yoga, and other fitness classes.

9.      Peloton's website touted its "thousands of boutique classes," and "ever-growing library of live and on-demand studio classes."[8]  Its website likewise represented that its Subscription Service grants "unlimited access to a growing library of live streaming and on-demand classes, scenic rides, real-time performance tracking, and unlimited accounts for family and friends.  No classes offered by Peloton are off limits."[9]

10.     Music has been central to the Peloton class experience from the beginning. Every on-demand and studio class includes a themed playlist curated by the instructor to match the tempo and intensity of the class.  Peloton recognizes that "[m]usic is an important element of the overall content that [it] make[s] available to [its] Members,"[10] and, in May 2017, Peloton introduced a new feature allowing members to find on-demand classes based on the type of music featured therein.[11]

---

[7] *See* https://www.onepeloton.com/membership

[8] https://www.onepeloton.com/digital (as of Apr. 25, 2019); *see also* https://www.onepeloton.com/bike/classes ("Thousands of On-Demand Rides. Take a class anytime, with our daily-updated, extensive on-demand library"); *id.* ("Thousands of rides on-demand. Rider anytime with thousands of classes to choose from on-demand.").

[9] *See* https://support.onepeloton.com/hc/en-us/articles/201039338-Rides-included-with-the-Peloton-subscription.

[10] SEC Form S-1 Registration Statement at 18, available at https://www.sec.gov/Archives/edgar/data/1639825/000119312519230923/d738839ds1.htm

[11] *See Find Your Favorite Genres with Our Brand-New Music Filtering Feature*, Cadence (May 26, 2017), https://cadence.pelotoncycle.com/find-favorite-genres-brand-new-music-filtering-feature/1907/.

11.     Peloton is a sophisticated software company that provides content protected by various intellectual property laws.  Peloton fully understands what the copyright laws require, having entered into sync licenses with certain other copyright holders, while at the same time using other musical works for free and without permission.[12]  Peloton knew that it was, in part, building its on-demand library with copyrighted material for which it did not have the proper licenses.  Peloton thus knew or should have known that because it lacked the appropriate licenses for the music accompanying the classes in its on-demand digital library, its library cannot legitimately be "ever-growing" and was actually knowingly built, in material part, on an illegal foundation.

12.     In April 2018, Peloton received a cease-and-desist letter regarding its alleged copyright infringement of many songs appearing in classes in its on-demand class library.[13]  Notwithstanding being placed on notice of its alleged copyright infringement, Peloton continued to promise an "ever-growing" library to consumers and to heavily market that fact to its customers and prospective customers as a key Peloton selling point.

13.     In March 2019, several members of the National Music Publishers Association ("NMPA") collectively filed a lawsuit against Peloton seeking more than $150 million in damages, alleging that Peloton has been using their musical works for years in its workout videos without proper licensing, resulting in lost income for songwriters.  The lawsuit further alleges that "Peloton's infringement was and continues to be knowing and reckless" and that "Peloton fully understood what the copyright law required, having entered into sync licenses with certain

---

[12] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 90, ¶ 1 (S.D.N.Y. Sept. 27, 2019).

[13] Peloton's classes consist of coaches providing real-time instruction, guidance, and encouragement to riders, over a soundtrack of popular and other songs.

other copyright holders, while trampling the rights of Plaintiffs by using their musical works for free and without permission."[14]

14.     Although Peloton denies that it is violating copyright laws and asserts counterclaims against the NMPA for antitrust violations and tortious interference with prospective business relations, on March 25, 2019, in the face of the NMPA's copyright infringement lawsuit, Peloton—for its own economic advantage and to the financial detriment of its customers—abruptly removed every class from its on-demand library that contained one or more of the allegedly copyright infringing songs.  In total, this resulted in the removal of more than half of the classes from its on-demand library.[15]

15.     Prior to March 25, 2019, Peloton's Subscription Service had 10,017 on-demand classes available to its users.  Following Peloton's self-serving decimation of its on-demand library, less than half of the classes remained available to users.[16]  Peloton's abrupt removal of the infringing soundtracks led to the removal of an estimated 5,739 classes, approximately 57% of its on-demand digital library, thereby greatly reducing the on-demand options upon which Peloton bases so much of its marketing and uses as a differentiating factor to garner more customers.[17]

---

[14] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 76, ¶ 1 (S.D.N.Y. Sept. 27, 2019).

[15] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 31, Counterclaims ¶ 59 (S.D.N.Y. Apr. 30, 2019); *see also id.*, Counterclaims ¶¶ 10, 42, 46, 52, 57.

[16] *See* https://imgur.com/XxdUOJn; *see also*
https://docs.google.com/spreadsheets/d/1LAE9kDqxkj4CkZ7TzS7ce6g5cxkMUOMdDssxKWpS0ak/edit?usp=sharing.

[17] *See* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider (Mar. 27, 2019, 10:30 a.m.), https://www.businessinsider.com/pelotonremoves-classes-member-outcry-2019-3

16.     The copyright infringement lawsuit and subsequent purge of Peloton's on-demand library has also significantly decreased the quality and quantity of popular music available on Peloton's workout class playlists, which has materially diminished users' experience with the hardware and Subscription Service.[18]  The infringing works include songs from popular artists such as Beyoncé, Michael Jackson, Madonna, Kanye West, Jay Z, Luke Bryan, and Justin Timberlake, to name a few.[19]  In addition to losing more than 50% of their on-demand classes, users have lamented that the workouts in the new classes (those without the removed songs) don't "flow like they used to" and have struggled to "find a playlist with 50 percent decent songs" since Peloton's removal of the infringing works.[20]

17.     Peloton's CEO falsely promised subscribers to its Subscription Service that the removal of "classes" would "not affect your experience with (or the cost of) [Peloton's] service, or access to the kind of music you're used to hearing behind [Peloton's] instructors in the thousands of classes in [Peloton's] library."[21]  That representation, however, is demonstrably false and Peloton never disclosed to its subscribers, including Plaintiffs and the other Class members, that it would be removing over half of the classes from its on-demand library.

---

[18] *See* Natt Garun, *Peloton owners are pissed about bad music after copyright lawsuit*, The Verge (April 24, 2019, 1:47 p.m.), https://www.theverge.com/2019/4/24/18514036/peloton-music-copyright-fitness-studios-gym-on-demand-media-strategy; *see also* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider US (March 27, 2019), https://www.businessinsider.sg/peloton-removes-classes-member-outcry-2019-3/.

[19] *See* Exhibit A: Non-Exhaustive List of Works Infringed by Peloton, by Publisher (Ex. 3).

[20] *See* Natt Garun, *Peloton owners are pissed about bad music after copyright lawsuit*, The Verge (April 24, 2019, 1:47 p.m.), https://www.theverge.com/2019/4/24/18514036/peloton-music-copyright-fitness-studios-gym-on-demand-media-strategy.

[21] *See* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider (Mar. 27, 2019, 10:30 a.m.), https://www.businessinsider.com/pelotonremoves-classes-member-outcry-2019-3

18.     Recently, the NMPA amended its complaint against Peloton alleging that it "found another 1,324 songs that have been streamed by Peloton instructors during classes without approval," which will likely result in Peloton's removal of additional classes from its on-demand library.[22]  The NMPA is now seeking over $300 million in damages for Peloton's knowing, widespread copyright infringement.[23]

19.     Despite being put on actual notice as early as April 9, 2018 that it was using infringing songs to build its digital library, Peloton's website continues to market "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors."[24] It also notifies consumers during the purchasing process that its "Bike packages" require a monthly Peloton Membership,[25] which includes "unlimited access to a growing library of live streaming and on-demand Peloton classes."[26]

20.     As part of Plaintiffs' and the other Class members' Peloton subscriptions, they expected and were entitled to use a substantial, on-demand class library that would continue to grow, as Peloton repeatedly represented.  Yet, when Peloton accepted (and continues to accept) Plaintiffs' and the other Class members' subscription payments, Peloton knew or should have known that Plaintiffs and the other Class members would not be able to use the full on-demand class library because the number of on-demand classes was materially decreasing due to Peloton's wrongful conduct.

---

[22] *See* https://observer.com/2019/09/peloton-music-licensing-lawsuit-ipo/

[23] If Peloton removes additional classes from its on-demand library due to the expanded scope of the infringement allegations, the class alleged herein will increase commensurately.

[24] *See* https://www.onepeloton.ca/app (last accessed Dec. 6, 2019).

[25] *See* https://www.onepeloton.com/shop/bike (last accessed Dec. 6, 2019).

[26] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Dec. 6, 2019).

21.     Nonetheless, Peloton misrepresented and/or omitted that information from Plaintiffs and the other Class members, continued to represent to existing and potential subscribers that its on-demand digital library would be "ever-growing," and continued to charge full price for its Subscription Service, despite knowing that its subscribers would necessarily not be receiving everything that Peloton represented they would receive.

22.     In a November 19, 2018 press release—months after Peloton received the cease and desist letter from the NMPA—Peloton represented that "Peloton produces nearly 24 hours of live content per day from its Peloton Bike and Peloton Tread Studios in NYC, ***and has more than 10,000 live and on-demand instructor-led indoor cycling, running, bootcamp, yoga and stretching classes for its Peloton Bike, Peloton Tread and Peloton Digital platforms.***  To date, Peloton has nearly one million Members, comprising Peloton Bike and Peloton Tread owners, iOS app users and in-studio riders, and expects to add millions more in the coming years." (emphasis added).[27]

23.     By misrepresenting that its on-demand digital library would be "ever-growing" and failing to disclose the imminent removal of over half of its on-demand library, Peloton defrauded Plaintiffs and the other Class members, deprived them of the benefit of their bargain with Peloton, and/or unjustly enriched themselves at Plaintiffs' and the other Class members' expense.  Plaintiffs, individually and on behalf of the other Class members they seek to represent, seek monetary damages, statutory penalties, and injunctive relief, asserting claims for Peloton's violation of New York's consumer protection and false advertising statutes, N.Y. Gen. Bus. Law §§ 349 and 350, breach of contract, and unjust enrichment.

---

[27] *See* https://www.prnewswire.com/news-releases/peloton-to-expand-nyc-footprint-with-new-corporate-headquarters-at-hudson-commons-in-2020-300752307.html (last accessed Dec. 5, 2019).

## II.   PARTIES

**A.   Plaintiffs**

24.     Eric Fishon is a citizen of New York, residing in Suffolk County, New York. Plaintiff Fishon, relying on Peloton's uniform representations about its "ever-growing" on-demand library of fitness classes, purchased a Peloton Bike and the Peloton Membership in January 2018, and a Peloton Tread in November 2018, and has paid all required hardware, software, and subscription fees relating thereto.

25.     Alicia Pearlman is a citizen of Michigan, residing in Oakland County, Michigan. Plaintiff Pearlman, relying on Peloton's uniform representations about its "ever-growing" on-demand library of fitness classes, purchased Peloton's hardware and the Peloton Membership in November 2018, and has paid all required hardware, software, and subscription fees relating thereto.

26.     Patrick Yang is a citizen of California, residing in Los Angeles County, California.  Plaintiff Yang, relying on Peloton's uniform representations about its "ever-growing" on-demand library of fitness classes, purchased Peloton's hardware and the Peloton Membership in November 2018, and has paid all required hardware, software, and subscription fees relating thereto.

27.     Prior to purchasing the Peloton hardware and commencing payment for the Peloton Membership subscription, neither Peloton nor its agents or representatives informed Plaintiffs that Peloton had been accused of violating any laws or that approximately 57% of its Subscription Service's on-demand digital library would be removed.

28.     Peloton's representations and material omissions regarding its on-demand library caused Plaintiffs to pay increased costs for the Peloton hardware and corresponding Peloton Membership, which was worth less than represented because Peloton's representations and/or

omissions regarding its on-demand digital library were deceptive and misleading and constituted false advertising.  Peloton's representations and material omissions were part of the basis of the bargain, in that Plaintiffs attributed value to Peloton's promises regarding the nature and characteristics of its on-demand digital library and would not have purchased the hardware and corresponding Peloton Membership, or would not have purchased it on the same terms, if they knew the truth that Peloton's on-demand digital library would shrink by 57%.

**B.    Defendant**

29.    Peloton is a Delaware corporation, with its corporate headquarters and principal place of business located in New York City, New York.  Peloton is subject to the jurisdiction of this Court and may be served with process at its principal executive office located at 125 West 25th Street, 11th Floor, New York, New York.

30.    Peloton markets and sells its apparel, hardware accessories, hardware, and Subscription Service throughout the United States including in this District.  Peloton is registered with the New York State, Department of State to conduct business in New York.

31.    Peloton bills itself as "the largest interactive fitness platform in the world," claiming, as of September 30, 2019, to have more than 1.6 million members, and 2019 revenues of $915 million.  Peloton is publicly traded on NASDAQ ("PTON") and as of the date of this Complaint, had a market cap of $8.26 billion.

### III.    JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action, there is minimal diversity, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

33.    The Court has personal jurisdiction over Peloton because it resides and is subject to general jurisdiction in this District.  The Court also has personal jurisdiction over Peloton,

because it markets, distributes, and sells its apparel, hardware, accessories, and Subscription

Service throughout the United States, including in this District, and the conduct complained of

occurred in or was targeted at this District.  Additionally, Peloton's Terms of Service provides

that all disputes not required to be arbitrated be adjudicated in New York, New York.[28]

34.     Venue is proper in this District, because Defendant resides in this District and a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this

District. 28 U.S.C. § 1391(b)(1)-(2).

## IV.     PELOTON'S ARBITRATION CLAUSE

35.     Peloton categorically denies that it used infringing songs in its on-demand classes

and that it continues to violate copyright laws.[29]  Notwithstanding its contention that that it has

done nothing wrong, Peloton nonetheless chose to unilaterally gut its on-demand library for its

own economic advantage and financial benefit to the  material detriment of Plaintiffs and the

other Class members.

36.     Peloton felt empowered to cheat Plaintiffs and the other Class members by gutting

its on-demand library for its own commercial protection and advantage because its Terms of

Service contains a highly restrictive arbitration clause that provides that "any dispute, claim or

controversy arising out of or relating to these Terms or the breach, termination, enforcement,

interpretation or validity thereof or the use of the Services or Content (collectively, 'Disputes')

will be resolved **solely by binding arbitration**. . . ." (emphasis added).[30]

---

[28] *See* Peloton Terms of Service at 21-22 (Ex. 1).

[29] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 87, ¶ 1 (S.D.N.Y. Oct. 11, 2019).

[30] *See* Ex. 1 at 18.

37.     Due to the empowerment from affirmatively stripping Plaintiffs and the other Class members of their Seventh Amendment right to a jury trial and forcing them into secret, individual arbitrations, Peloton believed that it could advantage itself at consumers' expense without material legal consequences or exposure.  Pelton believed that very few, if any, of its customers would pursue arbitration because it knows that claimants are "highly unlikely to slog through a protracted arbitration process over a relatively low amount of money" and the "total number of consumer claims resolved through arbitration across the entire economy in the third quarter of 2019 was 1,483—a new high but also a relatively small number in a nation of over 330 million."[31]

38.     Peloton did not anticipate, however, that, in the face of its misconduct, more than 2,700 customers would file arbitration demands arising out of its self-serving purge of its on-demand library.

39.     Under the terms of Peloton's arbitration clause, it was obligated to pay "all filing, administration and arbitrator fees and expenses" associated with its customers' demands for arbitration.[32]

40.     Peloton, however, faced with far more arbitration demands than it expected when it instituted its anti-consumer arbitration clause, *refused to abide by the terms of its own arbitration clause*, ignoring the American Arbitration Association's ("AAA") requirement—and Peloton's contractually-mandated obligation to pay all filing costs—to pay filing fees for demands seeking less than $10,000.

---

[31] *See* David Dayen, *Tech Companies Big Reveal: Hardly Anyone Files Arbitration Claims*, The American Prospect (Nov. 26, 2019), https://prospect.org/power/tech-companies-hardly-anyone-files-arbitration-claims/

[32] *See* Ex. 1 at 19-20.

41.     As a result, on November 14, 2019, AAA wrote a letter to Peloton, notifying it that AAA "decline[d] to proceed with administration of the parties' disputes" and that "either party may choose to submit its dispute to the appropriate court for resolution."[33]  Additionally, AAA notified Peloton that "AAA will decline to accept future consumer matters submitted against or by [Peloton]" and requested that Peloton "remove AAA from its consumer arbitration agreements so that there is no confusion to Peloton's consumer customers."[34]

42.     As of the date of the filing of this Complaint, Peloton has refused to comply with AAA's request to remove AAA from its arbitration agreements and it continues to represent to its customers that they are subject to binding arbitration with AAA in order to deter customers from filing lawsuits.[35]

43.     The arbitration clause, and all provisions contained therein, is an inextricable part of Peloton's Terms of Service with Plaintiffs and the other Class members.  Accordingly, as a result of Peloton's failure to comply with the terms of its arbitration clause and AAA's Consumer Arbitration Rules, Peloton's arbitration clause, including its class action waiver provision and all other provisions, is invalid as to all its customers—including Plaintiffs and the other Class members.[36]

---

[33] *See* November 14, 2019 AAA Letter to Peloton (Ex. 2).

[34] *Id.*

[35] *See* https://www.onepeloton.com/terms-of-service?utm_campaign=RET_US_19_YWS_BIKE_MEMBERS_1201&utm_medium=email&utm_source=Eloqua&elqTrackId=a1efde8fcc3f477bb3d231c8ff281911&elq=dd8570e241714d9eb186f68f1559700b&elqaid=2202&elqat=1&elqCampaignId=1245&elqcst=272&elqcsid=33 (last accessed Dec. 6, 2019).

[36] *See* Ex. 2.

## V.    FACTUAL ALLEGATIONS

**A.    Peloton's "Ever-Growing" On-Demand Library Claim Is Essential To Its Business Model.**

44.    Peloton is an exercise equipment and media company that was founded in 2012. John Foley, its co-founder and CEO, describes Peloton as a "fitness platform" where "fitness meets technology, meets media."[37]  Peloton claims that it "is reinventing fitness with live & on-demand boutique studio classes you can take anytime with the Peloton Bike, Peloton Tread & Peloton digital."[38]

45.    As of August 2019, Peloton claimed to have 1.4 million members.[39]  The company was recently valued at $4 billion after it closed a $550 million financing round in August 2018.[40]  In late August 2019, Peloton filed to go public and in its Initial Public Offering ("IPO") it roughly doubled its private market valuation, being valued at about $8 billion.[41] Peloton's current market cap is approximately $8.26 billion.

46.    Peloton's business initially started with its Peloton Bike, which offers live streaming and on-demand "spinning" classes from the comfort of consumers' homes. "Spinning" classes are popular indoor cycling instruction classes, initially popularized in the

---

[37] *See* http://media.licdn.com/embeds/media.html?src=https%3A%2F%2Fwww.youtube.com%2Fembed%2FF WXadxuOuSQ%3Ffeature%3Doembed&amp;url=https%3A%2F%2Fwww.youtube.com%2Fwatch%3Fv %3DFWXadxuOuSQ&amp;type=text%2Fhtml&amp;schema=youtube (last accessed Dec. 6, 2019).

[38] *See* https://twitter.com/onepeloton (last accessed Dec. 6, 2019).

[39] *See* https://www.pymnts.com/subscriptions/2019/pelotons-ipo-to-test-subscription-models-fitness/ (last accessed Dec. 6, 2019).

[40] *See* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider (Mar. 27, 2019, 10:30 a.m.), https://www.businessinsider.com/pelotonremoves-classes-member-outcry-2019-3

[41] *See* Jeremy C. Owens, *Peloton IPO: 5 things to know about the interactive exercise-machine company*, Market Watch (Sept. 28, 2019, 11:11 a.m.), https://www.marketwatch.com/story/peloton-ipo-five-things-to-know-about-the-interactive-exercise-machine-company-2019-08-28

mid-1990's, that consist of professional coaches providing real-time instruction, guidance, and encouragement to riders, over a soundtrack of popular and other songs.  Peloton has recently expanded this concept of interactive instructional fitness classes, over soundtracks of popular music, to Peloton Tread and other weightlifting, strength training, outdoor running, yoga, meditation, stretching, and cardio-fitness classes.

47.     In 2014, Peloton released its eponymous stationary exercise bike at a price of $2,245.  The bike includes a 22-inch interactive touchscreen, which allows riders to watch live or pre-recorded classes, aiming to provide the experience of a spin class from the comfort of the users' homes.

48.     In January 2018, Peloton announced the release of its treadmill known as "Tread" for $4,295.  Similar to its stationary bike, Tread has a 32-inch interactive touchscreen, which allows runners to watch live or pre-recorded classes led by professional trainers.

49.     For consumers who purchase Peloton's hardware, Peloton offers its Peloton Membership, which in addition to its live and on-demand fitness classes, includes Connected Fitness options such as instructor-curated training programs, live workout metrics, a detailed workout performance dashboard, and live and on-demand class interactive leaderboards.  Peloton Membership subscribers pay $39 per month for this service.  Peloton refers to customers that purchase the Peloton hardware and corresponding Peloton Membership as "Connected Fitness Subscribers."

50.     Recognizing the limited opportunity for growth due to a crowded market space and the high price point of its hardware, in July 2018 Peloton released Peloton Digital, which provides subscribers access to the same live and on-demand fitness classes without having to

purchase the Peloton hardware.  Peloton Digital members pay $19.49 per month for this service.[42]

51.     Peloton Digital allows Peloton to market its Subscription Service to consumers who already have a (non-Peloton) treadmill or stationary bike as well as those who prefer to use Peloton's outdoor, free weight, yoga, and other fitness classes.  The  content provided by the Peloton Membership and Peloton Digital subscriptions are coextensive and include the same live and on-demand fitness classes.[43]  Since the Peloton Digital app does not provide the Connected Fitness options and integrated experience with the Peloton hardware, the appeal of the Peloton Digital app is its "ever-growing" on-demand library of fitness classes.

52.     Demonstrating the importance of its "ever-growing" library of on-demand fitness classes to its business model, the company's pre-IPO filing classifies Peloton as a "media" company and John Foley, Peloton's CEO and co-founder, has described the company as a "media company akin to Netflix" with "10,000 classes on-demand" and the "best digital television streaming studio in the world."[44]

53.     Peloton differentiates itself and its more expensive fitness hardware from other fitness companies by offering unlimited access to its "ever-growing" on-demand library of professional fitness classes available at the users' convenience.

54.     In its pre-IPO filings Peloton claims to have "disrupted the fitness industry by developing a first-of-its-kind subscription platform that seamlessly combines the best equipment,

---

[42] *See* https://www.bizjournals.com/newyork/news/2018/08/03/peloton-ceo-were-becoming-a-media-company.html (last accessed Dec. 6, 2019).

[43] *Id.*

[44] *See* https://www.bizjournals.com/newyork/news/2018/08/03/peloton-ceo-were-becoming-a-media-company.html

proprietary networked software, and world class streaming digital fitness and wellness content."[45]

55.     Peloton claims that 92% of its hardware ever sold still has an active Peloton Membership subscription attached as of June 30, 2019.[46]  Thus, it is the subscription model that Peloton hopes will keep the company growing and allow its business model to scale.[47]  In order to maintain its subscriber retention rate, however, Peloton knows that it must make it "easy for Members to find a class that fits their interests based on class type, instructor, music genre, length, available equipment, area of physical focus, and level of difficulty.[48]

56.     Peloton's "continued business and revenue growth is dependent on [its] ability to continuously attract and retain Subscribers. . . ."[49]

## B.     Peloton's "Ever Growing" On-Demand Library Is Central to Its Marketing

57.     While other fitness companies market and sell similar fitness hardware for in-home use, provide in-studio classes where users pay on a per class basis, and home workout programs, Peloton has dominated the marketplace by aggressively marketing access to an "ever-growing" library of fitness classes led by professional instructors, available on-demand 24 hours per day, 7 days per week, from the comfort of the users' own homes for a flat monthly subscription fee.

---

[45] *See* SEC Form S-1 Registration Statement, available at
https://www.sec.gov/Archives/edgar/data/1639825/000119312519230923/d738839ds1.htm

[46] *See* SEC Form S-1 Registration Statement, available at
https://www.sec.gov/Archives/edgar/data/1639825/000119312519230923/d738839ds1.htm

[47] *See* https://www.pymnts.com/subscriptions/2019/pelotons-ipo-to-test-subscription-models-fitness/

[48] [48] *See* SEC Form S-1 Registration Statement, available at
https://www.sec.gov/Archives/edgar/data/1639825/000119312519230923/d738839ds1.htm

[49] *Id.*

58.     The "ever-growing" nature of Peloton's on-demand library is central to its marketing because Peloton must ensure that consumers spending thousands of dollars on the Peloton Bike or Peloton Tread and accompanying subscriptions will be able to take and retake older classes without running out of new classes over time.  Likewise, Peloton must ensure Peloton Digital subscribers that it will have enough new classes in each workout category to keep subscribers renewing their subscriptions.

59.     Until recently, Peloton's website prominently touted its "thousands of boutique classes," and "ever-growing library of live and on-demand studio classes."[50]  Its website likewise represented that its Subscription Service grants "unlimited access to a growing library of live streaming and on-demand classes, scenic rides, real-time performance tracking, and unlimited accounts for family and friends. No classes offered by Peloton are off limits."[51]

60.     As of November 2019, Peloton's website continues to market its digital library as "ever-growing" and "growing."  For example, the website for Peloton's app continues to market "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors"[52]:

## The power of Peloton at your fingertips.

Explore an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors. Immerse yourself in our breathtaking studio experience anytime you want. Find a new favourite class just around the corner.

---

[50] https://www.onepeloton.com/digital (as of Apr. 25, 2019); *see also* https://www.onepeloton.com/bike/classes ("Thousands of On-Demand Rides. Take a class anytime, with our daily-updated, extensive on-demand library"); *id.* ("Thousands of rides on-demand. Rider anytime with thousands of classes to choose from on-demand.").

[51] *See* https://support.onepeloton.com/hc/en-us/articles/201039338-Rides-included-with-the-Peloton-subscription.

[52] *See* https://www.onepeloton.ca/app (last accessed Dec. 6, 2019).

61.    Further, in marketing its "Bike package" to consumers, Peloton continues to notify consumers that all packages "require a monthly Peloton Membership,"[53] which includes "unlimited access to a growing library of live streaming and on-demand Peloton classes"[54]:

UNLIMITED ACCESS TO PELOTON CLASSES

With a Peloton Membership, you'll gain unlimited access to a growing library of live streaming and on-demand Peloton classes (cycling, running, bootcamp, floor, yoga and more), as well as performance tracking and unlimited profiles for family and friends.

Membership includes full access on a single Peloton Bike in one household, plus on-the-go access to Peloton Digital using our app. You may pause or cancel your membership at any time. See our Membership Terms for more details.

LEARN MORE

62.    Peloton's promise of an "ever-growing" on-demand library of classes drives sales of not only monthly subscriptions, but also its flagship Peloton Bike and Peloton Tread products.

63.    The size and "ever-growing" nature of Peloton's on-demand digital library has always been, and continues to be, central to Peloton's marketing[55] because "the hardware is only as good as the app and subscription that comes with it."[56]

## C.    Peloton Knew That Its "Ever Growing" and "Growing" On-Demand Library Claims Were False And Misleading

64.    Peloton is a sophisticated multi-billion-dollar company that specializes in providing consumers with digital content that is protected by various intellectual property laws. Peloton therefore knew or should have known that it was building its on-demand library with infringing songs and violating applicable copyright laws.

---

[53] *See* https://www.onepeloton.com/shop/bike (last accessed Dec. 6, 2019).

[54] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Dec. 6, 2019).

[55] *See* https://onepeloton.com/bike/classes (last accessed Dec. 6, 2019).

[56] *See* https://www.forbes.com/sites/bizcarson/2019/09/26/peloton-ceo-john-foley-faces-the-skeptics-again-this-time-buyers-in-its-8-billion-ipo/#3b8f0f6f4349 (last accessed Dec. 6, 2019).

65.     Peloton fully understands what the copyright law requires, having entered into sync licenses with certain other copyright holders, while, at the same time, using other musical works for free and without permission.[57]  Peloton's knowing violation of copyright laws was part of "a strategy to build a music-centric brand that is now worth in excess of $6 billion" without having to pay for all the required licenses.[58]

66.     On April 9, 2018, Peloton was put on actual notice of its copyright infringement when it received a cease and desist letter from the NMPA notifying it of copyright infringement claims for Peloton's failure to receive proper licenses for some of the music playing in its on-demand fitness classes.

67.     Notwithstanding that fact, Peloton continued to promise an "ever-growing" library to consumers and to heavily market that fact to its customers and prospective customers as a key Peloton selling point.

68.     Implicit in Peloton's promise to provide an "ever-growing" on-demand library was that it would only place classes in the library that complied with applicable copyright law or that it would pay back damages to copyright holders to ensure that the size of the on-demand library would not shrink.

69.     On March 25, 2019, in contravention of its promise, Peloton abruptly removed more than half of its on-demand classes from its digital library.[59]

---

[57] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 90, ¶ 1 (S.D.N.Y. September 27, 2019).

[58] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 90, at 1 (S.D.N.Y. Oct. 25, 2019).

[59] *See Downtown Music Publishing LLC, et al. v. Peloton Interactive, Inc.*, No. 1:19-cv-02426-DLC, ECF No. 31, Counterclaims ¶ 59 (S.D.N.Y. Apr. 30, 2019); *see also id.*, Counterclaims ¶¶ 10, 42, 46, 52, 57.

70.     Prior to March 25, 2019, Peloton's Subscription Service had 10,017 on-demand classes available for its users.  Following Peloton's announcement, only 4,278 classes remained available to users.[60]  Thus, the abrupt removal of the infringing soundtracks led to the removal of an estimated 5,739 classes, approximately 57% of its Subscription Service's on-demand digital library.[61]

71.     After the purge of its on-demand classes from its on-demand library, the number of available on-demand classes was roughly equal to the number of on-demand classes that were available to consumers in January 2017.  Accordingly, contrary to its representations, Peloton's on-demand library, rather than being "ever-growing," was actually materially shrinking.

72.     Music is a central component of Peloton's workout classes and Peloton has deeply integrated music into the Subscription Service's interface—allowing users to search for workouts by music genre, as well as artist-specific playlists.  Users can also preview playlists for specific classes, "like" songs or playlists during their workouts, and save songs and playlists to their user profile.  Music is thus critical to consumers' use and enjoyment of the hardware and Subscription Service.

73.     The copyright infringement lawsuit and Peloton's subsequent purge its on-demand library has also significantly decreased the quality and quantity of popular artists and songs available on Peloton's workout class playlists, which has materially diminished

---

[60] *See* https://imgur.com/XxdUOJn (last accessed Dec. 5, 2019); *see also* https://docs.google.com/spreadsheets/d/1LAE9kDqxkj4CkZ7TzS7ce6g5cxkMUOMdDssxKWpS0ak/edit?usp=sharing (last accessed Dec. 5, 2019).

[61] *See* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider (Mar. 27, 2019, 10:30 a.m.), https://www.businessinsider.com/pelotonremoves-classes-member-outcry-2019-3

subscribers' experience with the hardware and Subscription Service.[62]  The infringing works include some of the most popular artists and songs, both currently and of all time.  Peloton has removed songs by a wide array of popular artists including, without limitation, Beyoncé, Brittany Spears,  Michael Jackson, Ariana Grande, Snoop Dogg, Dr. Dre, Katy Perry, Rihanna, Miley Cyrus, Motley Crue, Pink Floyd, Justin Bieber, David Bowie, Rascal Flatts, Bruno Mars, Selena Gomez, Maroon 5, Adele, Lady Gaga, Nicki Minaj, Whitney Houston, Justin Timberlake, Luke Bryan, Mariah Carey, Jay Z, Kanye West, Drake, and Madonna. [63]

74.    John Foley, Peloton's CEO, emailed subscribers and notified them that Peloton was removing classes featuring the allegedly infringing songs, but did not disclose that this would result in removal of over half of the on-demand classes in its digital library or that it would significantly decrease the quality and quantity of popular songs and artists available for its playlists.

75.    Instead, Foley falsely promised Plaintiffs and the other Class members that "[Peloton] can assure you that this will not affect your experience with (or the cost of) [Peloton's] service, or access to the kind of music you're used to hearing behind [Peloton's] instructors in the thousands of classes in [Peloton's] library."

76.    That representation, however, is demonstrably false and Peloton never disclosed to its subscribers, including Plaintiffs and the other Class members, that it would be removing over half of the classes from its on-demand library.

---

[62] *See* Natt Garun, *Peloton owners are pissed about bad music after copyright lawsuit*, The Verge (April 24, 2019, 1:47 p.m.), https://www.theverge.com/2019/4/24/18514036/peloton-music-copyright-fitness-studios-gym-on-demand-media-strategy; *see also* Mary Hanbury, *Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious*, Business Insider US (March 27, 2019), https://www.businessinsider.sg/peloton-removes-classes-member-outcry-2019-3/.

[63] *See* Ex. 3.

77.     As of November 2019, Peloton's website continues to market its digital library as being "ever-growing" and "growing,"  despite knowing that the NMPA has recently amended its lawsuit alleging that it "found another 1,324 songs that have been streamed by Peloton instructors during classes without approval."[64]

78.     Therefore, despite Peloton's representations to the contrary, it knows or should know that the size of its on-demand digital library cannot legitimately be "ever-growing," but it continues to knowingly defraud its existing and potential customers—including Plaintiffs and the other Class members—for its own financial gain.

**D.      Peloton's Misrepresentations and Omissions Are Material to Consumers**

79.     Peloton's misrepresentations and omissions are material to Plaintiffs and the other Class members.  As part of Plaintiff's and the other Class members' subscriptions, they expected and were entitled to use a class library that, as advertised by Peloton, would continue to grow as new classes were added every day.

80.     Each additional on-demand fitness class adds incremental value to Plaintiffs' and the other Class members' subscriptions and, therefore, Peloton's gutting of its digital library materially lowered the value of Plaintiffs' and the other Class members' subscriptions.

81.     When Peloton accepted Plaintiffs' and the other Class members' subscription payments, Peloton knew or should have known that Plaintiffs and the other Class members would not be able to use the full on-demand class library because the size of its on-demand library was materially decreasing.

82.     Nonetheless, Peloton withheld that information from Plaintiffs and the other Class members, continued to represent to existing and potential subscribers that the on-demand digital

---

[64] *See* https://observer.com/2019/09/peloton-music-licensing-lawsuit-ipo/ (last accessed Dec. 5, 2019).

library would be "ever-growing," and continued to charge full price for its Subscription Service, despite knowledge that subscribers would not be receiving everything Peloton represented that they would receive.

83.     By misrepresenting that its on-demand digital library would be "ever-growing" and failing to disclose the imminent removal of over half of that library, Peloton defrauded Plaintiffs and the other Class members, deprived Plaintiff and Class members of the benefit of their bargain with Peloton, and/or unjustly enriched itself at Plaintiffs' and the other Class members' expense.

## VI.     CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of a class defined as:

> All purchasers of the Peloton hardware and/or corresponding
> Peloton Membership subscription from April 9, 2018 through
> March 25, 2019.

(the "Class," unless otherwise noted).

85.     Excluded from the Class are Peloton and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.[65]

86.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

---

[65] There are currently five disputes in arbitration in the State of Kansas.  Plaintiffs believe that these claimants are members of the Class, and that the claimants are seeking a stay of arbitration. If claimants' request for a stay is denied, Plaintiffs reserve the right to add these disputes to the exclusion categories listed here.

87.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  The precise number of Class members is unknown to Plaintiffs, but may be ascertained from Peloton's books and records and is presumed to be not less than in the hundreds of thousands of people.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

88.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.   whether Peloton engaged in the conduct alleged herein;

      b.   whether Peloton's alleged conduct violates applicable law;

      c.   whether Peloton engaged in false or misleading advertising;

      d.   whether Peloton's misrepresentations and omissions regarding the "ever-growing" nature of the Subscription Service's class library were likely to deceive Class members in violation of N.Y. Gen. Bus. Law §§ 349 and 350;

      e.   whether Peloton's misrepresentations and omissions regarding the "ever-growing" nature of the Subscription Service's class library were material to a reasonable consumer;

      f.   whether Class members overpaid for their Subscription Service as a result of the conduct alleged herein;

      g.   whether Peloton's conduct violates public policy;

h. whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

i. the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

89. **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members purchased Peloton's hardware and/or subscribed to Peloton's Subscription Service that falsely promised an "ever-growing" class library.  Each class in the on-demand library adds incremental value to Plaintiffs' and the other Class members' hardware and/or Subscription Service.  The value of Plaintiffs' and the other Class members' hardware and/or Subscription Service has therefore diminished and, as a result of Peloton's conduct, Plaintiffs and the other Class members overpaid for Peloton's hardware and/or Subscription Service.  Plaintiffs and the other Class members suffered damages as a direct and proximate result of the same wrongful conduct in which Peloton engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

90. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

91.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Peloton has acted or refused to act on grounds generally applicable to Plaintiffs and the other
Class members, thereby making appropriate final injunctive relief and declaratory relief, as
described below, with respect to the Class members as a whole.

92.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
The damages or other financial detriment suffered by Plaintiffs and the other Class members are
relatively small compared to the burden and expense that would be required to individually
litigate their claims against Peloton, so it would be impracticable for the Class members to
individually seek redress for Peloton's wrongful conduct.  Even if the Class members could
afford litigation the court system could not.  Individualized litigation creates a potential for
inconsistent or contradictory judgments and increases the delay and expense to all parties and the
court system.  By contrast, the class action device presents far fewer management difficulties,
and provides the benefits of single adjudication, economy of scale, and comprehensive
supervision by a single court.

## VII.   CLAIMS ALLEGED

### FIRST CLAIM FOR RELIEF

**Violation of New York General Business Law,
N.Y. Gen. Bus. Law § 349**

93.     Plaintiffs repeat and allege the allegations in Paragraphs 1-92, above, as if fully
alleged herein.

94.     Plaintiffs bring this claim individually and on behalf of the other Class members.

95.     New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

96.     Peloton engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, by misrepresenting that its Subscription Service included access to an "ever-growing library of live and on-demand studio classes" and willfully failing to disclose that it would be removing over half of its Subscription Service's on-demand digital library.

97.     Peloton knew or should have known that it lacked the appropriate copyright licenses for the music accompanying the classes in its library, and that its library could not legitimately be "ever-growing."

98.     Peloton received a cease-and-desist letter regarding its copyright infringement on April 9, 2018 but continued to promise the "ever-growing" library to consumers.  On March 25, 2019, Peloton abruptly removed more than half of its on-demand content from its Subscription Service's on-demand digital library.

99.     Despite knowing that the size of its on-demand Digital Library had decreased by 57%, Peloton continues to promise on its website "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors"[66] and "unlimited access to a growing library of live streaming and on-demand Peloton classes."[67]

100.    Peloton's representations and omissions were material because they were likely to deceive reasonable consumers about the "ever-growing" nature of its Subscription Service's on-demand digital library.

---

[66] *See* https://www.onepeloton.ca/app (last accessed Nov. 26, 2019).

[67] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Nov. 26, 2019).

101.     Peloton acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiff and the other Class members' rights. Peloton had actual knowledge on April 9, 2018 that it could not provide an "ever-growing" library to consumers, but it nonetheless continued to promise and represent an "ever-growing" library.

102.     As a direct and proximate result of Peloton's deceptive and unlawful acts and practices Plaintiffs and the other Class members suffered injury.  Peloton deprived Plaintiffs and the other Class members of the benefit of the bargain.  Plaintiffs and the other Class members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages because Plaintiffs and the other Class members overpaid for Peloton's hardware , because they did not know the truth that Peloton would gut its on-demand digital library, shrinking it by 57%, and that it would not be "ever-growing."

103.     Peloton's deceptive and unlawful acts and practices complained of herein affected all purchasers of Peloton's hardware because the Peloton hardware is only as good as the app and subscription that comes with it.

104.     Peloton's above-described deceptive and unlawful practices caused substantial injury to Plaintiffs and the other Class members that they could not reasonably avoid.  Plaintiffs and the other Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 per violation for each of Peloton's violations of N.Y. Gen. Bus. Law § 349 (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

105.    Each sale of the Peloton hardware to Plaintiffs and the other Class members constitutes a separate, independent, and willful violation of N.Y. Gen. Bus. Law § 349 through the above deceptive acts and practices in the conduct of its business.

106.    Peloton should, therefore, be assessed a separate statutory penalty of $50 or actual damages (whichever is greater) for each independent violation, and all other such relief as may be just and proper should be recovered by Plaintiffs individually and on behalf of the other Class members.

## SECOND CLAIM FOR RELIEF

### Violation of New York General Business Law,
### N.Y. Gen. Bus. Law § 349.

107.    Plaintiffs repeat and allege the allegations in Paragraphs 1-92, above, as if fully alleged herein.

108.    Plaintiffs bring this claim individually and on behalf of the other Class members.

109.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

110.    Peloton engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, by misrepresenting that its Subscription Service included access to an "ever-growing library of live and on-demand studio classes" and willfully failing to disclose that it would be removing over half of its Subscription Service's on-demand digital library, while persistently publishing marketing assertions (and omissions) to the contrary.

111.    Peloton knew or should have known that it lacked the appropriate copyright licenses for the music accompanying the classes in its library, and that its library could not legitimately be "ever-growing."

112.    Peloton received a cease-and-desist letter regarding its copyright infringement on April 9, 2018 but continued to promise the "ever-growing" library to consumers.  On March 25, 2019, Peloton abruptly removed more than half of its on-demand content from its Subscription Service's on-demand digital library.

113.    Despite knowing that the size of its on-demand Digital Library had decreased by 57%, Peloton continues to promise on its website "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors"[68] and "unlimited access to a growing library of live streaming and on-demand Peloton classes."[69]

114.    Peloton's representations and omissions were material because they were likely to deceive reasonable consumers about the "ever-growing" nature of its Subscription Service's on-demand digital library.

115.    Peloton acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiffs and the other Class members' rights. Peloton had actual knowledge on April 9, 2018 that it could not provide an "ever-growing" library to consumers, but it continued to promise an "ever-growing" library nonetheless

116.    As a direct and proximate result of Peloton's deceptive and unlawful acts and practices Plaintiffs and the other Class members suffered injury.  Peloton deprived Plaintiffs and the other Class members of the benefit of the bargain.  Plaintiffs and the other Class members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages because Plaintiffs and the other Class  members overpaid for Peloton's

---

[68] *See* https://www.onepeloton.ca/app (last accessed Dec. 6, 2019).

[69] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Dec. 6, 2019).

Subscription Service because they did not know the truth that Peloton would gut its on-demand digital library, shrinking it by 57%, and that it would not be "ever-growing."

117.    Peloton's deceptive and unlawful acts and practices complained of herein affected all subscribers of the Peloton Subscription Service.  The above deceptive and unlawful practices and acts by Peloton caused substantial injury to Plaintiffs and the other Class members that they could not reasonably avoid. Plaintiffs and the other Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 per violation (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

118.    Each time Peloton accepted a subscription payment from Plaintiffs and/or one or more of the other Class members, Peloton committed a separate, independent, and willful violation of N.Y. Gen. Bus. Law § 349 through the above deceptive acts and practices in the conduct of its business.

119.    Peloton should, therefore, be assessed a separate statutory penalty of $50 for each independent violation, and all other such relief as may be just and proper should be recovered by Plaintiffs individually and on behalf of the other Class members.

### THIRD CLAIM FOR RELIEF

**Violation of New York General Business Law,
N.Y. Gen. Bus. Law § 350**

120.     Plaintiffs repeat and allege the allegations in Paragraphs 1-92, above, as if fully alleged herein.

121.     Plaintiffs bring this claim individually and on behalf of the other Class members.

122.     New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade, or commerce[.]"  False advertising includes "advertising including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light . . . representations [made] with respect to the commodity. . . ." N.Y. Gen. Bus. Law § 350-a.

123.     Peloton caused to be made or disseminated, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Peloton to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

124.     Peloton misrepresented through advertisements on its website that its Subscription Service included access to an "ever-growing library of live and on-demand studio classes" and, at the same time, willfully failed to disclose that it would be removing over half of its Subscription Service's on-demand digital library.

125.     Peloton knew or should have known that it lacked the appropriate copyright licenses for the music accompanying the classes in its library, and that its library could not legitimately be "ever-growing."

126.     Peloton received a cease-and-desist letter regarding its copyright infringement on April 9, 2018 but continued to promise the "ever-growing" library to consumers.  On March 25,

2019, Peloton abruptly removed more than half of its on-demand content from its Subscription Service's on-demand digital library.

127.    Despite knowing that the size of its on-demand digital library had decreased by 57%, Peloton continues to advertise on its website "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors"[70] and "unlimited access to a growing library of live streaming and on-demand Peloton classes."[71]

128.    Peloton has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding the "ever-growing" nature of its Subscription Service's on-demand library, were material and likely to deceive a reasonable consumer.

129.    As a direct and proximate result of Peloton's false and misleading advertising Plaintiffs and the other Class members suffered injury.  Peloton deprived Plaintiff and the other Class members of the benefit of the bargain.  Plaintiffs and the other Class members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages. Plaintiffs and the other Class members overpaid for Peloton's Subscription Service because they did not know the truth that Peloton would gut its on-demand digital library, shrinking it by 57%, and that it would not be "ever-growing."

130.    Peloton's false and misleading advertising complained of herein affected all purchasers of Peloton's hardware.

131.    The above false and misleading advertising by Peloton caused substantial injury to Plaintiffs and the other Class members that they could not reasonably avoid.

---

[70] *See* https://www.onepeloton.ca/app (last accessed Nov. 26, 2019).

[71] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Nov. 26, 2019).

132.    Plaintiffs, individually and on behalf of the other Class members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $500 per violation (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

133.    Peloton committed a separate and independent violation of N.Y. Gen. Bus. Law § 350 for each false advertisement pertaining or relating to the "ever-growing" and/or growing nature of its on-demand library.

134.    Peloton should therefore be assessed statutory damages of $500 for each such violation, and all other such relief as may be just and proper should be recovered by the State.

## FOURTH CLAIM FOR RELIEF

### Violation of New York General Business Law,
### N.Y. Gen. Bus. Law § 350

135.    Plaintiffs repeat and allege the allegations in Paragraphs 1-92, above, as if fully alleged herein.

136.    Plaintiffs bring this claim individually and on behalf of the other Class members.

137.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade, or commerce[.]"  False advertising includes "advertising including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light . . . representations [made] with respect to the commodity. . . ." N.Y. Gen. Bus. Law § 350-a.

138.    Peloton caused to be made or disseminated, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Peloton, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

139.    Peloton misrepresented through advertisements on its website that its Subscription Service included access to an "ever-growing library of live and on-demand studio classes" and, at the same time, willfully failed to disclose that it would be removing over half of its Subscription Service's on-demand digital library.

140.    Peloton knew or should have known that it lacked the appropriate copyright licenses for the music accompanying the classes in its library, and that its library could not legitimately be "ever-growing."

141.    Peloton received a cease-and-desist letter regarding its copyright infringement on April 9, 2018 but continued to promise the "ever-growing" library to consumers.  On March 25, 2019, Peloton abruptly removed more than half of its on-demand content from its Subscription Service's on-demand digital library.

142.    Despite knowing that the size of its on-demand digital library had decreased by 57%, Peloton continues to advertise on its website "an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors"[72] and "unlimited access to a growing library of live streaming and on-demand Peloton classes."[73]

143.    Peloton has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding the "ever-growing" nature of its Subscription Service's on-demand library, were material and likely to deceive a reasonable consumer.

144.    As a direct and proximate result of Peloton's false and misleading advertising Plaintiffs and the other Class members suffered injury.  Peloton deprived Plaintiff and the other Class members of the benefit of the bargain.  Plaintiffs and the other Class members have

---

[72] *See* https://www.onepeloton.ca/app (last accessed Nov. 26, 2019).

[73] *See* https://www.onepeloton.com/shop/bike/subscription (last accessed Nov. 26, 2019).

suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages because Plaintiffs and the other Class members overpaid for Peloton's Subscription Service because they did not know the truth that Peloton would gut its on-demand digital library, shrinking it by 57%, and that it would not be "ever-growing."

145.     Peloton's false and misleading advertising complained of herein affected all purchasers of Peloton's subscribers to Peloton's Subscription Service.

146.     The above false and misleading advertising by Peloton caused substantial injury to Plaintiffs and the other Class members that they could not reasonably avoid.

147.     Plaintiffs, individually and on behalf of the other Class members, seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $500 per violation (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

148.     Peloton committed a separate and independent violation of N.Y. Gen. Bus. Law § 350 for each false advertisement pertaining or relating to the "ever-growing" and/or growing nature of its on-demand library.

149.     Peloton should therefore be assessed statutory damages of $500 for each such violation, and all other such relief as may be just and proper.

## VIII.     REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Peloton as follows:

1.     Certifying the Class as requested herein, designating Plaintiffs as class representatives, and appointing the undersigned counsel as Class Counsel;

Case 1:19-cv-11711-JSR   Document 1   Filed 12/23/19   Page 39 of 40

2.      Declaring that Peloton is financially responsible for notifying the Class members of the pendency of this suit;

3.      Awarding actual and/or statutory damages to the maximum extent allowed, in an amount to be proven at trial;

4.      Requiring restitution and disgorgement of all profits and unjust enrichment Peloton obtained from Plaintiffs and the other Class members as a result of Peloton's unlawful, unfair, and/or fraudulent business practices;

5.      Awarding injunctive relief as permitted by law or equity, including enjoining Peloton from continuing the unlawful practices as set forth herein, and ordering Peloton to engage in a corrective advertising campaign;

6.      Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

7.      Awarding pre- and post-judgment interest on any amounts awarded; and

8.      Awarding such other and further relief as may be just and proper.

## IX.      JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  December 23, 2019          */s/ Greg G. Gutzler*
                                   GREG G. GUTZLER
                                   ggutzler@dicellolevitt.com
                                   **DiCELLO LEVITT GUTZLER LLC**
                                   444 Madison Avenue, Fourth Floor
                                   New York, New York  10022
                                   Telephone: (646) 933-1000

                                   ADAM J. LEVITT
                                   alevitt@dicellolevitt.com
                                   ADAM PROM (*pro hac vice* to be sought)
                                   aprom@dicellolevitt.com
                                   **DiCELLO LEVITT GUTZLER LLC**
                                   Ten North Dearborn Street, Eleventh Floor
                                   Chicago, Illinois  60602
                                   Telephone: (312) 214-7900

ASHLEY C. KELLER (*pro hac vice* to be sought)
ack@kellerlenkner.com
J. DOMINICK LARRY (*pro hac vice* to be sought)
nl@kellerlenkner.com
**KELLER LENKNER LLC**
150 North Riverside Plaza, Suite 4270
Chicago, Illinois  60606
Telephone: (312) 741-5220

*Counsel for Plaintiffs and the Proposed Class*