UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON, ALICIA PEARLMAN, and PATRICK YANG, individually and on behalf of all others similarly situated,<br><br>           *Plaintiffs,*<br><br>        -v-<br><br>PELOTON INTERACTIVE, INC.<br><br>           *Defendant.* | Civil Action No. 19-cv-11711 (LJL)<br><br>ECF Case |

## MEMORANDUM OF LAW IN SUPPORT OF PELOTON INTERACTIVE, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Steven N. Feldman
Shannon Coit
Sourabh Mishra
Ashley Artmann
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014

Joshua D. Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Avenue
New York, NY 10022

*Attorneys for Defendant Peloton Interactive, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................4

    A.    Peloton Revolutionizes the Fitness World..........................................................4

    B.    Plaintiffs Agree to Peloton's Terms of Service. ...................................................5

    C.    Peloton's Terms of Service Necessarily Make Clear That Peloton, Like Other
           Major Content Providers, May Edit Its Content At Its Sole Discretion. ..............6

    D.    Peloton Removes Classes From Its Content Library, and Plaintiffs Sue............7

LEGAL STANDARD....................................................................................................................8

ARGUMENT .............................................................................................................................9

    A.    THE AGREED-UPON TERMS OF SERVICE MANDATE DISMISSAL OF
           PLAINTIFFS' ENTIRE COMPLAINT ...............................................................9

    B.    PLAINTIFFS FAIL TO ALLEGE ANY FALSE OR MISLEADING
           STATEMENTS...................................................................................................13

           1.    The Term "Ever-growing" Constitutes Non-Actionable Puffery. .............13

           2.    The Term "Ever-Growing" Is Not Deceptive or Misleading.....................14

           3.    Plaintiffs Fail to Plead Causation..............................................................16

           4.    Plaintiffs Fail to Plead They Suffered Any Loss or Injury. ........................17

    C.    LACK OF STANDING ALSO MANDATES THE DISMISSAL OF
           PLAINTIFFS' CLAIMS. ....................................................................................19

           1.    Plaintiff Yang Lacks Article III Standing..................................................19

           2.    Plaintiffs Fail to Plead Standing Under NYGBL §§ 349 and 350.............21

CONCLUSION..........................................................................................................................22

TABLE OF AUTHORITIES

Page(s)

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC,*
  2 F. Supp. 3d 525 (S.D.N.Y. 2014)...............................................................................22

*A.N.R. Inv. Co. v. HSBC Private Bank,*
  25 N.Y.S.3d 78 (1st Dep't 2016) ........................................................................2, 10, 11

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) .....................................................................3, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................................ 1

*Bildstein v. MasterCard Int'l Inc.,*
  329 F. Supp. 2d 410 (S.D.N.Y. 2004)........................................................................... 18

*Carlsen v. GameStop, Inc.,*
  112 F. Supp. 3d 855 (D. Minn. 2015)........................................................................... 18

*Carter v. HealthPort Techs., LLC,*
  822 F.3d 47 (2d Cir. 2016).............................................................................................. 8

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)........................................................................................5, 8

*Cruz v. FXDirectDealer, LLC,*
  720 F.3d 115 (2d Cir. 2013)...............................................................................4, 21, 22

*Cytyc Corp. v. Neuromedical Sys., Inc.,*
  12 F. Supp. 2d 296 (S.D.N.Y. 1998)............................................................................. 13

*Derbaremdiker v. Applebee's Int'l, Inc.,*
  2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ............................................................. 10

*Dimond v. Darden Rests., Inc.,*
  2014 WL 3377105 (S.D.N.Y. July 9, 2014) ................................................................. 10

*DiMuro v. Clinique Labs., LLC,*
  572 F. App'x 27 (2d Cir. 2014) .................................................................................... 19

*Goel v. Bunge, Ltd.,*
  820 F.3d 554 (2d Cir. 2016)............................................................................................ 9

TABLE OF AUTHORITIES (cont.)

Page(s)

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014)................................................................8, 16, 22

*Gomez-Jimenez v. New York Law Sch.*,
    943 N.Y.S. 2d 834 (Sup. Ct. 2012)................................................................18

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ................................................................3, 21

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ................................................................17

*In re Scotts EZ Seed Litig.*,
    2013 WL 2303727 (S.D.N.Y. May 22, 2013) ................................................2, 13, 14

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014)................................................................3, 17

*Kickertz v. New York Univ.*,
    971 N.Y.S. 2d 271 (1st Dep't 2013) ................................................................11

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017)................................................................4, 23

*Kommer v. Ford Motor Co.*,
    2017 WL 3251598 (N.D.N.Y. July 28, 2017) ................................................................13

*Lebowitz v. Dow Jones & Co.*,
    847 F. Supp. 2d 599 (S.D.N.Y. 2012)................................................................11, 12

*Lewis v. Casey*,
    518 U.S. 343 (1996)................................................................21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................19, 20

*Lum v. New Century Mortg. Corp.*,
    800 N.Y.S. 2d 408 (2d Dep't 2005)................................................................11

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ................................................................9

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)................................................................8, 19, 20

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d 2016)................................................................8

<u>TABLE OF AUTHORITIES</u> (cont.)

Page(s)

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ....................................................... 8

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................... 13, 17

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ...................................... 20

*Sands v. Ticketmaster–N.Y., Inc.*,
    616 N.Y.S. 2d 362 (1st Dep't 1994) ...................................... 11

*Schnall v. Marine Midland Bank*,
    225 F.3d 263 (2d Cir. 2000) .............................................. 8, 20

*Segovia v. Vitamin Shoppe, Inc.*,
    2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ....................... 4, 19, 20

*Serrano v. Cablevision Sys. Corp.*,
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) ............................ 2, 13, 14

*Shovak v. Long Is. Commercial Bank*,
    858 N.Y.S. 2d 660 (2d Dep't 2008) ...................................... 11

*Sokoloff v. Town Sports Int'l, Inc.*,
    778 N.Y.S. 2d 9 (1st Dep't 2004) ........................................ 18

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) .............................................. 18

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) .................................... 13

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012) .................................. 3, 14

*Zuckerman v. BMG Direct Mktg., Inc.*,
    737 N.Y.S. 2d 14 (1st Dep't 2002) ...................................... 11

**<u>Statutes</u>**

New York Business (NYGBL) §§ 349 and 350 .................................. passim

<u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

**<u>Rules</u>**

Fed. R. Civ. Pro. 12(b)(1) ............................................................................................. 8, 9, 19, 20

Fed. R. Civ. Pro. 12(b)(6) ................................................................................................. 8, 9, 13

PELOTON'S MEMORANDUM ISO MOTION TO DISMISS

Defendant Peloton Interactive, Inc. ("Peloton") submits this Memorandum of Law in support of its Motion to Dismiss the Class Action Complaint ("Complaint") filed, individually and on behalf of all others similarly situated, by Plaintiffs Eric Fishon, Alicia Pearlman, and Patrick Yang (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Peloton is the largest interactive fitness platform in the world with a loyal community of over 1.4 million members.  It has revolutionized the fitness industry with the "Peloton Bike," an at-home stationary bike that streams live and on-demand fitness classes led by some of the world's best instructors, alongside Peloton's patented leaderboard technology.  Plaintiffs are three Peloton members, each of whom alleges that they purchased a Peloton Bike[1] as well as a subscription to Peloton's content service.

At the heart of Plaintiffs' case against Peloton is the allegation that certain Peloton advertisements describing its content library as "ever-growing" were deceptive and misleading, and caused Plaintiffs harm, when, in March of 2019, Peloton removed approximately half of the class content available at that time.  (*See* Compl. ¶¶ 79, 81).[2]  Plaintiffs relatedly allege that the March 2019 class removals were inevitable and that Peloton should have affirmatively disclosed to members the likelihood of those removals at an earlier date.  (*See* Compl. ¶¶ 82–83.)

---

[1] Plaintiff Fishon alleges that he also owns a Peloton treadmill, known as the "Peloton Tread."

[2] The Complaint references, in passing, several other statements from Peloton, (*see e.g.*, Compl. ¶ 22 ("[The content library] has more than 10,000 . . . classes"); *id*. ¶ 19 ("unlimited access to a growing library"); *id*. ¶ 17 ("Peloton's CEO falsely promised subscribers to its Subscription Service that the removal of 'classes' would 'not affect your experience.'")), but never states that any such statement was deceptive or misleading and serves as a basis for Plaintiffs' claims.  (*See id*. ¶¶ 93–149.)  Accordingly, Peloton does not address them here.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding Rule 8 requires that the plaintiff "give the defendant fair notice of . . . the grounds upon which [its claim] rests.").

Simply put, as detailed below, Plaintiffs' claims are barred as matter of law because Peloton's Terms of Service—to which all three Plaintiffs admittedly agreed—clearly and repeatedly disclosed that Peloton reserved the right to modify and remove any class content "***at any time, in its sole discretion***."[3]  (*See* Compl. at Ex. 1 § 15 (attaching the 2018 Terms of Service) (emphasis added).)  Put differently, Plaintiffs seek to hold Peloton liable under New York General Business Law ("NYGBL") §§ 349 and 350 for taking the ***very same actions*** that Peloton's Terms of Service—which Plaintiffs agreed to—affirmatively disclosed it could take. As numerous courts have correctly found, such claims fail as a matter of law.  *See A.N.R. Inv. Co. v. HSBC Private Bank*, 25 N.Y.S. 3d 78, 81 (1st Dep't 2016) ("[Defendant's] actions were fully authorized by the terms and conditions signed by plaintiffs, and [Defendant] was not required to give plaintiffs notice that it might enforce its rights thereunder.").  For this reason alone, the Complaint should be dismissed in full and with prejudice.

Regardless, Plaintiffs' Complaint also suffers from numerous other fatal deficiencies.

*First*, Peloton's statement that its library is "ever-growing" constitutes mere puffery and is non-actionable.  *See In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013) ("Puffery is not actionable under sections 349 and 350." (citation omitted)); *see also Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012) ("'High Speed

---

[3] The relevant language states, in part: "Peloton reserves the right to modify the Peloton Service, including, but not limited to updating, adding to, enhancing, modifying, ***removing or altering any Content or features of the Peloton Service, at any time, in its sole discretion***. . . . . [Peloton] ***does not guarantee that any content*** . . . ***will continue to be available*** for any length of time. Peloton provides the Peloton Service on an ***"AS IS" and "AS AVAILABLE" basis***. . . Without limiting the foregoing, Peloton makes ***no representations or warranties***: . . . • That the Peloton Service will be ***uninterrupted*** or error-free; • ***Concerning any content***, . . . • That Peloton will ***continue to support any particular feature of the Peloton Service***."  (Compl. at Ex. 1 § 15 (emphasis added); *see also id.* § 25 ("Because the Peloton Service is evolving over time we may ***change or discontinue all or any part of the Peloton Service***, ***at any time*** and ***without notice***, ***at our sole discretion***." (emphasis added)).)

Internet,' 'Faster Internet,' [and] 'blazing fast speed'. . . constitute puffery and are not actionable
. . . .").

*Second*, even if "ever-growing" were not puffery, Peloton's "ever-growing" statement is
not misleading because it is true.  *See* NYGBL §§ 349, 350; *see Tasini v. AOL, Inc.*, 851 F. Supp.
2d 734, 744–45 (S.D.N.Y. 2012), *aff'd* 505 F. App'x 45 (2d Cir. 2012) (dismissing claims when
the statements were not misleading).  By Plaintiffs' own allegations, Peloton's content library
continues to "grow" because Peloton adds new class content *each and every day*.  (*See* Compl.
¶ 22.)

*Third*, though reliance is not required, Plaintiffs still must allege causation—an
"essential" element under both NYGBL §§ 349 and 350.  *Abraham v. Am. Home Mortg.
Servicing, Inc.*, 947 F. Supp. 2d 222, 234–35 (E.D.N.Y. 2013).  But Plaintiffs fail to do so.
Plaintiffs fail to allege how either (a) Peloton's "ever-growing" statement or (b) alleged failure to
disclose its class removals in advance caused Plaintiffs any injury.  Such conclusory allegations
are insufficient to plead causation, and Plaintiffs fail to state a claim for this reason.

*Fourth*, Plaintiffs fail to state a claim because they have not and cannot plausibly plead
that they suffered any injury or loss.  Because all Peloton members pay the same amount to
access Peloton's content library, regardless of how many classes are in the library, Plaintiffs'
claim that they "overpaid" for the Peloton products since fewer classes are now included fails as
a matter of law.  *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154,
1178 (D. Minn. 2014) ("[T]he fact that all customers regardless of payment method pay the same
price renders Plaintiffs' overcharge theory implausible.").

*Lastly*, Plaintiffs lack statutory standing under the NYGBL because they have not pled a
sufficient nexus between their transactions and New York State.  *See Goshen v. Mut. Life Ins.
Co. of N.Y.*, 98 N.Y. 2d 314, 324 (2002) ("[T]he transaction in which the consumer is deceived

must occur in New York."); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013) (describing relevant tests for standing).  In addition, Plaintiff Patrick Yang lacks Article III standing to bring his claims because, based on Peloton's internal records, which this Court can consider, Yang never purchased any of the products that are at issue in this case.  *See Segovia v. Vitamin Shoppe, Inc.*, 2016 WL 8650462, at *3 (S.D.N.Y. Feb. 5, 2016) ("Plaintiffs did not purchase [one of the products as issue] and therefore do not have Article III standing in their own right to assert claims arising out of its purchase.").

In sum, Plaintiffs do not, and cannot, state a claim under the NYGBL and the Court should dismiss their claims with prejudice.  *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 313 (S.D.N.Y. 2017), *aff'd* 710 F. App'x 43 (2d Cir. 2018) (dismissing with prejudice NYGBL §§ 349 and 350 claims "because Defendants' conduct was not materially misleading [and] amendment would be futile").

## STATEMENT OF FACTS

### A.   Peloton Revolutionizes the Fitness World.

Peloton offers the first-of-its-kind stationary bikes and treadmills with combined HD tablets that stream live and on-demand fitness classes by some of the world's best instructors. (*See* Compl. ¶¶ 2–4.)  Peloton's classes are in a league of their own for many reasons: inspiring instructors; a motivating and technologically advanced, patented leaderboard; live and on-demand classes; and innovative playlists.  (*See id.*)  Peloton also offers its members a choice of thousands of fitness classes in its content library.  (*See id.*)

Peloton's technology allows its members to use Peloton's state-of-the-art equipment from the comfort of their own homes.  (*See* Compl. ¶ 3.)  Members with or without Peloton-branded equipment can access Peloton's library by paying a monthly subscription fee.  (*Id.*)  All members have access to Peloton's entire content library.  (*Id.*; *see also id.* ¶ 5 (stating that Peloton only

charges a "flat monthly subscription fee" to access its content library).)  That is, all Peloton

members have access to all of Peloton's classes.

      **B.**      **Plaintiffs Agree to Peloton's Terms of Service.**

      Like most consumer-facing companies, Peloton's Terms of Service is the primary

agreement that governs the relationship between Peloton and its members.  (*See* Compl. § IV

("The arbitration clause, and all provisions contained therein, is an inextricable part of Peloton's

Terms of Service with Plaintiffs and the other Class members.")  Purchasers of Peloton's

hardware products (i.e. the Peloton Bike and Peloton Tread), agree to the Terms of Service at the

time of purchase and when accessing Peloton's content library.  (*Id.*)

      The 2018 Terms of Service applied when Fishon allegedly purchased and first used his

Peloton Tread and subscriptions and Pearlman and Yang allegedly purchased and used their

Peloton Bike and subscriptions.  (*See* Compl. ¶¶ 24–26; *see also id.* at Ex. 1 (stating the 2018

Terms of Service were updated on September 14, 2018).)  The 2017 Terms of Service, however,

applied when Fishon allegedly purchased and first used his Peloton Bike and subscription.  (*See*

*id.* ¶ 24 (alleging Fishon purchased his Bike and subscription in January 2018); *see also*

Declaration of Gil Aronow in Support of Peloton's Motion to Dismiss ("Aronow Decl.") ¶ 2, at

Ex. A (attaching 2017 Terms of Service, which were updated on September 12, 2017) ("2017

TOS").)

      As explained below, the Court should find the 2017 Terms of Service are incorporated by

reference into the Complaint because Fishon alleges the Terms govern his relationship with

Peloton, (*id.* ¶¶ 33, 36, 43, at Ex. 1), the Terms are integral to his claims, and its authenticity is

not in dispute.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting

that for purposes of a motion to dismiss "the complaint is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

    **C.**    **Peloton's Terms of Service Necessarily Make Clear That Peloton, Like Other Major Content Providers, May Edit Its Content At Its Sole Discretion.**

Peloton strives to provide its members with a choice of new and varied class content. (*See* Compl. ¶¶ 2–5.)  In doing so, Peloton is explicit about reserving its rights to control its content in the Terms of Service.  (*See id.* at Ex. 1 §§ 15, 25; 2017 TOS § 16.)  The Terms make clear that Peloton may—"***at any time, in its sole discretion***"—alter or remove any content, including music and classes.  (*Id.* (emphasis added).)  Specifically, Section 16 of the 2017 Terms of Service and Section 15 of the 2018 Terms of Service state:

> Peloton reserves the right to modify the Peloton Service, including, but not limited to updating, adding to, enhancing, modifying, ***removing or altering any Content or features of the Peloton Service***, *at any time, in its sole discretion*. . . . . [Peloton] ***does not guarantee that any content*** . . . ***will continue to be available for any length of time***.
>
> Peloton provides the ***Peloton Service on an "AS IS" and "AS AVAILABLE" basis***. . .
> Without limiting the foregoing, ***Peloton makes no representations or warranties***: . . .
>
> - That the ***Peloton Service will be uninterrupted or error-free***;
> - ***Concerning any content***, . . .
> - That ***Peloton will continue to support any particular feature*** of the Peloton Service.

(2017 TOS § 16 (emphasis added); Compl. at Ex. 1 § 15 (emphasis added).)  The 2018 Terms of Service further state in a separate section that "[b]ecause the Peloton Service is evolving over time we may ***change or discontinue all or any part of the Peloton Service***, *at any time* and ***without notice***, ***at our sole discretion***."  (Compl. at Ex. 1 § 25 (emphasis added).)

Peloton necessarily includes these provisions in its Terms of Service because—just like other content providers such as Netflix, Hulu, or Spotify—Peloton recognizes that it needs to

regularly remove certain content from its library to ensure, among other things, that the library is fresh and manageable for members (e.g. by removing old content that no one viewed in several months), and to ensure only licensed content appears (e.g. classes must be removed if they include music for which a license has expired).

Plaintiffs allege they purchased and used Peloton Bikes and/or Treads, as well as monthly subscriptions to Peloton's content library.  (*See* Compl. ¶¶ 24–26.)  In doing so, they agreed to the operative Terms of Service, and indeed sought to initially arbitrate their claims here under these Terms of Service.  (*See id*. § IV ("The arbitration clause, and all provisions contained therein, is an inextricable part of Peloton's Terms of Service with Plaintiffs and the other Class members."), at Ex. 1; *see also* 2017 TOS.)  The 2018 Terms of Service was effective on March 25, 2019.  (*See* Compl. at Ex. 1 at 1.)

### D.      Peloton Removes Classes From Its Content Library, and Plaintiffs Sue.

On March 25, 2019, in response to a now-settled and dismissed lawsuit filed by certain music publishers, Peloton removed a portion of its existing classes from its content library.  (*See* Compl. ¶¶ 13–15.)  Those music publishers alleged that Peloton did not have proper licensing for specific songs selected by its instructors and featured in several of its classes.  (*See id*.)  Out of an abundance of caution, Peloton removed classes containing the songs at issue from its content library.  (Aronow Decl. ¶ 3, at Ex. B.)  It was not the first time Peloton removed classes, and during all relevant times, Peloton's content library included thousands of classes with new classes being added each and every day.  (*See id.*; *see also* Compl. ¶ 22.)

Shortly thereafter, Plaintiffs filed suit—first in arbitration and now in federal court— claiming that the March 25, 2019 class removals deprived them of the "benefit of their bargain." (Compl. ¶ 83.)  Plaintiffs assert their claims under NYGBL §§ 349 and 350.  (*Id*. at 28–39.)

**LEGAL STANDARD**

"To state a claim [under NYGBL §§ 349 and 350], a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc*., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). A deceptive act or practice is "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y. 2d 20, 26 (1995). A court may dismiss claims brought under NYGBL §§ 349 and 350 as a matter of law. *Id*.

For a Rule 12(b)(1) motion challenging subject matter jurisdiction, a court is not restricted to the allegations in a complaint. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading."); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."); *see also Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (considering the plaintiff's credit card agreement, account history, and monthly statements on a motion to dismiss because these documents were "integral" to plaintiff's claims and plaintiff "had notice of that information"). Instead, a court can look at evidence outside the pleadings to determine whether a party has standing to bring their claims. *Id.*

Additionally, when assessing the sufficiency of the allegations in a complaint for a Rule 12(b)(6) motion to dismiss, a court may consider any attachments to the complaint. *See Schnall*, 225 F.3d at 266 (relying on several documents "integral" to the party's claims that were outside the complaint); *Chambers*, 282 F.3d at 152 ("[On a motion to dismiss,] the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 234 (2d 2016) (affirming Amazon's Order Page and Conditions of Use were "an embodiment of the contract made" between the plaintiff and Amazon and were "integral" to the complaint).

A court can likewise determine documents are incorporated by reference if they are "integral" to the complaint, *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016), or if the complaint makes "a clear, definite and substantial reference to the documents," *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010). Under this well-established law, Peloton requests that the Court consider both the 2017 and 2018 Terms of Service, (Compl. at Ex. 1; Aronow Decl. at Ex. A), as discussed below, and the March 2019 John Foley letter (Compl. ¶¶ 74–76) and Peloton's SEC filings (*id*. ¶¶ 10, 54–55, at n.10, 45–46, 48; Aronow Decl. at Exs. B, C.)—both of which are cited, quoted, and relied upon by Plaintiffs throughout their Complaint—incorporated by reference into the Complaint.

Lastly, because the agreed-upon Terms of Service contain a choice-of-law provision stating that the Terms of Service "shall be governed by the laws of the State of New York, United States of America, without regard to principles of conflicts of law," New York law applies here. (*See* 2017 TOS § 22; Compl. ¶ 33, at Ex. 1 § 21.)

## ARGUMENT

Peloton moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in light of Plaintiffs' failure to state a claim, and pursuant to Federal Rule of Civil Procedure 12(b)(1) in light of Plaintiff Yang's lack of Article III standing.

### A.    THE AGREED-UPON TERMS OF SERVICE MANDATE DISMISSAL OF PLAINTIFFS' ENTIRE COMPLAINT

This case begins and ends with Peloton's Terms of Service, which Plaintiffs acknowledge they affirmatively agreed to and even attached to their Complaint. (*See* Compl. ¶¶ 24–26, 33, 36, 43, Ex. 1.) Those agreed-upon Terms of Service repeatedly state, in plain English, that Peloton

has the unfettered right to determine what content, if any, appears on the Peloton service at any given time.  Specifically, the 2017 and 2018 Terms of Service state that:

1.     Peloton reserves its rights to modify its service, including "modifying [or] removing" its content "***at any time, in its sole discretion***," (2017 TOS § 16; Compl. at Ex. 1 §15);

2.     Peloton's service is available on an "***as is***" basis, (*id.*);

3.     Peloton does not guarantee the availability of any class, (*id.* ("Peloton . . . ***does not guarantee that any Content available on the Peloton Service . . . will continue to be available for any length of time***.")); and, in the 2018 Terms of Service only, that

4.     Peloton's content can be modified at any time without notice, (Compl. at Ex. 1 § 25 ("[B]ecause the Peloton Service is evolving over time ***we may change or discontinue all or any part of the Peloton Service, at any time and without notice, at our sole discretion***.")).

Consequently, there is no question that Peloton acted within its contractual rights when it removed class content from its service in March 2019.

Critically, New York courts routinely dismiss claims under §§ 349 and 350 where, as here, the defendant expressly disclosed its right to take the very actions plaintiffs allege to be improper.  *See A.N.R. Inv. Co.*, 25 N.Y.S. 3d at 81 (affirming dismissal of NYGBL § 349 claim as "patently insufficient" where defendant's "actions were fully authorized by the terms and conditions signed by plaintiffs"); *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) ("Where a defendant 'fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff,' an action under [NY]GBL § 349 will not lie."); *Derbaremdiker v. Applebee's Int'l, Inc.*, 2012 WL 4482057, at *6 (E.D.N.Y. Sept. 26,

2012) ("Because the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules [cited on the receipt and provided on defendant's website,] a reasonable consumer that read the Official Rules as directed would not have been misled by the statements on the receipt . . . ."); *Sands v. Ticketmaster–N.Y., Inc.*, 616 N.Y.S. 2d 362, 363 (1st Dep't 1994) ("Although plaintiff contends defendant's fees are 'excessive', there is no dispute that such fees are always disclosed by Ticketmaster."); *Zuckerman v. BMG Direct Mktg., Inc.*, 737 N.Y.S. 2d 14 (1st Dep't 2002) (holding that shipping and handling fees were not deceptive where those amounts were disclosed); *Shovak v. Long Is. Commercial Bank*, 858 N.Y.S. 2d 660, 662–63 (2d Dep't 2008) ("[T]here was no materially misleading statement, as the record indicated that the yield spread premium, which is not per se illegal, was fully disclosed to the plaintiff."); *Lum v. New Century Mortg. Corp.*, 800 N.Y.S. 2d 408, 410 (2d Dep't 2005) (same).  The result here should be the same.

Plaintiffs' related claim—that Peloton acted deceptively by failing to disclose that the purportedly inevitable March 2019 class removals—fails for the same reason.  Neither § 349 nor § 350 require Peloton to disclose that it may take actions that are plainly permitted by the agreed upon Terms of Service.  *See A.N.R. Inv. Co.*, 25 N.Y.S. 3d at 81 (holding, when affirming dismissal of NYGBL § 349 action, that where contractual provisions gave the bank defendant the right to take certain actions, "[t]he bank was not required to give plaintiffs notice of these actions"); *Kickertz v. New York Univ.*, 971 N.Y.S. 2d 271, 273–74 (1st Dep't 2013) (rejecting plaintiff's claim that university's advertising was misleading when it failed to disclose potential future curriculum changes); *Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599, 606 (S.D.N.Y. 2012) (concluding that § 349 "cannot reasonably be interpreted to require [the defendant] to disclose its hypothetical or tentative business plans").

Additionally, though Plaintiffs allege Peloton was obligated to make this disclosure because it "knew or should have known that it lacked the appropriate copyright licenses for the music accompanying the classes in its library," (Compl. ¶¶ 97, 111, 125, 140), Plaintiffs allege no facts to support this conclusory assertion.  Plaintiffs' only support is the existence of separate litigation, filed in March 2019, that Plaintiffs describe as "*alleging* that Peloton has been using [the defendants'] musical works for years in its workout videos without proper licensing." (*Id*. ¶ 13 (emphasis added); *see also id.* ¶ 12.)  This is merely a legal conclusion couched as a factual allegation, and thus should be disregarded for purposes of a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("[The court is] not bound to accept as true a legal conclusion couched as a factual allegation" because "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

What is more, Plaintiffs acknowledge that around the time of the March 2019 class removals, Peloton's Chief Executive Officer, John Foley, sent a letter to all Peloton members providing notice of the class removals.  (*See* Compl. ¶ 74; Aronow Decl. at Ex. B.)  Plaintiffs likewise acknowledge that Mr. Foley made clear in his letter that the removals were "out of an abundance of caution," and done after the "filing of the lawsuit" that "occurred after what appeared to be fruitful discussions with most of the publishers named." (*Id.*)

Accordingly, even if notice of the removals was required (and it was not), given that Peloton gave notice at the time of the class removals, it did not act deceptively under the NYGBL. *See Lebowitz*, 847 F. Supp. 2d at 605–06 (concluding that because the defendant "provided notice of its decision within a reasonable period of time [about a month], plaintiffs are unable to establish that [the defendant] deceived subscribers about its plans" and "cannot show a violation of [§ 349]").

In sum, because Peloton's Terms of Service fairly and fully disclosed that Peloton could remove class content at its sole discretion, (*see* Compl. at Ex. 1 §§ 15, 25; 2017 TOS § 16), Peloton's representation that it offered an "ever-growing" library could not deceive a Peloton purchaser regarding Peloton's ability to remove classes as a matter of law.  Without a deceptive act, Plaintiffs fail to state a claim and their Complaint should be dismissed, *in toto*, pursuant to Rule 12(b)(6).

## B.   PLAINTIFFS FAIL TO ALLEGE ANY FALSE OR MISLEADING STATEMENTS.

### 1.   The Term "Ever-growing" Constitutes Non-Actionable Puffery.

Even if all the above were not enough to mandate dismissal, Plaintiffs also cannot recover under either section of the NYGBL because the term "ever-growing" merely reflects corporate puffery and is too vague and general to be actionable.  *See In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *11 ("Puffery is not actionable under sections 349 and 350.").

Under New York law, "[p]uffery is defined as exaggerated general statements that make no specific claims on which consumers could rely."  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003); *see also Serrano*, 863 F. Supp. 2d at 167 (determining statements like "High Speed Internet" and "Faster Internet" are non-actionable puffery under the NYGBL § 349).  "Courts can determine that a statement is puffery as a matter of law."  *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017).

"Ever-growing" is nonactionable puffery because it is not quantifiable and does not provide any specific assurance that Peloton would perform in any way—and certainly not in the way purportedly imagined by Plaintiffs.  *See Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (concluding defendant's statement that its product was "the new 'Gold Standard' for cytology laboratories" was nonactionable puffery); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("[T]he Second Circuit has

recognized that advertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false.").

The term "ever-growing" does *not* indicate that Peloton would maintain a specific number of classes in its library and it does *not* indicate that Peloton would never decrease the total amount of classes offered.  Nor does it constitute a promise that Peloton would never remove, but only add classes.  Rather, the term "ever-growing" represents an unqualified, subjective, optimistic, forward-looking statement by Peloton about its content library like "faster internet."  *See Serrano*, 863 F. Supp. 2d at 167 ("'High Speed Internet,' 'Faster Internet,' and 'blazing fast speed' and that 'Optimum Online's lightning-fast Internet access takes the waiting out of the Web' . . . constitute puffery and are not actionable under § 349(a).").

As a "generalized" statement, Peloton's "ever-growing" statement "should not have been relied upon as an inducement to purchase" Peloton's products.  *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7 (concluding that the defendants' representations that their product "Grows Anywhere! Guaranteed!"; "Makes the Most Of Every Drop"; and "Grows in Tough Conditions! Guaranteed!" are non-actionable puffery, whereas their representation that a product grows grass "50% thicker with half the water" compared to "ordinary seed" was actionable).  The term "ever-growing" is exactly the type of generalized, innocent puffing that consumers can expect with any type of consumer product and cannot support Plaintiffs' claims under §§ 349 and 350.

## 2.    The Term "Ever-Growing" Is Not Deceptive or Misleading.

To be actionable under the NYGBL, a seller must make a representation that is deceptive or misleading.  NYGBL §§ 349, 350; *Tasini*, 851 F. Supp. 2d at 744–45 (dismissing claims that were not misleading).  It follows that where a seller's statements or representations are true and not misleading, a consumer cannot recover under the NYGBL.  *Id.*  That is precisely the case here: Peloton's library is, in fact, "ever-growing."

While Plaintiffs attempt to characterize Peloton's representation of an "ever-growing" library as a representation that the size of Peloton's content library would "grow as new classes were added every day" without decreasing, (*see* Compl. ¶¶ 70–71, 79), that reading and argument fails as a matter of law.

Plaintiffs do not—because they cannot—allege that Peloton guaranteed its content library would maintain any specific size or would offer Plaintiffs access to every class ever provided by Peloton.  (*See generally id*.)  Nor would Peloton ever make such a statement or guarantee given that—like other content providers such as Netflix, Hulu, or Spotify—Peloton recognizes that from time to time it must remove content for any number of reasons, including, for example, ensuring its library stays fresh for consumers and as licensing agreements expire.  Indeed, that is precisely why Peloton's Terms of Service—which Plaintiffs agreed to—so clearly state that Peloton reserves the right to adjust its class content at its "***sole discretion***."  (Compl. at Ex. 1 § 15; 2017 TOS § 16.).

Further, Peloton's statement that its library is "ever-growing" is a representation that it consistently adds new content to its content library—and on that, there is no debate.  In the Complaint, Plaintiffs recognized that "Peloton represented that 'Peloton produces nearly 24 hours of live content per day from its Peloton Bike and Peloton Tread Studios in NYC.'" (Compl. ¶ 22 (quoting a news release from November 2018).)  In the SEC filing that Plaintiffs cite and quote throughout their Complaint, (*see* Compl. ¶¶ 10, 54–55, at n.10, 45–46, 48), Peloton makes it clear that it is always adding new content.  (Aronow Decl. ¶ 4, at Ex. C).  For example, Peloton states in its S-1 form that "[Peloton] produces over 950 original programs per month and maintain a vast and constantly updated library of thousands of original fitness and wellness programs" and "[Peloton] deploy[s] new software features frequently and currently produce[s] over 950 original programs per month to keep our content library fresh and on-trend."

Accordingly, Peloton has represented its content library is always growing because it is always adding new content, even if, at times, Peloton removes certain class content, as plainly permitted by its Terms of Service.

In short, the term "ever-growing" is not rooted in the size of Peloton's content library, but instead in the availability of new content, or, to use Plaintiffs' words, in "grow[ing] as *new classes* were added every day." (Compl. ¶ 79 (emphasis added).) Because Peloton's "ever-growing" statement is true and not misleading because Peloton is constantly adding new content, Plaintiffs fail to state a claim under either section of the NYGBL.

### 3.   Plaintiffs Fail to Plead Causation.

Though reliance is not required, causation is an "essential" element to §§ 349 and 350 claims. *Abraham*, 947 F. Supp. 2d at 234–35. Because Plaintiffs fail to allege how either (a) Peloton's "ever-growing" statement or (b) alleged failure to disclose its class removals in advance caused them any injury, they fail to plead causation as a matter of law.

"To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg*, 8 F. Supp. 3d at 480 ("Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them.").

Nowhere in the Complaint do Plaintiffs allege they saw an advertisement featuring the "ever-growing" statement. Rather, Plaintiffs state the inadequate, bare legal conclusion that they "rel[ied] on Peloton's uniform representations about its 'ever growing' on-demand library of fitness classes" prior to purchasing Peloton's products. (Compl. ¶¶ 24–26.)

Although the Complaint refers to an "ever-growing" ad appearing on Peloton's Canadian website as well as an advertisement referencing a "growing," but not "ever-growing," library, Plaintiffs never set forth allegations describing any advertisements that they *actually* saw. In fact, Plaintiffs fail to even provide basic facts—such as if the advertisements they saw appeared

- 16 -

on Peloton's website, its social media pages, or on another medium. Such conclusory allegations are insufficient to allege causation under New York law. *Cf. Goldemberg*, 8 F. Supp. 3d at 480 (stating that the plaintiffs provided particular details on the types of advertisements they saw).

Without any allegations regarding whether Plaintiffs saw Peloton's "ever-growing" statements, Plaintiffs have failed to allege this essential element of §§ 349 and 350 claims, and their claims should be dismissed for this independently sufficient reason.

### 4. Plaintiffs Fail to Plead They Suffered Any Loss or Injury.

Under §§ 349 and 350, Plaintiffs must show "that [each] plaintiff was injured as a result of the deceptive practice, act or advertisement." *Pelman*, 237 F. Supp. 2d at 525. Plaintiffs' claims must also be dismissed because they have failed to sufficiently plead injury.

Because all Peloton members pay the same flat fee to access Peloton's content library, regardless of the number of classes available, Plaintiffs' theory that they "overpaid" for Peloton's hardware and subscription service since "[e]ach additional on-demand fitness class adds incremental value to Plaintiffs' and the other Class members' subscriptions," (Compl. ¶ 80), is implausible as a matter of law. (*See id*. ¶ 8 ("[P]urchasers of the Peloton Bike and Peloton Tread" must "pay a monthly price of $39" to access the content library and "Subscribers to the Peloton app ('Peloton Digital') pay a monthly price of $19.49"); *id*. ¶¶ 8, 57 (Peloton members pay "a flat monthly subscription fee").) Put differently, Plaintiffs identify no basis to claim there is or was ever a "premium" or extra amount charged or paid for the classes Peloton ultimately removed from the content library.

As numerous district courts have held, such allegations render a plaintiff's overcharge theory of injury implausible and unsustainable. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d at 1178 ("[T]he fact that all customers regardless of payment method pay the same price renders Plaintiffs' overcharge theory implausible."); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C.

2014) ("To the extent that Plaintiffs claim that some indeterminate part of their premiums went toward paying for security measures, such a claim is too flimsy to support standing. . . .  Put another way, Plaintiffs have not alleged facts that show that the market value of their insurance coverage (plus security services) was somehow less than what they paid."); *Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861–62 (D. Minn. 2015) (rejecting plaintiff's allegation because plaintiff did "not include facts that show the market value of the subscription was less than the amount paid").

Courts routinely dismiss claims that a consumer suffered injury under the NYGBL when they received the product for which they paid.  *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (finding no injury where plaintiff "does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received"); *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 416 (S.D.N.Y. 2004) (concluding that where the complaint "is bereft of any allegation that [the defendant] failed to deliver the service [the plaintiff] paid for" and the plaintiff "does not dispute that he received the services he paid for in that he was able to use his [product]," the plaintiff "failed to allege facts establishing actual injury" to state a claim under § 349); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S. 2d 9, 10 (1st Dep't 2004) (finding payment of membership fee was not a cognizable § 349 injury where plaintiff "d[id] not claim that defendant failed to deliver the services called for in the contract"). "Under New York law, frustration and disappointed expectations do not of themselves give a rise [sic] to a cognizable cause of action."  *Gomez-Jimenez v. New York Law Sch.*, 943 N.Y.S. 2d 834, 851 (Sup. Ct. 2012) (internal quotation marks and alterations omitted).

Plaintiffs cannot recover simply because they disagree with, or are unhappy about, Peloton taking actions expressly permitted by the Terms of Service to which they agreed.

## C.   LACK OF STANDING ALSO MANDATES THE DISMISSAL OF PLAINTIFFS' CLAIMS.

Even if this Court does not dismiss Plaintiffs' entire Complaint for failure to state a claim, the Complaint should nevertheless be dismissed due to fatal standing deficiencies.

### 1.   Plaintiff Yang Lacks Article III Standing.

Peloton's records, which this Court can and should consider, reveal that Plaintiff Yang has not purchased from Peloton *any* of the products at issue in Plaintiffs' Complaint; consequently, under well-established law, Yang lacks Article III standing and the Court must dismiss his claims.  (*See* Aronow Decl. ¶¶ 6–7, at Exs. D, E); Fed. R. Civ. Pro. 12(b)(1); *see Makarova*, 201 F.3d at 113 (explaining that courts may consider additional evidence on a Rule 12(b)(1) motion); *see also Segovia*, 2016 WL 8650462, at *3 (dismissing claims for which plaintiffs lacked Article III standing when they did not purchase the products at issue).

A plaintiff bears the burden of establishing standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish Article III standing, a plaintiff must show (1) that they have "suffered an injury in fact . . . which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the [defendant's] conduct . . . , and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* (internal quotation marks, alterations, and citations omitted).  Though a named plaintiff in a class action does not need to have purchased every product alleged in the complaint, the named plaintiff must have purchased *at least one* product to have Article III standing.  *See DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (affirming dismissal for lack of standing as to four products the named plaintiffs did not purchase because unpurchased products were not similar to those

purchased); *cf. Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("There is no question plaintiffs have standing to assert claims relating to the product they *did* purchase.").

Here, Peloton's records reveal that Yang has never purchased any of the Peloton products at issue. (Aronow Decl. ¶¶ 6–7, at Exs. D, E.) To the contrary, records show that Yang's Peloton account—based on information cited in his Complaint—is linked to a Peloton bike purchased by **someone else**: a person named Jake Adams, who is not a named plaintiff in this litigation. (*Id.* at Ex. D at 8 (listing Patrick Yang as an associated account to Jake Adams's account); *id.* at Ex. E at 2 (showing Peloton bike purchase by Jake Adams).) This Court can and should consider this evidence in deciding the instant motion to dismiss. *See Makarova*, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings."); *see also Schnall*, 225 F.3d at 266 (considering the plaintiff's account information when it is "integral" to the complaint). Mr. Adams also purchased the monthly subscription that Yang allegedly uses.[4] (Aronow Decl. ¶¶ 6–7, at Exs. D, E.)

In sum, though Yang alleges he suffered an injury because he did not receive the benefit of his bargain following his purchases of "Peloton's hardware and the Peloton Membership in November 2018," records reveal that there was no bargain between Peloton and Yang because he never purchased any Peloton hardware or a Peloton membership. (Compl. ¶¶ 26, 83; *see also* Aronow Decl. ¶¶ 6–7, at Exs. D, E.) Yang, therefore, lacks Article III standing and the Court should dismiss his claims. *See Lujan*, 504 U.S. at 560–61; *Segovia*, 2016 WL 8650462, at *3

---

[4] Peloton does not limit the number of users who access an active subscription on a specific Peloton Bike. (Compl. ¶¶ 9, 59; Aronow Decl. ¶¶ 5–6, at Ex. D (showing multiple accounts under one subscription).) Thus, Yang can use the Peloton Bike and monthly subscription purchased by Mr. Adams at no additional cost.

("Plaintiffs did not purchase [one of the products as issue] and therefore do not have Article III standing in their own right to assert claims arising out of its purchase.")*.

### 2.     Plaintiffs Fail to Plead Standing Under NYGBL §§ 349 and 350.

For the additional, independent reason that Plaintiffs fail to sufficiently plead statutory standing to bring claims under NYGBL §§ 349 and 350, their action must be dismissed.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (holding that each named plaintiff in a class action must plead individual standing).

As the Second Circuit held in *Cruz*, to bring a claim under NYGBL §§ 349 and 350, "the transaction in which the consumer is deceived ***must occur in New York***."  720 F.3d at 123 (citing and quoting *Goshen*, 98 N.Y.2d at 324) (emphasis added).  Interpreting *Goshen v. Mutual Life Insurance , Co. of New York*, the Second Circuit determined an out-of-state victim can have a cause of action under GBL § 349 if the deceptive transaction at issue occurs "in New York." *Id*.

Here, Plaintiffs fail to provide sufficient allegations to support standing for either the non-New York resident plaintiffs, Pearlman and Yang (the Complaint states that they are residents of Michigan and California, respectively, Compl. ¶¶ 25–26), or the New York resident plaintiff, Fishon.  Indeed, the only territorial allegations the Complaint includes are that (1) Peloton's principal place of business is in New York, and (2) Peloton's Terms of Service's selects New York law to govern.  (*Id*. ¶¶ 29–30, 33.)  These threadbare allegations are woefully insufficient to satisfy either the deception-based or transaction-based territorial approaches under *Cruz*—particularly for out-of-state residents like Pearlman and Yang who presumptively did not even enter into the transactions at issue within New York.  *See Goshen*, 98 N.Y.2d at 324; *Cruz*, 720 F.3d at 123.

To be clear, Plaintiffs do not allege where (let alone if) they saw Peloton's advertisements or through what medium (Peloton's website, commercials, on social media, in-store, etc.); how they made their purchases (whether it was online or at a brick-and-mortar boutique in New York or in any other state); or any other facts connecting Plaintiffs' transactions to New York.  *See Cruz*, 720 F.3d at 123–24 (relying on several specific allegations to link a transaction to New York); *see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547–48 (S.D.N.Y. 2014) ("[Choice-of-law provisions] may be indicative of a transaction in New York when other factors are present, [but] the mere fact that parties agreed to be bound by New York law and to resolve their disputes in courts in New York does not, in itself, provide any indication as to where a transaction occurred.").

Instead, the Complaint recognizes that "Peloton markets and sells its apparel, hardware accessories, hardware, and Subscription Service ***throughout the United States***."  (Compl. ¶ 30 (emphasis added).)  Although consumers can purchase Peloton's subscriptions and hardware through its website, Peloton also sells its products through in-home trials and at its showrooms, including those located ***outside*** of New York State.  (*See* Aronow Decl. ¶ 7, at Ex. E.)  In fact, the Peloton Bike Yang uses was purchased in Century City, California, which is located within Los Angeles County, California, where Yang resides.  (*Id.*; Compl. ¶ 26.)

For these reasons, Plaintiffs' allegations are insufficient to establish standing under the NYGBL and their claims must be dismissed.

## <u>CONCLUSION</u>

Plaintiffs' Complaint should be dismissed with prejudice.  Peloton's Terms of Service— the contract to which Plaintiffs indisputably agreed—fully disclosed to Plaintiffs that Peloton could remove classes "***at any time, in its sole discretion***."  (Compl. at Ex. 1 § 15; 2017 TOS § 16; *see also* Compl. at Ex. 1 § 25.)  This disclosure defeats Plaintiffs' claims as a matter of law.

Plaintiffs' Complaint also suffers from additional fatal flaws mandating dismissal.  The term "ever-growing" is nothing more than corporate puffery that no reasonable consumer could rely upon to mean that Peloton will never remove classes, or any amount thereof.  And because Peloton is continually adding new classes to its content library, the "ever-growing" statement is true.  Moreover, Plaintiffs have failed to allege sufficient facts to support the required elements of causation and injury.  Plaintiffs do not allege that they ***ever saw the ads at issue***.  Further, Plaintiffs have failed to adequately allege statutory standing; they provide insufficient allegations to support a nexus between their transactions and New York State.  Indeed, Plaintiff Yang appears to have never purchased the Peloton products at issue, and thus lacks Article III standing.

Accordingly, Plaintiffs' claims fail as a matter of law and their Complaint should be dismissed with prejudice.  *See Kommer*, 252 F. Supp. 3d at 313 (dismissing with prejudice NYGBL §§ 349 and 350 claims "because Defendants' conduct was not materially misleading [and] amendment would be futile").

Dated: March 13, 2020

Respectfully submitted,

HUESTON HENNIGAN LLP

By:  */s/ Steven N. Feldman*
  Steven N. Feldman, NY SBN 4775052
  sfeldman@hueston.com
  Shannon Coit, CA SBN 298694
  (*pro hac vice application forthcoming*)
  scoit@hueston.com
  Sourabh Mishra, CA SBN. 305185
  *(admitted pro hac vice)*
  smishra@hueston.com
  Ashley Artmann, CA SBN 319374
  *(admitted pro hac vice)*
  aartmann@hueston.com
  HUESTON HENNIGAN LLP
  523 West 6th Street, Suite 400
  Los Angeles, CA 90014
  Telephone:  (213) 788-4340
  Facsimile:  (888) 775-0898

  Joshua D. Liston, NY SBN 4124905
  jliston@blmllp.com
  BEYS LISTON & MOBARGHA LLP
  641 Lexington Avenue
  New York, NY 10022
  Telephone:  (646) 755-3601
  Facsimile:  (646) 755-3599

  *Attorneys for Defendant Peloton Interactive, Inc.*