## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON, ALICIA PEARLMAN, and PATRICK YANG, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  -v-<br><br>PELOTON INTERACTIVE, INC.,<br><br>    Defendant. | 1:19-cv-11711 (LJL) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Adam J. Levitt
alevitt@dicellolevitt.com
Adam Prom
aprom@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602

Greg G. Gutzler
ggutzler@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
444 Madison Avenue, Fourth Floor
New York, New York  10022

Ashley C. Keller
ack@kellerlenkner.com
Aaron M. Zigler
amz@kellerlenkner.com
**KELLER LENKNER LLC**
150 North Riverside Plaza, Suite 4270
Chicago, Illinois  60606

*Attorneys for Plaintiffs and the Proposed Class*

## TABLE OF CONTENTS

STATEMENT OF FACTS .................................................................................................2

ARGUMENT........................................................................................................................4

    I.    Plaintiffs Properly Allege Claims under GBL Sections 349 and 350.............................4

        A.    Plaintiffs Adequately Allege Actionable Misstatements and Omissions.................6

            1.    "Ever-Growing" is Not Puffery .................................................................8

            2.    Plaintiffs Adequately Allege that Peloton's "Ever-Growing" Representation was likely to Mislead a Reasonable Consumer.................................................................................10

            3.    Peloton's Terms of Service Do Not Excuse Its Conduct....................................13

        B.    Plaintiffs Adequately Allege Causation .................................................................17

        C.    Plaintiffs Adequately Allege Injury .......................................................................18

        D.    Plaintiffs Adequately Allege A New York Transaction ..........................................20

    II.    Plaintiffs Have Standing to Bring Their Claims........................................................21

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.N.R. Inv. Co. v. HSBC Private Bank,*
  25 N.Y.S.3d 78 (N.Y. App. Div. 2016) ...............................................................................16

*Ackerman v. Coca–Cola Co.,*
  No. 09-CV-0395-JG-RML, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...................7, 19

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012).................................................................................................12

*Avola v. Louisiana-Pac. Corp.,*
  991 F. Supp. 2d 381 (E.D.N.Y. 2013)...................................................................................9

*Axon v. Citrus World, Inc.,*
  354 F. Supp. 3d 170 (E.D.N.Y. 2018).................................................................................22

*Brady v. Anker Innovations Ltd.,*
  No. 18-CV-11396 (NSR), 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) ...............................7

*Carlsen v. Gamestop, Inc.,*
  112 F. Supp. 2d 855 (D. Minn. 2015)..................................................................................19

*Cline v. TouchTunes Music Corp.,*
  211 F. Supp. 3d 628 (S.D.N.Y. 2016).................................................................... 4, 20, 21

*Cline v. TouchTunes Music Corp.,*
  No. 14-CV-4744, 2015 WL 127843 (S.D.N.Y. Jan. 7, 2015)............................................20

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,*
  228 F.3d 24 (1st Cir. 2000) ...................................................................................................9

*Colangelo v. Champion Petfoods USA, Inc.,*
  No. 618-CV-1228-LEK-ML, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ........................6

*Cruz v. FXDirectDealer, LLC,*
  720 F.3d 115 (2d Cir. 2013)......................................................................................... 20, 21

*Cummings v. FCA US LLC,*
  401 F. Supp. 3d 288 (N.D.N.Y. 2019) .............................................................................4, 18

*Cytyc Corp. v. Neuromedical Sys., Inc.,*
  12 F. Supp. 2d 296 (S.D.N.Y. 1998).....................................................................................8

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018) .................................................................... 5

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ...................... 16

*Dimond v. Darden Restaurants, Inc.*,
  No. 13 CIV. 5244 KPF, 2014 WL 3377105 (S.D.N.Y. July 9, 2014) .............................. 16

*Dubuisson v. Stonebridge Life Ins. Co.*,
  887 F.3d 567 (2d Cir. 2018) ................................................................................ 21, 22

*Farina v. Metro. Transportation Auth.*,
  409 F. Supp. 3d 173 (S.D.N.Y. 2019) ......................................................................... 4

*In re Ford Fusion & C-MAX Fuel Econ. Litig.*,
  No. 13-MD-2450 (KMK), 2017 WL 3142078 (S.D.N.Y. July 24, 2017) ......................... 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ......................................................................... 9

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................. 17, 18, 19

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314 (2002) ...................................................................................... 14, 15

*Hertz Corp. v. Accenture LLP*,
  No. 19-CV-3508, 2019 WL 5537997 (S.D.N.Y. Oct. 25, 2019) ................................... 6

*Holve v. McCormick & Co.*, Inc.,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ....................................................................... 4

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017) .................................................................................... 22

*Kacocha v. Nestle Purina Petcare Co.*,
  No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) .............. 6, 11, 22

*Kickertz v. New York Univ.*,
  971 N.Y.S.2d 271 (N.Y. App. Div. 2013) ................................................................. 16

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940 (2012) ............................................................................................ 14

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) ...................................................................... 18

iii

*Kommer v. Ford Motor Co.*,
No. 117CV296LEKDJS, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ............................................ 9

*Krobath v. S. Nassau Communities Hosp.*,
178 A.D. 3d 807 (N.Y. App. Div. 2019) .......................................................................................... 4

*Lazaroff v. Paraco Gas Corp.*,
967 N.Y.S.2d 867, 2011 WL 9962089 (N.Y. Sup. Ct. Kings Cty., Feb. 25, 2011) ........................ 18

*Lebowitz v. Dow Jones & Co.*,
847 F. Supp. 2d 599 (S.D.N.Y. 2012) ........................................................................................... 16

*Lugones v. Pete & Gerry's Organic, LLC*,
No. 19 CIV. 2097 (KPF), 2020 WL 871521 (S.D.N.Y. Feb. 21, 2020) .................................. 6, 7, 8

*Lum v. New Century Mortg. Corp.*,
800 N.Y.S.2d 408 (N.Y. App. Div. 2005) ..................................................................................... 16

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020) ................................................................................................. 2, 5, 11

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ..................................................................................................................... 12

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
419 F. Supp. 3d 668 (S.D.N.Y. 2019) .......................................................................................... 10

*In re MTBE Products Liability Litig.*,
725 F.3d 65 (2d Cir. 2013) .......................................................................................................... 22

*Orellana v. Macy's Retail Holdings, Inc.*,
No. 17 CIV. 5192 (NRB), 2018 WL 3368716 (S.D.N.Y. July 10, 2018) ...................................... 15

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .................................................................................................... 4, 18

*Pelman v. McDonald's Corp.*,
237 F. Supp. 2d 512 (S.D.N.Y. 2003) ............................................................................................ 8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005) ..................................................................................................... 4, 8

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013) ............................................................................................ 7

*Sand v. Ticketmaster–N.Y., Inc.*,
616 N.Y.S.2d 362 (N.Y. App. Div. 1994) .................................................................................... 16

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ..................................................................................19

*In re Scotts EZ Seed Litig.*,
    No. 12 CV 4727 VB, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) .................................9

*Serrano v. Cablevision Sys. Corp.*,
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) ...........................................................................8

*Shovak v. Long Is. Commercial Bank*,
    858 N.Y.S.2d 660 (N.Y. App. Div. 2008) ....................................................................16

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) ...........................................................................8

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) ..........................................................................19

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ..........................................................................................5

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ...........................................................................7

*Ward v. TheLadders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y. 2014) ...................................................................8, 14, 15

*Wedra v. Cree, Inc.*,
    No. 19 CV 3162 (VB), 2020 WL 1322887 (S.D.N.Y. Mar. 20, 2020) ..........................6, 8

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................................................19

*Yuzwak v. Dygert*,
    534 N.Y.S.2d 35 (N.Y. App. Div. 1988) .........................................................................7

*Zuckerman v. BMG Direct Mktg., Inc.*,
    737 N.Y.S.2d 14 (N.Y. App. Div. 2002) .......................................................................16

**Statutes**

New York General Business (NYGBL) §§ 349 and 350 ..................................................passim

**Rules**

Fed. R. Civ. P. 8(a) ...........................................................................................................4

Fed. R. Civ. P. 9(b) ...........................................................................................................4

Fed. R. Civ. P. 12(b)(6) .....................................................................................................6

Plaintiffs' claims are simple.  Peloton advertised its digital library of exercise classes as "ever-growing" and "growing."  Class Action Complaint ("Compl."), ECF No. 1 at ¶¶ 9, 53, 57, 59, 60.  Plaintiffs bought Peloton bikes and subscriptions to its digital library of classes in reliance on that promise.  Compl. at ¶¶ 24-26.  Simply stated, Plaintiffs reasonably believed that after they paid thousands of dollars for Peloton's top-of-the-line exercise bike that Peloton would live up to its end of the bargain by providing a library of classes would get bigger and bigger.

But, it turns out, Peloton was cutting corners.  Peloton had failed to secure the media rights for the songs used in most of its classes.  No later than April 9. 2018, Peloton knew that it might be forced to decimate its class offerings, because it had not secured the media rights to the songs used in most many of its classes and it received a cease-and-desist letter on that date regarding the infringing works.  Compl. at ¶¶ 12, 19, 66, 67.  But Peloton never disclosed to its customers Peloton's lack of licensing or that it was on notice of alleged infringement regarding more than half the classes in its library.  Compl. at ¶¶ 27, 82.  And, because it had not secured the media rights to these works, the library did not grow—rather, it shrank significantly.  On March 25, 2019, almost a year after it received the April 9 cease-and-desist letter, Peloton removed an estimated 5,739 classes from its supposed "ever-growing" library—57% of the total available classes.  Compl. at ¶¶ 14, 15, 69.

Plaintiffs were deceived. They would not have purchased a Peloton bike or subscription on the same terms if they had known the truth.  Compl. at ¶ 28.  And Peloton's deception injured Plaintiffs, because they overpaid, and Peloton cashed in.  Compl. at ¶ 102.  Plaintiffs paid more—both for their bikes and for their monthly subscriptions than they would have had they known the truth, and the product they received was worth less than represented.  Compl. at ¶ 28.  Gutting the Peloton class library materially lowered the value of plaintiffs' subscriptions.  Compl. at ¶ 80.  Peloton's conduct violates New York's prohibition of deceptive practices and false advertising.

1

To survive a motion to dismiss, a complaint must contain sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020).  Plaintiffs' complaint easily clears this low bar.

## STATEMENT OF FACTS

Peloton is an exercise equipment and media company that was founded in 2012 with its corporate headquarters and principal place of business located in New York, New York.  Compl. at ¶¶ 2, 29.  Peloton bills itself as "the largest interactive fitness platform in the world," claiming, as of September 30, 2019, to have more than 1.6 million members, and 2019 revenues of $915 million. Peloton is publicly traded on NASDAQ, and as of the date of the Complaint, had a market cap of $8.26 billion.  Compl. at ¶ 31.

While other fitness companies sell stationary bikes, in-studio workout classes, and instructional home workout media, Peloton differentiates itself by marketing access to an "ever-growing" and "growing" digital library of fitness classes led by professional instructors, available on-demand 24 hours per day, 7 days per week, from the comfort of one's home, for a flat monthly subscription fee. Compl. at ¶¶ 5, 9, 52-53.  Indeed, the size and "ever-growing" nature of Peloton's on-demand digital library has always been—and continues to be—central to Peloton's marketing, because "the hardware is only as good as the app and subscription that comes with it."  Compl. at ¶¶ 6, 57-63.  Peloton's website touted its "thousands of boutique classes" as an "ever-growing library of live and on-demand studio classes," and "unlimited access to a growing library of live streaming and on-demand classes." Compl. at ¶ 9.

Peloton knew that it was, in part, building its on-demand library with copyrighted material for which it had not obtained the required media rights.  Peloton entered into licenses with certain copyright holders, while, at the same time, using other musical works without permission.  Compl. at ¶ 11.  In April 2018, Peloton received a cease-and-desist letter from the National Music Publishers

Association ("NMPA"), regarding Peloton's alleged copyright infringement of many songs appearing in its on-demand class library. Compl. at ¶¶ 11-12, 65-66. Despite this notice, Peloton continued to promise an "ever-growing" and "growing" class library to consumers. Compl. at ¶¶ 9, 12, 67-68, 77, 82. Almost one year after receiving that cease-and-desist letter, Peloton was sued by NMPA members, who alleged that Peloton had been using their musical works in its classes for years without proper licensing. Compl. at ¶ 13.

In response, on March 25, 2019, Peloton removed every class from its on-demand library that contained one or more of the allegedly copyright infringing songs, resulting in Peloton's removal of more than half of the classes—over five thousand—from its on-demand library. Compl. at ¶¶ 14-15, 69-71. Peloton's removal of on-demand classes from its library has significantly decreased the quantity of classes available in that library (the opposite of "ever-growing"), as well as the quality and quantity of popular music available on Peloton's workout class playlists, which has materially diminished users' experience with the Peloton bike subscription service. Compl. at ¶¶ 16, 73.

At no time during any of its sales to Plaintiffs and the other Class members, nor at any time during the Class period alleged in this action, did Peloton disclose to Plaintiffs or the other Class members that it would be removing over half of the classes from its on-demand library. *Id.* Peloton continued to charge full price for its subscription service, despite knowing that its subscribers would necessarily not be receiving everything that Peloton represented they would receive, namely an "ever-growing" and "growing" library of on-demand classes. Compl. at ¶¶ 21, 79-83. Plaintiffs were thus not only deprived of the value they expected from Peloton's offered classes, but also of the stream of future value they expected—and paid—to receive through Peloton's promise of an ever-growing and growing class library.

## ARGUMENT

**I.      Plaintiffs Properly Allege Claims under GBL Sections 349 and 350.**

New York General Business Law § 349 outlaws deceptive acts and practices. Section 350 declares false advertising unlawful. "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices." *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016).

To state a claim under either of these statutes, a plaintiff must plead: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019) (*quoting Denenberg v. Rosen*, 897 N.Y.S. 2d 391 (2010)). New York law prohibits both material omissions as well as affirmative representations. *Krobath v. S. Nassau Communities Hosp.*, 178 A.D. 3d 807, 809 (N.Y. App. Div. 2019). To state an omission claim, a plaintiff must allege that the defendant alone possessed material information and failed to disclose that information. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019). Claims under these sections are not subject to the particularity requirements of Rule 9(b). They "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *Holve v. McCormick & Co.*, Inc., 334 F. Supp. 3d 535, 557 (W.D.N.Y. 2018) ("Claims under GBL §§ 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b).").

Peloton has not challenged the consumer-oriented nature of Plaintiffs' claims. It instead argues that Plaintiffs have not adequately alleged that Peloton engaged in deceptive acts, nor have Plaintiffs adequately alleged that they and the other Class members were injured as result of that deception. Memorandum of Law ("Mem."), ECF No. 30 at 13-18. It also questions Plaintiffs' standing. Mem. at 19-22. Peloton is wrong on all fronts.

Plaintiffs adequately allege both misrepresentation and omission claims against Peloton.  All that must be alleged at this stage of the proceeding is that, "on account of a materially misleading practice, [Plaintiffs] purchased a product and did not receive the full value of [their] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (*citing Small v. Lorillard Tobacco Co.*, 720 N.E. 2d 892 (N.Y. 1999)).  Plaintiffs more than meet this standard.

Peloton lied about its library of classes.  Peloton advertised its digital library as "ever-growing" and "growing."  Compl. at ¶¶ 9, 53, 57, 59, 60.  Plaintiffs bought their bikes and subscriptions in reliance on that promise, and part of their payment was to ensure they would have access to this "ever-growing" library.  Compl. at ¶¶ 24-26.  Not a static library; not an oscillating library.  An ever-growing library.  But Peloton knew as early as April 9, 2018, that it may be forced to remove many classes from its library, because it had not secured the media rights to the songs used in those classes.  Compl. at ¶¶ 12, 19, 66-67.  Peloton never disclosed this material fact.  Compl. at ¶¶ 27, 82.  And then, the library did not grow – it shrank.  By a lot.  On March 25, 2019, Peloton removed an estimated 5,739 classes, constituting 57% of the total available classes, from its library.  Compl. at ¶¶ 14, 15, 69.

Plaintiffs were deceived.  Peloton's misrepresentations and omissions defrauded them. Compl. at ¶¶ 23, 78, 83.  They did not know the truth.  Compl. at ¶ 102.  Plaintiffs would not have purchased on the same terms if they had.  Compl. at ¶ 28.  And Peloton's lies legally injured Plaintiffs.  Quite simply, Plaintiffs overpaid for what Peloton knew they would receive.  Compl. at ¶ 102.  Plaintiffs paid more than they would have, and product was worth less than Peloton represented.  Compl. at ¶ 28.  The removal of classes materially diminished users' experience by significantly decreasing the quality and quantity of popular music available.  Compl. at ¶ 16.  Gutting the library materially lowered the value of plaintiffs' subscriptions.  Compl. at ¶ 80.  These allegations do more than "merely create[] a suspicion of a legally cognizable right of action."  *See Lynch*, 952 F.3d at 74 (2d Cir. 2020) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Peloton's motion should be denied.

## A.  Plaintiffs Adequately Allege Actionable Misstatements and Omissions

Peloton offers two alternative arguments challenging Plaintiffs' claims that its representations were likely to mislead a reasonable consumer acting reasonably under the circumstances, but neither is sound.  First, it argues that no one could reasonably believe its representation that its library was "ever-growing" (*i.e.*, it is just puffery).  Mem. at 13-14.  Puffery "is a subjective statement or claim that cannot be proven true or false."  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (puffery consists of "subjective claims about products, which cannot be proven either true or false") (internal quotation omitted).  Peloton goes on to argue that the Court should find no reasonable consumer could be misled by its claims because its library somehow really *is* "ever-growing."  Mem. at 14-15.

As an initial matter, the Court should decline Peloton's invitation to accept the veracity of its arguments about reasonableness at this stage of the proceedings.  Generally, the question of whether a practice is deceptive is a matter for the jury.  *Hertz Corp. v. Accenture LLP*, No. 19-CV-3508, 2019 WL 5537997, at *4 (S.D.N.Y. Oct. 25, 2019) ("Ordinarily, the question of whether a business practice is deceptive, is a question of fact not appropriately resolved on a motion to dismiss."); *Lugones v. Pete & Gerry's Organic, LLC*, No. 19 CIV. 2097 (KPF), 2020 WL 871521, at *9 (S.D.N.Y. Feb. 21, 2020) ("There is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage."); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (collecting cases); *Wedra v. Cree, Inc.*, No. 19 CV 3162 (VB), 2020 WL 1322887, at *8 (S.D.N.Y. Mar. 20, 2020) (rejecting defendant's argument that any allegedly misleading statements were truthful, because "[s]uch a determination is not appropriate at this early stage of the proceedings, before the parties have had an opportunity to conduct discovery and assess the veracity of defendant's statements"); *Colangelo v. Champion Petfoods USA, Inc.*, No. 618-CV-1228-LEK-ML, 2020 WL 777462, at *9 (N.D.N.Y. Feb. 18,

2020) ("Courts have generally held that such a reasonableness inquiry is an issue of fact for the jury and should not be resolved on a motion to dismiss."; "courts are more often reluctant to label claims non-actionable puffery…at the motion to dismiss stage"); *Yuzwak v. Dygert*, 534 N.Y.S.2d 35, 36 (N.Y. App. Div. 1988) (explaining that when a statement is not obviously puffing, the question of whether it is fact or opinion is "almost always a question of fact for a jury's resolution"); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) ("whether a particular act or practice is deceptive is usually a question of fact."); *Ackerman v. Coca–Cola Co.*, No. 09-CV-0395-JG-RML, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss"); *Brady v. Anker Innovations Ltd.*, No. 18-CV-11396 (NSR), 2020 WL 158760, at *9  n. 9 (S.D.N.Y. Jan. 13, 2020) ("[W]hether a statement is deceptive or misleading is a question of fact that is improper for the Court to resolve on a motion to dismiss.").

As Judge Weinstein prudently observed when asked to dismiss a Lanham Act case on the pleadings:

> A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare, "Because I appreciate that the television campaign is just expressing a far-fetched opinion and not making a statement of fact, all viewers must appreciate it as well." Yet, that is what the court is expected to do when it is asked to characterize a video as "mere puffery." Arguably, the communication intended by YB USA and understood by the viewer is defendant's—to wit, "The Yellow Book is preferred by potential users over the competitor's." It may, however, mean something quite different to the viewer. This central issue cannot be resolved without surveys, expert testimony, and other evidence of what is happening in the real world of television watchers and advertisers in yellow pages.

*Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004).  The Court should decline to decide these issues as a matter of law without the benefit of discovery.

### 1.  "Ever-Growing" is Not Puffery

Even at this early stage of the proceedings, however, it is apparent that Peloton's misrepresentations are neither vague claims of superiority nor unvarnished bluster.  Peloton's misrepresentations are actionable.  The promises of an "ever-growing" and "growing" library are objective statements that can be tested and are therefore actionable under New York law.  Cases in this district demonstrate the difference between actionable statements and non-actionable puffery. For example, In *Lugones*, 2020 WL 871521, at *9, the court found advertising like "we love our hens, you'll love our eggs" and "better lives for hens means better eggs for you" as examples of puffery. But the court found actionable defendant's statement that "...Our hens can peck, perch, and play on plenty of green grass," because, unlike the vague, puffing claims, this statement makes a factual claim that "provides enough specificity to elevate itself beyond puffery."  *Id.*; *see also Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 169 n.9 (S.D.N.Y. 2014) (discussing how statements at issue (*e.g.*, "experts pre-screen all jobs so they're always $100K+,") are not puffery compared to those in another case touting internet service as "blazing fast" and "fastest, easiest way to get online"); *Wedra*, 2020 WL 1322887, at *8 (concluding that a commendation of the goods at issue is non-actionable puffery but defendant's other statements concerning cost savings and a ten-year warranty are closer to factual assertions and actionable; declining to dismiss section 349 and 350 claims).

Moreover, Peloton's own cases make the difference clear.  Phrases such as "the new Gold Standard" and "The Complete Sports Drink" have been considered non-actionable puffery.  *See* Mem. at 13 (*citing Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) and *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998)).  That is "because they are subjective and cannot be proven true or false." *Stokely-Van Camp, Inc.*, 646 F. Supp. 2d at 526.[1]  But

---

[1] Peloton relies on other cases that involve such statements.  *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 527–28 (S.D.N.Y. 2003) (merely encouraging people to eat at McDonald's "everyday" is puffery in the absence of a claim that to do so will result in a specific effect on health); *Serrano v. Cablevision Sys. Corp.*, 863 F.

claims that are specific and measurable are actionable, like EZ Seed grows grass "50% thicker with half the water" compared to "ordinary seed," and EZ Seed is "developed to thrive in virtually every condition—harsh sun, dense shade, and even spreads to repair wear and tear."  *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013).  In other words, *was* EZ seed developed to thrive in virtually every condition, and *is* it 50% thicker with half the water? "These statements promise that EZ Seed will perform in specific, measurable ways; namely, that it grows thicker grass with less water than normal grass seed, and is versatile enough to grow in both sunny and shady areas."  *Id.*; *see also In re Ford Fusion & C-MAX Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2017 WL 3142078, at *10 (S.D.N.Y. July 24, 2017) (representation of better gas mileage is not puffery because it is not a "subjective claim which cannot be proven either true or false, nor is it a vague statement of a product's superiority."); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017) (advertisements discussing its vehicles' "world class engineering" and "advanced safety and security features," not puffery, because they "could be objectively measured"); *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 393 (E.D.N.Y. 2013). (advertisement that siding "work and cut just like traditional wood, taking nails and screws with ease" is actionable as it is quantifiable); *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 38 (1st Cir. 2000) ("Compare with your detergent… whiter is not possible" is not puffery since claim is "specific and measurable").

Peloton's promise that its class library would be "ever-growing" is not an opinion (like "we love our hens, you'll love our eggs"), nor is it so vague, non-specific, and amorphous as to be effectively meaningless (like "The Complete Sports Drink").  Rather, it is a specific and measurable representation made to Plaintiffs and the other Class members, promising that the size of Peloton's

---

Supp. 2d 157, 167 (E.D.N.Y. 2012) (phrases like "High Speed Internet" and "blazing fast speed" are puffery); *Kommer v. Ford Motor Co.*, No. 117CV296LEKDJS, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) ("Built Ford-Tough" is exaggerated and generalized, and at least one court had already held the slogan to be puffery).

class library would continue to grow for as long as Peloton offered its service. The plain meaning of Peloton's representation was its promise that its class library would "always" "increase in size" or "expand." *See* Ever, Merriam-Webster, https://www.merriam-webster.com/dictionary/ever (last accessed Apr. 2, 2020); Grow, Merriam-Webster, https://www.merriam-webster.com/dictionary/growing (last accessed Apr. 2, 2020). By making a specific factual representation regarding the size of its on-demand class library, Peloton went beyond the platitudes offered in the cases that it cites, and instead made actionable misrepresentations on which Plaintiffs reasonably relied.

Whether the library was in fact "ever-growing" is plainly quantifiable. For example, if the library goes from 100 classes to 101 classes, it has grown. On the other hand, if the library goes from 13,000 classes to 6,000 classes, it has not grown. Peloton advertises an "ever-growing" library; this is an objective and testable statement: $f(x) < f(x + 1)$ where $x$ is time and $f(x)$ is Peloton's library size. Because the size of the class library can be quantified over time, and the change in that size can similarly be quantified, Peloton's promise of an "ever-growing" class library is not puffery.

### 2. Plaintiffs Adequately Allege that Peloton's "Ever-Growing" Representation was likely to Mislead a Reasonable Consumer

A practice is deceptive under GBL Sections 349 and 350 when it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) (*quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). Peloton argues that Plaintiffs fail to adequately allege a misleading act or practice because it claims that its "ever-growing" representation was true. To do so, Peloton posits an alternative meaning for "ever-growing" and claims that Plaintiffs admit that Peloton adds new content to its library every day. Mem. at 15. Plaintiffs admit no such thing. To suggest so is specious. Plaintiffs simply cite and quote Peloton's representations that it

does.  Compl. at ¶ 79.  Plaintiffs do not adopt Peloton's representations as their own.

Plaintiffs allege that Peloton advertised its digital library as "ever-growing" and "growing."  Compl. at ¶¶ 9, 53, 57, 59, 60.  And Peloton's misrepresentations and omissions "defrauded" them, Compl. at ¶¶ 23, 78, 83, when Peloton removed an estimated 5,739 classes—constituting 57% of the total available classes—from its library.  Compl. at ¶¶ 14, 15, 69.  The plain meaning of "ever-growing" is always increasing or expanding in size.  Even if Peloton added new content every day, it still would not be accurate to describe a library with more than 10,000 classes on one day and less than 4,500 the next as "growing."  Compl. at ¶ 70.  That library is shrinking.

If Peloton wanted to advertise its library as constantly adding classes but not increasing in size, it could have represented it to be "ever-changing" or "ever-refreshing" or "ever-evolving," but Peloton chose "ever-growing."  Accordingly, Plaintiffs expected a library that would continue to "grow," as Peloton repeatedly represented.  Compl. at ¶ 20.  But Peloton removed more than half of its classes in one day, setting its growth back more than a year.  Compl. at ¶¶ 14, 15, 69.  Plaintiffs plausibly allege that, under these circumstances, Peloton's representation that its library is "ever-growing" was likely to mislead a reasonable consumer acting reasonably under the circumstances.  *See Kacocha*, 2016 WL 4367991, at *15 (court cannot conclude plaintiff has not plausibly alleged that defendant's conduct was misleading in a material way when plaintiff claimed that she believed the products were predominantly made out of real pork bacon based on the products' scent and appearance, repeated references to bacon, and the package's prominent depiction of bacon, when bacon and bacon fat are the tenth and twelfth ingredients.).

At this stage in the proceedings, the Court must assume Plaintiffs' allegations to be true and construe all reasonable inferences in the light most favorable to them.  *Lynch*, 952 F.3d at 75.  Accordingly, it is insufficient for Peloton to simply suggest a possible, or even plausible, alternative meaning.  A court may not dismiss a complaint that states a plausible version of the events, even if

the court finds a different version more plausible.  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *c.f. Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (finding investors adequately alleged scienter when a reasonable person would deem the inference of deliberate recklessness at least as compelling as any opposing inference one could draw from the facts alleged.). Plaintiffs have adequately alleged Peloton's description of its library as "ever-growing" and "growing" is a misleading act or practice.

Plaintiffs have also adequately alleged that Peloton failed to disclose a material fact:  Peloton knew that its statements concerning an "ever-growing" library were false and misleading, because Peloton knew or should have known that it was building its on-demand library with infringing music that violated applicable copyright laws.  Compl. at ¶¶ 64-78.  As early as April 2018, Peloton was put on actual notice of its copyright infringement when it received a cease-and-desist letter for failure to obtain the rights necessary for much of the music in Peloton's on-demand classes.  Compl. at ¶ 12. While continuing to promise consumers an "ever-growing" library for more than a year, Peloton removed *more than half* of the on-demand classes from the library overnight.  Compl. at ¶¶ 14, 15, 69. That purge left the number of available classes at a level roughly equal to what was available to consumers in January 2017.  Compl. at ¶ 12.  It is material to Peloton's customers that Peloton had failed to secure the rights to more than half of its classes and thus would have to cut its library by more than half, thus giving rise to an omission claim under New York law.

Peloton labels these allegations as conclusory and suggests that Plaintiffs' only fact to support Peloton's knowledge is that it was sued for copyright infringement in March 2019, for using musical works for years without proper licensing.  Compl. at ¶ 13 (the lawsuit alleged, in pertinent part, that "Peloton's infringement was and continues to be knowing and reckless" and that "Peloton fully understood what the copyright law required, having entered into sync licenses with certain other copyright holders, while trampling the rights of Plaintiffs by using their musical works for free and

without permission.").  But Peloton ignores Plaintiffs' many other allegations that support Peloton's knowledge. *See, e.g.,* Compl. at ¶¶ 12, 66, 98, 112, 126, 141 (detailing the April 2018 cease-and-desist letter).

Peloton also tries to gloss over Plaintiffs' allegations about a March 2019 letter from Peloton's CEO in which he informed subscribers after-the-fact that Peloton had removed classes from its library. *Id.* at ¶¶ 17, 74.  Peloton contends that that correspondence gave notice of the class purge to consumers.  Mem. at 12.  But Plaintiffs had already seen Peloton's representations of an "ever-growing" and "growing" on-demand class library and purchased their bikes and subscriptions by the time the CEO sent that correspondence, so the letter does not cure Peloton's actions and is largely irrelevant.  Regardless, the CEO's letter also does not tell Plaintiffs and the other Class members the truth.  Plaintiffs allege that the CEO's correspondence, itself, "*did not disclose* that [the purge] would result in removal of over half of the on-demand classes in [Peloton's] digital library or that it would significantly decrease the quality and quantity of popular songs and artists available for its playlists." Complaint at ¶ 74 (emphasis added).  What's more, Plaintiffs allege that the CEO's correspondence "falsely promised" that the class removal will not affect consumers' experience with the Peloton service.  *Id.* at ¶¶ 75-76.  Therefore, because the CEO's correspondence fails to sufficiently give Plaintiffs and the other Class members notice of the class purge and how it affects their experience with Peloton's service, the correspondence does not support Peloton's dismissal bid.  In sum, Plaintiffs have adequately alleged actionable false and misleading acts in Peloton's affirmative misrepresentations and in its material omissions.

### 3.   Peloton's Terms of Service Do Not Excuse Its Conduct

Peloton argues that its Terms of Service grant it the unfettered right to determine what content, if any, appears on the Peloton service at any given time and that this supposed right excuses it from liability.  Mem. at 9-10.  Not so.  New York courts have concluded that disclaimers, alone, are

insufficient to dismiss Section 349 and 350 claims at the pleading stage. *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 326-7 (2002) (disclaimers "do not establish a defense as a matter of law"). In *Goshen*, the plaintiffs alleged that the service they purchased was defective due to malfunctions within defendants' control, that defendants knew this to be the case, and that defendants' promotional representations were deceptive. *Id.* The New York Court of Appeals reversed the trial court's dismissal and reinstated plaintiffs' Section 349 and 350 claims, because defendants' contractual terms and conditions, including a product disclaimer, did not bar plaintiffs' claims for deceptive practices or establish a defense as a matter of law. *Id.*; *see also Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (reversing dismissal because plaintiff sufficiently pleaded Section 349 and 350 claims, and the disclaimers in defendants' catalogs did not establish a defense as a matter of law; citing *Goshen*).

Courts in this district have followed the New York Court of Appeals' decision in *Goshen* when allowing Section 349 and 350 claims to proceed, despite defendants' reliance on terms and conditions and other disclaimers. For example, in *Ward*, 3 F. Supp. 3d at 168–69, the plaintiffs alleged that representations regarding the quality of job listings and services were materially misleading, but the defendant—just like Peloton here—argued that they were not misleading and could not have caused the plaintiffs' injuries, because the terms of use contained "as is" and "as available" language that would not guarantee the quality of the job listings and the services. In *Ward*, the court noted that *Goshen* "specifically addressed this scenario" by holding that such disclaimers in a service agreement were insufficient to establish a defense as a matter of law. *Id.* Therefore, the *Ward* court allowed the plaintiffs' claims to proceed beyond the motion to dismiss stage, because like *Goshen*, the plaintiffs alleged misrepresentations and failures within the defendant's control. *Id.* Notably, *Ward* distinguished cases like the ones upon which Peloton relies, because those cases did not involve terms of use that contradicted defendant's affirmative representations or services that were defective in a manner within the defendant's control. *Id.* at 169, n. 9.

14

Similarly, in *Orellana v. Macy's Retail Holdings, Inc.*, the court pointed to the *Goshen* and *Ward* decisions when finding that "a misrepresentation is not cured as a matter of law by a contradictory disclaimer, at least where the subject matter of the misrepresentation is within the defendant's control." No. 17 CIV. 5192 (NRB), 2018 WL 3368716, at *14–15 (S.D.N.Y. July 10, 2018). In *Orellana*, the plaintiffs alleged a scheme whereby the defendant detained suspected shoplifters, promised the detained individuals that they would be released so long as they completed a civil demand notice (agreeing to pay a civil penalty) and signed a confession, but then contrary to that promise, the defendant called the police and held the individuals until they were arrested. *Id.* at *2. The court found that defendant's reliance on language in the civil demand notice failed to disclaim that the plaintiffs would not be released irrespective of whether they signed confessions or agreed to pay civil penalties. *Id.* at *14–15. And even if the defendant's civil demand notice could be read as notifying plaintiffs that, contrary to defendant's oral representations, they would not be released from detention and instead arrested, "plaintiffs would still have alleged an actionable misleading practice because the ability to release plaintiffs as opposed to continuing to detain them and having them arrested was solely within [defendant's] control." *See id.* ("the mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations." (*quoting Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG)(RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014))).

Here, Plaintiffs allege that Peloton's Terms of Service contradict its misrepresentations, and that the defect was within Peloton's control. While continuing to promise consumers an "ever-growing" and "growing" library, nearly one year *after* receiving a cease-and-desist letter, Peloton removed *more than half* of the on-demand classes from the library. Compl. at ¶¶ 64-78. Thus, directly contrary to Peloton's promise of an "ever-growing" and "growing" library of classes, its on-demand library materially shrank by thousands of classes. Compl. at ¶ 71. This misrepresentation was entirely

within Peloton's control. Peloton could have either only used works for which it had obtained the appropriate media rights, or it could have obtained those rights prior to the removal of classes. It did neither. Peloton's use of infringing music in its classes is also contrary to the very Terms of Service that it relies upon in seeking dismissal of this action. For example, Peloton's Terms of Service state:

- "the Peloton Service contains software and other content that is protected by copyrights, patents, trademarks, trade secrets or other proprietary rights, and that these rights are valid and protected in all forms, media and technologies existing now or hereafter developed. All Peloton-generated content, and content provided to Peloton by its partners and licensors, is copyrighted individually and/or as a collective work under the U.S. copyright laws"; and

- "Peloton respects the intellectual property of others, and we ask our users to do the same."

ECF No. 31-1 at ¶¶ 19-20 (2017 Terms of Service).[2]

Peloton attempts to rely on inapposite cases that involve *full* authorization or disclosure by defendants regarding the conduct of which plaintiffs complain. Mem. at 10-11.[3] Unlike in the cases upon which Peloton relies, Plaintiffs and the other Class members *did not* authorize Peloton in the Terms of Service to disseminate misrepresentations and omissions concerning the "ever-growing" size of Peloton's on-demand class library. Instead, a reasonable consumer would have taken Peloton

---

[2] *See also* ECF No. 1-1 at ¶¶ 18-19 (2018 Terms of Service), which contains language that is substantially the same as ¶¶ 19-20 in the 2017 Terms of Service.

[3] *A.N.R. Inv. Co. v. HSBC Private Bank*, 25 N.Y.S.3d 78, 80 (N.Y. App. Div. 2016) (involving actions that were "fully authorized" and terms and conditions that "explicitly authorized the conduct of which plaintiffs complain"); *Dimond v. Darden Restaurants, Inc.*, No. 13 CIV. 5244 KPF, 2014 WL 3377105, at *7-8 (S.D.N.Y. July 9, 2014) ("each patron was expressly informed as to the cost of dining prior to voluntarily placing his or her order"; the terms of the gratuity were disclosed on the menu); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *6 (E.D.N.Y. Sept. 26, 2012) (terms and conditions of a sweepstakes were "fully disclosed" in the rules; receipts given to customers were not contrary to the official rules and directed customers to the rules); *Sand v. Ticketmaster–N.Y., Inc.*, 616 N.Y.S.2d 362 (N.Y. App. Div. 1994) ("Although plaintiff contends defendant's fees are 'excessive,' there is no dispute that such fees are always disclosed by Ticketmaster . . . these practices are *fully disclosed* prior to [the sale of tickets]." (emphasis in original)); *Zuckerman v. BMG Direct Mktg., Inc.*, 737 N.Y.S.2d 14, 15 (N.Y. App. Div. 2002) ("defendant's promotional materials set[] forth the exact amount to be charged for the shipping and handling"); *Shovak v. Long Is. Commercial Bank*, 858 N.Y.S.2d 660 (N.Y. App. Div. 2008) ("the yield spread premium . . . was fully disclosed to the plaintiff"); *Lum v. New Century Mortg. Corp.*, 800 N.Y.S.2d 408 (N.Y. App. Div. 2005) ("the [Yield Spread Premium] . . . was disclosed to the plaintiff."); *Kickertz v. New York Univ.*, 971 N.Y.S.2d 271, 277 (N.Y. App. Div. 2013) (NYU "had the right to implement the [] requirement" needed to graduate); *Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012) (defendant's spinoff "was consistent with the contract").

at its word:  that the library would be "ever-growing."  But it purged over half of its on-demand library, thereby damaging Plaintiffs and the other Class members.

Peloton's Terms of Service do not negate Peloton's marketing representations of an "ever-growing" and "growing" library of classes, particularly when viewed in the context of the fact that Peloton knew or should have known that it was building its on-demand library with infringing music that violated applicable copyright laws; Peloton's control over its content and library of classes; and Peloton's failure to inform Plaintiffs and the other Class members of the impending class purge due to infringement issues.

### B.  Plaintiffs Adequately Allege Causation

 "To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."  *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).   Peloton argues that Plaintiffs have failed to meet this standard.   Mem. at 16-17 (*citing Goldemberg*).   Peloton is wrong.

Plaintiffs allege that Peloton advertised its digital library as "ever-growing" and "growing." Compl. at ¶¶ 9, 53, 57, 59, 60.   Plaintiffs' complaint reproduces an example of these representations:

## The power of Peloton at your fingertips.

Explore an expansive, ever-growing library of live and on-demand studio classes taught by world-class instructors. Immerse yourself in our breathtaking studio experience anytime you want. Find a new favourite class just around the corner.

Compl. at ¶¶ 60-61.

Plaintiffs also allege that they bought their bikes and subscriptions in reliance of Peloton's representations of an "ever-growing" on-demand library of classes.  Compl. at ¶¶ 24-26.  Peloton's misrepresentations and omissions "defrauded" them.  Compl. at ¶¶ 23, 78, 83.  Plaintiffs did not know

the truth.  Compl. ¶ 102.  And Plaintiffs would not have purchased on the same terms if they had.

Compl. ¶ 28.   Under almost identical circumstances, the *Goldemberg* court found causation was

adequately alleged:

> Here, Plaintiff describes in particular the allegedly misleading advertising and other
> statements, then alleges that "Defendant's false, misleading, and deceptive
> misrepresentations and omissions, as described herein ... have already deceived and
> misled Plaintiff...." (Compl. at ¶ 32.) The reasonable inference to be drawn from these
> allegations, *see Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, is that Plaintiff saw the Aveeno
> website and Facebook page described previously in the Complaint, and was thus
> deceived into purchasing the products in question. Accordingly, causation is
> sufficiently pled.

*Goldemberg*, 8 F. Supp. 3d at 480; *see also, Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 306 (N.D.N.Y.

2019) (allegation that plaintiff purchased the Class Vehicle based in part on these representations

"plausibly suggests that Plaintiff saw at least these particular statements before purchasing the Class

Vehicle.").  Plaintiffs have adequately alleged causation here.

### C.  Plaintiffs Adequately Allege Injury

All that is necessary to allege injury at this stage of the proceeding is that, "on account of a

materially misleading practice, [Plaintiffs] purchased a product and did not receive the full value of

[their] purchase."  *Orlander,* 802 F.3d at 302 (*citing Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y.

1999); *see also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a

sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for

"fat-free" milk had he known it contained fat); *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867, 2011

WL 9962089 (N.Y. Sup. Ct. Kings Cty., Feb. 25, 2011) (finding a sufficiently-pled § 349 injury where

plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had

he known it contained only fifteen pounds of propane).

Plaintiffs' complaint meets that standard by alleging that "Plaintiffs attributed value to

Peloton's promises regarding the nature and characteristics of its on-demand digital library and would

not have purchased the hardware and corresponding Peloton Membership, or would not have

18

purchased it on the same terms, if they knew the truth that Peloton's on-demand digital library would shrink by 57%." Compl. at ¶ 28. "Peloton's gutting of its digital library materially lowered the value of Plaintiffs' and the other Class members' subscriptions." Compl. at ¶ 80.

That Plaintiffs' payment was for a membership subscription is irrelevant when that membership does not provide the benefits falsely promised. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (claims that "plaintiff paid a premium for a product based on defendants' inaccurate representations" may go forward) (citation omitted). "Injury is adequately alleged under GBL [§ ]349 ... by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman*, 2010 WL 2925955, at *23; *Goldemberg*, 8 F. Supp. 3d at 481 (same).

Peloton's injury analysis fails for the simple fact that none of the cases cited stand for its proposition that a flat fee makes Peloton's conduct permissible or non-injurious under § 349 or any similar statute. For instance, in *Target*, the District of Minnesota found the plaintiff's overcharge theory lacking, because cash purchasers of retail items could not possibly be paying an upcharge for data loss prevention since no personal data was involved in their retail purchases, unlike credit card purchasers who paid the exact same amount. *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014). In *In re Sci. Applications Int'l Corp.* and *Carlsen*, two other cases cited by Peloton (Mem. at 17-18), those courts simply found that the plaintiffs had not alleged facts to show the value of their purchases were less than what was paid for. *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014); *Carlsen v. Gamestop, Inc.*, 112 F. Supp. 2d 855, 861-62 (D. Minn. 2015). This is hardly remarkable and has no bearing on Plaintiffs' claims here, where Plaintiffs have alleged that, as part and parcel of their purchase of Peloton equipment, they believed—quite reasonably, given Peloton's marketing representations—that they were going to have access each time they took a Peloton class to more options than they had the time

before.  Compl. at ¶¶ 9, 19-20, 24-26.  Not only are Peloton's cases inapposite, but none of them are determinative for a court interpreting New York law.

### D.  Plaintiffs Adequately Allege A New York Transaction

Although GBL Sections 349 and 350 contain a geographic limitation, in order to state a claim under either section, "some part of the underlying transaction must have occurred in New York State." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013).  This analysis should "focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." *Id.* at 122.

Using this standard, the Second Circuit in *Cruz* held that the plaintiff, a Virginia resident, had statutory standing to sue an online currency trading platform based in New York. *Id.* at 118-19.  The court found some part of the underlying transaction occurred in New York, because the defendant received payment in New York; it only disbursed funds when the correct form was sent to its New York office; it required that all communications be directed to its New York office; and the customer agreement provided that New York law governs all disputes and all suits must be brought in New York courts. *Id.* at 123-24.  On these grounds, the court concluded that "the case ... clearly involves a series of allegedly deceptive transactions that occurred in New York and implicate the interests of New York." *Id.* at 123.

In *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016), the court found sufficient connections to permit a Section 349 claim.  There, the plaintiff challenged a company's deceptive practices with respect to its "digital jukebox" application, which allowed smartphone users to purchase and play songs at bars and other venues. *See Cline v. TouchTunes Music Corp.*, No. 14-CV-4744, 2015 WL 127843, at *1 (S.D.N.Y. Jan. 7, 2015).  Even though the plaintiff was not a New York resident and had only used the application outside of New York, the court allowed the claim to proceed because: the defendant processed payments in New York; its music servers were in New

York; the user agreement required that all suits be brought in New York and would be governed by New York law; and users' music selections were transmitted to the company's New York servers. *TouchTunes*, 211 F. Supp. 3d at 633.

Here, Plaintiffs similarly allege sufficient facts for the Court to draw a reasonable inference that some part of the underlying transaction occurred in New York. Like *Cline* and *Cruz*, not only do Peloton's Terms of Use require the application of New York law, ECF No. 1-1 at ¶ 21, but also that disputes be adjudicated in New York, New York, *id.*, and that all notices must be sent to Peloton's New York offices, *id.* at ¶ 24. New York is the place of Peloton's corporate headquarters and principal place of business and where Peloton recently invested $45 million to build the "best digital television streaming studio in the world." Compl. at ¶¶ 7, 29, 52. Plaintiffs also allege that the conduct at issue occurred in, and a substantial part of the events giving rise to Plaintiffs' claims occurred in, the Southern District of New York. Compl. at ¶¶ 33-34. This is enough for the Court to draw a reasonable inference that some part of the underlying transaction occurred in New York. At the very least, there simply can be no doubt that this is true for Mr. Fishon's claims—Mr. Fishon is also a citizen of New York, and it is reasonable to infer that he purchased his bike there. Compl. at ¶ 24.

## II.    Plaintiffs Have Standing to Bring Their Claims.

Peloton challenges the Article III standing of Mr. Yang, arguing that despite Mr. Yang's allegations to the contrary, he did not purchase a Peloton bike or subscription. Mem. at 19. To show Article III standing, the plaintiff "must have suffered an injury in fact (1) that is concrete and particularized, (2) that is causally linked to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 573 (2d Cir. 2018). "To establish an injury in fact, a plaintiff need only show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." *Id.* at 574. "For an injury to be

particularized, it must affect the plaintiff in a personal and individual way, and an injury is concrete if it is 'real and not abstract,' although injury need not be tangible to be concrete." *Id.*

Peloton argues that because its records show that Mr. Yang's bike and subscription were purchased by Mr. Adams, Mr. Yang cannot have suffered an injury giving him standing. But what Peloton's records do not show is that Mr. Adams is Mr. Yang's spouse. *See* Yang Decl. at ¶ 4, attached hereto as Exhibit A. Mr. Yang bought the Peloton bike using his credit card, which is paid for with joint funds. Yang Decl. at ¶ 5.

"[T]he injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." *In re MTBE Products Liability Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) (citation omitted). Moreover, "overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017); *see also Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 177 (E.D.N.Y. 2018) ("A plaintiff's allegation that she purchased products bearing misleading labels and sustained financial injury as a result is sufficient to give that plaintiff Article III standing."); *Kacocha*, 2016 WL 4367991, at *7 (finding that the plaintiff alleged an adequate injury for the purpose of Article III standing where he alleged that he paid a premium price for a product that he would not have had he known the truth about the product's low quantity of real bacon). Mr. Yang's purchase of the Peloton bike and subscription confer Article III standing on him to bring his claims.

## CONCLUSION

Plaintiffs' claims do not require any complicated jurisprudential acrobatics. They are simple: Plaintiffs were deceived. Plaintiffs reasonably believed that after they paid thousands of dollars for Peloton's top-of-the-line exercise bike and a subscription to Peloton's "ever-growing" and "growing" on-demand class library, that they would get what they paid for. They were wrong. They would not have purchased Peloton bikes or subscriptions at the prices at which they paid for them had known

the truth about Peloton's library of classes.  Peloton's deception injured Plaintiffs and the other Class members.  Plaintiffs overpaid, and Peloton cashed in.  Because of Peloton's deceptive business practices, its misrepresentations and omissions, Plaintiffs and the other Class members paid more than they would have had they known the truth.  What Plaintiffs and the other Class members received is worth less than represented.  These allegations that Peloton's conduct violated New York's prohibition on deceptive practices and false advertising are sufficient to withstand a motion to dismiss. Peloton's motion should be denied.

Dated: April 3, 2020                              Respectfully submitted,


                                                  */s/ Greg G. Gutzler*

                                                  Greg G. Gutzler
                                                  ggutzler@dicellolevitt.com
                                                  **DiCELLO LEVITT GUTZLER LLC**
                                                  444 Madison Avenue, Fourth Floor
                                                  New York, New York  10022

                                                  Adam J. Levitt
                                                  alevitt@dicellolevitt.com
                                                  Adam Prom
                                                  aprom@dicellolevitt.com
                                                  **DiCELLO LEVITT GUTZLER LLC**
                                                  Ten North Dearborn Street, Sixth Floor
                                                  Chicago, Illinois  60602

                                                  Ashley C. Keller
                                                  ack@kellerlenkner.com
                                                  Aaron M. Zigler
                                                  amz@kellerlenkner.com
                                                  **KELLER LENKNER LLC**
                                                  150 North Riverside Plaza, Suite 4270
                                                  Chicago, Illinois  60606

                                                  *Attorneys for Plaintiffs and the Proposed Class*

23

## <u>CERTIFICATE OF SERVICE</u>

I, Greg G. Gutzler, caused the preceding document to be served on all appropriate parties on April 3, 2020, via CM/ECF to the addresses listed here:

**Defense Counsel**
Steven N. Feldman (sfeldman@hueston.com)
Shannon Coit (scoit@hueston.com)
Sourabh Mishra (smishra@hueston.com)
Ashley Artmann (aartmann@hueston.com)
HUESTON HENNIGAN LLP

Joshua D. Liston (jliston@blmllp.com)
BEYS LISTON & MOBARGHA LLP

*/s/ Greg G. Gutzler*

24