- 1 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON, ALICIA PEARLMAN, and PATRICK YANG, individually and on behalf of all others similarly situated, | Civil Action No. 19-cv-11711 (LJL) |
| *Plaintiffs,* | ECF Case |
| -v- | |
| PELOTON INTERACTIVE, INC. | |
| *Defendant.* | |

# REPLY IN SUPPORT OF PELOTON INTERACTIVE, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Steven N. Feldman
Shannon Coit
Sourabh Mishra
Ashley Artmann
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014

Josh Liston
BEYS LISTON & MOBARGHA LLP
641 Lexington Avenue
New York, NY 10022

*Attorneys for Defendant Peloton Interactive, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................3

    A.    The Agreed-Upon Terms of Service Mandate Dismissal .....................................3

    B.    The Term "Ever-Growing" Constitutes Non-Actionable Puffery ........................7

    C.    The Term "Ever-Growing" is Not Deceptive or Misleading................................9

    D.    Plaintiffs Failed to Plausibly Allege Causation ....................................................10

    E.    Plaintiffs' Theory of Injury is Implausible as a Matter of Law ...........................12

    F.    Plaintiffs Do Not Adequately Allege Statutory Standing ....................................13

    G.    The Court Should Not Sua Sponte Grant Leave to Amend .................................15

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) .................................................................................. 14

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................................. 12

*A.N.R. Inv. Co. v. HSBC Private Bank*,
    25 N.Y.S. 3d 78 (1st Dep't 2016) ...................................................................................... 7

*Baron v. Pfizer, Inc.*,
    840 N.Y.S. 2d 445 (3d Dep't 2007) ................................................................................ 12

*Carlsen v. GameStop, Inc.*,
    112 F. Supp. 3d 855 (D. Minn. 2015) ............................................................................. 13

*Clive v. Touchtunes Music Corp*,
    211 F. Supp. 3d 628 (S.D.N.Y. 2016) .................................................................. 3, 14, 15

*Cruz v. FXDirectDealer,*
    720 F.3d 115 (2d Cir. 2013) ..................................................................................... 14, 15

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000) .............................................................................................. 15

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    519 F. App'x 77 (2d Cir. 2013) ........................................................................................ 6

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. Sept. 7, 2011) ................................................................. 4

*Gale v. Int'l Bus. Machs. Corp.*,
    2002 WL 34734569 (NY Sup. Ct. June 13, 2002) .......................................................... 11

*Gale v. Int'l Bus. Machs. Corp.*,
    781 N.Y.S. 2d 45 (2d Dep't 2004) ............................................................................. 2, 11

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011) ....................................................................................... 3, 15

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................... 10, 11

*Goshen v. Mutual Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) .................................................................................................. 4, 15

PELOTON'S REPLY ISO MOTION TO DISMISS

## TABLE OF AUTHORITIES (cont.)

Page(s)

*In re Scotts EZ Seed Litig.*,
    2013 WL 2303727 (S.D.N.Y. May 22, 2013) ............................................................... 1, 8

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) ............................................................................. 2

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017) ..................................................................... passim

*Lugones v. Pete & Gerry's Organic, LLC*,
    2020 WL 871521 (S.D.N.Y. Feb. 21, 2020) ................................................................. 7, 8

*Orellana v. Macy's Retail Holdings, Inc.*,
    2018 WL 3368716 (S.D.N.Y. July 10, 2018) ................................................................... 5

*Rosenblatt v. City of New York*,
    2007 WL 2197835 (S.D.N.Y. July 31, 2007) ................................................................... 7

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ........................................................................................... 15

*Serrano v. Cablevision Sys. Corp.*,
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) .................................................................... passim

*Small v. Lorillard Tobacco Co., Inc.*,
    94 N.Y.2d 43 (1999) ....................................................................................................... 12

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ............................................................................................. 13

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012) .......................................................................... 2, 9

*Ward v. TheLadders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y. 2014) ................................................................................. 5

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) ........................................................................... 10

**Statutes**

New York General Business Law ("NYGBL") §§ 349 and 350 ......................................... passim

**INTRODUCTION**

Plaintiffs Eric Fishon, Alicia Pearlman, and Patrick Yang's Opposition to Peloton's Motion to Dismiss is most notable for largely ignoring Peloton's central, dispositive argument: that Plaintiffs' claims are barred as a matter of well-established law because Plaintiffs indisputably agreed to Peloton's Terms of Service. Those terms, as set forth in Peloton's Motion, plainly permit Peloton to remove class content "***at any time, in its sole discretion***." (Dkt. No. 1-1 ("2018 Terms") (emphasis added)). Tellingly, when Plaintiffs finally do address the issue (in a footnote, after thirteen pages), they do not even try to distinguish the cases cited in Peloton's Motion providing that New York General Business Law ("NYGBL") §§ 349 and 350 claims cannot lie when the complained-of conduct has been fully disclosed. *See Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 162, 166 (E.D.N.Y. 2012) (dismissing § 349 claim with prejudice where terms of service reserved defendants' rights to restrict bandwidth and suspend internet service "in its sole discretion"); *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 313 (S.D.N.Y. 2017) (dismissing NYGBL claims with prejudice where "disclaimers provide[d] adequate clarification"). As explained in Peloton's Motion, this Court need not look past the Terms of Service to dispense with the Complaint; but even so, Plaintiffs' Opposition only reinforces the other fatal deficiencies in their Complaint.

*First*, the term "ever-growing" is non-actionable puffery as a matter of law. Plaintiffs' Opposition argues that because their unreasonable interpretation of the term is "testable," it is actionable, but this is not the law. In fact, courts routinely find subjective, exaggerated statements that are theoretically "testable" to be non-actionable puffery. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7, 11 (S.D.N.Y. May 22, 2013) (holding the statement "Grows Anywhere! Guaranteed!" to be puffery).

*Second*, contrary to the Opposition, the term "ever-growing" is not misleading because

Peloton's content library continues to "grow" as Peloton constantly adds new content. Plaintiffs point to no allegations in their Complaint showing that a reasonable consumer would be misled into believing that Peloton would *never* remove classes. *See Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 744–45 (S.D.N.Y. 2012) (dismissing claims when the statements were not misleading).

*Third,* Plaintiffs' Opposition admits that their Complaint does not allege that they saw an "ever-growing" advertisement before purchase, and their conclusory allegations of reliance are insufficient. *See Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S. 2d 45, 47 (2d Dep't 2004) (dismissing NYGBL claims because the plaintiff "nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of [the product]").

*Fourth*, Plaintiffs' only viable theory of injury argued in the Opposition—that they "overpaid" for Peloton's Bike, Tread, or subscription[1]—is implausible because they have pled no facts, nor identified any additional facts in their Opposition, to suggest that they paid a premium for those products. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014) (holding that all customers paying the same price "render[ed] Plaintiffs' overcharge theory" that they paid a premium for data safeguards "implausible").

*Finally*, nothing in Plaintiffs' Opposition[2] cures the grave deficiencies in Plaintiffs' allegations supporting a New York transaction—including where and how they purchased their Peloton Products—and these deficiencies are only made clearer by the cases upon which

---

[1] This brief collectively refers to the products at issue—the Peloton Bike, Tread, and subscription—as the "Peloton Products."

[2] Plaintiff Patrick Yang filed a declaration attesting that he purchased his Peloton Products using funds he owns jointly with his spouse. (Dkt. No. 36-1, ¶¶ 4–5.) While this may be sufficient to establish Article III standing, Plaintiffs' choice to reveal the details of Mr. Yang's purchase in their Opposition is gamesmanship. Upon noticing the apparent inconsistency between Mr. Yang's allegations and Peloton's records, Peloton contacted Plaintiffs' counsel to inform them of the apparent discrepancy and requested Plaintiffs provide any details to clarify Mr. Yang's purchase. (Declaration of Steven Feldman ("Feldman Decl.") ¶¶ 2–4). Plaintiffs' counsel never responded with these facts until the Opposition.

Plaintiffs' rely.  *See Clive v. Touchtunes Music Corp*, 211 F. Supp. 3d 628, 634 (S.D.N.Y. 2016) (determining that cash payments made and processed outside of New York lacked a sufficient connection to New York to confer standing under NYGBL §§ 349 and 350).

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.  Leave to amend is inappropriate here because Plaintiffs' claims suffer numerous incurable defects; moreover, Plaintiffs have failed to request leave to amend, and the Court should not grant it *sua sponte*.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend] that was not made.")

## ARGUMENT

### A.     The Agreed-Upon Terms of Service Mandate Dismissal.

The agreed-upon Terms of Service between Peloton and Plaintiffs are crystal clear: Peloton has "the right to modify the Peloton Service, including, but not limited to updating, adding to, enhancing, ***modifying, removing or altering any Content*** or features of the Peloton Service, ***at any time, in its sole discretion***."  (2018 Terms §15 (emphasis added); Dkt. No. 31-1 ("2017 Terms") § 16 (emphasis added); *see also* 2018 Terms § 25.)  These multiple provisions, sentences, paragraphs, bullet points, and (for the 2018 Terms) sections fully disclosed the class removals of which Plaintiffs complain, and Plaintiffs agreed to these Terms ***before*** their purchases and use of the Peloton Products.  (*Id.*)

Halfway through their brief, providing their first response to this dispositive argument, Plaintiffs make the unremarkable point that courts have found vague, generalized disclaimers insufficient to defeat NYGBL §§ 349 and 350 claims as a matter of law.  (*See* Opp. at 13-14.) But, while it is true that "disclaimers do not *ipso facto* sanitize misleading marketing practices," *Kommer*, 252 F. Supp. 3d at 312, courts routinely hold that ***full disclosures*** in the parties' agreements ***do*** defeat NYGBL claims as a matter of law.  (*See* Mot. at 10–11 (citing seven cases dismissing §§ 349 and 350 claims where, as here, defendants fully disclosed their rights to take

the actions plaintiffs alleged were improper).)  Rather than grapple with these on-point cases, Plaintiffs relegate them to a footnote and bizarrely claim that for Peloton to have prevented Plaintiffs' claims, Peloton was required to disclose in its Terms that it would "disseminate misrepresentations and omissions concerning the 'ever growing' size of Peloton's on-demand library." (*See* Opp. at 16 n.3.)  The case law is clear that Peloton needed to fully disclose only that it would have sole discretion to remove classes from its library—which it unambiguously did in its Terms of Service.

Further, the cases upon which Plaintiffs rely are inapposite.  For example, Plaintiffs treat *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314 (2002),[3] as a silver bullet, yet the boilerplate "as is" disclaimer in *Goshen* is clearly distinguishable from Peloton's specific, unambiguous, and full disclosures that it had the right to remove class content "at its sole discretion."  (2018 Terms §§ 15, 25; 2017 Terms § 16).  Indeed, the "rule" Plaintiffs derive from *Goshen*—that disclaimers do not defeat claims when a service is "defective due to malfunctions within defendants' control"—is incoherent when applied to this case.  (*See* Opp. at 14.)  Class removals are not a defect in Peloton's service; rather, Peloton discloses that it may remove classes (and retains control over its content) because it must have broad latitude to control and operate its service, just like all major streaming services (e.g. Netflix, Spotify, etc.).

---

[3] *Goshen* involved representations about the speed of an internet service.  The defendants had advertised its service as "high speed," but the plaintiffs complained that it was not so.  98 N.Y.2d at 323.  The court determined the vague, general disclaimers that the service was provided "as is" or "as available" were not sufficient alone to bar the plaintiffs' claims.  *Id.* at 323, 326.  Since *Goshen* was decided, several courts have held that nearly identical representations about internet speed were nonactionable puffery.  *See Serrano*, 863 F. Supp. 2d at 167; *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 637, 643 (S.D.N.Y. Sept. 7, 2011) (holding "blazing fast" and "fastest, easiest way to get online" were mere puffery and nonactionable under § 349(a)).

The more analogous case relating to claims of internet speed are those in *Serrano*, which involved similar unambiguous, full, and specific disclosures as in this case.  *See* 863 F. Supp. 2d at 162.  The *Serrano* court dismissed the plaintiffs' claims because the service agreement included a disclosure stating the service could be reduced by the company "***in its sole discretion***."  *See id.* at 162, 166 (emphasis added).[4]  The result should be the same here.

Plaintiffs' reliance on *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), fares no better.  The court in *Ward* relied on the same general, vague "as is" or "as available" disclaimer as in *Goshen* to reject the defendant's defense.  *Id.* at 168 ("Specifically, the Terms of Use provided that the information and materials were provided on an 'as is' or 'as available' basis.").  This is unsurprising.  The plaintiffs in *Ward* alleged that the defendant specifically represented to consumers that "experts pre-screen all jobs so they're always 100K+" and explicitly instructed their sales personnel to represent themselves as "writer[s] and analyst[s]" to deceive consumers.  *Id.* at 157, 162, 169.  Based on those allegations, the court concluded that general "as is" disclaimers were "insufficient" as a defense.  *Id.* at 158.  But, again, the term "ever-growing" is clearly distinguishable from the specific, misleading representations (and intentionally deceptive conduct) in *Ward*.  And, as discussed above, the Peloton Terms' disclosures are clearer, fuller, and more specific than a generalized "as is" disclaimer.[5]

Plaintiffs further point to a footnote in *Ward* to argue that, so long as they allege that

---

[4] Though decided on summary judgment, *Serrano* was effectively decided on the pleadings, as the court converted the cable company's motion to dismiss into a motion for summary judgment because it relied in part on the terms of service.  *See* Order, *Serrano v. Cablevision Sys. Corp.*, 1:09-CV-01056, Dkt. No. 13 (E.D.N.Y. Oct. 21, 2009); (Feldman Decl. ¶ 9, at Ex. B (attaching copy of Order).)

[5] Plaintiffs also rely on *Orellana v. Macy's Retail Holdings, Inc.*, 2018 WL 3368716 (S.D.N.Y. July 10, 2018), a wholly distinguishable case involving false imprisonment and civil rights claims.  The court there found that the disclaimer at issue did not disclaim that which the plaintiffs' complained of, unlike here, where Peloton fully disclosed the class removal.  *Id.* at *14.

"ever-growing" contradicted the Terms of Service, their claims can proceed. (Opp. at 14–15 (citing *Ward*, 3. F. Supp 3d at 169 n.9).) This is incorrect as a matter of law. Without conceding that "ever-growing" contradicts the Terms (it does not), companies often make representations that are subsequently clarified in disclosures. *See, e.g.*, *Serrano*, 863 F. Supp. 2d at 162; *Kommer*, 252 F. Supp 3d at 312. In *Serrano*, the plaintiffs alleged that the defendant falsely promised "Faster internet" while the terms of service permitted the defendant to reduce internet service "in its sole discretion." *Id.* The court held these unambiguous terms "fully disclosed" the company's actions and dismissed the claims. *Id.* at 167. Similarly, in *Kommer*, the plaintiff claimed that Bayer's branding of "Dr. Scholl's" and employing in-store, "high technology-looking" kiosks misrepresented that its products were equivalent to those prescribed by a doctor. 252 F. Supp 3d at 312. The court held, however, that the kiosk's instructions clarified that it "does not diagnose medical conditions." *Id.* (rejecting the plaintiff's argument that the disclaimer was "at odds with" Bayer's other representations "and so only serve[d] to compound a user's confusion"). Specifically, the court held that "[t]o the extent that a consumer may overestimate the function of the Kiosk . . . the disclaimer provides adequate clarification of its capabilities." *Id.* at 313; *see also Derbaremdiker v. Applebee's Int'l, Inc.*, 519 F. App'x 77, 78 (2d Cir. 2013) (affirming that terms clarified statements "to the extent they were ambiguous").

     Such is the case here. Even assuming the "ever-growing" statement could reasonably be read to guarantee that the total number of classes in the library would never decrease, the Terms unambiguously clarified that Peloton would add and remove classes "at its sole discretion." (2018 Terms §§ 15, 25; 2017 Terms § 16. To a reasonable consumer, these disclosures dispel any notion that Peloton guarantees that its class library will never decrease in size.

     Finally, the Term's disclosures defeat Plaintiffs' related claim that Peloton failed to disclose the March 2019 class removals, because NYGBL §§ 349 and 350 do not require Peloton

to disclose actions permitted by its Terms of Service. *See A.N.R. Inv. Co. v. HSBC Private Bank*, 25 N.Y.S. 3d 78, 81 (1st Dep't 2016) ("[Defendant's] actions were fully authorized by the terms and conditions signed by plaintiffs, and [Defendant] was not required to give plaintiffs notice that it might enforce its rights thereunder"). Thus, even if the Court credits Plaintiffs' conclusory (and false) allegation that Peloton knew it would need to remove classes in March 2019, the Terms gave Peloton the right to do so, and no additional disclosure was needed. Indeed, Plaintiffs do not even address how the Terms impact their omission theory, impliedly conceding it fails for this reason. *See Rosenblatt v. City of New York*, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (noting by failing to respond to an argument, a party "effectively concede[d]" it).

Accordingly, the Terms of Service mandate dismissal of Plaintiffs' claims with prejudice.

### B. The Term "Ever-Growing" Constitutes Non-Actionable Puffery.

Contrary to Plaintiffs' representations, courts often decide that statements are puffery as a matter of law. (*See* Opp. at 6–7.) Indeed, one of the principal cases on which they rely, *Lugones v. Pete & Gerry's Organic, LLC*, 2020 WL 871521 (S.D.N.Y. Feb. 21, 2020),[6] provides as much: though the "'reasonable consumer' inquiry is typically a question of fact . . . statements and practices that are mere puffery are not actionable, and courts can determine that a statement is puffery as a matter of law." *Id.* at *8 (internal citations, alterations, and quotations omitted).

The term "ever-growing" is puffery. "Ever-growing" makes no specific representation regarding Peloton's library size and nowhere does it claim that Peloton will never decrease the

---

[6] *Lugones* is also distinguishable from this case. In *Lugones*, the court held a representation that hens could "peck, perch, and play on plenty of green grass" to be actionable because the representation was coupled with references to "OUTDOOR FORAGE" and "images of hens frolicking in elysian pastures." 2020 WL 871521, at *9. The court reasoned that these representations—taken together—reasonably suggested that the hens would have *some* "access to the outdoors" when they actually had none. *Id.* The analog here is if Peloton's library went to zero, but there is no dispute that Peloton's content library contained *thousands* of classes on March 25, 2019. (*See* Mot. at 15.) Further, Peloton's advertisements lack the reinforcement of additional language or images as in *Lugones*.

total amount of classes offered. To the extent that Plaintiffs read the statement as a specific guarantee as to a certain library size, this reading is unreasonable as matter of law because "ever-growing" is a "generalized or exaggerated statement[] which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Lugones*, 2020 WL 871521, at *8 (citation omitted). Just as it is unreasonable for a consumer to believe "Grow[] Anywhere!" guarantees grass seeds will actually grow anywhere, it is unreasonable for Plaintiffs to believe Peloton's class library will never decrease in size. *See Scotts*, 2013 WL 2303727, at *7, 11.

To overcome the vague nature of "ever-growing," Plaintiffs—without citing to any legal authority—manufacture a very narrow test for deciding whether a statement is puffery: if an interpretation of a statement "can be tested," the statement is actionable. (Opp. at 8.) But merely because one can stretch a subjective statement to be quantifiable does not make it actionable. Looking to *Serrano* again, the representations of "Faster Internet" and "lightning-fast Internet access takes the waiting out of the Web" are surely testable when their meaning is stretched. *See* 863 F. Supp. 2d at 167. One could test whether the internet is faster than competitors and whether there is any wait when using the service. Put simply, Plaintiffs' manufactured test is not the law. *See also Scotts*, 2013 WL 2303727, at *1 (holding potentially testable claims under Plaintiffs' theory here were puffery as a matter of law). As noted above, the inquiry is broader: courts look for generalized, subjective, and exaggerated statements—including those that could theoretically be proven false—and determine whether those statements, like "ever-growing," constitute puffery.

Lastly, Plaintiffs' use of a convoluted equation to measure "ever-growing" only underscores how attenuated their argument is. (Opp. at 10.) "Ever-growing" is sales talk, and no reasonable consumer is performing the mental gymnastics required by Plaintiffs' equation upon seeing the "ever-growing" statement. In the end, "ever-growing" is too subjective and

nonspecific to be actionable, and Plaintiffs' arguments fail.[7]

### C. The Term "Ever-Growing" is Not Deceptive or Misleading.

Plaintiffs' claims also fail for the simple reason that the "ever-growing" statement is true and neither deceptive nor misleading. *See Tasini.*, 851 F. Supp. 2d at 744–45 (dismissing claims that were not misleading). Again, contrary to Plaintiffs' assertions, (Opp. at 6–7), whether the "ever-growing" statement is "likely to mislead a reasonable consumer. . . may be resolved as a matter of law." *Kommer*, 252 F. Supp. 3d at 311–12.

Taking into consideration the Terms of Service, Peloton's product (a content streaming service), and Plaintiffs' own allegations about Peloton adding new content, (*see* Mot. at 15–16), Plaintiffs' alleged interpretation of "ever-growing" is unreasonable. As explained in Peloton's Motion, reasonable consumers are aware that it is standard practice for content providers—such as Netflix, Hulu, or Spotify—to retain and exercise the right to remove content as necessary. (*See id.*) Thus, a reasonable consumer would not read the "ever-growing" statement to imply that Peloton would *never* remove classes. Instead, the more plausible reading of "ever-growing" is that Peloton would frequently add new classes to the library, something Plaintiffs do not (and cannot) dispute is true. (*See* Opp. at 10–11.) But most importantly, a reasonable consumer would consider the clear disclosure in the Terms of Service that Peloton could remove classes "in its sole discretion." (2018 Terms § 15; 2017 Terms § 16 (emphasis added)).

In short, given the "evidence to the contrary," common sense dictates that a reasonable consumer would not plausibly believe that Peloton's class library would literally never decrease

---

[7] Even so, the equation is necessarily incomplete. For example, Plaintiffs use "*x*" to represent time and "*x* + 1" for increases in time. (*Id.*) But left out is the unit of time. Under Plaintiffs' theory, does "ever-growing" mean that the library must grow every second or every year? If Peloton removes ten classes from its library, must it add ten classes simultaneously or the same day or month so that the library "grows"? Such ambiguity in Plaintiffs' equation is unsurprising because "ever-growing" is vague and unspecific, which is why it is nonactionable puffery. *See Serrano*, 863 F. Supp. 2d at 167.

in overall size. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("*Iqbal* directs the Court to apply its common sense when determining the plausibility of a claim—common sense dictates that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees when faced with overwhelming evidence to the contrary."); *see also Kommer*, 252 F. Supp. 3d at 311–12 (noting that reasonable consumer cannot "ignore the evidence plainly before him"). Accordingly, Plaintiffs' NYGBL claims fail as a matter of law.

### D. Plaintiffs Failed to Plausibly Allege Causation.

Peloton's Motion showed that Plaintiffs' Complaint failed to allege that they saw an "ever-growing" advertisement prior to purchase and thus failed to adequately allege causation. (Mot. at 16.) In response, Plaintiffs admit they have not done so, but claim that the bare, conclusory allegations in the Complaint are sufficient to get them past a motion to dismiss. (*Id.* 17–18.) Plaintiffs are once again incorrect.

Plaintiffs agree that "[t]o properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); (Opp. at 17). They claim that they have met this standard because the Complaint refers to various Peloton advertisements and because Plaintiffs have alleged that they purchased Peloton Products "relying on Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes." (Compl. ¶ 24; Opp. at 17–18.)

Unlike the plaintiffs in *Goldemberg*, however, Plaintiffs are not entitled to the "reasonable inference" that they saw the advertisements described in the Complaint simply because they allege that they bought their Peloton Products in reliance on the "ever-growing" statement. 8 F. Supp. 3d at 480. The *Goldemberg* plaintiffs described an ad that they could have plausibly seen. Here, Plaintiffs provide **no allegations** describing the advertisements they saw in detail or regarding how they researched or purchased their products, so it is not reasonable to

infer that Plaintiffs saw the advertisements referenced, especially when the ads are either undated or are from *after* their purchases.  (*See* Complaint, Dkt. No. 1 ("Compl.")  ¶¶ 9 (citing to ad on Peloton's website as of Apr. 25, 2019 and other undated ads), 19 (Peloton's website as of Dec. 6, 2019).)  Indeed, the sole "ever-growing" ad that Plaintiffs have "reproduce[d]" is from Peloton's *Canadian* website as of November 2019.  (Opp. at 17; Compl. ¶ 60.)

Moreover, the New York Appellate Court in *Gale v. International Business Machines Corp.*, upon which *Goldemberg* relies, affirmed that such bare allegations of causation are insufficient to state a claim.  *See Gale*, 781 N.Y.S.2d at 45; *Goldemberg*, 8 F. Supp. 3d at 480.  In *Gale*, the plaintiff alleged that he purchased an IBM computer "owing to defendant's false and misleading statements and concealments."  Complaint, *Gale v. Int'l Bus. Machs. Corp.*, 2002 WL 34734569 at ¶ 6 (NY Sup. Ct. June 13, 2002).  The court found that "the plaintiff failed to plead causation with sufficient specificity" because "[a]lthough the plaintiff cites particular misleading statements by IBM . . . , **he nowhere states in his complaint that he saw any of these statements before he purchased** or came into possession of his hard drive."  *Gale*, 781 N.Y.S. 2d at 47 (emphasis added).  The same is true here.  Plaintiffs identified the "ever-growing" statement, but nowhere do they allege that they saw these statements prior to purchasing their Peloton Products.  Such conclusory allegations are insufficient.  *Id.*

Indeed, Plaintiffs' decision to not simply amend their Complaint to allege—even in general terms—how and when they encountered an "ever-growing" statement is troubling.  While Plaintiffs may understandably not recall the specific date on which they saw an "ever-growing" advertisement, one would assume that since they have filed this class action they can at least recall and allege (1) that they saw an advertisement prior to purchase and (2) where they saw it, whether it be on Peloton's website, Facebook, television, or some combination thereof.  This is not a high bar.  And their refusal (or inability) to meet it warrants dismissal.

### E.     Plaintiffs' Theory of Injury is Implausible as a Matter of Law.

As an initial matter, New York law is clear that Plaintiffs' allegation that they "would not have purchased" Peloton Products if they knew about the class removals is a legally insufficient theory of injury under NYGBL §§ 349 and 350.  (Opp. at 1, 5, 8–19 (quoting Compl. ¶ 28));  *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999); *Baron v. Pfizer, Inc.*, 840 N.Y.S. 2d 445, 448 (3d Dep't 2007).  In *Lorillard*, the New York Court of Appeals held it insufficient to simply allege that "absent a manufacturer's deceptive commercial practices," plaintiffs "would not have purchased" the product.  94 N.Y.2d at 56.  Rather, a plaintiff must plausibly allege that "the price of the product was inflated as a result of defendant's deception."  *Baron*, 840 N.Y.S. 2d at 448.  And, as Peloton explained in its Motion, Plaintiffs' Complaint does not identify a plausible theory for how they overpaid for their Peloton Products.  (Mot. at 17.)

Plaintiffs argue that it is sufficient for them to vaguely allege that they would not have paid as much for their Peloton Products had they known Peloton would remove classes.  (Opp. at 18–19.)  This is incorrect.  Plaintiffs must plausibly allege how the market value of their Peloton Products would been lower had they known the "truth."  Indeed, a case cited by Plaintiffs explains what they must (but have not and cannot) plead.

In *Ackerman v. Coca-Cola Co.*, the plaintiffs sued Coca-Cola under §§ 349 and 350 for representations it made regarding vitaminwater.  2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010).  Like here, the plaintiffs' theory of injury was that they "paid a premium for a product based on defendants' inaccurate representations."  *Id.* at 23.  The *Ackerman* court distinguished *Lorillard* and held plaintiffs' allegations sufficient because they "explicitly allege[d] that '[d]efendants command a premium price for vitaminwater by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form."  *Id.*  In other words, the *Ackerman* plaintiffs alleged an injury

because the *real* market value of vitaminwater was the same as soft drinks, but it was being sold at a premium (a price more than soft drinks) as if it was a dietary supplement.

Peloton is a unique company offering unparalleled products and classes. As such, there are no lower value options that offer a comparable number and quality of classes to which Plaintiffs can point and establish the "premium" they paid because they thought Peloton would not remove classes. What's more, Plaintiffs' claim that the March 2019 class removal "lowered the value" of their subscriptions is implausible given that Peloton's members pay the same flat price for their subscription no matter how many classes are in the library or whether the library grows in size. (*See* Compl. ¶ 5.) And it is undisputed that members, including Plaintiffs, continued to access and enjoy the library after Peloton's CEO announced the class removals.[8] (*See* Dkt. No. 31-2.) Thus, Plaintiffs' allegations show that the price of Peloton Products does not depend on Peloton never removing classes.

In sum, this case is identical to those cited in Peloton's Motion, as Plaintiffs have failed to "include facts that show the market value of [their Peloton Products were] less than the amount paid." *See Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861–62 (D. Minn. 2015).

### F. Plaintiffs Do Not Adequately Allege Statutory Standing.

Finally, the threadbare allegations in Plaintiffs' Complaint are inadequate to establish a transaction that occurred in New York, and Plaintiffs lack standing under the NYGBL. To be clear, the Complaint includes *no allegations* concerning where or how (or if) Plaintiffs saw Peloton's advertisements, where or how Plaintiffs made their purchases (whether online or at a brick-and-mortar store), or whether they paid with cash or credit card. Nevertheless, Plaintiffs

---

[8] Further, nowhere in their Opposition do Plaintiffs dispute Peloton's argument that they received the products for which they paid. (*See* Mot. at 18); *see Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (finding no injury where plaintiff "does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received").

claim they have sufficiently pled that their transactions with Peloton occurred in New York. They are wrong.

*Cruz v. FXDirectDealer* is clear that out-of-state plaintiffs have standing only if they plead "various alleged ties" between the transactions at issue and New York. 720 F.3d 115,124 (2d Cir. 2013). Here, Plaintiffs have pled *only one* transactional fact recognized in *Cruz:* that the Terms of Service included a New York choice of law and forum selection clause. *See id.* at 123-24; (Compl. ¶ 33).[9] But these provisions, standing alone, are insufficient to establish standing. *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547–48 (S.D.N.Y. 2014) ("[T]he mere fact that parties agreed to be bound by New York law and to resolve their disputes in courts in New York does not, in itself, provide any indication as to where a transaction occurred."). Plaintiffs make no other allegations tying their transactions to New York.[10]

Plaintiffs cite to *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016), but *Cline* only highlights Plaintiffs' lack of alleged standing. There, the court held plaintiffs who made jukebox purchases through an app or with credit cards properly pled standing because they alleged that (1) the defendant processed such payments in New York, (2) the defendant's music servers were in New York, and (3) the terms of service included a New York choice of law and forum selection clause. *Id.* However, the court also held the analysis differed for the plaintiffs paying cash because those plaintiffs did "not allege how or where these funds subsequently are processed." *Id.* at 634. Thus, because "the payment for services and collection of the cash

---

[9] Plaintiffs' conclusory allegations that "the conduct of complained of occurred in or was targeted" at New York and that "a substantial part of the vents or omissions giving rise to Plaintiff's claims occurred in" New York are bare legal conclusions, not factual allegations. (Compl. ¶¶ 33–34).

[10] Though Peloton does provide a New York address for written inquiries in the Terms of Service, the Terms do not "require[] that all communications" be mailed to New York (*id.*); rather, they specifically direct customers to email "[f]or support-related inquiries." (*See* 2018 Terms § 24; 2017 Terms § 25.)

[could] take place" outside New York, the transaction lacked sufficient ties to the state and those plaintiffs did not have standing.  *Id.* ("This would leave the only connections between the cash transactions and New York as the governing law and forum selection provision, the location of TouchTunes' servers, and the electronic transmission of the users' music choices.")

Because Plaintiffs here have alleged ***far less*** than the plaintiffs in *Cruz* and *Cline*, Plaintiffs have not alleged statutory standing and their claims must be dismissed.  *See Goshen*, 98 N.Y.2d at 325 ("To apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349.").

### G.     The Court Should Not *Sua Sponte* Grant Leave to Amend.

The Court should dismiss Plaintiffs' Complaint with prejudice.  As noted throughout, most of the deficiencies with Plaintiffs' Complaint are "substantive; better pleading will not cure [them]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (noting that, "though liberally granted," leave to amend under Rule 15(a)(2) is properly denied for "futility").  What is more, Plaintiffs did not seek to amend their Complaint, nor did they request leave to amend (or identify additional allegations they could make).  *See Gallop*, 642 F.3d at 369 ("[N]o court can be said to have erred in failing to grant a request [to amend] that was not made."); *Cruz*, 720 F.3d at 125–26 (affirming dismissal with prejudice where plaintiff neither moved to amend nor requested leave to amend).

### CONCLUSION

For the foregoing reasons, and those detailed in Peloton's Motion to Dismiss, Peloton respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

| | |
|---|---|
| Dated: April 17, 2020 | Respectfully submitted,<br><br>HUESTON HENNIGAN LLP<br><br>By: */s/ Steven N. Feldman*<br>　　Steven N. Feldman, NY SBN 4775052<br>　　sfeldman@hueston.com<br>　　Shannon Coit, CA SBN 298694<br>　　(*admitted pro hac vice*)<br>　　scoit@hueston.com<br>　　Sourabh Mishra, CA SBN 305185<br>　　*(admitted pro hac vice)*<br>　　smishra@hueston.com<br>　　Ashley Artmann, CA SBN 319374<br>　　*(admitted pro hac vice)*<br>　　aartmann@hueston.com<br>　　HUESTON HENNIGAN LLP<br>　　523 West 6th Street, Suite 400<br>　　Los Angeles, CA 90014<br>　　Telephone:　(213) 788-4340<br>　　Facsimile:　(888) 775-0898<br><br>　　Josh Liston, NY SBN 4124905<br>　　jliston@blmllp.com<br>　　BEYS LISTON & MOBARGHA LLP<br>　　641 Lexington Avenue<br>　　New York, NY 10022<br>　　Telephone:　(646) 755-3599<br>　　Facsimile:　(888) 775-0898<br><br>　　*Attorneys for Defendant Peloton Interactive, Inc.* |