Keller | Lenkner

DICELLO LEVITT GUTZLER

June 25, 2020

Hon. Lewis J. Liman
Daniel Patrick Moynihan
United States Courthouse, Courtroom 15C
500 Pearl St., New York, NY 10007

Re:   Response to Letter Motion (Dkt. 47), *Eric Fishon, et al. v. Peloton Interactive, Inc.*, Case No. 19-cv-11711 (LJL)

Dear Judge Liman:

Peloton proposes an unorthodox, unnecessary, and unduly burdensome foray into irrelevant discovery. It is indisputable that "[d]iscovery of absent class members is rarely permitted due to the fact that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions, which is to prevent massive joinder of small claims." *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2015 WL 8675360, at *1 (S.D.N.Y. Dec. 11, 2015).[1] *See also In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2016 WL 10353228, at *1 (S.D.N.Y. Feb. 22, 2016) ("Courts are extremely reluctant to permit discovery of absent class members."). A defendant who seeks absent class member depositions—as Peloton demands here—bears a "particularly heavy" burden. *Id*. It is only in rare instances, mainly when absent class members have voluntarily injected themselves into litigation by opting-in to the class or filing declarations with the Court, that discovery is generally allowed. That never happened here.

None of the reasons proferred by Peloton satisfy the heavy burden necessary to justify its request. To meet its burden, Peloton "must do more than demonstrate that the requested material is relevant," it "must make a showing of actual need." William B. Rubenstein, The multifactor tests for discovery from absent class members—Necessity, 3 Newberg on Class Actions § 9:14 (5th ed. June 2020). "Need means need, and in demonstrating need, the defendant is required to show that other sources — particularly the class representatives — cannot provide the information requested of absent class members." *Id*. Not only are the facts Peloton claims it must adduce through absent class member depositions unnecessary, *they are legally irrelevant*.

Indeed, any individual class member's understanding of the phrase "ever-growing" is irrelevant, because in a GBL 349/350 claim, a statement's falsity is determined objectively from the viewpoint of a reasonable consumer. *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019). *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (materiality is objective).

---

[1] *Stinson* goes on to say that absent class member discovery is permitted "only where a strong showing is made that the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to the common questions and unavailable from the representative parties; and (3) is necessary at trial at issues common to the class." *Id*. at *3.

Likewise, whether Peloton's misrepresentation affected any individual class member's purchase decision is irrelevant, because "neither Section 349 nor 350 require proof of reliance." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015). In other words, there is no requirement a plaintiff show that a misrepresentation "had any effect on plaintiff's decision." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, 731 N.E.2d 608, 612 (2000). That is "the wrong standard because reliance is not an element" of the claim. *Id*.

Similarly, individual class members' testimony is irrelevant to the damages determination, because it too is objectively determined. "Calculating a price premium can be as simple as computing the difference between the cost of the second best product in the product class (without a deceiving label) and the cost of the product at issue (with the label)." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016). Accordingly, damage models that do not analyze actual pricing and sales data and instead ask subsection of customers what they would pay have been rejected. *See Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67 (S.D.N.Y. 2015).

There is also no requirement that Plaintiffs show all absent class members were exposed to Peloton's misrepresentation. *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 274 (E.D.N.Y. 2019) ("[S]ections 349 and 350 of the GBL do not contain a viewing requirement or a reliance requirement, nor do they require individual determination of how a particular advertisement affected each putative class member."). Nevertheless, evidence of the extent of the class's exposure to Peloton's deception will be shown though Peloton's own documents evidencing the contents of its website, the signage in its stores, its paid media campaign, and *not* through its customers' unaided recollection.

It is also untrue that the absent class members who Peloton seeks to depose have shown a willingness to litigate against Peloton. To the contrary, Peloton's proposed deponents are a few of the several thousand of its aggrieved customers who sought to arbitrate their claims against Peloton—as Peloton required in its Terms of Service. Compl. (Dkt. 1) at ¶ 36. But Peloton breached its own Terms by refusing to pay to the AAA the fees necessary to initiate the arbitrations—leaving its customers without their contractually-mandated recourse for their injuries.[2] *Id*. at ¶ 40. This litigation commenced, because after Peloton's breach of its own Terms of Service, the AAA held that "either party may choose to submit its dispute to the appropriate court for resolution." *Id*. at ¶ 41 (citing AAA letter, Dkt. 1-2). The named Plaintiffs in this action chose to pursue representative litigation in court, but thousands of other aggrieved customers—including the absent class members who Peloton cherry-picked for deposition— made no such affirmative choice, each deciding *against* pursuing claims in court against Peloton.

These absent putative class members have not moved to intervene here, they have not filed affidavits, and they have not paid the costs or directed this lawsuit.[3] They are Peloton

---

[2] Three of Peloton's aggrieved customers were able to abitrate their claims to hearings. In two of those three arbitrations—after full evidentiary hearings—the Arbitrators found in favor of the consumers finding that Peloton violated the Kansas Consumer Protection Act by misrepresenting its library of classes as "ever-growing."

[3] This distinguishes several cases, relied upon by Peloton. *See Vasquez v. Leprino Foods Co.*, No. 117CV00796AWIBAM, 2019 WL 4670871, at *4 (E.D. Cal. Sept. 25, 2019) (in wage-and-hour case,

customers who were damaged by Peloton's deceptions regarding its class library, and then again when Peloton refused to abide by its promise to arbitrate.  Now, to add insult to injury, Peloton attempts to use these absent class members to cloud the record in an effort to defend itself from class action litigation born of its refusal to honor its own arbitration-related contractual terms.

Unlike a plaintiff in a normal civil suit, an absent class member is not required to do anything.  He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  Peloton demands that this Court disturb the understood class action mechanism and disregard established jurisprudence in the name of irrelevant and burdensome discovery.

Requiring absent class members to participate in adversarial depositions would be burdensome for several reasons.  They have not injected themselves into this class action, nor have they ever consented to depositions in any forum.  Indeed, Peloton's arbitration clause allowed them to arbitrate "solely on the basis of documents submitted to the arbitrator." Dkt. 1-1 at 20.  Even a short deposition would require consultation with counsel to prepare for questioning, so the burden on their time, particularly in the context of the ongoing pandemic and difficulty of standard face-to-face consultation, is much more than Peloton makes it seem.  Also, absent class members may not be able to participate in a remote deposition or would need the use of third party services, which further adds to their burden.

There is nothing Peloton can uncover from the depositons of cherry-picked absent class members that it could not discover through the depositions of the named plaintiffs in this case, in addition to the testimony offered by claimants in the three arbitrations that have concluded.  Each of these six Peloton subscribers matches the only criterion Peloton has given the court for choosing 21 *additional* deponents—having once filed arbitrations against Peloton.[4]  Even if an absentee class members were able to add some incremental information, it "would only be tangentially relevant, if it is relevant at all" to whether *Peloton* violated GBL 349 and 350.[5]  Peloton's request must be denied.

Sincerely,

*[signature]*

Adam J. Levitt

*One of the Attorneys for Plaintiffs and the Proposed Class*

---

allowing plaintiffs, rather than defendants, to take depositions of seven absent class members, because they filed declarations in opposition to the motion for class certification); *Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691, 699–700 (S.D.N.Y. 1975) (in case from 1975, noting that discovery devices should not be used to take unfair advantage of absent class members; involving a fairly finite number of class members who specifically authorized the litigation and financed it since its inception).

[4] *See Laborers Local 17 Health & Ben. Fund v. Morris*, No. 97CIV.4550(SAS)(MHD), 1998 WL 241279, at *2 (S.D.N.Y. May 12, 1998) ("In assessing defendants' assertion of need, we note that there are already nine named plaintiff funds from which defendants may obtain discovery of this nature…").

[5] *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 LAK, 2014 WL 5392465, at *3 (S.D.N.Y. Oct. 9, 2014), *clarified on denial of reconsideration*, No. 11 CIV. 06969 LAK, 2014 WL 6879835 (S.D.N.Y. Nov. 6, 2014).