UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
ERIC FISHON, ALICIA PEARLMAN, and PATRICK      :
YANG, individually and on behalf of all others similarly   :
situated,                                                          :
                                       Plaintiffs,         :          19-cv-11711 (LJL)
               -v-                                     :
                                                                   :          OPINION &
PELOTON INTERACTIVE, INC.,                         :          ORDER
                                                                   :
                                       Defendant.           :
                                                                   :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/27/2020_

LEWIS J. LIMAN, United States District Judge:

Defendant Peloton Interactive, Inc. ("Peloton") seeks leave of Court to conduct short, remote video depositions of 21 unnamed putative class members who have not appeared in this litigation.  (Dkt. No. 47.)  For the following reasons, the application is granted in part.

## BACKGROUND

The Complaint alleges that Eric Fishon, Alicia Pearlman, and Patrick Yang ("Named Plaintiffs") purchased Peloton products in reliance on "Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes."  (Dkt. No. 1 ¶¶ 24–26.)  Named Plaintiffs assert that the representations were false because "approximately 57% of [Peloton's] on-demand digital library" would subsequently "be removed."  (*Id.* ¶ 28.)  Named Plaintiffs complain that they paid more "for the Peloton hardware and corresponding Peloton Membership" than Peloton represented such products were worth.  (*Id.*)  They assert claims under the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349 and 350 ("Section 349" and "Section 350") on behalf of themselves individually as well as on behalf of a putative class defined as "[a]ll purchasers of the Peloton hardware and/or corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019."  (*Id.* ¶ 84.)  The class

action claims are brought pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  (*Id.*)

Peloton now seeks to depose 21 unnamed putative class members.  Those 21 individuals are among more than 2,700 Peloton consumers who—before this class action commenced—filed arbitration demands with the American Arbitration Association (the "AAA") under Peloton's terms of service.  (Dkt. No. 1 ¶ 38; Dkt. No. 47-1 ¶ 3.)  The arbitration demands asserted similar claims to those asserted here.  (Dkt. No. 1-1 ¶¶ 20–21; *id.* ¶ 38; Dkt. No. 47-1 ¶ 3.)  When the 21 individuals made their arbitration demands, they were represented by the same law firm that now represents Named Plaintiffs in this litigation.  (Trans. of 2.20.2020 Hearing at 6; Trans. of 7.20.2020 Oral Arg. at 17.)   After Peloton failed to pay arbitration fees to the AAA, the AAA issued a letter in which it "decline[d] to proceed with administration of the parties' disputes" and stated that "either party may choose to submit its dispute to the appropriate court for resolution." (Dkt. No. 1-2.)  The letter advised that, "because [Peloton] has not paid AAA administrative fees . . . the AAA will decline to accept future consumer matters submitted against or by [Peloton]." (*Id.*)[1]

Following submission of Peloton's motion (Dkt. No. 47) and Named Plaintiffs' response (Dkt. No. 48), the Court directed Peloton to submit a reply "identify[ing] with particularity the legal arguments for which the depositions would provide relevant factual support."  (Dkt. No. 49.)  Peloton's reply offered two arguments.  (Dkt. No. 51.)  First, Peloton asserted that the depositions would provide relevant factual support for Peloton's contention under Rule 23(b)(3) that individual issues as to causation and injury will overwhelm common issues.  (*Id.*)  Second,

---

[1] Five active cases involving Peloton and consumers represented by the same law firm in Kansas, in which arbitrators had already been appointed, were permitted to proceed.  (Dkt. No. 1-2.)

Peloton stated that the depositions would provide relevant factual support for Peloton's argument that Plaintiffs lack typicality under Rule 23(a).  (*Id.*)  On July 20, 2020, the Court heard oral argument on the motion.

## DISCUSSION

I.   <u>The Relevant Standards</u>

A court deciding whether to permit discovery of absent putative class members prior to a class certification order must balance competing considerations.  On the one hand, at that stage of the litigation, absent putative class members are strangers to the litigation.  Formally, they are not considered "parties" to the litigation.  *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (characterizing proposition that a "nonnamed class member is a party to the class-action litigation *before the class is certified*" as "novel and surely erroneous") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J. dissenting)).  They have not yet been given notice of the lawsuit and therefore have not yet had the responsibility to determine whether or not they wish to be part of the litigation—with all the benefits and burdens that being a party to a litigation brings.  *See* Fed. R. Civ. P. 23.  Ordinarily, no counsel has been appointed to represent them.  *See* Fed. R. Civ. P. 23(g) (procedures for court appointment of class counsel); Manual for Complex Litigation (Third) § 30.24, at 233 (1995) ("[N]o formal attorney-client relationship exists between class counsel and the putative members of the class prior to class certification.").

Many of them may not even know about the lawsuit; they may not even know about the possibility that they have been wronged by the defendant.  *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552 (1974) ("Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take

note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case.").

An unnamed putative class member, prior to certification, thus enjoys at least those rights enjoyed by every stranger to a litigation. Although litigants are entitled, where appropriate, to "everyman's evidence," 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed. 1940), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed R. Civ. P. 45(d)(1). One of the factors that goes to "undue burden" is whether the requested information can be obtained from the parties themselves. "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007). "[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]." *Id.* (quoting *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996)) (alternations in original); *see also* 8B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2204 (3d ed. 2002) ("Ordinarily, it is thought preferable that documents should be sought from a party using Rule 34 rather than from a nonparty.").[2]

Aside from those concerns, which are endemic to third-party requests in civil litigation generally, there are the particular concerns presented by requests for discovery from absent class members in class actions, and particularly consumer class actions where the amount at issue with respect to each individual class member may be small. The Supreme Court has long recognized

---

[2] Although the cases speak to document production, the same principles apply equally if not more so to requests for depositions.

that part of the genius of the class action vehicle is that it permits the aggregation of claims that, on their own, would not be economical for any individual plaintiff to pursue but that collectively can be efficiently and effectively litigated.  *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997)); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit proceed as a class action or not at all.").

In addition, the class action vehicle permits the court to try common issues of law and fact that affect all class members together without the individualized discovery from each putative class member that would be necessary if each member of the class brought her own lawsuit.  Extensive discovery of putative class members could undercut those efficiency gains by implementing the very individualized approach that class actions are intended to avoid.  *See In re Carbon Dioxide Ind. Antitrust Litig*., 155 F.R.D. 209, 211-12 (M.D. Fla. 1993) ("The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted, particularly on the issue of liability."); *Mendez v. Avis Budget Grp., Inc*., 2019 WL 1487258, at *3 (D.N.J. Apr. 3, 2019) (same).

Moreover, if not monitored carefully, discovery of absent class members runs the risk of turning the "opt-out" class action into an impermissible opt-in class action.  As a legal matter, if the consequence of noncompliance with a discovery request is an order precluding the

noncompliant putative absent class member from recovery, the practical effect would be to turn the opt-out class action into opt-in one; only those who chose to become actively involved (or at least chose not to disobey the discovery request) will receive relief as part of the class action. *See In re Petrobras Sec. Litig.*, 2016 WL 10353228, at *1 (holding that by requiring putative class members to take "affirmative steps" in order to become class members, they would, in effect, "need to opt in"); *Kline v. First W. Gov't*, 1996 WL 122717, at *2 (E.D. Pa. Mar. 11, 1996) (describing cases where "defendants filed motions to have . . . class members [who did not respond to discovery] dismissed from the case under Federal Rule of Civil Procedure 37" and terming that "strategy" a "'back door' way to create an 'opt in' scheme, where class members are required to take some affirmative step in order to remain in the class"); *see also American Pipe*, 414 U.S. at 552 ("Rule 23 is not designed to afford class action representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action.").  As a practical matter, courts must be careful to avoid the *in terrorem* effect of extensive absent class member discovery, creating the risk that absent class members could proactively choose to opt out of the class action for fear that if they do not do so, they will be subjected to vexatious or at least burdensome discovery practice.

On the other hand, every defendant has a due process right to defend itself.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996); *Western Elec. Co., Inc. v. Stern*, 544 F.2d 1196, 1198–99 (3d Cir. 1976).  And class certification is a pivotal stage in civil litigation.  *See IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *22 (S.D.N.Y. Oct. 29, 2013) (describing class certification as "a crucial inflection point"); *Puttick v. Am. Online, Inc.*, 2007 WL 1522612, at *4 (S.D.N.Y. May 23, 2007) (calling it a "critical stage").  The Second Circuit has recognized that "class certification places inordinate or hydraulic pressure on

6

defendants to settle, avoiding the risk, however small, of potentially ruinous liability." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 80 (2d Cir. 2004) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 148 (2d Cir. 2001) (Jacobs, J., dissenting)).  Plaintiffs seeking to certify a class under Rule 23 must offer affirmative evidence, not just pleadings, to satisfy each of the elements of the rule.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) ("In evaluating a motion for class certification, the district court . . . must resolve material factual disputes relevant to each Rule 23 requirement.").  Plaintiffs are allowed to conduct discovery in order to obtain evidence necessary to make the showing described above.  Defendants should be entitled to no less.  Specifically, a defendant should not be "unfairly prejudiced by being unable to develop its case" even though "facts of the case may reside with the absent class members."  3 William B. Rubenstein, *Newberg on Class Actions* § 9:11 (5th ed. 2015) (footnotes and citations omitted).  After all, there is no textual carve-out in Rules 26 and 45 (nor is there one in Rule 23) of the Federal Rules of Civil Procedure for persons who happen to be absent putative class members.

Courts in this District (and elsewhere) have articulated different tests to balance these competing interests.  Some courts ask whether the discovery "(1) is needed for the purposes of trial or the issues common to the class, (2) is narrowly tailored, (3) will impose undue burden on the absent class members, and (4) is not available from representative plaintiffs." *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008); *Indergit v. Rite Aid Corp.*, 2015 WL 7736533, at *1 (S.D.N.Y. Nov. 30, 2015).  Others require defendants to show "that the information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to the common questions and unavailable from the representative parties; and (3) is necessary at trial [of] issues common to the class." *Stinson,*

2015 WL 8675360, at *3 (citation omitted); *In re Petrobras Sec. Litig.*, 2016 WL 10353228, at *1. Under both tests, the defendant must make a "strong" showing. *See Chilcott*, 2008 WL 344715, at *2; *Stinson*, 2015 WL 8675360, at *3. Presently, "there is no uniform test in the federal courts for allowing discovery of absent class members." *Stinson*, 2015 WL 8675360, at *3.

The Court observes that the cases above involve requests for evidence at trial and thus focus on the need for the evidence for trial. The *Chilcott* test asks whether the evidence "is needed for the purposes of trial or the issues common to the class," 2008 WL 344715, at *2, and the *Stinson* test asks whether the evidence is "necessary at trial [of] issues common to the class," 2015 WL 8675360, at *3. The issue before the Court is different. Peloton seeks evidence from putative class members *not* for the purpose of defeating claims at trial but for the purpose of showing that putative class members should not be made class members at all.

In these circumstances, then, the most appropriate test may be one that hews most closely to the language and caselaw under Rule 45: a subpoena to putative absent class members will be permitted when the party seeking discovery makes a strong showing that: (1) the discovery is not sought for any improper purposes, to harass, or to alter the membership of the class; (2) it is narrowly tailored to subjects which are plainly relevant; and (3) it does not impose an undue burden given the need for the discovery at issue and the availability of the same or similar discovery from a party.

These factors are not to be applied in a rote, mechanical fashion any more than they would if they were applied to third-party discovery in an individual action. To be sure, in every case, third-party discovery should not be permitted if it is sought with the purpose or effect of harassment or altering membership of the class. Where discovery is sought solely for purposes

of harassment, it is not permissible.  Full stop.  If there is no improper purpose, however, and if

the burden on the third party is not particularly great (for example, if the third party is well-

heeled or already has counsel) and the request is not particularly burdensome, the showing of

necessity need not be particularly strong.  On the other side of the coin, where the burden on the

third party is great, the corresponding showing of need must also be great.

II.   Application of the Standards

There is no evidence here that the discovery is sought to harass or alter membership of

the class.  Peloton has articulated a reasonable basis to believe that the absent class members

have information which could help inform the Court's decision whether to certify a class and

which could rebut Named Plaintiffs' showing at class certification.  There is no reason to doubt

the good faith of that assertion.  There is also no reason to believe that the requested depositions,

if permitted, would impermissibly alter the membership of the class or undermine the

efficiencies sought to be achieved by the class action.  The depositions are limited to 21 absent

class members.  Though the Court concludes that that number is too great, there is no risk that

permitting those depositions would create a costly and irrelevant diversion when, as here, relief

is being sought on behalf of a presumptive class that includes, by Named Plaintiffs' estimate,

"not less than . . . hundreds of thousands of people."  (Dkt. No. 1 ¶ 87.)  Because the number is

limited and is only for class certification purposes, there is little risk that the depositions will

dramatically change the size of the class or send a message to absent class members that they

should opt out (if a class is certified) in order to avoid onerous discovery obligations.

Although individual circumstances of the deponents may differ, the Court cannot

conclude as a categorical matter that permitting the depositions will impose an undue burden on

each of the 21 individuals.  In that respect, this case is markedly different from those in which

9

courts have not permitted absent class member discovery.  *See Groth v. Robert Bosch Corp.*, 2008 WL 2704709, at *1 (W.D. Mich. July 9, 2008) ("The deposition subpoenas were extremely burdensome, both in the scope of the documents demanded and in the intrusive nature of the interrogation . . . Defendants questioned other deponents concerning their income, assets (including real estate, stocks, and other investments) as well as their health history.").

Furthermore, this is not a case in which discovery is sought of true strangers to the litigation—persons who had no knowledge of the lawsuit, no access to a lawyer, and even no idea that a potential claim existed.  Each of the 21 individuals has already brought a claim against Peloton in arbitration based on the same allegations asserted here.  Each retained counsel to assist in bringing that arbitration claim—the same law firm that represents Named Plaintiffs here.  (Trans. of 7.22.2020 Oral Arg. at 17.)[3]  Accordingly, each is aware of the class action lawsuit or at least of the potential of it.

Indeed, at oral argument on this motion, Named Plaintiffs' counsel confirmed that after the AAA issued its letter, the firm contacted all of its clients to update them on the different ways they could get recovery from Peloton.  (*Id.* at 18.)  As Named Plaintiffs' counsel explained, "We would have told them what the [AAA] decided and what their options were. One of their options was to file litigation against Peloton[,] including filing a class action." (*Id.*)  Presumably, counsel—who had ethical duties to their clients—also informed them how class actions work. Specifically, counsel would have informed them that even if they personally chose not to pursue a class action as a named plaintiff, they could obtain recovery by virtue of others stepping forward and bringing claims on their behalf.  This case is thus akin to (but not identical with)

---

[3]  To the extent that Named Plaintiffs' counsel no longer represents a potential deponent, Peloton is willing to consider substituting another individual.  (Dkt. No. 47 at 1–2 n.3.)

those cases in which courts have permitted discovery from those who have "injected" themselves into the litigation or who were named as named plaintiffs only to have dismissed their claims when discovery was sought. *See, e.g.*, *Vasquez v. Leprino Foods Co.*, 2019 WL 4670871, at *4 (E.D. Cal. Sept. 25, 2019) (collecting cases); *Robertson v. Nat'l Basketball Assoc.*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975); *In re Duramax Diesel Litig.*, 2020 WL 1685462, at *1 (E.D. Mich. Apr. 7, 2020) (refusing to grant named plaintiffs' motion for voluntary dismissal with prejudice until they responded to discovery requests).

It is true that, in an individual case, the burdens of sitting for even a short deposition might outweigh the benefits and an absent class member might be entitled to an order quashing or modifying the subpoena. But that does not justify depriving Peloton of the right to serve subpoenas and to attempt to get the requested testimony. Peloton has stated that, to the extent that certain potential deponents lack the technology to participate in video conferencing, it is willing to consider identifying alternative deponents. (Dkt. No. 47 at 1–2 n.2.) A more narrowly tailored protection emerged at oral argument. As counsel for Named Plaintiffs emphasized, the Court's order today cannot preclude the individual deponents—who are not before the Court— from availing themselves of the remedies available under Rule 45 where the subpoena is burdensome based on their particular facts. To the extent that any individual deponent can make that showing on the individual facts (but not on the basis argued here), the subpoena will be quashed or modified and Peloton can serve another deponent.

The dispositive question here is the extent to which the discovery is necessary for purposes of the class certification determination. Both parties present forceful arguments. Peloton, while recognizing that courts assess whether an act or practice is *objectively* misleading or deceptive under Section 349, *see, e.g.*, *Goldemberg v. Johnson & Johnson Consumer*

11

*Companies, Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (asking whether acts or practices are materially misleading or deceptive to "a reasonable consumer acting reasonably under the circumstances") (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)), focuses on the statutory causation requirement.  *See* Section 349 (permitting a plaintiff to bring a claim under the New York General Business law only if she "has been injured by reason of any violation of this section").

Peloton relies on a series of decisions holding that, in the case of an alleged consumer fraud, the plaintiff must show that she *saw* the advertisement (in order to demonstrate that she was injured by it), and that the plaintiff must show that she was motivated to make the purchases at issue because of the allegedly misleading advertisements.  *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) ("[I]f it is not demonstrated that 'all members of the class saw the same advertisements' or if the content of the 'advertising varied widely and not all the advertisements contained the alleged misrepresentations,' then 'questions of individual members' exposure to the allegedly deceptive advertising [would] predominate' on those claims.") (quoting *Solomon v. Bell Atl. Corp.*, 777 N.YS. 2d 50, 53 (2004)); *Wurtzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017); *Gale v. Int'l Bus. Machines Corp.*, 9 A.D. 3d 446, 447 (App. Div. 2004); *Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, 481–82 (S.D.N.Y. 2019); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018)).  Peloton asserts that the depositions would provide relevant factual support for its contention under Rule 23(b)(3) that individual issues as to causation and injury will overwhelm common issues, and its contention under Rule 23(a) that Named Plaintiffs lack typicality.  (Dkt. No. 51.)

For their part, Named Plaintiffs rely on a "price premium" theory that they argue is applicable to all putative class members.  They contend that "Peloton's gutting of its digital library materially lowered the value of Plaintiffs' and the other Class members' subscriptions." (Dkt. No. 1 ¶ 80.)  Named Plaintiffs do not articulate the details of the so-called "price premium" theory as it applies to their case (Dkt. No. 48 at 2), but they have suggested two ways that such a premium might be calculated.  One possibility is by comparison with comparable products.  (*Id.* (quoting *Goldemberg*, 317 F.R.D. at 394 ("Calculating a price premium can be as simple as computing the difference between the cost of the second best product in the product class (without a deceiving label) and the cost of the product at issue (with the label).").))  Another approach limits the inquiry to the product in question and calculates amount of the "overcharge" that plaintiffs incurred due to the absence of a promised product feature.  (Dkt. No. 36 at 19); s*ee, e.g.*, *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292–93 (S.D.N.Y. 2015) ("[T]he Complaint asserts that Weisblum was 'damaged in the amount of the purchase price of the Cold–EEZE Products, *i.e.*, the difference in value between the Cold–EEZE Products as advertised and the Cold–EEZE Products as actually sold.' . . . Weisblum has therefore alleged that he paid a premium for Cold–EEZE.").  In either event, Named Plaintiffs argue, application of the theory would eliminate the need for individualized trials for each putative class member as to causation and injury and thus satisfy Rule 23.

At this stage of the proceedings, the Court need not and does not come to a final conclusion with respect to the evidence that will be sufficient to certify a class in this case.  It is sufficient that the evidence is plainly relevant to Peloton's defense, *see* Fed. R. Civ. P. 26(b)(1), and cannot be obtained through other means.  In a number of cases, courts have reviewed the testimony of named plaintiffs as to issues of commonality and predominance (and not just

typicality).  For example, in *Solomon*, the First Department cited testimony from individual plaintiffs as support for its conclusion that "questions as to whether each individual was reasonably misled by [the advertisements at issue] predominate."  9 A.D.3d at 54 ("One of the individual plaintiffs who learned about DSL service through word of mouth testified that he spoke to three or four people who were using the service and he heard both 'good things' and 'complaints' about it. Another testified that he read articles in computer magazines comparing DSL service to cable modem service . . . [I]ndividual trials would be required to determine whether a reasonable consumer acting reasonably in each plaintiff's circumstances would have been misled by defendants' representations.").  In *Marshall v. Hyundai Motor Am.*, Chief Judge McMahon cited deposition testimony of named plaintiffs to illustrate that they "did not have anything like identical experiences with their vehicles."  334 F.R.D. 36, 44 (S.D.N.Y. 2019) (finding that the need for individualized showings of causation would "overwhelm any common issues").[4]

In this case, the Court has the allegations and will receive the sworn deposition testimony of the three Named Plaintiffs who either self-selected or were selected by counsel to be representatives of the proposed class.  Those Named Plaintiffs, however, represent only a subset of the class members proposed in this case.  Named Plaintiffs all bought the most expensive Peloton hardware products, seemingly from Peloton directly, in one month—November 2018.

---

[4] Those cases are, and this case is, distinguishable from *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013).  In that case, the magistrate judge recommended that the court deem the commonality element satisfied, despite named plaintiff testimony revealing diverse purchasing motivations and experiences with the product, because the question of "whether or not the product *name* was misleading or deceptive to a reasonable consumer [was] a single question of fact that satisfie[d] the commonality element."  *Id.* (emphasis added).  The alleged misrepresentation in this case—a discrete advertising statement—was, unlike the name of the product, not necessarily seen by all product purchasers.

(Dkt. No. 1 ¶¶ 24–26.)  The proposed class, however, is defined as "[a]ll purchasers of the

Peloton hardware and/or corresponding Peloton Membership subscription from April 9, 2018

through March 25, 2019."  (Dkt. No. 1 ¶ 84.)  As Peloton highlights, that class would include:

- purchasers who only brought a subscription to Peloton Digital (up to $19.49 per month compared to a one-time payment of more than $2,000 for Peloton hardware plus a $39 monthly membership);

- purchasers who acquired Peloton hardware second-hand, including at a cheaper price than Named Plaintiffs; and

- purchasers who bought Peloton products on dates other than November 2018 and throughout the full date range identified above (during which time the number of fitness classes in the Peloton library differed significantly)

(Dkt. No. 51 at 2.)  By no means prefiguring any typicality analysis, the Court simply observes

that Peloton has the right also to select some of the (former) clients of counsel who filed

arbitration claims but who were not selected or did not select themselves to be class

representatives and that it would be helpful to the Court at the class certification stage to hear

testimony from those class-eligible individuals who have had relevant experiences that Named

Plaintiffs have not had.[5]  Peloton has apparently sifted through 2,7000 members of the putative

class in an effort to identify individuals with such experiences, and it is those individuals (for this

very reason) Peloton seeks to depose.

The Court will, for that reason and the ones explained above, permit limited depositions

of absent putative class members on issues of typicality, commonality, and predominance.

However, based on the showings the Court has received to date, 21 is too many.  Peloton has

offered no persuasive justification for divergence from the presumption in the Federal Rules of

---

[5] Indeed, the Court may well learn from these depositions that common questions do predominate and that the claims and defenses of Named Plaintiffs are typical of the claims and defenses of the putative class.

Civil Procedure that parties are entitled to ten depositions.  *See* Fed. R. Civ. P. 30.  The Court understands that Peloton has chosen potential deponents by "look[ing] at the different factors that [it] feel[s] would be important at class certification."  (Trans. of 7.20.2020 Oral Arg. at 3.) If, upon the conclusion of the ten depositions permitted by this order, Peloton has a reasonable basis for believing that certain "factors . . . important at class certification" have not been covered by the taken depositions, then Peloton may move the Court for leave to take additional depositions.  (*Id.*)  The Court expects Peloton, in alignment with its stated purpose for taking these depositions, to select its ten initial deponents resourcefully, in order to minimize the need for any additional absent putative class member testimony.

All depositions, as promised by Peloton, shall be taken remotely.  *See* Fed. R. Civ. P. 30(b)(4).  All deposition costs (but not attorneys' fees) shall be borne by Peloton.  Peloton shall also either take depositions of those who have the technology to participate in remote depositions or shall provide the appropriate technology to the deponents.

## CONCLUSION

For the foregoing reasons, Peloton's motion is GRANTED IN PART.  The Clerk of Court is respectfully directed to terminate Dkt. No. 47.


SO ORDERED.

Dated: July 27, 2020
       New York, New York                   _____
                                                   LEWIS J. LIMAN
                                              United States District Judge

16