UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                         :

ERIC FISHON, et al.,                      :

             Plaintiffs,      :

                         :             19-cv-11711 (LJL)

     -v-                   :

                         :        <u>OPINION AND ORDER</u>

PELOTON INTERACTIVE, INC.      :

            Defendant.      :

                         :

-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant Peloton Interactive, Inc. ("Peloton") moves, pursuant to Fed. R. Civ. P.

12(b)(6), to dismiss the complaint against it for failure to state a claim for relief.  For the

following reasons, Defendant's motion to dismiss is granted with respect to Plaintiff Alicia

Pearlman ("Pearlman").  Defendant's motion to dismiss is denied with respect to Plaintiff Eric

Fishon ("Fishon").

**BACKGROUND**

      Peloton sells at-home stationary bicycles ("Peloton Bike") and treadmills ("Peloton

Tread") that stream live and on-demand fitness classes.  Compl. ¶ 3.  For access to the content

library, users pay a separate monthly subscription fee.  *Id.*  Peloton does not offer distinct

categories of membership for users of the Peloton Bike or the Peloton Tread; all members pay

the same monthly fee for access to the entire content library.  *Id.*

      Certain Peloton advertisements described the library of fitness classes as "ever-growing."

*Id.* ¶ 5.  In April 2018, Peloton received a cease-and-desist letter from the National Music

Publishers Association ("NMPA"), regarding Peloton's use of songs in its on-demand class

library. *Id.* ¶¶ 11-12, 65-66.  Peloton continued to market its class library as "ever-growing."  *Id.* ¶¶ 9, 12, 67-68, 77, 82.  In March of 2019, however, Peloton removed approximately 5,739 classes, or nearly 57% of the total available classes, from its library in response to a lawsuit filed by members of the NMPA, alleging that Peloton had used copyrighted music for years without proper licensing.  *Id.* ¶¶ 13-15.

Plaintiffs allege that they purchased a Peloton Tread and a Peloton Bike, as well as a subscription to Peloton's content services.  Plaintiffs allege that Peloton's description of its library as "ever-growing" was deceptive and misleading.  Further, Plaintiffs allege that they purchased Peloton products and subscriptions to its digital library "in reliance on [the] promise" that the digital library would be "ever-growing."  Dkt. No. 36 at 1.  According to Plaintiffs, the decreased number of classes as well as the decrease in the quantity of music available on workout class playlists "has materially diminished users' experience with the Peloton bike subscription service."  *Id.*  at 3.  Plaintiffs allege that Peloton knew it was building its on-demand library with copyrighted material for which it had not obtained the media rights.  *Id.* at 2. Plaintiffs additionally allege that the class removals were inevitable and that Peloton should have affirmatively disclosed to members the likelihood of those removals at an earlier date.  Compl. ¶¶ 82-83.  If they had known the truth, Plaintiffs claim, they never would have purchased a Peloton bike or subscription on the same terms.  Dkt. No. 36 at 1.

Plaintiffs sue Peloton under the New York General Business Law (the "NYGBL") §§ 349 and 350.  Section 349 of the NYGBL prohibits deceptive acts and practices, while Section 350 prohibits false advertising.  "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices."  *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 636

(S.D.N.Y. 2016).

Peloton moves to dismiss Plaintiffs' complaint, raising six principal arguments in support of its motion.  First, Peloton argues that Plaintiffs' claims are barred as a matter of law because Peloton's Terms of Service disclosed that Peloton reserved the right to remove class content "at any time, in its sole discretion."  Compl., Ex. 1 § 15.  Second, Peloton argues that its statement that its library is "ever-growing" was non-actionable puffery.  Third, Peloton argues that even if the "ever-growing" statement were not puffery, it is not misleading because it is true.  Fourth, Peloton argues that Plaintiffs have failed to allege that Peloton's deceptive statement caused their injury as required under the NYGBL.  Fifth, Peloton argues that Plaintiffs have failed to allege that they suffered any injury or loss.  Sixth, Peloton argues that Plaintiffs lack statutory standing under the NYGBL because they have not pleaded a sufficient nexus between their transactions and New York state.

Peloton also argued in its briefing that Plaintiff Patrick Yang's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.  Yang voluntarily dismissed his claims without prejudice during the pendency of this motion, Dkt. No. 59, rendering these argument moot.

## DISCUSSION

In order to survive a motion to dismiss, a complaint must contain sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual

3

enhancement" in order to survive dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*. at 556.

Sections 349 and 350 were enacted in 1970 and 1963, respectively, to prevent deceptive and misleading acts, practices and advertising in the State of New York. Originally, both sections were enforceable only by the New York Attorney General. *See Rivera v. Navient Solutions, LLC*, 2020 WL 4895698, at *6 (S.D.N.Y. Aug. 19, 2020). In 1980, however, the New York legislature amended the statute—without changing its substantive prohibitions—to provide a private right of action to individuals injured by reason of a violation of its provisions. *Id*. In its current form, "New York's Consumer Protection Act—General Business Law article 22-A—was enacted to provide consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices." *Goshen v. Mutual Life Ins. Co.*, 774 N.E.2d 1190, 1194 (N.Y. 2002). In order to state a claim under either Section 349 or 350, a plaintiff must allege: (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). All that must be alleged at the pleading stage is that "on account of a materially misleading practice, [Plaintiffs] purchased a product and did not receive the full value of [their] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (citing *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999)).

New York law prohibits both material omissions as well as affirmative representations. *Krobath v. S. Nassau Communities Hosp.*, 115 N.Y.S.3d 389, 392-93 (2d Dep't 2019). In order to state an omission claim, a plaintiff must allege that the defendant possessed material information and failed to disclose that information. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019).

## I.   Terms of Service

Defendant argues, first, that Peloton's Terms of Service authorized Peloton to remove content from its library at any time and that consequently Plaintiffs cannot maintain a claim that Peloton's advertising of an "ever-growing" library was false or deceptive. Peloton's 2018 Terms of Service state, in relevant part:

> Peloton reserves the right to modify the Peloton Service, including, but not limited to updating, adding to, enhancing, modifying, removing or altering any Content or features of the Peloton Service, at any time, in its sole discretion. . . . Peloton . . . does not guarantee that any Content available on the Peloton Service . . . will continue to be available for any length of time. Peloton provides the Peloton Service on an "AS IS" and "AS AVAILABLE" basis.

Dkt. No. 31, Ex. 1.

Defendant argues that because Plaintiffs agreed to these terms when they subscribed to Peloton's service, Defendant cannot be held liable for deceptive practices for conduct authorized by the terms. According to Defendant, even if the "ever-growing" statement was deceptive, the Terms of Service overcome the deception because Peloton reserved the right to remove content at any time. Nor can Defendant be held liable for its failure to disclose the purportedly inevitable class removals, for the same reason. Defendant points to a number of cases that it argues support the proposition that New York courts dismiss claims under the NYGBL where the defendant expressly disclosed its right to take the actions of which a plaintiff complains.

Plaintiffs respond that disclaimers are insufficient to dismiss Section 349 and 350 claims.

*See Goshen*, 746 N.Y.S.2d at 865 (holding that defendants' contractual terms and conditions, including a product disclaimer, did not bar plaintiffs' claims for deceptive practices or establish a defense as a matter of law).; *see also Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012) (holding that disclaimers set forth in defendant's catalogs did not establish a defense at the 12(b)(6) stage).

Defendant's arguments are based on a non-sequitur. Peloton's Terms of Service may have protected it from a breach of contract or similar claim for the removal of a particular class or group of classes. However, the Terms of Service do not relieve Peloton from a deceptive marketing claim based on the allegation that Peloton advertised its library as ever-growing while knowing that it would be diminishing or shrinking in size.

The Second Circuit addressed an analogous question in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018). There, plaintiffs claimed that defendant had engaged in deceptive and misleading acts and practices in violation of Sections 349 and 350 by conspicuously labelling its snack products as "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN"; in fact, the grain was predominantly, if not entirely, enriched white flour. *Id.* at 636. Defendants argued that the complaint should be dismissed for failure to allege deception because the front panel of the same advertising disclosed the precise number of grams of whole grain per serving and a side panel listing the product's ingredients disclosed "enriched white flour" was the first and predominant ingredient. The district court agreed and dismissed the complaint. The Second Circuit reversed.

In reversing the district court's decision in *Mantikas*, the Second Circuit laid down the operative legal principles that guide this Court's analysis here. First, although "an allegedly misleading statement must be viewed in light of its context on the product label or advertisement as a whole," *id.* at 636 (internal quotations and citations omitted), the allegedly clarifying

language on the front of the box disclosing the precise number of grams of whole grain "d[id]
not dispel the inference communicated by the front of the package that the grain in 'whole grain'
crackers is predominantly whole grain." *Id.* at 637.  Second, a reasonable consumer confronted
with the language on the front of the box "should [not] be expected to look beyond misleading
representations on the front of the box to discover the truth from the ingredient list in small print
of the side of the box." *Id.* (*quoting Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (2d Cir.
2008)).  A reasonable consumer would expect the more detailed information to "confirm[] other
representations on the packaging" and not to negate it.  *Id.*; *see also Rivera*, 2020 WL 4895698,
at *9 (holding that misleading representations made in a billing statement were not excused by
contradictory statements in the fine print).

Those dual principles are fatal to Defendant's claim here.  First, the language in the
Terms of Service do not dispel the false inference allegedly created by Defendant's advertising.
Defendant's advertising created the inference for reasonable consumers that Peloton's library
was ever-growing; that it would increase in size.  The Terms of Service made clear to purchasers
that they had no right to expect that any particular class or group of classes would remain
available to them.  It does not speak to the size of the collection.  The two representations are not
inconsistent with one another and the latter does not dispel the false inference created by the
former.  Peloton could have increased the size of its library even while removing particular
classes.  The Terms of Service do not disclose that Peloton might remove over half of its library
without simultaneously replacing that half with even more classes.  *See, e.g.*, *Rivera*, 2020 WL
4895698, at *8 ("[I]f a consumer were confused by the language . . . on the first page of the
billing statement, the language on the second and third page of the billing statement would not
necessarily dispel the confusion.").

Second, even if the Terms of Service could be construed to put a reasonable consumer on notice that Peloton intended to remove over half of its classes if that information was displayed prominently alongside the representation that Peloton's library was ever-growing, the Terms of Service did not receive such prominent attention.  As alleged in Plaintiffs' Complaint, the "ever-growing" statement appeared in marketing materials on Peloton's website.  Compl. ¶ 60.  The language stating that Peloton had discretion to remove courses from its library, on the other hand, was contained in the fine print of the Terms of Service that Peloton's customers agreed to after they saw the website, at the time of purchase and when accessing Peloton's content library. Dkt. No. 30 at 5.  They were not part of the advertisement as a whole.  *See, e.g.*, *Mantikas*, 910 F.3d at 636 ("In determining whether a reasonable consumer would have been misled by a particularly advertisement, context is crucial."); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. Oct. 5, 2015) ("Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.") (quoting *Delgado v. Ocwen Loan Servicing,* LLC, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)).  A reasonable consumer, having viewed Peloton's advertisements on its website and having decided to purchase a Peloton product based on the understanding that the library would grow "should not be expected to discover the truth" and that such understanding was false from the Terms of Service.  *Mantikas*, 910 F.3d at 637.

This conclusion is squarely in line with the authority cited by Plaintiffs that under New York law, terms and conditions cannot as a matter of law overcome deceptive marketing practices.  In *Goshen*, for instance, a defendant DSL service provider made certain representations in its advertising regarding the quality of its internet service but also made disclaimers in its service agreement stating that "the service is provided on an 'as is' or 'as

available' basis." 746 N.Y.S.2d at 862.  The New York Court of Appeals held that these

disclaimers were not sufficient to establish a defense as a matter of law because the service was

allegedly "defective due to malfunctions largely or wholly within defendants' control" and the

defendants allegedly "knew this to be the case and [the] promotional representations were

therefore knowingly deceptive."  *Id.* at 865.

Plaintiffs also point to *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014),

where a court in this District came to the same conclusion regarding actions under the NYGBL.

There, defendant job search website represented that the website's experts "pre-screen all jobs so

they're always $100K+." *Id*. at 169.  The plaintiff alleged that this statement was untrue, and the

defendant argued that it could not be sued under the NYGBL because its terms of service stated

that "the information and materials were provided on an 'as is' or 'as available basis.'" *Id*. at

168.  Relying upon *Goshen*, the Court found that disclaimers in a service agreement do not

establish a defense as a matter of law.  *Id*. at 169; *see also Orellana v. Macy's Retail Holdings,*

*Inc.*, 2018 WL 3368716, at *14-15 (S.D.N.Y. July 10, 2018) ("[A] misrepresentation is not cured

as a matter of law by a contradictory disclaimer, at least where the subject matter of the

misrepresentation is within the defendant's control").

The conclusion is consistent not only with common sense but also with the regulatory

regime established by New York's Consumer Protection Act.  That statute is intended to protect

public rights and gives the New York Attorney General authority to enforce it, even without a

showing of injury.  *See Rivera*, 2020 WL 4895698, at *6.  It is clear that the delivery of a Terms

of Service to an individual consumer would not disable the New York Attorney General from

investigating and prosecuting a company from making the sort of allegedly misleading

statements made on its website by Defendant here and charging that they constituted

"[d]eceptive acts or practices."  N.Y. Gen Bus. L. § 349.  It follows that, while the Terms of

Service may be relevant at trial to issues of causation, it cannot defeat a claim that Peloton's

advertising was deceptive and false.

Finally, the cases Defendant cites are not directly applicable to this case, because none of

them concern a claim for false advertising or deceptive marketing.  None of the cases cited by

Defendant address a situation where terms of service contradicted a representation made in a

defendant's promotional materials.  In *A.N.R. Inv. Co. Ltd. v. HSBC Private Bank*, 25 N.Y.S.3d

78, 81 (1st Dep't 2016), for example, the court held only that a plaintiff could not bring a breach

of contract claim based upon a defendant's terms of service where the terms of service expressly

authorized the conduct of which the plaintiff complained.  Similarly, in *Derbaremdiker v.

Applebee's Intern., Inc.*, 2012 WL 4482057, at *5-*6 (E.D.N.Y. Sept. 26, 2012), the court

concluded that the description the rules of a sweepstakes as described on the back of a receipt

was neither misleading, nor did it contradict the full disclosures made on the sweepstakes'

website and in its official rules.  The other cases cited by Defendant are inapposite for similar

reasons.  *See Shovak v. Long Island Commercial Bank*, 858 N.Y.S.2d 660, 662-63 (2d Dep't

2008) (holding that a mortgage broker's yield spread premium was not a deceptive practice

under the NYGBL where the practice was fully disclosed in the contract); *Zuckerman v. BMG

Direct Mktg., Inc.*, 737 N.Y.S.2d 14 (1st Dep't 2002) (holding that "a disclosure that a specified

amount will be charged for shipping and handling cannot cause a reasonable consumer to believe

that such amount necessarily is equal to or less than the seller's actual shipping and handling

costs"); *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (1st Dep't 1994) (holding

that defendant's fees could not be found "excessive" under Section 349 of the NYGBL where

those fees were "always disclosed by [defendant]").  None of these cases holds that a business

which makes a false or misleading representation in an advertisement to attract customers can be relieved of liability for that deceptive act under Section 349 by a disclosure made to that same consumer only later in the business's terms of service, much less that it can be relieved of liability where the terms of service do not directly dispel the false impression created by the advertisement.

## II.   Puffery

Defendant next argues that its statement that the library was "ever-growing" constituted non-actionable puffery.  Under the NYGBL, "[p]uffery is defined as exaggerated general statements that make no specific claims on which consumers could rely."  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 528 n.14 (S.D.N.Y. 2003).  Puffery "is a subjective statement or claim that cannot be proven true or false."  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018); *see Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (holding that a claim is puffery when it consists of "subjective claims about products, which cannot be proven either true or false").  "Puffery is not actionable under sections 349 and 350."  *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013).

Plaintiffs respond that the "ever-growing" statement was not mere puffery.  Dkt. No. 36 at 8.  According to Plaintiffs, the statements were not vague claims nor "unvarnished bluster." *Id*.  Peloton's promise that the class library would be "ever-growing" was not an opinion, nor was it vague and non-specific.  It did not necessarily mean that all the classes available at any particular time would remain available at a future time or prevent Peloton from removing a specific class or group of classes.  But it was nonetheless a measurable claim, promising that the class library in aggregate would continue to grow.  Because the promises of an "ever-growing" library were objective, testable statements, they are therefore actionable.

Defendant's promise that its library of courses was "ever-growing" was not mere puffery.

11

"Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Lugones v. Pete and Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (quoting *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017)).  It can also include "an exaggeration or overstatement expressed in broad, vague, and commendatory language, as distinguished from misdescriptions or false representations of specific characteristics of a product." *Id.*  On the other hand, representations that make a "factual claim" or that make a "concrete representation[]" are not puffery.  *Id.* at 241.

In *Lugones*, for instance, a court in this District held that defendant's advertising that used the expressions "WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS," and "BETTER LIVES FOR HENS MEAN BETTER EGGS FOR YOU" were "paradigmatic examples of puffery." *Id.*  On the other hand, the same defendant's statement that "[o]ur hens can peck, perch, and play on plenty of green grass," was not puffery, because it made a "factual claim . . . upon which a reasonable consumer could rely." *Id.* at 241-42.  Similarly, in *In re Scotts EZ Seed Litigation*, the court determined that the defendant's representations that its product was "WaterSmart"; "Drought tolerant"; "GrowsAnywhere! Guaranteed!"; "Makes the Most of Every Drop"; and "Grows in Tough Conditions! Guaranteed!" were non-actionable puffery, because all of them were "generalized or vague, and thus 'should not have been relied upon as an inducement to purchase'" the product.  2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013) (quoting *Nigro v. Lee*, 882 N.Y.S.2d 346, 347 (3d Dep't 2009)).  On the other hand, the court determined that defendant's representations that "EZ Seed grows grass 50% thicker with half the water compared to ordinary seed" and that "EZ Seed is developed to thrive in virtually every condition—harsh sun, dense shade, and even spreads to repair wear and tear" were not puffery

because they made a promise that the product would "perform in specific measurable ways." *Id*; *see also*, *In re Ford Fusion & C-MAX Fuel Econ. Litig.*, 2017 WL 3142078, at *10 (S.D.N.Y. July 24, 2017) (holding that claim of better gas mileage was not puffery because it was not a "subjective claim which cannot be proved either true or false, nor is it a vague statement of a product's superiority."); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017) (holding that claims discussing vehicles' "world class engineering" and "advanced safety and security features," not puffery because they could be "objectively measured").

On its face and accepting the allegations of the complaint as true, the statement that Peloton's library was "ever-growing" is an objective, factual statement. A reasonable consumer could understand it to mean that the library would "become larger or greater over a period of time" or "increase." That statement is factual and quantifiable and testable. The library either increased in size or it shrunk. Thus, Peloton's statements do not constitute puffery as a matter of law.

## III.   Deceptive or Misleading

Next, Defendant argues that the term "ever-growing" is not deceptive or misleading. In order to state a claim under NYGBL Sections 349 and 350, a plaintiff must plead that the defendant's statements were "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) (quoting *Oswego*, 85 N.Y.2d at 26 (1995)). Although a court may make this determination as a matter of law, *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), "[o]rdinarily, the question of whether a business practice is deceptive is a question of fact not appropriately resolved on a motion to dismiss." *Hertz Corp. v. Accenture LLP*, 2019 WL 5537997, at *4 (S.D.N.Y. Oct. 25, 2019); *see also Webra v. Cree, Inc.*, 2020 WL 1322887, at *8

(S.D.N.Y. Mar. 20, 2020) (holding that a determination whether allegedly misleading statements were truthful was "not appropriate at this early stage of the proceedings, before the parties have had an opportunity to conduct discovery and assess the veracity of defendant's statements"); *Lugones*, 2020 WL 871521, at *9 (S.D.N.Y. Feb. 21, 2020) ("There is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage").

Defendant insists that, the removal of over half of its classes notwithstanding, its library is, in fact, "ever-growing." Dkt. No. 30 at 14-15. It argues that it never made any guarantee that "its content library would maintain any specific size or would offer Plaintiffs access to every class ever provided by Peloton." *Id*. at 15. Instead, the statement that the library is "ever-growing" was merely a representation that it consistently added new content to its content library. It was not, according to Defendant, a representation about the aggregate size of the library. Defendant avers that it continues to add new content constantly, producing nearly 24 hours of live content per day. Dkt. No. 15 at 15. Thus, the amount of content is always growing because new content is always being added, even if the total size of the overall content library decreases. *Id*. at 16.

The Court concludes that the Complaint sufficiently alleges a deceptive or misleading act and advertisement. On a motion to dismiss, the Court considers whether the complaint plausibly alleges that a reasonable consumer would ascribe the meaning that plaintiffs allege they ascribed to it. *See Rivera*, 2020 WL 4895698, at *8 (S.D.N.Y. Aug. 19, 2020) (holding that dismissal under 12(b)(6) was not appropriate where the Court could not conclude "as a matter of law, that [defendant's] language would *not* be misleading to a reasonable consumer."). Where a representation is capable of two possible reasonable interpretations, the misleading one should

14

not be rejected simply because there is an alternative, non-misleading interpretation. *See Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact.").

Plaintiffs forcefully and persuasively argue that a statement that a library is "ever-growing" is not tantamount to a claim that the library is ever-changing. A consumer attracted to a grocery store by its advertisement of a growing selection of foodstuffs would be surprised to learn on each visit that the number of products on sale was decreasing, although the store was replacing the items it removed with a smaller number of new products. The same, as alleged, for a purchaser of Peloton products. The plain meaning of "ever-growing" is "always increasing or expanding in size." Dkt. No. 36 at 11. Even if Peloton did add new content every day, it would "not be accurate to describe a library with more than 10,000 classes on one day and less than 4,500 the next as "growing." *Id.* The Oxford English Dictionary defines "ever-growing" as "[t]hat grows continually; constantly increasing." *Ever-growing*, *Oxford English Dictionary* (2d ed. 1989). Miriam-Webster defines growing as "increasing in size or amount." *Growing*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2014). Its antonym is "shrinking." *Grow*, *Oxford American Writer's Thesaurus* (3d ed. 2012). A reasonable consumer thus would not understand as a matter of law when he or she purchased the Peloton product based on the representation that the library was ever-growing that the library was shrinking in size at the same time Peloton was adding new classes. The motion to dismiss is denied.

## IV.   Causation

Defendant argues that Plaintiffs have failed to plead causation. According to Defendant, Plaintiffs failed to allege that Peloton's "ever-growing" statement or its alleged failure to disclose

the class removals in advance caused them any injury.  This is so, Defendant argues, because Plaintiffs nowhere plead that they ever saw an advertisement featuring the "ever-growing" statement.  Dkt. No. 30 at 16.  Instead, Defendant reasons, Plaintiff state the "inadequate, bare legal conclusion that they 'relied on Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes' prior to purchasing Peloton's products."  *Id*. (quoting Compl. ¶¶ 24-26).  According to Defendant, this allegation of reliance is not sufficient to plead the causation necessary to support a claim under Section 349 or Section 350, because Plaintiffs would have to allege that they saw the advertisements in order properly to plead causation under either Section 349 or Section 350.

Defendant draws some support from the district court opinion in *Goldemberg*.  There, in ruling on a motion to dismiss for failure to plead causation, the court stated that "to properly allege causation [under Section 349], a plaintiff must state in his complaint that he has seen the misleading statements of which he complaints before he came into possession of the products he purchased."  8 F. Supp. 3d at 480.  The court went on to observe that "if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them."  *Id*.  Judge Román's dictum has been repeated in other decisions in this District and the Eastern District of New York.  *See, e.g.*, *Bustamante v. Atrium Medical Corp.*, 2020 WL 583745, at *3 (S.D.N.Y. Feb. 6, 2020); *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *22 (E.D.N.Y. Sept. 22, 2015).

The proposition that a plaintiff must allege in her complaint that she saw a deceptive statement in order to allege that statement caused her injury, however, is not supported by the holding in *Goldemberg* and appears not to be a complete or correct statement of law.  The *Goldemberg* plaintiff himself did not specifically allege that he saw the allegedly misleading

advertisement.  Instead, he alleged that he "relied" on the defendant's representations that its products were "natural."  8 F. Supp. at 472.  The court held that the allegation was sufficient to state a claim under Section 349, because it was reasonable to infer from plaintiff's allegation that "Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein . . . have already deceived and misled Plaintiff," and that "Plaintiff saw the . . . website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question."  *Id.* at 480.

Other cases quoting the *Goldemberg* dictum also have concluded that a complaint can state a claim under Section 349 without specifically stating that the plaintiff saw the misleading statements.  *See, e.g.*, *Cummings v. FCA US LLC*, 201 F. Supp. 3d 288, 306 (N.D.N.Y. 2019) (holding that an allegation that a plaintiff purchased a class vehicle based on the defendant's representations "plausibly suggests that Plaintiff saw at least these particular statements before purchasing the Class Vehicle."); *Dash v. Seagate Technology (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) ("Plaintiff describes in detail the allegedly misleading and deceptive statements contained on the Drive's packaging upon which he relied in purchasing the product.  The reasonable inference to be drawn from such allegation is that Plaintiff saw the misleading statements and, as a result of such, purchased the Drive at issue.  Accordingly, causation is sufficiently pled.").

Indeed, while *Goldemberg* cites to the Appellate Division's decision in *Gale v. International Business Machines Corp.*, 781 N.Y.S.2d 45 (2d Dep't 2004) for the proposition that the complaint must state that the plaintiff saw the misleading advertisement to state a claim under Section 349, the authority to which the *Gale* court cites does not support its statement.  In *Pelman ex. rel. Pelman v. McDonald's Corp.*, the defendant attempted to argue that claims the

plaintiffs brought under Sections 349 and 350 had to be dismissed because the plaintiffs did not allege that they saw the advertisements described in their complaint.  2003 WL 22052778, at *7 (S.D.N.Y. Sept. 3, 2003).  The court held that the plaintiffs did not need to allege reliance on the defendant's deceptive claims in the context of a claim under Section 349, making the holding for which it was cited in *Gale* inapposite.  The court did hold that reliance was required for a Section 350 claim, but that holding was later reversed in a separate case by the New York Court of Appeals.  *See Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim.").

The conclusion that a plaintiff need not state explicitly in her complaint that she saw the misleading advertisement is consistent with *Twombly/Iqbal* and the Second Circuit's holding in *Pelman ex rel. Pelman v. McDonald's Corp.*, that Section 349 claims are subject only to the "bare-bones notice-pleading requirements of Rule 8(a)" and not "the pleading-with-particularity requirements of Rule 9(b)."  396 F.3d 508, 511 (2d Cir. 2005).  Reliance is not an element of a private cause of action under either statute which on their face requires only proof that the plaintiff "has been injured by reason of [a] violation of this section."  N.Y. Gen. Bus L. § 349(h); *see Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim."); *Oswego*, 647 N.E.2d at 745 (N.Y. 1995) (Section 349 "does not require proof of justifiable reliance."); *see also Gale*, 781 N.Y.S.2d at 46 (2d Dep't 2004) ("Reliance is not an element of a claim under General Business Law § 349."); *Pelman*, 2003 WL 22052778, at *7 (S.D.N.Y. Dec. 3, 2003) ("[I]t is not necessary to allege reliance on defendant's deceptive practices in the context of a § 349 claim.").  It thus

follows that an allegation that the defendant was injured because she relied on the misleading statement to her detriment is not a "[t]hreadbare recital[] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is an allegation of fact as to how she came to be injured that—if proven—supports the establishment of that element.  While an allegation that the plaintiff saw the misleading advertisement is sufficient to plead the "by reason of" requirement, it is not necessary.  The manner in which the plaintiff came to rely upon the deceptive act—and whether it can be proved—is a further issue of proof and not something that needs to be pleaded in detail for a complaint to proceed.

Following the New York Court of Appeals decision in *Koch*, the same conclusion applies to claims under Section 350.  *See Koch*, 967 N.E.2d at 676.  Plaintiffs have reproduced an example of one of Peloton's advertisements in their Complaint.  Compl. at ¶¶ 60-61.  They have also alleged that they relied upon the "ever-growing" representation in purchasing their Peloton products and subscriptions.  Compl. at ¶¶ 24-26.  The allegation that they relied on Peloton's representations coupled with the advertisement is sufficient to support an inference that they were injured by reason of the false claims in the advertisements.  *See Cummings v. FCA US LLC*, 201 F. Supp. 3d 288, 306 (N.D.N.Y. 2019) (holding that an allegation that a plaintiff purchased a class vehicle based on certain of the defendant's representations "plausibly suggests that Plaintiff saw at least these particular statements before purchasing the Class Vehicle.").  Nothing more is required.

## V.     Injury

Defendant argues that Plaintiffs have failed to allege adequately that they were injured as a result of Defendant's deceptive practices.  It argues that a barebones allegation that the Plaintiffs would not have purchased Peloton Products had they known of the alleged

misrepresentation is legally insufficient to permit a complaint to go forward.  Dkt. No. 36 at 1; Dkt No. 41 at 12.  Defendant also argues that Plaintiffs cannot plausibly allege paid more for Peloton products than they would have paid had the misrepresentation not been made and had they known the Peloton library was not "ever-growing."  It states that, because all Peloton members pay the same flat fee to access Peloton's content library, there is "no basis to claim there is or was ever a "premium" or extra amount charged or paid for the classes Peloton ultimately removed from the content library," Dkt. No. 30 at 17, and that there were no "lower value options that offer a comparable number and quality of classes" because "Peloton is a unique company offering unparalleled products and classes."  Dkt No. 41 at 13.

Under Sections 349 and 350, plaintiffs must show that they were "injured as a result of the deceptive practice, act or advertisement."  *Pelman*, 237 F. Supp. 2d at 525.  "An actual injury claim under [s]ection 349 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Gerber*, 262 F. Supp. 3d at 68 (quoting *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)).  "This prong may be satisfied through an allegation that a plaintiff overpaid for the product, or, stated differently, 'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.'"  *Id.* (quoting *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *23)).  *See also Belcastro v. Burberry Ltd.*, 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017) (holding that an injury "may be shown by allegations that the plaintiff paid a 'price premium' because of the defendant's misrepresentation or by allegations that the plaintiff did not receive the product for which he bargained"); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (holding that a claim that "plaintiff paid a premium for a product based on defendants' inaccurate representations" could go forward);

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently pleaded Section 349 injury where a plaintiff alleged that he would not have paid the price charged for fat-free milk had he known it contained fat); *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *4-*5 (S.D.N.Y. Dec. 11, 2013) (denying a motion to dismiss where the plaintiffs argued they had paid a premium for "100% Pure Olive Oil" that actually contained "olive-pomace oil"); *Jernow v. Wendy's Intern., Inc.*, 2007 WL 4116241, at *3 (S.D.N.Y. Nov. 15, 2007) ("Under New York law, a premium could constitute an actual injury compensable under Section 349").

Plaintiffs have pled enough to satisfy the *Twombly/Iqbal* standards.  *See Pelman*, 396 F.3d at 511 (claims under NYGBL 349 and 350 are subject only to the notice pleading requirements of Rule 8).  The Complaint alleges that "Plaintiffs attributed value to Peloton's promises regarding the nature and characteristics of its on-demand digital library and would not have purchased the hardware and corresponding Peloton Membership, or would not have purchased it on the same terms, if they knew the truth."  Compl. ¶ 28.  No more is necessary at this stage.

Defendant's reliance on *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999) and *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014), is unavailing.  *Small* does not stand for the broad proposition that it is legally insufficient for a plaintiff in federal court to plead that it would not have purchased the subject product had it known that defendant's claims were misrepresentations.  The *Small* plaintiffs alleged that cigarette manufacturers misrepresented the addictive qualities of their cigarettes but eschewed any claim that they were injured by addiction; they "abandoned the addiction component of the legal theory of their cases."  720 N.E.2d at 621.  Finding that "addiction [was] inescapably the

cornerstone of plaintiffs' legal claims," the New York Court of Appeals concluded that, in the absence of any allegation that they were harmed by the addictive quality of the cigarettes (*i.e.*, the subject of the misrepresentation), plaintiffs had no plausible theory that they were injured by the misrepresentations regarding addiction. *Id*.

In *Target Corp.*, after sustaining consumer protection claims, the court dismissed in part a claim for unjust enrichment based on an overcharge theory. Plaintiffs there were the victims of a massive data breach caused by defendant's failure to maintain adequate data security as had been represented. 66 F. Supp. 3d at 1168. They claimed that defendant was unjustly enriched by its misrepresentation in two respects: First, plaintiffs paid a premium to defendants for adequate data security they never received; and second, plaintiffs agreed to shop at defendant's stores and pay it money for goods they never would have purchased had they known of the misrepresentation. The court held that the first theory was factually implausible. "Target charged all shoppers the same price for the goods they buy whether the customer pays with a credit card, debit card, or cash." *Id.* at 1178. However, only the credit- and debit-card customers were offered data security; data security is irrelevant for a cash customer. *Id.* Accordingly, on the facts there, the complaint made clear that no customers were charged or paid a premium for data security. *Id.* At the same time, however, the court permitted the complaint to go forward and sustained the claim that Plaintiff adequately pled injury based on the allegation that they would not have shopped at Target but for the misrepresentation. It is not entirely clear that *Target*'s holding on the law of unjust enrichment, which looks to the benefit a defendant accrued, applies to a claim of injury under New York's General Business Law, which looks to the harm to a plaintiff.

Neither case supports Defendant's claim here that the case should be dismissed for failure

to state a claim.  Unlike in *Small*, in this case, Plaintiffs do allege that they were injured by the misrepresentation—they had access to a smaller number of classes than they reasonably believed they would have access to at the time of purchase.  Accordingly, there is a "connection between the misrepresentation and . . . harm from, or failure of, the product."  720 N.E.2d at 898.  And, as for *Target Corp.*, even assuming its reasoning applies to the New York General Business Law, there is no comparator group of consumers alleged here who paid the same price for Peloton's products and received the ever-growing library that was represented.  The injury is alleged to have been suffered equally and across-the-board.  Thus, while it may be that at the proof stage Plaintiffs will face challenges establishing either of their theories of injuries, they have alleged enough at this stage to "raise a reasonable expectation that discovery will reveal evidence" supporting their claim.  *Twombly*, 550 U.S. at 556 (2007); *accord Mattrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).[1]

---

[1] The other cases cited by Defendant are similarly unavailing.  Like *Target*, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tap Data Theft Litig*., 45 F. Supp. 3d 14 (D.D.C. 2014) concerned a data breach.  Plaintiffs alleged that they had forfeited the value of their insurance premiums, which should have been used to pay for better security.  *Id*. at 30.  The court held that plaintiffs' claims were not sufficient to support the injury-in-fact requirement for Article III standing, because the "claim that some indeterminate part of their premiums went toward paying for security measures . . . [was] too flimsy to support standing."  *Id*.  The Court concluded that the "Plaintiffs [had] not alleged facts that show that the market value of their insurance coverage (plus security services) was somehow less than what they paid."  *Id*.  Here, Plaintiffs have at least alleged that they did not receive a service for which they paid.  The same is true of *Carlsen v. Gamestop, Inc.*, 112 F. Supp. 3d 855 (D. Minn. 2015).  There, a plaintiff subscriber to a website that provided news about the video game industry sued, alleging that the website had shared his personally identifiable information with a third party website.  The plaintiff alleged that he had overpaid for his subscription, because he would not have paid as much had he known his information would have been shared.  *Id*. at 861.  As in *SAIC*, the court found that the plaintiff had not alleged an injury, because he had not adequately described "the value that [he] did not receive."  *Id*. at 863.  "There was no identified or identifiable injury like lost dollars due to a recalled product or an identifiably less valuable product like a hybrid product."  *Id*. at 864.  This holding is not applicable to the instant case, because Plaintiffs here have identified something they paid for that was less valuable that what was warranted.

## VI.     Statutory Standing

Finally, Defendant argues that Plaintiffs have failed to plead statutory standing under the

NYGBL for Plaintiff Alicia Pearlman.  Peloton argues that Pearlman, a resident of Michigan,

makes insufficient allegations to invoke the protections of New York's consumer protection law.

It argues that the only two territorial allegations Pearlman makes about New York are that (1)

Peloton's principal place of business is in New York and (2) Peloton's Terms of Service select

New York law to govern and New York as the forum for dispute resolution, and provide that all

notices must be sent to New York offices.  Compl. ¶¶ 93-119.  These allegations, it contends, are

insufficient to support the application of Sections 349 and 350.  For their part, Plaintiffs do not

dispute the limitations of their territorial allegations but argue that from the facts pleaded, the

Court can infer that the underlying transaction giving rise to Pearlman's claim occurred in New

York.

The text of Sections 349 of the NYGBL reflects that the statute has a territorial limitation.

It declares: "Deceptive acts or practices in the conduct of any business, trade or commerce or in

the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law §

349.  Section 350 likewise states that: "False advertising in the conduct of any business, trade or

commerce or in the furnishing of any service in this state is hereby declared unlawful."  *Id*. §

350.

In *Goshen*, the New York Court of Appeals considered the application of Sections 349

and 350 to claims brought by out-of-state plaintiffs.  774 N.E.2d at 1193.  The case decided two

consolidated actions.  *Id.*  One was brought by a Florida resident who purchased an insurance

policy from a New York-domiciled corporation, Metropolitan Life Insurance, in Florida.  *Id*. at

1193-94.  The second was brought by a mix of plaintiffs, including out-of-state plaintiffs, who

alleged that a digital subscriber line internet service with its primary place of business in New

York had deceptively exaggerated the speed of its internet services in its advertising.  *Id*. at 1194.

In both cases, plaintiffs claimed that the deceptive acts and false advertising that deceived them

originated in New York and that the deceptive scheme was "hatched" in New York.  *Id*. at 1195.

The court held that such allegations by an out-of-state plaintiff were insufficient to give

rise to statutory standing to bring a claim under New York's consumer protection

statutes—hatching or originating a misleading marketing campaign in the state even when the

defendant was a New York resident did not "in and of itself constitute an actionable deceptive

act or practice under the statute."  *Id*.  The court reached that conclusion from the language of the

statutes which referred to deceptive acts or false advertising "in the conduct of any business,

trade or commerce, or in the furnishing of any service" in New York; the language "in this state"

referred to the conduct of business, trade or commerce or the furnishing of services in New York.

*Id*.  The court also reasoned that "[t]o apply the statute to out-of-state transactions . . . would lead

to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially

leading to nationwide, if not global application of General Business Law § 349."  *Id*. at 1196.  It

expressed concern that the application of the statute to out-of-state transactions "would tread on

the ability of other states to regulate their own markets and enforce consumer protection laws."

*Id*.  It thus held that the intent of the statute was "to protect consumers in their transactions that

take place in New York State."  *Id*.  Application of the statute did not turn on "the residency of

the parties."  *Id*.  "It was not intended to police the out-of-state transactions of New York

companies, nor was it intended to function as a per se bar to out-of-state plaintiffs' claims of

deceptive acts leading to transactions within the state."  *Id*.  The court thus dismissed claims that

Florida residents were misled by misrepresentations conveyed to them by a New York-domiciled

corporation based on a misleading advertising campaign hatched in New York:  the Florida

plaintiffs received the misleading information in Florida, made their purchases in Florida, and paid a premium in Florida.  Thus, "any deception took place in Florida."  *Id.*

Following *Goshen*, in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit resolved a split of authority that developed over the meaning and application of *Goshen*.  Specifically, courts divided over whether *Goshen* limited New York's consumer protection statutes to deceptions that occurred in New York or whether the application of the statutes depended on whether the underlying transaction giving rise to the claim took place in New York.  The court held that the appropriate test was not based on where the deception took place or "the residency of the parties" but on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction."  *Cruz*, 720 F.3d at 122.

In *Cruz*, the plaintiff, a Virginia resident, alleged that the defendant FCDirectDealer, LLC ("FXDD"), which was headquartered in New York City, violated Sections 349 and 350 by failing to disclose in its promotional, marketing, and advertising materials the actual risks of participating in the foreign exchange market and several allegedly dishonest or deceptive practices in which it was engaged.  *Id.* at 119.  The court held that plaintiff alleged "a series of allegedly deceptive transactions that occurred in New York and that implicat[ed] the interests of New York" because: (1) FXDD was paid in New York; (2) it refused to disburse funds from customer accounts until it received a redemption form at its New York office; (3) it required all customer communications including objections to trades to be sent to its New York office; and (4) its contract specified that New York law would govern all disputes and that all disputes were to be adjudicated in New York courts.  *Id.* at 123-24.  The Second Circuit ruled that "[b]ased on these various alleged ties" the allegations were sufficient to show that "at this stage, 'some part

of the underlying transaction . . . occur[red] in New York State,' giving Cruz statutory standing

to sue for deceptive practices and false advertising under sections 349 and 350." *Id*. at 124

(quoting *Mountz v. Global Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003)).

Measured against the standards of *Goshen* and *Cruz*, Pearlman's allegations are

insufficient to state a claim under Section 349 or Section 350.  The allegation that Peloton's

principal place of business is in New York is plainly insufficient on its own to support

application of New York's consumer protection laws.  The *Goshen* court held definitively that

application of the statutes did not turn on "the residency of the parties," 774 N.E.2d at 1196, and

the Second Circuit repeated that proposition in *Cruz*.  720 F.3d at 122.

Pearlman's claim is not appreciably assisted by the allegation that the Terms of Service

contain New York choice-of-law and choice-of-forum clauses and require notices to be sent to

Peloton's New York offices.  Parties include New York choice-of-law or choice-of-forum

clauses in their form contracts for all kinds of reasons, including New York's tradition of well-

developed commercial law and efficient commercial courts and because it is efficient for a

nationwide business to select a single law and a single forum that will apply to all of its

transactions, even those that occur outside of New York.  *See, e.g.*, *New York Law as the Gold

Standard Choice for Global Business Contracts*, 91 N.Y. State Bar J. 13, 14 (2019) ("The

substantive benefits to international and domestic business of New York law and New York

courts and arbitral tribunals have made it a common choice for business contracts around the

globe.").  The fact that Peloton, a New York-based corporation, chose New York law and a New

York forum to apply to all of its transactions thus does not give rise to a reasonable inference that

the transaction by which Pearlman, a Michigan resident, purchased a Peloton product occurred in

New York.  Nor, for similar reasons, does the notice provision support a claim.  That provision,

like the remainder of the dispute resolution clauses, applies only *after* a consumer has purchased

a product.  But there is no claim that Peloton has engaged in misleading practices in its dispute

resolution and thus these clauses cannot alone give rise to an inference that the preceding

transaction as to which an alleged fraud did take place occurred in New York.

 *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016), which both

parties cite is directly on point.  That case involved Section 349 and 350 claims by several

separate sets of customers against a New York-based defendant engaged in the sale of music

over a digital jukebox.  Two sets of plaintiffs purchased the defendant's product through credit

card transactions that they effected either through an App or by entering credit card information

into the defendant's jukebox.  The third set of plaintiffs paid cash in the state where the

jukeboxes were located.  The court held that Section 349 applied to the first two sets of plaintiffs.

Id. at 633-35.  The customer payments were processed in New York, the music servers were

based in New York, and the TouchTunes Terms of Use Agreement provided that disputes

between the user and defendants would be governed by the law of the state of New York and had

to be brought in New York.  That was sufficient to create a fair inference that the transaction

occurred in New York.  *Id.*

 By contrast, the *TouchTunes* court held that the plaintiffs from Montana and North

Dakota who made their purchases only in cash did not have an NYGBL claim even if it was

assumed that the cash was mailed to New York "because the payment for services and collection

of the cash takes place where the jukeboxes are located."  *Id.* at 634.  It is that holding that is

dispositive here.  The court held that the New York identity of "the ultimate recipient of the[]

out-of-state payments, a governing law-choice of forum provision in a 'click-wrap' agreement on

out-of-state electronic jukeboxes, and the location of [defendants'] servers [were not] legally

sufficient to make out a claim under either Section 349 or 350." *Id.* at 635.

The *TouchTunes* decision is consistent both with *Cruz*, where the court relied on the presence of a New York choice of law and a forum selection clause as only one of a group of "various alleged ties" and with other decisions in this District.  *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547-48 (S.D.N.Y. 2014) ("[E]ven though choice-of-law and forum-selection provisions may be indicative of a transaction in New York when other factors are presents, the mere fact that parties agreed to be bound by New York law and to resolve their disputes in courts in New York does not, in itself, provide any indication as to where the transaction occurred.").

Pearlman does not allege that any part of her transaction took place in New York.  She does not allege that she purchased her Peloton product in New York, that she paid through an electronic or credit card transaction that was only accepted in New York, or even what product specifically she purchased.  Compl. ¶ 25. For these reasons, Pearlman's claims under the NYGBL are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with respect to Plaintiff Alicia Pearlman.  Defendant's motion to dismiss is DENIED with respect to Plaintiff Eric Fishon.

The Clerk of Court is respectfully directed to close Dkt. No. 30.

SO ORDERED.

Dated: November 9, 2020
New York, New York                                    LEWIS J. LIMAN

United States District Judge