UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON and ALICIA PEARLMAN, individually and on behalf of all others similarly situated, <br><br>                  Plaintiffs, <br><br>    v. <br><br> PELOTON INTERACTIVE, INC., <br><br>                 Defendant. | Civil Action No. 1:19-cv-11711 (LJL) <br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PELOTON INTERACTIVE, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Steven N. Feldman
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert
885 Third Avenue
New York, NY 10022
(212) 906-1200

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant*

February 4, 2021

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ..................................................................................................................2

I.      Plaintiffs' Allegations. ..............................................................................................2

II.     The Court's Dismissal Of Ms. Pearlman's Claims. ..................................................3

III.    Plaintiffs' Amended Complaint. ...............................................................................5

LEGAL STANDARD ..........................................................................................................7

ARGUMENT .......................................................................................................................8

I.      The Amended Complaint Fails To Allege Any Of The Facts This Court Found
        Were Necessary To Plead Statutory Standing. ........................................................8

II.     Plaintiffs' Generalized Allegations About Peloton's Connection To New York
        Are Likewise Deficient. ............................................................................................9

III.    Ms. Pearlman's Claims Should Be Dismissed With Prejudice.................................14

CONCLUSION.....................................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*4 K & D Corp. v. Concierge Auctions, LLC,*
    2 F. Supp. 3d 525 (S.D.N.Y. 2014)........................................................................11, 13

*Ariel (UK) Ltd. v. Reuters Group, PLC,*
    277 Fed. Appx. 43 (2d Cir. 2008)...............................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................7

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d. Cir. 2007).......................................................................................15

*Cline v. TouchTunes Music Corp.,*
    211 F. Supp. 3d 628 (S.D.N.Y. 2016).............................................................4, 12, 14

*Cruz v. FXDirectDealer, LLC,*
    720 F.3d 115 (2d Cir. 2013)................................................................................ *passim*

*Dimuro v. Clinique Labs., LLC,*
    572 Fed. Appx. 27 (2d Cir. 2014)...............................................................................15

*Gill v. Bd. of the NCUA,*
    No. CV 93-1597, 2018 WL 5045755 (E.D.N.Y. Oct. 16, 2018)...............................15

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
    98 N.Y.2d 314 (2002)................................................................................... *passim*

*United States ex rel. Ladas v. Exelis, Inc.,*
    824 F.3d 16 (2d Cir. 2016)..........................................................................................15

*Lynch v. City of New York,*
    952 F.3d 67 (2d Cir. 2020)............................................................................................7

*Pierce v. Fordham Univ., Inc.,*
    15-CV-4589, 2016 WL 3093994 (S.D.N.Y. Jun. 1, 2016)........................................15

*Sharpe v. Puritan's Pride, Inc.,*
    No. 16-cv-06717, 2019 WL 188658 (N.D. Cal. Jan. 14, 2019)................................12

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,*
    642 F. Supp. 2d 167 (S.D.N.Y. 2009)........................................................................11

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).................................................................................7

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ........................................................... *passim*

## STATUTES

N.Y. Gen. Bus. Law § 349....................................................................................... *passim*

N.Y. Gen. Bus. Law § 350.....................................................................................1, 3, 7, 11

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................7

Defendant Peloton Interactive, Inc. ("Peloton") respectfully submits this memorandum of law in support of its partial motion to dismiss with prejudice the First Amended Class Action Complaint (the "Amended Complaint," cited as "AC ¶ _") as to the claims brought by Plaintiff Alicia Pearlman ("Ms. Pearlman" and, together with Plaintiff Eric Fishon, "Plaintiffs").

## PRELIMINARY STATEMENT

Despite the opportunity for a do-over, and with the benefit of discovery, Plaintiffs' Amended Complaint suffers from the same deficiency as their original complaint:  it fails to plausibly allege that Ms. Pearlman, a citizen and resident of Michigan, has standing to pursue claims under Sections 349 and 350 of the New York General Business Law (the "NYGBL").

Sections 349 and 350 have a statutorily defined territorial limitation, and both protect consumers in their transactions that take place in New York State.  Despite this clear statutory mandate, Plaintiffs' original complaint failed to allege any connection between Ms. Pearlman's alleged purchase of Peloton products and services and New York State.  Thus, on November 9, 2020, the Court dismissed Ms. Pearlman's claims for lack of standing because Ms. "Pearlman does not allege that any part of her transaction took place in New York.  She does not allege that she purchased her Peloton product in New York, that she paid through an electronic or credit card transaction that was only accepted in New York, or even what product specifically she purchased." Opinion and Order Granting In Part Def.'s Mot. to Dismiss, ECF No. 65 ("Order") at 29.  The Amended Complaint still alleges none of these facts, and Ms. Pearlman's claims should be dismissed for that reason alone.

Instead, Plaintiffs re-allege at great length the undisputed and unremarkable proposition that Peloton is headquartered and has its principal place of business in New York.  The Amended Complaint alleges, in sum and substance, that Peloton has management and operations in New York; that the allegedly deceptive marketing campaign purportedly giving rise to Plaintiffs' claims

was carried out from New York; and that Peloton's Terms of Service select New York as the governing law and forum for resolving disputes.   "These facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State. Rather, they are merely clever re-articulations of the allegation that the Defendant[] operate[s] [its] principal place of business in New York, because they only establish the location of some clerical aspects of the Defendant['s] business."  *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020).  "The allegation that Peloton's principal place of business is in New York is plainly insufficient on its own to support application of New York's consumer protection laws."  Order at 27.  Repackaging the same allegation in more detail and at greater length—as the Amended Complaint does here—does not change that outcome.

Despite their access to discovery, Plaintiffs' Amended Complaint fails to cure the deficiencies of the original complaint.  It also (again) fails to allege even the most basic information about Ms. Pearlman's purchase—such as what Peloton equipment she purchased, and where and how she paid for it—information that is indisputably in Ms. Pearlman's possession.  In light of Plaintiffs' repeated failure to cure the deficiencies pertaining to Ms. Pearlman's claims, Peloton respectfully requests that the Court dismiss her claims with prejudice.

## **BACKGROUND**

### I.    **PLAINTIFFS' ALLEGATIONS.**

The core allegations in this action are well-articulated in the Court's Order.  Peloton offers first-of-its-kind stationary bikes and treadmills with combined high-definition tablets that stream live and on-demand fitness classes.  *See* AC ¶¶ 2-4; Order at 1.  Peloton also offers subscriptions that provide members with access to Peloton's on-demand class library.  *See* AC ¶¶ 3, 5; Order at 1. All subscription members receive the same access to Peloton's entire content library, regardless

of whether they own Peloton-branded equipment.  *See* AC ¶¶ 3, 5.  Peloton sells its equipment and subscriptions throughout the United States.  AC ¶¶ 44, 47.

Plaintiffs Eric Fishon, a New York resident, and Alicia Pearlman, a Michigan resident, bring claims under Sections 349 and 350 of the NYGBL, alleging they purchased Peloton products in reliance of allegedly deceptive representations that Peloton's library of classes was "ever-growing."  AC ¶¶ 35, 37; *see also* Order at 2.  Mr. Fishon and Ms. Pearlman seek damages on behalf of themselves and a putative class of all purchasers of Peloton equipment and membership subscriptions between April 9, 2018 and March 25, 2019.  AC ¶¶ 101, 122, 136, 152, 168.

## II.    THE COURT'S DISMISSAL OF MS. PEARLMAN'S CLAIMS.

Plaintiffs filed their original Complaint on December 23, 2019.  ECF No. 1.  On March 13, 2020, Peloton moved to dismiss the Complaint for failure to state a claim and lack of statutory standing.  ECF No. 29.  On November 9, 2020, the Court allowed the claims brought by Mr. Fishon, a resident of Suffolk County, New York, to proceed, but dismissed all of Ms. Pearlman's claims for lack of standing under Sections 349 and 350 of the NYGBL.  Order at 1, 29.

In dismissing Ms. Pearlman's claims, the Court observed the NYGBL has a clear territorial limitation.  Order at 24.  Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service ***in this state***."  N.Y. Gen. Bus. Law § 349 (emphasis added).  Section 350 prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service ***in this state***."  *Id.* § 350 (emphasis added). The language "in this state" "refer[s] to the conduct of business, trade or commerce or the furnishing of services in New York" and is intended to "protect consumers in their transactions that take place in New York State."  Order at 25 (citing *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002)).  "To apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading

to nationwide, if not global application of General Business Law § 349." Order at 25 (citing *Goshen*, 98 N.Y.2d at 325).

The appropriate test for whether the protections of the NYGBL apply is ***not*** where the alleged deception took place or where the parties reside, but "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." Order at 26 (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013)). Thus, the NYGBL does not confer standing on parties who received allegedly misleading information in another state, made their purchases in another state, or paid for their purchases in another state. Order at 25-26 (citing *Goshen*, 98 N.Y.2d at 326 (dismissing claims by Florida residents against a New York-domiciled corporation because they received the allegedly misleading information in Florida, made their purchases in Florida, and paid a premium in Florida)). Nor does a defendant's New York residency, eventual receipt of payments in New York, or choice of New York law and courts suffice to establish the requisite connection with the state. Order at 28-29 (citing *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 633-35 (S.D.N.Y. 2016)). Instead, a plaintiff must show that some aspect of the allegedly deceptive transaction specifically ties that transaction to New York: for example, that the defendant conditioned its provision of services on the receipt of customer authorizations in New York, Order at 26 (citing *Cruz*, 720 F.3d at 122-23); that the defendant's servers hosting the product accessed by paying customers are located in New York, Order at 28 (citing *TouchTunes*, 211 F. Supp. 3d at 633-35); or that the customer paid for products or services with an electronic or credit card transaction that was only accepted in New York. Order at 29.

Applying these principles, the Court found that Ms. Pearlman, a citizen and resident of Michigan who purchased unspecified Peloton "hardware" and a Peloton membership in November

2018, AC ¶ 37, had failed to state a claim under Sections 349 or 350 of the NYGBL because Plaintiffs did not allege that "any part of [Ms. Pearlman's] transaction took place in New York." Order at 29. Allegations that a defendant "hatch[ed] or originat[ed] a misleading marketing campaign in [New York]" did not supply out-of-state plaintiffs like Ms. Pearlman statutory standing. *Id.* at 25 (citing *Goshen*, 98 N.Y.2d at 325). Allegations that New York is Peloton's principal place of business were also "plainly insufficient on [their] own to support application of New York's consumer protection laws." Order at 27. The Court also rejected Plaintiffs' reliance on Peloton's Terms of Service, which contained New York choice of law and forum selection clauses and required that some notices be sent to Peloton's New York offices, because "[t]he fact that Peloton, a New York-based corporation, chose New York law and a New York forum to apply to all of its transactions . . . does not give rise to a reasonable inference that the transaction by which Pearlman, a Michigan resident, purchased a Peloton product occurred in New York." *Id.* Finally, the Court observed that, where payment for defendant's services and collection of cash took place outside of New York, then the eventual receipt of payment in New York, the selection of New York law or courts, ***and*** the New York location of defendant's servers were, ***even together***, insufficient to confer standing. Order at 28-29 (citing *TouchTunes*, 211 F. Supp. 3d at 633-35).

Accordingly, the Court made clear that to allege standing, Ms. Pearlman must plead facts showing "what product specifically she purchased" and that she "purchased her Peloton product in New York" or "paid through an electronic or credit card transaction that was only accepted in New York." *Id.* at 29. The Amended Complaint alleges none of these facts.

## III.   PLAINTIFFS' AMENDED COMPLAINT.

Following the Court's Order, Plaintiffs requested, and received, discovery from Peloton concerning the "statutory standing of out-of-state consumers." ECF No. 78. On January 15, 2021, Plaintiffs sought leave to file an amended complaint containing allegations resulting from that

discovery.  *Id.*  Peloton did not oppose Plaintiffs' proposed amendment, ECF No. 79, and the Court granted leave.  ECF No. 80.  Plaintiffs filed the Amended Complaint on January 21, 2021.  ECF No. 81.

Despite the opportunity for a do-over and with the benefit of discovery, the Amended Complaint does not add any allegations relevant to statutory standing—and adds ***none*** of the allegations the Court noted were necessary for Ms. Pearlman to allege standing.  Instead, Plaintiffs repeat and expand upon allegations the Court already found were deficient:

- Allegations that New York is Peloton's principal place of business.  Plaintiffs allege that Peloton's "executive offices, accounting and finance department, marketing departments . . . and all of its other significant operations, including its banking operations, are headquartered or otherwise based in New York," AC ¶ 7; and that Peloton's classes are recorded at Peloton's studios in New York.  AC ¶ 11; *see also* AC ¶¶ 2, 8-9, 43-44, 90.

- Allegations that the alleged deceptive scheme was "hatched" in New York.  Plaintiffs allege that Peloton's advertising and marketing campaigns originate from and are approved in New York, AC ¶ 12; that Peloton's "ever-growing library" statement was approved in New York, AC ¶ 13; that Peloton's March 25, 2019 decision to take down classes occurred in New York, AC ¶¶ 24-25; and that the purported fraud was perpetrated "from and through [Peloton's] New York headquarters."  AC ¶ 34; *see also* AC ¶¶ 44, 85, 98.

- Allegations that customer payments are routed to and managed in New York.  Plaintiffs allege that for all purchases, "payment is routed to Peloton's bank accounts in New York," AC ¶ 8; that "payments are recorded and managed by Peloton's Accounting and

Finance Department" in New York, AC ¶ 9; and that all proceeds from subscriptions are deposited into Peloton's bank accounts in New York.  AC ¶¶ 65, 97.

- <u>Allegations that Peloton selected New York for dispute resolution purposes</u>.  Plaintiffs allege that Peloton's Terms of Service were drafted in New York, AC ¶ 50; require dispute resolution in New York, AC ¶ 47; and select New York law as the governing law.  AC ¶¶ 7, 47.

At bottom, the Amended Complaint re-alleges, now in greater detail, that Peloton's principal place of business—where Peloton conducts operations, makes business decisions, and receives customer payments—is New York.  Still entirely absent from the Amended Complaint are any allegations of what Peloton equipment Ms. Pearlman allegedly purchased, that she purchased that product—or her membership subscription—in New York, or that she paid through an electronic or credit card transaction that was only accepted in New York.  *Cf.* Order at 29. Plaintiffs' amended allegations remain legally deficient to plead that Ms. Pearlman has statutory standing to bring claims under Sections 349 or 350 of the NYGBL.

## <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, "a complaint must contain sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Order at 3 (citing *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020)).  To state a claim under Sections 349 and 350 of the NYGBL, a plaintiff must allege:  (1) that the defendant's acts were consumer-oriented; (2) that the defendant's acts or practices are deceptive or misleading in a material way; and (3) that the plaintiff has been injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  Because Sections 349 and 350 of the NYGBL are intended "to protect

7

consumers in their transactions that take place in New York State," *Goshen*, 98 N.Y.2d at 325, to state a claim under those statutory provisions, a plaintiff must also allege that the allegedly deceptive transaction occurred in New York. *Id.* at 324; *see also Cruz*, 720 F.3d at 12-23; Order at 24. Because the Amended Complaint fails to allege any facts showing that Ms. Pearlman's alleged transaction with Peloton occurred in New York, she lacks statutory standing to maintain this action, and her claims should be dismissed with prejudice.

## ARGUMENT

### I.   THE AMENDED COMPLAINT FAILS TO ALLEGE ANY OF THE FACTS THIS COURT FOUND WERE NECESSARY TO PLEAD STATUTORY STANDING.

The Court provided Ms. Pearlman with clear guidance on the facts she needed to plead to clear the bar on standing: "what product specifically she purchased," Order at 29, and that she "purchased her Peloton product in New York," *id.*, or "paid through an electronic or credit card transaction that was only accepted in New York." *Id.* The Amended Complaint does not (and cannot) allege any of these facts.

The Amended Complaint's only allegations specific to Ms. Pearlman are: (1) that in November 2018, Ms. Pearlman purchased unspecified Peloton "hardware" and a membership subscription, at an unspecified location; (2) that she made those purchases in reliance of "Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes"; (3) that she "paid all required hardware, software, and subscription fees," at an unspecified location; and (4) that she paid and continues to pay for her membership subscription "electronically with a credit card," also at an unspecified location. AC ¶¶ 37-39. None of these events are alleged to have occurred in New York. *See generally* AC.

Even with the benefit of discovery—and with access to information in Ms. Pearlman's possession, such as what Peloton equipment she purchased and how she paid for it—the Amended

Complaint *still* contains none of the allegations this Court observed were necessary to allege statutory standing.   *See* Order at 29.   Plaintiffs do not allege what Peloton "hardware" Ms. Pearlman purchased.   *See generally* AC.   They do not allege that Ms. Pearlman purchased her Peloton hardware or her membership subscription in New York.   *Id.*   Nor do they allege that she made credit card payments in New York or that the credit card she used to make those payments is only accepted in New York.   *Id.*   And they do not allege that the unspecified payment for Ms. Pearlman's unspecified Peloton hardware was only accepted in New York—indeed, the Amended Complaint conspicuously omits any information about how Ms. Pearlman paid for her hardware at all (electronically, with cash, or by some other means).   *Compare* AC ¶ 38 (alleging that "Alicia Pearlman's purchase of her Peloton membership was made electronically, as have all her monthly fee payments"), *with* AC ¶ 37 (alleging only that Ms. Pearlman has paid "all required" hardware fees).   These failures alone should end the inquiry and require dismissal of Ms. Pearlman's claims.

## II.   PLAINTIFFS' GENERALIZED ALLEGATIONS ABOUT PELOTON'S CONNECTION TO NEW YORK ARE LIKEWISE DEFICIENT.

In lieu of the allegations the Court deemed pertinent to statutory standing, the Amended Complaint alleges that Peloton, a New York company, has executives, operations, and bank accounts in New York.   Put differently, Plaintiffs have simply re-alleged with different (and more) words that Peloton's principal place of business is in New York.   That allegation has been and remains deficient to establish statutory standing for out-of-state plaintiffs like Ms. Pearlman.   Order at 27 (citing *Goshen*, 98 N.Y. 2d at 325; *Cruz*, 720 F.3d at 122).

A recent decision by the Eastern District of New York rejected allegations similar to (indeed, stronger than) the allegations in the Amended Complaint as "merely clever re-articulations of the allegation that the Defendant[] operate[s] [its] principal place of business in New York."   *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y.

2020).  The court in *Wright* dismissed plaintiffs' original complaint for lack of standing for the same reasons this Court did:  "because it lacked 'specific facts showing that any part of the transactions [at issue] occurred in New York.'"  *Id.*  "As the Court explained, the existence of a New York choice-of-law provision, standing alone, was an insufficient transactional nexus. Consequently, the Court dismissed the Complaint without prejudice, providing the Plaintiffs leave to file an amended complaint correcting the deficiencies identified by the Court."  *Id.*  Plaintiffs' amended complaint in *Wright*—like the Amended Complaint here—added allegations that the defendants "hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York."  *Id.*  The court categorically rejected these new allegations as deficient.  *Id.* at 110-12.  "These facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State.  Rather, they are merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York, because they only establish the location of some clerical aspects of the Defendants' business."  *Id.* at 110.  For these and other deficiencies, the court in *Wright* dismissed plaintiffs' amended complaint with prejudice.  *Id.* at 120.  This Court should do the same here.

First, Plaintiffs allege that "Peloton sees itself as a uniquely New York company," AC ¶ 7; that Peloton's "executive offices, accounting and finance department, marketing departments, studios, content production, and all of its other significant operations, including its banking operations, are headquartered" in New York, *id.*; and that Peloton's classes are "recorded, produced, and issued" in New York.  AC ¶ 11; *see also* AC ¶¶ 2, 8-9, 43-44, 90.  Far from showing a New York transaction with Ms. Pearlman, these allegations merely establish that Peloton, a New York-based company, has operations and management in New York.  That is neither disputed nor

relevant to whether Ms. Pearlman, a Michigan resident, has standing to bring a claim under Sections 349 and 350 of the NYGBL.  *See* Order at 27 ("The allegation that Peloton's principal place of business is in New York is plainly insufficient on its own to support application of New York's consumer protection laws."); *Goshen,* 98 N.Y. 2d at 325 (the application of the statute does not turn on "the residency of the parties"); *Cruz*, 720 F.3d at 122 (same); *Wright*, 439 F. Supp. 3d at 110 ("It is well-settled that a purchaser does not have standing to bring a Section 349 claim just because he or she transacted with a seller who resides in New York.").

Second, Plaintiffs allege that Peloton's allegedly deceptive conduct was organized in and perpetrated "from and through its New York headquarters."  AC ¶ 34.  For example, Plaintiffs allege that approval for Peloton's "advertising and marketing campaigns," "'ever-growing library' representation," "formulation of Peloton's entire business model," and decision to remove certain classes occurred in New York.  AC ¶¶ 12-13, 24-25, 44, 85, 98, 112.  But allegations of "'hatching a scheme' or originating a marketing campaign in New York in and of itself" say nothing about where the plaintiff's transaction took place, *Goshen*, 98 N.Y.2d at 324, 326, and are routinely rejected as insufficient to confer standing on out-of-state plaintiffs.  *See, e.g.*, *Wright*, 439 F. Supp. 3d at 110 (citing *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) ("It is not sufficient that a marketing plan originates in New York if the consumer deception occurs elsewhere.")); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547-48 (S.D.N.Y. 2014) (no statutory standing where plaintiffs alleged that they were injured as a result of "dissemination of information from New York").

Third, the Amended Complaint alleges that payments for Peloton products and services are "routed to Peloton's bank accounts in New York," AC ¶ 8; *see also* AC ¶¶ 65, 97 (same), and that such payments are "recorded and managed by Peloton's Accounting and Finance department" in

New York.  AC ¶ 9.  None of these allegations helps Ms. Pearlman.

As an initial matter, the allegation that Peloton has bank accounts and accounting operations in New York is the same refurbished allegation that New York is Peloton's principal place of business:  common sense dictates that a New York-based company's finance and accounting department and bank accounts are in New York, such that revenue generated across the world eventually makes its way to New York.  That is not enough.  *See TouchTunes*, 211 F. Supp. 3d at 635 (the New York identity of "the ultimate recipient of the[] out-of-state payments" is not enough to establish statutory standing); *Wright*, 439 F. Supp. 3d at 111 ("Nor does the fact that the seller processed a transaction in New York confer standing."); *see also Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) (dismissing claims under Sections 349 and 350 of the NYGBL and reasoning that "[t]he fact that some data processing and other back office functions were performed in New York for the transaction is of no moment. At most, those functions simply fulfilled a purchase that was made on the basis of a deception that occurred outside the state.").

Moreover, nothing in the Amended Complaint alleges, or even suggests, that Ms. Pearlman's alleged payments were somehow uniquely tied to New York.  Plaintiffs do not allege that Ms. Pearlman paid for her Peloton hardware and membership in New York.  *Cf.* Order at 24, 27, 29.  They do not allege that she paid for her Peloton products or services with "an electronic or credit card transaction that was only accepted in New York."  *Cf. id.* at 29.  Nor do they allege that the credit card she allegedly used to access Peloton's subscription services was only accepted in New York.  *See id.*  They also do not allege that the services to which she received access upon payment—*i.e.*, Peloton's on-demand classes, AC ¶ 11—were hosted on servers in New York.  *Cf. TouchTunes*, 211 F. Supp. 3d at 633.  And they do not allege that she was denied access to Peloton

equipment or services until Peloton had received her payment in its New York bank accounts.  *Cf.*
*Cruz*, 720 F.3d at 123.  Thus, as the court explained in *Wright*, Plaintiffs' allegations about
Peloton's receipt and management of customer payments "only establish the location of some
clerical aspects of [Peloton's] business" and are "merely clever re-articulations of the allegation
that [Peloton] operate[s] [its] principal place of business in New York."  *Wright*, 439 F. Supp. 3d
at 110.  None of these allegations is sufficient to plead standing.  *Id.*; Order at 29.

Fourth, the Amended Complaint doubles down on Plaintiffs' allegations that "Peloton
requires that New York law apply to all aspects of those contractual relationships."  AC ¶ 7; *see*
*also* AC ¶ 47.  The Court has already held that "[t]he fact that Peloton, a New York-based
corporation, chose New York law and a New York forum to apply to all of its transactions thus
does not give rise to a reasonable inference that the transaction by which [Ms.] Pearlman, a
Michigan resident, purchased a Peloton product occurred in New York."  Order at 27.  This holding
applies with equal force to the Amended Complaint.  *See id.*; *see also 4 K & D Corp.*, 2 F. Supp.
3d at 547-48 ("[T]he mere fact that parties agreed to be bound by New York law and to resolve
their disputes in courts in New York does not, in itself, provide any indication as to where a
transaction occurred."); *Wright*, 439 F. Supp. 3d at 111 (rejecting plaintiffs' alleged "most salient
connection to New York . . . the choice-of-law provision" as insufficient to establish standing).

Finally, the combination of Plaintiffs' individually deficient allegations is equally
deficient.  *TouchTunes* still is directly on point, *see* Order at 28-29, as is *Wright*.  In *TouchTunes*,
the court applied *Cruz* to find that statutory standing was alleged when ***all four*** of the following
factors were met:  the defendant music provider processed customer payments in New York;
defendant's servers hosting the music accessed by paying customers were located in New York;
defendant selected New York as the governing law and forum for any disputes; and, based on the

location of defendants' servers, the court could infer that customers' music choices were transmitted to New York. *TouchTunes*, 211 F. Supp. 3d at 633-35. But in the absence of a New York-linked payment, even the combination of the remaining three factors—the location of defendant's servers in New York, transmission of customers' music choices to New York, and defendant's selection of New York law and forum—was insufficient to confer standing. *Id.* at 634 ("This case therefore is distinguishable from *Cruz* with respect to the place of payment."); *see also* Order at 28. No such New York-linked payment is alleged here. *See generally* AC. *Wright* similarly held that the plaintiffs in *Cruz* escaped dismissal only "because they directly participated in a marketplace located in New York." *Wright*, 439 F. Supp. 3d at 112; *Cruz*, 720 F.3d at 123-24. In *Cruz*, the defendant foreign currency exchange trader processed customer trades in New York, required all customer communications to be sent to New York, and, crucially, refused to disburse funds from customer accounts until it received a redemption form in its New York office. *Cruz*, 720 F.3d at 123-24; *see also Wright*, 439 F. Supp. 3d at 111-12. Again, the Amended Complaint alleges none of these facts, *see generally* AC, and remains deficient under these prior courts' reasoning and this Court's Order.

The Court properly held that Ms. Pearlman had failed to plead statutory standing under Sections 349 and 350 of the NYGBL, and nothing in the Amended Complaint remedies those deficiencies.

## III.  MS. PEARLMAN'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

As Plaintiffs admit, ECF No. 78 at 1, the Amended Complaint is the product of discovery regarding the statutory standing of out-of-state consumers. *Id.* Even with the benefit of such discovery, Plaintiffs do not, and cannot, allege facts sufficient to establish that Ms. Pearlman has statutory standing. Nor do they allege even the most basic facts about Ms. Pearlman's purchase— such as what Peloton equipment she purchased and where and how she paid for it—despite the

14

Court's specific invitation to do so and even though this information clearly is in Ms. Pearlman's possession. "[I]f Plaintiff had better facts to allege, it is safe to assume that she would have alleged them. That is, Plaintiff fails to give 'any indication that [she] is in possession of facts that would cure the problems identified in this opinion.'" *Pierce v. Fordham Univ., Inc.*, 15-CV-4589, 2016 WL 3093994, at *7 (S.D.N.Y. Jun. 1, 2016). Thus, like the plaintiffs' claims in *Wright*, Ms. Pearlman's claims "are such that they [can]not be remedied through another amended pleading." *Wright*, 439 F. Supp. 3d at 120; *see also Dimuro v. Clinique Labs., LLC*, 572 Fed. Appx. 27, 33 (2d Cir. 2014) (affirming lower court's denial of leave to amend where "much of the information necessary for a properly pled complaint is and has always been in the possession of the Plaintiffs."); *Gill v. Bd. of the NCUA*, No. CV 93-1597, 2018 WL 5045755, at *15 (E.D.N.Y. Oct. 16, 2018) ("[T]o the extent the proposed amended complaint essentially repeats the allegations of the original complaint . . . discovery on those issues is complete and those allegations have been the subject of a summary judgment motion and, as discussed above, are without merit."); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d. Cir. 2007) ("Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss.").

Because of Plaintiffs' repeated failure to cure the deficiencies of Ms. Pearlman's claims, and because any further amendment would be futile, Ms. Pearlman's claims should be dismissed with prejudice. *See, e.g.*, *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) ("Leave to amend . . . 'should generally be denied in instances of . . . repeated failure to cure deficiencies by amendments previously allowed . . .'") (citation omitted); *Ariel (UK) Ltd. v. Reuters Group, PLC*, 277 Fed. Appx. 43, 46 (2d Cir. 2008) ("[Plaintiff] had already amended its complaint once, and any amendment would have been futile.").

## **CONCLUSION**

For the foregoing reasons, Ms. Pearlman's claims should be dismissed with prejudice.

Dated:        February 4, 2021                    Respectfully submitted,
              New York, New York
                                                  LATHAM & WATKINS LLP

                                                  /s/ Steven N. Feldman
                                                  Steven N. Feldman
                                                  Lilia B. Vazova
                                                  Megan A. Behrman
                                                  Alexis Kellert
                                                  885 Third Avenue
                                                  New York, NY 10022
                                                  (212) 906-1200
                                                  Steve.Feldman@lw.com
                                                  Lilia.Vazova@lw.com
                                                  Megan.Behrman@lw.com
                                                  Alexis.Kellert@lw.com

                                                  William J. Trach
                                                  200 Clarendon Street
                                                  Boston, Massachusetts 02116
                                                  (617) 948-6000
                                                  William.Trach@lw.com

                                                  *Attorneys for Defendant*
                                                  *Peloton Interactive, Inc.*