UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON and ALICIA PEARLMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>    Defendant. | Civil Action No. 1:19-cv-11711 (LJL)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF PELOTON INTERACTIVE, INC.'S
PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Steven N. Feldman
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert
885 Third Avenue
New York, NY 10022
(212) 906-1200

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant*

February 25, 2021

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.  The Amended Complaint Fails To Allege Any Of The Facts This Court Found Were Relevant To Statutory Standing. ...............................................................................2

II.  Plaintiffs' Other Allegations Are Deficient. .......................................................................4

III.  Ms. Pearlman's Claims Should Be Dismissed With Prejudice..........................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Amla Litig.*,
  328 F.R.D. 127 (S.D.N.Y. 2018) ................................................................................................9

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d. Cir. 2007) ...................................................................................................10

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......................................................................................9

*Cline v. TouchTunes Music Corp.*,
  211 F. Supp. 3d 628 (S.D.N.Y. 2016) ..........................................................................4, 5, 6, 7

*Convergen Energy LLC v. Brooks*,
  20-cv-3746, 2020 WL 5549039 (S.D.N.Y. Sep. 16, 2020) (Liman, J.) ................................4, 8

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ......................................................................................................6

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) ............................................................................................................8, 9

*Gucci Am., Inc. v. Frontline Processing Corp.*,
  721 F. Supp. 2d 228 (S.D.N.Y. 2010) .......................................................................................9

*Langan v. Johnson & Johnson Consumer Cos.*,
  897 F.3d 88 (2d Cir. 2018) ......................................................................................................10

*Lee v. Kim*,
  No. 97 Civ. 4406, 1998 WL 20003 (S.D.N.Y. Jan. 20, 1998) ..................................................4

*Mountz v. Glob. Vision Prod., Inc.*,
  770 N.Y.S.2d 603 (Sup. Ct. N.Y. Cnty. 2003) .........................................................................9

*Oscar v. BMW of N. Am., LLC*,
  No. 09 Civ. 11, 2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) ...............................................10

*People by Vacco v. Lipsitz*,
  663 N.Y.S.2d 468 (Sup. Ct. N.Y. Cnty. 1997) .........................................................................9

*Matter of People v. Telehublink Corp.*,
  301 A.D.2d 1006 (3d Dep't 2003) ............................................................................................9

*Pierce v. Fordham Univ., Inc.*,
    15-CV-4589, 2016 WL 3093994 (S.D.N.Y. Jun. 1, 2016) ...................................................... 3

*Ward v. TheLadders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y. 2014) .................................................................................... 5, 6

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ............................................................................ 4, 5, 8

**STATUTES**

NYGBL § 349 ................................................................................................................... *passim*

NYGBL § 350 ................................................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 15 ......................................................................................................................... 10

Defendant Peloton Interactive, Inc. respectfully submits this reply in further support of its partial motion to dismiss with prejudice the claims brought by Plaintiff Alicia Pearlman.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to Peloton's Motion, ECF No. 90, suffers from the same fundamental flaw as the Amended Complaint. It ignores the Court's direction that, to plead statutory standing under Sections 349 and 350 of the NYGBL, Ms. Pearlman needed to correct the original Complaint's failure to "allege that she purchased her Peloton product in New York, that she paid through an electronic or credit card transaction that was only accepted in New York, or even what product specifically she purchased." Opinion and Order Granting In Part Def.'s Mot. to Dismiss, ECF No. 65 ("Order") at 29. Each of these facts is in Ms. Pearlman's possession. There can be no doubt that if Plaintiffs could (truthfully) allege these facts, they would have done so. They did not, and as such the Amended Complaint must be dismissed with respect to Ms. Pearlman.

Plaintiffs argue that it is wrong to "deman[d] extraneous allegations about credit cards or details about the type of bike Ms. Pearlman purchased," ECF No. 90 ("Opp.") at 10, and that Plaintiffs have pleaded statutory standing in "a number" of other ways. *Id.* Those "other" ways are a combination of allegations that courts in the Second Circuit have deemed individually and collectively insufficient to establish standing, allegations that are absent from the Amended Complaint (and are in any event deficient), and legal theories that would confer NYGBL statutory standing on any out-of-state plaintiff suing a New York-domiciled defendant, so long as that out-of-state plaintiff paid with a credit card. Neither the allegations in the Amended Complaint nor Second Circuit case law support this result.

---

[1] Capitalized words not defined herein have the same meaning ascribed to them in Peloton's Motion to Dismiss, ECF No. 89 (cited as "Mot.").

Plaintiffs thus pivot to arguing that they should be allowed to amend their complaint yet again in order to take a third bite at the apple and assert claims on behalf of Ms. Pearlman under Michigan law, as well as claims by additional unidentified plaintiffs under the laws of their respective home states. Opp. at 17. Plaintiffs offer no explanation for why they have as of yet failed to assert such alternative claims—particularly on behalf of Ms. Pearlman, who has been on notice since at least November 9, 2020 that she lacks standing to bring claims under the NYGBL. Thus, leaving aside whether Plaintiffs can assert claims on behalf of additional plaintiffs beyond those named in the Amended Complaint—an issue that Peloton will address if and when Plaintiffs seek further leave to amend—Ms. Pearlman's claims should be dismissed with prejudice.

## ARGUMENT

### I. THE AMENDED COMPLAINT FAILS TO ALLEGE ANY OF THE FACTS THIS COURT FOUND WERE RELEVANT TO STATUTORY STANDING.

Plaintiffs' Opposition does not address the crucial gap in the Amended Complaint: its failure, despite the Court's clear direction, to allege "what product specifically [Ms. Pearlman] purchased," that she "purchased her Peloton product in New York," or that she "paid through an electronic or credit card transaction that was only accepted in New York." Order at 29. Plaintiffs offer no explanation for why they still fail to plead any of these basic facts, all of which are squarely in Ms. Pearlman's possession. *See generally* Opp. Instead, Plaintiffs argue that they can fill that gap with a hodgepodge of different allegations, none of which carries Plaintiffs' burden and many of which are nowhere to be found in the Amended Complaint.

First, Plaintiffs claim that, through a medley of *other* allegations, they *did* allege that Ms. Pearlman "paid through an electronic or credit card transaction that was only accepted in New York." Opp. at 11 (citing Order at 29). If Ms. Pearlman had in fact paid for her Peloton hardware or subscription through an electronic or credit card transaction that was only accepted in New

York, it would have been easy enough for Plaintiffs to allege exactly that. They had Ms. Pearlman's own knowledge and discovery from Peloton at their disposal. Ms. Pearlman certainly knows what credit card she used to pay for her Peloton subscription (the Complaint does not allege that she paid for her "hardware" using a credit card at all,[2] *see* AC ¶¶ 37-38). She also must know whether she made any credit card payment in New York or whether Peloton required her to use any specific credit card or form of payment that Peloton only accepted in New York. Plaintiffs also had access to discovery on these issues. While they have chosen not to include any of that discovery in their Amended Complaint, surely if Plaintiffs could (truthfully and without the risk of sanctions) make the allegations described in the Court's Order, they no doubt would have done so. Their failure to do so leads to the inescapable conclusion that they could not. *Pierce v. Fordham Univ., Inc.*, 15-CV-4589, 2016 WL 3093994, at *7 (S.D.N.Y. Jun. 1, 2016) ("[I]f Plaintiff had better facts to allege, it is safe to assume that she would have alleged them. That is, Plaintiff fails to give 'any indication that [she] is in possession of facts that would cure the problems identified in this opinion.'"). That failure alone should end the inquiry. *See* Order at 29.

Second, Plaintiffs point to allegations that: (i) Plaintiffs "paid, and have continued to pay, Peloton 'electronically with a credit card,'" Opp. at 11 (citing AC ¶¶ 38-39); (ii) "Peloton requires customers to enter into electronic payments with Peloton which, for its part, completes the transactions by receiving payment in New York," *id.* (citing AC ¶ 65); and (iii) "'all Peloton members must keep a credit card on file with Peloton.'" *Id.* (citing AC ¶ 6). These allegations, individually or together, do not make up the allegation that Ms. Pearlman "paid through an

---

[2] The Opposition describes the Amended Complaint as alleging that "Ms. Pearlman purchased Peloton hardware . . . through an electronic payment transaction." Opp. at 4. That statement is belied by the Amended Complaint, which does not allege how Ms. Pearlman paid for her unspecified *Peloton hardware*; only that she paid and continues to pay for her *Peloton membership* electronically and has otherwise paid "all required" hardware fees. *See* AC ¶¶ 37, 38.

3

electronic or credit card transaction that was only accepted in New York." *Cf.* Opp. at 11 (citing Order at 29). Plaintiffs plainly do not allege that any credit card Ms. Pearlman used to pay Peloton was only accepted in New York. *Cf.* Order at 29. The only alleged connection between Ms. Pearlman's payments and New York is that Peloton allegedly "received" and "recorded" payments there.[3] Opp. at 11; AC ¶ 9. Courts in this Circuit have held that is not enough. *See, e.g.*, *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (rejecting the allegation that a defendant received payment in New York as a "clever re-articulation[] of the allegation that the Defendants operate their principal place of business in New York"); *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016) (the New York identity of "the ultimate recipient of the[] out-of-state payments" is not enough to establish standing).

## II.   PLAINTIFFS' OTHER ALLEGATIONS ARE DEFICIENT.

Plaintiffs dedicate the majority of their Opposition to arguing that Peloton "grossly mischaracterize[es]" the applicable case law on statutory standing "by presenting, as a necessary condition, every factor that any court has ever considered for a plaintiff to have standing." Opp. at 1-2. That is simply not an accurate characterization of Peloton's Motion. *See* Mot. at 13-14 (addressing why *the combination* of Plaintiffs' allegations is deficient). Moreover, Plaintiffs' headline argument ignores the single case cited by either party that considers *a combination* of factors comparable to those alleged by Plaintiffs—*Wright*, which held that it was "conclusively

---

[3] As discussed *infra*, Plaintiffs' attempted supplemental allegations that "a consumer's continued transactions with Peloton involve Peloton's New York operations using the consumer's billing information to charge the monthly payment that then reaches Peloton's New York bank accounts," Opp. at 8, are as deficient as they are improper. *See Lee v. Kim*, No. 97 Civ. 4406, 1998 WL 20003, at *4 n.2 (S.D.N.Y. Jan. 20, 1998) ("[I]t is a well-settled proposition of law that a complaint may not be amended by plaintiffs' papers in opposition to a motion to dismiss."); *Convergen Energy LLC v. Brooks*, 20-cv-3746, 2020 WL 5549039, at *7 n.4 (S.D.N.Y. Sep. 16, 2020) ("a plaintiff cannot amend a complaint through an opposition brief on a motion to dismiss") (Liman, J.).

4

apparent" that such allegations were both individually and collectively deficient. 439 F. Supp. 3d at 110-12; *cf.* Opp. at 15 (claiming *Wright* is "neither binding nor even applicable to this case").

*Wright* concerned claims brought under Section 349 of the NYGBL (among others) against a national marketing brand which promoted and sold products claimed to increase purchasers' chances of winning prizes or lotteries. *Wright*, 439 F. Supp. 3d at 105-06. Like Plaintiffs here, the *Wright* plaintiffs alleged that: (i) the defendant maintained its principal place of business in New York, *id.* at 105, 110 (*cf.* AC ¶¶ 2, 7, 43); (ii) the allegedly deceptive conduct originated in New York, *Wright*, 439 F. Supp. 3d at 105-06, 110 (*cf.* AC ¶¶ 12-13, 24-25, 34, 44, 85, 98); (iii) customers could make purchases either by sending a form to a New York address or through defendant's website, which listed a New York address, *Wright*, 439 F. Supp. 3d at 106 (*cf.* AC ¶¶ 30, 36, 38; Opp. at 12 & n.1); (iv) the defendant received payment in New York, *Wright*, 439 F. Supp. 3d at 110 (*cf.* AC ¶¶ 8, 9, 65, 97); (v) customers maintained online accounts with defendant, *Wright*, 439 F. Supp. 3d at 106 (*cf.* AC ¶¶ 36, 38, 39); and (vi) the defendant's Terms of Service provided that any lawsuit must be filed in a New York court and governed by New York law, *Wright*, 439 F. Supp. 3d at 105, 111-12 (*cf.* AC ¶¶ 7, 47, 50). *Wright* held that "[t]hese facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State. Rather, they are merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York. . . ." *Wright*, 439 F. Supp. 3d at 110. Plaintiffs do not attempt to contend with or distinguish *Wright*; instead, they ask the Court to simply ignore it. *See* Opp. at 14-15.

Both *Wright* and the dismissal of Ms. Pearlman's claims are consistent with *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016) (cited in Opp. at 6, 7, 9, 12; Order at 28-29) and *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167-68 (S.D.N.Y. 2014) (cited in

5

Opp. at 6, 7, 9, 14, 15).  In *TouchTunes*, the court found that statutory standing was sufficiently alleged because the defendant music provider:  (i) processed customer payments in New York; (ii) selected New York as the governing law and forum for any disputes; (iii) hosted the music accessed by paying customers on servers located in New York; and (iv) based on the location of defendants' servers, the court could infer that customers' music choices were transmitted to New York (analogous to *Cruz*'s conditioning the provision of services on the receipt of customer communications in New York).  211 F. Supp. 3d at 633-35; *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122-23 (2d Cir. 2013).  Three out of these four allegations are missing in the Amended Complaint:  Plaintiffs do not allege that Ms. Pearlman's payments were processed by Peloton in New York (as opposed to, *e.g.*, processed by third parties outside of New York); that Peloton's servers hosting Peloton's classes are located in New York (as opposed to a different state); or that Peloton conditioned its provision of services on the receipt of customer communications in New York.  Again, if—following discovery—Plaintiffs could (truthfully and without the risk of sanctions) allege any of these facts, they surely would have done so.  They did not.  *TouchTunes* is also clear that, contrary to Plaintiffs' assertion that they only need to allege a "payment actually reached New York," Opp. at 8, the New York identity of "the ultimate recipient of the[] out-of-state payments" is not enough to confer statutory standing.  *TouchTunes*, 211 F. Supp. 3d at 635.

In *Ward*, the court considered that (i) the defendant operated its job-matching website in New York; (ii) it maintained its bank account in New York; and (iii) "[m]any of the relevant communications and transactions with the defendant, including the registration, cancellation, review of website materials, and various monetary transactions, apparently occurred on or through the website itself," which the court deemed equivalent to communicating or transacting directly with a New York address.  *Ward*, 3 F. Supp. 3d at 168.  The court summarily concluded that those

6

allegations were "substantially similar" to the allegations in *Cruz*, *id.* at 167-68, and therefore gave rise to a plausible inference that the allegedly deceptive transaction occurred in New York. *Id.* The *TouchTunes* court described *Ward* as having "taken" *Cruz* to a place where New York's consumer protection laws "regulate . . . commercial transactions in far-flung states and nations where the connections between the alleged deception and New York are somewhat strained." *TouchTunes*, 211 F. Supp. 3d at 634-35. That observation—paired with the fact that the Second Circuit's holding in *Cruz* speaks for itself—belies Plaintiffs' suggestion that *Ward* is more probative than *Cruz* itself. *See* Opp. at 6-7.

Besides being difficult to square with *Cruz* and *TouchTunes*, *Ward* does not help Plaintiffs because the Amended Complaint does not include the majority of the allegations considered in *Ward*. In discussing *Ward*, the Opposition parrots the operative language from the court's opinion and suggests that there are comparable underlying allegations in the Amended Complaint. Opp. at 9 ("just as in *Ward*, '[m]any of the relevant communications and transactions . . . including the registration, cancellation, review of website materials, and various monetary transactions, apparently occurred on or through the website itself'") (citing AC ¶ 34). There are not. *See* AC ¶ 34 (only alleging, in relevant part, that "Peloton—from and through its New York headquarters—entered into contractual relationships with Plaintiffs and the other Class members, engaged in financial transactions and accepted payments from Plaintiffs and the other Class members, and defrauded Plaintiffs and the other Class members"). Likewise, the Opposition claims that Peloton's customers "sign[] up for subscriptions, cancel[] services, mak[e] purchases, and so forth," whether through a website or the Peloton App, "by interacting with Peloton's operations in New York," Opp. at 9, and that Peloton's "web services are in New York." *See* Opp. at 8. Plaintiffs do not cite any allegations in the Amended Complaint to support that statement

7

because there are no such allegations. The Court should disregard this argument for that reason alone. *See Convergen*, 2020 WL 5549039, at *7 n.4.

Even assuming *Ward* applies here, Plaintiffs cannot escape that the allegations they claim establish standing—that New York is where "Peloton's top-level business decisions are made," where "deceptive advertising and false representations are finalized," where "it interacts with customers through its app and website," "where all of its payment processes are devised," and "where the revenues from those transactions ultimately flow," Opp. at 1—are all derivative of their core allegation that Peloton's principal place of business is in New York. *See also* Opp. at 7-8 (describing Peloton's receipt of payments in New York and activities that "emanate[] from" New York). Logic dictates that a New York-domiciled company maintains business operations, makes business decisions, and receives revenue in New York. If, as Plaintiffs claim, those allegations were sufficient to establish statutory standing, then application of the NYGBL *would* turn on the residency of the parties—the exact rule that *Goshen* rejects. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002); *see also Wright*, 439 F. Supp. 3d at 110-12.

Finally, Plaintiffs argue that statutory standing necessarily lies where payment to a New York-based company is made by credit card, rather than in cash. Opp. at 12-14. That, of course, is not what the Court's Order stated. *See* Order at 29 (noting that Ms. Pearlman did not allege that she paid "through an electronic or credit card transaction *that was only accepted in New York*") (emphasis added). Moreover, in the year 2021, payments by out-of-state consumers to New York-based companies will overwhelmingly be made by credit card or other electronic means, not in cash. If that were sufficient, then any customer, anywhere, could avail itself of the protections of the NYGBL against a New York-based company, so long as that customer paid with a credit card. None of the cases relied on by Plaintiffs (most of which were decided in the late 1990s or early

8

2000s) endorse such a result.[4] *See In re Amla Litig.*, 328 F.R.D. 127, 132 n.3 (S.D.N.Y. 2018) (declining to rule on whether the NYGBL applied to online transactions with a New York business); *Mountz v. Glob. Vision Prod., Inc.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. N.Y. Cnty. 2003) (observing that a "telemarketing website" or "receipt of Internet orders physically within New York" "appear to form a New York locus" but finding no such connection was alleged); *People by Vacco v. Lipsitz*, 663 N.Y.S.2d 468, 473 (Sup. Ct. N.Y. Cnty. 1997) (addressing personal jurisdiction, not standing, and holding that "traditional jurisdictional standards have proved to be sufficient to resolve all civil Internet jurisdictional issues raised to date"); *Matter of People v. Telehublink Corp.*, 301 A.D.2d 1006 (3d Dep't 2003) (holding that the New York Attorney General had authority to invoke the NYGBL over a party who used a New York address to implement the alleged scheme); *cf. Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (dismissing comparable claims where out-of-state plaintiffs "made and paid for their hotel reservations on the Internet from their respective home states"). Those cases do not say what Plaintiffs suggest for good reason: Plaintiffs' interpretation would effectively eviscerate NYGBL's territorial limitation and, contrary to *Goshen*, would "lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to nationwide, if not global application of General Business Law § 349." Order at 25 (citing *Goshen*, 98 N.Y.2d at 325).[5]

---

[4] Nor is it the law that any credit card transaction with a New York-based company necessarily takes place in New York. Plaintiffs' purported description of what happens "once a customer agrees to transact with Peloton using a credit card," based on the holding of a different court in a different case and entirely devoid of any connection to the allegations in the Amended Complaint, *see* Opp. at 13 n.2 (citing *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 238 (S.D.N.Y. 2010)), is neither a substitute for well-pleaded facts nor relevant.

[5] Plaintiffs oddly claim that Peloton's position would deny Mr. Fishon statutory standing because "[w]herever Ms. Pearlman's [a resident of Michigan] electronic transactions with Peloton 'occurred,' surely Mr. Fishon's [a resident of New York] transactions occurred there as well," Opp. at 16, but offer no legal, factual, or logical support for that proposition.

**III.   MS. PEARLMAN'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

The Opposition previews Plaintiffs' intent to replead Ms. Pearlman's claims under Michigan law and to add claims by new, unidentified plaintiffs under the laws of their respective home states. Opp. at 17. Plaintiffs do not explain why they have failed to assert such alternative claims so far—particularly on behalf of Ms. Pearlman, who has been on notice since at least November 9, 2020 that her NYGBL claims are deficient for lack of standing. The Amended Complaint could have easily asserted an alternative claim under Michigan's consumer protection statute in addition to Ms. Pearlman's NYGBL claim. It did not do so. Rule 15's liberal application to proposed amendments is not limitless, *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d. Cir. 2007), and "'a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Oscar v. BMW of N. Am., LLC*, No. 09 Civ. 11, 2011 WL 6399505, at *1-2, 4-6 (S.D.N.Y. Dec. 20, 2011) (denying leave to amend that "would substantially overhaul the [NYGBL] class definition and theory of damages.").

The impact of Plaintiffs' proposed amendment—which would effectively restart this litigation—is difficult to assess in the abstract. Peloton will certainly require an opportunity to move to dismiss any additional claims on procedural and merits grounds, to obtain discovery from any new plaintiffs, and to evaluate Plaintiffs' "subclass" action allegations. *See, e.g., Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 97 (2d Cir. 2018) ("district courts themselves must undertake a considered analysis of the differences in state laws"). At a minimum, even if such additional state law claims do not survive the pleading stage, resolving these motions alone will inevitably upend the schedule. Peloton will address such additional claims if and when Plaintiffs seek further leave, but, with respect to Ms. Pearlman—who has now twice failed to assert a valid claim, has disregarded the Court's direction, and has failed to bring alternative claims when given the opportunity to do so—the Court can and should dismiss her claims with prejudice now.

10

|  |  |
|---|---|
| Dated: February 25, 2021<br>New York, New York | Respectfully submitted,<br><br>LATHAM & WATKINS LLP<br><br>*/s/* <u>Steven N. Feldman</u><br>Steven N. Feldman<br>Lilia B. Vazova<br>Megan A. Behrman<br>Alexis Kellert<br>885 Third Avenue<br>New York, NY 10022<br>(212) 906-1200<br>Steve.Feldman@lw.com<br>Lilia.Vazova@lw.com<br>Megan.Behrman@lw.com<br>Alexis.Kellert@lw.com<br><br>William J. Trach<br>200 Clarendon Street<br>Boston, Massachusetts 02116<br>(617) 948-6000<br>William.Trach@lw.com<br><br>*Attorneys for Defendant*<br>*Peloton Interactive, Inc.* |