USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/12/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
ERIC FISHON and ALICIA PEARLMAN, individually :
and on behalf of all others similarly situated, :
:
Plaintiffs, : 19-cv-11711 (LJL)
:
-v- : OPINION AND ORDER
:
PELOTON INTERACTIVE, INC., :
:
Defendants. :
:
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Peloton Interactive, Inc. ("Defendant" or "Peloton") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss partially Plaintiffs' first amended complaint ("Amended Complaint" or "AC"), Dkt. No. 81, for failure to state a claim for relief. For the following reasons, Defendant's motion is granted.

## BACKGROUND

The central facts alleged in the Amended Complaint remain substantially the same as those alleged in the original complaint: Peloton sells at-home stationary bicycles ("Peloton Bike") and treadmills ("Peloton Tread") that stream live and on-demand fitness classes. AC ¶ 3. For access to the content library, users pay a monthly subscription fee. *Id*. Peloton offers no distinct categories of membership; all members pay the same monthly fee for access to the entire content library. *Id*. ¶ 5. Every Peloton class includes a themed playlist curated by the instructor to match the tempo and intensity of the class. *Id*. ¶ 18.

Peloton ran certain advertisements describing its library of fitness classes as "ever-growing." *Id*. ¶ 13. In April 2018, however, Peloton received a cease-and-desist letter

from the National Music Publishers Association ("NMPA") regarding Peloton's use of songs in its on-demand class library. *Id*. ¶ 21. In March 2019, several members of the NMPA filed a lawsuit against Peloton, seeking more than $150 million in damages, alleging that Peloton had been using musical works without proper licensing. *Id*. ¶ 22. In the face of the lawsuit, Peloton removed all classes from its on-demand library that contained one or more of the allegedly infringing songs, constituting over 50% of the total available classes. *Id.* ¶ 23.

Plaintiffs sue Peloton under the New York General Business Law (the "NYGBL") §§ 349 and 350, alleging that they were misled by Peloton's representations that its class library was "ever-growing." Section 349 of the NYGBL prohibits deceptive acts and practices, while Section 350 prohibits false advertising.

Plaintiff Alicia Pearlman ("Pearlman") is a citizen and resident of Michigan. *Id*. ¶ 37. Pearlman purchased a Peloton Membership and hardware in November 2018. *Id*. She alleges that she relied upon Peloton's representation that its content library was "ever-growing" when she purchased her hardware and her subscription. *Id*. Pearlman alleges that Peloton's "representations and material omissions regarding its on-demand library caused [her] to pay increased costs for the Peloton hardware and corresponding Peloton Membership, which was worth less than represented because Peloton's representations and/or omissions regarding its on-demand library were deceptive and misleading and constituted false advertising." *Id*. ¶ 41. She further alleges that "Peloton's representations and material omissions were part of the basis of the bargain, in that [she] attributed value to Peloton's promises regarding the nature and characteristics of its on-demand library and would not have purchased the hardware and corresponding Peloton Membership, or would not have purchased it on the same terms, if [she] knew the truth that Peloton's on-demand digital library would shrink by more than 50%." *Id.*

¶ 42.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint on December 23, 2019. Dkt. No. 1. Peloton moved to dismiss the complaint on March 13, 2020. Dkt. No. 29. By Opinion and Order dated November 9, 2020, the Court granted the motion to dismiss in part and denied in part. As relevant here, the Court granted the motion to dismiss with respect to Pearlman's claims. The Court held that Pearlman's two territorial allegations—namely that (1) Peloton's principal place of business is in New York and that (2) Peloton's Terms of Service select New York law to govern and New York as the forum for dispute resolution—were not sufficient to support statutory standing under the NYGBL for Pearlman as a Michigan resident who did not allege that she purchased her Peloton hardware in New York. The Court dismissed Pearlman's claims, concluding that "Pearlman does not allege that any part of her transaction took place in New York. She does not allege that she purchased her Peloton product in New York, that she paid through an electronic or credit card transaction that was only accepted in New York, or even what product specifically she purchased." Dkt. No. 65 at 29.

Following the Court's Order, Plaintiffs received discovery concerning the statutory standing of Peloton's out of state customers. Dkt. No. 78. On January 15, 2021, Plaintiffs sought leave to file an amended complaint containing allegations from that fact discovery. Dkt. No. 78. Defendant consented to Plaintiffs' request on January 20, 2021, and stated its intention to file a partial motion to dismiss the proposed amended complaint. Dkt. No. 79. The Court granted leave on January 20, 2021. Dkt. No. 80.

Plaintiffs filed the Amended Complaint on January 21, 2021. Dkt. No. 81. Defendant filed a motion to dismiss the Amended Complaint with respect to Pearlman on February 4, 2021. Dkt. No. 89. Plaintiff responded on February 18, 2021, Dkt. No. 90, and Defendant replied on

3

February 25, 2021.  Dkt. No. 92.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

The text of Sections 349 and 350 of the NYGBL reflect a territorial limitation.  Section 349 declares: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  Section 350 likewise states that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  *Id.* § 350.  At the motion to dismiss phase, the question is whether "some part of the underlying transaction . . . occur[red] in New York State."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124

(2d Cir. 2013) (quoting *Mountz v. Global Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003)).

The Amended Complaint includes the following allegations in support of Pearlman's claim to statutory standing:

- Pearlman "rel[ied] on Peloton's uniform representations about its "ever-growing" on-demand library of fitness classes, entered into a transaction with New York-based Peloton, resulting in her purchase of Peloton's hardware and Peloton Membership in November 2018, and has paid all required hardware, software, and subscription fees relating thereto." Dkt. No. 81 ¶ 37.

- Pearlman's purchase of her Peloton membership was made electronically, as were all her monthly fee payments. *Id.* ¶ 38.

- Pearlman has "continued to pay Peloton for subscription services since [she] acquired the Peloton hardware, and . . . [has] continued to pay for those services electronically with a credit card." *Id.* ¶ 39.

- When a member purchases Peloton hardware, a Peloton Membership, Peloton Digital, or the Subscription Service, that member's payment is routed to Peloton's bank accounts in New York. *Id.* ¶ 8.

- Those payments are recorded and managed by Peloton's Accounting and Finance department, located in New York. *Id.* ¶ 9.

- Peloton does not accept cash as a form of payment. *Id.* ¶ 10.

- Peloton "sees itself as a uniquely New York company." *Id.* ¶ 7.

- Peloton records, produces and issues classes from studios in New York. *Id.* ¶ 11.

- Peloton "purposefully and affirmatively" engages in a variety of advertising and marketing campaigns originating from and/or approved by its Creative, Acquisition Marketing, Brand Marketing, and Retention Marketing departments, all located at Peloton's New York headquarters. *Id.* ¶ 12.

- The decision to remove the majority of Peloton's on-demand library was made in New York and "effectuated" in New York. *Id.* ¶ 24.

These allegations are not sufficient to support statutory standing for Pearlman, for much the same reasons the Court outlined it its previous Opinion and Order. As the Court previously held, the NYGBL is intended to protect consumers "in their transactions that take place in New

5

York State." Dkt. No. 65 at 25. The appropriate test under the NYGBL is not where the alleged deception took place or where the parties reside, but instead "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." *Id*. at 26.

The Court's previous opinion stated what facts Pearlman would need to allege in order to establish statutory standing. The Court indicated that she would need to state (1) what product specifically she purchased and (2) that she purchased her Peloton product in New York or that she paid through an electronic or credit card transaction that was only accepted in New York. Pearlman has failed to do either one of these things.

First, Pearlman still has not identified what "hardware" she purchased from Peloton. She does not indicate whether she purchased a Bike, a Tread, or some other piece of equipment from Peloton. Pearlman's failure to correct this aspect of her complaint is puzzling, as this information is presumably readily accessible to her. Pearlman raises no arguments in her opposition brief responsive to this part of the Court's prior opinion.

Second, Pearlman has again failed to allege that her purchase and subscription to the Peloton service had a sufficient nexus to New York to give rise to an NYGBL claim. With respect to her purchase and subscription, Pearlman alleges only that she "paid all required hardware, software, and subscription fees" and that she paid and continues to pay for her membership subscription "electronically with a credit card." *Id*. ¶ 39. Pearlman has not specified where those transactions are processed or whether any component of those transactions took place in New York. She does not allege that she made any payment in New York, that she purchased her hardware or subscription in New York, or that her payment was processed on a server in New York. Instead, Pearlman alleges that, when a member purchases Peloton

6

hardware, a Membership or a Subscription, the payment is routed to Peloton's bank accounts in New York. But that fact alone cannot support statutory standing. If it could, then any corporation holding a bank account in New York into which payments were received would be subject to liability under the NYGBL for activity anywhere in the world, which would expand the scope of the NYGBL far beyond the New York legislature's intent. *See Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016) (holding that the fact that out-of-state payments ultimately were received in New York did not give rise to NYGBL standing). The same is true for Pearlman's allegation that payments to Peloton are "recorded and managed by Peloton's Accounting and Finance department, located in New York." Dkt. No. 81 ¶ 9. Allowing an NYGBL claim to go forward on this basis could subject any business based in New York to liability under the NYGBL for global conduct; there is no reason why a New York-based corporation's decision to place its accounting and finance function in New York should give rise to New York liability for a transaction otherwise taking place entirely out-of-state. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1196 (N.Y. 2002) ("To apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to nationwide, if not global application of General Business Law § 349.").

      As the Court held in its prior opinion, Pearlman had to allege that some part of her specific transaction took place in New York. She has not done so. She has alleged that she paid electronically and that all payments ultimately end up in a bank account in New York, but that, without more, is not sufficient to allege that any part of the transaction took place in New York. *See TouchTunes*, 211 F. Supp. 3d at 633-35 (holding that the NYGBL applied to out-of-state credit card payments on digital jukeboxes where the payments were processed in New York, but

not to cash payments made on the same jukeboxes). Pearlman still has made no specific jurisdictional claims about her purchase. She does not state where she purchased her hardware and subscription, where she saw the allegedly deceptive advertisements, where her purchase and transaction were processed, or where the servers hosting Peloton's class library are located. Without a connection between her specific transaction and New York—beyond Peloton's business being based there—Pearlman has no statutory standing.

Pearlman's remaining new allegations support factual findings about Peloton that the Court already found were insufficient to support statutory standing under the NYGBL. Pearlman simply expands upon the earlier bases that the Court previously found deficient. She emphasizes again that Peloton is based in New York, that the deceptive scheme was "hatched" in New York, that customer payments are routed to New York, and that Peloton's Terms of Service contained choice of law and forum selection clauses favoring New York. She includes allegations that Peloton "sees itself as a uniquely New York company" and that its CEO stated that "New York is where Peloton started, and it will continue to be our home as we scale our business globally." Dkt. No. 81 ¶ 7. These allegations merely expand upon the already-established fact that Peloton is a New York based business, a fact which the Court held in its prior opinion was insufficient for statutory standing under the NYGBL. *See Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (holding that the allegations in an amended complaint were "merely clever re-articulations of the allegation that the Defendants operate their principal place of business in New York").

Other allegations are repetitious of those allegations the Court found inadequate in its previous Opinion. The fact that the allegedly deceptive conduct was organized and perpetrated in Peloton's New York headquarters does not support a finding of statutory standing. *See*

*Goshen*, 774 N.E.2d at 1195 (holding that the fact that a New York resident devised a misleading marketing campaign in New York did not "in and of itself constitute an actionable deceptive act or practice under the [NYGBL]"). The fact that Peloton's Terms of Service require that New York law apply to all aspects of the contractual relationship and that lawsuits be resolved in a New York forum is likewise insufficient, as the Court observed in its prior opinion. *See* Dkt. No. 65 at 27 ("The fact that Peloton, a New York-based corporation, chose New York law and a New York forum to apply to all of its transactions . . . does not give rise to a reasonable inference that the transaction by which Pearlman, a Michigan resident, purchased a Peloton product occurred in New York.").

Pearlman responds that her "materially expanded allegations" show that "New York is where Peloton's top-level business decisions are made, where its marketing decisions are made, where its deceptive advertising and false representations are finalized, where those acts ultimately emanate from, where it interacts with customers through its app and website, where all of its payment processes are devised, and where the revenues from those transactions ultimately flow." Dkt. No. 90 at 1. Such allegations are not sufficient. All of these allegations merely go to show that Peloton is based in New York—a fact which no one disputes and which is not enough to subject it to New York law for a transaction taking place elsewhere. In order for statutory standing to arise, Peloton's residency is not the issue—the issue is the location of the underlying transaction. Likewise, Pearlman misstates the standard when she argues that the requirements for statutory standing are satisfied by a showing that "for each transaction, the payment actually reached New York." Dkt. No. 90 at 8. As discussed above, such a standard would extend NYGBL liability to any transaction that resulted in monies flowing to a New York bank account—an unwarranted expansion of NYGBL liability.

9

Pearlman additionally claims that statutory standing should be found based on the accumulation of factors present here, even if none of those factors would be sufficient to support a finding of statutory standing on its own.  According to Pearlman, where a defendant (1) selects New York law as controlling; (2) communicates and sells its products from New York; and (3) is paid in New York via electronic payment transactions from out-of-state, a plaintiff has statutory standing under the NYGBL.  Pearlman argues that "[c]ase after case" supports statutory standing on those facts.  But, as discussed above, the connection Pearlman draws between the payments and New York is too slender to support statutory standing.  The only connection she draws is that the payments she made ultimately found their way to Peloton in New York and were recorded there.  But courts have held that that is not enough.  *See, e.g*, *Wright*, 439 F. Supp. 3d at 110 (holding that the allegation that the defendant received payment in New York was merely a restatement of the allegation that New York was the defendant's principal place of business); *TouchTunes*, 211 F. Supp. 3d at 635 (holding that the New York residency of "the ultimate recipient of the[] out-of-state payments" was not sufficient to establish standing).  In the absence of a stronger nexus between the transaction and New York, Pearlman's claim cannot go forward.

Pearlman has already had one opportunity to amend the complaint.  Even after discovery, she has failed to allege that she has statutory standing to pursue her claims under the NYGBL.  *See, e.g.*, *Pierce v. Fordham Univ.*, 2016 WL 3093994, at *7 (S.D.N.Y. June 1, 2016) ("[I]f Plaintiff had better facts to allege, it is safe to assume that she would have alleged them.  That is, Plaintiff fails to give 'any indication that [she] is in possession of facts that would cure the problems identified in this opinion.'") (quoting *Clark v. Kitt*, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014)) (alterations in original); *see also*, *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here,

plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss."). Because Pearlman has failed to cure the deficiencies the Court found in the original complaint, further amendment is not warranted, and Pearlman's New York claims are dismissed with prejudice.

Pearlman has additionally requested leave to amend the complaint to plead claims under the Michigan Consumer Protection Act. Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)). Because Pearlman has not yet had an opportunity to plead her case under Michigan law and because Peloton has not articulated any bad faith or any prejudice it would suffer from the amendment, the Court grants leave to amend the complaint to plead those claims.

## CONCLUSION

For the following reasons, Pearlman's claims under the NYGBL are DISMISSED with prejudice. Pearlman has leave to amend the complaint to plead her claims under Michigan law within fourteen days of this Order. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 84 and 88.

SO ORDERED.

Dated: July 12, 2021
New York, New York

_____
LEWIS J. LIMAN
United States District Judge