**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC FISHON and ALICIA PEARLMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>    Defendant. | Case No. 1:19-CV-11711-LJL<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br><br>**ORAL ARGUMENT REQUESTED** |

**Dated:** September 15, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORTIES ............................................................................................. iii

I.      Introduction ............................................................................................................ 1

II.     The Nature of the Case ........................................................................................... 2

III.    Standard for Class Certification ............................................................................. 8

IV.     The Proposed Classes ............................................................................................. 9

V.      Argument ................................................................................................................ 9

        A.      Each of the Proposed Classes Meet the Rule 23(a) Requirements ......... 10

                1.      Rule 23(a)(1): The class is so numerous that it would be
                        impracticable to join each class member as a party. ................... 10

                2.      Rule 23(a)(2): This case involves common issues of fact and law
                        that can be proven class-wide. .................................................... 10

                        a.      The materiality of Peloton's misrepresentations and
                                omissions is a question common to all class members that
                                can be proven through common evidence. ...................... 13

                        b.      Whether, in light of its representations, Peloton had a duty
                                to disclose that its use of unlicensed music in its on-demand
                                library that may result in the removal of half of its library
                                and when, if Peloton had a duty to disclose, that duty arose,
                                are questions common to all class members that can be
                                proven through common evidence. .................................. 14

                        c.      Whether Peloton's misrepresentations and omissions were
                                deceptive is a question common to all class members that
                                can be proven through common evidence. ...................... 15

                        d.      Whether Peloton's deceptive conduct injured all class
                                members is a common question across the class that can be
                                proven through common evidence. .................................. 16

                        e.      Class-wide damages can be established using common
                                proof. ............................................................................... 19

                3.      Rule 23(a)(3): Plaintiffs' claims are typical of class members'
                        claims. .......................................................................................... 21

                4.      Rule 23(a)(4): Plaintiffs will adequately represent the Classes. ... 22

B.    The Proposed Classes Satisfy Rule 23(b)(3) ........................................................24

    1.    Common questions of fact and law predominate over questions affecting individual class members in both Proposed Classes..................24

        a.    Plaintiff Fishon's NYGBL claims are readily susceptible to class-wide adjudication...............................................................26

        b.    Plaintiff Pearlman's MCPA claims are readily susceptible to class-wide adjudication...........................................................28

    2.    Class action is superior to other methods of adjudication. .......................30

C.    The proposed class meets the ascertainability requirement...................................31

D.    Class Counsel Satisfy Rule 23(g)'s Adequacy Requirements. .............................32

VI.    Conclusion .......................................................................................................................33

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).............................................................................................8, 13

*Bechtel v. Fitness Equip. Svcs., LLC*,
   No. 1:19-CV-726, 2021 WL 4147766 (S.D. Ohio Sept. 12, 2021) ........................17

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) (Weinstein, J.)....................................................12

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) .................................................................................15

*Bobbitt v. Acad. of Ct. Reporting, Inc.*,
   252 F.R.D. 327 (E.D. Mich. 2008) ........................................................................29

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)...................................................................................21

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)...................................................................................22

*Clay v. CytoSport, Inc.*,
   No. 3:15-CV-00165-L-AGS, 2018 WL 4283032 (S.D. Cal. Sept. 7, 2018)...............16, 19, 28

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..................................................................................................19

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012)....................................................................29

*de Lacour v. Colgate-Palmolive Co.*,
   338 F.R.D. 324 (S.D.N.Y. 2021) (Wood, J.) ................................................ *passim*

*Dial Corp. v. News Corp.*,
   314 F.R.D. 108 (S.D.N.Y. 2015) ...........................................................................22

*Dix v. American Bankers Life Assur. Co. of Florida*,
   429 Mich. 410 (1987) .................................................................................13, 28, 29

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020)....................................................................16

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y.2014) ...............................................................................15, 17, 31

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    334 F.R.D. 96 (E.D. Mich. 2019) .............................................................................13

*Fishon v. Peloton Interactive, Inc.*,
    No. 19-CV-11711 (LJL), 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020)..........................27, 32

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) .............................................................................17

*In re Gen. Motors LLC Ignition Switch Litig.*,
    257 F. Supp. 3d 372 (S.D.N.Y. 2017)........................................................................11

*Gilkey v. Cent. Clearing Co.*,
    202 F.R.D. 515 (E.D. Mich. 2001) ...........................................................................16, 22

*Gregorio v. Ford Motor Co.*,
    No. 20-11310, 2021 WL 778913 (E.D. Mich. Mar. 1, 2021) ..................................14

*Hasemann v. Gerber Prod. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) ........................................................13, 27, 28, 31

*Irvin v. Harris*,
    944 F.3d 63 (2d Cir. 2019).....................................................................................22

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)....................................................................................8

*Kalish v. Karp & Kalamotousakis, LLP*,
    246 F.R.D. 461 (S.D.N.Y. 2007) ............................................................................22, 32

*In re Kind LLC "Healthy & All Natural" Litig.*,
    337 F.R.D. 581 (S.D.N.Y. 2021) ................................................................ *passim*

*In re Kind*,
    2021 WL 1132147 ..................................................................................................30

*Krobath v. S. Nassau Communities Hosp.*,
    178 A.D. 3d 807 (N.Y. App. Div. 2019) ................................................................11

*Kurtz v. Costco Wholesale Corp.*,
    768 F. App'x 39 (2d Cir. 2019) ...............................................................................18

*Kurtz v. Costco Wholesale Corp.*,
    No. 17-cv-1856, 2020 WL 3480830 (2d Cir. June 26, 2020)..................................19

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................18

*Kurtz v. Kimberly-Clark Corp.*,
    414 F. Supp. 3d 317 (E.D.N.Y. 2019) .......................................................19

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) ......................................................................22

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ......................................................................11

*Montgomery v. Kraft Foods Glob., Inc.*,
    No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012), aff'd,
    822 F.3d 304 (6th Cir. 2016) .....................................................................11

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ........................................................23, 32

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ......................................................................15

*Papazian v. Lichtman*,
    No. 180755, 1996 WL 33359823 (Mich. Ct. App. Sept. 6, 1996) ............28

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) ......................................................................31

*Phillips Petroleum Co. v. Shutts*,
    472 U.S 797 (1985) ...................................................................................10

*Price v. L'Oreal USA, Inc.*,
    No. 17 CIV. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) ...........21, 26, 30

*Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014) ......................................................................10

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ................................................................10, 21

*Roseman v. Bloomberg L.P.*,
    No. 14CV2657 (DLC), 2017 WL 4280602 (S.D.N.Y. Sept. 25, 2017) ......26

*Schear v. Food Scope Am., Inc.*,
    297 F.R.D. 114 (S.D.N.Y. 2014) ...............................................................24

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) ......................................................................24

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. ............................................................................................................17

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................12, 16, 26

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ..................................................................................30

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ..................................................................................8

*Sharpe v. A&W Concentrate Co.*,
   No. 19-CV-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ......................12, 17, 27

*In re Sling Media Slingbox Adver. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016) ..................................................................14

*Starr v. VSL Pharms., Inc.*,
   509 F. Supp. 3d 417 (D. Md. 2020) ......................................................................28

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24, 731 N.E.2d 608 (2000) ..................................................................27

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ............................................................................22

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ......................................................................................10, 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................8, 10

*In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir.2013) ................................................................................17

**Statutes**

Mich. Comp. Laws Ann. § 445.903(1)(s) ......................................................11, 15, 28

Michigan Consumer Protection Act.................................................................. *passim*

N.Y. Gen. Bus. Law §§ 349 and 350 ......................................................11, 18, 26, 27

New York General Business Law ...................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

Fed. R. Civ. P. 23(a) ...............................................................................................................10, 24

Fed. R. Civ. P. 23(a)(1) ................................................................................................................10

Fed. R. Civ. P. 23(a)(2) .........................................................................................................10, 24

Fed. R. Civ. P. 23(a)(3) ................................................................................................................20

Fed. R. Civ. P. 23(a)(4) .....................................................................................................22, 23, 32

Fed. R. Civ. P. 23(b)(3) ........................................................................................................9, 19, 24

Fed. R. Civ. P. 23(g) .........................................................................................................22, 23, 32

Fed. R. Civ. P. 23(g)(i)-(iv) ...........................................................................................................32

## I.      INTRODUCTION

For years, Peloton distinguished its stationary bike and treadmill from its competitors'

offerings by touting its "ever-growing" and "growing" library of live and on-demand classes.  In

its quest to create content that was more appealing than its competitors' content, Peloton set

those classes to music that it had not obtained the rights to use.  Despite full knowledge that the

size of its vaunted class library was built on a house of cards of unlicensed music, Peloton

nevertheless continued to promote its library as "ever-growing" and "growing" while never

informing the public that what was truly growing was the slate of cease-and-desist letters and

threats of copyright infringement litigation that made the inevitable culling of its library

impossible to ignore.

On March 25, 2019, as it faced the long-threatened multimillion-dollar copyright

infringement suit filed by the National Music Publishers Association ("NMPA"), Peloton

removed *more than half* of its class library.  This "purge" took place without a whisper of

warning to consumers who purchased bikes and treadmills or to members paying monthly

subscription fees for a supposedly "ever-growing" library.

Peloton's misrepresentations and omissions are quintessential consumer fraud under both

the New York General Business Law ("NYGBL") and the Michigan Consumer Protection Act

("MCPA").  Peloton's deceptive conduct affected *all* of its purchasers and subscribers,

diminishing both the value of the hardware they purchased as well as the membership

subscriptions they paid for each month.  Predominant, common questions form the heart of this

case, including whether Peloton's misrepresentations and omissions regarding its "ever-growing"

library of classes were likely to deceive Class members in violation of both the NYGBL and

MCPA, and whether Class members overpaid for their hardware and subscriptions.  This is a textbook class certification case, and Plaintiffs' respectfully request that their motion be granted.

## II.     THE NATURE OF THE CASE

Peloton's characterization of its library as "ever-growing" and "growing" was a deliberate feature of its advertising for years; indeed, Peloton admits ████████████ ██████████████████ Dravillas Decl. Ex. 1, Dep. Tran. Tisch-Blodgett 27:22-28:23.[1] ████████████████████████████████████████ ████████████████████████ Dravillas Decl. Ex. 2, Dep Tran. Dillon-Curran 126:14-25; Dravillas Decl. Ex. 3, Dep. Tran. Stanton 140:22-141:9.  And with good reason.  As Peloton's former head of marketing put it, representing the on-demand class library as "ever-growing" or "growing" "was ███████████████████████" and "███████████████ ██████████ Dep. Tran. Tisch-Blodgett 28:22-29:3.

As a result, Peloton's characterization of its library as "ever-growing" and "growing" was a ubiquitous feature of its advertising. ████████████████████████████ ████████████████████████ Dep. Tran. Dillon-Curran 92:6-93:21. So, it is no surprise that Peloton's "ever-growing" and "growing" library claims littered its website for years.[2]  For example, on September 5, 2017, Peloton edited the Financing page on its website onepeloton.com to add the claim:



---

[1] *See also* Dep. Tran. Tisch-Blodgett. 11:12-16 ████████████████████████████ ███████████████████████████████████████████████████████ ██████████ )

[2] Dravillas Decl. Ex. 4 [PELFISH0308549]; Dravillas Decl. Ex. 5 (Peloton coding documents for its website containing the misrepresentations) [PELFISH0307951]; *see also* Dravillas Decl. Ex. 6 ("growing library") [PELFISH0282013].

2

> Enjoy unlimited access to the world's best instructors anytime, anywhere with up to 14 daily live classes and an evergrowing library of 6,000+ on demand classes.[3]

And the claim remained there unchanged until July 10, 2018, when Peloton updated that page to say:

> Experience unlimited access to the world's best instructors anytime, anywhere, with 15+ daily live classes and an ever-growing library of 9,000+ classes available on-demand.[4]

But Peloton did not limit these misrepresentations to its website. Peloton touted its "ever-growing" and "growing" library representations through numerous media channels. Dravillas Decl. Ex. 9 (March 2017 website advertisement which states, "With a Peloton subscription on your device, you'll gain unlimited access to a growing library of live streaming and on-demand Peloton classes[.]") [PELFISH0119211]; Ex. 10 (December 2017 advertisement which states, "Enjoy unlimited access to the world's best instructors anytime, anywhere with up to 14 daily live classes and an ever-growing library of 6,000+ on-demand classes.") [PELFISH0128455]; Ex. 11, (June 2018 advertisement which states, "Explore an ever-growing library of live and on-demand studio classes taught by elite NYC instructors.") [PELFISH0254457]; Ex. 12 (January 2019 advertisement which states, "Get unlimited access to new live classes daily and an ever growing on-demand library[.]") [PELFISH0254467]; Ex. 13 (national radio and podcast scripts) [PELFISH0078438]; Dravillas Decl. Ex. 14 (timeline of Peloton's use of "ever-growing" in its advertisements).

---

[3] Dravillas Decl. Ex. 7 [PELFISH0308518].

[4] Dravillas Decl. Ex. 8 [PELFISH0308541].

Peloton intended its "ever-growing" library representations "█████████████████████ ████████████████████████████████████████████████████████ ████████████████" Dep. Tran. Dillon-Curran 33:18-21.  The value of this representation to Peloton was obvious, because "███████████████████." *Id.* 175:5-6.  In fact, according to Peloton's 2017 Annual Membership Survey, the on-demand class offerings in Peloton's library █████████████████████████████████████████████████. Dravillas Decl. 15, Dep. Tran. Greenawalt 85:4-9; *see also* Dravillas Dec. Ex. 16 (2017 Annual Membership Survey at PELFISH0124264) [PELFISH0124249].  Along with these offerings, this same survey found ████████████████████████████████████████. Dep. Tran. Greenawalt 93:1-6.  So "obvious" to Peloton was it that ████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████[5] Peloton even emphasized the importance of the "ever-growing" library in an Instructor Guide, answering a question about the bike by saying, "████████████ ██████████████████████████████████████████████████████████████████ █████████████." Dravillas Dec. Ex. 18 [PELFISH0065726].

The value of this representation and the returns it brought led Peloton into a "████████ ████████████████████████████. *See* Dep. Tran. Stanton 115:15-25 (agreeing that aspects of Peloton's business applied a "██████████████████████████████████████████ ███████████████████████████████████████. Dep. Tran. Stanton 28:16-25

---

[5] *Compare* Dravillas Dec. Ex. 16 (2017 Annual Membership Survey) *with* Ex. 17 (2018 Annual Membership Survey) [PELFISH0252223]; see also Dep. Tr. Greenawalt 69:3-10 ("██████████ ██████████████████████████████████████████████████████████████████ ███████████████████ ").

(███████████████████████████████"); Dep. Tran. Dillon-
Curran 126:14-25 ("███████████████████████); *see also* Dravillas Decl.
Ex. 19 (████████████████████████████████████").
Even after Peloton was warned to cease and desist using music it had no right to use in its on-
demand classes, it continued using that music for nearly a year, all the while describing its
library as ever-growing.  *See* Dravillas Decl. Ex. 20 (████████████████████████
████████); Dravillas Decl. Ex. 21 (███████████████████); Dravillas Decl.
Ex. 22 (█████████████████████████).  After getting
sued for copyright infringement, Peloton slashed any class that touched on the infringing songs.
*See* Dravillas Decl. Ex. 21 (████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████).  Dravillas Decl. Ex. 23 (chart of on-demand library size over time)
[PELFISH0018652.01].  Following the purge, ████████████████████████
████████████████ *Id.*

But, true to form, Peloton acted independently of any reference to the people who would
be affected by this extensive class removal—its users.  It wasn't until *after* the classes were
already gone that it deigned to tell them the classes would be removed.  *Id.*  Even then, it kept
referring to its on-demand library as "ever growing."  *See* Dravillas Decl. Ex. 22
[PELFISH0031198]; *see also* Dravillas Decl. Ex. 14.  In fact, just like with the music publishers,
Peloton's policy was to ignore complaints when users were upset with the deception, the lawsuit,
and the gutted library.  *See* Dep. Tran. Greenawalt 153:14-154:18 (███████████████
███████████████████████████████████████████

████████████████████████████████████); *see also* Dravillas Decl.

Ex. 24 (April 29, 2019 "████████████" memo).  It wasn't until after Peloton had already

purged half of its library that Peloton first considered whether it was time to tell the truth.  Dep.

Tran. Tisch-Blodgett 31:5-33:21 (████████████████████████████████

██████████████████).  In a March 25, 2019 message to the Peloton membership, Peloton's

CEO said "I'll share what I can here" about the copyright infringement lawsuit and decision to

purge classes, but he *did not* share the number of songs that were at issue in the copyright

lawsuit, how many classes were purged from the library, or the percentage of classes in the

library that was removed.  *See* Dravillas Decl. Ex. 21.  Even when Plaintiffs and *thousands of*

*others* tried to bring claims against Peloton for its behavior through arbitration (and began

winning), Peloton acted as it always acted—leave a problem alone and hope it goes away.  *See*

*Simpson v. Peloton*, Opinion and Final Award, AAA Case No. 01-19-0002-5422 (Aug. 25,

2020).

Such reluctance is understandable for a company seeking to dominate the home fitness

market, because ████████████████████████████████████████

█████████ Dravillas Decl. Ex. 16 ███████████████████████).

To measure just how important that feature was to Peloton consumers, Plaintiffs retained J.

Michael Dennis, Ph.D. to design, conduct, and report on a consumer survey to measure the

extent to which Peloton's "ever-growing library" claim was material to consumers, whether the

claim resulted in a price premium to be paid by consumers, and if so, the amount of that

premium.  (Dennis Decl. ¶ 18).  Dr. Dennis conducted his survey using the "choice-based

conjoint methodology."  At a high level, "[c]onjoint analysis is a representative survey technique

that permits an economist to analyze the value of various product attributes."  (Weir Decl. ¶ 17).

This analysis is carried out by "systematically varying the attributes of the product [in surveys] and observing how respondents react to the resulting product profiles[,]" and subsequently applying statistical methods (including regression analysis) to the survey responses to calculate attribute value.  (*Id*. ¶¶19-20).

Such conjoint surveys are among the standard marketing research techniques for quantifying consumer preferences for products and their constituent components, and they have been widely relied upon in litigation.  (Dennis Decl. ¶ 39).  That is why Peloton, itself, relied on conjoint analyses.  *See* Dravillas Decl. Ex. 25 (███████████████████

██████).  Here, Dr. Dennis used conjoint methodology to measure the marketplace price premium solely attributable to Peloton's use of the challenged "ever-growing library" claim. (Dennis Decl. ¶ 20).  Dr. Dennis also sought to measure the importance of Peloton's alleged omission, specifically whether Peloton's knowledge of information about the possible reduction in the number of classes would have caused concern in the minds of consumers.  (*Id*. ¶¶85-87). Dr. Dennis's study found that consumers attribute significant importance to Peloton's "ever-growing library" representation in that they paid more for Peloton's products as a result of Peloton's use of the representation.  (*Id*. ¶ 92).  Dr. Dennis also found that consumers perceived the "ever-growing library" representation to indicate that the number of classes would be constantly increasing in number, at least monthly, or even more often.  (*Id*. ¶¶ 83, 93).  Finally, Dr. Dennis found that a substantial share of consumers would have considered information about the possibility that the number of classes might be reduced as part of their purchase decision. (*Id*. ¶ 87).

## III.   STANDARD FOR CLASS CERTIFICATION

The party moving for class certification must demonstrate by a preponderance of the evidence that the putative class meets each of the requirements of Rule 23. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). The district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each element of Rule 23 has been met. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251–52 (2d Cir. 2011).

A probability of success on the merits is not required for class certification. Plaintiffs "need not show that the common questions 'will be answered, on the merits, in favor of the class.'" *Johnson*, 780 F.3d at 138 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013)). *See also* Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). This is because at this stage of the litigation, the merits are not at issue. However, the court must satisfy itself with a "rigorous analysis" that the prerequisites of certification are met, even if that analysis has "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). But Courts are not granted a "license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.

Ultimately, "[t]rial courts are given substantial discretion in determining whether to grant class certification." *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 593-94 (S.D.N.Y. 2021) (the Second Circuit instructs district courts "to adopt a liberal interpretation of Rule 23"). Accordingly, "if there is to be an error made, let it be in favor and not against the

maintenance of the class action." *Id.* (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) and citing *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015)).

## IV.     THE PROPOSED CLASSES

Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Eric Fishon moves for certification of the following Class:

> All purchasers of the Peloton hardware and/or the corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019 in the State of New York (the "New York Class").

Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Alicia Pearlman moves for certification of the following Class:

> All purchasers of the Peloton hardware and/or the corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019 in the State of Michigan (the "Michigan Class").[6]

## V.     ARGUMENT

This case is acutely suitable for class treatment of the consumer protection claims brought by Mr. Fishon and Ms. Pearlman.  Peloton's unlawful conduct affected tens of thousands of consumers across New York and Michigan alone.  As Plaintiffs' experts' reports show, the elements of Plaintiffs' claims, including whether Peloton's promise of an "ever-growing" and "growing" library of classes was likely to deceive a reasonable consumer, can be proven by class-wide common evidence making those common questions predominate over any individual issue.

---

[6] Mr. Fishon and Ms. Pearlman are collectively the "Plaintiffs."  The New York Class and the Michigan Class are collectively the "Proposed Classes."

Class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and ensure that plaintiffs have a right to redress wrongs that would otherwise "have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S 797, 809 (1985).  That is this case.

**A.      Each of the Proposed Classes Meet the Rule 23(a) Requirements**

**1.      Rule 23(a)(1): The class is so numerous that it would be impracticable to join each class member as a party.**

The proposed Classes here consist of ███████████████████.  Dravillas Decl. Ex. 26 [PELFISH0078253].  Under Rule 23(a)(1), a class must be so numerous that joinder of all members is impracticable.  "[I]mpracticable" does not mean "impossible," and a precise enumeration or identification of class members is not required.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  That said, it is sufficient for the Plaintiffs to "reasonably estimate the number of class members" and they "need not show the exact number."  *Id*.  The class size here vastly exceeds forty, the size at which "[n]umerosity is presumed."  *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).  Plaintiffs do not anticipate that Peloton will contest numerosity in this case, as it is readily apparent that more than forty consumers have purchased Peloton's bikes, treads, and membership subscriptions in large states like New York and Michigan.  The proposed Classes are sufficiently numerous.

**2.      Rule 23(a)(2): This case involves common issues of fact and law that can be proven class-wide.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To be common, the questions must be of "such a nature that [they are] capable of class-wide resolution," such that determination of their "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Accordingly, commonality requires the putative class's claims to present an "issue [that] is

10

susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Examination of the commonality requirement begins with the elements of Plaintiff's claims.  To establish Mr. Fishon and the New York Class's GBL § 349 or § 350 claims, he "must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  Ms. Pearlman and the Michigan Class's MCPA claims similarly require her to "(1) establish that a defendant is engaged in commerce within the meaning of the Act, § 445.902(1)(g); (2) establish that a defendant's conduct is prohibited by the Act, § 445.903(3), and (3) where individual or class damages are sought, show that the plaintiff is a 'person who suffered loss' within the meaning of § 445.911(3)." *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *4 (W.D. Mich. Dec. 6, 2012), aff'd, 822 F.3d 304 (6th Cir. 2016).

Both statutes prohibit making false statements and the failure to disclose material facts in the sale of goods.  *See Krobath v. S. Nassau Communities Hosp*., 178 A.D. 3d 807, 809 (N.Y. App. Div. 2019) ("it is possible to engage in deceptive trade practices through omissions as well as affirmative representations, particularly where, as here, it is alleged that "the business alone possesses material information that is relevant to the consumer and fails to provide this information") (citations omitted); *In re Gen. Motors LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 420 (S.D.N.Y. 2017) ("the MCPA prohibits, inter alia, (1) representing that goods or services have characteristics that they do not have;" "(4) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; (5) making a representation of fact or statement of fact

material to the transaction such that a person reasonably believes the represented or suggested

state of affairs to be other than it actually is; and (6) failing to reveal facts that are material in

light representations of fact made in a positive manner").

Although a single common legal issue is sufficient for class certification, like numerous

other false advertising consumer class actions, the issues here give rise to numerous common

questions that can be proven though generalized class-wide evidence.  Those include:

(1) whether Peloton's representations and omissions were material, (2) whether the

representations and omissions were deceptive, and (3) whether Peloton's deceptions injured class

members.  Each question is susceptible to class-wide resolution, because they are determined

under objective standards or focus on the actions of the defendant.  *See, e.g., Sharpe v. A&W*

*Concentrate Co.,* No. 19-CV-768 (BMC), 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021)

("[C]lasswide evidence can determine whether the 'made with aged vanilla' claim was false and,

if so, whether it was likely to mislead a reasonable consumer."); *de Lacour v. Colgate-Palmolive*

*Co.*, 338 F.R.D. 324, 337 (S.D.N.Y. 2021) (Wood, J.) ("Whether these ingredients are 'natural';

whether the 'natural' claim is false and/or misleading; and whether class members paid a

premium … because of that advertising claim, are all common questions apt to drive resolution

of this litigation."); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 62 (E.D.N.Y. 2015)

(Weinstein, J.) (finding common questions such as "What does defendant's 'flushable'

representation mean to a reasonable consumer," "Is defendant's 'flushable' representation

materially misleading," and "Did class members pay an unsupported premium as a result of the

'flushable' representation?"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015)

(Briccetti J.) ("A common question with respect to the second theory of liability is whether the

50% thicker claim is false and/or misleading.  The answer to this question is common to all class members, and is apt to drive the resolution of this litigation.").

> a.  **The materiality of Peloton's misrepresentations and omissions is a question common to all class members that can be proven through common evidence.**

The materiality of Peloton's misrepresentations and omissions is a common question, because materiality is determined by an objective "reasonable consumer" standard, not a subjective standard tied to any particular class member's beliefs.  *See Amgen*, 568 U.S. at 459 ("Because materiality is judged according to an objective standard, the materiality of [Defendant's] alleged misrepresentations and omissions is a question common to all members of the class[.]").

"In nearly all jurisdictions," the question of materiality "call[s] for an evaluation of whether a 'reasonable consumer' or 'reasonable person' likely would consider the information concealed to be important when making a purchasing decision."  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 115 (E.D. Mich. 2019).  New York and Michigan are no exception.  *See id*. (citing *In re Pixley*, 456 B.R. 770, 782 (Bankr. E.D. Mich. 2011) ("'A material fact must be of enough importance in the matter that a reasonable person would be likely to rely on it.'") (quoting Michigan Standard Civil Jury Instruction 128.10) and *Porsch v. LLR, Inc*., 380 F.Supp.3d 418, 428 (S.D.N.Y. 2019) ("LLR's practices are likely to mislead a reasonable consumer and were thus materially misleading.")); *see also Hasemann v. Gerber Prod. Co*., 331 F.R.D. 239, 274 (E.D.N.Y. 2019) ("The materiality of potentially deceptive representations is similarly subject to objective proof."); *Dix v. American Bankers Life Assur. Co. of Florida*, 429 Mich. 410, 415 (1987) (The Michigan Supreme Court held that "members of a class proceeding under the [MCPA] need not individually prove reliance on the alleged misrepresentations.  It is sufficient if the class can establish that a reasonable person would have

relied on the representations.").  The materiality of Peloton's misrepresentations and omissions is thus a common question capable of being answered with class-wide proof for both proposed Classes.

As part of Dr. Dennis's investigation, he conducted a consumer perception survey which included an analysis of the extent to which the Defendant's omission that the on-demand library would not be ever-growing, as alleged by Plaintiffs, was potentially material to consumers' purchasing behavior.  (Dennis Decl. ¶ 85).  He found that "a substantial share of consumers would have considered this information – that is, about the possibility that the number of classes might be reduced – as part of their purchase decision making of the Products."  (*Id.* ¶ 87).

> **b.** **Whether, in light of its representations, Peloton had a duty to disclose that its use of unlicensed music in its on-demand library that may result in the removal of half of its library and when, if Peloton had a duty to disclose, that duty arose, are questions common to all class members that can be proven through common evidence.**

Under both New York and Michigan law, a duty to disclose material facts arises when one party has exclusive knowledge.  *See In re Sling Media Slingbox Adver. Litig*., 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (Omissions are actionable under the NYGBL "'where the business alone possesses material information that is relevant to the consumer and fails to provide this information.'" ); *Gregorio v. Ford Motor Co*., No. 20-11310, 2021 WL 778913, at *6 (E.D. Mich. Mar. 1, 2021) (a duty to disclose can arise when "the defendant has exclusive or superior knowledge of a material fact and such knowledge could not be discovered through reasonable diligence" or "the defendant offers a partial disclosure but suppresses material facts.").  Here, the facts concerning Peloton's music licensing practices and the status of its negotiations with the rights holders were known solely by Peloton.  Peloton has designated information related to these issues as confidential, maintaining that public disclosure of these facts will cause it

competitive harm.  It is simply not the case that some absent class members knew that Peloton was relying on unlicensed music and that it was subject to take down demands.  Likewise, class members did not know that such copyright troubles would lead to Peloton's purge of the class library, nor the significant extent of the purge.  Instead, Peloton's knowledge of these facts will be shown though common evidence.

> **c.    Whether Peloton's misrepresentations and omissions were deceptive is a question common to all class members that can be proven through common evidence.**

Like materiality, under both New York and Michigan law, whether a misrepresentation or omission is deceptive is also determined by an objective standard: whether it is likely to deceive a reasonable consumer.  *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) ("These statutes all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."); *see also, Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015) ("[t]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"); Mich. Comp. Laws Ann. § 445.903(1)(s) (Declaring unlawful "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.").  And because the standard is objective, whether Peloton's misrepresentations or omissions are likely to deceive can be shown through class-wide common evidence.  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y.2014) (holding a common question in a consumer class action brought under the GBL is whether a product's manufacturer "defrauded purchasers" by making a specific claim on the product's label); *de Lacour*, 338 F.R.D. at 337 ("As other courts in this district have held,

whether a label that is uniform across products is false and/or misleading is common to all class members and is apt to drive the resolution of the litigation, because the same generalized evidence will be used to prove plaintiffs' claims."); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405 ("A common question . . . is whether the [] claim is false and/or misleading.  The answer to this question is common to all class members, and is apt to drive the resolution of this litigation.").

Dr. Dennis was able to isolate whether consumers would be deceived by Defendant's representations through consumer survey analysis, quantifying consumers' expectations based on Defendant's representations about an "ever-growing" library.  (Dennis Decl. ¶ 76).  He found that over three quarters (76.5%) of consumers would believe an "ever-growing" library meant it would be increasing over time; this statistical evidence, in his words was "conclusive."  (*Id.* ¶ 77).

> ### d.   Whether Peloton's deceptive conduct injured all class members is a common question across the class that can be proven through common evidence.

Plaintiffs' theory of liability is that Defendant's misrepresentations caused consumers to pay a higher price for its bikes, treads, and subscriptions.  In other words, Plaintiffs allege that all class members were harmed because they paid a premium for an "ever-growing" library that they did not receive.  A plaintiff suffers an injury when "a company marketed a product as having a 'unique quality' ... the marketing allowed the company to charge a price premium for the product, and ... the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality."  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020); *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 526 (E.D. Mich. 2001) (injury under the MCPA is found when the victim does not receive what he expected to receive (*i.e.*, unfulfilled expectations); *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at *14

(S.D. Cal. Sept. 7, 2018) (measure of damages under the MCPA is the difference in value between the product as promised and product as sold).

To determine whether Peloton was able to obtain a premium because its library was marketed as "ever-growing," Plaintiffs' expert, Dr. Dennis, performed a choice-based conjoint survey.  (Dennis Decl. ¶ 19).  This conjoint methodology has been used for decades by academic researchers, industry marketing departments, and government agencies to determine the price premium attributable to particular product attributes, such as label claims.  (*Id*. ¶ 39).

Numerous courts have approved of conjoint analysis as a methodology to determine the price attributable to specific product features. *See, e.g., Bechtel v. Fitness Equip. Svcs., LLC,* No. 1:19-CV-726, 2021 WL 4147766 (S.D. Ohio Sept. 12, 2021) (accepting Weir's conjoint methodology and certifying class); *Sharpe*, 2021 WL 3721392, at *9 (accepting Dr. Dennis's conjoint methodology and certifying class); *de Lacour*, 338 F.R.D. at 345 (accepting Dr. Dennis's and Wier's conjoint analysis and certifying class); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc*., 326 F.R.D. 592, 606 (N.D. Cal. 2018) (accepting Dr. Dennis's and Weir's conjoint analysis methodology and certifying class); *In re Scotts EZ Seed Litig*., 304 F.R.D. at 413–14 (accepting Weir's conjoint analysis methodology and certifying class); *Ebin*, 297 F.R.D. at 571 (accepting Weir's conjoint analysis methodology and certifying class).

Because Plaintiffs allege that all class members paid a premium for a feature they did not receive, whether Peloton's deceptive conduct injured all class members is a common question across the class.  *Ebin* provides an example.  There plaintiff sought to certify a damages class of purchasers of a product labeled "100% olive oil," which was actually pomace. *Ebin*, 297 F.R.D. at 564.  The court found that injury was a common issue subject to class wide proof because all class members, even those who "actively wanted to buy pomace instead of 100% pure olive oil"

suffered an injury: they "paid too much for it." *Id.* at 569; *see also In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir.2013) ("Because all Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class.").

*Kurtz v. Kimberly-Clark Corp.*, provides another example.  There, consumers of flushable wipes brought GBL §§ 349, 350 claims alleging the flushable wipes damage plumbing when flushed.  *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 492-93 (E.D.N.Y. 2017).  Defendant opposed class certification arguing that the existence of a price premium "depends on the purchaser's individual experience with the product after purchase."  *Id.* at 531.  In the defendants' view, unless a class member could establish that her flushable wipe did not flush, she had not been damaged.  *Id.*  Judge Weinstein rejected that premise: "Liability under New York General Business Law §§ 349–350 does not depend on whether class members relied upon the representation when they purchased the flushable wipes, nor does it depend on whether the product met their personal, subjective expectations.  *Id.* at 531 (*citing Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).  Rather, the "injury is the purchase price." *Id.* at 531 (*quoting Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)).  The fact that some "consumers were satisfied with the product is irrelevant."  *Id.* at 531 (*quoting Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 507 (6th Cir. 2015)).  "All consumers who paid a premium price for a mislabeled product are economically injured in the same way without regard to the motivations behind the purchases."  *Id.* at 535.

Accordingly, Judge Weinstein certified a class of purchasers.  On appeal of that certification order, the Second Circuit issued a limited remand for the court to examine whether

Plaintiffs could establish the injury and causation elements of their claims at trial with common evidence. *Kurtz v. Costco Wholesale Corp.*, 768 F. App'x 39, 41 (2d Cir. 2019) (summary order). On remand, Plaintiffs submitted the expert report of Colin Weir to support their contention that there is a market-wide price premium attributable to the flushable label on toilet wipes, and that every New York consumer paid a percentage amount more for flushable toilet wipes as a result of this characterization. *Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 326 (E.D.N.Y. 2019). Judge Weinstein found that Mr. Weir's report sufficiently demonstrated that common evidence can prove both causation and injury. *Id.* at 333. In the subsequent appeal, the Second Circuit agreed and affirmed certification of the Rule 23(b)(3) certification. *Kurtz v. Costco Wholesale Corp.*, No. 17-cv-1856, 2020 WL 3480830, at *4 (2d Cir. June 26, 2020) (summary order).

This case is no different. Dr. Dennis's and Weir's reports support Plaintiffs' contention that there is a price premium attributable to Peloton's misrepresentations and omissions that can be shown with class-wide evidence.

### e. Class-wide damages can be established using common proof.

Finally, both Classes' damages are capable of measurement on a class-wide basis. Plaintiffs' method for calculating damages on a class-wide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory." *Comcast Corp. v. Behrend,* 569 U.S. 27, 35 (2013). Damages in consumer liability cases are measured by the difference between what the plaintiff paid and the value of what the plaintiff received. *In re Kind*, 337 F.R.D. at 603; *Clay*, 2018 WL 4283032, at *14 (*citing Mayhall v. A.H. Pond Co., Inc.*, 341 N.W.2d 268, 271-72 (Mich. Ct. App. 1983)). Plaintiffs must, therefore, propose one or more damages models that take into account the value of the product, its deceptive advertising, and the

amount they paid for each product.  *Id*.  Here, as discussed above, Plaintiffs and the other members of both the New York and Michigan Classes were injured due to their purchases of Peloton's bikes, treads, and membership subscriptions that Peloton advertised as including an "ever-growing" and "growing" on-demand class library.

Proof of damages for claims under the NYGBL will be very simple, where Section 349(h) provides for the recovery of "actual damages or fifty dollars, whichever is greater," and Section 350(E)(3) provides for the recovery of "actual damages or $500, whichever is greater."  Thus, while the conjoint analysis from Dr. Dennis and Mr. Weir establishes the price premium that each class member paid for the "ever-growing" or "growing" library, (Dennis Decl. ¶¶ 66-68; Weir Decl. ¶ 38), class-wide damages under NYGBL is tied to the statutory damages provided by the NYGBL, rather than the actual damages.

The Michigan Class members were damaged in the amount of the price premium caused by Defendant's deceptive "ever-growing" representations.  The measure of that economic impact on the retail prices of Peloton's products and services caused by Peloton's deceptive acts and practices is a question common to all members of both Classes that will be answered with common, as opposed to individualized proof.  (Weir Decl. ¶¶ 62-66).

* * *

Other common questions susceptible to class-wide evidence abound, including whether Peloton's representations are non-actionable puffery, to what extent Peloton advertised its library as "ever-growing" and "growing", and whether Peloton's Terms of Service excuses its deceptive conduct.  Each of these issues are subject to class-wide proof.  Plaintiffs have satisfied Rule 23's commonality requirement.

### 3.     Rule 23(a)(3): Plaintiffs' claims are typical of class members' claims.

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of other class members' claims. Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux,* 987 F.2d at 936-37.  The typicality requirement, like commonality, is "not demanding" because "the claims only need to share the same essential characteristics, and need not be identical."  *In re Kind,* 337 F.R.D. at 595 (internal quotations and citations omitted).

Here, Plaintiff Fishon's and Plaintiff Pearlman's claims are typical of the claims of the other Class members they respectively seek to represent.  Like all class members, they paid for Peloton hardware, and then continued to pay for subscription membership during the Class period, during which time Peloton represented that its on-demand class library would be "ever growing."  SAC ¶¶ 35, 37, 73-77, 101-102; *see also* Dravillas Decl. Ex. 27, Dep. Tran. Fishon 237:15-18; Dravillas Decl. Ex. 28, Dep. Tran. Pearlman 135:17-18.  Whenever a defendant uses deceptive advertising to inflate a product's price, any consumer who purchases that product has been harmed in the same manner, and by the same conduct, as any other consumer.  *de Lacour*, 338 F.R.D. at 337 (citing *Ebin*, 297 F.R.D. at 565-66 and *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406).

Also like commonality, the typicality requirement is readily satisfied in false-advertising class actions like this one, in large part because the differences in the specific purchase experiences of the named plaintiffs relative to the other class members do not defeat typicality.

*See, e.g., Price v. L'Oreal USA, Inc.*, No. 17 CIV. 614 (LGS), 2018 WL 3869896, at *4

(S.D.N.Y. Aug. 15, 2018) (that the named plaintiffs may not have relied on the challenged claim

in making their purchasing decisions does not defeat typicality, because NYGBL claims do not

include actual reliance as an element); *In re Kind,* 337 F.R.D. at 595 ("Even if a named Plaintiff

did not see all of the label variants, the typicality requirement would still be met"); *Dial Corp. v.*

*News Corp.*, 314 F.R.D. 108, 114 (S.D.N.Y. 2015) ("[d]ifferences in amounts or characteristics

of the class representatives' purchases do not defeat typicality"); *In re Sumitomo Copper Litig.*,

182 F.R.D. 85, 94 (S.D.N.Y. 1998) ("[T]he simple fact that Class members may have purchased

and sold copper futures at different times, for different purposes" does not defeat typicality);

*Gilkey*, 202 F.R.D. at 524 ("Since none of the distinctions Defendants' raise have any bearing on

whether Plaintiff is typical with respect to the central legal issues he seeks class certification of,

Defendants' claim that Plaintiff is atypical should be rejected[.]").

### 4.      Rule 23(a)(4): Plaintiffs will adequately represent the Classes.

Rule 23(a)(4) requires that the representative parties "will fairly and adequately protect

the interests of the class."  To be adequate, the named plaintiffs must be free from fundamental

conflicts of interest and possess the ability and incentive to vigorously prosecute the action.

*Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019); *In re Literary Works in Elec. Databases*

*Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) ("the proposed class representative must have

an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic

to the interests of other class members.").  Only fundamental conflicts will render a

representative inadequate (and even then, the conflict may be cured by dividing a class into

subclasses).  *Charron v. Wiener*, 731 F.3d 241, 249-250 (2d Cir. 2013) (internal quotation omitted).[7]

Here, Plaintiffs share the same interests as the absent class members.  Mr. Fishon is a member of the New York Class.  He is a resident of New York, where he bought his Peloton bike, bought his Peloton tread, and continuously paid his Peloton membership subscription in 2018, all while Peloton was representing its on-demand library as "ever-growing" and "growing."  Dep. Tran. Fishon 11:12-13, 198:24-199:3, 236:22-237:6.  He seeks damages—both individually and on behalf of all other New York Class members—resulting from that misrepresentation and from Peloton's failure to disclose that it knew it would likely have to remove a substantial number of its on-demand classes due to its use of unlicensed music for the classes in its on-demand class library.  Dep. Tran. Fishon 75:10-13.  Ms. Pearlman is a member of the Michigan Class where she resides, and she purchased a bike and membership subscription in 2018 when Peloton was representing its on-demand library as "ever-growing" and "growing." Dep. Tran. Pearlman 61:7-11.  There are no fundamental conflicts between Plaintiffs and the respective Classes they seek to represent.

---

[7] Courts have historically evaluated whether class counsel are qualified, experienced, and generally able to conduct the litigation under Rule 23(a)(4).  *In re Kind,* 337 F.R.D. at 596 (citing *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)).  However, the 2003 Amendments to Rule 23 shifted the evaluation of adequacy of counsel to Rule 23(g). *Kalish v. Karp & Kalamotousakis, LLP,* 246 F.R.D. 461, 463 (S.D.N.Y. 2007).  "As noted in the Advisory Committee's Notes to the 2003 Amendments, 'Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision.' Thus, adequacy of class counsel is now properly considered under Rule 23(g), rather than Rule 23(a)(4)."  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004). That factor is thus evaluated in the following section.

Further, both Mr. Fishon and Ms. Pearlman have demonstrated their commitment to actively participating in this case. They have each sat for lengthy depositions, reviewed and commented on pleadings, responded to extensive written discovery requests, reviewed and assisted in responding to interrogatories and requests for admission, and maintained frequent contact with Plaintiffs' counsel regarding the status of the case. Dep. Tran. Pearlman 50:11-52:4; Dep. Tran. Fishon 155:14-24. Notably, both Plaintiffs testified that they will continue to vigorously pursue the claims of the Classes and not just their individual interests. Dep. Tran. Pearlman 33:4-10; 33:22-34:11; Dep. Tran. Fishon 152:5-153:1. Both Plaintiffs understand their responsibilities to the Classes going forward and are available to see this action through to its end. *Id.* Both Plaintiffs are adequate representors of the Proposed Classes.

### B. The Proposed Classes Satisfy Rule 23(b)(3)

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 125 (S.D.N.Y. 2014). Under Rule 23(b)(3), the Court may authorize class certification where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both requirements are met here.

### 1. Common questions of fact and law predominate over questions affecting individual class members in both Proposed Classes.

The predominance inquiry asks whether Rule 23(a)(2)'s common questions that can be proven by class-wide evidence "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. Predominance is satisfied when the common, class-wide issues are "more substantial than the issues subject only

to individualized proof." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (internal quotation omitted).

Here, the predominant issues, as discussed above, do not require individualized determinations but instead are best resolved through generalized proof applicable to each class member. The critical question that will drive resolution of this litigation is whether Peloton's representations of its on-demand class library as "ever-growing" and "growing" are deceptive. Peloton made these representations in its nationwide advertising, on its website, and through email, radio podcasts, and creative design initiatives. Dep. Tran. Dillon-Curran 103:3-9; Dravillas Decl. Ex. 9 [PELFISH0119211]; Dravillas Decl. Ex. 10 [PELFISH0128455]; Dravillas Decl. Ex. 11 [PELFISH0254457]; Dravillas Decl. Ex. 12 [PELFISH0254467]; Dravillas Decl. Ex. 22 [PELFISH0031198]; Dravillas Decl. Ex. 29 [PELFISH0300991-94]; Dravillas Decl. Ex. 30 [PELFISH0027529]; Dravillas Decl. Ex. 31 [PELFISH0027676-77]; Dravillas Decl. Ex. 32 [PELFISH0255306-07]; Dravillas Decl. Ex. 33 [PELFISH0078574]; Dravillas Decl. Ex. 34 [PELFISH0078677]; Dravillas Decl. Ex. 35 [PELFISH0268562]. As discussed above, whether those representations were false and deceptive will be determined though an objective standard, and on a class-wide basis. Already, Plaintiffs' expert Dr. Dennis has determined that "[t]he statistical evidence is conclusive that consumers perceived the challenged representation to mean that the number of classes in the library would increase over time." (Dennis Decl. ¶ 77).

Likewise, questions regarding the materiality of Peloton's representation are also governed by objective standards that can be shown class-wide. Dr. Dennis's study shows that "[t]he statistical evidence is conclusive that a substantial share of consumers would have considered this information – that is, about the possibility that the number of classes might be reduced – as part of their purchase decision making of the [Defendant's] Products." (*Id.* ¶ 87).

Because Plaintiffs' claims are premised on Peloton's uniform conduct and based on statutes that measure their compliance though objective standards, there are few, if any, individual questions that could be raised here.  But regardless of what individual issues Peloton might attempt to identify, the common factual and legal questions are so important that they predominate over any individual questions.

That Plaintiffs seek to hold Defendant accountable to multiple statewide classes under those states' laws poses no bar to certification.  *See, e.g., Roseman v. Bloomberg L.P.*, No. 14CV2657 (DLC), 2017 WL 4280602, at *2 (S.D.N.Y. Sept. 25, 2017) (certifying both a New York and California class for violations of their respective state laws); *Price v. L'Oreal USA, Inc.*, No. 17 CIV. 614 (LGS), 2018 WL 3869896, at *11-12 (S.D.N.Y. Aug. 15, 2018) (same); *In re Kind LLC*, 337 F.R.D. at 610 (certifying New York, Florida, and California classes for violations of their respective state laws).  Further, though Plaintiff Fishon's and Plaintiff Pearlman's claims are subject to different statutory regimes, each Plaintiff's claims can be established through common proof.

> **a.      Plaintiff Fishon's NYGBL claims are readily susceptible to class-wide adjudication.**

Plaintiff Fishon alleges violations of N.Y. Gen. Bus. Law §§ 349 and 350 on behalf of a Class of individuals who purchased Peloton's bikes, treads, and membership subscriptions.  SAC ¶¶111-171.  As Judge Briccetti held in *In re Scotts EZ Seed Litig.*, "Plaintiffs' GBL claims thus depend on generalized evidence.  304 F.R.D. at 409.  Neither Sections 349 nor 350 require proof of reliance from Plaintiffs or class members nor do they require proof that Peloton intended to mislead consumers.  *See id.* (citing *Koch v. Ackert, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).

Plaintiffs anticipate that Peloton will oppose class certification by contending that, in order to establish causation, Plaintiffs will need to demonstrate that they and the other class members must have seen Peloton's promises of an "ever-growing" and "growing" library of classes in order to prove causation.  But as other Courts have found, such an argument merely tries to impose a reliance requirement (which Plaintiffs need not show) by another name. *Sharpe*, 2021 WL 3721392, at *4.  ("The argument is another attempt to sneak in reliance. Where, as here, 'the consumer protection statute at issue supplies an objective test,' the claims are 'ideal for class certification' because liability turns on what a reasonable consumer, not a particular consumer, would do."). Because Plaintiffs' claims do not require reliance, liability "does not depend on whether class members relied upon the [mis]representation when they purchased the [product at issue], nor does it depend on whether the product met their personal, subjective expectations." *Id.* at *2 (*quoting Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017)).

As this Court previously recognized, "[t]he proposition that a plaintiff must allege in her complaint that she saw a deceptive statement in order to allege that statement caused her injury, however . . . appears not to be a complete or correct statement of law. *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 6564755, at *8–10 (S.D.N.Y. Nov. 9, 2020).  That is because, "[w]hile an allegation that the plaintiff saw the misleading advertisement *is sufficient* to plead the "by reason of" requirement, *it is not necessary*." *Id*. (emphasis added).

Because reliance is not an element of a claim under GBL § 349 or § 350, "[t]here is no requirement that a plaintiff show that a misrepresentation "had any effect on plaintiff's decision." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, 731 N.E.2d 608, 612 (2000).  For the same reason, Plaintiffs don't need to show that all absent class members were exposed to Peloton's

misrepresentation. *Hasemann*, 331 F.R.D. at 274 ("[S]ections 349 and 350 of the GBL do not contain a viewing requirement or a reliance requirement, nor do they require individual determination of how a particular advertisement affected each putative class member."). All class members were injured by the price premium they paid at the time of sale. The price premium attributable to Peloton's misrepresentations remained the same for the entire class whether they saw the representation or not.

> [A] deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. Thus, even if an individual consumer does not rely on a deceptive practice when deciding to purchase that product, the consumer will have paid more for the product than she otherwise would have. Consequently, the consumer suffers damages.

*Id.* at 263 (*quoting Nelson v. Mead Johnson Nutrition Co*., 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010)).

### b.    Plaintiff Pearlman's MCPA claims are readily susceptible to class-wide adjudication.

Like the NYGBL claims, Michigan law generally "does not require any proof of actual reliance" for a fraudulent omission but instead "merely requires an intent, on the part of the defendant, to induce reliance on nondisclosure." *Starr v. VSL Pharms., Inc*., 509 F. Supp. 3d 417, 452 (D. Md. 2020) (*quoting Gasperoni v. Metabolife, Int'l Inc*., No. 00-71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000); *see also Papazian v. Lichtman*, No. 180755, 1996 WL 33359823, at *4 (Mich. Ct. App. Sept. 6, 1996) (noting that the language of section 445.903(1)(s) is "practically identical" to a claim of fraudulent nondisclosure).

Although reliance is an element of a MCPA claim based on a misrepresentation, Michigan law allows for reliance proven through class-wide evidence, allowing it to be inferred when Plaintiff can show that "a reasonable person would have relied on the representations."

*Dix*, 429 Mich. at 418 (noting that a class "need not individually prove reliance" and that "a defendant's intent to deceive through a pattern of misrepresentations can be shown on a representative basis"); "); *Clay*, 2018 WL 4283032, at \*14 (citing and discussing *Dix* in the context of how individual proof of reliance is unnecessary to the MCPA analysis; certifying MCPA claims); *Bobbitt v. Acad. of Ct. Reporting, Inc.*, 252 F.R.D. 327, 341 (E.D. Mich. 2008) (citing *Dix* to say "a statutory misrepresentation claim under the MCPA does not require a showing of reliance"; finding predominance satisfied). Indeed, under the MCPA, "'reliance and causation are satisfied by proof that plaintiffs purchased and consumed the product.'" *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 226 (S.D.N.Y. 2012) (quoting *Gasperoni*, 2000 WL 33365948, at \*7).

Dr. Dennis created a blind research questionnaire that collected data online from over 1,000 interviewees, designed in accordance with conjoint survey best practices. (Dennis Decl. ¶¶ 46, 53, 54, 59). The questionnaire had been pretested and its research objectives disguised. (*Id.* ¶¶ 55, 57). Consumer perceptions were analyzed while avoiding the potential risk of focalism bias that could have introduced bias into the conjoint survey. (*Id.* ¶ 74). He discovered that "[a] substantial majority of consumers expected the number of classes in the library to increase over time because of the challenged "ever-growing library" representation." (*Id.* ¶ 77). In fact, the statistical evidence was "conclusive that consumers perceived the challenged representation to mean that the number of classes in the library would increase over time." (*Id.*). Because it is "sufficient if the class can establish that a reasonable person would have relied on [Peloton's] representations," Plaintiff Pearlman's Michigan claims do not raise individual issues. *Dix*, 429 Mich. at 418.

Because Plaintiffs' claims are premised on Defendant's uniform conduct and based on statutes that measure Defendant's compliance (or lack thereof) though objective standards, there are few if any individual questions that could be raised here.  More importantly, however, given the large number and significant importance of the class-wide issues presented in the action, it is clear that common issues predominate over any potential individual issues.

### 2.     Class action is superior to other methods of adjudication.

Resolving Plaintiffs' claims on a class basis is superior to litigating thousands of individual actions.  It would cost class members much more to litigate an individual lawsuit than they could recover in damages.  Moreover, when thousands of Peloton's customers filed arbitration demands seeking redress for Peloton's conduct, Peloton refused to pay the required arbitration fees, and the American Arbitration Association wrote a letter to Peloton declining to administer the arbitrations, stating that either party may submit its dispute to an appropriate court, and declined to accept future consumer matters submitted by or against Peloton.  SAC ¶¶ 49-57.

Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions."  *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010); *see also Price*, 2018 WL 3869896, at *11 ("Consumer class actions of this variety, designed to recover relatively small price premiums in comparison to the expense and burden of litigation, are clearly superior to the alternative of forcing consumers to litigate on principle.").  The relatively small amount at issue for each class member renders individual litigation infeasible, but a class action offers the potential for meaningful redress to the Classes.  Moreover, judicial resources would be conserved by concentrating the action in a single suit.  Finally, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually, whereas the

prosecution of individual remedies could establish inconsistent standards of conduct for Peloton. Simply put, certification is appropriate, because this case can be tried in an efficient manner on a class-wide basis. *See de Lacour*, 338 F.R.D. at 345-46 (finding class action treatment superior); *In re Kind*, 2021 WL 1132147, at *18 (same); *Price*, 2018 WL 3869896, at *11 (same).

> C.    **The proposed class meets the ascertainability requirement.**

Although absent from the text of Rule 23, courts in this Circuit have recognized an "implied requirement of ascertainability." *Ebin*, 297 F.R.D. at 572 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).  The Second Circuit has made clear that ascertainability only requires a class to be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264–65 (2d Cir. 2017).  "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269.  The Court also expressly "decline[d] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage." *Id.* at 265.  Plaintiffs merely must demonstrate the ability to identify individuals who purchased the products at issue over the class period and employ a reasonable method to prove their purchase and ownership of those products. *In re Kind*, 337 F.R.D. at 596.

The Second Circuit's implied ascertainability requirement is readily met here.  Here, the proposed class is limited to those consumers who paid for Peloton's bikes, treads, and membership subscriptions during the class period.  Class membership is thus based on the objective criteria of whether consumers made such purchases during a discrete time period.  In other words, class membership is not based on any subjective factors or indefinite boundaries. Class membership can readily be acquired from Peloton's own records, such as purchase orders

31

and membership subscription records.[8]  *See generally Hasemann*, 331 F.R.D. at 270-71 (citing

the "[m]any recent false advertising cases [that] found proposed classes to be ascertainable, even

where affidavits would likely be needed," but ultimately concluding that "the Second Circuit has

now clarified, in *Petrobras*, [that administrative feasibility] is not necessary to assess at the class

certification stage"); *see also In re Kind*, 337 F.R.D. at 596-97 (discussing how "there are ample

reasons for courts to certify a class without requiring members to provide a receipt," because

otherwise manufacturers and distributors of consumables "could escape liability").  Thus, the

proposed Class can be readily identified and is ascertainable.

### D.    Class Counsel Satisfy Rule 23(g)'s Adequacy Requirements.

Although class counsel's adequacy has historically been evaluated under a Rule 23(a)(4)

analysis, *In re Kind,* 337 F.R.D. at 596, the 2003 Amendments to Rule 23 shifted the court's

examination of the adequacy of counsel to coincide with its new duty to appoint class counsel

under Rule 23(g).  *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y.

2007).  "As noted in the Advisory Committee's Notes to the 2003 Amendments, 'Rule 23(a)(4)

will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will

guide the court in assessing proposed class counsel as part of the certification decision.'  Thus,

adequacy of class counsel is now properly considered under Rule 23(g), rather than Rule

23(a)(4)."  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 & n.74 (S.D.N.Y. 2004).

Under Rule 23(g), the Court must consider (1) the work counsel has done, (2) counsel's

experience handling class actions and other complex litigation, as well as the types of claims

---

[8] *See, e.g.*, Plaintiff Fishon's purchase orders for his bike and tread, respectively, which also list
his membership subscription fees.  Dravillas Decl. Ex. 36 [PELFISH0014241]; Dravillas Decl.
Ex. 37 [PELFISH0014279].

asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(i)-(iv). All four factors demonstrate class counsel's adequacy here. Class counsel have pursued this litigation since December 2019, fending off motions to dismiss, *Fishon*, 2020 WL 6564755, at *14, challenging the adequacy of Peloton's discovery and forcing Peloton to recommit to its discovery obligations, ECF No. 94, reviewing tens of thousands of documents, and deposing multiple current and former Peloton employees. *See* Declarations of Adam Levitt, Aaron Zigler, and Benjamin Whiting (detailing the work done on this case since Dec. 2019). Plaintiffs' class action counsel come from DiCello Levitt Gutzler LLC, Keller Lenkner LLC, and Zigler Law Group, LLC and bring to this litigation extensive experience and knowledge from litigating consumer class action claims like these. *See id.* (each firm's resume, detailing leadership in numerous class actions and recoveries for consumers in the billions of dollars). And each firm has and will dedicate significant resources to representing the class, including so far the costs associated with designing and conducting a conjoint survey as well as two expert reports. (Dennis Decl. ¶ 2; Weir Decl. ¶ 7). Class counsel has been vigorously litigating this case since before they filed the complaint and will continue to do so through final resolution. If appointed as Class Counsel, they will continue to adequately serve the needs of the Classes.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for class certification, certifying the proposed Classes, appointing Mr. Fishon and Ms. Pearlman as Class Representatives, and appointing the undersigned firms as Class Counsel.

Dated:  September 15, 2021

/s/ Benjamin J. Whiting
BENJAMIN J. WHITING
ben.whiting@kellerlenkner.com
ASHLEY C. KELLER (*pro hac vice*)
ack@kellerlenkner.com
ALEX J. DRAVILLAS (*pro hac vice* to be sought)
ajd@kellerlenkner.com
**KELLER LENKNER LLC**
150 North Riverside Plaza, Suite 4270
Chicago, Illinois 60606
Telephone: (312) 741-5222

ADAM J. LEVITT (*pro hac vice*)
alevitt@dicellolevitt.com
ADAM PROM (*pro hac vice*)
aprom@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Greg G. Gutzler
ggutzler@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
60 East 42nd Street, Suite 2400
New York, New York 10165
Telephone: (646) 933-1000

AARON M. ZIGLER
aaron@ziglerlawgroup.com
**ZIGLER LAW GROUP, LLC**
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
Telephone: (312) 673-8427

***Counsel for Plaintiffs and the Proposed Classes***

34