UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC FISHON and ALICIA PEARLMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PELOTON INTERACTIVE, INC., <br><br> Defendant. | Civil Action No. 1:19-cv-11711 (LJL) <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PELOTON INTERACTIVE, INC.'S
MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS**

LATHAM & WATKINS LLP
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant
Peloton Interactive, Inc.*

October 15, 2021

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

      A.      Dr. Dennis' Perception Survey and Price Premium Analysis................................3
            1.     The Perception Survey..................................................................3
            2.     The Price Premium Analysis. ......................................................4
      B.      Mr. Weir's Damages Model. ................................................................5

LEGAL STANDARD..................................................................................................................6

ARGUMENT...............................................................................................................................6

I.      DR. DENNIS' AND MR. WEIR'S OPINIONS ARE NOT HELPFUL TO THE
       TRIER OF FACT AND ARE THEREFORE IRRELEVANT...........................................6

      A.      Dr. Dennis' Conjoint Survey Does Not Calculate a Price Premium
           Associated with Peloton's Alleged Misrepresentation. ...............................................7
      B.      Dr. Dennis' Price Premium Analysis Relies on the False Assumption that
           All Class Members Were Exposed to "Ever-Growing Library of Classes." ............10
      C.      Dr. Dennis Does Not Measure a Price Premium Because Neither He Nor
           Mr. Weir Incorporated Supply-Side Factors in the Conjoint Analysis....................13
      D.      Dr. Weir Does Not Offer Testimony Beyond the Ken of the Average Juror. ..........16

II.     DR. DENNIS AND MR. WEIR'S REPORTS ARE UNRELIABLE. ..............................17

      A.      Dr. Dennis' Report Suffers from Critical Design and Implementation Flaws. ........17
      B.      Mr. Weir's Report Should Be Excluded Because It Derives from Dr.
           Dennis' Flawed Analysis. ........................................................................21
      C.      Dr. Dennis' and Mr. Weir's Damages Model Does Not Fit the Real World...........23

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)................................................................17

*Bowling v. Johnson & Johnson*,
2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019)...........................................10

*Brenner v. Procter & Gamble Co.*,
2016 WL 8192946 (C.D. Cal. Oct. 20, 2016)...........................................11

*CCM Rochester, Inc. v. Federated Invs., Inc.*,
2016 WL 11617452 (S.D.N.Y. Aug. 31, 2016)..........................................16

*Chart v. Town of Parma*,
2014 WL 4923166 (W.D.N.Y. Sept. 30, 2014) ...........................................6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).........................................................................6, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................. *passim*

*Dzielak v. Whirlpool Corp.*,
2017 WL 6513347 (D.N.J. Dec. 20, 2017)...............................................10

*Fate v. Vill. of Spring Valley*,
2013 WL 2649548 (S.D.N.Y. June 13, 2013) .............................................6

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
2015 WL 539489 (S.D.N.Y. Feb. 10, 2015)..............................................21

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018).........................................................11

*Forte v. Liquidnet Holdings, Inc.*,
675 F. App'x 21 (2d Cir. 2017) ...........................................................22

*FPP, LLC v. Xaxis US, LLC*,
2017 WL 11456572 (S.D.N.Y. Feb. 13, 2017)..........................................16

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014).........................................................22

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ........................................................................20

*In re General Motors Ignition Switch Litigation*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) ..................................................................13, 15, 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ....................................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
500 F. Supp. 3d 940 (N.D. Cal. 2020) ..............................................................................13, 15

*MacDougall v. Am. Honda Motor Co.*,
2020 WL 5583534 (C.D. Cal. Sept. 11, 2020) ....................................................................14

*Maeda v. Kennedy Endeavors, Inc.*,
2021 WL 2582574 (D. Haw. June 23, 2021) ......................................................................24

*McMorrow v. Mondelez Int'l, Inc.*,
2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ............................................................... *passim*

*McMorrow v. Mondelez Int'l, Inc.*,
2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ........................................................................10

*In re Namenda Indirect Purchaser Antitrust Litig.*,
2021 WL 100489 (S.D.N.Y. Jan. 12, 2021) ..........................................................................6

*Price v. L'Oreal United States*,
2021 WL 4459115 (S.D.N.Y. Sept. 29, 2021) ............................................................ *passim*

*Schechner v. Whirlpool Corp.*,
2019 WL 4891192 (E.D. Mich. Aug. 13, 2019) ......................................................14, 15, 16

*Schwartz v. Fortune Magazine*,
193 F.R.D. 144 (S.D.N.Y. 2000) ........................................................................................17

*Sharpe v. A&W Concentrate Co.*,
2021 WL 3721392 (E.D.N.Y. July 23, 2021) ......................................................................10

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ......................................................................17

*Weaver v. Champion Petfoods USA Inc.*,
2019 WL 7370374 (E.D. Wis. Dec. 31, 2019) ....................................................................21

*Weiner v. Snapple Beverage Corp.*,
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ......................................................................23

**RULES**

Fed. R. Evid. 702 .................................................................................................................6

Peloton Interactive, Inc. ("<u>Peloton</u>") respectfully submits this memorandum of law in support of its motion to exclude the testimony of J. Michael Dennis, Ph.D. and Colin B. Weir.[1]

## PRELIMINARY STATEMENT

Plaintiffs tell the Court that Dr. Dennis' and Mr. Weir's price premium analysis and damages calculations are routinely accepted by courts in consumer class action cases. In reality, their analysis has been rejected in a number of cases where they make exactly the same mistakes that they make here. In any event, it is not an appropriate fit for the facts of this case.

<u>First</u>, their damages model does not and cannot calculate a price premium associated with the alleged misrepresentation; indeed, it does not calculate a price premium at all. Dr. Dennis never isolated and tested the impact of the allegedly misleading characterization—"evergrowing"—and, by his own admission, ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Moreover, his purported "price premium" is not a price premium at all. Having failed to appropriately account for supply-side considerations consistent with basic economic principles, Dr. Dennis calculates, at best, consumers' "willingness to pay" for certain product features and not their price (or any premium on that price).

<u>Second</u>, Dr. Dennis and Mr. Weir incorrectly assumed that all class members were uniformly exposed to the "ever-growing" description of Peloton's class library. That may be a justifiable assumption in a case where the misleading statement appeared on product labeling—which is the type of case where Dr. Dennis and Mr. Weir typically offer their price premium analyses. Here, it is contrary to the facts and Plaintiffs' own contentions. Thus, all Dr. Dennis

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to the exhibits attached to the declaration of Megan A. Behrman filed concurrently with this Motion.

and Mr. Weir have done is analyze a hypothetical world that is divorced from the actual facts of this case.  That analysis is therefore subject to exclusion under the "fit" prong of *Daubert*.

Third, the opinions proffered by Dr. Dennis and Mr. Weir are inherently unreliable.  Dr. Dennis' surveys suffer from critical design and implementation flaws because, among other things, they fail to comply with what Dr. Dennis himself has told multiple courts are best survey practices.  Mr. Weir's damages calculations then rely entirely on Dr. Dennis' flawed price premium and do not require "expertise" beyond third-grade arithmetic.  And to the extent that there is any question about whether it would be reasonable to rely on Dr. Dennis' and Mr. Weir's work, that question is answered by the fact that their opinions are inconsistent with undisputed real-world facts.

For the foregoing reasons, the testimony of Dr. Dennis and Mr. Weir should be excluded.

## FACTUAL BACKGROUND[2]

Plaintiffs' class-wide theory of liability is that Peloton misleadingly described its library of on-demand and live classes as "ever-growing."  ECF No. 119 (the "Mot."), at 1, 9; ECF No. 106 (the "SAC") ¶¶ 1, 13-17.  Their theory of damages is that all class members paid a price premium on Peloton Products—the Peloton Bike (the "Bike"), Peloton Treadmill (the "Tread"), and Membership subscription (the "Membership")—as a result of that alleged misrepresentation.  Mot. at 16-17.  To support that theory, Plaintiffs offer:  (1) Dr. Dennis, who was tasked with conducting a "survey to measure the extent to which Peloton's 'ever-growing library' claim was material to consumers, whether the claim resulted in a price premium to be paid by consumers, and if so, the amount of that premium," *id.* at 6, and (2) Mr. Weir, who opines on "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] For a summary of the factual background of the case, Peloton respectfully refers to the Court to its Opposition to Plaintiffs' Motion for Class Certification (the "Opposition"), filed concurrently with this Motion.  The following, in the interest of efficiency, focuses only on the work performed by Dr. Dennis and Mr. Weir.

███████████████████████████████████████████████████

█████████████████ ECF No. 121 (the "Weir Rep.") ¶ 6.

**A.    Dr. Dennis' Perception Survey and Price Premium Analysis.**

    1.    *The Perception Survey.*

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ ECF No. 120 (the "Dennis Rep.") ¶¶ 18, 83, 93.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████. *See id.* ¶ 76. ████████████████████. *Id.*

███████████████████████████████████████████████████

███████████████████████████████████████. *See id.* ¶¶ 85,

86.   The survey *did not* purport to measure whether "ever-growing library" was material to consumers' decision to purchase Peloton Products.

    Dr. Dennis opines that ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████ *Id.* ¶¶ 93-94.   The actual survey results reflect that: ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 78, 83, 87; Ex. 38, Dennis

Dep. Tr. 212:2-216:23.

2.    *The Price Premium Analysis.*

Dr. Dennis' ███████████████████████████████████████████

█████████████████████████████████████████. Dennis Rep. ¶¶ 35, 43,

60. Dr. Dennis █████████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 51. ████████████████

█████████████████████████████████████████████████████████

███████████████████" *Id.* ████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████ *Id.* ████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ Declaration of Joel H. Steckel, Ph.D. ("Steckel Rep.") ¶ 25.

█████████████████████████████████████████████████████████

████████████████████████████. Ex. 38, Dennis Dep. Tr. 147:18-148:7; *id.* at

128:15-130:4. ██████████████████████████████████ (**Figure 1**):



Dennis Rep., Attachment D, at 37.

Dr. Dennis then █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ Ex. 38, Dennis Dep. Tr. 84:11-85:3.  Dr. Dennis claims his analysis allowed him to

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Dennis Rep. ¶ 19.  He testified that ████████████████

████████████████████████████████████████████████████████████

███████████. *See* Ex. 38, Dennis Dep. Tr. 82:2-18.

**B.      Mr. Weir's Damages Model.**

Mr. Weir proposes a "███████████████████████████████████████████

███████████ Weir Rep. ¶¶ 55-57.  Mr. Weir's "████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶ 51-57.  Mr. Weir also proposes a ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶¶ 58-61.

Mr. Weir further states that he ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ *id.* ¶¶ 32-38, and that ████████████████████

████████████████████████████████████████████████████████████

*Id.* ¶¶ 39-50.  He confines these latter opinions to being from "██████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████. Ex. 41, Weir Dep. Tr. 74:18-76:15, 85:6-14.

## **LEGAL STANDARD**

To be admissible under Rule 702 and *Daubert*, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 591-93 (1993). "[T]he heavy weight of authority militat[es] towards a *Daubert* inquiry at class certification." *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 100489, at *8 (S.D.N.Y. Jan. 12, 2021) (McMahon, J.) (collecting cases); *see also id.* at *7 ("This Court is persuaded that a complete *Daubert* inquiry is necessary to analyzing a motion to exclude at the class-certification stage, and that only expert reports that would otherwise be admissible at trial under *Daubert* can be considered in support of class certification"). At class certification, the *Daubert* "inquiry is guided by the purpose for which the evidence is introduced—establishing the various class certification requirements." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 471 (S.D.N.Y. 2018). The "proponent of the expert testimony must prove by a preponderance of the evidence" that the standards imposed by Rule 702 and *Daubert* are met. *Fate v. Vill. of Spring Valley*, 2013 WL 2649548, at *3 (S.D.N.Y. June 13, 2013).

## **ARGUMENT**

**I.     DR. DENNIS' AND MR. WEIR'S OPINIONS ARE NOT HELPFUL TO THE TRIER OF FACT AND ARE THEREFORE IRRELEVANT.**

To be relevant, expert testimony must be grounded in the facts of the case. Fed. R. Evid. 702. Expert opinions are not helpful to the trier of fact, and therefore not admissible, if they do not "fit" the facts of the case. *Daubert*, 509 U.S. at 590-92; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (to be relevant in a class action, a damages expert's opinions must align with the plaintiffs' theory of liability); *Chart v. Town of Parma*, 2014 WL 4923166, at *13

(W.D.N.Y. Sept. 30, 2014) ("[I]f an expert opinion is based upon assumptions that are not present in the case, the opinion cannot be said to assist the trier of fact as Rule 702 requires").

### A. Dr. Dennis' Conjoint Survey Does Not Calculate a Price Premium Associated with Peloton's Alleged Misrepresentation.

A threshold question for this Court is whether Dr. Dennis measured the "price premium" associated with the allegedly misleading statement that gives rise to Plaintiffs' claims. "[A] model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiff's] theory." *Price v. L'Oreal United States*, 2021 WL 4459115, at *4 (S.D.N.Y. Sept. 29, 2021) (Schofield, J.) (citing *Comcast*, 569 U.S. at 35). "Courts routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement." *Id.*; *see also McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191, at *1 n.2 (S.D. Cal. Mar. 9, 2020) (granting motion to exclude Dr. Dennis' and Mr. Weir's testimony as "not relevant" where "Plaintiffs' damages model . . . does not measure only the damages attributable to their liability theory").

The only claim that Plaintiffs challenge is Peloton's description of its class library as "ever-growing" or "growing." Mot. at 1. Plaintiffs do not allege that any other description or characteristic of Peloton's class library was misleading. *See, e.g.*, SAC ¶¶ 1, 13, 15-17, 79. They certainly do not allege that Peloton did not provide some form of a class library. Nor do they allege that the many other ways that Peloton described its class library—such as a library "with thousands of classes"—were misleading. SAC ¶ 17 & n.9; *see also* Ex. 13, Sample Peloton Ads.

Yet, as Dr. Dennis admitted during his deposition, ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████ . Ex. 38, Dennis Dep. Tr. 153:15-154:11.  Because Dr. Dennis' survey ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ . Dr. Dennis acknowledged as much in his testimony:



*Id.*  As Peloton's conjoint expert Joel H. Steckel, Ph.D., explains, Dr. Dennis' conjoint survey

therefore simply "████████████████████," Steckel Rep. ¶ 37—that is, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Dennis Rep. ¶ 19 (████████████████

████████████████████

A similar deficiency led to the exclusion of Dr. Dennis' analysis in *McMorrow*, 2020 WL

1157191.  There, Dr. Dennis measured the price premium associated with the phrases "nutritious

sustained energy," "nutritious energy all morning," and "4 hours of nutritious steady energy" on

the labels of the challenged products (breakfast bars), even though the only allegedly misleading

aspect of those phrases was the use of the word "nutritious."  *Id.* at *5-8.  The court excluded his

testimony because "his proposed survey does not tell the Court whether the respondents would

pay a price premium because the product is advertised as being 'nutritious,' or because it is

advertised at [*sic*] providing 'steady energy,' or a combination of the two."  *Id.* at *9.

Just three weeks ago, the Southern District of New York relied on *McMorrow*'s reasoning

8

to reject expert testimony and decertify a class in *Price*, 2021 WL 4459115. In *Price*, plaintiffs' expert measured the price premium associated with the label "Keratindose Pro-Keratin + Silk" on hair products, even though plaintiffs alleged that only the first half of that phrase, "Keratindose Pro-Keratin," was misleading. *Id.* at *4-5. Judge Schofield reasoned that "[b]ecause the survey combines 'Keratindose' and 'Pro-Keratin' with '+ Silk,' the analysis does not tell the Court whether the survey respondents would pay a price premium because the product is advertised as containing keratin, because it is advertised as containing silk or a combination of the two. As a result, [plaintiffs'] Conjoint Survey Analysis and methodology for calculating damages is not consistent with Plaintiffs' theory of injury as required under *Comcast*." *Id.* at *5-6.

Here, Dr. Dennis (by his own admission) only ████████████████████████████████ ████████" *See* Ex. 38, Dennis Dep. Tr. 40:24-41:13, 153:15-154:11. As in *McMorrow* and *Price*, ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Dennis Rep., Attachment D, at 37; *see also McMorrow*, 2020 WL 1157191, at *9; *Price*, 2021 WL 4459115, at *5. ██ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████ Dennis Rep., Attachment C, at 11-16; Dennis Rep., Attachment D, at 37; Ex. 38, Dennis Dep. Tr. 147:18-148:7, 128:15-130:4; *see also* Steckel Rep. ¶¶ 37-40. It is, at best, unclear whether ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████



████████████████████████ Steckel Rep. ¶¶ 37-40 (████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

Because Dr. Dennis did not measure a price premium associated with only the specific aspect of Peloton's class library that gives rise to Plaintiffs' claims—the "ever-growing" descriptor—his analysis is not consistent with Plaintiffs' theory of liability and should be excluded. *See Price*, 2021 WL 4459115, at \*5 ("In the context of the Conjoint Survey Analysis, inclusion of the full phrase 'Pro-Keratin + Silk,' without any counterbalancing options to determine the impact of '+ Silk' on purchasing decisions, prevents reliable determination of the impact of the Challenged Claims"); *see also McMorrow*, 2020 WL 1157191, at \*1 n.2.

## B. Dr. Dennis' Price Premium Analysis Relies on the False Assumption that All Class Members Were Exposed to "Ever-Growing Library of Classes."

In a typical case alleging a price premium based on false product descriptions, the allegedly misleading representation appears on the label or package of the product. *See* Dennis Rep. ¶ 6 (citing *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ("made with aged vanilla" appearing on product package); *Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017) ("Energy Star" logo on washing machines); *Bowling v. Johnson & Johnson*, 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) ("No Trans Fat" on product label of butter alternative)). Thus, in other cases where Dr. Dennis has offered (and a court has accepted) a class-wide price premium theory of damages, it is a given that <u>all</u> class members are exposed to the

---

[3] *See also* Ex. 38, Dennis Dep. Tr. 136:11-24 (█████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ █"), 150:16-22 (█

████████████████████████████████████████████████████ ").

alleged misrepresentation. *See* Dennis Rep. ¶ 6 (listing, *e.g.*, *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ("nutritious" on breakfast bar labels); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) ("Made From Real Ginger" on ginger ale packaging)); *see also Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ("natural clean" labels on baby wipes).

That is not this case. "Ever-growing library" was not on the label of a breakfast bar, a bottle of shampoo, or a bag of chips that all class members were exposed to when they walked into a grocery store. It was a phrase used in some—not all—of Peloton's marketing materials. In fact, "ever-growing" was not even a common way Peloton described its class library. *See* Ex. 12, 106:11-107:14 ("

*see also* Mot. at 25 (identifying, at most, 22 instances where "ever-growing" or "growing" appeared in Peloton's internal documents or marketing materials[4]). Plaintiffs do not (and cannot) contend that all class members were exposed to the phrase "ever-growing library." *See* Ex. 39, Pls.' Resps. to Def.'s Contention Interrogs., No. 1.[5]  Indeed, potential class members testified that

_____
[4] As described in Peloton's Opposition, even those numbers are inflated. *See* Opposition at 4 n.3.

[5] *Id.* (". . .Plaintiff does not contend that every single Class Member saw or heard one of Peloton's alleged representations about access to an "ever-growing library" before they purchased Peloton Hardware. . .").



*. See* Ex. 38, Dennis Dep. Tr. 178:19-179:9

); *see also* Steckel Rep. ¶¶ 34-36. Tellingly, during his deposition, Dr. Dennis Ex. 38, Dennis Dep. Tr. 69:12-70:15, 122:19-123:16, and testified that "

" *Id.* at 141:5-142:3. Mr. Weir likewise recognized that

*See* Ex. 41, Weir Dep. Tr. 185:15-187:10 ("

.").[6]

But "ever-growing library of classes" was neither a label nor a claim to which all class members were exposed.[7] Steckel Rep. ¶¶ 34-36. As a result of the disconnect between the facts of this case and the assumption of universal exposure underlying Dr. Dennis' survey, his conjoint analysis measures, at best, a price premium in a hypothetical world where all class members were

---

[6] *See also id.* at 179:23-180:11 ("

184:12-18

[7] Naturally, Dr. Dennis "
Ex. 38, Dennis Dep. Tr. 209:9-210:2. He is correct that "
" *Id.* at 44:3-13.

*. See id.* at 29:20-30:7. Regardless of the source of that disconnect, the fact remains that the consumer decision process reflected in Dr. Dennis' survey is fundamentally different from the decision process that occurred in the real world.

exposed to "ever-growing library of classes." The evidence is clear that such a world does not exist. The hypothetical therefore lacks any generalizability (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛[8]) and is irrelevant to the facts of this case and the Court's class certification analysis.

### C. Dr. Dennis Does Not Measure a Price Premium Because Neither He Nor Mr. Weir Incorporated Supply-Side Factors in the Conjoint Analysis.

Despite purporting to offer a theory of damages predicated on a price premium, Dr. Dennis does not calculate an actual price premium consistent with basic principles of economics. Because he and Mr. Weir fail to adequately account for supply-side factors, the conjoint analysis can only measure changes in consumers' willingness to pay (the maximum price at which a consumer is willing to purchase a product), and not the difference in the market price of Peloton Products with and without the phrase "ever-growing library," nor any price premium associated with that phrase.

As Judge Furman explained in *In re General Motors Ignition Switch Litigation*, a conjoint analysis is a "willingness to pay" measurement that "focuses only on changes to the demand side of the market equation." 407 F. Supp. 3d 212, 234-35 (S.D.N.Y. 2019); *see also* Declaration of Bruce A. Strombom, Ph.D. ("Strombom Rep.") ¶¶ 44, 49, 51-57; Steckel Rep. ¶¶ 29, 36, 44-49. Market price, however, is determined by the intersection of demand-side factors (willingness to pay) and supply-side factors (willingness to sell). *In re Gen. Mot.*, 407 F. Supp. 3d at 233, 235; *see also* Strombom Rep. ¶¶ 42-46, 48. Recognizing the inherent limitations of conjoint analysis, "[d]istrict courts across the country have excluded choice-based conjoint analyses that fail to accurately account for supply-side considerations." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 500 F. Supp. 3d 940, 949 (N.D. Cal. 2020) (excluding Mr. Weir's testimony as unreliable because it relied on a conjoint analysis that "ignore[d] the 'supply' part of

---

[8] *See* Dennis Rep. ¶¶ 91-92 (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛); Ex. 41, Weir Dep. Tr. 65:6-18, 66:23-67:12.

the supply/demand curve" and, therefore, "d[id] not actually calculate a price premium"); *In re Gen. Mot.*, 407 F. Supp. 3d at 235-36 (rejecting proposed conjoint analysis because it "calculated only how *consumers' willingness to pay* would be affected") (emphasis in original).[9]

Here, neither Dr. Dennis nor Mr. Weir 

. Dennis Rep. ¶ 48; Weir Rep. ¶ 50.  Instead, they both claim that

." Dennis Rep. ¶ 48; Weir Rep. ¶ 45; *see also* Ex. 38, Dennis Dep. Tr. 88:3-89:7; Ex. 41, Weir Dep. Tr. 149:6-18, 162:6-164:8.

." Strombom Rep. ¶ 72.

*Id.*; Ex. 41, Weir Dep. Tr. 164:9-24; *see also Schechner*, 2019 WL 4891192, at *7 (rejecting Mr. Weir's use of historical sales and real world price points because "historical transactions reflect only historical supply-side factors, not what the prevailing market conditions would have been absent wrongful conduct.").  Plaintiffs' own theory of liability illustrates why.

---

[9] *See also Schechner v. Whirlpool Corp.*, 2019 WL 4891192, at *7 (E.D. Mich. Aug. 13, 2019) (finding Mr. Weir's conjoint analysis incapable of assessing price premium damages because it "failed to incorporate supply-side considerations"); *MacDougall v. Am. Honda Motor Co.*, 2020 WL 5583534, at *5-6 (C.D. Cal. Sept. 11, 2020) (a "conjoint analysis [that] fails to account for supply-side considerations . . . grossly overestimate[s]" damages and is unreliable "because [it] measures the dollar amount an individual is *willing to pay*[,] not the market price that consumers *actually pay*") (emphasis in original).

According to Plaintiffs, "ever-growing library" materially increased the likelihood that consumers would purchase Peloton Products. SAC ¶¶ 14, 69 (the "purpose" was "to induce customers into purchasing Peloton products"), 78 (alleging that it "drives sales"). It is economically irrational that, in a but-for world where Peloton stopped using that purportedly all-important phrase (and, under Plaintiffs' theory of the case, hurt its market position as a result), Peloton's competitors would sit idle. *Cf. id.* ¶ 186 (alleging the "existence and size of Peloton's library of classes are what distinguish its products from its competitors and what justified the price premium it commands"). Rather, ███████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████ Strombom

Rep. ¶¶ 67-71; *see also Schechner*, 2019 WL 4891192, at *7 ("in the hypothetical world . . . market competition among manufacturers and retailers would affect the prices that retailers would have charged for the [product]"). Similarly, if the "ever-growing library" was as important to consumers as Plaintiffs claim, ████████████████████████████████████

████████████████████████████████████. Strombom Rep. ¶¶ 58-66 (████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████.[10] In other words, in the "but-for" world, prices would be different because the supply-side factors would be different.

███████████████████████████████████████████████████████████

---

[10] *See also In re Volkswagen*, 500 F. Supp. 3d at 947 (rejecting Mr. Weir's argument that "keeping the 'quantity supplied of the Vehicles' the same . . . is proper" because "presuming that Defendants would have sold the same number of cars, at the exact price that consumers would have been willing to pay, is not a way to reliably incorporate supply-side considerations"); *see also In re Gen. Motors*, 407 F. Supp. 3d at 239-40 (rejecting a similar argument).



███████ ”[11] Ex. 41, Weir Dep. Tr. 166:2-7, 167:17-168:2, their "price premium" is not a price premium at all. It is therefore irrelevant to Plaintiffs' theory of damages.

### D. Dr. Weir Does Not Offer Testimony Beyond the Ken of the Average Juror.

Relevant expert testimony is "limited to those occasions 'where the subject matter of the testimony is beyond the ken of the average juror.'" *CCM Rochester, Inc. v. Federated Invs., Inc.*, 2016 WL 11617452, at *7 (S.D.N.Y. Aug. 31, 2016). Mr. Weir's ███████████████ (even if otherwise admissible, which it is not, *infra* at 21-23) falls short of that requirement.

Mr. Weir's analysis consisted of ███████████████████████████████ ███████████████████████████████████████████████████. Weir Rep. ¶¶ 51-57; Ex. 41, Weir Dep. Tr. 92:21-94:8, 96:12-99:18, 101:2-24, 102:19-103:19, 109:8-21.

███████████████████████████████████████████████████ ██████████████████. The same is true of Dr. Weir's "framework" for statutory damages (███████████████████████████████████████). Weir Rep. ¶¶ 58-61. Because it does not assist the trier of fact, Dr. Weir's testimony should be excluded. *FPP, LLC v. Xaxis US, LLC*, 2017 WL 11456572, at *1 (S.D.N.Y. Feb. 13, 2017) (excluding damages expert who "use[d] three different figures provided to her by [counsel] and conduct[ed] simple arithmetic

---

[11] Paying lip service to the analysis is not enough. *Schechner*, 2019 WL 4891192, at *7 ("Mr. Weir did not adequately address [] supply-side considerations" where he "unconvincingly recited [] statements about the competitive importance of prices"); *In re Gen. Motors*, 407 F. Supp. 3d at 239 ("merely including a section titled 'Consideration of the Supply Side' in an expert report . . . does not cut it if the analysis reflected in that expert report does not actually include meaningful consideration of supply-side factors").

to calculate the resulting damages amount"); *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000) (excluding expert damages testimony that "was not generated based on any specialized knowledge, but rather involved basic calculations"); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017) (excluding expert who "simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel").

## II.     DR. DENNIS' AND MR. WEIR'S REPORTS ARE UNRELIABLE.

To be reliable, expert opinions must be "derived by the scientific method" and "supported by appropriate validation." *Daubert*, 509 U.S. at 590.  When evaluating the reliability of an expert's testimony, the court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (internal citations omitted).  "[I]t is critical that an expert's analysis be reliable at every step . . . '[A]ny step that renders the analysis unreliable under the *Daubert factors renders the expert's* [*entire*] *testimony inadmissible.*'" *Id.* (emphasis in original).

### A.     Dr. Dennis' Report Suffers from Critical Design and Implementation Flaws.

In addition to the threshold problems with Dr. Dennis' analysis discussed above, both his perception survey and his price premium calculation suffer from multiple methodological errors that render them inherently unreliable.  These flaws are addressed in detail in the Rebuttal Expert Reports of Rebecca Kirk-Fair ("Kirk-Fair Rep.") and Joel Steckel.  In short, they include the following critical problems:

First, ██████████████████████████████████████████████████████ .

Steckel Rep. ¶¶ 51-67; Kirk-Fair Rep. ¶ 74.  ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

17



. *See, e.g.*, Dennis Rep.

at 26, 28-29; *see also* Kirk-Fair Rep. ¶ 74.  In Dr. Dennis' perception survey, in particular, "

Dennis Rep.  ¶ 76

(capitalization and bolding in original)

. Kirk-Fair Rep. ¶ 74.  That lack of

realism is not surprising, given that Dr. Dennis admitted that he

. Ex.

38, Dennis Dep. Tr. 206:4-207:10.

Second, Dr. Dennis claimed during his deposition that

*id.* at 82:2-18, and that

. *Id.* at 62:12-21.  However, Dr. Dennis never actually measured the materiality of the

alleged affirmative misrepresentation or the alleged omission.

*Id.* at

73:18-25.  Likewise, his price premium survey "

." *Id.* at 82:19-83:8.  Thus, his purported findings of materiality

are not grounded in any reliable or scientifically rigorous study of the impact, if any, of the alleged

representation or omission on consumer purchasing behavior.  Kirk-Fair Rep. ¶ 69.

Third,

. *See* Steckel Rep. ¶ 58; Kirk-

Fair Rep. ¶¶ 77-80.  For example, contrary to conjoint survey best practices (as reflected in the

18

materials on which Dr. Dennis himself relied), ████████████████████████

████████████████████████████████████████████████████

████████████████████ Steckel Rep. ¶¶ 68-72.  Moreover, ████████████████

████████████████████████████████████. *See* Ex. 38, Dennis

Dep. Tr. 198:21-199:12; Kirk-Fair Rep. ¶ 87. ████████████████████████

████████████████████████████████████████████████████

████████████████████. Kirk-Fair Rep. ¶¶ 87-89.  While Dr. Dennis ████

████████████████████ Ex. 38, Dennis Dep. Tr. 204:22-205:9, ████████

████████ *Id.* at 200:13-201:11.  And notwithstanding Dr. Dennis' ████████

████████ Ms. Kirk-Fair's analysis ████████████████████████████

████████████████████████████████████████████████████

████████████████████████. Kirk-Fair Rep. ¶¶ 87-89.

Fourth, in contravention of his own "gold standard," Dr. Dennis ████████████

████████████████████████ *Cf.* Ex. 52, *McMorrow* Dennis Report, ¶¶ 58-59.

According to Dr. Dennis, it is his "routine[]" practice to conduct qualitative pretesting with

"cognitive interviews" (*i.e.*, one-on-one interviews) of survey respondents, Ex. 53, *Buckeye* Dennis

Report, ¶¶ 50-52, and such testing is "vital" to his work, Ex. 54, *Maeda* Dennis Rebuttal Report,

¶ 23.  Of the thirteen cases Dr. Dennis identifies as involving surveys "similar" to his surveys here,

Dennis Rep. ¶ 6, he performed cognitive or in-depth pre-test interviews in at least eleven;[12] the

materials for the remaining two are either under seal or else not readily available.[13]

---

[12] *E.g.*, Ex. 55, *Sharpe* Dennis Report, ¶¶ 21, 37-43; Ex. 52, *McMorrow* Dennis Report, ¶¶ 58-63*;* Ex. 56, *Broomfield* Dennis Report, ¶¶ 17, 27; Ex. 57, *Fitzhenry* Dennis Report, ¶¶ 15, 25; Ex. 58, *de Lacour* Dennis Report, ¶¶ 16, 38-47; Ex. 59, *Bowling* Dennis Report, ¶¶ 16, 22; Ex. 60, *Gregorio* Dennis Dep. Tr. 151:3-6; Ex. 53, *Buckeye* Dennis Report, ¶¶ 50-52; Ex. 61, *Cabrera* Dennis Report, ¶¶ 20, 38-43; Ex. 54, *Maeda* Dennis Rebuttal Report, ¶ 23; Ex. 62, *Vizcarra* Dennis Report, ¶¶ 15, 29-35.

[13] *See* Ex. 63, *Willis* Dennis Report, at 6-11.

The purpose of these pre-testing interviews is to, among other things, identify whether the survey "sufficiently mimic[s] market reality and provide[s] the appropriate product attributes," Ex. 52, *McMorrow* Dennis Report, ¶ 58, and "judge . . . whether the survey questions are clear, unbiased, and make sense to them as consumers." Ex. 53, *Buckeye* Dennis Report, ¶ 50. Dr. Dennis did not do any of that here[14]—even though, as Dr. Steckel explains,

Steckel Rep. ¶¶ 68-72. Instead, Dr. Dennis claimed in his deposition that it "

" Ex. 38, Dennis Dep. Tr. 160:4-11; *cf.* Ex. 52, *McMorrow* Dennis Report, ¶ 58 ("cognitive interviews are essential"). In light of Dr. Dennis' extensive prior testimony to the contrary before other courts—which he urges this Court should follow in accepting his analysis—his deposition testimony stretches credulity.

"While any one of these methodological issues, standing alone, might not be fatal," Peloton respectfully submits that the Court should be "sufficiently concerned that their combination renders [the expert's] proposed survey[s] unreliable." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 WL 1196990, at *31 (N.D. Ill. Mar. 31, 2017).

That Dr. Dennis' perception survey results are unreliable is further demonstrated by the analysis of Peloton's own survey expert, Rebecca Kirk-Fair. Ms. Kirk-Fair

---

[14] While Dr. Dennis

Ex. 38, Dennis Dep. Tr. 155:12-156:19. Dr. Dennis himself has explained the difference between this "pretest" and the cognitive interviews he did not do in this case: "Cognitive interviewing is a much more involved and thorough procedure than simple pretesting, which does not involve any question-by-question conversation about the respondent's thought process in forming an answer to a survey question." Ex. 53, *Buckeye* Dennis Report, ¶ 52.



Kirk-Fair Rep. ¶¶ 24-31.  She also analyzed whether

Kirk-Fair Rep. ¶ 53.  Ms. Kirk-Fair found that,

. Kirk-Fair Rep. ¶¶ 44-51, 57-63.

**B.** **Mr. Weir's Report Should Be Excluded Because It Derives from Dr. Dennis' Flawed Analysis.**

To the extent the testimony of one expert is based on that of another, any reliability flaws in the underlying expert's report are basis to exclude the derivative report as well. *See Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 539489, at *11 (S.D.N.Y. Feb. 10, 2015). Given the methodological flaws that render Dr. Dennis' price premium estimate irrelevant and unreliable, Mr. Weir's estimate of price premium damages is irrelevant and unreliable as well. *McMorrow*, 2020 WL 1157191, at *5-9 (excluding Mr. Weir's testimony where he relied on Dr. Dennis' survey because the survey did not match plaintiffs' theory of liability).[15]



Notably, Mr. Weir

. Ex. 41, Weir Dep. Tr. 86:7-14 (" "), 88:20-91:10.  Mr. Weir

---

[15] *See also Weaver v. Champion Petfoods USA Inc.*, 2019 WL 7370374, at *2-3, *6 (E.D. Wis. Dec. 31, 2019) (excluding Mr. Weir's testimony because his "calculations [we]re entirely founded on the" results of another expert's survey that was excluded by the court).

████████████████████████████████████████. *Id.* at 81:18-82:25, 84:24-86:5. In further

examples of Mr. Weir's ████████████████████████, he: (1) ████████████████

████████████████████████████████████, Ex. 41, Weir Dep. Tr. 71:20-72:10;

(2) ██████████████████████████████████████████████████

████████████, *id.* at 180:12-20; and (3) ██████████████████████

████████████████████ *Id.* at 181:8-18, 183:4-9, 185:15-21, 188:1-189:8.

Instead, Mr. Weir ████████████████████████████████████████████

████████████████████████████████," *id.* at 65:6-18—an assumption which, as

described above, is flatly wrong. Those failures are additional grounds for exclusion. "A failure

to validate data by itself can constitute grounds for excluding an expert report." *See Forte v.*

*Liquidnet Holdings, Inc.*, 675 F. App'x 21, 24 (2d Cir. 2017); *see also In re ConAgra Foods, Inc.*,

302 F.R.D. 537, 556-57 (C.D. Cal. 2014) (excluding opinion based on survey findings where

"[t]here is no indication" that the expert "has independently tested or evaluated the results of the

surveys").

Mr. Weir also claims that ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████. Weir Rep. ¶¶ 31 & n.18, 54-57; Ex. 41,

Weir Dep. Tr. 67:18-68:16. But, as he acknowledges, Dr. Dennis h██████████████████

████████████████, Weir Rep. ¶ 31, ██████████████████████████████

██████████████████████████████████████████████.[16] Ex. 41, Weir

_____

[16] Moreover, despite claiming that he ████████████████████████████████
█████████," Weir Rep. ¶ 51, Mr. Weir is ████████████
█████████, *id.* ¶ 53, and testified that he ████████. Ex. 41, Weir
Dep. Tr. 118:14-121:13; *see also* Strombom Rep. ¶¶ 96-106, 107 █████████
████████████████████████████████████████

Dep. Tr. 114:4-117:17; *see also id.* at 85:21-86:5 ("███████████"). Similarly, in relation to Plaintiffs' omission-based claims, Mr. Weir claims that Dr. Dennis "████████████████████

████████████████████████." Weir Rep. ¶ 31 n.18. However, he ████████████████

███████████████████████████████████████████

███████████████████████████. Ex. 41, Weir Dep. Tr. 67:18-68:16, 131:11-21, 176:13-22. Accordingly, Mr. Weir's "████████████████████████

██████████████████████████ speculative at best and certainly not ripe for a determination of whether they could adequately measure class-wide damages. *E.g., Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *7-9 (S.D.N.Y. Aug. 5, 2010).

**C.     Dr. Dennis' and Mr. Weir's Damages Model Does Not Fit the Real World.**

Finally, Dr. Dennis' and Mr. Weir's damages framework does not, and cannot, account for the following undisputed facts—further illustrating its poor "fit" for the facts of this case:

First, under Plaintiffs' theory of liability, the introduction of "ever-growing library" should have resulted in either ███████████████████████████████████

████████ *See* Strombom Rep. ¶¶ 85, 89; *see also* SAC ¶ 69 (alleging that the purpose of the "ever-growing" statement was "to induce consumers into purchasing Peloton products"). ████████

████████████████████████████████████████████

███████████████████████████████████████████.

Strombom Rep. ¶¶ 86-87; Ex. 38, Dennis Dep. Tr. 184:19-188:14; Ex. 41, Weir Dep. Tr. 190:20-191:16. ███████████. Strombom Rep. ¶ 88; Ex. 38, Dennis Dep. Tr. 185:19-186:2. Plaintiffs' damages model does not, and cannot, account for that. Ex. 38, Dennis Dep. Tr. 184:19-188:14.

Second, it is undisputed that Peloton's class library ██████████████████████████

███████████████████. Ex. 3, Class Library Chart; *see also* Ex. 38, Dennis Dep. Tr. 182:8-183:12. According to the logic of Plaintiffs' theory of liability, those proposed

class members who purchased Peloton Products at the beginning of the class period would have received the benefit of their bargain (*i.e.*, an "ever-growing library") for five months longer than those who purchased their Peloton Products closer to the end of the class period.  Strombom Rep. ¶¶ 96-97, 107.  However, under Plaintiffs' theory of damages, ████████████████████

████████████████████████████████████████████

███████████████████████████████ *Id.*; *see also* Ex. 41, Weir Dep. Tr. 124:18-130:17 (testifying that he ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ ).

     <u>Third</u>, according to Dr. Dennis' own perception survey, ████████████████

████████████████████████████████████████████

██████ Dennis Rep. ¶ 78.  As a matter of common sense, ████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *See*

Ex. 38, Dennis Dep. Tr. 178:8-17 ("Q ████████████████████████████

████████████████████████████████████████████

████████████████████ ").  Yet, by the logic of Plaintiffs' price premium theory, they were all harmed in equal measure with those who allegedly saw and relied upon the phrase "ever-growing library."  That is flatly inconsistent with Plaintiffs' theory of the case and their damages model.  *See Maeda v. Kennedy Endeavors, Inc.*, 2021 WL 2582574, at *17 (D. Haw. June 23, 2021) (denying class certification where "Plaintiffs unpersuasively argue that 100% of the class is injured because all members overpaid . . . This necessarily assumes that all class members were confused or misled by the packaging and that they would not have paid the alleged price premium

had they known the Hawaiian Snacks were not made in Hawai'i.  But Dr. Dennis' survey results

establish otherwise").

## <u>CONCLUSION</u>

For the foregoing reasons, Dr. Dennis and Mr. Weir's testimony should be excluded.

Dated:        October 15, 2021                    Respectfully submitted,
              New York, New York

                                                  LATHAM & WATKINS LLP

                                                  _____
                                                  Steven N. Feldman
                                                  William O. Reckler
                                                  Lilia B. Vazova
                                                  Megan A. Behrman
                                                  Alexis Kellert
                                                  1271 Avenue of the Americas
                                                  New York, NY 10020
                                                  (212) 906-1200
                                                  Steve.Feldman@lw.com
                                                  William.Reckler@lw.com
                                                  Lilia.Vazova@lw.com
                                                  Megan.Behrman@lw.com
                                                  Alexis.Kellert@lw.com

                                                  William J. Trach
                                                  200 Clarendon Street
                                                  Boston, Massachusetts 02116
                                                  (617) 948-6000
                                                  William.Trach@lw.com

                                                  *Attorneys for Defendant*
                                                  *Peloton Interactive, Inc.*