UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/19/2022
```

-------------------------------------------------------------------X
                                :

ERIC FISHON, et al.,               :

                   :

           Plaintiffs,      :

                   :           19-cv-11711 (LJL)

      -v-               :

                   :        OPINION AND ORDER

PELOTON INTERACTIVE, INC.,  :

                   :

           Defendant.     :

                   :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Defendant Peloton Interactive, Inc. ("Peloton") moves, pursuant to Federal Rule of Civil

Procedure 12(b)(6), to dismiss the complaint of plaintiff Alicia Pearlman ("Pearlman") for

failure to state a claim for relief.  Plaintiffs Pearlman and Eric Fishon ("Fishon" and together

with Pearlman, "Plaintiffs") move for class certification of two classes, one of New York

customers and one of Michigan customers.  Peloton moves to exclude expert testimony relied on

by Plaintiffs in their motion for class certification.  For the following reasons, Peloton's motion

to dismiss Pearlman's claims is granted, Plaintiffs' motion for class certification is denied, and

Peloton's motion to exclude the expert testimony of J. Michael Dennis, Ph.D. and Colin B. Weir

is denied as moot.

## BACKGROUND

        For the purposes of the motion to dismiss, the Court accepts as true the well-pleaded

allegations of the second amended complaint (the "Complaint")—the operative complaint in this

action.

        Peloton is an exercise equipment and media company that sells stationary bicycles

("Peloton Bike") and treadmills ("Peloton Tread").  Dkt. No. 106 ("Compl.") ¶ 3.  Peloton also offers a subscription service that allows users of the Peloton Bike and Peloton Tread (together, "Peloton hardware") to watch live or pre-recorded "on-demand" fitness classes, as well as a subscription-only app, called Peloton Digital, that allows people without Peloton hardware to access this library of live and on-demand of classes.  *Id.*  Purchasers of Peloton hardware may buy this subscription—which contains library access, advanced metrics, and a feature that allows users to compete against each other—for $39 per month, while subscribers to the Peloton Digital app pay $19.49 for access to the library.  *Id.* ¶ 5.

Peloton incorporates music into its classes, in that "[e]very on-demand and studio class includes a themed playlist curated by the instructor to match the tempo and intensity of the class."  *Id.* ¶ 18.  Some of the music played in the classes was used without permission, *id.* ¶ 19, and Peloton was thus "building its on-demand library with copyrighted material for which it did not have the proper licenses," *id.* ¶ 20.  In April 2018, Peloton received a cease-and-desist letter alleging copyright infringement of songs appearing in certain of the on-demand classes in its library.  *Id.* ¶ 21. In March 2019, members of the National Music Publishers Association filed a lawsuit against Peloton alleging that, for years, Peloton had been using their music in its fitness-class videos without proper licensing and that this copyright infringement was knowing and reckless.  *Id.* ¶ 22.  Shortly thereafter, Peloton "abruptly removed every class from its on-demand library that contained one or more of the allegedly copyright infringing songs . . . result[ing] in the removal of more than half of the classes from its on-demand library."  *Id.* ¶ 23. This "purge of Peloton's on-demand library has . . . significantly decreased the quality and quantity of popular music available on Peloton's workout class playlists."  *Id.* ¶ 27.

Peloton has described its library of fitness classes as "ever-growing" or "growing," *see*

*id.* ¶¶ 16–17, and Plaintiffs assert that "Peloton's 'ever-growing' on-demand library is central to its marketing." *Id.* ¶ 15. Even after receiving notice that it was building its library of classes with infringing songs, Peloton continued to market "an expansive, ever-growing library of live and on-demand studio classes," *id.* ¶ 30,[1] and to refer to its subscriptions as including "unlimited access to a growing library of live streaming and on-demand Peloton classes," *id.* It also continued to accept subscription payments and charge full price for its subscription payments notwithstanding that it knew or should have known that subscribers "would not be able to use the full on-demand class library because the number of on-demand classes was materially decreasing due to Peloton's wrongful conduct," *id.* ¶ 31 and knew that they "would necessarily not be receiving everything that Peloton represented they would receive," *id.* ¶ 32.

Plaintiffs bring a class action complaint against Peloton, alleging that its statements that its library of classes was "ever-growing" were misrepresentations and that, through these misrepresentations and the failure to disclose the "imminent removal of over half of its on-demand library," Peloton defrauded them and other members of a proposed class, deprived them of the benefit of their bargain, and unjustly enriched itself at their expense. *Id.* ¶ 34. They allege that, as a result, they overpaid for Peloton's goods and services, *id.* ¶ 41, and that:

> Peloton's representations and material omissions were part of the basis of the bargain, in that Plaintiffs attributed value to Peloton's promises regarding the nature and characteristics of its on-demand digital library and would not have purchased the hardware and corresponding [subscription], or would not have purchased it on the same terms, if they knew the truth that Peloton's on-demand digital library would shrink by more than 50%.

*Id.* ¶ 42.

Plaintiffs bring claims under New York and Michigan consumer-protection statutes. Fishon brings the action individually and on behalf of a class defined in the Complaint as "[a]ll

---

[1] Plaintiffs cite Peloton's Canadian website for this statement. *See id.* n.26.

purchasers of the Peloton hardware and/or corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019." *Id.* ¶ 101.  Pearlman also brings the action individually and on behalf of a class, with the proposed subclass defined in the Complaint as "[a]ll purchasers of the Peloton hardware and/or corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019 in the State of Michigan." *Id.* ¶ 102.

This is the second amended complaint in this action.  The first complaint was filed by Pearlman, Fishon, and Patrick Yang, individually and on behalf of all others similarly situated, in December 2019, bringing claims for violations of New York General Business Law ("NYGBL") §§ 349 and 350, which relate to deceptive acts or practices and false advertising.  Dkt. No. 1.  On August 4, 2020, and pursuant to an unopposed request, the Court ordered the voluntary dismissal of Patrick Yang.  Dkt. No. 61.  On November 9, 2020, the Court granted a motion to dismiss the claims of Pearlman—a Michigan resident—because of her lack of statutory standing under the New York statute but denied the motion to dismiss Fishon's claims.  *See Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020).  On January 21, 2021, Plaintiffs filed a first amended complaint.  Dkt. No. 81.  Peloton again moved to dismiss Pearlman's claims, again contending that Pearlman did not plead facts sufficient to show that she had statutory standing to sue under Sections 349 and 250 of the NYGBL.  The Court, once again, dismissed Pearlman's claims under the NYGBL, explaining that her amendment failed to cure the deficiencies identified in the original complaint.  *Fishon v. Peloton Interactive, Inc.*, 2021 WL 2941820, at *5 (S.D.N.Y. July 12, 2021).  The Court did, however, grant leave for Pearlman to amend her complaint to plead her cause under Michigan law.  *Id.*  On July 26, 2021, Plaintiffs filed the instant complaint, with Fishon bringing claims under NYGBL §§ 349 and 350 and Pearlman bringing a claim under the Michigan Consumer Protection Act ("MCPA"), Mich.

Comp. Laws Ann. § 445.901, *et seq.*

## I.      Alicia Pearlman and the Motion to Dismiss

The Complaint alleges that Pearlman is a citizen of Michigan who, "relying on Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes, entered into a transaction with New York-based Peloton, resulting in her purchase of Peloton's hardware and the [accompanying subscription] in November 2018, and has paid all required hardware, software, and subscription fees relating thereto." *Id.* ¶ 37.  She brings a claim under the MCPA, alleging that "Peloton engaged in unfair, unconscionable, and deceptive practices in the advertising and sale of its Bikes, Treads, and Membership and Subscription Services, by misrepresenting that [these services] included access to an 'ever-growing library of live and on-demand studio classes' and willfully failing to disclose that it would be removing over half of its on-demand digital library." *Id.* ¶ 178.  She further alleges that "Peloton's representations and omissions were material because the size of Peloton's library of classes is important to the transaction and would and did affect Plaintiff Pearlman's and the other Michigan Subclass members' decision to enter into the transaction," *id.* ¶ 186, and that she and the other subclass members "were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products," *id.* at ¶ 189.

Pearlman alleges that Peloton's conduct violates the MCPA's prohibition against the following "unfair, unconscionable, or deceptive methods, acts, or practices":

(c) Representing that goods have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . .;

(e) Representing that goods or services are of a particular standard, [or] quality, . . . if they are of another . . .;

(g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented . . .;

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer . . .;

(bb) Making a misrepresentation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; [and]

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws Ann. § 445.903(1).

Peloton moves to dismiss Pearlman's claims arguing, among other things, that Pearlman did not plead her MCPA claims with the requisite particularity and that two of the claims she pleads are "facially inapplicable to the facts alleged" in the Complaint. Dkt. No. 108 at 7; *see also id.* at 7–12.[2] Plaintiffs respond that the allegations in the Complaint are sufficient to state the claims pleaded, including because they "detail the who, what, where, when, and how of Peloton's deceptive, fraudulent, and unfair practices," Dkt. No. 108 at 8, and have otherwise alleged adequately that Pearlman relied on Peloton's misrepresentations, *see id.*

## II.   Eric Fishon

According to the Complaint, Fishon is a citizen of New York, who "relying on Peloton's uniform representations about its 'ever-growing' on-demand library of fitness classes, entered into a transaction with New York-based Peloton, resulting in his purchase of a Peloton Bike and

---

[2] In the Complaint, Plaintiffs allege that the MCPA also prohibits "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold," Compl. ¶ 175 (citing Mich. Comp. Laws Ann. § 445.903(1)(z)), but lists only subsections (1)(c), (e), (g), (s), (bb), and (cc) in alleging the subsections that, "among other things," Peloton's conduct violates, *id.* ¶ 188. Despite assertions in the briefs to the contrary, *see* Dkt. No. 108 at 5; Dkt. No. 109 at 5, Pearlman does not explicitly allege that Peloton's conduct violated Section 3(1)(z) of the MCPA, and thus there is no claim of violation of that subsection for the Court to address.

the Peloton Membership in January 2018, and a Peloton Tread in November 2018, and has paid all required hardware, software, and subscription fees relating thereto." *Id.* ¶ 35.  Fishon brings claims, on behalf of himself and the class, for violations of NYGBL § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and § 350, which makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  As noted above, the Court has already denied a motion to dismiss Fishon's claims.

**III.    The Motion for Class Certification**

Plaintiffs Fishon and Pearlman are the proffered representatives for two proposed classes, which Plaintiffs now move to be certified.  Fishon moves for certification of a class slightly different from the class defined in the Complaint: "All purchasers of the Peloton hardware and/or the corresponding Peloton Membership subscription from April 9, 2018 through March 25, 2019 in the State of New York," which is referred to in the motion for class certification as the "New York Class." Dkt. No. 119 at 9.  Pearlman moves for certification of a similar class but composed of purchasers in the state of Michigan.  *Id.*  Plaintiffs argue that they are adequate and typical representatives of the proposed classes.

In its opposition to Plaintiffs' motion for class certification, Peloton highlights conduct on the part of Fishon that, it argues, casts doubt on his integrity and credibility and his ability to serve as an adequate class representative.  In particular, Peloton submits emails sent to Peloton shortly before Fishon filed this action from an address that they say—and Plaintiffs appear to admit, *see* Dkt. No. 151 at 9—was operated by Fishon masquerading as a lawyer, "lawyerabco@gmail.com." Dkt. No. 136 at 9–10.  In an email chain from April 2019, Fishon complains to Peloton about the problems he is having with his Peloton Tread and asks "[w]hat's the compensation for the third tread and time I have spent on lost workouts, more emails, more phone calls." Dkt No. 142-3.  That email is followed by another one from Fishon in which he

requests "a call ASAP as soon as a manager gets in this morning," explaining that "[o]nce again Peleton [sic] has messed with me and my schedule" and that "continuously having issues compounded . . . is why [he] continues to relate [sic] and ask for a corporate response ultimately after this is finished." *Id.* An email then follows from "lawyerabco@gmail.com" to "ericfishon@aol.com," cc'ing a number of Peloton-affiliated email addresses, including "concierge@onepeloton.com," and "support@onepeloton.com," complaining about a delayed delivery of Fishon's Peloton Tread, stating "I'm sitting home all day now missing work which wasn't planned . . . ." *Id.* A follow-on email message, dated May 24, 2019, was sent under the signature of a "Barbara Diperio LLP ABCO Attorney" and purports to complain on behalf of her "client" Eric Fishon about Peloton's service. Dkt. No. 142-1. It complains that "after two tread swaps, 14 hours of phone calls logged in our office with dates and times and people, email correspondence, and missed deliveries and work it seems Peleton [sic] has fallen short" and asks for Peloton's response to a "request for corporate intervention" and for "FULL resolution on matter [sic] from corporate." *Id.* It conveys the not-so-subtle threat that Peloton should "pls [sic] respond to my client sooner than later as we'd like this matter to be resolved between member and company if possible," *id.*, suggesting that that if Peloton did not address the concerns, Fishon would resort to litigation.

Peloton's attorney questioned Fishon about these emails at his deposition. *See* Dkt. No. 140-13 at 40–45. When asked who "lawyerabco@gmail.com" was and why that person was included on an email sent by Fishon to Peloton, Fishon initially testified that it is "somebody who works as an advisor within [his] family business," naming Erol Fishon—a retired technician at ABCO Pest Control—as that person. *Id.* at 25. Fishon then explained that he did not recall who created that email address or why and that he did not recall if he created it. *Id.* at 26, 28.

He denied that the email was sent to suggest that counsel had become involved for Fishon in his complaint to Peloton for the purpose of conveying the seriousness of Fishon's message and ensuring a response, stating—implausibly, in the Court's view—that the email address was used by ABCO Pest Control for correspondence, that Erol Fishon had access to the email address, and that Fishon himself could "probably" get access to it. *Id.* at 29–30. Fishon testified that Barbara Diperio is someone who used to work with his family company, ABCO Pest Control, and that she is not a lawyer. *Id.* at 43, 45. When asked if Barbara Diperio LLP was an actual law firm, he testified that he did not "know for sure." *Id.* at 43.

Ultimately, in response to a question about who wrote the April 2019 email from "lawyerabco@gmail.com" complaining that "I'm sitting home all day now missing work," Fishon said that it "might have been" written and sent by him. *Id.* at 35–36. When repeatedly pressed about who else it would have been, Fishon was evasive and just repeated "it might have been me" multiple times. *Id.* at 35–37. Fishon's response to questions regarding the May 24, 2019 email from "Barbara Diperio LLP" was similarly evasive. When questioned whether he wrote the email, Fishon repeatedly responded "I do not recall writing that" and stated that he did not recall who sent the email if it was not him. *Id.* at 41–42. At one point, he finally admitted that he "might have" tried to tell Peloton that he had a lawyer involved to get them to respond quicker to him. *Id.* at 40.

Peloton contends that Fishon's integrity and credibility issues—rooted in impersonating a lawyer and then "obfuscat[ing] if not outright perjur[ing] himself" while answering questions about the "lawyerabco@gmail.com" emails—renders him an inadequate class representative. Dkt. No. 136 at 10. Plaintiffs respond that any concerns are "irrelevant" and that, in any event, other individuals who have already been deposed in the matter "are willing to serve as a class

representative."  Dkt. No. 151 at 9.

## DISCUSSION

Because the Court's disposition of Peloton's motion to dismiss Pearlman's MCPA claim
could affect its analysis of the pending motion for class certification, the Court will first consider
whether dismissal of Pearlman's claim is warranted.

## I.      Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a
complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that
is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 554, 557 (2006)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  *Id.* at 678.  Generally, a complaint need not allege "detailed
factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to
relief requires more than labels and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  *Twombly*, 50 U.S. at 555.

However, "[c]laims for fraud must . . . satisfy the heightened pleading requirements of
Rule 9(b) and be plead 'with particularity.'"  *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d
667, 687 (S.D.N.Y. 2021) (citation omitted).  "Courts generally have held that the provisions of
the MCPA," including the provisions alleged to be violated here, "are to be construed with
reference to the common-law tort of fraud."  *Rosipko v. FCA US, LLC*, 2015 WL 8007649, at *4
(E.D. Mich. Dec. 7, 2015) (internal quotation marks and citation omitted) (alteration adopted);
*see also Mayhall v. A.H. Pond Co., Inc.*, 341 N.W.2d 268, 270 (Mich. Ct. App. 1983)
(explaining that, while the MCPA has a "somewhat broader scope" than just fraud-based claims
in that "[i]t prohibits not only 'deceptive' business practices but also those which are 'unfair' and

'unconscionable' . . . the great majority of the specific prohibited practices enumerated in the statute . . . involve fraud" and citing Section 3(1)(a) through (cc) of the MCPA). Thus, when a plaintiff's MCPA claim "is based on both affirmative misrepresentations and alleged omissions," thus "suggest[ing] fraudulent conduct," *Rosipko*, 2015 WL 8007649, at *4, the plaintiff must "state with particularity the circumstances constituting fraud or mistake, consistent with [Rule] 9(b)," *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 612 (E.D. Mich. 2015). The parties appear to agree that Rule 9(b) governs the pleading standards in this case. *See* Dkt. No. 108 at 6–10; Dkt. No. 109 at 8–11.

The Second Circuit has explained that "in order to comply with Rule 9(b), '[a] complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Kerrigan*, 112 F. Supp. 3d at 612–13 (dismissing MCPA claim as insufficiently plead under Rule 9(b) requirements where plaintiff did not identify, among other things, the speaker of each allegedly fraudulent statement "or when and where the statements were made"). "Rule 9(b) also requires a plaintiff to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Budhani*, 527 F. Supp. 3d at 687 (quoting *Lerner*, 459 F.3d at 290). This "strong inference" can be established by either (a) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (b) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290 (internal quotation marks omitted) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Moreover, in order to establish a claim for fraud or misrepresentation under Michigan

law, "a plaintiff must establish: 1) that the defendant made a material misrepresentation that was false; 2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; 3) that the plaintiff acted in reliance upon it; and 4) resulting damages." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (citing *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996)).  "A material fact for the purposes of the MCPA is 'one that is important to the transaction or affects the consumer's decision to enter into the transaction.'" *Id.* (quoting *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999)).  And "at the outset of a lawsuit," a plaintiff ordinarily must plead "what the plaintiff must prove in the trial at its end." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303, (2d Cir. 2021) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned* Media, 140 S. Ct. 1009, 1017 (2020)).  Thus, Pearlman "must allege actual reliance on [defendant's] alleged deceptive conduct with specificity under Rule 9(b)." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 997 (S.D. Cal. 2014).

Peloton argues that Pearlman's MCPA claim should be dismissed because she does not plead facts with the requisite specificity to meet Rule 9(b)'s heightened pleading requirements with respect to her reliance on any of Peloton's alleged misrepresentations.  Plaintiffs respond that the Complaint does allege sufficient detail to meet the requirements of Rule 9(b) and point to allegations: that "Peloton's marketing and website touted its 'ever-growing' and 'growing' library"; that Peloton knew such representations were false because it knew of copyright infringement allegations, but it nevertheless continued to make these representations and promises; that Peloton purged its class library and caused the library "to materially *shrink*"; and that Peloton did not inform Plaintiffs that they would not be receiving an "ever-growing" and "growing" library of classes, instead falsely informing them that the class purge would not affect

their experience with Peloton's service.  Dkt. No. 109 at 8 (citing Compl. ¶¶ 17, 75–77, 80–83,

85–89, 90–92, 97–100).  With respect to Pearlman's reliance on Peloton's statements

specifically, Plaintiffs point to the Complaint's allegation that "Pearlman, relying on Peloton's

uniform representations about its 'ever-growing' on-demand library of fitness classes, entered

into a transaction . . ."  *Id.* at 9 (citing Compl. ¶ 37).[3]

      Pearlman's conclusory allegation that she entered into a transaction with Peloton "relying

on Peloton's uniform representations about its 'ever-growing' on-demand library of fitness

classes" is insufficient to meet the Rule 9(b) standard.  While Plaintiffs have identified the

statement that they allege to be in violation of the MCPA—that the on-demand library was

"ever-growing"— and have alleged with adequate specificity how that statement could be

misleading, Pearlman does not allege the facts giving rise to her reliance on that statement with

any level of specificity.

      Nowhere in the Complaint does Pearlman specify "where and when the statements [on

which she relied] were made."  *Lerner*, 459 F.3d at 290.  Rather, the Complaint alleges that the

"ever-growing" statements appeared on Peloton's website and that this claim was "central to

Peloton's marketing," Compl. ¶ 79, suggesting that it appeared elsewhere as well.  The

Complaint then separately alleges that Pearlman relied on representations about Peloton's

"ever-growing" library, but it does not allege where or when Pearlman was exposed to or viewed

the alleged misstatement or any other facts specifying the circumstances surrounding her

reliance.  *See Kerrigan*, 112 F. Supp. 3d at 612–13 (dismissing MCPA claim as insufficiently

---

[3] Plaintiffs also cite to Pearlman's deposition testimony in support of its argument that she
adequately alleged reliance on Peloton's statements.  This testimony was not included or
otherwise incorporated by reference in the Complaint and is not properly before the Court on a
motion to dismiss.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559–60 (2d Cir. 2016).

plead under Rule 9(b) requirements where plaintiff did not identify, among other things, the

speaker of each allegedly fraudulent statement "or when and where the statements were made");

*Williams v. Scottrade, Inc.*, 2006 WL 2077588, at *7 (E.D. Mich. 2006) (explaining that

requirements of Rule 9(b) were not met where, though plaintiff referred to defendant's website,

he did not "allege with any specificity where or when [defendant] made the alleged

misrepresentations" nor did he allege the specific statements on which he relied); *Rosipko*, 2015

WL 8007649, at *3 (dismissing MCPA claim where complaint was "devoid of [among other

things] any averments regarding . . . when or where any purported affirmative representations

were made . . . [or] when, where, or how Plaintiffs ever heard or saw any purported

representation"); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008 (E.D. Mich.

2015) (concluding that complaint did not meet Rule 9(b)'s heightened pleading requirements

where plaintiff did not allege, among other things "the time, the place, or the person making the

misrepresentation"); *cf. In re Gen. Motors Air Conditioning Marketing & Sales Practices Litig.*,

406 F. Supp. 3d 618, 642 (E.D. Mich. 2019) (concluding that reliance was plausibly alleged for

purposes of MCPA claim where plaintiff "specifically allege[d] that he viewed and relied upon

the window sticker of his vehicle prior to purchasing it" where the window sticker did not

disclose a defect).  The Complaint contains some information from which the Court can glean

the general timeframe of when the statements appeared on Peloton's website—some time before

April 9, 2018, when Peloton received a cease-and-desist letter regarding copyright infringement,

Compl. ¶ 117, until at least the filing of the lawsuit—but there are no allegations with respect to

when Pearlman encountered it (if she even did encounter it on the website).  *Cf. Cambridge*

*Capital LLC v. Ruby Has LLC*, 2021 WL 4481183, at *26 (S.D.N.Y. Sept. 30, 2021) (holding

that allegations were insufficiently specific about when statements were made and thus failed to

plead fraud with particularity where allegations were that the counterclaim-defendant made misrepresentations "throughout the negotiations").  It is not sufficient to say that statements were posted and a plaintiff therefore must have at some point seen them—the particularity requirement mandates that a plaintiff plead with particularity "the circumstances constituting [the] fraud" which, in this case, includes Pearlman's reliance on a statement.  Fed. R. Civ. P. 9(b).  Because Pearlman's allegations do not state the "who, what, where, when, and how" of the statement on which she supposedly relied, she has not sufficiently stated a claim under Rule 9(b)'s heightened pleading standard.  *Antigenics Inc. v. Bancorp Piper Jaffray, Inc.*, 2004 WL 51224, at *3 (S.D.N.Y. Jan. 9, 2004) (internal quotation marks and citation omitted).

Plaintiffs briefly argue that Pearlman does not need to allege that she actually relied on Peloton's misrepresentations because she "can establish reliance on a class-wide basis under Michigan law using a reasonable consumer standard."  In support, she cites *Dix v. American Bankers Life Assurance Company of Florida*, 429 Mich. 410 (1987).  In *Dix,* the Michigan Supreme Court held that "members of a class proceeding under the [MCPA] need not individually prove reliance on the alleged misrepresentations.  It is sufficient if the class can establish that a reasonable person would have relied on the representations."  *Id.* at 418. Following *Dix*, federal district courts considering whether a named plaintiff in a class representative must plead actual reliance under the MCPA have concluded that they must.  *See, e.g.*, *In re Sony*, 996 F. Supp. at 997 (explaining that "although class allegations can be based on what a reasonable person would have relied upon, a named plaintiff bringing a putative class action under the MCPA must still allege actual reliance"); *Kussy v. Home Depot U.S.A.*, 2006 WL 3447146, at *7 (E.D. Mich. Nov. 28, 2006) (explaining that plaintiff bringing claims on behalf of himself and all others similarly situated "still must show reliance, and for the class

action allegations, must show that a reasonable person would have relied on the marked price").

Indeed, as a court in the Eastern District of Michigan pointed out, relieving someone from the

obligation to plead reliance in the class-action context, where that person would be required to do

so in an individual action, would enlarge the rights of a class-action plaintiff relative to a plaintiff

in an individual action in contravention of the Supreme Court's direction in *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 367 (2011).  *See In re Onstar*, 278 F.R.D. at 378 (explaining that

applying a "'reasonable person' standard to determine reliance on a class-wide basis . . . would

prevent [the defendant] from asserting a statutory defense that it would be able to assert in an

individual action," which "would go against" *Wal-Mart*'s direction that "'a class cannot be

certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses

to individual claims'" (quoting *Wal-Mart*, 564 U.S. at 367)).  The Court is persuaded that

excusing Pearlman's failure to adequately plead reliance—a failure that would be fatal to her

individual claim—because she is choosing to plead the claim on behalf of others as well would

be inappropriate and contrary to the Supreme Court's decision in *Wal-Mart.*

Plaintiffs also state that the Court has previously acknowledged that Pearlman "has in

fact alleged her reliance on Peloton's 'ever-growing' and 'growing' representations."  Dkt. No.

109 at 11 (citing *Fishon v. Peloton Interactive, Inc.*, 2021 WL 2941820, at *1 (S.D.N.Y. July 12,

2021)).  To the extent that they argue this acknowledgement is somehow dispositive, or even

persuasive, of the Court's determination of whether Pearlman has adequately alleged reliance for

the purposes of the MCPA, that argument is misplaced.  No issue was before the Court regarding

the sufficiency of Pearlman's allegation of fraud or reliance.  The recitation that Pearlman

"alleges that she relied upon Peloton's representation was 'ever-growing' when she purchased

her hardware and her subscription" was in the background section of that opinion, and merely

repeated the conclusory allegation of the complaint.  The Court did not address whether that conclusory allegation was supported by allegations of fact or whether it would be sufficient to withstand scrutiny under Rule 9(b) or even under Rule 8(a).  *Fishon v. Peloton*, 2021 WL 2941820, at *1.  Indeed, at most, the Court's prior analysis in this case suggests that general allegations that a plaintiff relied on a statement and was injured by that reliance was sufficient in the context of a statute for which reliance was not an element of the cause of action and where it was analyzed under the pleading standards for Rule 8(a) but not Rule 9(b).  In upholding Fishon's NYGBL claims in the face of a motion to dismiss, the Court explained:

> The conclusion that a plaintiff need not state explicitly in her complaint that she saw the misleading advertisement is consistent with *Twombly/Iqbal* and the Second Circuit's holding in *Pelman ex rel. Pelman v. McDonald's Corp.*, that Section 349 claims are subject only to the "bare-bones notice-pleading requirements of Rule 8(a)" and not "the pleading-with-particularity requirements of Rule 9(b)."  396 F.3d 508, 511 (2d Cir. 2005).

*Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *9.  Because, unlike here, reliance was not an essential element of the causes of action alleged, the Court noted that a general statement that a plaintiff was injured by relying on a misleading statement to her detriment was "not a threadbare recital of the elements of a cause of action," *id.* (internal quotation marks omitted) (alterations adopted) (quoting *Iqbal*, 556 U.S. at 678), and the complaint did not need to plead, in detail, "[t]he manner in which the plaintiff came to rely upon the deceptive act" in order for it complaint to proceed, *id.*  Any previous reference to Pearlman's allegations of reliance under the NYGBL is plainly irrelevant to her MCPA claim.

Because Pearlman has not plead her MCPA claim with adequate specificity, the Court will dismiss it.

## II.    Motion for Class Certification

Federal Rule of Civil Procedure 23 governs class certification.  Fed. R. Civ. P. 23.  There are four prerequisites to a class action, and a party seeking to certify a class must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Wal-Mart*, 564 U.S. at 345.  These "familiar requirement[s] of Rule 23(a)[] [are] commonly referred to as numerosity, commonality, typicality, and adequacy of representation . . ."  *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 134 (S.D.N.Y. 2008).  A party seeking class certification must also demonstrate that one of three requirements in Rule 23(b) have been met; one such requirement mandates the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  If a court certifies a class, it must appoint class counsel, and, in doing so, it must consider the adequacy of counsel.  Fed. R. Civ. P. 23(g).

In support of their motion for class certification, Plaintiffs argue that the Rule 23(a) factors have been met.  They contend that the proposed classes consist of thousands of customers and thus meets the numerosity requirement of the Rule.  They also argue that the case involves common issues of fact and law such that they are capable of class-wide resolution, including: whether Peloton's alleged misrepresentations and omissions were material; whether Peloton had a duty to disclose that it was using unlicensed music in its on-demand library that could result in

the removal of classes in its library and, if so, when that duty arose; whether Peloton's alleged misrepresentations and omissions were deceptive; and whether Peloton's conduct injured all class members.  Plaintiffs further argue that these common questions predominate over individual questions and that a class action is superior to other methods of adjudication because of the high costs associated with individual adjudications, and thus Rule 23(b)(3) has been met.

Plaintiffs assert that each of the named plaintiff's claims are typical of other class members' claims because each of them "paid for Peloton hardware, and then continued to pay for subscription membership[s] during the Class period, during which time Peloton represented that its on-demand class library would be 'ever growing'" and because price inflation resulting from deceptive advertising harms "any consumer who purchases that product . . . in the same manner, and by the same conduct, as any other consumer." Dkt. No. 119 at 21.  Finally, Plaintiffs contend that Plaintiff will adequately represent the class because both Fishon and Pearlman have interests that are aligned with those of the absent class members, and both have demonstrated a commitment to actively participating in the case and vigorously pursuing the claims of their respective classes.  Thus, according to Plaintiffs, the Rule 23(a) factors have been met.

In support of its commonality and predominance arguments, Plaintiffs submit declarations by two proposed experts, Dr. J. Michael Dennis and Colin B. Weir.  Dr. Dennis designed, conducted, and reported on a consumer survey to measure the materiality to consumers of Peloton's claim that its library was 'ever-growing' and the existence and amount of any price premium this claim would command.  *See* Dkt. No. 119 at 6–7; Dkt. No. 120.  Based on Dr. Dennis's survey results, Weir calculated price-premium damages on a class-wide basis.  *See* Dkt. No. 121.  According to Plaintiffs, "Dr Dennis's and Weir's reports support Plaintiff's contention

that there is a price premium attributable to Peloton's misrepresentations and omissions that can be shown with class-wide evidence." Dkt. No. 119 at 19. Peloton moves to exclude Dr. Dennis's and Weir's testimony. Dkt. Nos. 135, 137.

Peloton opposes Plaintiffs' motion for class certification. It contends that: Fishon and Pearlman do not satisfy the typicality and adequacy requirements set by Rule 23(a); Plaintiffs have not established that common issues predominate over individualized questions, as necessary to satisfy Rule 23(b); class counsel do not meet the Rule 23(g) adequacy requirement; and Fishon and Pearlman lack standing to assert certain of their claims and thus cannot bring those as class claims. Peloton does not contest that the proposed classes satisfy the numerosity requirement. Because the Court has dismissed Pearlman's claim pursuant to Rule 12(b)(6), it will consider the motion for class certification only as to the New York class, with Fishon as the named plaintiff.

"[A] district court may not grant class certification without making a determination that all of the Rule 23 requirements are met." *In re Initial Public Offerings Secs. Litig.* ("*In re IPO*"), 471 F.3d 24, 40 (2d Cir. 2006); *see also id.* at 41 ("[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met."). "The preponderance of the evidence standards applies to evidence proffered to establish Rule 23's requirements." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008). Before certifying a class, a district court must therefore "find, by a preponderance of the evidence, that [a class representative] is both an adequate and typical representative of the class and not subject to any unique defenses which threaten to become the focus of the litigation." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (internal quotation marks and citation omitted).

"The adequacy of the proposed class representative . . . directly implicates the due process rights of absent class members who will be bound by the judgment." *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 198 (S.D.N.Y. 2015) (citations omitted). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *AmChem Prods., Inc.*, 521 U.S. at 625. "To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (citing *Kline v. Wolf*, 702 F.2d 400, 402–03 (2d Cir. 1983)); *cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (explaining that, when a representative sues on behalf "of a class comprising all who are similarly situated[,] [t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity"). "Such considerations of trustworthiness and credibility . . . are restricted to their relevance to issues in the litigation." *In re NYSE Specialists Secs. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007). Thus, "[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class. Plaintiffs' testimony or credibility that is subject to attack must be on an issue critical to one of their . . . causes of action." *German v. Federal Home Loan Mortg. Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996) (internal quotation marks and citations omitted) (alteration adopted). If there are "serious concerns" about a named plaintiff's credibility and these concerns bear on an issue critical to a cause of action in the litigation, a district court may deny class certification on the basis that the plaintiff is not an adequate class representative. *Savino*, 164 F.3d at 87; *see also Koenig v. Benson*, 117 F.R.D.330, 338 (E.D.N.Y. 1987) ("In the Second Circuit a proposed class

representative can be ruled inadequate under Rule 23(a)(4) if he is vulnerable to attacks on his credibility concerning the key facts at issue in the case."); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008) ("[O]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." (quoting *In re Colonial P'ship Litig.*, 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993)).

Peloton contends that Fishon lacks credibility and is therefore not an adequate plaintiff. It points out that, prior to initiating the current lawsuit, Fishon impersonated a lawyer by sending Peloton multiple emails from "lawyerabco@gmail.com" and then, when questioned about these emails at his deposition, he gave ambiguous, inconsistent, and incredible testimony.  Dkt. No. 136 at 9–11.  Plaintiffs respond that "[s]ervice as a class representative is not a test of piety," and while Fishon "impersonat[ing] an attorney was undoubtedly ill advised," it "does not show that he will not vigorously represent the absent class members in pursuit of redress for Peloton's misconduct."  Dkt. No. 151 at 9.  Plaintiffs also request that, if the Court determines that Fishon is an inadequate class representative, two currently absent class members be substituted as named plaintiffs and proposed class representatives.

The Court finds that Fishon misrepresented his identity to Peloton and was the person who sent the emails from "lawyerabco@gmail.com" and Barbara Diperio LLP.  It also finds that Fishon did so in order to extract something of value from Peloton in the months leading up to the lawsuit—better service and compensation for what he complained was poor service.  It bases those conclusions on the emails themselves and on Fishon's answers during deposition, as well

as its observation of Fishon's credibility during the videotaped deposition, a copy of which was provided to the Court. [4]

The Court views the credibility issues related to Fishon as sufficiently serious as to render him an inadequate representative. As Plaintiffs admit, Fishon repeatedly impersonated an attorney in correspondence with the very company he is now suing on behalf of a class only months before initiating this lawsuit. [5] The complaints, which were wide-ranging and over a period of months, were related to problems with Fishon's Peloton hardware and customer service experiences but did not reference any concerns he had about the reduced content in Peloton's on-demand library. He then gave testimony regarding those emails that was evasive at best and, based on the Court's review of video of relevant portions of the deposition, approach the perjurious at worst.

Fishon's misconduct is not peripheral to the allegations in the lawsuit but bears on issues that are central to those allegations. The evidence that Fishon lied to Peloton in the months

---

[4] At a conference held on January 11, 2022, the Court offered counsel for Fishon the opportunity for Fishon to testify regarding the emails, indicating that in the absence of such testimony, the Court would consider the record closed and make a judgment on the record. The Court further informed counsel for the Plaintiffs that the Court would assume, for the purposes of the motion for class certification, that Fishon impersonated a counsel and that the emails from "lawyerabco@gmail.com" and ostensibly signed by Barbara Diperio were authored and sent by him. *See* Dkt. No. 166 at 9. Counsel for Plaintiffs agreed that a hearing was not necessary and that if the Court wanted to "assume that the result of an evidentiary hearing on this would ultimately result in a conclusion that he did that, . . . that's a fair characterization." *Id.* at 9–11. At that conference, the Court explained that "unless [counsel asks] for a hearing, [the Court is] prepared to make a finding that, based upon [its] review of the testimony . . . Mr. Fishon was Ms. Diperio." *Id.* at 10. The Court reiterates its finding, in light of the video deposition provided to the Court, that Fishon impersonated a lawyer and that the emails in the record sent from "lawyerabco@gmail.com" and signed by Barbara Diperio LLP were drafted and sent from Fishon.

[5] The Court observes that New York state criminalizes similar conduct, including "impersonat[ing] another person with the intent to obtain a benefit or defrauding someone else," and "[p]retending to be a representative of an organization or corporation and acts in that way." N.Y. Penal Law § 190.25(1), (2).

leading up to the lawsuit and that he did so in order to get service from Peloton without mentioning any concern about the size of the library undercuts a central allegation of Plaintiffs. It could well suggest to the jury that Fishon's purported later concern about the size of the library was contrived and that the entire basis for the lawsuit was his pique at the company's poor customer service.[6]  The underlying evidence and Fishon's misleading answers at deposition would be admissible both as "specific instances" of conduct to undermine his character for truthfulness or untruthfulness, *see, e.g.*, Fed. R. Evidence 608(b) (explaining that a court may, on cross-examination, allow specific instances of a witness's conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness) and as substantive evidence of prior statements inconsistent with what a jury might conclude is his later feigned concern about the size of the library, *see* Fed. R. Evid. 613; *see also Kline*, 702 F.2d at 403 (affirming inadequacy determination where proposed class plaintiffs gave inaccurate deposition testimony or "refus[ed] to proper discovery questions" in the face of disputed relevant testimony that "cast a shadow over [her] case" and the plaintiffs' testimony on critical issues was thus "subject to sharp attack"); *cf. Stewart v. Hudson Hall LLC*, 2021 WL 6285227, at *13 (S.D.N.Y. Nov. 29, 2021) (concluding that concerns about plaintiff's credibility, due to his admission to criminal conduct involving deception, "render him an inadequate class representative"). Furthermore, that he communicated with Peloton about these concerns while impersonating a lawyer suggests that he is willing to lie to the defendant to obtain a certain outcome.  That he also impersonated a lawyer to further his own interests in his communications with Peloton

---

[6] This also raises questions about Fishon's typicality, with which "[t]he adequacy-of-representation requirement 'tends to merge.'"  *AmChem Prods. Inc.*, 521 U.S. at 626, n.20.  The Court has serious doubts that Fishon would be a sufficiently typical plaintiff such that class certification would be appropriate, but in light of its conclusion that Fishon is not an adequate representative, it need not make an express determination of typicality.

shortly before bringing this putative class action calls into serious question his capability to act in a disinterested fashion on behalf of all members of the class and whether he is sufficiently antagonistic toward the defendant that there is a "risk that his animus toward the defendants would prevent him from acting in the class's best interests." *Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *3 (S.D.N.Y. Dec. 1, 2016) (concluding that plaintiff was not an adequate class representative when he, among other things, sent profane and aggressive emails to defendant's executives and, after filing the complaint, used a fake name and alias email address to communicate with defendant's executives).  Finally, that he lied about being a lawyer—not just once but multiple times—and then gave at best misleading testimony about that conduct at deposition gives rise to the concern whether he can be trusted to be candid with the Court, a critical characteristic for anyone who is to be trusted with the rights of absent class members.  In light of the above, the Court believes that the success of Fishon's—and thus, the class's—legal claims are "substantively jeopardized" by Fishon's conduct.  *Hua Mui v. Union of Needletrades, Indus. & Textile Emps.*, 1999 WL 4918, at *4 (S.D.N.Y. Jan. 5, 1999).

The problems associated with Fishon's credibility issues makes this case unlike those where minor discrepancies in a plaintiff's statements were found not to render that plaintiff inadequate to represent the proposed class or jeopardize the interests of absent class members, *see Lapin*, 254 F.R.D. at 177–78 (citing cases), or where "the credibility concerns are general in nature, and do not specifically relate to the [issues] . . . central to th[e] lawsuit," *Hua Mui*, 1999 WL 4918, at *4.  Indeed, the credibility concerns outlined above "reflect plaintiff['s] conduct in prosecuting this action," *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 369 (S.D.N.Y. 2000), and are in fact "directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit," *id.* at 368 (citing *Jane B. by Martin v. N.Y.C. Dep't of Soc. Servs.*,

117 F.R.D. 64, 71 (S.D.N.Y. 1987)).  Fishon's pre-litigation conduct in communicating with Peloton, as well as his evasive and inconsistent testimony at his deposition "creates serious concerns as to his credibility at any trial."  *Savino*, 164 F.3d at 87.  Fishon has not met his burden to show that he is an adequate class representative.

Because Fishon—the only named plaintiff left in this case given the Court's dismissal of Pearlman's claim—does not satisfy the adequacy requirement of Rule 23(a), the motion for class certification fails.  *See In re IPO*, 471 F.3d at 40.  The Court therefore need not consider the remaining factors under Rule 23(a) at this juncture.  *See, e.g.*, *Gordon*, 92 F. Supp. 3d at 205 (denying class certification on the grounds that proposed class representatives were inadequate, declining to rule definitively on the other objections to class certification, and allowing renewal of the motion for class certification with new lead plaintiffs); *cf. In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) ("Here, while the Court harbors doubt that plaintiffs have satisfied all the requirements of Rule 23(a), it need not reach that question because it is plain that they do not begin to satisfy the requirements of Rule 23(b).").

Plaintiffs' suggestion, made in a footnote on reply, that the Court should substitute two currently absent class members—thus salvaging any defect caused by Fishon's inadequacy as a class representative—is inappropriate at this stage of the proceedings.  The two individuals are putative class members.  They have not filed complaints, are not yet parties before the Court, and are not represented by counsel who has filed a notice of appearance.  Plaintiffs have not represented that the proposed substitutes have reviewed the class-certification motion, and Peloton has not had the opportunity to depose them as proposed class representatives or to address their specific allegations.  Plaintiffs may have the opportunity to propose new class representatives, but they must do so in a way that respects the principle that a class representative

should "not simply lend his name to a suit controlled entirely by the class attorney," *In re Monster*, 251 F.R.D. at 135 (internal quotation marks, citation, and alteration omitted), and should provide a significant enough role in the litigation to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a), including "against the possibly competing interests of the attorneys," *Baffa v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d. Cir. 2000).

In order for any person to step forward as a putative class representative, Plaintiffs must file an amended complaint with allegations specific to the new class representative(s), Peloton must have the opportunity to answer or move against the amended complaint, and Peloton must also have the opportunity to depose the proposed class representative(s) on issues that were not addressed in the prior depositions.

## CONCLUSION

For the foregoing reasons, Peloton's motion to dismiss plaintiff Pearlman's claim is GRANTED, and Pearlman's complaint is dismissed without prejudice.  Plaintiffs' motion for class certification is DENIED.  In light of the Court's denial of the motion for class certification, Peloton's pending motion to exclude the testimony of Plaintiffs' experts is DENIED as moot.

Any amended complaint must be filed on or before February 18, 2022.  Assuming that an amended complaint is filed, the Court will hold a case management conference to discuss the schedule for any remaining discovery and for renewed motions for class certification.

The Clerk of Court is respectfully directed to close Dkt. Nos. 107, 117, and 135.

SO ORDERED.

Dated: January 19, 2022
      New York, New York

                                       LEWIS J. LIMAN
                            United States District Judge