UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC PASSMAN and ISHMAEL ALVARADO, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>               Defendant. | Civil Action No. 1:19-cv-11711 (LJL)<br><br><br>**<u>ORAL ARGUMENT REQUESTED</u>** |

**MEMORANDUM OF LAW IN SUPPORT OF PELOTON INTERACTIVE, INC.'S
<u>MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u>**

LATHAM & WATKINS LLP
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant*

March 4, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

      A.      Procedural Background and Denial of Class Certification. ...................................4
      B.      The Third Amended Complaint. ..........................................................................6

LEGAL STANDARD............................................................................................................7

ARGUMENT .......................................................................................................................9

I.       PLAINTIFFS LACK ARTICLE III STANDING. ............................................................9

      A.      Plaintiffs Have Not Adequately Pled That Any Alleged Injuries Are Fairly
             Traceable To Peloton's Purportedly Misleading Advertisements. ........................10
      B.      Plaintiffs Have Not Pled A Cognizable Injury. ...................................................13
      C.      Plaintiffs Lack Standing to Seek Injunctive Relief. ............................................14

II.      THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
       RULE 12(B)(6). ......................................................................................................15

      A.      Plaintiffs Have Not Pled That Any Misleading Statement Or Omission
             Caused Their Injuries. .......................................................................................15
      B.      Plaintiffs Have Not Pled A Materially Deceptive Omission. ...............................17
      C.      The Voluntary Payment Doctrine Bars Plaintiffs' Claims. ..................................20

III.    THE CLAIMS THAT PLAINTIFFS "ARE NOT PRESENTLY LOOKING TO
       RELITIGATE" SHOULD BE DISMISSED. ...................................................................21

IV.    ANY DISMISSAL PURSUANT TO RULE 12(B)(6) SHOULD BE WITH
       PREJUDICE. ..........................................................................................................22

CONCLUSION....................................................................................................................23

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Aleisa v. GOJO Indus., Inc.*,
    538 F. Supp. 3d 764 (N.D. Ohio 2021)..................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007)......................................................................................................8

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007)......................................................................................22

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)......................................................................................14

*Bibicheff v. PayPal, Inc.*,
    844 F. App'x. 394 (2d Cir. 2021) .............................................................................10

*Buffalo Xerographix, Inc. v. Hartford Insr. Grp.*,
    540 F. Supp. 3d 382 (W.D.N.Y. 2021) ...............................................................9, 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).....................................................................................................10

*Cortlandt Street Recovery Corp. v. Hellas Telecomms.*,
    790 F.3d 411 (2d Cir. 2015)........................................................................................9

*Diehl v. Omega Protein Corp.*,
    339 F. Supp. 3d 153 (S.D.N.Y. 2018)......................................................................18

*Espejo v. Cornell Univ.*,
    523 F. Supp. 3d 228 (N.D.N.Y. 2021) .....................................................................18

*Estrada v. Johnson & Johnson*,
    2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ........................................................14

*Fero v. Excellus Health Plan, Inc.*,
    502 F. Supp. 3d 724 (W.D.N.Y. 2020) ...................................................................17

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)........................................................22

*Genao v. City of New York*,
  2021 WL 2111817 (S.D.N.Y. May 25, 2021) .........................................................8

*Gould v. Helen of Troy Ltd.*,
  2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) ......................................................14

*Hadley v. Chrysler Grp. LLC*,
  624 F. App'x 374 (6th Cir. 2015) .......................................................................14

*Heine v. Dir. of Codes & Standards*,
  2017 WL 3981135 (D.N.J. Sept. 11, 2017) .........................................................21

*Henry v. Rehab Plus Inc.*,
  404 F. Supp. 2d 435 (E.D.N.Y. 2005) .................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
  2011 WL 3792825 (S.D.N.Y. Aug. 25, 2011) .....................................................10

*Johnson v. JPMorgan Chase Bank, N.A.*,
  488 F. Supp. 3d 144 (S.D.N.Y. 2020) ...........................................................16, 17

*Katz v. Donna Karan Co., L.L.C.*,
  872 F.3d 114 (2d Cir. 2017)...........................................................................8, 10

*Kaufman v. Sirius XM Radio, Inc.*,
  751 F. Supp. 2d 681 (S.D.N.Y. 2010)...........................................................21, 22

*Kleinman v. Elan Corp., plc*,
  706 F.3d 145 (2d Cir. 2013).................................................................................18

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016)...................................................................................22

*Lebowitz v. Dow Jones & Co.*,
  847 F. Supp. 2d 599 (S.D.N.Y. 2012), *aff'd sub nom.* 508 F. App'x 83 (2d Cir. 2013) ...19, 20

*Liberian Cmty. Ass'n of Connecticut v. Lamont*,
  970 F.3d 174 (2d Cir. 2020)..................................................................................9

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) .....................................................................17

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).............................................................................................7

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020)....................................................................................8

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)...................................................................8

*In re Marsh & Mclennan Cos. Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006).................................................17

*Monegro v. St. Insider Dot Com Inc.*,
   2022 WL 445797 (S.D.N.Y. Feb. 11, 2022)...................................8, 12

*Ndremizara v. Swiss Re Am. Holding Corp.*,
   93 F. Supp. 3d 301 (S.D.N.Y. 2015)...................................................21

*Newman v. RCN Telecom Servs. Inc.*,
   238 F.R.D. 57 (S.D.N.Y. 2006) ..........................................................20

*Oden v. Boston Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ................................................17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ...........................................................................19

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)..................................................................21

*Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*,
   2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017), *aff'd*, 735 F. App'x 11 (2d Cir. 2018)...........19

*Quintana v. B. Braun Medical Inc.*,
   2018 WL 3559091 (S.D.N.Y. July 24, 2018) ......................................13

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015).................................................12

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)...........................................................19, 20

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016).............................................14, 18

*Solomon v. Bell Atl. Corp.*,
   777 N.Y.S.2d 50 (1st Dep't 2004) ......................................................20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................9

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) .......................................................14, 20

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ................................................................11

*Womak v. EVOL Nutrition Assocs., Inc.*,
    2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021).........................................19

*Zachmann v. Coleman Co. Inc.*,
    2022 WL 161480 (S.D.N.Y. Jan. 8, 2022) .....................................13, 15

## STATUTES

Mich. Comp. Laws. Ann. § 445.901 *et seq.*.................................................5

N.Y. Gen. Bus. Law §§ 349, 350............................................................ *passim*

## RULES

Fed. R. Civ. P. 12(b)(1)........................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................... *passim*

Fed. R. Civ. P. 15(a) .......................................................................................22

Defendant Peloton Interactive, Inc. ("Peloton") respectfully submits this memorandum of law in support of its motion to dismiss the Third Amended Class Action Complaint (ECF No. 195, the "Third Amended Complaint" or "Complaint," cited as "¶ _") for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs' fourth bite at the apple fares no better than their prior three. Despite a lawyer-driven search to find substitute plaintiffs in a sea of over 2,700 purported claimants, the Third Amended Complaint suffers from fatal deficiencies, some of which directly prohibit claims brought by the two new named Plaintiffs, Eric Passman ("Passman") and Ishmael Alvarado ("Alvarado").

*First*, Plaintiffs lack standing because they have not pled and cannot credibly plead that they suffered an injury fairly traceable to any of the allegedly misleading misstatements or omissions at issue in this case. That failure forecloses their standing to bring these claims. Contrary to the vague allegations that they "relied" on Peloton's representations in making their purchasing decisions, both Plaintiffs admitted in sworn testimony that they did *not* consider or even see any of the advertisements at issue prior to purchasing their Peloton products.[2] That is fatal to Plaintiffs' standing (as well as to the underlying merits of their misguided claims).

---

[1] Capitalized terms not defined herein have the same meaning as ascribed in the Third Amended Complaint. Citations to "Ex. __" refer to the exhibits attached to the Declaration of Megan A. Behrman, submitted herewith. Unless otherwise indicated, all internal citations and quotations are omitted and all emphases are added.

[2] On February 24, 2022, Peloton sent a letter to Plaintiffs' counsel pursuant to Rule 11 demanding that Plaintiffs withdraw these unfounded allegations that are directly contradicted by their own sworn testimony. Peloton reserves all rights, including the right to move for sanctions.

Accordingly, the Third Amended Complaint should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

*Second*, the Third Amended Complaint fails to state a claim under Rule 12(b)(6) because there are no well-pled allegations that either Plaintiff suffered an injury caused by the allegedly deceptive advertisements.  The Complaint largely restates the allegations of prior complaints and offers very few allegations specific to either new named Plaintiff.  However, the additional facts it does include regarding these Plaintiffs reveal that they are unable to plead causation, an essential element of their claims.  The Complaint includes the same three advertisements from Peloton's website that were included in prior complaints and recycles the allegation that Plaintiffs purchased a Bike and/or Membership subscription "relying on" Peloton's alleged misrepresentations.  With respect to the prior named plaintiffs, Eric Fishon and Alicia Pearlman, those allegations were found sufficient to infer that plaintiffs actually saw the alleged misrepresentations and thus sufficient to plead causation.  No such inference is warranted on the facts pled here, which make clear that the representations quoted in the Complaint either appeared on Peloton's website *after* Plaintiffs had already made their purchases and/or appeared on sections of the website that Plaintiffs had no reason to view.  Absent any allegation or reasonable inference that Plaintiffs ever saw the alleged misrepresentations, Plaintiffs cannot adequately plead that their injuries were caused by those misrepresentations.

*Third*, the Third Amended Complaint fails to state a claim that Peloton omitted material information.  The Complaint does not allege that Peloton knew or should have known it would remove classes prior to March 25, 2019, when it *did* disclose to its members that it would do so. Absent such knowledge, Peloton had no duty to inform consumers that a group of music publishers had accused Peloton of violating copyright law and that Peloton thus might remove classes at some

indeterminate future date.  Plaintiffs' claim that Peloton failed to disclose material information in addition to affirmatively misrepresenting the "ever-growing" nature of the on-demand library misses the mark.

*Fourth*, the Third Amended Complaint fails to state a claim based on Plaintiffs' Membership subscription payments because Plaintiffs concede that they have continued to pay for those subscriptions even after Peloton disclosed that it would remove classes from the on-demand library.  Plaintiffs' claims are therefore barred by the voluntary payment doctrine, which precludes claims by consumers who continue to purchase the product at issue with full knowledge of the facts.

*Finally*, Plaintiffs replead already dismissed claims despite asserting that they do not "presently seek to relitigate" certain issues—including whether Passman and Alvarado can represent a nationwide class of consumers, or whether Alicia Pearlman can assert claims under the New York General Business laws or the Michigan Consumer Protection laws.  The Court should dismiss those claims to the extent Plaintiffs have alleged them in the Third Amended Complaint.

## BACKGROUND

Peloton assumes the Court's familiarity with the factual background of this action, as set forth in the Court's Opinions and Orders (i) granting in part Peloton's motion to dismiss the initial complaint, ECF No. 65 (the "November 2020 Order"); (ii) granting Peloton's motion to dismiss Alicia Pearlman's New York General Business Law ("NYGBL") claims in the First Amended Complaint, ECF No. 102 (the "July 2021 Order"); and (iii) granting Peloton's motion to dismiss Alicia Pearlman's Michigan law claims in the Second Amended Complaint and denying class certification, ECF No. 168 (the "January 2022 Order").  Accordingly, in the interest of efficiency and judicial economy, Peloton presents that background only in brief here.

In 2014, Peloton revolutionized the fitness industry with the introduction of its Peloton Bike, which offers both live and on-demand classes through a streaming service available to users who purchase a Membership subscription for $39 a month.  ¶¶ 3-4, 58, 61, 63.  Peloton's class library quickly amassed thousands of classes made up of both live and pre-recorded on-demand classes that users could take on their own schedules.  *See* ¶¶ 88-89.  Given that Peloton was consistently producing and adding new content to its on-demand class library, it referred to the library as "growing" or "ever-growing" on select pages of its website.  *See* ¶¶ 14-15, 76-78, 97.  Plaintiffs allege that these representations became false or misleading on April 9, 2018, when Peloton received a cease-and-desist letter from music publishers who claimed that Peloton did not have proper licenses for some of the music that it used in on-demand classes.  ¶¶ 84-85.

### A.    Procedural Background and Denial of Class Certification.

The Court has partially granted three prior motions to dismiss.  Plaintiffs Eric Fishon, Alicia Pearlman, and Patrick Yang first filed this lawsuit on December 23, 2019, bringing claims under Sections 349 and 350 of the NYGBL on behalf of themselves and a putative nationwide class of purchasers of Peloton Hardware and Membership subscriptions.  ECF No. 1.  Plaintiffs dropped Yang as a party on August 4, 2020.  *See* ECF No. 61.  On November 9, 2020, the Court allowed the claims brought by Fishon to proceed but dismissed all of Pearlman's claims for lack of standing under the NYGBL because she had not adequately alleged that her purchase was sufficiently connected to New York.  November 2020 Order at 29.

On January 21, 2021, following discovery into the statutory standing of out-state-consumers, Fishon and Pearlman filed the First Amended Complaint, again alleging claims under Sections 349 and 350 of the NYGBL on behalf of a putative nationwide class.  ECF No. 81.  On July 12, 2021, the Court again dismissed Pearlman's claims for her continued failure to adequately

allege standing for claims under the NYGBL, but allowed her to replead those claims under Michigan law.  July 2021 Order at 11.

On July 26, 2021, Fishon and Pearlman filed the Second Amended Complaint.  ECF No. 106.  Fishon again asserted claims on behalf of himself and a putative nationwide class of purchasers under Sections 349 and 350 of the NYGBL.  *See id.* ¶ 101.  Pearlman asserted claims on behalf of herself and a class of purchasers in the state of Michigan under various sections of the Michigan Consumer Protection Act, Mich. Comp. Laws. Ann. § 445.901 *et seq.* ("MCPA").  *Id.* ¶ 102.  While Peloton's motion to dismiss Pearlman's MCPA claims was pending, Plaintiffs sought class certification of two classes of consumers who purchased Peloton Hardware and Membership subscriptions between April 9, 2018 and March 25, 2019:  one class of New York purchasers and one class of Michigan purchasers.  *See* ECF No. 174 at 9.

On January 19, 2022, the Court dismissed Pearlman's claims for the third time, finding that she failed to plead reliance under the MCPA.  January 2022 Order at 17.  The Court also found Fishon inadequate to represent the interests of the remaining proposed class and denied class certification.  *Id.* at 26.  In response to Plaintiffs' counsel's request to replace Fishon with a new class representative, the Court instructed that "[i]n order for any person to step forward as a putative class representative, Plaintiffs must file an amended complaint with allegations specific to the new class representative(s)."  *Id.* at 27.

On February 18, 2022, Plaintiffs filed the Third Amended Complaint, naming Passman and Alvarado as the new putative class representatives.  Passman and Alvarado bring claims under Sections 349 and 350 of the NYGBL on behalf of themselves, a putative nationwide class of purchasers, and a putative subclass of purchasers in the state of New York.  ¶¶ 106-07, 117-34,

136-54.  The putative class period for both classes remains April 9, 2018 through March 25, 2019.

¶¶ 106-07.

### B.       The Third Amended Complaint.

The core allegations underlying Plaintiffs' claims remain unchanged from the three prior complaints.  Contrary to the Court's instruction, the Third Amended Complaint contains only minimal factual allegations "specific to" the new named Plaintiffs.  *See* January 2022 Order at 27.

Passman alleges that he purchased a Peloton Bike and Membership subscription in February 2017 (before the start of the class period), "relying on" Peloton's allegedly deceptive representations that its library of on-demand classes was "ever-growing" or "growing."  ¶ 35. Alvarado alleges that, "relying on" Peloton's representations, he purchased a Peloton Membership subscription (but not a Bike) in January 2019.  ¶ 37.  Alvarado also alleges that he and his wife purchased a Peloton Bike from a friend, but he does not allege when they purchased the Bike or that he or his wife relied on any of Peloton's alleged representations in making that purchase.  *Id.*

Both Plaintiffs generally assert that Peloton deceptively represented on certain pages of its website that its on-demand library of classes was "ever-growing" or "growing."  ¶¶ 73-81. However, neither Plaintiff alleges that he ever saw any "ever-growing" or "growing" statement on Peloton's website (or anywhere else) before deciding to purchase a Peloton Bike and/or Membership subscription.  *See, e.g.*, ¶¶ 17, 30, 73-77, 95, 123, 140, 143.  Nor do Plaintiffs allege that they visited Peloton's website or otherwise were exposed to any advertisement describing the class library as "ever-growing" or "growing," either when making their purchases or at any other time.  *Id.*

Plaintiffs allege that the "ever-growing" or "growing" language appeared on Peloton's website as early as 2016.  ¶ 73.  They do not, however, claim that Peloton knew its representations were misleading, or that Peloton omitted material information, until April 9, 2018, when Peloton

received a cease-and-desist letter from certain music publishers regarding the music used in some on-demand classes. *See* ¶¶ 21, 23, 30, 49. Plaintiffs further allege that, on March 25, 2019, the day Peloton removed the potentially impacted classes, Peloton's then-CEO sent an email to all users informing them of the takedown. ¶ 92. Plaintiffs do not seek damages for any purchases of Bikes or Membership subscriptions made after the March 25, 2019 email notifying users of the class removal, despite claiming that Peloton continued to describe the on-demand library as "ever-growing" or "growing" until late 2020. ¶ 81.

Both Plaintiffs allege that they "would not have purchased the Peloton Hardware and the corresponding Peloton Membership, or would not have purchased it on the same terms, if they knew the truth that Peloton's on-demand digital library would shrink dramatically." ¶¶ 35, 37, 42. Nonetheless, they both also contend that they have continued to pay Peloton for Membership subscription services after Peloton removed classes on March 25, 2019. *See* ¶ 39.

On the basis of these allegations, Plaintiffs claim that all of their monthly Membership subscription payments from April 9, 2018 through March 25, 2019, as well as their Bike purchases (even if they were made outside of the class period), constitute separate violations of NYGBL Sections 349 and 350. ¶¶ 116-54. Plaintiffs seek statutory damages for each separate payment on behalf of themselves, a proposed nationwide class of purchasers, and a proposed subclass of New York purchasers. ¶¶ 130-34, 151-54.

## **LEGAL STANDARD**

Peloton moves under Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

To demonstrate standing under Article III of the U.S. Constitution, a plaintiff must show injury in fact, causation, and redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). If a plaintiff fails to demonstrate Article III standing, the court lacks constitutional power

to adjudicate the claim and should dismiss that claim for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017); Fed. R. Civ. P. 12(b)(1). A defendant may bring a fact-based challenge under Rule 12(b)(1), which allows the Court to consider extrinsic evidence without converting the motion into one for summary judgment. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Monegro v. St. Insider Dot Com Inc.*, 2022 WL 445797, at *2 (S.D.N.Y. Feb. 11, 2022) (Rule 12(b)(1) challenges may be either facial or fact-based). In a fact-based challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Monegro*, 2022 WL 445797, at *2. To survive a Rule 12(b)(1) motion, "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Id.*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). In other words, "a complaint must contain sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." November 2020 Order at 3 (citing *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020)). To do so, "[a] complaint must offer more than 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement' in order to survive dismissal." July 2021 Order at 4 (quoting *Twombly*, 550 U.S. at 555, 557). "When adjudicating a motion to dismiss under Rule 12(b)(6), the Court considers not only the well-pleaded allegations of the complaint but documents incorporated by reference and matters of which judicial notice may be taken." *Genao v. City of New York*, 2021 WL 2111817, at *1 (S.D.N.Y. May 25, 2021).

**ARGUMENT**

Plaintiffs' claims fail under Rule 12(b)(1) because Plaintiffs have not suffered an injury fairly traceable to any alleged misconduct and therefore lack standing to assert their claims. Their pleading also fails under Rule 12(b)(6) because Plaintiffs have not stated a claim upon which relief can be granted. The Third Amended Complaint therefore should be dismissed.

## I.   PLAINTIFFS LACK ARTICLE III STANDING.

As a threshold matter, Plaintiffs' claims must be dismissed because Plaintiffs lack standing under Article III. *See Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 185 n.14 (2d Cir. 2020) ("Because we conclude that none of the named plaintiffs has standing to pursue their claims for prospective relief, the class proposed by Appellants necessarily fails as well."); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (same). In order to meet the "irreducible constitutional minimum" of Article III standing, Plaintiffs must have suffered an injury-in-fact that is fairly traceable to the challenged conduct and is redressible. *Spokeo*, 578 U.S. at 338. That injury must be "concrete *and* particularized," not "conjectural or hypothetical," and it must be fairly traceable to, or directly caused by, the alleged misconduct. *Id.* at 339-40 (emphasis in original); *Cortlandt Street Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 417-18 (2d Cir. 2015). The "causation requirement [of the NYGBL] mirrors the traceability requirement of Article III standing, which requires a plaintiff to demonstrate a causal nexus between the defendant's conduct and the injury." *Buffalo Xerographix, Inc. v. Hartford Insr. Grp.*, 540 F. Supp. 3d 382, 394 (W.D.N.Y. 2021). In other words, in order to show an injury-in-fact fairly traceable to the challenged conduct, Plaintiffs must show that the allegedly misleading advertisements caused their purported injuries—which cannot occur as a matter of law if Plaintiffs did not see the advertisements prior to their purchases. *See id.* (dismissing § 349 claim for lack of standing where plaintiffs failed, as a matter of law, to allege that defendant's conduct caused plaintiffs' injuries);

*cf. Bibicheff v. PayPal, Inc.*, 844 F. App'x. 394, 396-97 (2d Cir. 2021) (affirming dismissal of § 349 claim for failure to plead causation where plaintiff did not allege that she was aware of alleged misrepresentations during relevant time period).

### A.    Plaintiffs Have Not Adequately Pled That Any Alleged Injuries Are Fairly Traceable To Peloton's Purportedly Misleading Advertisements.

Plaintiffs recycle the allegations of their predecessors:  They include screenshots of the same three Peloton website advertisements included in prior complaints, ¶¶ 76-78, and vaguely assert that they purchased Bikes and/or Membership subscriptions "relying on" Peloton's representations, ¶¶ 35, 37.  Notably, the only allegedly misleading representations identified by Plaintiffs are on Peloton's website, where certain pages described the on-demand library as "ever-growing" or "growing"; Plaintiffs do not allege that the "ever-growing" or "growing" language appeared anywhere but the website.  ¶¶ 73-81.  These bare-bones allegations cannot confer standing on *these* two Plaintiffs because they are directly undermined by other allegations specific to these Plaintiffs and by Plaintiffs' own deposition testimony, which the Court may consider in connection with this Rule 12(b)(1) motion.  *See Katz*, 872 F.3d at 121.

The allegations regarding the link between the alleged misconduct and Plaintiffs' injuries are particularly deficient as to Passman, who purchased his Bike and Membership subscription in February 2017—before the beginning of the class period and well before Plaintiffs claim Peloton's representations became false or misleading on April 9, 2018.  *See* ¶¶ 30-32, 35, 106-07.  The alleged misconduct therefore could not have injured Passman, as he made his purchasing decision before Plaintiffs allege that Peloton did anything wrong.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) (injuries that occurred before challenged conduct cannot be fairly traceable to that conduct); *In re Initial Pub. Offering Sec. Litig.*, 2011 WL 3792825, at *1 (S.D.N.Y. Aug. 25, 2011) (plaintiff must have purchased securities during the class period to have standing);

10

*Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019) ("If . . . those who donated money to the [] campaign did so before the false statements were made, the statements could not have caused them financial injury.").   As to Alvarado, the Complaint does not allege, even in conclusory terms, that there was any link between his decision to purchase a Bike and Peloton's alleged misrepresentations.  *See* ¶ 37.  He therefore lacks standing to bring any claims based on his Bike purchase.

Moreover, Plaintiffs' sworn testimony reveals that neither Plaintiff ever considered, or even saw, the allegedly false or misleading advertisements on Peloton's website.  Therefore, the Court should not credit the bare allegations that Plaintiffs "relied" on them.

Alvarado testified that he did not visit Peloton's website prior to making his purchase.  Ex. 1, Alvarado Dep. Tr. 45:11-23 (agreeing that he did not "go on Peloton's website to look through everything and select whatever [he] would have wanted").   He also clearly and unequivocally testified that no advertisements informed his decision to purchase a Membership subscription.  *Compare* ¶ 37, *with* Ex. 1, Alvarado Dep. Tr. 79:23-25 ("Q: Has any advertisement informed your decision to purchase a subscription?  A: No.").   Alvarado further revealed that he was not even the person who made the decision to purchase a Bike.  Rather, that decision was made by his wife, who is not a named plaintiff and about whom there are no specific allegations.  Ex. 1, Alvarado Dep. Tr. 35:23-36:14; 38:23-41:3 ("I couldn't say yes or no.  She wanted it.  She wanted the bike."); 45:1-23 (testifying that his wife "did everything" with respect to purchasing the Membership subscription).

Passman likewise testified that he never saw an advertisement that said Peloton's on-demand library was "ever-growing" or "growing."  Ex. 2, Passman Dep. Tr. 83:3-8; 84:8-85:8 ("Q: Have you ever seen any advertisement that said Peloton's library was 'ever-growing'?  A: . .

. I don't recall ever seeing an ad or an advertisement with that, no.").  He further testified that none of the advertisements he did see prior to making his purchase mentioned anything about Peloton's library size or available music.  *Id.* at 80:15-81:23.  Nor did Passman recall any advertisement on Peloton's website at all.  *Id.* at 78:10-80:23 (testifying that the commercials he recalled seeing were "[j]ust images of people working out and sweating" and that he did not "recall anything [] about the Peloton, about music or that kind of stuff").  Passman further testified that none of the advertisements he saw *after* making his initial purchase affected his decision to continue to pay for his Membership subscription.  *Id.* at 81:24-83:2 ("Q: And have any of those ads affected your decision to continue to pay for your Peloton subscription?  A: No, not at all.").

Because Plaintiffs have admitted they did not see any of the alleged misrepresentations described in the Third Amended Complaint, the Court need not credit the contrary allegations that Plaintiffs purportedly "relied" on them.  *See Monegro*, 2022 WL 445797, at *2 (no presumptive truthfulness in complaint's jurisdictional allegations if defendants present evidence to the contrary).  Without a valid allegation of reliance or any other allegations of exposure, any purported injury cannot be traced to the alleged misconduct.  *See, e.g.*, *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 436 n.2 (S.D.N.Y. 2015) (no causal connection between "challenged conduct and any economic harm suffered by virtue of [plaintiffs'] purchasing decisions," and thus no standing, where plaintiffs did not allege, among other things, that their decision to purchase "was specifically influenced by [the] alleged misrepresentations").  Stripped of the demonstrably false conclusory allegation that Plaintiffs made their purchases "relying on" Peloton's allegedly misleading advertisements, the Third Amended Complaint has not pled—and, given their testimony, Plaintiffs cannot show—that any of their purported injuries are traceable to Peloton's allegedly misleading advertisements.

Cases analyzing the analogous causation element of the NYGBL make clear that there is no causal nexus where Plaintiffs cannot truthfully allege that they were exposed to the misleading advertisements.  *See Quintana v. B. Braun Medical Inc.*, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (dismissing §§ 349 and 350 claims where plaintiff failed to adequately plead causation because her allegations did "not suggest [p]laintiff ever saw these statements and under what circumstances"); *Zachmann v. Coleman Co. Inc.*, 2022 WL 161480, at *4 (S.D.N.Y. Jan. 8, 2022) (no causation for §§ 349 and 350 claims where plaintiffs "nowhere state in their complaint that they saw any of these statements before they purchased," and thus "do not specifically allege that because of defendant's deceptive act . . . they suffered an injury").  Plaintiffs thus have not pled, and cannot prove, the "fairly traceable" causation element of standing, and their claims must be dismissed for lack of subject-matter jurisdiction.  *See Buffalo*, 540 F. Supp. 3d at 393-94; Fed. R. Civ. P. 12(b)(1).

### B.   Plaintiffs Have Not Pled A Cognizable Injury.

Plaintiffs also lack standing because, despite filing the Third Amended Complaint after almost two years of discovery, they have not included any specific factual allegations supporting an "overpayment" theory of injury—including what price they paid for their Bikes, how the advertisements affected the price of Peloton's products, or how much any competitors charged for similar alternatives.  *See generally* Complaint; *Aleisa v. GOJO Indus., Inc.*, 538 F. Supp. 3d 764, 773-74 (N.D. Ohio 2021) (no injury-in-fact for standing where plaintiffs did not plead plausible facts about the alleged misrepresentation's effect on a product's market price).

Moreover, to the extent Plaintiffs assert other theories of injury, such as a "diminished user experience" and failure to receive the "benefit of the bargain" after the March 25, 2019 takedown (and thus after the end of the class period), *see* ¶¶ 27, 32, 34, 42, 90, 91, 99, 103, 105, 127, such purported injuries cannot support standing here.  The Third Amended Complaint alleges that

Peloton's on-demand library abruptly stopped being "ever-growing" on March 25, 2019 (the end of the class period), when Peloton removed classes. ¶ 87. Until that time, Plaintiffs received exactly what they bargained for, without any diminution in experience: a Peloton Bike and/or access to Peloton's indisputably growing on-demand library. *See* ¶ 25. Plaintiffs thus could not have suffered any injuries based on these theories during the class period. *Cf. Gould v. Helen of Troy Ltd.*, 2017 WL 1319810, at *3 (S.D.N.Y. Mar. 30, 2017) (injury occurred at the time of purchase, not when plaintiff was physically injured). Additionally, courts have found that such injuries are not actionable where consumers have continued using (and paying for) their products after the alleged deception was revealed. *See* ¶ 39; *see also In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360-61 (S.D.N.Y. 2016) (no injury where plaintiffs did not "allege that they can no longer use [the product]"); *Hadley v. Chrysler Grp. LLC*, 624 F. App'x 374, 379 (6th Cir. 2015) (allegations of "diminished value" and "loss of enjoyment" where plaintiffs did not stop using product insufficient to allege injury-in-fact); *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *4 (E.D. Cal. Mar. 27, 2015) (no injury based on "benefit of the bargain" theory where plaintiff did not allege product was completely defective when purchased).

### C. Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs also lack standing to bring a claim for injunctive relief. *See* ¶¶ 106-07, 114. To the extent Plaintiffs claim injury based on their past purchases of the Peloton Bike, there is no future harm and hence no Article III standing to bring a claim for injunctive relief. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148-49 (2d Cir. 2020). Moreover, Plaintiffs lack standing to bring a claim for injunctive relief related to ongoing Membership subscription payments because any future payment will be made "with exactly the level of information that [Plaintiffs] claim they were owed from the beginning." *Id.* at 148; *see also Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013).

## II.    THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6).

To state a claim under Sections 349 and 350 of the NYGBL, Plaintiffs must allege that (i) Peloton's acts were consumer-oriented; (ii) Peloton's acts or practices were deceptive or misleading in material way; and (iii) Plaintiffs were injured as a result of the allegedly deceptive acts or practices. *Zachmann*, 2022 WL 161480, at *3.  Even if Plaintiffs had Article III standing to bring their claims (which they do not), the Third Amended Complaint should be dismissed because Plaintiffs have not stated, and cannot state, an actionable claim based on either the affirmative "ever-growing" or "growing" representations, or based on any alleged material omissions that rendered those representations misleading.

### A.    Plaintiffs Have Not Pled That Any Misleading Statement Or Omission Caused Their Injuries.

As detailed above, Plaintiffs lack standing because they have not pled, and cannot truthfully plead, that any of their alleged injuries were traceable to—*i.e.*, caused by—Peloton's allegedly misleading advertisements. *See supra* Section I.  Even accepting as true all of the allegations in the Third Amended Complaint (including those directly contradicted by Plaintiffs' testimony), that same failure to plead causation means that the Third Amended Complaint fails to state a claim.

In the November 2020 Order, the Court found that Fishon and Pearlman's allegations about their reliance on Peloton's advertisements, coupled with the reproduction of the challenged advertisements in the complaint, were sufficient to allege causation because they supported an inference that those named plaintiffs saw the advertisements prior to their purchases—even though they did not specifically plead that they had.  November 2020 Order at 16-19.  Peloton respectfully submits that the factual allegations in the Third Amended Complaint do not warrant a similar inference as to the new named Plaintiffs.  The Third Amended Complaint does not allege that *any* of the advertisements reproduced in the pleading appeared on the website during the class period:

All appeared after Passman made his purchases, all but one appeared after Alvarado made his, and the circumstances of Alvarado's purchase do not support an inference that he viewed any of the advertisements prior to his purchase.  ¶¶ 35, 37, 76-78.  The Third Amended Complaint should therefore be dismissed for failure to plead causation.

The Complaint only identifies three purportedly misleading advertisements:

- The financing page of Peloton's website in October 2017.  ¶ 76.
- The Canadian website for the Peloton App in November 2019.  ¶ 77.
- The Bike webpage in December 2019 or January 2021.  ¶ 78.

None of these advertisements could have affected Passman's purchasing decision, given that all date from *after* he purchased his Bike and Membership subscription in February 2017.  ¶ 35.  And the only advertisement that allegedly appeared before Alvarado purchased his Membership subscription in January 2019 was on the Bike financing page of Peloton's website.  ¶ 76.  There is no basis to infer, either in the Complaint or as a matter of logic, that Alvarado ever looked at Peloton's financing page given that he and his wife purchased their Bike from a friend and thus could not have financed it through Peloton.  ¶ 37.  Nor is there any basis to infer that either Plaintiff had access to (or reason to visit) Peloton's Canadian website or the website for the Peloton App— a product that is distinct from the Bike and Membership subscription, and which neither Plaintiff is alleged to have purchased.  *See* ¶¶ 35, 37.

While Peloton understands that even bare allegations of reliance coupled with reproduced advertisements may be sufficient to allege causation under the NYGBL, that is not the case here. There are no factual allegations to support a plausible inference that either Plaintiff would have stumbled upon any of the quoted representations.  Without that inference, Plaintiffs have not pled any facts sufficient to allege that they were injured by reason of the misleading advertisements, and therefore their claims should be dismissed.  *See, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*,

488 F. Supp. 3d 144, 161 (S.D.N.Y. 2020) ("[I]f the plaintiff did not see any of these statements, they could not have been the cause of [its] injury, there being no connection between the deceptive act and the plaintiff's injury."); *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 901-02 (E.D.N.Y. 2018) (dismissing §§ 349 and 350 claims where plaintiffs' allegations "neither explicitly state nor permit the plausible inference that Plaintiffs actually saw these statements prior to making the determination . . . to purchase"); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 740 (W.D.N.Y. 2020) ("[W]hile a plaintiff . . . need not have relied on (or even necessarily have believed) the allegedly deceptive conduct, he or she must have at least been exposed to it.").

### B.     Plaintiffs Have Not Pled A Materially Deceptive Omission.

In addition to alleging that Peloton's statements about its on-demand library were affirmatively misleading, Plaintiffs also allege that, starting on April 9, 2018, Peloton deceptively failed to disclose that it (i) had been accused of violating "any laws"; and therefore (ii) would be (or might be) removing over half of the classes in the on-demand library.  ¶¶ 21, 30, 34, 40, 102-03, 120, 140.  Those omissions are not actionable.

*First*, there is no duty to disclose threatened or impending litigation "that is not 'substantially certain to occur.'"  *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016); *see also In re Marsh & Mclennan Cos. Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 471 (S.D.N.Y. 2006).  Peloton therefore had no duty to disclose any potential litigation that may have resulted (nearly a year later) from the unsubstantiated accusation in a cease-and-desist letter.

*Second*, Plaintiffs' failure to allege that Peloton had a duty to inform consumers that it had been accused of violating the law is particularly deficient as to Passman, who Plaintiffs allege purchased a Bike and Membership subscription in February 2017—over a year before anyone accused Peloton of copyright infringement.  ¶¶ 35, 84; *cf.* ¶ 40 (alleging that "*[p]rior to purchasing* the Peloton Hardware and *commencing payment* for the Peloton Membership subscription,

[Peloton did not] inform[] Plaintiffs that Peloton had been accused of violating any laws. . .").  Of course, Peloton could not have deceptively omitted an accusation of purported copyright infringement that had not yet occurred at the time of Passman's purchase.

In any event, "an omission becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading." *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005).  Yet the challenged advertisements about Peloton's "growing" or "ever-growing" on-demand library make no representations whatsoever about whether anyone had accused Peloton of violating any laws.  Thus, no reasonable person viewing these advertisements could have been misled about whether Peloton had been so accused.  *See Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 244 (N.D.N.Y. 2021) (dismissing action where there was no plausible allegation that the marketing materials at issue created an expectation contrary to the allegedly omitted disclosure); *see also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153-54 (2d Cir. 2013) (omitting a particular fact from a press release was not misleading where nothing in the press release discussed that subject); *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 163-64 (S.D.N.Y. 2018) (no disclosure violation where the disclosed information and the allegedly "omitted" information were "different topic[s]").

*Third*, omissions are actionable only where a defendant "*had knowledge* of the [material information] and failed to disclose or actively concealed such information" at the time of the alleged misstatements.  *In re Sling*, 202 F. Supp. 3d at 359 (emphasis and alteration in original). There are no plausible factual allegations to support Plaintiffs' conclusory and illogical claim that Peloton "knew or should have known" that it would remove classes from its library as soon as it received the cease-and-desist letter in April 2018.  ¶ 40.  And even if Peloton knew that it was providing content that could be subject to copyright challenges, "[a] company is generally not

obligated to disclose internal problems . . . ."  *See, e.g.*, *Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*, 2017 WL 4082482, at *9 (S.D.N.Y. Aug. 24, 2017), *aff'd*, 735 F. App'x 11 (2d Cir. 2018).

Equally important, "[t]aking the time necessary to get things right is both proper and lawful.  Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal."  *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010).  Plaintiffs have not pled (and it would be implausible to infer) that the mere existence of copyright challenges precluded Peloton from continuing to provide content in the on-demand library and adding to the on-demand library (either by fighting the copyright challenges, otherwise resolving them, or keeping the classes but replacing the music at issue).  *See Womak v. EVOL Nutrition Assocs., Inc.*, 2021 WL 5906340, at *10 (N.D.N.Y. Dec. 14, 2021) (vague and conclusory allegations regarding defendant's knowledge insufficient to state an omissions-based claim).  Indeed, other allegations in the Third Amended Complaint make clear that the arrival of the demand letter did not lead Peloton to conclude immediately that it needed to take down classes:  Plaintiffs concede that Peloton has consistently and "categorically denied" that it violated any laws, ¶¶ 23, 49, and Peloton *did* keep providing the challenged content and growing the on-demand library for nearly a year after receiving the cease-and-desist letter, *see* ¶ 122.  These allegations belie any claims that Peloton knew or should have known "as early as" April 2018 that it would remove content from the on-demand library.[3]  *See* ¶¶ 30-31; *cf. Lebowitz v. Dow Jones & Co.*, 847

---

[3] And Peloton did disclose to its members—less than a week after it was sued for copyright infringement—that it had been sued and that it would be removing classes out of an abundance of caution.  *See* ¶¶ 28, 92.  Notwithstanding Plaintiffs' attempt to find fault even in that disclosure (on the basis that Peloton allegedly omitted that it would be removing "over half" of the classes in the library), Plaintiffs have not alleged that the number of classes removed was material to consumers or affected anyone's purchasing decisions.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995) (The NYGBL "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.").

F. Supp. 2d 599, 605-06 (S.D.N.Y. 2012), *aff'd sub nom.* 508 F. App'x 83 (2d Cir. 2013) (no duty to disclose to subscribers at the time they prepaid for an annual subscription that defendant "would spin off [a service] and discontinue subscribers' access for the duration of their annual subscription" because such "preliminary discussions are immaterial, as § 349(a) cannot reasonably be interpreted to require [defendant] to disclose its hypothetical or tentative business plans"); *see also Slayton*, 604 F.3d at 777.

Plaintiffs' omission-based claims thus should be dismissed.

### C.     The Voluntary Payment Doctrine Bars Plaintiffs' Claims.

Plaintiffs' Membership subscription-based claims also fail for the independent reason that both Plaintiffs "have continued to pay Peloton for subscription services." ¶ 39.  Because Plaintiffs have continued to pay for their Membership subscriptions, "voluntarily [and] with full knowledge of the facts," their claims are barred by the voluntary payment doctrine.  *See Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (1st Dep't 2004) (voluntary payment doctrine bars "recovery by any subscriber who, having experienced slow service and/or frequent connectivity outages, continued to use defendants' DSL service"); *see also Newman v. RCN Telecom Servs. Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (voluntary payment doctrine bars recovery by any subscriber who continued to pay for and use product).

Plaintiffs here chose to continue to use their Peloton products and to pay for their Membership subscriptions for years after learning that Peloton had been sued for copyright infringement and removed certain classes in response.  *See* ¶ 39.  That precludes their claims, and the Court should dismiss them for this independent reason.  *See Solomon*, 777 N.Y.S.2d at 56; *Newman*, 238 F.R.D. at 78; *Vaccariello*, 295 F.R.D. at 74 (refusing to certify class in part because the voluntary payment doctrine bars NYGBL claims by class members who continued to pay their subscription fees).

## III.   THE CLAIMS THAT PLAINTIFFS "ARE NOT PRESENTLY LOOKING TO RELITIGATE" SHOULD BE DISMISSED.

Despite claiming that they do not wish to "relitigate" issues that have already been decided, Plaintiffs have included several previously dismissed or abandoned claims in the Third Amended Complaint.  *See* ¶¶ 106 & n.70, 155.  Those claims should be dismissed.[4]

Plaintiffs claim that they "do not intend to forfeit any right to appeal the dismissal of former plaintiff Alicia Pearlman's claims under Michigan or New York law but that they are not repleading them here in an effort to avoid unnecessary duplicative litigation."[5] ¶ 155.  The addition of this lone allegation, however, does "replead" them—albeit without any factual allegations that would be sufficient to state a claim for relief.  Because the Third Amended Complaint fails to plead any facts as to Pearlman, the Complaint should  be dismissed with respect to her.  *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 309 (S.D.N.Y. 2015) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *see also Heine v. Dir. of Codes & Standards*, 2017 WL 3981135, at *7 n.12 (D.N.J. Sept. 11, 2017) ("The Court cannot expect Defendants to defend against claims that are not clearly and specifically alleged.").

Plaintiffs also assert claims on behalf of members of a putative nationwide class, claiming that they "are not presently looking to relitigate" claims under the NYGBL by non-New York purchasers but rather that they assert them only to "preserve the issue for appeal."  ¶ 106 & n.70.  The inclusion of these claims in the Third Amended Complaint, regardless of purpose, is grounds for dismissal at the motion to dismiss stage.  *See, e.g.*, *Kaufman v. Sirius XM Radio, Inc.*, 751 F.

---

[4] Peloton recognizes that the Court recently updated the docket to reflect that Fishon and Pearlman have been terminated as plaintiffs.  However, because the Third Amended Complaint does include claims on behalf of Pearlman, Peloton includes argument related to those claims.

[5] Second Circuit precedent is clear that previously dismissed claims like Pearlman's need not be retained in an amended pleading to preserve them for appeal.  *See, e.g.*, *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004).

Supp. 2d 681, 688 (S.D.N.Y. 2010) (dismissing nationwide class claims where "Plaintiffs have not alleged sufficient facts from which it could reasonably deduce that [non-New York residents] w[ere] deceived in New York"); *see also In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (dismissing claims brought by and on behalf of non-New York plaintiffs under the NYGBL at the pleading stage).  Such claims should be dismissed for the same reasons the Court dismissed Pearlman's NYGBL claims—as defined, the putative "nationwide" class includes consumers who did not transact in New York and thus lack statutory standing to bring such claims.  *See* November 2020 Order at 24-29; July 2021 Order at 4-11. Accordingly, the Court should once and for all dismiss all claims asserted on behalf of a putative nationwide class.

## IV.   ANY DISMISSAL PURSUANT TO RULE 12(B)(6) SHOULD BE WITH PREJUDICE.

While Rule 15 is often applied liberally to allow for the amendment of inadequately pled complaints, that application is not limitless.  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).  Courts should generally deny leave to amend in situations where there has been a "repeated failure to cure deficiencies by amendments previously allowed."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016); Fed. R. Civ. P. 15(a).  The Third Amended Complaint is Plaintiffs' *fourth* bite at the apple, and they again have failed to plead a viable claim. After years of discovery and purportedly over 2,700 candidates to choose from, counsel's continued failure to find a named plaintiff who can maintain this action is inexcusable and indicative of the lawyer-driven nature of this case.  They should not be rewarded with yet another "do-over."

Any further amendments would be unfairly prejudicial to Peloton, which has already been forced to spend great time and expense responding to these inadequate claims.  Enough is enough.

To the extent the Court grants dismissal under Rule 12(b)(6)—as opposed to 12(b)(1)—that dismissal should be with prejudice.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' claims should be dismissed for failure to plead Article III standing under Rule 12(b)(1), and dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

Dated:      March 4, 2022
            New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Steven N. Feldman*
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Steve.Feldman@lw.com
William.Reckler@lw.com
Lilia.Vazova@lw.com
Megan.Behrman@lw.com
Alexis.Godfrey@lw.com

William J. Trach
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000
William.Trach@lw.com

*Attorneys for Defendant*
*Peloton Interactive, Inc.*