**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC PASSMAN and ISHMAEL ALVARADO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>        Defendant. | Case No. 1:19-CV-11711-LJL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |

**Dated:**  March 25, 2022

# TABLE OF CONTENTS

Introduction ................................................................................................................................. 1

Statement of Facts and Procedural History ........................................................................... 3

Legal Standard ........................................................................................................................... 5

Argument .................................................................................................................................... 6

I.     Plaintiffs Have Article III Standing. ................................................................... 6

     A.    Plaintiffs Adequately Pleaded They Have Suffered a Cognizable Injury. ........................................................................................................ 6

     B.    Plaintiffs Adequately Pleaded That Their Injuries are Fairly Traceable to Peloton's Misleading Advertisements. ................................. 11

II.    Plaintiffs Have Sufficiently Pleaded NYGBL Claims and Thus Dismissal Pursuant to Rule 12(b)(6) is Improper. .................................................. 17

     A.    Plaintiffs Have Adequately Pleaded Causation under Sections 349 and 350. ....................................................................................................... 17

          i.    Plaintiffs have pleaded facts showing that Peloton's alleged misrepresentations caused them harm. ........................................... 17

          ii.   Although Plaintiffs pleaded reliance based on their exposure to Peloton's misrepresentations, exposure is not a NYGBL requirement. ................................................................... 18

     B.    Plaintiffs Have Sufficiently Pleaded Peloton's Deceptive Omission. ................................................................................................... 19

     C.    The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims. .......... 22

III.   The Court Cannot Dismiss Claims That Are Not Currently Asserted. .................. 23

IV.   Dismissal with Prejudice is Not in the Interest of Justice. ..................................... 25

Conclusion ................................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**CASES**                                                                              **PAGE(s)**

*Abbas v. Dixon*,
 480 F.3d 636 (2d Cir.2007)........................................................................ 22

*Aleisa v. GOJO Indus., Inc.*,
 538 F. Supp. 3d 764 (N.D. Ohio 2021).................................................... 12

*Allegra v. Luxottica Retail N. Am.*,
 No.17CV5216PKCRLM, 2022 WL 42867 (E.D.N.Y. Jan. 5, 2022) ................................ 18, 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 554 (2007)................................................................................ 6

*Bibicheff v. PayPal, Inc.*,
 844 F. App'x 394 (2d Cir. 2021) .......................................................... 10

*Blagman v. Apple Inc.*,
 No.12 CIV. 5453 ALC JCF, 2013 WL 2181709 (S.D.N.Y. May 20, 2013) .......................... 23

*Braynina v. TJX Companies, Inc.*,
 No.15 CIV. 5897 (KPF), 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)................................ 20

*Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*,
 No.1:20-CV-520, 2021 WL 2003110 (W.D.N.Y. May 19, 2021)........................................ 10

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
 101 F. Supp. 2d 236 (S.D.N.Y. 2000)...................................................... 12

*Carter v. HealthPort Techs., LLC*,
 822 F.3d 47 (2d Cir. 2016)...................................................................... 5, 6

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013)................................................................................ 10

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*,
 790 F.3d 411 (2d Cir. 2015).................................................................... 10

*Cruson v. Jackson Nat'l Life Ins. Co.*,
 954 F.3d 240 (5th Cir. 2020) ................................................................ 24

ii

*Cummings v. FCA US LLC*,
    401 F. Supp. 3d 288 (N.D.N.Y. 2019) ............................................................................ 8, 17

*Dennis v. JPMorgan Chase & Co.*,
    439 F. Supp. 3d 256 (S.D.N.Y. 2020) ................................................................................... 23

*Dillon v. U–A Columbia Cablevision of Westchester, Inc.*,
    100 N.Y.2d 525 (2003) .......................................................................................................... 22

*ED Cap., LLC v. Bloomfield Inv. Res. Corp.*,
    316 F.R.D. 77 (S.D.N.Y. 2016) ............................................................................................ 12

*Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*,
    544 F.2d 1126 (2d Cir. 1976) ................................................................................................. 5

*Farina v. Metro. Transportation Auth.*,
    409 F. Supp. 3d 173 (S.D.N.Y. 2019) .................................................................................. 17

*Fink v. Time Warner Cable*,
    810 F.Supp.2d 633 (S.D.N.Y. 2011) ..................................................................................... 22

*Fishon v. Peloton Interactive, Inc.*,
    No. 19-CV-11711 (LJL), 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020) .......................... passim

*Gould v. Helen of Troy, Ltd.*,
    No. 16 Civ. 2033 (GBD) 2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) .......................... 10, 15

*Guadagno v. Wallack Ader Levithan Assocs.*,
    No. 215CV04307ADSSIL, 932 F. Supp. 94 (S.D.N.Y. 1996) ................................................. 5

*Guariglia v. Procter & Gamble Co.*,
    No. 215CV04307ADSSIL, 2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018) .................... 6, 8, 23

*Hasemann v. Gerber Prod. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) ..................................................................................... 18, 19

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ....................... 24

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...................................................................................... 20

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................................................... 18

*In re Sw. Airlines Voucher Litig.*,
    799 F.3d 701 (7th Cir. 2015) ................................................................................................. 13

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017)..................................................................... 8

*Kaufman v. Sirius XM Radio, Inc.*,
  751 F. Supp. 2d 681 (S.D.N.Y. 2010)..................................................... 24

*Krobath v. S. Nassau Communities Hosp.*,
  178 A.D. 3d 807 (N.Y. App. Div. 2019) ........................................... 17, 20

*Kurtz v. Kimberly-Clarp Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017)............................................................ 19

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
  No.12-CV-08652 SN, 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ........................................ 12

*Leonard v. Abbott Lab'ys, Inc.*,
  No.10-CV-4676 ADS WDW, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ........................... 22

*Liberian Cmty. Ass'n of Connecticut v. Lamont*,
  970 F.3d 174 (2d Cir. 2020)...................................................................... 9

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)..................................................................... 25

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................. 6

*McCracken v. Verisma Sys., Inc.*,
  131 F. Supp. 3d 38 (W.D.N.Y. 2015)...................................................... 23

*Molock v. Whole Foods Mkt. Grp., Inc.*,
  952 F.3d 293 (D.C. Cir. 2020).................................................................. 24

*Monegro v. St. Insider Dot Com Inc.*,
  No. 21-CV-3339 (LJL), 2022 WL 445797 (S.D.N.Y. Feb. 11, 2022)................................ 10, 12

*Moser v. Benefytt, Inc.*,
  8 F.4th 872 (9th Cir. 2021) ...................................................................... 24

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015)...................................................................... 19

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, N.A.,
  85 N.Y.2d 20, 647 N.E.2d 741 (1995)................................................ 15, 20

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*,
  874 F. Supp. 2d 341 (S.D.N.Y. 2012)...................................................... 21

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  No. 15-CV-7199 (JMF), 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) .................................... 20

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013) ........................................................................................... 24

*Roche Cyrulnik Freedman LLP v. Cyrulnik*,
  No.21-CV-1746 (JGK), 2022 WL 248050 (S.D.N.Y. Jan. 27, 2022) ..................................... 5

*Rodriguez v. It's Just Lunch, Int'l*,
  300 F.R.D. 125 (S.D.N.Y. 2014) ................................................................................... 19

*Ross v. AXA Equitable Life Ins. Co.*,
  115 F. Supp. 3d 424 (S.D.N.Y. 2015) .............................................................................. 9

*Safe-Strap Co., Inc. v. Koala Corp.*,
  270 F. Supp. 2d 407 (S.D.N.Y. 2003) ............................................................................ 12

*Sambrano v. United Airlines, Inc.*,
  No.4:21-CV-1074-P, 2021 WL 5178829 (N.D. Tex. Nov. 8, 2021) ...................................... 25

*Sharpe v. A&W Concentrate Co.*,
  No. 19-CV-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ................... 6, 8, 18, 19

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) .......................................................................................... 21

*Smalls v. Collins*,
  10 F.4th 117 (2d Cir. 2021) ............................................................................................ 6

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ...................................................................................................... 25

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) ............................................................................................ 22

*Spiro v. Healthport Techs., LLC*,
  73 F. Supp. 3d 259 (S.D.N.Y. 2014) ............................................................................... 22

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (2000) ..................................................................................................... 18

*U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*,
  859 F. Supp. 2d 283 (E.D.N.Y. 2012) ............................................................................... 5

*Wilding v. DNC Servs. Corp.*,
  941 F.3d 1116 (11th Cir. 2019) ..................................................................................... 14

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) (*per curiam* ................................................................. 25

*Womack v. EVOL Nutrition Assocs., Inc.*,
No.621CV00332BKSTWD, 2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021) .......................... 22

**STATUTES**

N.Y. Gen. Bus. Law § 349 ........................................................................... 10, 17, 18, 19

N.Y. Gen. Bus. Law § 350 ........................................................................... 10, 17, 18, 19

**RULES**

Fed. R. Civ. P. 15 ............................................................................................................ 25

## <u>INTRODUCTION</u>

This Court already denied a motion to dismiss New York General Business Law ("NYGBL") claims brought by Peloton against New York plaintiffs. Peloton, however, now seeks another bite at the same apple by repackaging many of the same already-failed arguments. For example, Peloton again claims that Plaintiffs allege no injuries, this time asking the Court to dismiss for a lack of standing, rather than a failure to state a claim, even though this Court found that identical allegations sufficiently allege Peloton's customers were harmed by its conduct. *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 6564755, at *10-11 (S.D.N.Y. Nov. 9, 2020). And Peloton again argues that causation is not pled because the complaint does not allege exposure to Peloton's misrepresentations—even though this Court already found that plaintiffs do not need to plead exposure when bringing NYGBL claims (and even though, in any case, this new complaint *does* allege exposure). *Id.* at *8-9. This Court previously denied Peloton's motion to dismiss, and it should do so again.

While the current complaint is filed on behalf of different named plaintiffs, the core underlying allegations remain the same. As Peloton fought to claim market share for its stationary bike and treadmill, it touted its "ever-growing" and "growing" library of live and on-demand classes. In its quest to create content that was more appealing than that of its competitors, Peloton cut corners by setting those classes to music it had no rights to use. Despite full knowledge that its vaunted class library was built on a foundation of unlicensed music, Peloton nevertheless continued to promote its on-demand class library as "ever-growing" and "growing." All the while, Peloton never informed the consuming public that what was truly growing was a spate of cease-and-desist letters and threats of copyright infringement litigation that made the inevitable culling of its library impossible to ignore.

On March 25, 2019, facing a long-threatened multimillion-dollar copyright infringement suit filed by the National Music Publishers Association ("NMPA"), Peloton removed more than half its class library. This "purge" took place without a whisper of warning to consumers who purchased Peloton bikes and treadmills or to members paying monthly subscription fees to Peloton for what was supposed to be an "ever-growing" class library.

Peloton's misrepresentations and omissions are textbook consumer fraud under the NYGBL. Peloton's deceptive conduct affected every single consumer who had purchased a Peloton Bike or a Peloton Membership (or both), diminishing both the value of the hardware they purchased as well as the membership subscriptions they paid for each month.[1]

Peloton moves to dismiss Plaintiffs' Third Amended Complaint ("TAC") pursuant to Rules 12(b)(1) and 12(b)(6), but the crux of both arguments is the same: Plaintiffs never saw Peloton's "ever-growing" library misrepresentation, so its misrepresentations could not cause harm. ECF No. 197, Peloton's Mem. in Supp. of Mot. to Dismiss ("MTD") at 1-2, 9, 11-13, 15-17. Not only is Peloton factually incorrect—Plaintiffs allege they saw the misrepresentation and said so under oath—but its argument is legally irrelevant. As this Court found, "[t]he proposition that a plaintiff must allege in her complaint that she saw a deceptive statement in order to allege that statement caused her injury, however, is not supported by the holding in *Goldemberg* and appears not to be a complete or correct statement of law." *Fishon*, 2020 WL 6564755, at *8. That is because, "[w]hile an allegation that the plaintiff saw the misleading advertisement is sufficient to plead the 'by reason of' requirement, it is not necessary. The manner in which the plaintiff came to rely upon the deceptive act—and whether it can be proved—is a further issue of proof and not something that needs to be pleaded in detail for a complaint to proceed." *Id*. at *9.

---

[1] Unless otherwise defined, capitalized words have the same meaning assigned in the TAC.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

As with any startup company, when it was founded, Peloton had to move fast to do whatever it could to differentiate itself from the plethora of other fitness companies that sell stationary bikes, in-studio workout classes, or instructional home workout media. Peloton did this by selling access to an "ever-growing" and "growing" digital library of fitness classes led by professional instructors, and available on-demand, at any time, from the comfort of one's home, all for a flat monthly subscription fee. TAC ¶¶ 17, 65-66, 71. By offering an "ever-growing" and "growing" on-demand class library, Peloton could overcome consumers' concerns about paying a monthly subscription for essentially the same classes, or, even worse, a shrinking library. For that reason, the "ever-growing" nature of Peloton's on-demand class library was key to Peloton's marketing—after all, "the hardware is only as good as the app and subscription that comes with it." *Id.* ¶¶ 15, 71-81. To ensure that consumers got the message, Peloton built its website—its top source for selling Peloton Bikes and Memberships[2]—to tout its "ever-growing library of live and on-demand studio classes," and "unlimited access to a growing library of live streaming and on-demand classes." *Id.* ¶ 17.

Peloton was selling bikes and subscriptions by marketing its on-demand class library as "ever-growing" and "growing," but it knew its library was comprised of thousands of classes using copyrighted material that Peloton had no right to use. That is because, while Peloton deigned to get licensing from some copyright holders, it blatantly ignored the rights of others. *Id.* ¶ 20. In April 2018, Peloton began receiving cease-and-desist letters from the NMPA, detailing Peloton's copyright infringement from using unlicensed songs. *Id.* ¶¶ 19-21, 83-84. But Peloton could not risk losing the competitive edge it gained by promising consumers an "ever-growing"

---

[2] Deposition of Peloton's Ryan Dillon-Curran, Tr. 93:16-21. *See* ECF No. 152-1.

and "growing" class library. *Id.* ¶¶ 17, 21, 85-86, 95, 103. A year after receiving the first cease-and-desist letter, the NMPA sued Peloton for Peloton's unlicensed use of its music. *Id.* ¶ 22.

In response, on March 25, 2019, facing a major lawsuit over the music that was the cornerstone of its class library, Peloton decided to purge every class that contained at least one infringing song. As a result of this purge—and despite promises of an "ever-growing" or "growing" library—Peloton cut *more than half* of its entire catalogue of classes. *Id.* ¶¶ 23, 25, 87-89. This purge dramatically shrunk the number of classes in Peloton's library (the exact opposite of "ever-growing"), and materially diminished users' experience. *Id.* ¶¶ 27, 91.

Despite the cease-and-desist letters and the inevitable purge they portended, Peloton never disclosed to Plaintiffs Passman or Alvarado, nor to any Class members, that it would be removing more than half its on-demand library classes. *Id.* Instead, Peloton stayed the course by continuing to charge the same price for its subscription service, even though its consumers had already spent thousands of dollars for the Peloton hardware and even though Peloton knew its subscribers would not get the very thing Peloton promised: an "ever-growing" and "growing" library of on-demand classes. *Id.* ¶¶ 32, 97-105. Plaintiffs were thus deprived of the value they expected from a supposed "ever-growing" library of Peloton classes, as well as the value of the hardware they purchased in expectation of having that "ever-growing" library.

Based on these exact same allegations, this Court denied Peloton's motion to dismiss the consumer protection claims brought under the NYGBL for consumers who, like these Plaintiffs, purchased their Peloton Bike and Membership in New York. *Fishon*, 2020 WL 6564755, at *4. After dismissing without prejudice claims brought by Michigan resident Alicia Pearlman, this Court found the prior New York resident plaintiff, Eric Fishon, inadequate to serve as a class representative. ECF No. 168, Jan. 19, 2022 Order Denying Class Certification, p.26. Plaintiffs

Passman and Alvarado then reviewed and filed the TAC individually and on behalf of putative nationwide and New York-based classes. TAC ¶¶ 106-07; Ex. 1, Passman Decl. ¶ 6; Ex. 2, Alvarado Decl. ¶ 6. As this is a class action, it is unsurprising that many allegations in the TAC mirror allegations that already survived Peloton's prior efforts to dismiss Plaintiffs' NYGBL claims. That said, the TAC includes necessary facts and allegations for both new Plaintiffs.

## **LEGAL STANDARD**

*Federal Rule of Civil Procedure 12(b)(1)*: Peloton first moves to dismiss pursuant to Rule 12(b)(1). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a . . . factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the jurisdictional challenge is fact-based, as it is here, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff can then "come forward with evidence of their own to controvert that presented by the defendant." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

While the Court may resolve a factual dispute over jurisdiction at the time the motion is filed, it also has discretion to defer final determination until trial. *Guadagno*, 932 F. Supp. at 95. "Where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the [C]ourt should use the standard applicable to a motion for summary judgment and dismiss only where no triable issues of fact exist." *Roche Cyrulnik Freedman LLP v. Cyrulnik*, No. 21-CV-1746 (JGK), 2022 WL 248050, at *4 (S.D.N.Y. Jan. 27, 2022).

*Federal Rule of Civil Procedure 12(b)(6)*: Peloton also moves to dismiss under Rule 12(b)(6), the same procedural basis as its prior motion to dismiss. To survive such a motion, the

complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). While a complaint must offer more than "labels

and conclusions" or "naked assertion[s]" devoid of "further factual enhancement," *Twombly*, 550

U.S. at 555, 557, the key question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In ruling on a 12(b)(6) motion, courts

accept a complaint's factual allegations, and the reasonable inferences that can be drawn

therefrom, as true. *Smalls v. Collins*, 10 F.4th 117 (2d Cir. 2021).

## ARGUMENT

### I.    Plaintiffs Have Article III Standing.

A plaintiff has Article III standing when he (1) suffered some actual or threatened injury,

that can (2) fairly be traced to the challenged action of the defendant, and (3) likely be redressed

by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Carter v.*

*HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (reviewing the elements of Article III

standing). Peloton's motion raises a factual challenge to Plaintiffs' standing by arguing that

neither Plaintiff can show that they have a cognizable injury, and that their injuries are not

traceable to Peloton's misleading representations and omissions. MTD at 10-14.

#### A.    Plaintiffs Adequately Pleaded They Have Suffered a Cognizable Injury.

Plaintiffs have been injured by Peloton's conduct and have alleged that injury in the

TAC. Both Plaintiffs were injured when they paid price premiums for Peloton's products. TAC

¶¶ 34-5, 37, 41-2. The "payment of a premium [is] an injury in and of itself." *Guariglia v.*

*Procter & Gamble Co.*, No. 215CV04307ADSSIL, 2018 WL 1335356, at *12 (E.D.N.Y. Mar.

14, 2018) (quotation omitted) (standing where customers paid a price premium); *Sharpe v. A&W*

*Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 3721392, at *2 (E.D.N.Y. July 23, 2021) (alleged payments of a price premium satisfies standing).

Peloton previously moved this Court to dismiss these claims for a purported lack of injury caused by Peloton's misrepresentations. ECF No. 30, Mem. of Law in Supp. of Peloton Interactive, Inc.'s Mot. to Dismiss Pls.' Class Action Compl. Peloton asked this Court to find that there was no sufficient allegation of a cognizable injury because, it contended, the complaint did not delve into details about how exactly the New York plaintiff had overpaid. *Id.* at 17-18; ECF No. 41, Reply in Supp. of Peloton Interactive, Inc.'s Mot. to Dismiss Pls.' Class Action Compl. at 12-13. In denying that argument, this Court found, "[t]he Complaint alleges that 'Plaintiffs attributed value to Peloton's promises regarding the nature and characteristics of its on-demand digital library and would not have purchased the hardware and corresponding Peloton Membership, or would not have purchased it on the same terms, if they knew the truth.' Compl. ¶ 28. *No more is necessary at this stage*." *Fishon*, 2020 WL 6564755 at *11 (emphasis added). This Court further found: "Plaintiffs do allege that they were injured by the misrepresentation—they had access to a smaller number of classes than they reasonably believed they would have access to at the time of purchase. Accordingly, there is a connection between the misrepresentation and ... harm from, or failure of, the product." *Id*. (quotation omitted).

The TAC contains the same injury allegations that this Court already found sufficient, and thereby sustained, in the prior complaint. As before, Plaintiffs have alleged that Peloton damaged Plaintiffs and the Class in violation of the NYGBL by misrepresenting Peloton's on-demand library of classes as "growing" and "ever-growing," and failing to disclose the inevitable purge due to Peloton's copyright violations. TAC ¶ 34. As alleged in the prior complaint, Peloton's misrepresentations and material omissions caused Plaintiffs and the Class "to pay

increased costs for the Peloton hardware and corresponding Peloton Membership, which was worth less than represented" due to Peloton's misrepresentations and omissions. *Id.* at ¶ 41. In other words, "Plaintiffs attributed value to Peloton's promises regarding the nature and characteristics of its on-demand digital library." *Id.* at ¶ 42. And, as was alleged in the prior complaint, these Plaintiffs would not have purchased, or would not have purchased on the same terms, the Peloton Hardware and Membership had they known the truth that Peloton would purge its on-demand library by more than half. *Id.*; *see also id.* at ¶¶ 90-91 ("loss [of music from purged classes] was a real and actual injury to consumers"); ¶ 99 (each class "adds incremental value" to Plaintiffs' and other Class members' subscriptions; therefore, Peloton's purge "lowered the value" of their subscriptions); ¶¶ 112, 126-29, 145-50 (Plaintiffs and the Class have suffered and will continue to suffer injury because they overpaid and did not know the truth that Peloton would halve its on-demand library, and that it would not be "ever-growing").

There is nothing conjectural or hypothetical about Peloton promising consumers an "ever-growing" library, then purging more than half the classes of that library. That is what Peloton did here, drastically *shrinking* (not growing) the library's size, and thus not providing Plaintiffs what they bargained for. Plaintiffs thus overpaid for Peloton's products. As previously noted, the "payment of a premium [is] an injury in and of itself." *Guariglia*, 2018 WL 1335356 at *12 (quotation omitted) (standing exists where customers paid a price premium); *Fishon*, 2020 WL 6564755, at *10 (collecting cases under New York law); *Sharpe*, 2021 WL 3721392 at *2 (alleged price premium satisfies standing); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 303 (N.D.N.Y. 2019) ("The Second Circuit recently noted that 'overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact.'") (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)).

Indeed, Plaintiffs' injury is not only actual, it is demonstrable. As submitted to the Court with prior class certification briefing, Dr. J. Michael Dennis conducted a conjoint analysis to measure how important the "ever-growing" library was to consumers. ECF No. 119, Pls.' Mem. of Law in Supp. of Pls.' Mot. for Class Certification at 6-7; *see also* Ex. 3, ECF No. 120, Dennis Decl. ¶¶ 21-23, 60-72.[3] That conjoint analysis shows that the injury caused by Peloton's misrepresentations was anything but hypothetical. It was actual, concrete, and measurable. Relying on Dr. Dennis's analysis, economist Colin Weir then analyzed and calculated the damages arising from the price premium. Ex. 4, ECF No. 188, Weir Decl. ¶¶ 17, 30-38 (*see* ECF No. 121 for unredacted copy of Ex. 4); *see also* ECF No. 119, Pls.' Class Cert. Mem., at 6.

Significantly, a case that Peloton cites in ostensible support of its dismissal motion actually does the opposite, in that it confirms that an overpayment for a product or service based on a misrepresentation causes concrete economic injury. In *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 435-36 (S.D.N.Y. 2015), the court collected cases finding standing and injury for "consumers who allege the purchase of a product that was, at the point of sale, reduced in value because of a corporation's misrepresentations—resulting in immediate, concrete, and particularized financial harm." That is precisely the case here.[4] The other cases upon which Peloton relies deal with hypothetical injuries—not concrete overpayments like this case—that are easily distinguishable.[5]

---

[3] Dr. Dennis also conducted a consumer perception survey to measure what consumers expected from the phrase "ever-growing" and "growing" library. Ex. 3, Dennis Decl. at ¶¶ 73-87.

[4] While confirming the law, *Ross* is distinguishable on the facts. The court did not find standing because the allegations dealt only with "a person's abstract interest in accurate information" from an insurer, finding that plaintiffs' theories of injury were speculative future risks. *Id*. at 433-37. That is not the case here, where Plaintiffs already overpaid.

[5] *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 185 (2d Cir. 2020) (policy was revised shortly after quarantines were imposed, and appellants did not allege subjection to a

Peloton's additional challenges to Plaintiffs' standing fare no better. Peloton claims that Plaintiffs cannot have suffered harm during the class period (*i.e.*, before the purge) because they got what they bargained for—a growing, on-demand library. MTD at 14. That is not the law. Instead, as noted in the case Peloton cites, the "injury occurred at the time of purchase, not when the plaintiff was physically injured." MTD at 14 (citing *Gould v. Helen of Troy, Ltd.*, 2017 WL 1319810, at *3 (S.D.N.Y. Mar. 30, 2017). Financial harm under NYGBL § 349 and § 350 is incurred when the transaction occurs. *Gould*, 2017 WL 1319810, at *3. That is because, when Plaintiffs purchased their Peloton products (the Bike and/or the Membership) prior to the purge, the value of the "ever-growing" or "growing" library was built into the price they were paying at that time. When Peloton purged its library later, it was revealed to Plaintiffs they were never getting what they thought—connected hardware with access to an "ever-growing" class library.

In addition to claiming that Plaintiffs have no standing for purchases made *before* the purge, Peloton also says that purported injuries suffered *after* the purge "cannot support standing here." MTD at 13. It is thus unclear when Peloton thinks a consumer could *ever* have standing to assert claims, if neither before nor after proof is given to its lie. In any event, this argument fails

---

quarantine since the revision); *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417–18 (2d Cir. 2015) (plaintiff "does not allege that it has suffered direct injury as a result of the defendants' actions" but instead attempts to assign claims from noteholders to itself); *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, No. 1:20-CV-520, 2021 WL 2003110 (W.D.N.Y. May 19, 2021) (no facts alleging that the defendant, rather than subsidiary defendants that entered into the contracts, engaged in deceptive behavior so nothing to establish the defendant deprived them of any expected benefits); *Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 397 (2d Cir. 2021) (alleged injury was a result of her office manager's access to and use of personal and business information to defraud her, but for which PayPal is not alleged to have been responsible); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013) (respondents do not face an impending threat; costs to avoid surveillance are simply the product of their fear of surveillance, which is insufficient to create standing); *Monegro v. St. Insider Dot Com Inc.*, No. 21-CV-3339 (LJL), 2022 WL 445797, at *3 (S.D.N.Y. Feb. 11, 2022) (plaintiff does not allege he had an interest in returning to defendant's website, which is fatal to standing under the ADA).

as well; Peloton promised Plaintiffs and the Class an "ever-growing" and "growing" library, and sold hardware and subscriptions that priced in those representations. When Peloton cut more than half its library, it nevertheless continued to charge the same price. ECF No. 130-24, Dravillas Decl. Ex. 23. Plaintiffs and the other Class members suffered damages after this purge because they were paying a premium for what was supposed to be (but was not) an ever-growing library. Plaintiffs sufficiently pleaded a cognizable injury for Article III standing.

> **B.     Plaintiffs Adequately Pleaded That Their Injuries are Fairly Traceable to Peloton's Misleading Advertisements.**

Peloton also argues that "Plaintiffs have not pled, and cannot prove, the 'fairly traceable' causation element of standing." MTD at 13. Peloton contends that the TAC makes only vague references to "relying on" Peloton's representations, and, in any case, says Peloton, Plaintiffs supposedly testified that they did not see the misrepresentation prior to their purchases. *See, e.g.*, MTD at 11. On this point, Peloton is twice incorrect, as Plaintiffs have not only alleged in the TAC that their injuries are traceable to Peloton's misrepresentations, but they each also testified to that point, under oath, while being questioned by Peloton's counsel.

First, the TAC directly ties Plaintiffs' purchases to Peloton's false promises of a "growing" or "ever-growing" class library. TAC ¶¶ 35, 37 (Plaintiffs Passman and Alvarado relied on Peloton's misrepresentations when purchasing their Peloton products). Indeed, both Plaintiffs alleged that they relied on Peloton's representations about its "ever-growing" or "growing" on-demand library of classes when making their purchases, even though reliance is not even an element of the NYGBL. *Id*. The foregoing allegations are more than sufficient to confer standing, particularly because they go beyond the allegations that this Court previously found sufficient at the pleading stage. *Fishon*, 2020 WL 6564755 at *9 ("The conclusion that a plaintiff need not state explicitly in her complaint that she saw the misleading advertisement is

consistent with *Twombly/Iqbal* and the Second Circuit's holding in *Pelman ex rel. Pelman v. McDonald's Corp.*, that § 349 claims are subject only to the" Rule 8(a) notice-pleading requirements.). In any case, injury may be pleaded generally. *Monegro v. St. Insider Dot Com Inc.*, No. 21-CV-3339 (LJL), 2022 WL 445797, at *2 (S.D.N.Y. Feb. 11, 2022) (Liman, J.).[6]

Remarkably, Peloton also claims that Plaintiffs "admitted they did not see any of the alleged misrepresentations described in the Third Amended Complaint." MTD at 12. This is patently untrue. Peloton's contention is based on cherry-picked deposition excerpts taken out of context, and a complete failure to cite the abundant testimony that belies Peloton's argument.[7]

---

[6] Because Plaintiffs may plead injury generally, Peloton is wrong to criticize them for not pleading detailed allegations regarding their overpayment theory of damages; such specifics are the province of experts. As before, in connection with their forthcoming class certification motion, Plaintiffs are prepared to provide evidence of overpayment through expert testimony regarding the price premium that Plaintiffs and the Class paid due to Peloton's misconduct. Even Peloton's citation to out-of-circuit, non-binding authority recognizes that expert testimony is unnecessary at this stage. *Aleisa v. GOJO Indus., Inc.*, 538 F. Supp. 3d 764, 773-74 (N.D. Ohio 2021) (at the pleading stage, "no one is asking for. . . robust economic analysis"; allegations of overpayment "*may* confer standing in the right circumstances"). Nevertheless, as noted above, Plaintiffs submit the declarations of Dr. Dennis and Mr. Weir as Exhibits 3 and 4, respectively.

[7] Compounding its sharp practice, Peloton inappropriately states in its Motion, that it had sent a Rule 11 letter. MTD at 1, n.2; *see also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000) (issuing sanctions against a party that filed a Rule 11 motion because such motions "must never be used as a mere tactic to bolster a response— whether meritorious or not—to a motion or pleading"). In addition to being legally and factually baseless, Peloton's Rule 11 letter is procedurally defective because it included no motion or even a notice of motion. *ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) (denying a Rule 11 request for sanctions in part because the moving party failed to comply with Rule 11's safe harbor provision). Peloton sent Plaintiffs the defective Rule 11 letter on February 24, 2022, and Plaintiffs responded on March 11, 2022. To date, Peloton has not filed a Rule 11 motion. Should Peloton decide to proceed with its baseless Rule 11 threat, Plaintiffs will cross-move, under Rule 11, for sanctions and attorneys' fees. *Lee v. Grand Sichuan E. (N.Y.) Inc.*, No. 12-CV-08652 SN, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014) (*citing Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) ("Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney.")). Regardless, Peloton's Rule 11 letter gambit must be ignored, except as proof of the extent to which Peloton attempts to distract the Court from facts.

One need look only as far as Plaintiffs' own testimony to see that they not only were exposed to Peloton's misrepresentations of a "growing" or "ever-growing" library of classes, but also that those promises were an important part of Plaintiffs' purchases.

For example, Peloton says that Plaintiff Passman testified he was never exposed to the "ever-growing" or "growing" representation. MTD at 11-12. Peloton then cites Plaintiff Passman's deposition, lines 3-8 on page 83. In providing the text for that cite, Peloton includes the full question: "Have you ever seen any advertisement that said Peloton's library was 'ever-growing'?" *Id*. But when providing Mr. Passman's answer, Peloton opens with an ellipsis before stating that Mr. Passman "does not recall" if he saw an advertisement. But the ellipsis is key to Peloton's deceptive drafting and to understanding what the truth actually is. *Cf. In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 713 fn.4 (7th Cir. 2015) (noting "disappointment" in counsel for using ellipsis to reverse the true meaning of a citation). What Mr. Passman actually said (and which Peloton creatively omits) was that a Peloton salesman ***told him*** that the on-demand class library would be "ever-growing" and/or "growing." Ex. 5, Dravillas Decl. Ex. A, Passman Tr. 83:3-8 ("Q: Okay. Okay. Have you ever seen any advertisement that said Peloton's library was "ever-growing"? A. I don't think I've ever seen an ad. ***The salesman told me that***, but I -- I don't recall ever seeing an ad or advertisement with that, no.") (emphasis added). The full citation referenced by Peloton shows the exact place Mr. Passman was exposed to the misrepresentation.

Similar testimony abounds, with Plaintiff Passman explaining both where he heard the misrepresentations and how it affected his decision to purchase his Peloton Bike and Peloton Membership. Some of his explanations include:

- *Id.* at 45:24-46:12: Mr. Passman explained that the Peloton sales representative told him the library is "going to get bigger and bigger 'cause, you know, all – all the rides that they do are – are recorded and on-demand . . . 'You'll have more and more.' And

I said, 'Wow, this is unbelievable.' And that's – you know, that was another big selling point";

- *Id.* at 46:17-22: Mr. Passman recalled that the Peloton sales representative told him that Peloton would be adding new classes and that the class library would be "[j]ust growing – growing more and more . . . [b]igger and bigger"; and

- *Id.* at 104:3-19: Mr. Passman explained that Peloton's representation that the on-demand class library would be growing was a reason he purchased the bike. (Q. You told us earlier that when you bought your bike, the sales representative said the on-demand library would grow more and more? A. Correct. Q. Was that rep – was the representation that the on-demand library would grow more and more one of the reasons you purchased your bike? A. Well, yeah, 'cause I – again, I'm not – I'm not able to do the live ones, so I depend on the library to do all my rides. Yes.").

Plaintiff Passman further testified how he interpreted Peloton's representations. *Id.* at 84:8-20 (Q. When the sales associate told you that Peloton's classes would be growing, what did you take that to mean? A. There'd be more classes; there'd be more on-demand; there'd be more selections . . . There'd be more classes to choose from. That's what I took it as."). In sum, there simply is no basis to say that Mr. Passman was not exposed to the misrepresentation.[8]

Peloton also argues that Passman lacks standing because he purchased his bike in February 2017, prior to the beginning of the class period. MTD at 10-11. Not so. As an initial matter, that argument ignores that Passman paid for his Peloton Membership during the class period. TAC ¶ 39. Those payments alone give him standing.[9] Moreover, Peloton's narrow focus on the class period does not defeat standing for purchases made before the class period. For one, to the extent Peloton knew or should have known it was using unlicensed music before April 9,

---

[8] To the extent that Peloton has questions about Mr. Passman's prior testimony, Peloton may depose Mr. Passman in his capacity as a proposed class representative. But Peloton's conjectures and misleading pleading cannot serve as the basis for a successful dismissal motion.

[9] It also renders inapposite Peloton's citation to out-of-circuit, non-binding case law. In *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019), the Court held it was "impossible to know" whether any named plaintiffs made donations before or after the false statements were made. But here we know for sure that Passman paid for his Peloton Membership before, during, and after the class period, with each payment constituting a price premium overpayment.

2018, it also knew or should have known that its "ever-growing" or "growing" library representation was a false promise. And moreover, because Passman purchased the bike and membership with a price based on the false promise of an "ever-growing" library, his injury occurred at the time of his transaction, even though the event that made that promise false occurred later when Peloton purged its library. *Supra* at 10; *see also Gould*, 2017 WL 1319810, at *3. Thus, even assuming Peloton was unaware of its rampant copyright infringement until it received a cease-and-desist letter on April 9, 2018, and even though the purge happened in March 2019, the harm to Mr. Passman accrued when he entered his transaction with Peloton.[10]

Peloton's challenge to Plaintiff Alvarado's standing fares no better, as Mr. Alvarado's testimony similarly supports the allegations in the TAC. For example:

- Ex. 5, Dravillas Decl. Ex. B, Alvarado Tr. 71:24-72:15: Plaintiff Alvarado explained that, prior to his purchase, Peloton never promised that a specific class taught by Stephanie Nieman would never be taken down, but had implied that its on-demand fitness library would be forever growing. He even clarified that he understood that to mean that you could always go back and take a class that had been there before;

- *Id*. at 85:10-23 (Q. So the phrase ever growing, have you heard that before? A. Yes, forever growing. They're just constantly building their catalog.); and despite not remembering where he heard the phrase ever-growing, he agrees it is fair to say he recalls seeing or hear it somewhere: "Yea, it could be from probably one of the advertisements . . .");

- *Id*. at 86:5-16: Plaintiff Alvarado specifically said that the phrase ever-growing library was important to his purchase of his bike and subscription and the reason why it was important;

- *Id*. at 40:21-41:1: Plaintiff Alvarado clarified that while he and his wife purchased the bike from one of his wife's friends, the purchase of both the bike and the Peloton Membership was by both Plaintiff Alvarado and his wife from their joint account (although his wife set up the subscription, he said, "I'm paying for it.").

---

[10] Notably, in pleading a viable NYGBL claim, it is unnecessary for a plaintiff to establish a defendant's intent to defraud or mislead. *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, N.A., 85 N.Y.2d 20, 26, 647 N.E.2d 741, 745 (1995).

Alvarado also testified that he believes he _did_ visit Peloton's website prior to purchasing his Peloton Bike. _Id_. at 46:15-25 (Q: So to be clear, you don't type in, you know, whatever Peloton's website is on your Google browser to go visit that website for -- for any reason? A: I might have. Not -- I don't recall any time soon. I might have – maybe when they -- like, when we got the bike, I might have wanted to see what packages that they had offered. Say, Oh, great, we had a good cost savings, you know, just to compare. You know, I -- I don't necessarily go on their -- their website. I do react or click to links that are sent to me from Peloton.").

Plaintiffs' deposition testimony and the attached affidavits bolster the already sufficient TAC allegations establishing that they suffered concrete and particularized injuries traceable to Peloton's misrepresentations and omissions in this case. Moreover, as detailed below, Plaintiffs sufficiently allege causation under the NYGBL.[11] Accordingly, the Court should reject Peloton's standing arguments regarding Plaintiffs' injuries and deny the motion to dismiss.

Finally, Plaintiffs disagree with Peloton that they lack standing to seek injunctive relief. That said, it appears that Peloton has finally stopped representing that its on-demand class library is "ever-growing" or "growing." Absent injunctive relief, there are no guarantees that Peloton will not later renew the misrepresentation. But to streamline these proceedings, and given Peloton's withdrawn misrepresentation, Plaintiffs withdraw their request for injunctive relief.

---

[11] Peloton cites _Quintana v. B. Braun Medical Inc._, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018), but it involved allegations of physical harm from a defective medical device; it had nothing to do with the price of an item where misrepresentations led to a price premium paid by all users regardless of whether they were aware of the representation. And in _Zachmann v. Coleman Co. Inc._, plaintiffs "allege[d] a generalized campaign of false advertising" not that they were injured by "paying a price premium they would otherwise not have paid," or that the products they purchased were actually the subject of the defendant's misrepresentations. 2022 WL 161480, at *4 (S.D.N.Y. Jan. 8, 2022) (quotations omitted). Rather, they "allege[d] a generalized campaign of false advertising, which is insufficient to sustain claims pursuant to Sections 349 or 350." _Id._ Plaintiffs' claims here are not similarly vague.

II.     **Plaintiffs Have Sufficiently Pleaded NYGBL Claims and Thus Dismissal Pursuant to Rule 12(b)(6) is Improper.**

To state claims under NYGBL §§ 349 and 350, a plaintiff must plead: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019) (quotation omitted). New York law prohibits not only affirmative misrepresentations, but also material omissions. *Krobath v. S. Nassau Communities Hosp.*, 178 A.D. 3d 807, 809 (N.Y. App. Div. 2019). To state an NYGBL omission claim, a plaintiff must allege that the defendant alone possessed material information and failed to disclose that information. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019). As this Court previously noted, claims under these sections need only meet the "bare-bones notice-pleading requirements of Rule 8(a)" and not Rule 9(b). *Fishon*, 2020 WL 6564755 at *9.

A.      **Plaintiffs Have Adequately Pleaded Causation under Sections 349 and 350.**

Peloton argues that because Plaintiffs do not allege they saw one of three specific examples of Peloton's "ever-growing" misrepresentation included in the TAC, they, therefore, cannot have been harmed by Peloton's marketing campaign to promote the "ever-growing" nature of its library. MTD at 15-16. This argument is both factually and legally incorrect.

i.      **Plaintiffs have pleaded facts showing that Peloton's alleged misrepresentations caused them harm.**

As discussed above, Peloton is factually incorrect that Passman and Alvarado were not exposed to Peloton's misrepresentations. *See supra* at 13-16. Moreover, contrary to Peloton's assertion that Plaintiffs' examples of the "ever-growing" misrepresentation —explicitly acknowledged as mere examples in the TAC—were the sum total of Peloton's marketing campaign, Plaintiffs explicitly allege that Peloton began its "ever-growing" marketing campaign

as early as 2016, well before either Passman or Alvarado purchased any of their Peloton

products. TAC ¶ 73. Plaintiffs have also alleged the "'ever-growing' nature of Peloton's on-

demand digital library [was] central to Peloton's marketing," TAC ¶ 80, and that Peloton

continued to make its misrepresentations "for years, until late 2020[.]" TAC ¶ 81. In addition,

both Passman, TAC ¶ 35, and Alvarado, TAC ¶ 37, allege they were exposed to Peloton's ever-

growing misrepresentation prior to their purchases. Ex. 1, Passman Declaration ¶ 10-11; Ex. 2,

Alvarado Decl. ¶ 11. There can be no debate on the alleged and offered facts as they relate to

what Plaintiffs were exposed to prior to their respective purchases.

### ii.     Although Plaintiffs pleaded reliance based on their exposure to Peloton's misrepresentations, exposure is not a NYGBL requirement.

In any event, Peloton's argument is also legally unfounded. Under NYGBL § 349 and

§ 350, there is <u>*no requirement*</u> that a plaintiff demonstrate he relied on a defendant's

misrepresentation. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000). *See also, Allegra v.

Luxottica Retail N. Am*., No. 17CV5216PKCRLM, 2022 WL 42867, at *8 (E.D.N.Y. Jan. 5,

2022) ("Reliance on the alleged deception is not required by either Section 349 or Section

350."); *In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("neither Section 349

nor 350 require proof of reliance"). In fact, there is no requirement that a plaintiff show a

misrepresentation had *any* effect on that plaintiff's decisions. *Stutman*, 95 N.Y.2d at 30.

Plaintiffs thus need not show that they, or any specific absent Class members, were

exposed to Peloton's misrepresentation. *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 274

(E.D.N.Y. 2019) ("[S]ections 349 and 350 of the GBL do not contain a viewing requirement or a

reliance requirement[.]"). By its argument, Peloton improperly tries to interpose a reliance

requirement into NYGBL § 349 and § 350. But again, there is no reliance requirement in

NYGBL § 349 or § 350, so Plaintiffs need not show reliance to sustain their claims. *Sharpe*,

2021 WL 3721392 at *4. To demonstrate causation, a plaintiff "must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). Plaintiffs have done this.

There is no tension in saying that a plaintiff must show causation, but not reliance. The "price premium" theory of damages is a prime example. *See, e.g.*, *Allegra,* 2022 WL 42867 at *19-21 (NYGBL does not require plaintiffs to show entire class was exposed to misrepresentation); *Kurtz v. Kimberly-Clarp Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) (noting that "the injury is the purchase price") *Sharpe*, 2021 WL 3721392 at *4; *see also* Ex. 3, Dennis Decl. ¶¶ 19, 35-44, 60-72; Ex. 4, Weir Decl. ¶¶ 16-38. After all, "a deceptive practice can cause a consumer damages even if the consumer does not rely on or see the deceptive practice when purchasing a particular product." *Hasemann*, 331 F.R.D. at 263. Plaintiffs allege that here, claiming that Peloton's "ever-growing" library representations resulted in a higher market price for its products, thereby causing Plaintiffs and the Class to sustain damages by overpaying for their purchases. TAC ¶¶ 41-42, 127, 147. Though Plaintiffs did rely on the representation here, neither Plaintiffs nor any given Class member need have relied on it to have been injured because the price premium applied to all of Peloton's products. *Haseman*, 331 F.R.D at 263.

Because Plaintiffs need not allege they saw a deceptive statement to allege the statement caused them injury, and, instead, are only required to "allege that [they] suffered a loss because of defendants' deceptive act," Plaintiffs have sufficiently pleaded causation under NYGBL § 349 and § 350. *See Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014).

### B.    Plaintiffs Have Sufficiently Pleaded Peloton's Deceptive Omission.

Peloton next argues that its failure to disclose that it had been accused of copyright violations, and that it would be shrinking its class library by half, was not deceptive. MTD at 17. But Peloton's argument is based on inapplicable law and a mischaracterization of the facts.

Peloton relies on *In re Lions Gate Entm't Corp. Sec. Litig.* for the proposition that it had no obligation to disclose threatened or impending litigation that it believed was not substantially likely to occur. *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016). But *In re Lions* is a securities case, not a NYGBL case in which all that is required to state a claim for omission is that "the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Braynina v. TJX Companies, Inc.*, No. 15 CIV. 5897 (KPF), 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 745 (1995)); *Krobath v. S. Nassau Communities Hosp.*, 178 A.D.3d 807, 809, 115 N.Y.S.3d 389, 392 (2019) (same). Peloton does not even challenge that it began receiving cease-and-desist letters in April 2018, or that consumers did not have any such information until Peloton had purged its library after being sued by the NMPA for alleged copyright infringement.[12]

On the facts, the copyright infringement claims brought against Peloton did not amount to some vague potentiality for litigation—Peloton failed to obtain licensing for music in more than half of its on-demand class library. In contrast to the cases that Peloton cites, "there is nothing speculative here. Rather, the consequences of multiple [breaches of copyright law] were clear—

---

[12] Plaintiffs meet the Rule 10(b) standard offered by Peloton as well. In *Lions Gate*, plaintiffs failed to allege the omission was material in that it "'significantly altered the total mix of information' available to an investor." *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 13 (S.D.N.Y. 2016) (citation omitted). Unlike *Lions Gate*, Plaintiffs here allege they "overpaid for Peloton's Hardware because they did not know the truth that Peloton would gut its on-demand digital library, shrinking it by more than 50%[.]" TAC ¶ 127. Although a company generally need not disclose threatened litigation, "when a company speaks on a subject," as Peloton did when it repeatedly assured customers that its library would be ever-growing, "it cannot omit material facts about that subject," such as the fact that it never obtained licensing for the music it used. *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d at 13. Simply put, "[a] statement or omission is material if there is a substantial likelihood that a reasonable [consumer] would consider in important in deciding how to act." *Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15-CV-7199 (JMF), 2016 WL 5818590, at *5 (S.D.N.Y. Oct. 5, 2016).

[Peloton] would be vulnerable to [litigation]." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 355 (S.D.N.Y. 2012).

Peloton goes on to argue that Plaintiffs' allegations about its omissions are particularly deficient as to Mr. Passman, because he purchased Peloton products before Peloton was ever accused of copyright infringement. MTD at 17. As an initial matter, Mr. Passman made Membership purchases *after* Peloton was accused of copyright infringement. That fact alone defeats Peloton's argument. But in any case, Plaintiffs allege that "Peloton is a sophisticated software company that provides content protected by various intellectual property laws. Peloton fully understands what the copyright laws require, having entered into sync licenses with certain other copyright holders, while, at the same time, using other musical works for free and without permission." TAC at ¶ 19. That Peloton had not yet been accused of violating the copyright laws is of no moment when, well before Mr. Passman ever purchased his Peloton products, "Peloton knew that it was, in part, building its on-demand library with copyrighted material for which it did not have the proper licenses. Peloton thus knew or should have known that because it lacked the appropriate licenses for the music accompanying the classes in its on-demand digital library, its library cannot legitimately be 'ever-growing' and was actually knowingly built, in material part, on an illegal foundation." TAC ¶ 20.

Unlike each of the cases Peloton cites that implicate a Section 349 analysis,[13] Plaintiffs do not allege that Peloton's knowledge of its unlicensed music or the results of having unlicensed music were somehow vague or uncertain. Along with Plaintiffs' allegations that Peloton knew or should have known it would have to remove most of its class library are "facts

---

[13] *E.g.*, *Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010) (another factually inapposite securities case).

that, if true, would render this contention plausible:" that Peloton didn't have licensing for most of the music in its library. *Womack v. EVOL Nutrition Assocs., Inc.*, No. 621CV00332BKSTWD, 2021 WL 5906340, at *10 (N.D.N.Y. Dec. 14, 2021) (quoting *Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *24 (E.D.N.Y. Mar. 5, 2012)). This additional fact, "when viewed in the light most favorable to the Plaintiffs, plausibly allege[s] that the Defendant had 'actual or constructive' knowledge of [its copyright violations] 'when placing [its products] into the stream of commerce.'" *Leonard*, 2012 WL 764199, at *24.

### C.    The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims.

Peloton's last-ditch effort to dismiss Plaintiffs' claims is that continued payment bars recovery. The "voluntary payment doctrine" is a "common-law doctrine that bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U–A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003). But the doctrine is inapplicable here, where the TAC "alleges that plaintiffs lacked full knowledge of the facts when they agreed to pay [for the products]" during the only period for which they are alleging damages. *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014). Indeed, where "[i]ssues of disclosure, notice, and authorization are very much contested," the voluntary payment doctrine is inapplicable whenever "a plaintiff's claim is predicated on a lack of full disclosure by defendant." *Fink v. Time Warner Cable*, 810 F.Supp.2d 633, 649 (S.D.N.Y. 2011). Such is the case here.

Moreover, the doctrine cannot serve as grounds for dismissal at this stage because Plaintiffs are "not required to preemptively plead facts refuting the voluntary payment doctrine." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009); *see also Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir.2007) (plaintiffs are not required to plead facts in anticipation of affirmative defense). Even if the Court was inclined to consider Defendant's argument, at this stage of the

proceeding, application of the voluntary payment doctrine is premature. *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 50 (W.D.N.Y. 2015) (collecting cases).

### III.   The Court Cannot Dismiss Claims That Are Not Currently Asserted.

Peloton next asks this Court to strike class allegations, masquerading its request as a motion to dismiss the claims of non-New York residents. MTD at 21-22. But the motion to dismiss stage is not an appropriate time to address the scope of a defined class. *See Dennis v. JPMorgan Chase & Co.*, 439 F. Supp. 3d 256, 266 (S.D.N.Y. 2020) ("This effectively is a challenge to the class definition, rather than a basis for a motion to dismiss under Rule 12(b)(6). The Court will consider this issue if and when plaintiffs move for class certification.").[14]

New York courts have consistently rejected Peloton's argument, noting that "even if the Court were to find that the Plaintiffs' definition of the class was overly broad, and included class members who did not have standing, that would not require the Court to strike the class allegations." *Guariglia*, 2018 WL 1335356 at *13 (refusing to strike nationwide class allegations on a motion to dismiss); *Blagman v. Apple Inc.*, No. 12 CIV. 5453 ALC JCF, 2013 WL 2181709, at *6 (S.D.N.Y. May 20, 2013) (denying motion to dismiss class allegations for lack of standing because "th[e] court can modify the class if later it becomes clear that any of the putative class members do not have standing."). As in *Guariglia*, Peloton's "arguments do not address issues separate and apart from the issues that will be decided on a class certification motion[.]" 2018 WL 1335356, at *14. This is because, "until certification there is no class action but merely the

---

[14] Peloton also contends that the Complaint "should be dismissed with respect to" Alicia Pearlman. MTD at 21. Ms. Pearlman is not asserting any claims in this matter, and thus there is nothing to dismiss. It appears the confusion arises from TAC ¶ 155, which stated, for the record, that Ms. Pearlman was not forfeiting any rights (*e.g.*, her right to appeal her dismissed NYGBL claim), even though she was not asserting claims in the TAC. But that paragraph merely notes Ms. Pearlman's rights of appeal. It is thus not repleading any claims, as Peloton surmises.

prospect of one; the only action is the suit by the named plaintiffs." *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013).[15]

Peloton suggests that this Court previously dismissed the claims of a nationwide class and should do so again here. MTD at 22. But the cited orders dismissed claims brought by Alicia Pearlman, a Michigan resident who had brought New York claims seeking to represent a nationwide class. ECF No. 65, November 9, 2020 Order at 29 ("Pearlman's claims under the NYGBL are dismissed"); ECF No. 102, July 12, 2021 Order at 11 ("Pearlman's New York claims are dismissed with prejudice"). Dismissing **Ms. Pearlman's** claims—a named party—was indisputably within the Court's purview. Dismissing absent class members at this stage is not.

The cases Peloton cites show the same, with courts dismissing the claims of named parties. *See Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010) (dismissing the claims of the named plaintiff who had not shown that his transaction took place in New York; in its parenthetical citing *Kaufman*, Peloton replaces the named plaintiff "Kaufman" with the bracketed "[non-New York residents]," thus hiding that it was the named plaintiff getting dismissed, MTD at 22); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013) (same conclusion).

Peloton's request that the Court dismiss the claims of non-party Class members is inappropriate and legally unsupportable for the simple reason that those claims are not before the Court: "[b]efore a Court can dismiss a party, there must be a party to dismiss….As nonparties,

---

[15] *See also Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) ("a class action, when filed, includes only the claims of the named plaintiff"); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) ("Those members, however, were not yet before the court when Jackson filed its Rule 12 motions."); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) (putative class members "become parties to an action—and thus subject to dismissal—only after class certification").

the Court cannot dismiss them." *Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074-P, 2021

WL 5178829, at *7-8 (N.D. Tex. Nov. 8, 2021); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)

("[T]hat a nonnamed class member is a party to the class-action litigation *before the class is*

*certified*" is a "novel and surely erroneous argument") (emphasis in original) (quotation omitted).

## IV.    Dismissal with Prejudice is Not in the Interest of Justice.

In the event this Court is inclined to grant Peloton's motion to dismiss, it should not be

with prejudice. Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R.

Civ. P. 15(a)(2). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second

Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Financing (Jersey)*

*No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v.*

*Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (*per curiam*)). This Court has never found

NYGBL claims brought by New York residents to be insufficient. If the Court does so here,

Plaintiffs should be granted leave to correct any deficiency.

## CONCLUSION

For all of the foregoing reasons, this Court should deny Defendant's Motion to Dismiss

Plaintiffs' Third Amended Complaint.


Dated: March 25, 2022                    /s/   *Benjamin J. Whiting*

                                         ADAM J. LEVITT
                                         alevitt@dicellolevitt.com
                                         ADAM PROM
                                         aprom@dicellolevitt.com
                                         **DiCELLO LEVITT GUTZLER LLC**
                                         Ten North Dearborn Street, Sixth Floor
                                         Chicago, Illinois  60602
                                         Telephone: (312) 214-7900

                                         Greg G. Gutzler
                                         ggutzler@dicellolevitt.com
                                         **DiCELLO LEVITT GUTZLER LLC**

One Grand Central Place
60 East 42nd Street, Suite 2400
New York, New York 10165
Telephone: (646) 933-1000

ASHLEY C. KELLER (*pro hac vice*)
ack@kellerlenkner.com
BENJAMIN J. WHITING
ben.whiting@kellerlenkner.com
ALEX J. DRAVILLAS (*pro hac vice* to be
sought)
ajd@kellerlenkner.com
**KELLER LENKNER LLC**
150 North Riverside Plaza, Suite 4270
Chicago, Illinois  60606
Telephone: (312) 741-5222

AARON M. ZIGLER
aaron@ziglerlawgroup.com
**ZIGLER LAW GROUP, LLC**
308 South Jefferson Street, Suite 333
Chicago, Illinois  60661
Telephone: (312) 673-8427

***Counsel for Plaintiffs and the Proposed
Class***