UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC PASSMAN and ISHMAEL ALVARADO, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>      Defendant. | Civil Action No. 1:19-cv-11711 (LJL)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF PELOTON INTERACTIVE, INC.'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant*

April 6, 2022

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS LACK ARTICLE III STANDING ..............................................1

     A.     Plaintiffs' Purported Injuries Are Not Fairly Traceable To Peloton's Allegedly Misleading Website Advertisements......................................................1

          1.     *Passman Did Not Suffer Injury Traceable To The Challenged Conduct* ...............................................................................................2

          2.     *Alvarado Did Not Suffer Injury Traceable To The Challenged Conduct* ...............................................................................................3

     B.     Plaintiffs Have Not Pled An Injury-In-Fact ............................................4

II.    THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM........................6

     A.     Plaintiffs Have Not Pled Causation ........................................................6

     B.     Plaintiffs' Omission-Based Claims Fail..................................................8

     C.     The Voluntary Payment Doctrine Bars Plaintiffs' Claims .....................9

III.   THE COURT SHOULD DISMISS THE NATIONWIDE CLASS ALLEGATIONS..............................................................................................10

IV.   ANY DISMISSAL UNDER RULE 12(B)(6) SHOULD BE WITH PREJUDICE...........10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegra v. Luxottica Retail N. Am.*,
2022 WL 42867 (E.D.N.Y. Jan. 5, 2022) ...................................................................8

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
300 A.D.2d 608 (2d Dep't 2002) ...............................................................................9

*Bibicheff v. PayPal, Inc.*,
844 F. App'x 394 (2d Cir. 2021) ...............................................................................7

*Budhani v. Monster Energy Co.*,
2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021) ..............................................................7

*Colliton v. Bunt*,
709 F. App'x. 82 (2d Cir. 2018) ................................................................................7

*Coppelson v. Serhant*,
2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ...............................................................9

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...................................................................................................3

*DeBlasio v. Merrill Lynch & Co.*,
2009 WL 2242605 (S.D.N.Y. July 27, 2009) .............................................................2

*DRMAK Realty LLC v. Progressive Credit Union*,
133 A.D.3d 401 (1st Dep't 2015) ............................................................................10

*Hasemann v. Gerber Prod. Co.*,
331 F.R.D. 239 (E.D.N.Y. 2019) ...............................................................................8

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ..........................................................10

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ..............................................................................10

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016) .......................................................................8

*Kaufman v. Sirius XM Radio, Inc.*,
751 F. Supp. 2d 681 (S.D.N.Y. 2010) ......................................................................10

*LaRoe v. FCA US, LLC*,
   2020 WL 1043564 (D. Kan. Mar. 4, 2020) ................................................................3

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................6, 10

*Pew v. Cardarelli*,
   2005 WL 3817472 (N.D.N.Y. Mar. 17, 2005), *aff'd*, 164 F. App'x 41 (2d Cir. 2006)............8

*Quintana v. B. Braun Med. Inc.*,
   2018 WL 3559091 (S.D.N.Y. July 24, 2018) ..........................................................6

*Rekor Sys., Inc. v. Loughlin*,
   2022 WL 789157 (S.D.N.Y. Mar. 14, 2022) ...........................................................9

*Sharpe v. A&W Concentrate Co.*,
   2021 WL 3721392 (E.D.N.Y. July 23, 2021) ..........................................................8

*Solomon v. Bell Atl. Corp.*,
   9 A.D.3d 49 (1st Dep't 2004) ........................................................................2

*Treiber v. Aspen Dental Mgmt., Inc.*,
   94 F. Supp. 3d 352 (N.D.N.Y. 2016), *aff'd,* 635 F. App'x 1 (2d Cir. 2016) .......................4, 5

*Webber v. Dash*,
   2021 WL 3862704 (S.D.N.Y. Aug. 30, 2021) .........................................................4

*Wright v. Publishers Clearing House, Inc.*,
   372 F. Supp. 3d 61 (E.D.N.Y. 2019) ..............................................................7-8

Neither Plaintiffs' Opposition to Peloton's Motion, ECF No. 201 (the "<u>Opposition</u>" or "<u>Opp.</u>"), nor the extrinsic evidence it introduces, changes that this lawyer-driven case still does not have a viable plaintiff.  Plaintiffs made the litigation decision, informed by years of discovery, to challenge only ads on Peloton's website during a putative class period of April 9, 2018 to March 25, 2019.  Now confined by that pleading, Plaintiffs' claims cannot survive this motion to dismiss.[1]

*First*, both Plaintiffs lack standing because they have not pled (nor can they show) any injuries that are fairly traceable to the allegedly misleading ads.  The self-serving, conclusory declarations that contradict their prior deposition testimony do not cure this fatal shortcoming.

*Second*, even if Plaintiffs had standing, dismissal with prejudice is warranted for failure to state a claim because there are no plausible factual allegations (or warranted inferences) that they were exposed to any deceptive ads.  Plaintiffs thus have not pled the required causal connection between their purported injuries and the allegedly misleading ads.  Nor have Plaintiffs pled that Peloton had a duty to inform consumers that it had been accused of copyright infringement and might remove classes earlier than it did.  Plaintiffs' claims also fail under the voluntary payment doctrine because both Plaintiffs continue to make Membership payments with full knowledge of the alleged misconduct.  Finally, ample precedent supports the immediate dismissal of the unviable nationwide class that Plaintiffs admit they are not "looking to relitigate."

## I.    PLAINTIFFS LACK ARTICLE III STANDING

### A.    Plaintiffs' Purported Injuries Are Not Fairly Traceable To Peloton's Allegedly Misleading Website Advertisements

Plaintiffs do not dispute that they lack standing unless they were exposed to the alleged

---

[1] Undefined capitalized terms have the same meaning as ascribed in Peloton's memorandum of law in support of its Motion to Dismiss the Third Amended Complaint ("<u>TAC</u>"), ECF No. 197 (the "<u>Motion</u>" or "<u>Mot.</u>").  Citations to "Ex. __" refer to the exhibits attached to the Declaration of Megan A. Behrman, ECF No. 198.  Unless otherwise indicated, internal citations and quotations are omitted and emphases are added.

misrepresentations.  *See* Opp. at 11-16.  Without exposure, any alleged injuries are not fairly traceable to the challenged ads.  *See* Mot. at 11-13.  Instead, in an effort to establish exposure where it does not exist, Plaintiffs twist the TAC's allegations and ignore their own prior testimony.

### 1.   *Passman Did Not Suffer Injury Traceable To The Challenged Conduct*

Plaintiffs argue that Passman's alleged injuries are fairly traceable to the challenged conduct because a salesman allegedly told him in February 2017 that Peloton's library would get "bigger and bigger."[2]  ECF No. 201-1 ("Passman Decl.") ¶ 9; Opp. at 13-14.  However, Plaintiffs offer no evidence (or allegations) that Passman was exposed to the only alleged misstatements described in the TAC: ads on Peloton's website.  *E.g.*, ¶¶ 30 ("Peloton *website* . . . continued to market 'an expansive, ever-growing library.'"), 74 ("Peloton's marketing departments prominently touted its . . . 'ever-growing library' . . . *on the Peloton website.*"); *see also* November 2020 Order at 8 ("As alleged in Plaintiffs' Complaint, the 'ever-growing' statement appeared in marketing materials *on Peloton's website.*"); ¶¶ 17, 30, 73-78, 81, 95, 123, 140, 143.  The TAC is conspicuously silent on any other type of misstatement, nor does it allege that the representations on Peloton's website appeared in other media, were used in retail stores, or were conveyed by salespeople.  *See* TAC.  The Opposition's newly proffered evidence about one salesman's alleged statement to Passman is thus irrelevant to Plaintiffs' case as they chose to plead it.[3]

---

[2] Plaintiffs mischaracterize even Passman's testimony, twisting it into an allegation he did not make. *Compare* Ex. 2 at 83:3-25 ("Q:  And did the salesman use those exact words, 'ever-growing'?  A:  Well, I don't know if he used those exact words.  Just that it's going to get bigger and more – more music, more – more classic . . . I don't recall him using those exact words . . . I don't know about 'ever-growing.'  But, 'It's growing.  It's going to be bigger and better.'"), *with* Opp. at 13 ("[A] Peloton salesman told [Passman] that the on-demand class library would be 'ever-growing' and/or 'growing.'").

[3] It is not surprising that the TAC does not allege a misstatement by an unnamed salesman to a single customer.  A statement by a salesman that a product was "going to be bigger and better," Ex. 2 at 83:9-22, is a "nothing more than the common puff of a salesman."  *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *23 (S.D.N.Y. July 27, 2009).  And such a claim necessarily would raise numerous individual issues that would doom class certification.  *See, e.g.*, *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52-53 (1st Dep't 2004).

Additionally, any statement made at the time of Passman's 2017 purchase cannot confer standing where Plaintiffs' own allegation is that the first event that rendered Peloton's representations false or misleading occurred *over a year later*. *See* Mot. at 10-11; ¶¶ 21, 84-85. Passman's purported injuries, therefore, cannot be traced to Peloton's allegedly wrongful conduct. *See* Mot. at 10-11; *LaRoe v. FCA US, LLC*, 2020 WL 1043564, at *11 (D. Kan. Mar. 4, 2020) (no standing where alleged overpayment occurred prior to challenged RICO violation).

Plaintiffs' response that Passman nevertheless has standing because he made some Membership subscription payments during the proposed class period is also unavailing. *See* Opp. at 14-15. *First*, the TAC alleges that he "purchase[d]" the Membership in 2017. ¶ 35. Even Plaintiffs agree that Passman's purported injury accrued "at the time of his transaction"—not at some indeterminate future time. Opp. at 14-15. *Second*, Passman admitted that none of the ads he allegedly saw used the phrase "ever-growing" (or "growing"), or affected his decision to continue to pay Membership fees during the proposed class period. Ex. 2 at 81:24-83:8. That undermines any claim of a causal connection between the challenged ads and his later payments. *Third*, because the Bike and Membership are two different products, payments for the Membership cannot confer standing for claims based on a 2017 Bike purchase. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335, 351-52 (2006).

Passman's admitted lack of exposure to statements on Peloton's website defeats his standing. *See* Mot. at 10-13.

### 2.    *Alvarado Did Not Suffer Injury Traceable To The Challenged Conduct*

Plaintiffs' argument that Alvarado's purported injuries are fairly traceable to the challenged conduct also fails. Alvarado's declaration that he "relied on" Peloton's representations in making his purchases, ECF No. 201-2 ("Alvarado Decl.") ¶¶ 7, 14; Opp. at 11-12, 15-16, is both impermissibly conclusory and contradicted by his prior testimony. Alvarado expressly testified

that he did not rely on any ads, Ex. 1 at 79:23-25, and had no role in his wife's purchasing decision, *id.* at 39:2-41:3 ("[M]y wife, she does whatever she wants to do, and I . . . couldn't say yes or no."). His declaration therefore need not be credited. *See Treiber v. Aspen Dental Mgmt., Inc.*, 94 F. Supp. 3d 352, 361 (N.D.N.Y. 2016), *aff'd,* 635 F. App'x 1 (2d Cir. 2016) (courts "may not rely on conclusory . . . statements contained in the affidavits"); *Webber v. Dash*, 2021 WL 3862704, at *7 (S.D.N.Y. Aug. 30, 2021) (disregarding declaration contradicted by prior testimony).

Similarly, Alvarado's claim that he visited Peloton's website prior to purchasing his Bike from a friend "to make sure we were getting a good deal," Alvarado Decl. ¶ 10, contradicts his prior testimony. Alvarado testified that he "might" have looked at the website to compare prices, but that he did so "when we got the bike" and said "oh, great, we *had* a good cost savings." Ex. 1 at 46:15-25. Further confirming that he did not visit the website before purchasing the Bike, Alvarado testified that, at the time of his purchase, he only had "an approximat[e] [idea of the Bike's cost] from what friends all talked about" (not from anything he saw on the website) and that he "did not know how much a monthly membership subscription cost at all." *Compare* Ex. 1 at 48:2-17, *with* Alvarado Decl. ¶ 10. And even in his declaration, Alvarado does *not* say that he saw the "ever-growing" or "growing" statement on Peloton's website. *See* Alvarado Decl.

Because Alvarado has not shown (and cannot show) a causal connection between his alleged overpayment and the ads at issue, he lacks standing. *See* Mot. at 10-13.

###### B.     Plaintiffs Have Not Pled An Injury-In-Fact

Plaintiffs also lack standing because they have not alleged and cannot show by a preponderance of the evidence that they suffered any injury at all. Mot. at 13-14. The Opposition spends five pages arguing the uncontested proposition that paying a premium can constitute an injury. Opp. at 6-11. But Plaintiffs have not demonstrated that *they* suffered such an injury.

*First*, the Opposition does not identify any specific factual allegations in the TAC regarding

Plaintiffs' overpayment theory.  Opp. at 6-11.  It does not do so because there are none.  That failure alone is grounds to dismiss.  Mot. at 13; *Treiber*, 635 F. App'x at 3 (conclusory allegation of "price gouging" insufficient to support standing).  Instead, Plaintiffs cite to the expert reports filed in support of their (denied) motion for class certification.  Opp. at 9.  But those reports say nothing about discounted secondhand purchases like Alvarado's or purchases made outside of the class period like Passman's, nor do they explain how any alleged omissions created a price premium.  *See* ECF No. 201-3 ¶¶ 18-20, 60-72; ECF No. 201-4 ¶¶ 31 n.18, 54-61.[4]

*Second*, Plaintiffs argue that each monthly Membership payment constitutes a separate purchase and that their injuries occurred at the time of each monthly payment.  *See* Opp. at 9-10, 14.  However, they cannot credibly argue that they were hurt at the time of their Membership payments because the TAC concedes that the number of classes in the on-demand library grew throughout the proposed class period.  *See* ¶¶ 87-88.  Thus, even if there were a premium on the Membership price, Plaintiffs were not injured at the time they made those payments because they received exactly what they paid for each month: a library that grew.  *See* Mot. at 13-14.

*Finally*, Plaintiffs claim they were also injured *after* the March 2019 class takedown because Peloton did not lower its prices—meaning that once classes were removed, Plaintiffs did not receive the "benefit of the bargain" and suffered a "diminished user experience."  Opp. at 10-11; *see* Mot. at 13-14.  These claims are directly contradicted by Plaintiffs' assertion that "the only period for which they are alleging damages" is the proposed class period.  Opp. at 22.  Moreover, Plaintiffs' post-takedown payments could not have been made based on misleading information (and thus caused an injury) because they were made with full knowledge that Peloton had taken

---

[4] Peloton further notes that those experts were subject to a motion to exclude, and Peloton anticipates renewing that motion if Plaintiffs seek to rely on those experts for class certification or otherwise.  *See* ECF Nos. 135, 171, 172.

down classes.  *See* ¶ 92.

## II.   THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM

### A.   Plaintiffs Have Not Pled Causation

The Opposition concedes that the TAC does not allege Passman or Alvarado saw the allegedly misleading ads.  *See generally* Opp.  It offers three arguments for why that is not a fatal failure to plead causation under the NYGBL: (i) Plaintiffs relied on the representations when making their purchases; (ii) reliance is not an element of the NYGBL; and (iii) Plaintiffs need not allege they saw any of the misleading statements.  Each of those arguments fails.

*First*, the boilerplate allegation that Plaintiffs made their purchases "relying on" Peloton's representations, ¶¶ 35, 37, is inadequate because the factual allegations in the TAC do not support an inference that Plaintiffs actually saw the ads at issue.  Mot. at 15-17; *Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (no causation where allegations did not suggest that plaintiff saw challenged statements); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) (no causation where allegations "neither explicitly state nor permit the plausible inference that Plaintiff actually saw" statements quoted in complaint); *see also supra* Section I.A; November 2020 Order at 16-19.  Neither the timing of the ads quoted in the TAC, nor the specific website pages on which they appeared supports an inference that *these* Plaintiffs saw the representations on which they supposedly relied.  *See* Mot. at 15-17.  Recognizing the deficiency of the allegations in the TAC, the Opposition attempts to broaden the TAC's claims to include a general "marketing campaign" that began "as early as 2016."  Opp. at 17-18.  But no such allegations can be found in the TAC.  Rather, the TAC alleges that "Peloton began representing *on its website* the [challenged phrases] at least as early as 2016," ¶ 73, and offers the

website as the *only* example of a "campaign" centered on the "ever-growing library" language.[5] *See* ¶¶ 73-80.

*Second*, Plaintiffs argue that reliance is not an element of their claims. Opp. at 18-19. But the Motion is not based on a failure to plead reliance. It is based on Plaintiffs' failure to create even a plausible inference that these Plaintiffs saw the alleged misrepresentation—an inference that is indisputably required to plead causation. *See* November 2020 Order at 19 (noting that while plaintiffs need not expressly state that they saw the challenged statements, the complaint must at least "plausibly suggest[]" that they did). Plaintiffs chose to attempt to meet that requirement by alleging they "relied upon" the language at issue and quoting website ads that appeared after their purchases or that they had no reason to view. *See* Mot. at 15-17. Having made that choice, they must now answer for the deficiencies in their allegations.

*Third*, Plaintiffs argue that, because reliance is not an element under the NYGBL, they need not allege facts supporting an inference that they saw the challenged ads. Opp. at 18-19. Plaintiffs thus assert that any consumer who purchased Peloton products—at any time, for any reason, and from any third party—can bring a NYGBL claim even if they never came across the allegedly deceptive language. *Id.* That assertion is wrong as a matter of law. *See* Mot. at 15-17; *see also Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 396-97 & n.2 (2d Cir. 2021) (no causation where court could not reasonably infer that plaintiff was "aware of or otherwise exposed to" the challenged statements); *Wright v. Publishers Clearing House, Inc.*, 372 F. Supp. 3d 61, 67 (E.D.N.Y. 2019) ("Plaintiffs cannot recover for any deceptions in those materials unless they, in

---

[5] In a last ditch effort to support an inference of exposure, the Opposition cites Plaintiffs' declarations that state they were "exposed" or describe the challenged statements as "selling point[s]." Opp. at 18; Alvarado Decl. ¶¶ 11, 13; Passman Decl. ¶ 10. Those self-serving assertions were not pled in the TAC and should not be considered. *E.g.*, *Budhani v. Monster Energy Co.*, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) (ignoring unpled allegation); *Colliton v. Bunt*, 709 F. App'x. 82, 83 (2d Cir. 2018) ("[C]ourts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss.").

fact, received and/or viewed them.").[6]

### B.      Plaintiffs' Omission-Based Claims Fail

Plaintiffs' omission-based claims fail because the TAC does not allege that Peloton had an affirmative duty to disclose the allegedly omitted information or that disclosure was required to make the representations at issue not misleading.  Mot. at 17-20.  The Opposition argues that Peloton had a duty to disclose it "had been accused" of violating the law and might remove classes in the future because it was "vulnerable" to litigation.  Opp. at 19-22; ¶ 40.  Plaintiffs do not explain the legal basis for that argument, and with good reason:  The fact that Peloton allegedly was "vulnerable" to litigation does not create an affirmative duty to disclose something that had not yet occurred.[7]  *See Pew v. Cardarelli*, 2005 WL 3817472, at *8 (N.D.N.Y. Mar. 17, 2005), *aff'd*, 164 F. App'x 41 (2d Cir. 2006) (rejecting claim where "[e]ssentially, the 'omission' of which plaintiffs complain is defendants' omission to predict the future").

Plaintiffs argue that "all that is required to state a claim for omission" is that Peloton knew of the April 2018 cease-and-desist letter.[8]  Opp. at 20.  However, the TAC fails to allege that

---

[6] Plaintiffs cite cases analyzing the Rule 23 factors to argue that they "need not show that they, or any specific absent Class members, were exposed to Peloton's misrepresentation."  Opp. at 18-19.  However, these cases acknowledge that exposure to the alleged misrepresentation "is required to ground the case in reality, rather than mere hypotheticals" and infer class-wide exposure based on evidence of uniform product labels or "consistent and prominent" widespread marketing.  *Allegra v. Luxottica Retail N. Am.*, 2022 WL 42867, at *20 (E.D.N.Y. Jan. 5, 2022); *Sharpe v. A&W Concentrate Co.*, 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 264-67 (E.D.N.Y. 2019).

[7] Even if there were such a duty, Plaintiffs do not claim that the alleged omissions were material to customers, like Passman, who purchased Bikes and Memberships prior to April 2018 (when the demand letter was received).  *See* Mot. at 17-18.  Plaintiffs attempt to remedy that failing by pointing out that Passman paid Membership fees after April 2018, Opp. at 21, but the TAC lacks any factual allegations explaining how the alleged omissions affected those payments.  *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016) (omission must be "likely to affect [consumers'] choice of, or conduct regarding, a product").

[8] In another attempt to play fast and loose with the pleadings, the Opposition insinuates that Peloton received and should have disclosed multiple cease-and-desist letters—an allegation that appears nowhere in the TAC.  *Compare* Opp. at 1, 3-4, 20, *with* ¶¶ 21, 33, 84, 122, 142.

Peloton knew at the time it received the cease-and-desist letter that it would eventually be sued and remove classes.  Mot. at 18-20.  The TAC does not even allege that the April 2018 letter threatened litigation, and the Opposition offers no support for an inference that Peloton's receipt of a cease-and-desist letter shows Peloton knew that it would be sued and remove classes a year later.  *See* Mot. at 17-20.  The Opposition does not even attempt to address case law making clear that Peloton was entitled time to assess the demand letter and had no duty to disclose litigation that was not substantially certain to occur.  *Id.*  Nor do Plaintiffs offer support for the proposition that Peloton should have disclosed tentative business plans (*e.g.*, the possibility that it might take down classes) or internal issues like alleged copyright violations.[9]  *Id.*

Moreover, disclosing the letter and its claims was not necessary to make the challenged ads not misleading.  The ads did not discuss Peloton's receipt of a cease-and-desist letter or any other accusations of wrongdoing.  Mot. at 18; *see also Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 609-10 (2d Dep't 2002) (affirming dismissal of NYGBL claims because statement that ink cartridges were included with purchase did not discuss subject matter of alleged omission—that cartridges were only half filled).  And, the fact that Peloton had been accused of copyright violations in April 2018 neither confirms that Peloton committed such violations nor that a lawsuit would actually be filed, much less that the only conceivable (or even most likely) result would be a takedown of classes.  *See* Mot. at 18-20.

## C.   The Voluntary Payment Doctrine Bars Plaintiffs' Claims

Plaintiffs argue that they do not assert claims based on payments made after the takedown,

---

[9] Plaintiffs' only response is to argue that cases arising in the securities context are "inapplicable."  Opp. at 19.  In reality, courts routinely apply the reasoning of securities cases to other causes of action.  *E.g.*, *Rekor Sys., Inc. v. Loughlin*, 2022 WL 789157, at *7 (S.D.N.Y. Mar. 14, 2022); *Coppelson v. Serhant*, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021).

and that as a result, the voluntary payment doctrine does not bar this action.  Opp. at 22.  But the doctrine bars claims based on any payments, regardless of when they were made, as long as plaintiffs continue to pay for the product at issue with full knowledge of the facts.  Mot. at 20; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 n.4 (S.D.N.Y. 2015) (claims brought by a consumer who purchased product twice would be barred if consumer made the second purchase with full knowledge of the facts).  Where, as here, application of the doctrine is warranted, *see* ¶ 39, dismissal is appropriate.  *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 405 (1st Dep't 2015).

## III.   THE COURT SHOULD DISMISS THE NATIONWIDE CLASS ALLEGATIONS

Plaintiffs do not dispute that the proposed nationwide class includes consumers who lack standing.  Opp. at 23-25.  Instead, they argue that dismissal is premature, a confusing position given that they also claim they do not seek to "relitigate" this issue.  *Id.*; ¶ 106 n.70.  If Plaintiffs do not wish to litigate the viability of a nationwide class, those claims should be dismissed.  *See* Mot. at 21-22.  Even if they *do* seek to litigate, it is black-letter law that NYGBL claims brought on behalf of non-New York plaintiffs can be dismissed at this stage.  *See id.*[10]

## IV.   ANY DISMISSAL UNDER RULE 12(B)(6) SHOULD BE WITH PREJUDICE

The Opposition does not even attempt to explain why the interests of justice would countenance allowing Plaintiffs to amend yet again.  Nor do Plaintiffs explain how they would attempt to fix their deficient pleading.  Leave to amend should therefore be denied.  *See Oden*, 330 F. Supp. 3d at 903-04.

---

[10] Plaintiffs are wrong that Peloton's cited cases only dismissed named plaintiffs.  Opp. at 24.  *Kaufman v. Sirius XM Radio, Inc.* dismissed claims brought by named plaintiff "or any similarly-situated non-New York residents."  751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010).  Similarly, *In re Frito-Lay North America, Inc. All Natural Litigation* dismissed nationwide NYGBL claims "brought by and on behalf of non-New York plaintiffs and putative class members."  2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013).

Dated:  April 6, 2022
        New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Megan A. Behrman*
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
Megan A. Behrman
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Steve.Feldman@lw.com
William.Reckler@lw.com
Lilia.Vazova@lw.com
Megan.Behrman@lw.com
Alexis.Godfrey@lw.com

William J. Trach
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000
William.Trach@lw.com

*Attorneys for Defendant*
*Peloton Interactive, Inc.*