UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC PASSMAN and ISHMAEL ALVARADO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>                  Defendant. | Civil Action No. 1:19-cv-11711-LJL |

**PELOTON INTERACTIVE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

LATHAM & WATKINS LLP

Steven N. Feldman
William O. Reckler
Lilia B. Vazova
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

William J. Trach (admitted *pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendant Peloton
Interactive, Inc.*

December 4, 2023

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    Peloton's Products. ................................................................................. 2

    B.    The Challenged Statement Did Not Influence Plaintiffs' Purchases Of Their Peloton Bikes And Memberships. ................................................. 4

    C.    Passman And Alvarado Remained Active Members Of The Peloton Community After The March 2019 Removal Of Classes From The Library ................................................................................................. 6

    D.    This Court Allows Plaintiffs' Claims To Survive A Motion To Dismiss On A Price Premium Theory, And Later Holds That Plaintiffs' Claims Can Proceed Only On An Individual Basis. ................................................. 7

PROCEDURAL STANDARD ........................................................................................... 9

ARGUMENT ..................................................................................................................... 9

I.    Plaintiffs Have No Evidence To Establish Injury On A Theory That They Relied On The Challenged Statement When Making Their Purchasing Decisions. ................... 10

II.    Plaintiffs Have No Evidence To Establish Injury On A Theory That They Paid A Premium For Any Peloton Product. ........................................................................... 11

    A.    Tread: Plaintiffs Have No Evidence That They Paid A Price Premium For The Tread Because They Did Not Purchase That Product. ................... 12

    B.    Bike: There Is No Evidence Of A Purported Price Premium That Applies To The Bike Purchases At Issue Here. ............................................... 12

        1.    Plaintiffs' Expert Did Not Calculate The Price Premium For Plaintiffs' Bike Purchases. ......................................................... 13

        2.    Undisputed Evidence Shows Peloton's Prices Remained Constant During The Relevant Period, Which Precludes A Finding Of A Price Premium. ................................................................... 14

        3.    Plaintiffs Cannot Create A Disputed Issue Of Fact Based On Inadmissible Expert Testimony. ............................................... 17

    C.    Membership: Plaintiffs Have No Evidence To Prove They Were Injured By Paying A Premium For Their Memberships. ................................... 19

1.    There Is No Admissible Evidence That Plaintiffs Paid A Premium For Their Memberships............................................................... 19

2.    The Voluntary Payment Doctrine Independently Bars Plaintiffs' Membership-Related Claims. ................................................... 20

III.    There Is No Genuine Dispute That The Challenged Statement Was Not Material To A Reasonable Consumer. ........................................................... 22

CONCLUSION............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................................9

*Ault v. J.M. Smucker Co.*,
310 F.R.D. 59 (S.D.N.Y. 2015) .......................................................................................15

*Beltway 7 & Prop., Ltd. v. Blackrock Realty Advisers, Inc.*,
90 N.Y.S.3d 3 (N.Y. 2018) ..............................................................................................21

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) ..............................................................................22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................................9

*Colpitts v. Growers*,
2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) ..................................................................16

*Dillon v. U-A Columbia Cablevision of Westchester*,
100 N.Y.2d 525 (N.Y. 2003) ............................................................................................20

*Dillon v. U-A Columbia Cablevision of Westchester*,
740 N.Y.S.2d 396 (N.Y. App. Div. 2001), *aff'd* 100 N.Y.2d 525 (N.Y. 2003) .....................20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..........................................................................................................16

*Gimbel Bros. v. Brook Shipping Ctrs.*,
499 N.Y.S.2d 435 (N.Y. App. Div. 1986) ........................................................................21

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995) ...........................................................................................9, 15

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E.2d 1190 (N.Y. 2002)...........................................................................................10

*Johnson v. Killian*,
680 F.3d 234 (2d Cir. 2012)................................................................................................9

*Keator v. State*,
244 N.E.2d 248 (N.Y. 1968)..............................................................................................19

*Lake v. Ford Motor Co.*,
  2019 WL 5873887 (E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted*,
  2019 WL 4593489 (E.D.N.Y. Sept. 23, 2019) ...................................................................12

*Lavin v. Town of E. Greenbush*,
  843 N.Y.S.2d 484 (N.Y. Sup. Ct. 2007) ............................................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................................................9

*Newman v. RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) .........................................................................................22

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) .........................16

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .............................................................15, 16

*Saavedra v. Eli Lilly & Co.*,
  2015 WL 9916598 (C.D. Cal. July 21, 2015) ....................................................................16

*Solomon v. Bell Atl. Corp.*,
  9 A.D.3d 49 (N.Y. App. 2004) ..........................................................................................22

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009)..................................................................................................20

*Stutman v. Chemical Bank*,
  731 N.E.2d 608 (N.Y. 2000)...............................................................................................10

*Utica Mut. Ins. Co. v. Am. Re-Ins. Co.*,
  193 N.Y.S.3d 594 (2023).....................................................................................................20

**RULES**

Fed. R. Civ. P. 56(a) .....................................................................................................................9

# INTRODUCTION

After four years of litigation, this case now involves only the claims of the two individual named plaintiffs who collectively seek roughly $1,000 for purported violations of New York's General Business Law.  Plaintiffs Eric Passman and Ishmael Alvarado ("Plaintiffs") contend that they were injured by a statement that they did not see and that appeared in only a handful of Peloton's marketing materials.  The parties disagree about whether the statement—that Peloton offered a "growing" or "ever-growing" library of live and on-demand classes ("Challenged Statement")—was false.  But this Court need not address that issue to grant summary judgment for Peloton.  To prevail on their claims, Plaintiffs must prove that (1) they were injured by the Challenged Statement and (2) the statement was material to a reasonable consumer.  Plaintiffs must come forward with admissible evidence sufficient to create a genuine dispute as to both elements to survive this motion.  They cannot do so with respect to either element.

Plaintiffs cannot establish an injury based on their own reliance on the Challenged Statement because neither Passman nor Alvarado even saw any marketing materials containing that statement prior to their purchases.  Indeed, this Court has already determined that Passman's and Alvarado's testimony "compels a finding that they did not rely on the misrepresentations at issue when making their purchasing decisions."  Dkt. 207, at 21.

Plaintiffs' entire case therefore depends on whether they can establish an injury under a "price premium" theory.  Under this theory, Plaintiffs must prove that Peloton's allegedly false statements caused an increase in the prices that Peloton charged for its products, and thus Plaintiffs were injured when they paid those higher prices.  Despite four years of litigation and two years of discovery, Plaintiffs have no evidence to make that showing.  Far from showing that the Challenged Statement inflated Peloton's prices, undisputed evidence shows that it had no impact.  Peloton's prices were the same before Peloton made the Challenged Statement, during the period

that the statement was allegedly false, and for almost eighteen months after the purported "truth" was revealed to the market. Moreover, both Plaintiffs—who remained active Peloton Members even after joining this lawsuit—testified that they would be willing to pay even *more* for a Membership than Peloton is currently charging. Plaintiffs cannot overcome this undisputed evidence with their inadmissible and inadequate expert testimony.

Plaintiffs' claims also cannot survive summary judgment because there is no genuine factual dispute about whether the Challenged Statement was material to a reasonable consumer. It was not. Undisputed evidence proves that Peloton Members did not notice or care about Peloton's description of its library of online classes as "growing" or "ever-growing." That evidence also shows that Peloton Members, including Plaintiffs, did not change their behavior after Peloton removed classes in March 2019.

Because Plaintiffs have failed to create a genuine dispute of material fact with respect to both injury and materiality, Peloton's motion for summary judgment should be granted.

## BACKGROUND

### A. Peloton's Products.

Peloton uses technology and design to connect the world through fitness. Peloton's offerings include a stationary bike ("Bike"), treadmill ("Tread"), and an extensive library of live and prerecorded on-demand fitness classes available on a subscription basis ("Membership"). Local Rule 56.1 Statement of Facts ("SOF") ¶¶ 2, 4; Ex. 1, Peloton 2022 10-K, at 5; Ex. 6, Peloton 2019 Form S-1, at 2.[1] From at least May 2016 to September 2020—which covers the entire period relevant to this case—the price of Peloton's products remained unchanged: a new Bike cost

---

[1] Citations to "Ex. _" refer to exhibits attached to the Declaration of Steven N. Feldman, submitted concurrently.

$1,995, and a Membership cost $39 per month.  SOF ¶¶ 3, 5; Ex. 2, Strombom Rep. ¶ 98(a)-(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Exhibit 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary.[2]

Peloton's website highlights the many benefits of its equipment and Membership.  For example, Peloton's website has consistently noted that Members receive "access to Peloton's complete live and on-demand library of classes."  SOF ¶ 18; Ex. 14, Kirk Fair Rep. ¶ 30 n.28, 29 & Exhibit D-53.  Members can access this library through their Peloton equipment or the Peloton mobile app, which permits them to "[t]rain at home, at the gym or on the go."  *Id.*  And they can stay "connected with other Members," including by "motivat[ing] each other with high fives."  *Id.*

Between May 2016 and April 2020, four of the 269 pages on the Peloton website included the Challenged Statement in explaining that Peloton is constantly adding new classes to its online library.  SOF ¶ 11; Ex. 51, Declaration of Alex Dravillas in Support of Plaintiffs' Motion for Class Certification, ¶ 40; Ex. 56, Plaintiffs' Exhibit 40.  Specifically, the website stated that Peloton's subscriptions included "unlimited access to a growing library of live streaming and on-demand Peloton classes."  SOF ¶ 13; Ex. 12, Appendix of Challenged Statements.  The website also stated that Members have "unlimited access to the world's best instructors anytime, anywhere with up to 14 daily live classes and an evergrowing library of 6,000+ on [] demand [] classes."  *Id.*  But Plaintiffs' own evidence indicates that between 89–94.5% of the visitors to Peloton's website did not even visit the pages containing the Challenged Statement.  *See* Dkt. 284, at 58-60 (discussing

---

[2] In addition to the $1,995 base price of a new Bike, Peloton also charged a $250 shipping and assembly fee.  SOF ¶ 3; Ex. 2, Strombom Rep. ¶ 98(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Ex. 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary.  Plaintiffs' and Peloton's experts disagreed about whether the relevant price was $1,995 or $2,245, but for purposes of this motion, that dispute is immaterial and Peloton accepts the base price used by Plaintiffs' experts.

Plaintiffs' website traffic data).  Of those who visited the webpages containing the Challenged Statement, very few even noticed the Challenged Statement.  SOF ¶ 16; Ex. 14, Kirk Fair Rep. ¶¶ 43, 49-50.

### B.    The Challenged Statement Did Not Influence Plaintiffs' Purchases Of Their Peloton Bikes And Memberships.

Plaintiffs Eric Passman and Ishmael Alvarado are among the many individuals who never saw the Challenged Statement on Peloton's website, SOF ¶¶ 27, 38; Ex. 16, Passman Dep. Tr. I, 78:10-82:6; 79:23-25; 83:3-8; Ex. 17, Alvarado Dep. Tr. I, 79:23-25, yet became Peloton Members anyway.

In February 2017, Passman purchased a new Peloton Bike and a one-year subscription Membership.  SOF ¶¶ 23, 25; Ex. 4, Passman's Response to RFAs, at Nos. 1-3; Ex. 16, Passman Dep. Tr. I, 32:17-33:2, 33:17-34:5; 35:22-36:5.  Passman made these purchases while visiting Peloton's brick-and-mortar store in Manhasset, New York.  *Id.*  Passman testified that, although the sales representative discussed the on-demand library and stated that Peloton regularly adds content during Passman's in-store visit, the representative never told Passman that the library was "ever-growing" or that content would never be removed.  SOF ¶ 29; Ex. 16, Passman Dep. Tr. I, 45:24-46:22.  When Passman's initial one-year Membership expired, Passman renewed his Membership on a monthly basis.  SOF ¶ 26; Ex. 16, Passman Dep. Tr. I, 34:20-21; Ex. 4, Passman's Response to RFAs, at No. 13.  Passman testified that no Peloton advertisements affected his decision to continue to pay for his Membership on a monthly basis.  SOF ¶ 28; Ex. 16, Passman Dep. Tr. I, 81:24-82:6.

In January 2019, Alvarado's wife purchased a used Bike from a friend.  SOF ¶ 32; Ex. 17, Alvarado Dep. Tr. I, 36:5-23, 37:2-11; Ex. 18, Alvarado's Supp. Response to RFAs, at No. 3; Ex. 19, Venmo Receipt.  Alvarado's wife paid $1,200 for the used Bike and accessories—a significant

discount from the $3,000 she would have paid for a new Bike with the same accessories.  SOF ¶¶ 33-34; Ex. 17, Alvarado Dep. Tr. I, 36:5-23, 37:2-11, 37:24-38:10, 39:2-15; Ex. 20, Alvarado Dep. Tr. II, 175:21-177:12.  After she bought the Bike, Alvarado's wife also purchased a monthly Membership through Peloton's website.  SOF ¶ 35; Ex. 17, Alvarado Dep. Tr. I, 36:5-23, 37:2-11, 37:24-38:10, 39:2-15; Ex. 20, Alvarado Dep. Tr. II, 175:21-177:12.  Alvarado was not involved in his wife's decision to purchase a Bike or Membership, and conceded that he did not see or rely on the Challenged Statement.  SOF ¶¶ 37-39; Ex. 17, Alvarado Dep. Tr. I, 36:5-14, 39:2-40:2, 45:1-23, 79:23-25; Ex. 18, Alvarado's Supp. Response to RFAs, at Nos. 2-3.

The monthly price that Passman and Alvarado paid for Memberships remained constant at $39 per month from at least May 2016 through January 2021, which is both before and long after Peloton indisputably stopped using the Challenged Statement in advertisements.  SOF ¶ 5; Ex. 2, Strombom Rep. ¶ 98(a).  Passman and Alvarado have never sold the Bikes.  SOF ¶¶ 58, 64; Ex. 16, Passman Dep. Tr. I, 92:17-21; Ex. 4, Passman's Response to RFAs, at No. 47; Ex. 17, Alvarado Dep. Tr. I, 81:5-12.  Moreover, both Passman and Alvarado remained active Peloton Members even after becoming Plaintiffs in this case.  SOF ¶¶ 30, 41, 60; Dkt. 195 (Third Amended Complaint or "TAC") ¶ 39; Ex. 4, Passman's Response to RFAs, at Nos. 13, 28, 29; Ex. 18, Alvarado's Supp. Response to RFAs, at Nos. 21, 22, 27, 29; *see also* Ex. 26, Passman Dep. Tr II, 144:22-145:7.  Both Plaintiffs also testified that they would be willing to pay *more* for their Memberships even after Peloton's removal of classes on March 25, 2019:  Passman testified that he would consider paying as much as $45 to $50 per month, *see* SOF ¶ 61; Ex. 16, Passman Dep. Tr. I, 65:12-66:25, and Alvarado testified that he would be willing to pay nearly $50 per month, *see* SOF ¶ 66; Ex. 17, Alvarado Dep. Tr. I, 49:4-19.

### C.    Passman And Alvarado Remained Active Members Of The Peloton Community After The March 2019 Removal Of Classes From The Library.

On March 25, 2019, Peloton's then-CEO John Foley sent an email to every Member of the Peloton community informing them that Peloton was removing certain classes from its library. SOF ¶¶ 44-47; Ex. 23, J. Foley Email.  The email told Members that Peloton was engaged in discussions with music publishers over certain music-licensing disagreements, and that, while Peloton would continue to negotiate licensing agreements to provide a "broad catalog of music" for its classes, it was removing some classes from its library "out of an abundance of caution."  *See id.*  Peloton's "abundance of caution" was prompted by the filing, six days earlier, of a lawsuit in which a group of music publishers alleged that Peloton unlawfully used music that they owned or controlled.  *See id.*  Passman and Alvarado learned about the removal of classes "very close in time" to Foley's email.  SOF ¶ 48; Ex. 4, Passman's Response to RFAs, at No. 27; Ex. 18, Alvarado's Supp. Response to RFAs, at No. 20.  The March 25 removal of classes still left more than 7,000 classes available to users in Peloton's on-demand library, and Peloton continued to add classes thereafter.  SOF ¶ 49; Ex. 21, Class Library Chart.

The removal of classes had little impact on Peloton's Members.  Given the number of classes remaining, many Members said that the removal of these classes did not affect them, and only a "single digit [number] of subscription cancellations" were attributed to the removal.  SOF ¶¶ 50, 53; Ex. 25, Annual Peloton Member Survey, at 6; Ex. 17, Alvarado Dep. Tr. I, 83:4-12, 90:11-91:6; Ex. 24, Olson Dep. Tr. 182:15-183:6, 201:9-20; Ex. 31, McMahon Dep. Tr., 25:17-21.  Peloton continued to add monthly subscribers at approximately the same rate before and after the March 2019 class removal.  SOF  ¶ 55; Ex. 2, Strombom Rep. ¶ 100 & Fig. 7.  By the end of 2019, "[s]entiments for Peloton classes [were] at an all-time high."  SOF ¶ 52; Ex. 25, Annual Peloton Member Survey, at 6.

Plaintiffs' reactions to the removal of classes were similar to those of other Peloton Members. Like most Members, Alvarado did not contact Peloton to inquire or complain about the class removal after receiving the Foley email. SOF ¶ 63; Ex. 17, Alvarado Dep. Tr. I, 82:25-83:3; Ex. 18, Alvarado's Supp. Response to RFAs, at Nos. 43-45. He testified that he did not believe he was overcharged, has "no intentions of selling" his wife's Bike, has "never canceled" his wife's Membership, and would pay more for the Membership even after the takedown. SOF ¶ 64-66; Ex. 17, Alvarado Dep. Tr. I, 37:2-19, 43:8-19, 49:4-19, 81:5-12. While Passman did contact Peloton's customer service two days after the removal to inquire about it, he did not cancel his Membership. SOF ¶¶ 56-58; Ex. 16, Passman Dep. Tr. I, 89:19-90:5, 92:17-24; Ex. 26, Passman Dep. Tr. II, 164:17-165:2; Ex. 4, Passman's Response to RFAs, at Nos. 13, 27, 36, 47. As Passman explained, he has "always been able to find" classes to take in Peloton's library. SOF ¶ 59; Ex. 16, Passman Dep. Tr. I, 93:8-12.

### D. This Court Allows Plaintiffs' Claims To Survive A Motion To Dismiss On A Price Premium Theory, And Later Holds That Plaintiffs' Claims Can Proceed Only On An Individual Basis.

This lawsuit was originally filed as a putative class action in December 2019. *See* Dkt. 1. The named plaintiff role has been a revolving door since then.[3] The current plaintiffs, Passman and Alvarado, joined this lawsuit as named plaintiffs in February 2022 with the filing of the Third Amended Complaint. *See* TAC. The Third Amended Complaint alleges that Peloton knew the Challenged Statement became false or misleading once Peloton received a cease-and-desist letter regarding alleged copyright infringement from the National Music Publishers Association on April

---

[3] One plaintiff, Eric Fishon, was deemed an inadequate class representative, *see* Dkt. 168, at 22-26, after which he voluntarily dismissed his claims by not joining the Third Amended Complaint, *see generally* TAC. A second plaintiff, Alicia Pearlman, was dismissed because she lacked statutory standing to pursue GBL claims and because she failed to plead with specificity the reliance element of a claim under the Michigan Consumer Protection Act. *See* Dkts. 65, 102, 168. A third plaintiff, Patrick Yang, voluntarily dismissed his claims. *See* Dkts. 58, 61.

9, 2018, and that this letter was the first in a chain of events that led to the removal of classes on March 25, 2019. *See id.* ¶¶ 84-87.

This Court allowed Plaintiffs' claims under New York's General Business Law ("GBL") sections 349 and 350 to survive a motion to dismiss. *See* Dkt. 207. The claims were allowed to proceed on the theory that Peloton violated the GBL by making the Challenged Statement, even though Passman and Alvarado were never aware of and had never been personally exposed to, much less relied upon, that statement. *Id.* at 21-23. The Court nevertheless concluded that Passman and Alvarado could pursue a claim based on their allegation that Peloton's misrepresentations "had broad impact" and were "widespread," which Plaintiffs alleged caused them to pay "a higher price . . . for their products." *Id.* at 32-33, 34-36. In so holding, the Court cautioned that "[i]t may be difficult in the end for Plaintiffs to prove those claims (or even to present sufficient facts to create a jury question)." *Id.* at 33.

Following extensive discovery, the Court denied Plaintiffs' motion for class certification on May 2, 2023. *See* Dkt. 284. Plaintiffs did not satisfy the predominance requirement of Rule 23(b)(3) because they "fail[ed] to offer evidence that the Challenged Statement caused a price premium—or propose a methodology which could be used to demonstrate a price premium." *Id.* at 46. As the Court observed, the methodology proposed by Plaintiffs' expert J. Michael Dennis was inadequate because it was based on assumptions that were contradicted by the evidence. *Id.* at 55-56. For example, Dennis "*presumed* that individuals who purchased Peloton products saw and noticed the Challenged Statement," *id.* at 56 (emphasis added), but "powerful" survey data demonstrated that only a small number of Peloton Members even noticed the allegedly misleading statement, much less "ascribe[d] any value to it." *Id.* at 52-53. The model employed by Plaintiffs' expert also "measured the value that a consumer would place on *two different representations*:

8

The fact that a purchaser of a Peloton product will have access to a library of classes and the fact that this library of classes will be 'ever-growing,'" which meant that "it is impossible to determine what portion, if any, of the price premium it calculates for the Peloton Bike and Peloton Membership is attributable to the Challenged Statement." *Id*. at 58 (emphasis added). For these reasons, Plaintiffs had failed to carry their burden of demonstrating a methodology that could be used to calculate a price premium. *Id.* at 46.

## PROCEDURAL STANDARD

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), when "moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). By contrast, to defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and must demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

A plaintiff asserting a claim under GBL section 349 or section 350 must prove three elements: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading

in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002) (a claim under GBL section 350 is specific to false advertising, but its elements are "otherwise identical to section 349"). Because Plaintiffs have failed to create a triable dispute as to either the second or third elements of their claims, the Court should grant summary judgment in Peloton's favor on all remaining claims.

This Court previously held that Plaintiffs could attempt to prove causation and injury under the GBL in "one of two ways." Dkt. 284, at 47. First, a plaintiff "can plead that she was exposed to a material deceptive act and relied on that misrepresented fact to her detriment." *Id.* Second, a plaintiff can plead that "the defendant's misleading or deceptive advertising campaign caused a price premium," which led to plaintiff being "charged a price she would not otherwise have been charged but for the false campaign." *Id.* Plaintiffs cannot prevail on either theory. Nor can Plaintiffs prove that the Challenged Statement was material to a reasonable consumer.

## I.    Plaintiffs Have No Evidence To Establish Injury On A Theory That They Relied On The Challenged Statement When Making Their Purchasing Decisions.

As to the first theory of injury, there is no dispute that Passman and Alvarado did not personally rely on the Challenged Statement. The Court has already determined that Passman's and Alvarado's testimony "compels a finding that they did not rely on the misrepresentations at issue when making their purchasing decisions." Dkt. 207, at 21. Nothing that has occurred in this case since then requires a different conclusion.

***Passman***.    As the Court has already recognized, whether or not Passman relied on representations that Peloton's library was "growing" at the time he purchased his Bike is immaterial because it was and remains undisputed that such statements were not false at the time he made that purchase. *Id.* at 22. Passman also testified that he did not rely on or even see any

advertisements making representations about Peloton's on-demand library before he purchased his Bike or his initial Membership.  SOF ¶ 27; Ex. 16, Passman Dep. Tr. I, 78:10-82:6, 83:3-8. Passman further testified that none of Peloton's advertisements affected his decision to continue to pay for his Membership on a monthly basis once his initial one-year Membership expired in early 2018.  SOF ¶ 28; Ex. 16, Passman Dep. Tr. I, 81:24-82:6.

*Alvarado*.  Alvarado did not rely on the Challenged Statement when his wife purchased a used Bike from a friend.  *See* Dkt. 207, at 21 (noting that "Alvarado alleges that he relied on Peloton's representations *only* with respect to his subscription purchase and not with respect to the purchase of his Peloton bike") (emphasis added).  Moreover, the Court has already recognized that Alvarado's testimony "undermines any claim that he relied on Peloton's alleged misrepresentations when making his Peloton purchases."  *Id.*  Specifically, Alvarado testified that he did not make the decision to purchase the Bike or the Membership, that no advertisement informed a decision to purchase a Membership, and that he was never "promised . . . anything" by Peloton "in reference to their library and catalog of products."  SOF ¶¶ 38, 40; Ex. 17, Alvarado Dep. Tr. I, 36:5-14, 39:2-40:2, 71:24-72:4, 79:23-25.

In short, Plaintiffs' own testimony proves that they did not personally rely on any allegedly misleading statement by Peloton, meaning they cannot maintain their GBL claims against Peloton on the theory that they were "exposed to a material deceptive act and relied on that misrepresented fact to [their] detriment."  Dkt. 284, at 47.

## II.    Plaintiffs Have No Evidence To Establish Injury On A Theory That They Paid A Premium For Any Peloton Product.

Even though the Court held that Plaintiffs did not personally rely on the Challenged Statement when making their purchasing decisions, the Court allowed the claims to proceed past a motion to dismiss.  The Court reached this result by holding that Plaintiffs had adequately

pleaded a "price premium" theory—that is, that Peloton's allegedly false statements "had broad impact" and that "they paid a higher price . . . for their products because of [Peloton's] widespread misrepresentations about the value of the product." Dkt. 207, at 32-33. In so holding, however, the Court predicted that "[i]t may be difficult in the end for Plaintiffs to prove those claims (or even to present sufficient facts to create a jury question)." *Id*. at 33. Now that discovery is complete, the Court's prediction has come true.

### A.    Tread: Plaintiffs Have No Evidence That They Paid A Price Premium For The Tread Because They Did Not Purchase That Product.

Although the Complaint asserts claims relating to the Tread, *see* TAC ¶¶ 3, 127, 147, neither Plaintiff purchased that product. SOF ¶¶ 31, 42; TAC ¶¶ 35, 37. A plaintiff cannot maintain a claim under the GBL without purchasing the product that the defendant allegedly falsely advertised. *See, e.g.*, *Lake v. Ford Motor Co.*, 2019 WL 5873887, at *7 (E.D.N.Y. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 4593489 (E.D.N.Y. Sept. 23, 2019) (dismissing GBL claim where "Plaintiffs did not purchase the vehicles at all"). Since Plaintiffs never purchased a Tread, Plaintiffs could not have been injured by any purported "price premium" associated with the Tread. Peloton therefore is entitled to judgment on all of Plaintiffs' Tread-based claims. SOF ¶¶ 31-32, 42-43; TAC ¶¶ 35, 37; Ex. 4, Passman's Response to RFAs, at No. 38; Ex. 18, Alvarado's Supp. Response to RFAs, at No. 39.

### B.    Bike: There Is No Evidence Of A Purported Price Premium That Applies To The Bike Purchases At Issue Here.

Plaintiffs lack evidence that they paid a price premium when they purchased their Bikes (or, in Alvarado's case, when his wife made the purchase). Lacking that evidence, Plaintiffs attempt to establish the existence of a price premium through the expert testimony of J. Michael Dennis, who asserted that if Peloton had not made the Challenged Statement, Peloton would have sold new Bikes at a lower price between April 2018 to March 2019. *See* Ex. 3, 2022 Dennis Rep.

¶ 76.  For at least three reasons, Dennis's opinion is not evidence that a price premium was paid, and Plaintiffs have no other evidence to support such a theory of injury.

> ### 1. *Plaintiffs' Expert Did Not Calculate The Price Premium For Plaintiffs' Bike Purchases.*

Dennis's opinion is not evidence that Passman or Alvarado were harmed.  Passman purchased his Bike in February 2017; Alvarado's wife purchased a used Bike from a friend in January 2019; and Dennis did not purport to determine whether a price premium existed for either sale.

**Passman**.  Passman purchased his Bike in February 2017.  SOF ¶ 23; Ex. 4, Passman's Response to RFAs, at Nos. 1-3; Ex. 16, Passman Dep. Tr. I, 32:17-33:2.  Although Peloton by this time had used the term "ever-growing library" in some of its marketing statements, Plaintiffs have never contended that this statement was false at the time Passman purchased his Bike.  *See* Dkt. 207, at 22 ("[T]here are no well-pleaded allegations that [Peloton's] statements were false at the time [Passman] made [his Bike] purchase, and so he could not state a claim for that time period.").  As a result, Passman cannot prove that he "was charged a price [he] would not otherwise have been charged but for the false campaign."  *Id*. at 26.

Passman's expert also never attempted to calculate any price premium supposedly paid by Passman.  Dennis purported to calculate a price premium only for the post-purchase period of April 2018 to March 2019.  SOF ¶ 67; Ex. 3, 2022 Dennis Rep. ¶ 23.  He did not offer any opinion on whether a price premium existed before then.  *Id*. ¶ 68; *see generally* Ex. 3, 2022 Dennis Rep.

**Alvarado**.  Alvarado's wife purchased a used Bike in January 2019 from a friend at a steep discount.  SOF ¶¶ 33; Ex. 17, Alvarado Dep. Tr. I, 36:5-37:11; Ex. 18, Alvarado's Supp. Response to RFAs, at No. 3; Ex. 19, Venmo Receipt.  The Bike and accessories that Alvarado's wife paid

$1,200 to purchase would have cost $3,000 if purchased new from Peloton.  SOF ¶¶ 34-35; Alvarado Dep. Tr. I, 36:5-37:11, 37:24-38:10; Ex. 20, Alvarado Dep. Tr. II, 175:21-177:15.

There is no evidence that the steeply discounted price that Alvarado's wife paid to purchase a used Bike reflected any price premium attributable to any misleading statement.  Plaintiffs' expert Dennis only attempted to calculate a price premium (if any) associated with the purchase of a *new* Bike *directly from Peloton* that cost *$1,995* (without accessories).  SOF ¶¶ 3, 68; Ex. 2, Strombom Rep. ¶ 98(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Exhibit 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary.  Dennis did not attempt to determine whether there was a price premium associated with the purchase of a *used* Bike from a seller *other than Peloton* at a discounted cost of *$1,200* (with accessories).  SOF ¶ 69; *see generally* Ex. 3, 2022 Dennis Rep.  There is no other possible evidence that Alvarado's wife could have purchased the Bike from her friend for a cheaper price if she or her friend had known that some classes would eventually be removed from Peloton's library.

### 2. *Undisputed Evidence Shows Peloton's Prices Remained Constant During The Relevant Period, Which Precludes A Finding Of A Price Premium.*

Even if Dennis's "price premium" opinion encompassed Plaintiffs' Bike purchases, Peloton would still be entitled to summary judgment.  A reasonable jury could not find that a price premium existed because it is undisputed that the price did not change when Peloton added the Challenged Statement, when the alleged deception was publicly disclosed, or for months after Peloton stopped using the Challenged Statement.  SOF ¶¶ 3, 5; Ex. 2, Strombom Rep. ¶ 98(a)-(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Exhibit 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary.  And this Court has already concluded that Dennis's analysis is "not sufficient to show that there was a price premium and does not represent . . . a methodology by which a price premium could be demonstrated."  Dkt. 284, at 55.  Despite having nearly two years

of discovery,[4] Plaintiffs have been unable to produce evidence that any price premium actually existed. *Id.* at 61; *see Goenaga*, 51 F.3d at 18 (holding that summary judgment is warranted where there is an "absence of evidence to support an essential element of the nonmoving party's claim"); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67 (S.D.N.Y. 2015) (noting that a plaintiff must offer "evidence that a price premium actually existed" as a result of the allegedly false statement).

Plaintiffs' entire theory of the case is that the price of the Bike—as well as the prices of the Tread and Membership—was inflated as a result of the Challenged Statement. But undisputed evidence shows that the price of each product "remained constant both before, during, and for almost eighteen months after the [proposed] Class Period." Dkt. 284, at 54; *see also* SOF ¶¶ 3, 5; Ex. 2, Strombom Rep. ¶ 98(a)-(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Exhibit 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary. Specifically, the price "did not increase after [Peloton] first made the Challenged Statement in May 2016." Dkt. 284, at 54. Nor did it "decrease for eighteen months after [Peloton] removed the classes in March 2019 and for the five months after [Peloton] ceased to make the Challenged Statement in April 2020." *Id*. This evidence conclusively demonstrates that there could not have been a price premium.

As this Court and others have recognized, the analysis of whether there has been a price premium under the GBL is "essentially the same" as the analysis of whether there has been a "fraud on the market" under the securities laws. Dkt. 284, at 62-63; *see In re POM Wonderful LLC*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (Plaintiffs' "Price Premium model depends upon a 'fraud on the market' theory."). Both theories are "only possible in efficient markets, where the price" of the stock or good "is determined by openly disseminated information about a business."

---

[4] Plaintiffs also declined to request additional discovery in response to this Court's order asking "whether any additional merits discovery (including expert discovery) is needed." Dkt. 286; *see* Dkt. 290.

*Id.*; *see also Saavedra v. Eli Lilly & Co.*, 2015 WL 9916598, at *3 (C.D. Cal. July 21, 2015) (same). Even assuming the efficient market hypothesis applies to consumer-product markets, *but see In re POM Wonderful*, 2014 WL 1225184, at *4 (concluding that it does not), any presumption that the price was improperly inflated is fatally undermined by the real-world fact that the price stayed constant for 18 months after classes were removed (i.e., when the purported truth was revealed to the market).  SOF ¶¶ 3, 5; Ex. 2, Strombom Rep. ¶ 98(a)-(b); Ex. 3, 2022 Dennis Rep. ¶¶ 76, 78 & Exhibit 1; Ex. 4, Passman's Response to RFAs, at No. 3; Ex. 5, Passman Order Summary. Under the efficient market hypothesis, a plaintiff must ultimately prove "loss causation, *i.e.*, that the corrected truth of the former falsehoods actually caused the stock price to fall and resulted in the losses."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 814-15 (2011).  Where, as here, Plaintiffs cannot "demonstrate that the market reacted negatively to the disclosures," summary judgment is warranted.  *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 553 (S.D.N.Y. 2008) (granting summary judgment), *aff'd*, 597 F.3d 501 (2d Cir. 2010).

This Court contemplated the possibility that these "results could perhaps be explained away if there were other confounding factors, including if Defendant offered something additional of value to consumers after the takedown or if sales fell markedly."  Dkt. 284, at 54.  But there is no evidence that Peloton offered anything of additional value after removing the classes.  Nor is there evidence that Peloton sales fell markedly.  To the contrary, Peloton added monthly subscribers to its Bike product at approximately the same rate both before and after classes were removed in March 2019.  SOF ¶ 55; Ex. 2, Strombom Rep. ¶ 100 & Fig. 7.

Because there is no evidence that Plaintiffs paid a price premium for any of the products at issue, summary judgment is warranted.  *See, e.g.*, *Colpitts v. Growers*, 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023) (granting summary judgment for defendant where plaintiff "has

produced no evidence . . . to substantiate" allegations of a price premium and collecting cases "grant[ing] defendants summary judgment when faced with records that similarly lacked evidence of a price premium").

### 3. *Plaintiffs Cannot Create A Disputed Issue Of Fact Based On Inadmissible Expert Testimony.*

Plaintiffs cannot rely on Dennis's opinions to create a genuine factual dispute for yet another reason:  his opinions are inadmissible, as explained in Peloton's contemporaneously filed *Daubert* motion.  *See generally* Mem. of Law in Support of Peloton's Mot. to Exclude the Testimony of Pltfs.' Experts ("*Daubert* Motion"); *see also* Dkt. 284, at 12 (observing at the class certification stage that "the Court need not determine that Dennis's survey is sufficiently reliable for a jury to hear it").  His opinions suffer from three critical flaws.

*First*, this Court correctly observed that Dennis's analysis "says nothing about the threshold question of whether sufficient consumers recognized the Challenged Statement such that a price premium existed." *Id.* at 57.  Rather, Dennis simply *assumes*, contrary to the undisputed evidence, that 100% of customers saw the Challenged Statement. *See id.* at 55 (acknowledging that Dennis "presumed that individuals who purchased Peloton products saw and noticed the Challenged Statement such that a price premium *could have* existed" (emphasis added)); *see also* Ex. 27, Dennis Dep. Tr., 178:19-179:9.  As this Court already observed, "this presumption is not supported by the evidence."  Dkt. 284, at 56.  It is undisputed that Passman and Alvarado never saw the Challenged Statement. *See* Section I, *supra*.  They are not alone:  very few Peloton customers saw the Challenged Statement, much less ascribed any significance to it.  *See* Dkt. 284, at 49-52, 58-60 (surveying the evidentiary record on this point); *see also* SOF ¶¶ 10-12, 16, 21-22; Ex. 2, Strombom Rep. ¶ 23; Ex. 11, Dillon-Curran Dep. Tr., 132:22-133:4, 136:7-12; Ex. 12, Appendix of Challenged Statements; Ex. 13, Aronow Decl. ¶¶ 6-8; Ex. 14, Kirk Fair Rep. ¶¶ 43, 49-50; Ex.

15, Acquisition Model Media Spend; Ex. 51, Declaration of Alex Dravillas in Support of Plaintiffs'
Motion for Class Certification, ¶ 40; Ex. 52, Peloton Ad.; Ex. 53, Peloton Ad.; Ex. 54, National
Radio Scripts; Ex. 55, Plaintiffs' Exhibit 16; Ex. 56, Plaintiffs' Exhibit 40.  For these reasons,
Dennis's model "could not be used to demonstrate that a price premium existed."  Dkt. 284, at 56.

*Second*, because Dennis failed to isolate the Challenged Statement in his survey analysis,
he does not actually offer any opinions on the relevant question—whether Peloton's use of the
phrase "growing" or "ever-growing" allowed it to charge a price premium.  *See id.* at 58.  Dennis's
survey tested consumer interest in the phrase "Ever-Growing Library of Classes."  Ex. 3, Dennis
Rep. ¶ 59.  As this Court has already recognized, that improperly "measured the value that a
consumer would place on *two different representations*:  The fact that a purchaser of a Peloton
product will have access to a library of classes and the fact that this library of classes will be 'ever-
growing.'"  Dkt. 284, at 58 (emphasis added); *see also id.* at 66.  Dennis conceded that he made
no effort to separate the Challenged Statement ("growing" or "ever-growing") from the mere
existence of an on-demand "library of classes"—a core feature of Peloton's product with
independent value.  *See* Ex. 27, Dennis Dep. Tr., 153:15-154:11.  Consequently, his opinions are
insufficient to create a triable issue as to whether the Challenged Statement itself caused a price
premium as opposed to other factors that Plaintiffs do not challenge.  *See* Dkt. 284, at 58 ("[F]rom
the model that Named Plaintiffs have offered, it is impossible to determine what portion, if any, of
the price premium it calculates for the Peloton Bike and Peloton Membership is attributable to the
Challenged Statement.").

*Third*, Dennis focused exclusively on demand-side factors—*i.e.*, consumer preferences—
and failed to consider supply-side factors that influence the market price.  Under New York law,
an item's "fair market value is the price for which the [item] would sell if there was a willing buyer

who was under no compulsion to buy *and* a willing seller under no compulsion to sell." *Keator v. State*, 244 N.E.2d 248, 249 (N.Y. 1968) (emphasis added). Dennis purported to assess what a "willing buyer" would pay, but simply "assumed that supply would have been fixed" without "consider[ing] the fact that [Peloton] would have been willing to sell fewer Peloton products at decreased prices." Dkt. 284, at 68. For this reason, Dennis's analysis "does not measure the market price in the 'but for' world in which the misleading elements of the Challenged Statement were not made," and it cannot create a genuine dispute on that critical question. *Id.*

For these and the other reasons explained in the accompanying *Daubert* Motion, Dennis's testimony cannot create a disputed issue of fact because it is inadmissible.

### C.    Membership: Plaintiffs Have No Evidence To Prove They Were Injured By Paying A Premium For Their Memberships.

Peloton is also entitled to summary judgment on Plaintiffs' claims based on Membership payments. As with their claims for Bike purchases, Plaintiffs cannot prove they were injured by paying a price premium for a Membership. Additionally, the voluntary payment doctrine bars Plaintiffs' claims.

#### 1.    *There Is No Admissible Evidence That Plaintiffs Paid A Premium For Their Memberships.*

Plaintiffs' claims that they paid a premium associated with their Membership purchases suffer from the same flaws as their Bike-related claims. As with the price of the Bike, the undisputed evidence shows that the price of a Membership "remained constant both before, during, and for almost eighteen months after the [proposed] Class Period." Dkt. 284, at 54; *see also* SOF ¶ 5; Ex. 2, Strombom Rep. ¶ 98(a). That evidence conclusively demonstrates that there could not have been a price premium, as explained above. *See* Section II.B.2, *supra*. Dennis's opinions do not help Plaintiffs here, either: because they are inadmissible, *see* Section II.B.3, *supra*, they cannot create a triable dispute as to whether Plaintiffs paid a price premium for their Memberships.

19

### 2. The Voluntary Payment Doctrine Independently Bars Plaintiffs' Membership-Related Claims.

Plaintiffs' claims for Membership payments are also barred by the "voluntary payment doctrine." *See, e.g.*, Dkt. 207, at 36-37 (noting that this doctrine provides an affirmative defense to Plaintiffs' GBL claims); *see also* Dkt. 215, at 19 (Peloton's Answer pleading the voluntary payment doctrine as an affirmative defense). This doctrine precludes claims based on payments made voluntarily "with full knowledge of the facts**,** and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester*, 100 N.Y.2d 525, 526 (N.Y. 2003). In deciding whether a plaintiff had "full knowledge of the facts," courts consider what a plaintiff "knew or should have known." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009); *see also Dillon v. U-A Columbia Cablevision of Westchester*, 740 N.Y.S.2d 396, 398 (N.Y. App. Div. 2001) (affirming dismissal based on voluntary payment doctrine and explaining that customer should have known that a late-payment charge advertised as reflecting only the administrative costs associated with late payments might be excessive because it constituted 19% of her total bill), *aff'd* 100 N.Y.2d 525. Courts consider a plaintiff's actual and constructive knowledge because application of the voluntary payment doctrine cannot be avoided through a lack of diligence. *See Utica Mut. Ins. Co. v. Am. Re-Ins. Co.*, 193 N.Y.S.3d 594, 597 (2023) ("if a payment is made based upon a party's own lack of diligence, the voluntary payment doctrine will bar recovery").

Plaintiffs' Membership claims are barred because Plaintiffs voluntarily made their monthly payments for years. SOF ¶¶ 25-26, 37, 56-60, 65; Ex. 4, Passman's Response to RFAs, at Nos. 13, 27, 36, 47; Ex. 16, Passman Dep. Tr. I, 34:3-21, 89:19-90:5, 92:17-24, 93:8-12; Ex. 17, Alvarado Dep. Tr. I, 37:2-11, 48:18-23, 81:5-12; Ex. 18, Alvarado's Supp. Response to RFAs, at Nos. 12-13; Ex. 26, Passman Dep. Tr II, 144:22-145:7, 164:17-165:2, 168:17-169:6. Plaintiffs

20

could have canceled their Memberships after Peloton announced that it was removing classes from its library in March 2019, but they did not do so. *Id.* At a minimum, before they continued making monthly payments, Plaintiffs could have informed Peloton that they were protesting the amount of the payments given the removal of classes, but they did not do that either. *Id.* Having failed to take either of those steps, Plaintiffs cannot pursue claims based on payments they voluntarily made. *See, e.g., Beltway 7 & Prop., Ltd. v. Blackrock Realty Advisers, Inc.*, 90 N.Y.S.3d 3, 6 (N.Y. 2018) (voluntary payment doctrine barred claims where plaintiff did not take "steps to indicate that [he] was reserving [his] right[]" to contest payments); *Gimbel Bros. v. Brook Shipping Ctrs.*, 499 N.Y.S.2d 435, 439 (N.Y. App. Div. 1986) ("When a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." (citations omitted)).

Plaintiffs cannot avoid the voluntary payment doctrine by asserting that they lacked sufficient knowledge for the doctrine to apply. Plaintiffs had actual knowledge that Peloton could remove classes from the library around March 25, 2019, when Peloton sent an email about removing classes. SOF ¶ 45; Ex. 23, J. Foley Email; *see also* SOF ¶ 48; Ex. 4, Passman's Response to RFAs, at No. 27; Ex. 18, Alvarado's Supp. Response to RFAs, at No. 20. Indeed, Passman called Peloton to inquire about the removal but still elected not to cancel his Membership and instead keep paying the monthly fees. SOF ¶¶ 56-58; Ex. 4, Passman's Response to RFAs, at Nos. 13, 27, 36, 47; Ex. 16, Passman Dep. Tr. I, 89:19-90:5, 92:17-24; Ex. 26, Passman Dep. Tr. II, 164:17-165:2, 168:17-169:6.

Plaintiffs also had constructive knowledge that Peloton could remove classes from the library from the time they started using Peloton because the Terms of Service expressly disclosed that Peloton may remove classes from the library. The Terms of Service in effect from February

2016 through December 2019 stated that Peloton "reserves the right to modify the Peloton Service, including but not limited to . . . removing or altering any Content or features of the Peloton Service, at any time, in its sole discretion.  SOF ¶ 6; Exs. 7-10, Terms of Service from February 2016 – December 2019.  Peloton's Terms of Service from September 2017 onward further stated that Peloton "does not guarantee that any Content available on the Peloton Service . . . will continue to be available for any length of time."  SOF ¶ 7; Exs. 8-10, Terms of Service from September 2017 – December 2019.  Moreover, since neither Plaintiff read the Challenged Statement, *see* SOF ¶¶ 28, 39; Ex. 16, Passman Dep. Tr. I, 81:24-82:6; Ex. 17, Alvarado Dep. Tr. I, 79:23-25, neither can claim that he was misled about how the library may change over time.

In sum, because Plaintiffs continued to voluntarily pay for their Memberships for years, they cannot recover those payments.  *See, e.g.*, *Lavin v. Town of E. Greenbush*, 843 N.Y.S.2d 484, 491-92 (N.Y. Sup. Ct. 2007) (granting summary judgment and applying the voluntary payment doctrine to bar recovery for alleged excess payments); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (collecting cases applying this doctrine in the subscription context); *see also Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 55 (N.Y. App. 2004) (same).

## III.    There Is No Genuine Dispute That The Challenged Statement Was Not Material To A Reasonable Consumer.

Plaintiffs' claims fail for yet another reason:  they cannot prove the Challenged Statement was material to a reasonable consumer.  *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413-15 (S.D.N.Y. 2004) (GBL claims require proof of statements that were "deceptive or misleading in a material way").  "[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."  *Id.* at 414.  Here, the evidence proves that the exact opposite is true:  consumers did not

care about the Challenged Statement, and did not change their behavior after Peloton removed classes in March 2019.

The real-world reaction to Peloton's removal of classes in March 2019 confirms that reasonable consumers did not consider Peloton's alleged misrepresentations or omissions to be material. Of the approximately 457,000 Peloton Members as of March 25, 2019, SOF ¶ 54; Ex. 6, Peloton 2019 Form S-1, at 81, only a "single-digit number" canceled their Memberships as a result of the takedown, SOF ¶ 53; Ex. 24, Olson Dep. Tr., 182:15-183:6, 201:9-20. If the Challenged Statement were truly material to a reasonable consumer, it is implausible to believe that such a high percentage of the Membership pool—more than 99.99%—would remain paying Peloton Members after classes were removed. Indeed, Peloton's Membership continued to grow at approximately the same rate before and after that date. SOF ¶ 55; Ex. 2, Strombom Rep. ¶ 100 & Fig. 7. The fact that the prices of Peloton's products "remained constant both before, during, and for almost eighteen months after the [proposed] Class Period," Dkt. 284, at 54, further demonstrates the immateriality of the Challenged Statement. Because Plaintiffs have failed to create a triable fact as to the materiality of the Challenged Statement, their GBL claims fail.

This Court's inquiry can end there. Plaintiffs bear the burden of proving each element of their claims, and the lack of any real-world impact demonstrates that they cannot prove materiality. But it is worth noting that the real-world evidence is consistent with the results of an analysis conducted by Peloton's expert Rebecca Kirk Fair, which this Court previously concluded was "powerful." *Id.* at 52. That analysis demonstrates that only 0.7% of the Bike test group and 1.3% of the Membership test group even *noticed* the Challenged Statement when it was presented. SOF ¶ 16; Ex. 14, Kirk Fair Rep. ¶¶ 43, 49-50. Kirk Fair also conducted a materiality survey to determine if the Challenged Statement had an impact on consumers' purchasing decisions,

23

exposing test groups to different advertisements—only some of which included the Challenged Statement—and asking them to answer whether they would "consider" or were "likely" to purchase a Bike or Membership. SOF ¶ 17; Ex. 14, Kirk Fair Rep. ¶¶ 18-19, 54-64.  Based on the results of that materiality analysis, Kirk Fair concluded that there was no statistically significant difference in consumer perceptions of the product between individuals who saw the Challenged Statement and those who did not.  SOF ¶ 19; Ex. 14, Kirk Fair Rep. ¶¶ 58-60.  If anything, Kirk Fair's analysis pointed in the exact opposite direction:  a *lower percentage* of consumers indicated they would "consider" or purchase a Bike or Membership after being exposed to the Challenged Statement.  SOF ¶ 20; Ex. 14, Kirk Fair Rep. ¶ 60, Tables 5-6.  As this Court previously concluded, Kirk Fair's analysis demonstrates that "even if a large proportion of Peloton consumers saw the Challenged Statement … they did not focus on the Challenged Statement and ascribe any value to it."  Dkt. 284, at 52-53.

## CONCLUSION

This Court should grant summary judgment in favor of Peloton on all of Plaintiffs' claims.

Dated:  December 4, 2023
       New York, New York

Respectfully submitted,
LATHAM & WATKINS LLP

_____
Steven N. Feldman
William O. Reckler
Lilia B. Vazova
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Steve.Feldman@lw.com
William.Reckler@lw.com
Lilia.Vazova@lw.com

William J. Trach (admitted *pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000
William.Trach@lw.com

*Attorneys for Defendant Peloton
Interactive, Inc.*