**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC PASSMAN and ISHMAEL ALVARADO, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>       Defendant. | Civil Action No. 1:19-cv-11711 (LGS) |

**PLAINTIFFS' MOTION TO VACATE AND RETAIN JURISDICTION**

**Dated:** October 9, 2024

# <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................................1

BACKGROUND FACTS.....................................................................................................2

ARGUMENT........................................................................................................................7

    I.      Dismissal is not appropriate because this Court retains original CAFA jurisdiction over Plaintiffs' claims—supplemental jurisdiction is inapplicable. ...............................7

           A.      The Court has original subject-matter jurisdiction over *all* claims under 28 U.S.C. § 1332(d). ..........................................................................................8

           B.      This Court never had—and does not presently have—supplemental jurisdiction over Plaintiffs' claims.............................................................10

    II.     Dismissal is not appropriate because, even if class certification denial permitted a supplemental jurisdiction analysis, no proper class certification denial occurred here. .............................................................................................................................14

           A.      *Litovich* mandates finding that the recused judge's conflict was not cured.....14

           B.      The recused judge should have disqualified himself from this case, pursuant to 28 U.S.C. §§ 455(a), (b), and (c)....................................................15

           C.      At a minimum, *de novo* review of the recused judge's rulings is needed..........17

           D.      Plaintiffs did not waive the recused judge's conflict.........................................20

    III.    Dismissal is not appropriate because, even accepting the recused judge's class certification denial, section 1367(c) does not support dismissal of Plaintiffs' claims..............................................................................................................................22

CONCLUSION....................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelphia Recovery Tr. v. Bank of Am., N.A.,*
    No. 05 CIV. 9050 (LMM), 2010 WL 2077214 (S.D.N.Y. May 14, 2010) ........................................ 19

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n,*
    528 F.3d 934 (D.C. Cir. 2008) ................................................................................................ 8, 12

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
    140 F.3d 101 (2d Cir.1998) ......................................................................................................... 24

*Archer v. Carnival Corp. & PLC,*
    No. 2:20-CV-04203-RGK-SK, 2021 WL 4798695 (C.D. Cal. May 14, 2021) ................................ 8

*Arroyo v. Rosas,*
    19 F.4th 1202 (9th Cir. 2021) ...................................................................................................... 25

*Behrens v. JPMorgan Chase Bank, N.A.,*
    96 F.4th 202 (2d Cir. 2024) .......................................................................................................... 13

*Brock v. Zuckerberg,*
    No. 21-1796, 2022 WL 1231044 (2d Cir. Apr. 27, 2022) ............................................................ 18

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988) ...................................................................................................................... 13

*Catzin v. Thank You & Good Luck Corp.,*
    899 F.3d 77 (2d Cir. 2018) ........................................................................................................... 23

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago,*
    93 F.3d 1064 (2d Cir. 1996) ...................................................................................................... 9, 19

*Chase Manhattan Bank v. Affiliated FM Ins. Co.,*
    343 F.3d 120 (2d Cir. 2003) .................................................................................................... 18, 21

*Cisneros v. Petland, Inc.,*
    972 F.3d 1204 (11th Cir. 2020) .................................................................................................... 11

*City of Chicago v. Int'l Coll. of Surgeons,*
    522 U.S. 156 (1997) ........................................................................................................................ 7

*Cotroneo v. Shaw Env't & Infrastructure, Inc.,*
    639 F.3d 186 (5th Cir. 2011) ........................................................................................................ 11

*Dery v. Wyer,*
265 F.2d 804 (2d Cir. 1959) ........................................................................................ 9

*Doe v. Fed. Republic of Germany,*
No. 23 CIV. 6395 (VSB) (GS), 2024 WL 3518524 (S.D.N.Y. July 24, 2024) ................ 16

*Doe v. Trump Corp.,*
385 F. Supp. 3d 265 (S.D.N.Y. 2019) ......................................................................... 9

*Executive Software N. Am., Inc. v. United States Dist. Court,*
24 F.3d 1545 (9th Cir.1994) ....................................................................................... 25

*ExxonMobil Oil Corp. v. TIG Ins. Co.,*
44 F.4th 163 (2d Cir. 2022) .......................................................................... 17, 18, 24

*F5 Cap. v. Pappas,*
856 F.3d 61 (2d Cir. 2017) ........................................................................ 9, 11, 12, 13

*Friends for Health: Supporting the N. Shore Health Ctr. v. PayPal, Inc.,*
No. 17 CV 1542, 2022 WL 2799396 (N.D. Ill. July 14, 2022) ....................................... 8

*Gale v. Chicago Title Ins. Co.,*
929 F.3d 74 (2d Cir. 2019) ........................................................................................ 13

*Hahn v. JetBlue Airways Corp.,*
No. 1:21-CV-06867 (NRM) (LB), 2024 WL 3422391 (E.D.N.Y. June 24, 2024) ............ 8

*Holmes v. Apple Inc.,*
No. 22-1745, 2023 WL 6619358 (2d Cir. Oct. 11, 2023) ............................................ 18

*Horton v. Dow Jones & Co., Inc.,*
No. 18 CIV. 4027 (LGS), 2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) ..................... 13, 24

*Horton v. Dow Jones & Co., Inc.,*
No. 1:18-cv-04027-LGS (S.D.N.Y.) .............................................................................. 8

*In Touch Concepts, Inc. v. Cellco P'ship,*
788 F.3d 98 (2d Cir. 2015) ................................................................................... 13, 24

*In Touch Concepts, Inc. v. Cellco P'ship,*
949 F. Supp. 2d 447 (S.D.N.Y. 2013) ........................................................................ 24

*Itar–Tass Russian News Agency v. Russian Kurier, Inc.,*
140 F.3d 442 (2d Cir.1998) ....................................................................................... 24

*L.S. v. Webloyalty.com, Inc.,*
954 F.3d 110 (2d Cir. 2020) ...................................................................................... 13

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ................................................................................................20

*Litovich v. Bank of Am. Corp.*,
    106 F.4th 218 (2d Cir. 2024) ...........................................................................*passim*

*McKoy v. Trump Corp.*,
    No. 18 CIV. 9936 (LGS), 2024 WL 233936 (S.D.N.Y. Jan. 11, 2024) .................13

*Metz v. Unizan Bank*,
    649 F.3d 492 (6th Cir. 2011) ...................................................................................8

*Scherer v. Equitable Life Assurance Soc'y of U.S.*,
    347 F.3d 394 (2d Cir. 2003) ....................................................................................9

*In re SSA Bonds Antitrust Litig.*,
    No. 16-CV-3711 (VEC), 2022 WL 4774793 (S.D.N.Y. Oct. 3, 2022) ..................18

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ..................................................................................................8

*Washington Nat'l Ins. Co. v. OBEX Grp. LLC*,
    958 F.3d 126 (2d Cir. 2020) ....................................................................................8

*Watson v. City of Allen, Tx.*,
    821 F.3d 634 (5th Cir. 2016) .................................................................................11

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,
    166 F.3d 59 (2d Cir. 1999) ...............................................................................9, 13

*Wright Transportation, Inc. v. Pilot Corp.*,
    841 F.3d 1266 (11th Cir. 2016) ......................................................................10, 11

*Zupnick v. Jem Mgmt. Assocs., Corp.*,
    205 F.3d 1327 (2d Cir. 2000) ................................................................................19

**Statutes**

28 U.S.C. § 455 ................................................................................................*passim*

28 U.S.C. § 1332 ...................................................................................................7, 8

28 U.S.C. § 1367 .............................................................................................*passim*

**Rules**

Fed. R. Civ. P. 41 ...................................................................................................13

**Other Authorities**

Waiver of Disqualification, 13D Fed. Prac. & Proc. Juris. § 3552 § 3552 (3d ed.) ...............................21

# INTRODUCTION

This class action lawsuit was recently reassigned to this Court. Reassignment was necessitated by the recused judge in this matter's violation of 28 U.S.C. § 455(a)-(c), by considering substantive motions and overseeing discovery disputes while he and his spouse repeatedly traded in Defendant's stock. *See Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 223 (2d Cir. 2024). Although Plaintiffs, generally speaking, benefit from speedy resolution and are reluctant to return this case to the beginning, binding authority requires that the recused judge's orders be vacated or reviewed *de novo* by an unconflicted judge, a development that necessarily turns back the clock on this case considerably.

At the initial telephonic status conference following reassignment of this case, the Court invited briefing on a question of subject matter jurisdiction: should this Court decline to exercise supplemental jurisdiction over the individual claims brought by the class representative plaintiffs? For several independent bases, it should not.

First, because this Court initially had—and continues to have—only original jurisdiction over Plaintiffs' claims, supplemental jurisdiction is not implicated in this case. The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides jurisdiction over state law claims over which the Court does not have original jurisdiction ("other claims"), when they form part of the same case or controversy as a claim that is within the Court's original jurisdiction (the "anchor claim"). Here, there is no "other claim" for which original jurisdiction is lacking. Plaintiffs never alleged that any of their claims are governed by supplemental jurisdiction; rather, this Court has always had original jurisdiction over the claims of Plaintiffs and the absent class members under CAFA. While the recused judge previously denied Plaintiffs' class certification motion, that does not change the fact that this Court has always had original CAFA jurisdiction over Plaintiffs' claims.

Second, even if one were to assume that federal courts could or should analyze a class representative's claims for supplemental jurisdiction after the denial of a class certification motion,

that process is inappropriate here. Any such analysis would be conducted on the premise that the class certification motion was properly ruled on. But that is not so here because the recused judge authored the class certification denial. Once that ruling, and others, are properly vacated, this case stands just as it did before that denial, undoubtedly subject to this Court's subject matter jurisdiction under CAFA. What is more, Plaintiffs have not waived the right to challenge the recused judge's prior rulings. Rather, *Litovich* made clear that the former judge was wrong in his prior rulings not to recuse himself; indeed, in its aftermath, he even sought waiver from the parties, though Plaintiffs declined. This motion is the natural consequence of *Litovich* and the former judge's recusal.

Third, even if this Court were to assume that original CAFA jurisdiction was not retained for the class representatives' claims, and further assume that the recused judge's prior rulings must stand without review, it still should not decline to exercise jurisdiction.

The appropriate next step in this case is vacatur or *de novo* review of the entirety of the recused judge's rulings. Again, as Plaintiffs, it is soft solace that the vacatur or *de novo* review is taking place at all, rather than ruled on by a judge with no appearance of partiality. But failure to retreat now will only result in further delay when, after appeal, the Second Circuit mandates that review on remand.

## BACKGROUND FACTS

Plaintiffs brought this action on behalf of themselves, and the other class members, on December 23, 2019. (ECF No. 1). In that complaint, Plaintiffs sought to certify a nationwide class action. (*Id.* ¶ 84). Peloton first moved for dismissal on March 13, 2020. (ECF No. 29). Briefing on Peloton's first motion to dismiss was completed on April 17, 2020. (ECF No. 41). On November 9, 2020, the recused judge partially ruled in favor of Peloton and dismissed the claims of Plaintiff Alicia Pearlman, a Michigan resident, holding, despite Peloton's Terms of Use designating New York law governing the dispute between the parties, that she and any other consumers who did not make their

Peloton purchases in New York did not have statutory standing under NYGBL Sections 349 and 350. (ECF. No. 65).

On October 15, 2020, just 16 business days *prior* to his issuing this ruling on Peloton's first motion to dismiss (November 9, 2020), and during the period he was considering the then pending motion to dismiss, the recused judge disclosed to the parties (ECF No. 63) that his spouse owned shares in Defendant Peloton:

> I have become aware that my wife holds shares in Defendant Peloton Interactive, Inc. She intends to divest herself of the shares. Under Canon 3C(4) of the Code of Conduct for United States Judges, **recusal is not required** in this situation if divestment is made and it would not be in the public interest for me to recuse myself. The Court will provide notice as soon as the divestment occurs.

(emphasis added). The recused judge gave the parties no further information at that time (or at any point) regarding how many shares he owned, how much his family profited or lost because of the sale of Defendant's securities, or when the purchase was made.

On November 2, 2020 (just four days prior to ruling on Peloton's first motion to dismiss), the recused judge advised the parties that his family had sold their Peloton shares: "The parties are hereby provided notice that it has disposed of the Peloton shares that created the conflict of interest and that it has therefore purged itself of the conflict. **The Court intends to continue to preside over this case**." (ECF No. 64) (emphasis added). Again, at no point did the recused judge disclose how many shares he traded, his profit or loss on the trade, when he learned he had a conflict with the case, nor why he did not know about the stock ownership prior to his consideration of substantive motions on his issuing of the subsequent rulings on those motions.

The only fact the recused judge repeatedly made clear was his ruling that "recusal [was] not required." (ECF No. 63). Four days later, on November 9, 2020, the recused judge ruled on Peloton's motion to dismiss that had been pending since March 13, 2020, granting the motion in part and effectively restricting the class to only New York residents. (ECF No. 65).

Remarkably, in the month preceding the recused judge's filing of his 2020 Financial Disclosure—and, no doubt, during its preparation—he and his spouse made six additional purchases of Peloton stock on April 15, April 19, May 11, May 12, May 13 and May 14, 2021.[1] These trades in Peloton's stock occurred during a flurry of substantive activity in the matter. Plaintiffs filed their first Amended Complaint on January 21, 2021. (ECF No. 81). Peloton filed its motion to dismiss the Amended Complaint on February 4, 2021. (ECF No. 88). Briefing on Peloton's motion to dismiss the Amended Complaint was completed on February 25, 2021. (ECF No. 92). The recused judge granted Peloton's motion to dismiss the Amended Complaint with leave to amend on July 12, 2021. (ECF No. 102). Importantly, in granting Peloton's motion to dismiss, the recused judge ruled that Plaintiff Alicia Pearlman (and essentially any other consumers who did not live in New York) did not have statutory standing under NYGBL Sections 349 and 350. The recused judge dismissed Pearlman's New York claims *with prejudice*. (ECF No. 102).[2]

Still unaware that the recused judge again owned shares of Peloton, Plaintiffs filed their Second Amended Complaint ("SAC") on July 26, 2021. (ECF No. 106). Peloton moved to dismiss the SAC on August 9, 2021, (ECF No. 107), and Plaintiffs filed their opposition to Defendant's motion to dismiss the SAC on August 23, 2021. (ECF No. 109). Just two days later, on August 25, 2021, the recused judge disclosed that he and his spouse had made additional purchases of Peloton stock between April and May 2021. (ECF No. 110):

> I previously provided notice that I had become aware that my spouse held shares in Defendant Peloton Interactive, Inc. Dkt. No. 63. My spouse divested herself of the shares shortly thereafter. Dkt. No. 64. Earlier this month, I became aware that an investment advisor bought a total of 550 shares, split between an account for my spouse and a joint account. Those purchases were made in the period between April

---

[1] May 13, 2022 Financial Disclosure Report for Calendar Year 2021, pg. 11, lines 130-132; pg. 18, lines 246-248 (attached as Exhibit A).

[2] This second decision on the statutory standing issue occurred after limited discovery on statutory standing. This incorrect decision drastically limited the scope of the class from a nationwide group of consumers to effectively only New York residents.

2021 and May 2021. I was not aware of the purchases at the time they were made, I did not make any decisions or issue any orders in this case at any time I was aware of the share ownership, and my spouse and I are in the process of divesting ourselves of the position.

On August 31, 2021, the Court notified the parties that the Court had disposed of the securities that were the subject of the August 25, 2021 Notice. (ECF No. 111). Despite ruling on multiple substantive issues while the recused judge owned Peloton stock and making these trades while he was preparing his Financial Disclosure Report for Calendar Year 2021, the recused judge denied knowledge of his ownership of Peloton stock, and again invoked the § 455(f) exception from disqualification, noting that he would continue to preside over this case.

Just two days later, on September 3, 2021, Plaintiffs moved by letter motion, (ECF No. 113), for an order compelling Peloton to respond to Plaintiffs' third and fourth set of interrogatories. The now-recused judge denied Plaintiffs' letter motion on September 9, 2021, (ECF No. 115), a mere seven days after he claimed he was divesting the portfolio of his renewed Peloton stock ownership. Shortly thereafter, on March 1, 2022, The *Wall Street Journal* published an article discussing the high number of recusal violations apparent among the federal judiciary and discussed as an example the recused judge's failure to recuse himself when he owned stock in a defendant. James V. Grimaldi, *et al.*, Fallout From Judges' Financial Conflicts Spreads to Appeals Courts, Wall St. J. (Mar. 1, 2022). The article indicated that the recused judge directed the district court's clerk to disclose financial interest conflicts in *fourteen* of the recused judge's cases.

But it didn't stop there. Indeed. the now-recused judge continued to make substantive rulings detrimental to Plaintiffs' case. On January 19, 2022, the Court granted another Peloton dismissal motion (disposing of Plaintiff Pearlman's claims under the Michigan Consumer Protection Act) and denied Plaintiffs' first class certification motion. (ECF No. 168). The now-recused judge filed his 2021

Financial Disclosure revealing the details of his 2021 trading on May 13, 2022.[3] Finally, on May 2, 2023, the Court denied Plaintiffs' second class certification motion. (ECF No. 284).

Just a few months ago, on July 2, 2024, the Second Circuit issued an opinion considering the now-recused judge's failure to recuse when he held stock in a defendant appearing before him. *Litovich v. Bank of Am. Corp.*, 106 F.4th 218 (2d Cir. 2024). The Second Circuit applied § 455(a) instead of § 455(b)(4), holding that the district court violated § 455(a) because the recused judge presided over the matter during the time that his spouse held an ownership interest in a party to the litigation. This amounted to a conflict-creating ownership and financial interest that existed until a time after the briefing on the motion to dismiss was fully submitted, and "it is reasonable to question the partiality of a judge presiding over a case in which his spouse holds an ownership interest in a party." *Id.* at 226. Notably, the focus of § 455(a) is on avoiding the appearance of partiality, even absent an explicit showing of it. *Id.* at 227. And it was not sufficient that the now-recused judge's spouse divested the stock ownership at issue (nor that the recused judge likely did not know about the ownership), because the case had progressed beyond initial stages and substantive motions were before the Court. Rather than divestiture, "recusal under § 455(a) was required" and the dismissal order needed to be vacated. *Id.* at 228. Accordingly, after the recent *Litovich* decision, it is now apparent that the recused judge applied the wrong standard in his prior representations and rulings that he could continue to preside over the case, while deciding substantive issues.

In apparent recognition of this error, on July 30, 2024, at the recused judge's request, the court clerk issued a letter to the parties here requesting they formally waive the recused judge's conflict. (ECF No. 332). Plaintiffs declined to waive the conflict, and, on September 5, 2024, the case was reassigned.

---

[3] *See* Exhibit A.

## ARGUMENT

When this case was reassigned to this Court, it arrived in a posture of non-diverse parties litigating claims brought under New York state law, understandably causing the Court's to look at its jurisdiction over the matter. But an understanding of the historical and procedural context of this case makes clear that this Court must continue to preside over this case for three independent reasons. First, the denial of a class certification does not strip a federal court of the original jurisdiction it always had under CAFA. Second, even if a class certification denial could introduce the question of supplemental jurisdiction over a class representative's claims, it does not here because there is no proper class certification denial; the ruling's author has properly recused himself, and his prior rulings must be vacated or revisited *de novo*. And third, the Court should not decline supplemental jurisdiction even if could reach that aspect of the analysis.

## I.    Dismissal is not appropriate because this Court retains original CAFA jurisdiction over Plaintiffs' claims—supplemental jurisdiction is inapplicable.

This Court has original jurisdiction over claims that are brought as a potential class action, provided the class is at least 100 members, there is minimal diversity and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2) & (d)(5)(B). It is that original CAFA jurisdiction that has been the basis for federal jurisdiction over this case for the past several years.

Supplemental jurisdiction gives federal courts jurisdiction to hear "other claims" over which the court would not otherwise have jurisdiction. When supplemental jurisdiction applies, it is because these "other claims" form part of the same case or controversy as distinct claims that *are* within the Court's original jurisdiction, the "anchor claim." *See* 28 U.S.C. § 1367. Supplemental jurisdiction allows district courts to exercise pendent jurisdiction over claims as to which original jurisdiction is lacking. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 167 (1997).

In this case, there are no claims for which the court lacks original jurisdiction. All claims— those brought by the class representatives and those brought in the putative class action by absent

class members—are claims over which this Court had original CAFA jurisdiction. The denial of the class representative's class certification motion does nothing to *transform* jurisdiction over certain claims from original jurisdiction to supplemental jurisdiction, because supplemental jurisdiction only applies to "other claims."

### A. The Court has original subject-matter jurisdiction over *all* claims under 28 U.S.C. § 1332(d).

CAFA provides original jurisdiction over civil actions "filed under Rule 23," where the proposed class includes at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2) & (d)(5)(B). *See also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Under the time-of-filing rule, "the presence of diversity jurisdiction—including the amount in controversy requirement—is measured at the time a complaint is filed." *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 n.4 (2d Cir. 2020).

When jurisdiction depends on the plaintiff asserting a particular type of claim, jurisdiction is typically found unless the claim is "immaterial and made solely for the purpose of obtaining jurisdiction or ... wholly insubstantial and frivolous." *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)); *Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011) ("Of course, if the jurisdictional allegations are frivolous or defective from the outset, then jurisdiction never existed in the first place, regardless of the plaintiff's invocation of a class action under CAFA.").[4]

---

[4] For example, courts have found that when plaintiffs had agreed to individual arbitration and advanced no argument that the agreement was invalid, (like the facts in *Horton v. Dow Jones & Company, Inc.*, No. 1:18-cv-04027-LGS (S.D.N.Y.)), the claim fails to invoke CAFA jurisdiction and is subject to dismissal. *See Friends for Health: Supporting the N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2022 WL 2799396, at *3 (N.D. Ill. July 14, 2022); *Archer v. Carnival Corp. & PLC*, No. 2:20-CV-04203-RGK-SK, 2021 WL 4798695, at *4 (C.D. Cal. May 14, 2021) ("because Plaintiffs signed valid and enforceable class-action waivers, CAFA was not and could never be a proper basis for jurisdiction."). *But see, Hahn v. JetBlue Airways Corp.*, No. 1:21-CV-06867 (NRM) (LB), 2024 WL 3422391, at *1 (E.D.N.Y. June 24, 2024) (Finding CAFA jurisdiction over individual claim after striking class allegations pursuant to class action waiver).

Plaintiffs' Third Amended Complaint, like each of its predecessors, alleged subject matter jurisdiction under § 1332(d)(2) because "[it] is a class action, there is minimal diversity, and the amount in controversy exceeds $5 million, exclusive of interest and costs." (ECF No. 195 ¶ 46). The complaint sought certification under Rule 23 of a nationwide class of those who purchased Peloton hardware or subscription services. (*Id.* ¶ 106). Plaintiffs alleged there to be "not less than tens of thousands" of class members. (*Id.* ¶ 110).[5] Plaintiffs sought the greater of actual damages or statutory damages of $50 or $500 per violation, treble damages, injunctive relief, and attorney's fees and costs. (*Id.* ¶¶ 131, 151). There has been no suggestion that Plaintiffs' class allegations were frivolous, and no challenge from Defendant that this Court lacked subject matter jurisdiction. Plaintiffs' claims as pled satisfy the requirements of § 1332(b), and the Court had original jurisdiction at the time of filing. *See, e.g., Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 284 (S.D.N.Y. 2019).

Once jurisdiction has attached, it cannot be ousted by subsequent events. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). "Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999). This is true, "even if that subsequent change in events renders recovery impossible." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1071 (2d Cir. 1996). "This result … stems rather from the general notion that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action." *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959).

Accordingly, the Court continues to have original jurisdiction over Plaintiffs' claims even after denial of class certification. *F5 Cap. v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) ("Because jurisdictional

---

[5] Evidence submitted in connection with class certification established this allegation. *See* ECF No. 232-27.

facts are assessed at the time of removal, and because at that time the complaint here appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction.").

### B.    This Court never had—and does not presently have—supplemental jurisdiction over Plaintiffs' claims.

Where CAFA provides jurisdiction for all claims at the time they were filed, there are no "other claims" to which supplemental jurisdiction applies under § 1367(a); and § 1367(c) is inapplicable. In cases asserting CAFA jurisdiction, supplemental jurisdiction is only applicable to "state-law claims that were never subject to CAFA jurisdiction." *Wright Transportation, Inc. v. Pilot Corp.*, 841 F.3d 1266, 1273 (11th Cir. 2016).

In *Wright*, the plaintiff brought a putative class action asserting several claims. *Wright*, 841 F.3d at 1268. The court struck plaintiff's class allegations due to a pending class settlement in another action. *Id.* at 1268-69. After the court struck the class allegations, and after the plaintiff learned it was not diverse from the defendant, the plaintiff moved to dismiss its claims without prejudice so it could refile in state court. Defendant opposed, arguing that the district court continued to have original jurisdiction under CAFA because original jurisdiction is analyzed at the time of filing. *Id.* at 1269. The district court ruled that because it dismissed the class allegations, meaning that only the non-diverse parties remained, it had discretion to decline jurisdiction under § 1367, and so declined. *Id.* at 1270.

The Eleventh Circuit reversed the district court's ruling. *Id.* at 1272. Because CAFA jurisdiction vested the federal court with original jurisdiction at the time the case was filed, the subsequent dismissal of the class allegations and later reveal that the plaintiff and defendant were themselves not diverse did nothing to divest the district court of subject matter jurisdiction. *Id.* No one "dispute[d] that all eight claims were properly pleaded as CAFA claims. Thus, the District Court had original jurisdiction over all eight claims, and that jurisdiction continues to survive even after later

events meant there would be no class." *Id.* at 1273 (collecting cases from other Circuit Courts reaching same conclusion, including Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuit).

Moreover, because the district court's jurisdiction was original jurisdiction under CAFA, the appellate court found it was error for the district court even to invoke supplemental jurisdiction. *Id.* at 1272–73. "Supplemental jurisdiction does have a role in CAFA cases, but only in those that also have 'state-law claims that were never subject to CAFA jurisdiction.'" *Id.* at 1273 (*quoting In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015)). *See also, Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020) ("Where a district court has original jurisdiction over a claim under CAFA, there is no supplemental jurisdiction and it is error for a court to decline to exercise its jurisdiction."); *Watson v. City of Allen, Tx.*, 821 F.3d 634, 638 (5th Cir. 2016) ("If CAFA applies, the district court has original jurisdiction over the entire action and there is no 'supplemental' jurisdiction at all."); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 195 (5th Cir. 2011) ("Given that the claims actually arise under federal law ... the district court had original, rather than supplemental, jurisdiction over them. As such, the district court could not decline to exercise that jurisdiction.").

The Second Circuit is in accord. In *F5 Capital v. Pappas*, the plaintiff filed a state court suit asserting four causes of action—three of which were non-class action derivative claims, and one of which was purportedly a direct class claim against individual board members and affiliates of Star Bulk. *F5 Capital*, 856 F.3d at 69. The defendant removed, alleging CAFA jurisdiction over the direct class claim (the anchor claim) and supplemental jurisdiction over the three derivative, non-class action claims (the "other claims"). The district court found that plaintiff's direct class claim was derivative, not direct, and dismissed F5 Capital's entire complaint on the merits. *Id.* at 71.

The Second Circuit first reviewed the district court's characterization of the class claim, finding it was rightfully a non-class derivative claim, not a class claim. *Id.* at 75. Because courts must be vigilant to assess subject matter jurisdiction, the court next considered whether it still had jurisdiction, given

that the direct class claim had now been adjudicated to be a non-class derivative claim. *Id.* at 75–76. The district court found that it retained jurisdiction notwithstanding its ruling that the direct class claim was a derivative non-class claim because the original CAFA jurisdiction was fixed at the time of removal. *Id.* at 76. "Because jurisdictional facts are assessed at the time of removal, and because at that time the complaint here appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction." *Id.* at 76.

The Second Circuit next considered whether the district court properly exercised supplemental jurisdiction "over the claims that F5 pled as derivative, non-class claims" (the "other claims") when it dismissed them with prejudice. *Id.* at 76. The Court examined the history of § 1367 and CAFA and concluded that it was proper for the district court to exercise supplemental jurisdiction over the derivative non-class state law claims and affirmed their dismissal with prejudice. *Id.* at 82. But, importantly, the question of supplemental jurisdiction arose *only* in the context of those "other claims," over which there was *never* original CAFA jurisdiction.

*Pappas* thus holds that when a plaintiff asserts a claim asserting CAFA jurisdiction and the class claim is later rejected, the district court nevertheless retains CAFA jurisdiction. *Id.* at 76. Of course, where a jurisdictional claim is frivolous, there was never original CAFA jurisdiction in the first place and courts may send the case to state court. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d at 940; *see supra, fn. 2*. The *Pappas* court agrees. *Id.* at 76 n.14. But, where a federal court has original CAFA jurisdiction at the time of filing (or removal), a class certification denial does not divest it of that jurisdiction.[6]

---

[6] *Pappas*'s footnote 14 has been read as authorizing the dismissal of claims over which the court has original jurisdiction after denial of class certification. However, that reading is incorrect. *Pappas* did not treat class claims that were subject to CAFA jurisdiction as non-class, non-CAFA supplemental claims after denial of class certification. Instead, it only considered whether the district court properly exercised supplemental jurisdiction

footnote continues on next page …

This case was filed seeking class certification of all claims. Accordingly, the Court has only original jurisdiction over this matter. There are no "other claims" over which it has supplemental jurisdiction, even after the denial of class certification. *C.f. Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 65 (2d Cir. 1999) ("[S]upplemental jurisdiction is beside the point. …When state law claims are aggregated, regardless of the amounts at issue, all of them together are 'original,' and none of the constituent claims are 'supplemental.'"). As a result, the Court's continued exercise of CAFA jurisdiction over this case is not discretionary. *See L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 117 (2d Cir. 2020) (holding it was error to dismiss a state law claim for lack of subject matter jurisdiction, after declining to exercise supplemental jurisdiction, where the complaint adequately pled an alternative basis for original jurisdiction under the Class Action Fairness Act).[7]

---

"over the claims that F5 pled as derivative, non-class claims." *Id.* at 76. Moreover, reading *Pappas* as authorizing the dismissal of claims over which the court has original jurisdiction would conflict with binding president. *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 208 (2d Cir. 2024) ("[S]ubject matter jurisdiction under CAFA is not discretionary."). Accordingly, the "Court c[an]not … eliminate[] the case from its docket, whether by a remand or by a dismissal." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988).

[7] This is not to say that litigants that wish to pursue former class claims in state court cannot do so. Because the time-of-filing rule applies to changes of the 'state of things,' but not to changes of the 'alleged state of things,' " *Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 78 (2d Cir. 2019) (*citing Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473 (2007)), a plaintiff who filed his complaint in federal court could remove the Court's CAFA jurisdiction by amending the complaint to remove its class action allegations. *Gale*, 929 F.3d at 77; *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) ("So if this case had been filed originally in federal court, the district court would have had to dismiss it as soon as Zcom filed the First Amended Complaint, which dropped all class-action allegations and thereby destroyed the only basis for federal jurisdiction."). In a case where the defendants removed the case to federal court, the parties could stipulate to a dismissal without prejudice under Rule 41(a)(1)(A). Accordingly, dismissals made at the request of both parties like those that occurred in *Horton v. Dow Jones & Co., Inc.,* No. 18 CIV. 4027 (LGS), 2019 WL 952314, at *4 (S.D.N.Y. Feb. 27, 2019) and *McKoy v. Trump Corp.*, No. 18 CIV. 9936 (LGS), 2024 WL 233936, at *2 (S.D.N.Y. Jan. 11, 2024), are permitted.

## II.    Dismissal is not appropriate because, even if class certification denial permitted a supplemental jurisdiction analysis, no proper class certification denial occurred here.

### A.    *Litovich* mandates finding that the recused judge's conflict was not cured.

*Litovich* makes it plain that the recused judge erred in applying § 455(f) and determining that his conflict could be purged. In *Litovich*, bond investors appealed from the recused judge's order granting the defendants' motion to dismiss. *Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 223 (2d Cir. 2024). Four months after the recused judge granted the motion to dismiss, the Clerk of the Court informed the parties that, while the recused judge was presiding over the case, his spouse owned Bank of America stock which is imputed to the recused judge. *Id.* Although the clerk further stated that the recused judge's stock ownership had "neither affected nor impacted his decisions in this case," the clerk said that such ownership "would have required recusal under the Code of Conduct for United States Judges . . .." *Id.* at 223-224.[8] The case was then reassigned to a different judge. *Id.* at 224.

On appeal, the Second Circuit analyzed two questions: (1) whether the recused judge's failure to recuse himself *sua sponte* prior to issuing a decision on the merits of this case—even though a direct conflict did not exist at the time the decision was published—disqualified him under 28 U.S.C. § 455(a); and (2) if so, whether that disqualification warrants vacatur of the dismissal decision. *Id.* The Second Circuit answered "yes" to both questions and vacated the judgment against Plaintiffs. *Id.* The Second Circuit held that the district court violated § 455(a), because the recused judge presided over the matter during the time that his spouse held an ownership interest in a party to the litigation, which amounted to a conflict-creating ownership and financial interest that existed until sometime after the briefing on the motion to dismiss was fully submitted. *Id.* at 226. In other words, "it is reasonable to question the partiality of a judge presiding over a case in which his spouse holds an ownership interest

---

[8] That was so despite the fact that the recused judge's spouse fully divested the Bank of America stock before the dismissal order was issued.

in a party." *Id.* Notably, the focus of § 455(a) is on avoiding the *appearance* of partiality, even absent an explicit showing of it. *Id.* at 227. And it was not sufficient that the recused judge's spouse divested the stock ownership at issue (nor that the recused judge likely did not know about the ownership), because the case had progressed beyond initial stages and substantive motions were before the Court. Rather than divestiture, "recusal under § 455(a) was required" and the dismissal order needed to be vacated. *Id.* at 228.

Here, the recused judge failed to recuse himself twice: (1) in the first instance, like *Litovich*, when a direct conflict *might not* have existed (when he sold the shares a mere four trading days prior to issuing his decision on Defendant's March 13, 2020, motion to dismiss (ECF No. 65)); and (2) in the second instance when a direct conflict existed (when he still owned shares of Peloton from the second set of his purchases of Peloton stock) when he granted Peloton's February 4, 2021, motion to dismiss (ECF No. 102).

### B.    The recused judge should have disqualified himself from this case, pursuant to 28 U.S.C. §§ 455(a), (b), and (c).

The circumstances here are similar to—but worse than—those in *Litovich*. As detailed above, the recused judge's spouse owned stock in Defendant Peloton through November 2020 while a motion to dismiss was pending before the Court. Divestiture of that stock occurred only one week before the recused judge issued his first order partially dismissing this case, meaning that the Court must have been aware of the financial conflict while he was considering and drafting his motion to dismiss opinion. Subsequently, more Peloton shares were purchased in both the recused judge's and his spouse's names in April and May 2021, and the recused judge issued another motion to dismiss opinion—including dismissing certain claims with prejudice—while owning those shares. The recused judge failed to inform the Parties of those subsequent stock purchases until late August 2021 (more than one month *after* he issued his July 12, 2021, motion to dismiss opinion). (ECF No. 102).

As in *Litovich*, "it is reasonable to question the partiality of a judge presiding over a case in which his spouse holds an ownership interest in a party." So, the recused judge should have recused himself merely due to his spouse's Peloton stock ownership during the pendency of the first motion to dismiss, regardless of the divestiture. But, even more, that divestiture happened merely one week before the recused judge issued his motion to dismiss order on November 9, 2020 (ECF No. 65), closer in time than *Litovich* where the divestiture occurred at least two months before the recused judge dismissed that case. Just like in *Litovich*, because the recused judge presided over this case after the briefing on the motion to dismiss was fully submitted, the recused judge's participation violated § 455(a). Moreover, recusal was mandatory, *even if the recused judge did not know about the stock ownership at the time the purchases were made. Litovich*, 106 F.4th at 224-25, 228 ("A judge need not have actual knowledge of the disqualifying circumstance for § 455(a) to apply" because that subsection "covers even the appearance of partiality"); *Doe v. Fed. Republic of Germany*, No. 23 CIV. 6395 (VSB) (GS), 2024 WL 3518524, at *3 (S.D.N.Y. July 24, 2024) (same, citing *Litovich*).

The recused judge also violated § 455(b), which provides, in relevant part, that:

He shall also disqualify himself in the following circumstances: . . .

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding. . ..

That violation occurred because only one week separated his spouse's divestiture and the issuance of the motion to dismiss order on November 9, 2020 (ECF No. 65), demonstrating that the Court must have been considering his dismissal order while his spouse still possessed Peloton shares and he was aware of that possession. At the very least, such facts further support a violation of § 455(a). *See Litovich*, 106 F.4th at 226 ("'Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a).'") (quoting *In re Certain Underwriter*, 294 F.3d 297, 306 (2d Cir. 2002)).

16

Additionally, the recused judge violated § 455(c), which provides in relevant part:

> A judge should inform himself about his personal and fiduciary financial interests and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

That violation occurred because after discovery of his spouse's Peloton shares and divestiture, the recused judge should have taken steps to ensure that no additional purchases of Peloton stock occurred. But six individual purchases took place in the months that followed – in both his and his spouse's names, as detailed above. And while the recused judge and his spouse possessed these shares of Peloton stock, the Court granted Peloton's partial motion to dismiss. (ECF No. 102). Failure to prevent a recurrence of the earlier conflict means that the recused judge failed to make reasonable efforts to inform himself about (and prevent) his and his spouse's financial interests in Defendant Peloton. Such recidivism further supports vacatur of the recused judge's rulings.

### C.    At a minimum, *de novo* review of the recused judge's rulings is needed.

"Although a judge must recuse when there is a disqualifying conflict, the proper remedy varies when such a conflict is discovered after the judge's ruling." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 172 (2d Cir. 2022). In *ExxonMobil*, a district court judge held stock in Exxon's parent company when he issued decisions in the case, and the Second Circuit said, "[h]is failure to recuse himself was indisputably a serious error" because violations of § 455(a) are harmful due to the integrity of the judicial process being paramount and the potential damage from impairment of the public confidence in the judicial process. *Id.* at 173. The Second Circuit noted that once such an error occurs, "the analysis that we carry out is an exercise in mitigation aimed at restoring the public's confidence in the courts and protecting litigants' access to fair, efficient, and unbiased adjudication." There, the clerk's office reassigned the case to an unconflicted judge who reviewed the merits of the case *de novo*. The Second Circuit held that vacatur of the conflicted judge's decisions was unnecessary due to the

unconflicted judge's *de novo* review. *Id.* at 173-74. Further, the Second Circuit, itself, reviewed the parties' arguments, again *de novo*. *Id.* at 174.

Additional authority supports the need for, at a minimum, *de novo* review of a conflicted judge's decisions, without deference to the recused judge's assessments. *See In re SSA Bonds Antitrust Litig.*, No. 16-CV-3711 (VEC), 2022 WL 4774793, at *2 (S.D.N.Y. Oct. 3, 2022) (denying motion to vacate dismissal order from conflicted judge because, in pertinent part, the Second Circuit had already upheld the dismissal on a *de novo* review before the conflict was revealed; "in this case, five Article III judges have considered Plaintiffs' claims, and all five have concluded that the complaint should have been dismissed."); *Holmes v. Apple Inc.*, No. 22-1745, 2023 WL 6619358, at *2 (2d Cir. Oct. 11, 2023) (denying vacatur because "this Court has already affirmed the judgment on *de novo* review before the conflict came to light"); *Brock v. Zuckerberg*, No. 21-1796, 2022 WL 1231044, at *3–4 (2d Cir. Apr. 27, 2022) (after affirming Judge Liman's decision on *de novo* review, denying motion to vacate because the circuit court "review[ed] the question . . . anew, without any deference to [the conflicted judge's] assessment").

In *Litovich*, the Second Circuit analyzed whether Judge Liman's disqualification under 28 U.S.C. § 455(a) warranted vacatur of his dismissal decision. The Second Circuit answered "yes" and vacated the judgment against Plaintiffs. *Id.* 228. It was not sufficient that the recused judge's spouse divested the stock ownership at issue (nor that the recused judge likely did not know about the ownership), because the case had progressed beyond initial stages and the court had decided a substantive motion to dismiss and entered judgment against plaintiffs. Rather than divestiture, "recusal under § 455(a) was required" and the dismissal order needed to be vacated. *Id.*; *see also Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 131 (2d Cir. 2003) ("While Section 455(f) allows a judge to divest a newly-discovered disqualifying interest and continue to preside over a case, that divestiture cannot cure circumstances in which recusal was required years before and important decisions have been rendered

in the interim.").[9] Vacatur was needed in *Litovich* because (1) merely the appearance of impartiality creates a plausible risk of injustice to Plaintiffs; (2) the type of conflict of interest presented—the recused judge and his spouse owning a defendant's stock—risks injustice in other cases and enforcing § 455(a) helps prevent future injustice; and (3) there is a legitimate risk that these kinds of violations will undermine the public's confidence in the judicial process. *Id.* at 227-28.

*Litovich* demonstrates that the recused judge's substantive decisions here cannot simply stand without subsequent review conducted with no deference to his reasoning. Because this case is still pending—and is now before an unconflicted judge—at a minimum, *de novo* review of the recused judge's decisions is needed. And, if this Court disagrees with the recused judge's reasoning, such decisions should be vacated.

Besides the foregoing binding authority, the Court has the inherent power to reconsider and modify interlocutory rulings. An interlocutory order may be reconsidered when there is an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice. *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 CIV. 9050 (LMM), 2010 WL 2077214, at *3 (S.D.N.Y. May 14, 2010); *Zupnick v. Jem Mgmt. Assocs., Corp.*, 205 F.3d 1327 (2d Cir. 2000) ("all interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain, *see* Fed. R. Civ. P. 54(b)"). Due to the §§ 455(a), (b), and (c) violations here, the recused judge's substantive motion to dismiss and class certification decisions detailed above should be reviewed *de novo* to correct clear error and prevent manifest injustice. *De novo* review of the recused judge's substantive decisions and orders in this case is required to protect the public's confidence in the judicial process. Now that the case has been

---

[9] In *Chase Manhattan Bank*, 343 F.3d at 132–33, the Second Circuit concluded that it was not unfair to require a new trial and vacate *all decisions and orders* made in the case after the date when the conflicted Judge had been assigned to the case.

reassigned to this Court, the "new judge [can] take a fresh look at the issues." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 868 (1988).

    **D.**    **Plaintiffs did not waive the recused judge's conflict.**

Peloton has suggested that Plaintiffs waived any challenge to the recused judge's conflict. Not so. As an initial matter, on July 30, 2024, in the aftermath of the *Litovich* decision, the Clerk's Office issued a letter to the Parties discussing the prior Peloton stock ownership by the recused judge and his wife, and the requirement that judges must disqualify themselves if their impartiality might reasonably be questioned. The letter provided the Parties with an opportunity to waive the recused judge's disqualification by August 19, 2024. Plaintiffs did not waive, and the judge recused himself shortly thereafter. There is nothing untimely about this issue coming up at this time, shortly after the Clerk asked the Parties for their official position on the now-recused judge continuing to preside over this matter.

More broadly, the timing of the *Litovich* decision itself clarifies that Plaintiffs have not waived their right to challenge the recused judge's rulings in this case. Each time the recused judge disclosed additional, conflicted, stock trades by him and his wife in Defendant's stock, he issued an order stating that he would continue to preside over this case. Plaintiffs had no opportunity even to brief whether recusal was appropriate. And, it was not until long after those prior rulings that the Second Circuit issued its July 2, 2024 *Litovich* order. It was the *Litovich* ruling that clarified that circumstances like those here *require* recusal, in contradiction to the recused judge's prior finding that recusal was not necessary. The Clerk's letter seeking waiver in this case came just a few weeks later. Plaintiffs cannot have waived the conflict in such a short period of time. Plaintiffs did not waive any §§ 455(a), (b), and (c) violations here.

Moreover, any purported waiver is contradicted by the meaning and intent behind § 455. Wright & Miller explain how § 455 was drafted to discourage waiver:

> In drafting the current operative language of § 455, Congress was for the most part persuaded by policy arguments *against allowing parties to waive disqualification*. As stated by one who had a role in drafting the statute, waiver "has a way of becoming a velvet blackjack" and prohibiting waiver in most instances would enhance confidence in the federal judiciary. Accordingly, § 455(e) provides for limited waiver. Specifically, if the sole basis for recusal is § 455(a)—which concerns the appearance of bias, prejudice, or partiality—waiver may be accepted, but only if it is preceded by the required disclosure on the record. *On the other hand, § 455(e) makes it clear that if the ground for disqualification is one of the specific bases set forth in § 455(b), the court cannot accept a waiver.*

Wright & Miller, § 3552 Waiver of Disqualification, 13D Fed. Prac. & Proc. Juris. § 3552 (3d ed.) (also discussing that the requirement of the Code of Judicial Conduct for United States Judges, which states that waiver requires a written agreement signed by all parties and lawyers) (emphasis added).[10] The Second Circuit also recognizes that § 455(b) conflicts are "non-waivable by the parties' express consent, much less by their silence" due to resulting damage to public confidence in the judiciary from constant recusal motions and that lawyers for the most part expect judges to disqualify themselves without a formal motion. *Chase Manhattan Bank*, 343 F.3d at 127, 130–31; *see also* 28 U.S.C.A. § 455(e) (only allowing waiver of grounds for disqualification under § 455(a)—if the parties are fully informed (which is not the case here)—but not under § 455(b)).

Here, the recused judge, by his conduct and actions, violated §§ 455(a), (b), and (c). Because there are multiple bases for recusal, not solely a § 455(a) violation, any purported waiver of disqualification does not apply. Even if a possible waiver of a § 455(a) violation (Plaintiffs oppose any such finding) is analyzed, such a waiver should have been consummated in a written agreement, which does not exist here. And, Plaintiffs dispute that they were fully informed about the circumstances that

---

[10] Canon 3D of the Code reads: "instead of withdrawing from the proceeding, a judge disqualified by Canon 3C(1) may, except in the circumstances specifically set out in subsections (a) through (e), disclose on the record the basis of his disqualification. The judge may participate in the proceeding if, after that disclosure, the parties and their lawyers have an opportunity to confer outside the presence of the judge, **all agree in writing or on the record** that the judge should not be disqualified, and the judge is then willing to participate. The agreement should be incorporated in the record of the proceeding." (emphasis added). No such agreement in writing or on the record exists here.

led to two separate instances in which the recused judge or his wife possessed Peloton stock in the midst of decisions on substantive motions. For example, the recused judge did not disclose material information such as the extent of the stock holdings at issue, why *twice* he did not sufficiently monitor such purchases of Defendant Peloton's stock, why he was not aware of these purchases earlier, why he intended to continue to preside over this case, rather than recuse himself *sua sponte*, even after he became aware of the stock holdings.

Moreover, Plaintiffs were not required to seek recusal earlier in the case, because the recused judge ruled on his conflict without requesting briefing from the parties, making it clear to the Parties that he would not recuse himself. For example, as the recused judge stated on November 2, 2020: "The parties are hereby provided notice that it has disposed of the Peloton shares that created the conflict of interest and that it has therefore purged itself of the conflict. *The Court intends to continue to preside over this case.*" (ECF 64) (emphasis added). Requesting that the now recused judge recuse himself *at that time*—before the Second Circuit's guidance in *Litovich* and the Clerk's July 30, 2024 letter— would have amounted to asking that the recused judge to reconsider his decision. Plaintiffs are never obligated to seek reconsideration. Therefore, there are no grounds for finding Plaintiffs waived their right to a judge free from an appearance of partiality.

## III.    Dismissal is not appropriate because, even accepting the recused judge's class certification denial, section 1367(c) does not support dismissal of Plaintiffs' claims.

The overwhelming weight of the applicable case law demonstrates that original CAFA jurisdiction continues to apply to a putative class action even where the class certification is denied, and, in any event, there is no proper class certification denial in this case. But, if the Court were to set that aside and evaluate the supplemental jurisdiction factors in this case, application of § 1367(c)'s discretionary factors to this case does not support dismissal at this time.

Subsection (a) of the supplemental jurisdiction statute, provides jurisdiction over state law claims over which the Court would not have original jurisdiction ("other claims,") when they form

part of the same case or controversy as a claim that is within the Court's original jurisdiction, (the "anchor claim.") 28 U.S.C. § 1367(a). Subsection (c) provides that district courts can decline to exercise jurisdiction over subsection a "other claims" when the "other claim" raises a novel or complex issue of state law, the other claim "substantially predominates" over the anchor claim, all anchor claims have been dismissed or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). If one of the § 1367(c) factors apply, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction.

"[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (*quoting Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)). The declining of supplemental jurisdiction must promote those values as "the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does not mean that dismissal is mandated." *Catzin* (*quoting Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 439 (2d Cir. 2011)). Section (c)(1) does not support dismissal. This case does not present novel or complex issues of state law. The application of GBL § 349 and 350 is well known. Instead, this case simply presents advanced application of Rule 23. Section (c)(2) does not support dismissal. Applying this section through the lens of Plaintiffs' class claims as the anchor claim and Plaintiffs' individual claims as the "other claims," the far more substantial claims are the class claims for which there is undisputedly original jurisdiction.

The district courts in this Circuit that have applied § 1367 to CAFA actions after denial of class certification apply § 1367(c)(3), the dismissal of anchor claims, to determine whether to decline jurisdiction. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Horton v. Dow Jones & Co., Inc.*, No. 18 CIV. 4027 (LGS), 2019 WL 952314, at *4 (S.D.N.Y. Feb. 27, 2019) (*quoting Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)). However, that the other claims have made substantial progress in federal court mitigates against dismissal. *See Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105–06 (2d Cir.1998) (holding that the district court did not abuse its discretion in maintaining jurisdiction after discovery and a settlement conference had taken place).

Section (c)(3) cannot be applied here. The Court cannot rely on the dismissal of the anchor claims in this case because the recused judge in this matter was in violation of 28 U.S.C. § 455 by considering two separate motions to dismiss and overseeing the scope of discovery in this case while he and his spouse were trading in Defendant's stock. *See Litovich*, 106 F.4th at 223. Accordingly, the orders issued by the recused judge must be vacated or reviewed *de novo* by this Court. *See ExxonMobil Oil Corp.*, 44 F.4th at 173 ("we conclude that vacatur was not required in light of Judge Vyskocil's de novo review.").

The *In Touch* court found that "[t]he CAFA claims, while no longer asserting class allegations, technically remain pending as individual claims. Thus, the Court has not 'dismissed all claims over which it has original jurisdiction,'" and thus considered "whether there exist 'exceptional circumstances' under § 1367(c)(4)." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 463 (S.D.N.Y. 2013). Exceptional circumstances must be "'quite unusual'" and federal courts must ensure that the reasons identified as "compelling" so as to not swallow the rule. *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.1998) (*quoting Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1558 (9th Cir.1994)). "[A]t the very least, that phrase extends to highly unusual situations that threaten to have a substantial adverse impact on the core Gibbs values of "'economy, convenience, fairness, and comity'." *Arroyo v. Rosas*, 19 F.4th 1202, 1211 (9th Cir. 2021) (*quoting City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997)).

24

Application of Section(c)(4) entails a two-part inquiry. First, the district court must "articulate why the circumstances of the case are exceptional" within the meaning of Section (c)(4*). Executive Software*, 24 F.3d at 1558; Second, in determining whether there are "compelling reasons for declining jurisdiction" in a given case, the court should consider what "'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine'" articulated in *Gibbs. See International Coll. of Surgeons*, 522 U.S. at 172–73. This case does not present quite unusual or compelling reasons to dismiss. Neither economy, convenience, fairness, nor comity is served by dismissal, especially in the context of a conflicted judge's decisions on substantive issues. Dismissal would require a state court judge to review the recused judge's decisions under the Federal Rules - a more difficult task for a state judge and a task best left to this Court. Dismissal would require the parties to scrap the briefs already written applying federal standards and begin anew applying New York state procedure. Dismissal under § 1367 is inappropriate. Instead, retaining this matter would allow the parties to swiftly marshal the relevant arguments. The Court should conduct a *de novo* review, vacate the recused judge's orders, and allow the parties to put the pleadings at issue.

## CONCLUSION

For all of the foregoing reasons, this Court continues to have jurisdiction over this matter. Further, this Court should vacate or review *de novo* the rulings made by the recused judge, including rulings on the class certification denial, various motions to dismiss, and the various discovery rulings that dictates the scope of discovery allowed in this case.

Dated: October 9, 2024

Respectfully submitted,

/s/ Adam J. Levitt
Adam J. Levitt (*pro hace vice*)
alevitt@dicellolevitt.com
Adam Prom (*pro hac vice*)
aprom@dicellolevitt.com
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Greg G. Gutzler
ggutzler@dicellolevitt.com
Chuck Dender
cdender@dicellolevitt.com
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000

Benjamin J. Whiting
ben.whiting@kellerpostman.com
Alex J. Dravillas (*pro hac vice*)
ajd@kellerpostman.com
KELLER POSTMAN LLC
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5222

Aaron M. Zigler
aaron@ziglerlawgroup.com
Mary Jane Fait
maryjane@ziglerlawgroup.com
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
Telephone: (312) 673-8427

*Attorneys for Plaintiffs*

26