**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ERIC PASSMAN and ISHMAEL ALVARADO,
*individually and on behalf of all others similarly
situated*,

                         *Plaintiffs*,

        v.

PELOTON INTERACTIVE, INC.,


                     *Defendant*.

---

Civil Action No. 1:19-cv-11711-LGS


**PELOTON INTERACTIVE, INC.'S OPPOSITION**
**TO PLAINTIFFS' MOTION TO VACATE AND RETAIN JURISDICTION**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 3

    A.    In March 2019, Peloton Removed Classes from Its On-Demand Library .............. 3

    B.    In December 2019, Plaintiffs Fishon and Pearlman Sued on Behalf of a Nationwide Class of Peloton Users Challenging the Class Removal. .................... 4

    C.    In February 2022, Plaintiffs Passman and Alvarado Joined the Case Pending Before Judge Liman to Assert Claims on Behalf of a New York Class. ......................................................................................................................... 5

    D.    In September 2024, the Case Is Reassigned to This Court. .................................... 7

ARGUMENT .................................................................................................................... 8

I.    The Filing of the Third Amended Complaint Divested the Court of Jurisdiction. ............. 8

II.    Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction. ............ 11

    A.    The Court Need Not Revisit the Class Certification Denial. ............................... 12

        1.    Plaintiffs Waived Any Violation of Section 455(a). ................................. 12

        2.    Recusal Was Not Required under Section 455(b) or (c). .......................... 15

    B.    The Court Should Decline Jurisdiction Over the Remaining State Law Claims. ....................................................................................................................... 18

III.    If the Court Retains Jurisdiction, It Should First Rule on Peloton's Motion for Summary Judgment. ....................................................................................................... 23

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Apple v. Jewish Hosp. & Med. Ctr.*,
   829 F.2d 326 (2d Cir.1987)..................................................................................12, 13, 14

*Brookman & Brookman P.C. v. MCI Telecomms. Corp.*,
   1991 WL 107421 (S.D.N.Y. 1991)...................................................................................25

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010).............................................................................................20

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988).........................................................................................................20

*In re Certain Underwriter*,
   294 F.3d 297 (2d Cir. 2002).......................................................................................16, 17

*Cunningham Charter Corp. v. Learjet, Inc.*,
   592 F.3d 805 (7th Cir. 2010) .............................................................................................9

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
   44 F.4th 163 (2d Cir. 2022) ......................................................................................23, 24

*F5 Capital v. Pappas*,
   856 F.3d 61 (2d Cir. 2017)...............................................................................18, 19, 20, 21

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).................................................................10

*Gale v. Chi. Title Ins. Co.*,
   2017 WL 4366959 (D. Conn. Sept. 30, 2017).................................................................20

*Gale v. Chicago Title Ins. Co.*,
   929 F.3d 74 (2d Cir. 2019).........................................................................................20, 22

*Health Servs. Acquisition Corp. v. Liljeberg*,
   796 F.2d 796 (5th Cir. 1986) ...........................................................................................23

*Horton v. Dow Jones & Co.*,
   2019 WL 952314 (S.D.N.Y. Feb. 27, 2019)..............................................................19, 21

*Horton v. Dow Jones & Co.*,
   804 F. App'x 81 (2d Cir. 2020) ...............................................................................19, 22, 23

*In Touch Concepts, Inc. v. Cellco P'ship*,
   788 F.3d 98 (2d Cir. 2015)...........................................................................................8, 21, 22

*In re Int'l Bus. Machs. Corp.*,
   45 F.3d 641 (2d Cir. 1995)............................................................................................13, 14

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991)..........................................................................................16, 17

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006)..................................................................................................19

*In re Literary Works in Elec. Databases Copyright Litig.*,
   509 F.3d 136 (2d Cir. 2007)..................................................................................................16

*Litovich v. Bank of America Corp.*,
   106 F.4th 218 (2d Cir. 2024) ..................................................................................7, 17, 24

*LoCascio v. United States*,
   473 F.3d 493 (2d Cir. 2007)..................................................................................................14

*Metz v. Unizan Bank*,
   649 F.3d 492 (6th Cir. 2011) ......................................................................................9, 10, 11

*Oneida Indian Nation of N.Y. v. Madison County*,
   665 F.3d 408 (2d Cir. 2011)..................................................................................................20

*Oskar v. IDS Prop. Cas. Ins. Co.*,
   2011 WL 1103905 (E.D.N.Y. 2011)......................................................................................20

*Petitt v. Celebrity Cruises, Inc.*,
   153 F. Supp. 2d 240 (S.D.N.Y. 2001).....................................................................................25

*Plotnick v. Comput. Scis. Corp.*,
   875 F.3d 160 (4th Cir. 2017) ..................................................................................................25

*Polizzi v. United States*,
   926 F.2d 1311 (2d Cir. 1991)..................................................................................................14

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007)..................................................................................................................22

*St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*,
   409 F.3d 73 (2d Cir. 2005)......................................................................................................11

*State Farm Fire & Casualty Co. v. Tashire*,
   386 U.S. 523 (1967)....................................................................................................................8

*Swan v. Stoneman*,
   635 F.2d 97 (2d Cir.1980).......................................................................................................25

*Szymczak v. Nissan N. Am., Inc.*,
    2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ....................................................................10

*Union Carbide Corp. v. U.S. Cutting Serv., Inc.*,
    782 F.2d 710 (7th Cir. 1986) ..........................................................................................17

*United States v. Bayless*,
    201 F.3d 116 (2d Cir. 2000)......................................................................................12, 13

*United States v. Yonkers Bd. Of Educ.*,
    946 F.2d 180 (2d Cir. 1991)............................................................................................14

*United States v. Yu-Leung*,
    51 F.3d 1116 (2d Cir. 1995)......................................................................................14, 15

*Weber v. Quest Diagnostics of Pa., Inc.*,
    2020 WL 6372382 (W.D.N.Y. Oct. 29, 2020) ..........................................................20, 22

*Wright Transp., Inc. v. Pilot Corp.*,
    841 F.3d 1266 (11th Cir. 2016) .......................................................................9, 10, 11, 22

**Statutes**

28 U.S.C. § 455(a) ................................................................................................... *passim*

28 U.S.C. § 455(b) ................................................................................................... *passim*

28 U.S.C. § 455(c) ...............................................................................................12, 15, 17, 18

28 U.S.C. § 455(e) ..........................................................................................................13

28 U.S.C. § 455(f) .............................................................................................16, 17, 18

28 U.S.C. § 1332(d) ..............................................................................................2, 7, 8, 22

28 U.S.C. § 1367(c) ........................................................................................................20, 21

**Other Authorities**

Charles Gardner Geyh and Krus Markarian, *Judicial Disqualification: An
    Analysis of Federal Law* (3rd ed.)..............................................................................18

## INTRODUCTION

Eric Passman and Ishmael Alvarado—both New York residents—became plaintiffs in this case in February 2022, more than two years after it was filed and after Judge Liman issued several significant rulings. If Passman and Alvarado (hereinafter, "Current Plaintiffs") were concerned about whether Judge Liman could preside over the case fairly and impartially, they could have brought their claims before a different judge. Since they intended to seek certification only of a New York class on New York law claims against a New York defendant, they could have—and, indeed, should have—filed suit in state court. If they wanted to certify a nationwide class, they could have filed a new lawsuit and been randomly assigned to any judge of this Court. And even if their case ended up before Judge Liman, they could have immediately sought to disqualify him based on his and his wife's stock ownership, a potential conflict that Judge Liman had resolved months earlier by divesting any financial interest in Defendant Peloton Interactive, Inc.

Instead, Current Plaintiffs chose to join this suit as putative class representatives and litigate their claims before Judge Liman. Current Plaintiffs did so for strategic reasons—*e.g.*, to avail themselves of Judge Liman's favorable rulings and a favorable procedural posture. Judge Liman had already denied Peloton's motion to dismiss on the same claims asserted under New York law by another New York resident, Eric Fishon; the parties and Court had already spent two years on discovery and briefing on class certification; and Judge Liman had denied class certification of a New York-only class only because Fishon was not an adequate class representative. As a result, by replacing Fishon and Alicia Pearlman—a Michigan resident who unsuccessfully pursued claims under New York and Michigan law—Current Plaintiffs certainly expected that their claims would survive a motion to dismiss and that they could quickly move to certify a New York-only class by leveraging all of the work that Fishon and Pearlman (hereinafter, "Former Plaintiffs") had done.

That is precisely how the case proceeded.  Judge Liman denied Peloton's motion to dismiss Current Plaintiffs' claims in August 2022, and just two months later, Current Plaintiffs moved to certify a New York-only class.  After Judge Liman denied class certification, Current Plaintiffs petitioned the Second Circuit for an interlocutory appeal on that ruling.  After their request was denied, Current Plaintiffs participated in briefing and oral argument on Peloton's motions for summary judgment and to exclude certain testimony of Current Plaintiffs' experts.  In so doing, Current Plaintiffs never suggested that Judge Liman should recuse himself from the case.  For good reason:  Former Plaintiffs had already waived any objection to Judge Liman's involvement in the case by not moving for disqualification after he disclosed his potential conflict of interest.

Current Plaintiffs now seek an opportunistic and eleventh-hour "re-do," and ask this Court to start this case over, undoing nearly five years of litigation, including nearly three years of litigation in which they never objected to Judge Liman presiding over the case.  The Court should deny that request and instead dismiss the case for lack of subject-matter jurisdiction.  When plaintiffs' counsel filed the Third Amended Complaint—replacing Former Plaintiffs with Current Plaintiffs—they divested the Court of jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the Third Amended Complaint sought certification of a New York class under New York law by New York plaintiffs against a New York defendant.  But even if the allegations in the Third Amended Complaint were sufficient to create CAFA jurisdiction, Judge Liman's denial of class certification reduced this case to individual claims by two New York residents seeking roughly $1,000 in statutory penalties under New York law from a New York defendant.  The Court can—and should—decline to exercise supplemental jurisdiction over this purely local dispute.

## BACKGROUND

### A.    In March 2019, Peloton Removed Classes from Its On-Demand Library.

Peloton is a technology-enabled fitness company that offers connected fitness equipment and classes through streaming and on-demand media available on a subscription basis.  ECF 300 ¶¶ 2, 4.  Peloton's website highlights the many benefits of its equipment and membership.  For example, Members receive "access to Peloton's complete live and on-demand library of classes" at the relevant time, which allows them to "[t]rain at home, at the gym or on the go."  *Id.* ¶ 18.  As relevant here, between May 2016 and April 2020, four of the 269 pages on the Peloton website described Peloton's library of online classes as "growing" or "ever-growing."  *Id.* ¶ 10.

On March 25, 2019, Peloton's then-CEO sent an email to every Member of the Peloton community informing them that Peloton was removing certain classes from its library.  *Id.* ¶¶ 44–47.  The email told Members that Peloton was engaged in discussions with music publishers, and that, while Peloton would continue to negotiate licensing agreements to provide a "broad catalog of music" for its classes, it was removing some classes from its library "out of an abundance of caution."  *See id.*  Peloton's decision to remove classes still left more than 7,000 classes available to users, and Peloton continued to add classes thereafter.  *Id.* ¶ 47.

The removal of classes had little impact on Peloton's Members. Given the number of classes remaining, many Members said that the removal of these classes did not affect them, and only a "single digit number of subscription cancellations" were attributed to the removal.  *Id.* ¶¶ 50, 53.  Peloton continued to add monthly subscribers at "approximately the same rate before and after the March 2019 class removal." *Id.* ¶ 55.  By the end of 2019, "sentiments for Peloton classes were at an all-time high."  *Id.* ¶ 52.

**B.    In December 2019, Plaintiffs Fishon and Pearlman Sued on Behalf of a Nationwide Class of Peloton Users Challenging the Class Removal.**

In December 2019, Eric Fishon and Alicia Pearlman ("Former Plaintiffs") filed this putative class action. ECF 1.[1] The suit alleged that Peloton violated General Business Law ("NYGBL") §§ 349 and 350 because, by removing classes from its on-demand library, Peloton had "misrepresent[ed]" and made "material omissions" about the "'ever-growing' size of its on-demand library." *Id.* ¶ 1. In January 2020, the case was assigned to Judge Liman. ECF 16.

Peloton filed its first motion to dismiss two months later. ECF 29–30. Several weeks before ruling on this motion, Judge Liman discovered that his wife owned stock in Peloton. ECF 63. He notified the parties about the discovery on October 15, 2020, and informed the parties that his wife would promptly divest her interest, which she did. ECF 63, 64. He also shared his belief that this divestment would allow him to continue presiding over the case. *Id.* at 64. Despite receiving this notice, Former Plaintiffs did not move for Judge Liman to recuse himself or otherwise raise any objection to Judge Liman continuing to preside over the case.

In November 2020, the Court denied Peloton's motion to dismiss as to Fishon and granted the motion with leave to amend as to Pearlman. ECF 65. The Court held that Fishon, a New York resident, had stated claims sufficient to survive the motion even though he did not allege that he had even seen the "ever-growing" statement. *Id.* at 16. The Court held that Pearlman, a Michigan resident, had not stated a claim under New York law because she did not allege that any part of her transactions with Peloton took place in New York. *Id.* at 29.

Following this ruling, Former Plaintiffs did not seek to disqualify Judge Liman. Instead, discovery continued while Former Plaintiffs filed a First Amended Complaint in which Pearlman

---

[1] Another individual plaintiff named in the original complaint voluntarily dismissed his claims early in the case. ECF 61.

attempted establish her standing to bring claims under New York law. ECF 78–81. Peloton moved to dismiss Pearlman's claims, a motion the district court granted. ECF 88, 102. Two weeks later, Former Plaintiffs filed a Second Amended Complaint, now asserting claims under New York law for a purported class represented by Fishon, and claims under Michigan law for a purported class represented by Pearlman. ECF 106 ¶¶ 102, 111–93.

While Peloton's motion to dismiss the Second Amended Complaint was pending, in August 2021, Judge Liman discovered that a broker had purchased Peloton stock and "split [it] between an account for [his] wife and a joint account." ECF 110. Judge Liman informed the parties about this inadvertent purchase and that he and his wife were disposing of the stocks. *Id.* Once again, after learning this information, Former Plaintiffs did not move for Judge Liman to recuse himself or otherwise raise any objection to Judge Liman continuing to preside over the case.

Instead, three weeks later, Former Plaintiffs filed a motion to certify New York and Michigan classes. ECF 117. On January 19, 2022, the Court dismissed Pearlman's claims under Michigan law, denied Peloton's motion to exclude Former Plaintiffs' experts, and denied Former Plaintiffs' motion for class certification. ECF 168. The Court held that Pearlman's allegations failed to satisfy the heightened pleading standards under Rule 9(b), as required by Michigan law. ECF 168, at 10–17. And the Court denied certification of the New York class because Fishon had "misrepresented his identity" to Peloton, which meant that he would not be an adequate class representative. ECF 168, at 22–27.

### C.    In February 2022, Plaintiffs Passman and Alvarado Joined the Case Pending Before Judge Liman to Assert Claims on Behalf of a New York Class.

Following the Court's January 2022 order dismissing Pearlman's Michigan claims and denying certification of a New York class, Former Plaintiffs once again did not ask for Judge Liman to recuse himself or otherwise raise any objection to Judge Liman continuing to preside

over the case.  Instead, in February 2022, plaintiffs' counsel filed a Third Amended Complaint, which dropped Fishon and Pearlman from the case and added, for the first time, Eric Passman and Ishmael Alvarado as plaintiffs ("Current Plaintiffs").  ECF 195.

In the Third Amended Complaint, Current Plaintiffs added a new allegation seeking to certify a class limited to purchasers "in the State of New York."  *Id.* ¶ 107.  The Third Amended Complaint retained the allegation of a nationwide class from the prior complaints, but Current Plaintiffs disclaimed any intent to seek certification of that class.  *Id.* ¶ 106 & n.70.  They instead recognized in a footnote the Court's earlier ruling that Pearlman had not stated a claim under NYGBL, and they informed the Court that they would not "relitigate that issue."  *Id*. ¶ 106 n.70.  In joining this case more than two years after it was filed, and after Judge Liman had disclosed his past ownership of Peloton stock, Current Plaintiffs raised no objection to Judge Liman continuing to preside over the case.

Six months later, Current Plaintiffs defeated Peloton's third motion to dismiss.  ECF 207.  Although Current Plaintiffs were permitted to proceed on their claims and pursue their New York-only class, the Court "str[uck] the class allegations to the extent that they include[d] consumers who did not transact [with Peloton] in New York." ECF 207, at 39–40.  In striking the nationwide class allegations, the Court expressly relied on Current Plaintiffs' disclaimer of any intent to certify a class of non-New York purchasers.  *Id.* (citing ECF 195 ¶ 106 n.70).

Just two months later, Current Plaintiffs moved to certify a New York-only class.  ECF 226.  In May 2023, the Court denied that motion.  ECF 284.  The Court held that Alvarado was an inadequate representative because of his "demonstrated lack of understanding of the case and of his role and responsibilities" as a class representative.  *Id.* at 39.  The Court also held that the class could not be certified because common questions did not predominate.  *Id.* at 44.

Following the denial of class certification, Current Plaintiffs still did not move for Judge Liman to recuse himself or otherwise raise any objection to Judge Liman continuing to preside over the case. They instead filed a Rule 23(f) petition in the Second Circuit seeking an immediate appeal of the class certification denial. ECF 286. In their filings, Current Plaintiffs did not suggest that the class certification ruling should be vacated based on Judge Liman's prior ownership of Peloton stock. The Second Circuit denied the Rule 23(f) petition in September 2023. ECF 287.

In the months following this denial, the parties briefed summary judgment and Rule 702 motions addressing Current Plaintiffs' individual claims. ECF 294–302, 305–14. In that briefing, Current Plaintiffs did not object to Judge Liman deciding the motions. In May 2024, the Court held oral argument on these motions and, again, Plaintiffs raised no objection to Judge Liman presiding over the case. ECF 332.

**D.      In September 2024, the Case Is Reassigned to This Court.**

On July 2, 2024, the Second Circuit issued its decision in *Litovich v. Bank of America Corp.*, 106 F.4th 218 (2d Cir. 2024). The Second Circuit held that, under 28 U.S.C. § 455(a), Judge Liman should have recused himself from that case based on his wife's ownership of Bank of America stock. *Id.* at 226. Following the *Litovich* ruling, Current Plaintiffs did not file a motion for Judge Liman to recuse himself from their case.

Instead, on July 30, 2024—four weeks after *Litovich* was decided—the Clerk's Office of the Southern District of New York sent a letter to the parties regarding Judge Liman's prior stock ownership. ECF 332. The letter recounted how Judge Liman had informed the parties that he and his wife owned shares in Peloton and that the shares were divested. *Id.* And in the years since that happened, "no parties ha[d] suggested that Judge Liman's impartiality might be questioned, nor ha[d] anyone objected to Judge Liman's continuing to preside over this case or suggested that he should disqualify himself." *Id.* As the letter explained, "Given the substantial time that has passed

since Judge Liman's disclosures and the lack of objection or request for recusal from any party, the parties may have impliedly waived any argument that Judge Liman should recuse himself from the case." *Id.* Nevertheless, Judge Liman directed the Clerk to "provide the parties an opportunity to execute, or decline to execute, a formal waiver." *Id.*

When Current Plaintiffs did not execute a formal waiver, the case was reassigned to this Court on September 5, 2024. ECF 333, 338.

## ARGUMENT

### I.    The Filing of the Third Amended Complaint Divested the Court of Jurisdiction.

When this case began, the Court had jurisdiction under CAFA because Former Plaintiffs sought to certify a nationwide class. That changed with the filing of the Third Amended Complaint. Because this case was filed in federal court, the Court looks to the Third Amended Complaint—the operative complaint—to determine whether jurisdiction exists. *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015). In that pleading, Current Plaintiffs—both New York residents—entered the case for the express purpose of pursuing a New York-only class asserting claims under New York law against a New York defendant. CAFA does not—and could not—confer jurisdiction over this purely local dispute.

Article III of the U.S. Constitution authorizes Congress to extend the judicial power of the United States to any controversies "between Citizens of different States." U.S. Const. art. III, § 2. The Supreme Court has interpreted this provision to permit "the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens"—a requirement known as minimal diversity. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 531 (1967). In enacting CAFA, Congress ensured that the statute complied with the constitutional minimal diversity requirement by conferring jurisdiction to "a class action in which

any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C.

§ 1332(d)(2)(A).

Given that CAFA jurisdiction depends on the claims of foreign putative class members, jurisdiction is lacking where the named plaintiffs do not adequately allege a class that includes such claims.  Current Plaintiffs concede that "if the jurisdictional allegations are frivolous or defective from the outset, then jurisdiction never existed in the first place, regardless of the plaintiff's invocation of a class action under CAFA."  Mem. at 8 (quoting *Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011)).  Other courts have held that CAFA jurisdiction is lacking where the named plaintiff "lack[ed] the expectation that a class may be eventually certified." *Wright Transp., Inc. v. Pilot Corp.*, 841 F.3d 1266, 1271 (11th Cir. 2016); *see also Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) (same).

This Court lacks jurisdiction over the Third Amended Complaint because its allegations regarding a nationwide class are defective, and Current Plaintiffs had no expectation that such a class would be certified.  Former Plaintiffs previously pleaded a nationwide class, ECF 106 ¶ 101, but they did not seek certification of that class.  They instead sought certification of two other classes: a Michigan-only class asserting claims under Michigan law with Plaintiff Pearlman (a Michigan resident) as class representative, and a New York-only class asserting claims under New York law with Plaintiff Fishon (a New York resident) as class representative.  ECF 118 at 9.  The proposed Michigan class may have invoked CAFA jurisdiction, but the decision to seek certification of classes involving only two states shows that Former Plaintiffs (and their counsel) had no expectation that the court could certify a true nationwide class.  They instead expected that any class would be limited based on a claim asserted—e.g., a Michigan class for a claim under Michigan law, and a New York class for a New York claim.

After the Court denied class certification, Former Plaintiffs abandoned their claims. With the filing of the Third Amended Complaint, they were replaced by Current Plaintiffs, New York residents asserting claims under New York law against a New York Defendant. Consistent with Former Plaintiffs' strategy of pursuing state-specific class certification, the Third Amended Complaint pleaded only New York claims and—for the first time—a New York-only class. ECF 195 ¶ 107. Although the Third Amended Complaint retained the allegation of a nationwide class from the earlier complaints, it added a footnote disclaiming any intent to pursue certification of that class. *Id.* ¶ 106 n.70. Relying on that footnote, the court struck the nationwide class allegations from the complaint. ECF 207, at 39–40.

Current Plaintiffs cannot establish CAFA jurisdiction in these circumstances. CAFA jurisdiction does not exist when a plaintiff "lack[s] the expectation" that a CAFA-compliant class could be certified. *See, e.g.*, *Wright*, 841 F.3d at 1271. In the Third Amended Complaint, Current Plaintiffs expressed their view that the Court's prior rulings precluded a nationwide class, and they expressly disavowed any attempt to "relitigate" that issue. ECF 195 ¶ 106 n.70. As the subsequent litigation confirms, Current Plaintiffs sought only to certify a New York class. ECF 231, at 7. Moreover, as Current Plaintiffs concede, there is no CAFA jurisdiction when the class allegations are "defective." Mem. at 8 (quoting *Metz*, 649 F.3d at 501). The nationwide class allegations that potentially could have given rise to CAFA jurisdiction were necessarily defective because Current Plaintiffs conceded that they failed. That those allegations were struck from the complaint at the pleading stage confirms the point. ECF 207 at 38 (noting that court can dismiss or strike at the pleading stage class allegations that fail as a matter of law) (citing *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *18 (E.D.N.Y. Aug. 29, 2013); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011)).

Current Plaintiffs may contend that they sufficiently pleaded CAFA jurisdiction because they purported to reserve the right to challenge on appeal the court's dismissal of Plaintiff Pearlman's claims.  ECF 195 ¶ 106 n.70, ¶ 155.  But Peloton is aware of no case holding that a plaintiff's plan to raise an issue on appeal is sufficient to create CAFA jurisdiction.  Instead, Current Plaintiffs' Third Amended Complaint precludes CAFA jurisdiction because it shows that the allegations in it are limited to only New York residents and there is no expectation of a diverse class being certified.  *See, e.g.*, *Wright*, 841 F.3d at 1271; *Metz*, 649 F.3d at 501.  That is especially true when there is no reason to think Current Plaintiffs even *could* appeal the dismissal of another plaintiff's claim.  *See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 83 (2d Cir. 2005) ("A party ordinarily has no standing to appeal from part of a judgment that dismisses a claim to which it was not a party.").

In short, the Court can dismiss this case without reaching the disqualification issues that Current Plaintiffs raise (now, for the first time) in their motion.  This Court never had jurisdiction over Current Plaintiffs' claims because Current Plaintiffs did not sufficiently plead CAFA jurisdiction.  From the time they entered the case as plaintiffs, these New York residents asserted claims under New York law against a New York Defendant allegedly on behalf of a New York Class.  CAFA does not purport to confer jurisdiction over that putative class action, and Article III would not permit Congress to extend diversity jurisdiction over such a suit.

## II.    Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction.

Even if Current Plaintiffs had sufficiently pleaded a nationwide class to support CAFA jurisdiction, the Court can—and should—decline to exercise supplemental jurisdiction now that the class claims have been dismissed.  The remaining individual claims, which seek roughly $1,000 in statutory penalties and lack even minimal diversity, should not be resolved in a federal forum.  Current Plaintiffs contend that the Court must vacate the class certification rulings based on Judge

Liman's financial conflicts, but Current Plaintiffs have waived any right to seek recusal under Section 455(a) and they have not established a violation of any other provision in Section 455. The Court does not need to revisit the class certification rulings and can instead decline to exercise supplemental jurisdiction and dismiss the case.

### A.    The Court Need Not Revisit the Class Certification Denial.

Current Plaintiffs contend that the Court should vacate Judge Liman's class certification rulings because he issued those rulings after he should have recused himself under 28 U.S.C. § 455(a), (b), and (c).  Mem. 15–17.  But the Court need not vacate the class certification rulings based on Section 455.  Parties seeking to recuse a judge for a violation of Section 455(a) must do so immediately after the potential violation is known.  Because neither Former Plaintiffs nor Current Plaintiffs did so, they waived any objection to Judge Liman remaining on the case.  As for Section 455(b), a potential violation of that section can be cured by divesting the financial interest that creates the conflict.  That is precisely what Judge Liman did here.  And Section 455(c), by its terms, does not require disqualification; it merely imposes a duty on judges to monitor their potential conflicts.

### 1.    Plaintiffs Waived Any Violation of Section 455(a).

A party seeking to recuse a judge for a violation of Section 455(a) must file a recusal motion "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987) (citation omitted).  This strict time limitation imposes a "significant limit[ation]" on a parties' right to seek to recuse a potentially conflicted judge. *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000).  And it serves two important objectives: it "affords the district judge an opportunity to assess the merits of the application before taking further steps that may be inappropriate," and it ensures that parties do not hedge their bets by raising a recusal issue only after an adverse ruling. *In re Int'l*

*Bus. Machs. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995).  Failure to timely move for recusal results in waiver of any objection to the judge's continued participation in the matter.  *See* 28 U.S.C. § 455(e) (explaining that parties may waive Section 455(a) violations after a judge's "full disclosure on the record").

Where, as here, the timeliness of a Section 455(a) objection is challenged, courts typically "first consider whether the procedural requirements have been met" "[b]efore reaching the merits of a recusal motion."  *Apple*, 829 F.2d at 333; *see also Bayless*, 201 F.3d at 127  (explaining that same).  In so doing, the court should examine a number of factors: (1) the extent of a movant's participation in trial or pre-trial proceedings; (2) whether granting the motion would waste judicial resources; (3) the movant's demonstration of "good cause for delay"; and (4) whether the motion was made after entry of judgment.  *Apple*, 829 F.2d at 333–34.  Current Plaintiffs do not even try to provide this Court with relevant reasons under *Apple* for not seeking to recuse Judge Liman. And for good reason.  All of the relevant considerations support a finding of waiver.

*First*, Former Plaintiffs fully participated in pre-trial proceedings in this litigation and were informed of the inadvertent stock ownership and divestment both times.  They had multiple opportunities to move for disqualification and did not do so.  Accordingly, any objection to Judge Liman's participation in the case was likely waived before Current Plaintiffs even joined the case. But in any event, Current Plaintiffs have been involved in this litigation for almost three years— even longer than Former Plaintiffs.  They have participated in depositions, challenged Peloton's experts, sought class certification, argued dispositive motions, and so much more.  *See e.g.*, ECF 261, 302–12, 316.  And there is no evidence that the Judge Liman owned Peloton stock *at all* during their participation in this case.

*Second*, granting Current Plaintiffs' motion will waste significant judicial resources. *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) ("The timeliness requirement is necessary to prevent waste of judicial resources . . . ."). This case has been ongoing for nearly five years. The Court has seen three amended complaints, resolved two class certification motions, managed substantial discovery leading to summary judgment and *Daubert* briefing, and is now adjudicating a motion to vacate all prior orders. Granting Current Plaintiffs' motion will waste the significant resources already invested in resolving this case for no other reason than Current and Former Plaintiffs' failure to act sooner.

*Third*, Current Plaintiffs have presented no good cause for delay. Former Plaintiffs could have moved to disqualify Judge Liman, but chose not to. Current Plaintiffs could have filed suit in state court, filed a new suit that would have been randomly assigned to a new judge, or sought to recuse Judge Liman after they were added to this case. They did none of these things.[2]

The Second Circuit has found waiver where a party waited just a few months to move to recuse a judge. *See, e.g.*, *Apple*, 829 F.2d at 334 (disqualification motion untimely when the party "waited for two months before it made its recusal motion"); *Yonkers,* 946 F.2d at 181-83 (finding waiver based on three-month delay). The Second Circuit has also found waiver where, as here, the party never moved to disqualify the judge. *See, e.g.*, *Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir. 1991) ("[h]aving never moved for [the judge's] recusal" party was "poorly positioned" to "take issue with the court's role" at such a "late date"); *United States v. Yu-Leung*,

---

[2] It is irrelevant that final judgment has yet to be entered. Former Plaintiffs were notified of the facts Current Plaintiffs now rely on years before filing this motion. *See supra*, pp. 4–5. Granting Current Plaintiffs' motion notwithstanding their "protracted" delay undermines the goal of avoiding such motions being raised as a "fall-back position" in the event of adverse outcomes. *LoCascio v. United States*, 473 F.3d 493, 497 (2d Cir. 2007); *see also In re Int'l Bus. Machs. Corp.*, 45 F.3d at 643. That is exactly what is happening here.

51 F.3d 1116, 1119 (2d Cir. 1995) (waiver where defendant failed to move for disqualification when there was an opportunity to do so before the judge he sought to disqualify).

Current Plaintiffs contend that they could not move to disqualify Judge Liman because he told the parties he would remain on the case. Mem. 3. That argument has several flaws. *First*, Judge Liman merely informed the parties that he *intended* to continue handling the case. ECF 64. He did not forbid the parties from moving to disqualify him or even suggest that such a motion would be futile. *Second*, only the second notification in 2020 contained that statement. ECF. 64. When Judge Liman informed the parties of his divestment in 2021, he did not repeat that statement. ECF 110, 112. Former Plaintiffs could have filed a motion to disqualify Judge Liman at any time. *Third*, these events all occurred before Current Plaintiffs even joined the case. There is no reason they could not have brought their claims before a different judge if they so desired.

Current Plaintiffs also argue that they could not have waived an objection because they promptly responded to the letter from the Clerk's Office in late July 2024. Mem. at 20. But the Clerk's letter did not restart the clock for raising objections to Judge Liman's participation in the case. It instead noted that Current Plaintiffs may have already waived any objection by not asking Judge Liman to recuse. ECF 332. The case's reassignment simply means that this Court must decide if Current Plaintiffs have waived their Section 455(a) argument. By litigating for nearly three years without moving to disqualify Judge Liman, Current Plaintiffs have clearly done so.

### 2.    Recusal Was Not Required under Section 455(b) or (c).

Current Plaintiffs also contend that Judge Liman's orders should be vacated because he issued them after being required to recuse himself from the case under Sections 455(b)(4) and (c). But neither of those provisions required recusal. Judge Liman cured any potential Section 455(b)(4) violation by divesting his financial interest in the matter, and Section 455(c) does not require recusal.

*First*, recusal is not necessary under Section 455(b)(4) when a judge divests his financial interest in a proceeding pursuant to Section 455(f).  *See, e.g.*, *In re Certain Underwriter*, 294 F.3d 297, 303 (2d Cir. 2002) (describing Section 455(f) as an "exception" to the general rule that a judge's "financial interest in[] a proceeding" requires recusal).  In order "to conserve judicial resources," *In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 143 (2d Cir. 2007), Section 455(f) permits a judge to continue handling a case after divesting his financial interest if "substantial judicial time has been devoted to the matter."  28 U.S.C. § 455(f).[3]

That is precisely what Judge Liman did here.  Upon learning that he or his wife owned Peloton stock, Judge Liman promptly notified the parties of this discovery and sold the stock.  ECF 63, 64, 110, 112.  Former Plaintiffs did not object at the time to Judge Liman's curing any potential conflict through divestiture.  Indeed, even now, Current Plaintiffs do not argue that Section 455(f) was inapplicable because Judge Liman had not spent significant time on the matter.  They instead concede that he had spent substantial time on the matter.  Mem. 2–6.  Judge Liman thus cured any potential violation of Section 455(b) when he and his wife sold the Peloton stock that a broker had purchased for them.  *See In re Certain Underwriter*, 294 F.3d at 304  (Section 455(f) applied where judge "quickly divested herself of the conflicting interest"); *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir. 1991) (applying Section 455(f) where judge made a "forthright divestiture" and the parties and the court had dedicated nearly three years to the litigation); *In re Literary Works*, 509 F.3d at 139–44 (Section 455(f) permitted two Second Circuit judges to disclaim a financial interest and decide the appeal).

---

[3] Section 455(f) contains an exception where the judge has "an interest that could be substantially affected by the outcome," but the Second Circuit has not applied this exception where, as here, the judge or his spouse merely owned shares in a publicly traded company.  *See Kidder, Peabody*, 925 F.2d at 561.  And Current Plaintiffs do not argue that this exception applies here.

Current Plaintiffs contend that Judge Liman violated Section 455(b) because, in October 2020, he "must have been considering his dismissal order" during the period between when he learned of his wife's stock ownership and when she sold the stock. Mem. at 16. But Current Plaintiffs' speculation about what Judge Liman must have been considering before the stock sale was completed provides no basis to hold Section 455(f) inapplicable. Instead, a judge may invoke Section 455(f) so long as he "made no rulings between the date of discovery and the date of divestment." *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir. 1986). There is no evidence that Judge Liman made rulings between when he learned of his financial interest and divested that interest, and Current Plaintiffs do not argue otherwise.

Current Plaintiffs also contend that "*Litovich* makes it plain that the recused judge erred in applying § 455(f) and determining that his conflict could be purged." Mem. at 14. That is incorrect. *Litovich* held only that divestiture under Section 455(f) cannot cure a conflict that arises under Section 455(a)—the only provision that *Litovich* held was violated there. *Litovich* did not purport to overrule—nor could it—the Second Circuit decisions holding that divestiture under Section 455(f) *does* cure a potential conflict under Section 455(b)(4). *In re Certain Underwriter*, 294 F.3d at 304; *Kidder, Peabody*, 925 F.2d at 561. Simply put: Recusal in this case was not necessary under Section 455(a) because Current Plaintiffs waived any objection to Judge Liman's participation in the case, *see supra*, Part II.A.1, and recusal was not necessary under Section 455(b)(4) because Judge Liman divested his financial interest pursuant to Section 455(f).

*Second*, Current Plaintiffs assert that Judge Liman also violated Section 455(c), but they offer no evidence to support that assertion. In any event, the Court need not decide whether Judge Liman complied with Section 455(c), because that provision does not provide a basis for disqualification.

Section 455(c) states that "[a] judge should inform himself about his personal . . . financial interests, and make a reasonable effort" to do the same about his spouse's interests. 28 U.S.C. § 455(c). Unlike Sections 455(a) and (b), which expressly state that a judge must "disqualify himself" in certain circumstances, Section 455(c) makes no reference to disqualification. That is because Section 455(c) is not a basis for disqualification; it is only "directed at implementing subsections (a) and (b)." Charles Gardner Geyh and Krus Markarian, *Judicial Disqualification: An Analysis of Federal Law,* (3rd ed.), 2020 WL 13401932.

In sum, the Court need not revisit Judge Liman's class-certification rulings because of the alleged Section 455 violations. Current Plaintiffs waived any objection based on Section 455(a), Judge Liman cured any potential violation of Section 455(b) through divestiture under Section 455(f), and Section 455(c) does not mandate recusal.

### B.    The Court Should Decline Jurisdiction Over the Remaining State Law Claims.

If the Court had CAFA jurisdiction over the Third Amended Complaint, it was only because of the alleged claims of the non-New York putative class members, because those claims brought the case within CAFA's grant of jurisdiction. Now that the class claims have been dismissed, all that is left of the case are two claims brought by New York plaintiffs against a New York defendant under New York law seeking roughly $1,000 in statutory penalties. The Court can—and should—decline to exercise supplemental jurisdiction over those state-law claims.

The Second Circuit confronted a similar situation in *F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017). There, the court of appeals held that, where CAFA jurisdiction existed when a suit was removed to federal court, denial of class certification did not divest the district court of jurisdiction such that the case had to be remanded to state court. *Id.* at 77. But in so holding, the Second Circuit acknowledged that, after dismissal of the class claims, a district court *could* decline

to exercise jurisdiction over the remaining state-law claims.  *Id.* at 77 n.14.  The court explained: "Nor do we conclude that the district courts, on finding that a case cannot proceed as a class action, must adjudicate state law claims rather than remand them to state court. They can also, of course, dismiss them without prejudice for consideration in state courts." *Id.*

District courts—including this Court—have relied on *F5 Capital* to dismiss the named plaintiffs' state-law claims after dismissing the class claims.  *See, e.g.*, *Horton v. Dow Jones & Co.*, 2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) (Schofield, J.), *aff'd*, 804 F. App'x 81, 85 (2d Cir. 2020).  In *Horton*, this Court determined that a plaintiff's class claim was not arbitrable, and thus the plaintiff had to proceed as an individual with his state-law statutory claim.  *See id.* at *3.  This Court acknowledged that it did "have—and retain[ed] despite the dismissal of the class claim— original subject matter jurisdiction over [the] action under CAFA." *Id.*  But, citing Second Circuit precedent, this Court observed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at *4 (quoting *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)) (cleaned up).  For that reason, this Court "decline[d] to exercise supplemental jurisdiction over Plaintiff's state law claim." *Id.*

The Second Circuit affirmed that ruling.  *See Horton*, 804 F. App'x at 85.  Citing *F5 Capital*, the court of appeals noted that it had "previously rejected the position that 'district courts, on finding that a case cannot proceed as a class action, must adjudicate state law claims rather than remand them to state court.'"  *Id.* (quoting *F5 Capital v. Pappas*, 856 F.3d at 77 n.14). Accordingly, this Court "appropriately dismissed [the *Horton* plaintiff's] individual state-law

claim without prejudice after holding that the class-waiver provision barred him from seeking class relief." *Id.*[4]

The Court should follow the same approach here. Now that this Court "dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" the remaining claims. 28 U.S.C. § 1367(c). The Second Circuit has "repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.'" *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010). That is because "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . — judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

That is true here. Now that the claims that gave rise to federal jurisdiction—the class claims—have been dismissed, judicial economy, convenience, fairness, and comity point toward dismissal. On judicial economy, the remaining claims are of the kind that both Congress and the Constitution itself determined that federal courts should not adjudicate. As to convenience and

---

[4] *See, e.g.*, *Weber v. Quest Diagnostics of Pa., Inc.*, 2020 WL 6372382, at *5 (W.D.N.Y. Oct. 29, 2020) ("[The Second Circuit] has never held that withdrawal of class action allegations compels the federal court to retain jurisdiction over related state claims. A federal court therefore has the discretion to either remand or exercise supplemental jurisdiction notwithstanding the dismissal of the CAFA-triggering claim.") (emphasis omitted); *Gale v. Chi. Title Ins. Co.*, 2017 WL 4366959, at *3 (D. Conn. Sept. 30, 2017) *aff'd*, 929 F.3d 74 (2d Cir. 2019) ("The [Second Circuit] recently noted that when a district court finds that a CAFA case cannot proceed as a class action, jurisdiction over the individual claims continues to exist but the court has discretion to dismiss the individual claims without prejudice to refiling in state court. *See F5 Capital*, 856 F.3d at 77 n.14. This suggests that in deciding the present motion, the Court may be guided by the factors relevant to a determination whether to exercise supplemental jurisdiction."); *Oskar v. IDS Prop. Cas. Ins. Co.*, 2011 WL 1103905, at *7 (E.D.N.Y. 2011) (applying § 1367(c)(3) to remand state law claims because "the basis for federal jurisdiction in this matter rests on" CAFA and "all class claims have been dismissed").

fairness, both the defendant and the remaining plaintiffs are based in New York, so Plaintiffs would not be prejudiced by having to avail themselves of the New York state court system. Finally, comity concerns suggest that this case—which involves New York state-law claims and solely New York parties—should not be in federal court.

Current Plaintiffs resist this conclusion by arguing that the Court is powerless to dismiss their state-law claims because they were pleaded as class claims. Mem. 8–13. That argument is foreclosed by *F5 Capital* and *Horton*, which recognized that courts have discretion to decline jurisdiction over individual claims after class certification is denied. Current Plaintiffs respond by arguing that the Second Circuit and this Court (among others) are "incorrect" in reading *F5 Capital* "as authorizing the dismissal of claims over which the court has original jurisdiction after denial of class certification." Mem. 12 n.6. But that is precisely what *F5 Capital* says: "[O]n finding that a case cannot proceed as a class action," courts "can also, of course, dismiss [state-law claims] without prejudice for consideration in state courts." 856 F.3d at 77 n.14.

Current Plaintiffs contend that dismissal following denial of class certification is improper because "[o]nce jurisdiction has attached, it cannot be ousted by subsequent events." Mem. 12. That is incorrect. Indeed, Current Plaintiffs effectively concede that there is no such categorical rule by acknowledging that jurisdiction can be ousted by some subsequent events, such as the filing of an amended complaint. Mem. 13 n.7. And Section 1367 plainly contemplates that a court may decline to exercise jurisdiction over state-law claims after other subsequent events, such as the dismissal of federal law claims. 28 U.S.C. § 1367(c)(3).

In arguing for a "once-jurisdiction, always-jurisdiction" rule, Current Plaintiffs rely extensively on cases that were filed in state court and then removed to federal court. Mem. 9–13 (discussing *F5 Capital*, 856 F.3d at 75 (removal case), and *In Touch Concepts, Inc. v. Cellco*

*P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (removal case)).  But the Second Circuit has made clear that removal cases are different.  When a case is originally filed in federal court—as this case was—then the general rule is that the court must ensure it has subject-matter jurisdiction after every step of the case.  *In Touch*, 788 F.3d at 101.  But "this rule would not apply to cases that were removed to federal court." *Gale v. Chicago Title Ins. Co.*, 929 F.3d 74, 78 n.2 (2d Cir. 2019) The "time-of-filing rule" applies "only to removal cases because 'removal cases raise forum-manipulation concerns that simply do not exist when it is the plaintiff who chooses a federal forum . . . .'" *Id.* (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)); *see also Wright*, 841 F.3d at 1272 (distinguishing "suits filed in state court and then removed to federal court under CAFA" from suits "first filed directly in federal court").

Current Plaintiffs also contend that the Court cannot decline to exercise supplemental jurisdiction because both of their claims were pleaded as class claims under CAFA and thus "[t]here are no 'other claims' over which it has supplemental jurisdiction, even after the denial of class certification."  Mem. 13.  But that argument overlooks the critical role that the claims of the diverse class members play in a jurisdictional analysis.  CAFA could not confer diversity jurisdiction over Current Plaintiffs' claims because Current Plaintiffs do not satisfy the constitutional requirement of minimal diversity.  *See supra*, Part I.  It is the claims of the putative class members that brought this case within CAFA, 28 U.S.C. § 1332(d), and once those claims were removed from the case, the only remaining claims—Current Plaintiffs' individual claims—are claims not otherwise subject to the Court's jurisdiction.  These individual state-law claims are thus properly treated as "other claims" under Section 1367(a).  *See, e.g.*, *Horton*, 2019 WL 952314, at *4; *Weber*, 2020 WL 6372382, at *5.

Finally, Current Plaintiffs acknowledge that this Court declined to exercise supplemental jurisdiction in *Horton* based on Section 1367(c)(3), but they argue that the Court cannot invoke that provision here "because the recused judge in this matter was in violation of 28 U.S.C. § 455." Mem. at 24.  Even putting aside Current Plaintiffs' waiver of any Section 455(a) violation, Judge Liman *denied* the motion to dismiss Current Plaintiffs' claims.  ECF 207.  A denial of a motion to dismiss does not prevent a court from declining to exercise supplemental jurisdiction under Section 1367(c)(3).  Rather, Judge Liman's denial of the motion is the reason why the individual state-law claims are still pending, and thus the reason why the Court can—and should—dismiss them under Section 1367(c)(3).  *See, e.g.*, *Horton*, 2019 WL 952314, at *4.

## III.  If the Court Retains Jurisdiction, It Should First Rule on Peloton's Motion for Summary Judgment.

Current Plaintiffs contend that the Court should vacate all of Judge Liman's rulings and effectively start this case over.  Indeed, Current Plaintiffs suggest that vacatur should extend to rulings addressing Former Plaintiffs.  Current Plaintiffs do not even attempt to justify turning the clock back to before they joined the case, but in any event, there is no reason for this Court to take such a drastic step.

Even if the Court finds that Current Plaintiffs did not waive their objections to Judge Liman continuing to preside over the case despite the passage of years, or that Judge Liman violated Section 455(b), the Court need not vacate any of Judge Liman's rulings.  "When a judge violates § 455, a new, unconflicted judge may*, but is not required to*, vacate the judgment or any decisions rendered by the conflicted judge." *ExxonMobil Oil Corp. v. TIG Ins. Co*., 44 F.4th 163, 172 (2d Cir. 2022), *cert. dismissed*, 143 S. Ct. 480 (2022) (emphasis added) (citing *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986)).  To determine whether vacatur is appropriate, courts must assess three factors: (1) injustice to the parties before the Court, (2)

whether a denial will produce injustice in other cases, and (3) the potential to undermine public confidence in the judicial proceeding. *Litovich*, 106 F.4th at 226–27 (citation omitted).

None of these factors warrant vacating the prior orders in this case. *First*, Current Plaintiffs would suffer no injustice. They chose to enter this case after Judge Liman had disclosed his and his wife's stock ownership and then they litigated their claims for years without objecting to Judge Liman presiding over the case. If any party would be prejudiced, it would be Peloton. Peloton has defended itself against these claims for close to five years, and after twice prevailing on class certification, it now faces the prospect of potentially starting the case over, despite no objection from the Former Plaintiffs or Current Plaintiffs to Judge Liman staying on the case. *Second*, declining to vacate the prior orders will also not produce injustice in other cases. Instead, allowing the orders to stand will demonstrate to parties in other cases that they must timely seek to recuse a judge if they object to that judge's continued participation in the case. Put another way, "[t]he risk of harm in future cases is minimal . . . because the district court disclosed the conflict as soon as [the judge] became aware of it, and because [Plaintiffs] ha[ve] had ample opportunity to challenge [the judge's] rulings . . . ." *ExxonMobil*, 44 F.4th at 174. *Third*, declining to vacate the orders will not undermine public confidence in the judicial process. Instead, public confidence will be furthered by ensuring that parties do not game the judicial system by failing to bring disqualification motions early and waste substantial judicial resources.[5]

Rather than vacating any order—or even reviewing prior orders *de novo*—if the Court retains jurisdiction, it should first resolve Peloton's motions for summary judgment and to exclude

---

[5] Plaintiffs also contend that this Court should use its "inherent power to reconsider and modify interlocutory orders." Mot. 19. But because Plaintiffs fail to show that vacatur is warranted under the three-part test that this Court must apply, the Court need not resort to its inherent powers to circumvent this result.

Current Plaintiffs' expert testimony.  ECF 294–314.  Plaintiffs and their counsel cannot complain that after years of litigation they need further discovery to defend against these motions—and if they do, Rule 56(d) sets forth the process they must follow to make that showing.  If the Court grants summary judgment for Peloton, that ruling would moot Current Plaintiffs' challenges to Judge Liman's class certification rulings.  *See, e.g.*, *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 267 (S.D.N.Y. 2001) ("Because the Court has found against the named plaintiffs on the merits, their motion for class certification must be denied."); *Brookman & Brookman P.C. v. MCI Telecomms. Corp.*, 1991 WL 107421, at *1 (S.D.N.Y. 1991) ("If defendants' motion for summary judgment is well founded, plaintiff's motion for class certification becomes moot.").[6] A ruling for Peloton on summary judgment would obviate the need to consider class certification because plaintiffs that lack viable claims, necessarily cannot be adequate class representatives.  *See, e.g.*, *Swan v. Stoneman*, 635 F.2d 97, 102 n.6 (2d Cir.1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of jurisdiction.

---

[6] *See also Plotnick v. Comput. Scis. Corp.*, 875 F.3d 160, 164 (4th Cir. 2017) ("Because affirmance of the district court's grant of summary judgment disposes of [plaintiffs'] claims, we decline to address the district court's denial of class certification."); 3 Newberg and Rubenstein on Class Actions § 7:10 (6th ed. 2024) ("If the defendant prevails on the summary judgment motion, in most circumstances, the court will be relieved of the need to rule on the issue of class certification.").

By:    /s/ *Mark W. Mosier*

Mark W. Mosier, *pro hac vice*
Andrew Soukup, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
mmosier@cov.com
asoukup@cov.com
pajones@cov.com

*Counsel for Peloton Interactive, Inc.*