UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                               :
ERIC PASSMAN, et al.,                    :
                         Plaintiffs,   :
                                               :                  19 Civ. 11711 (LGS)
                   -against-             :
                                               :
PELOTON INTERACTIVE, INC.,       :                **OPINION & ORDER**
                               Defendant.   :
                                               :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs commenced this action on behalf of themselves and a putative class alleging that Defendant Peloton Interactive, Inc. had made material misrepresentations and omissions regarding Defendant's fitness class library. After reassignment of the case due to financial conflicts of interest of the prior assigned judge (the "recused judge"), Plaintiffs moved for the court to vacate or review de novo certain rulings made by the recused judge and to retain jurisdiction over this matter. Defendant opposed the motion. As explained below, Plaintiffs' motion is granted.

## I.      BACKGROUND

The following facts appear to be undisputed and are taken from the docket in this case or the parties' submissions, and largely are matters of which the court may take judicial notice. *See* Fed. R. Evid. 201; *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998); *Ng v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 23 Civ. 10380, 2024 WL 4827574, at *4 (S.D.N.Y. Nov. 19, 2024).

### A. Procedural History

This action was filed in December 2019 by Eric Fishon, Alicia Pearlman and Patrick Yang, individually and on behalf of a putative nationwide class of purchasers of Peloton hardware or subscriptions for a period of approximately one year beginning in April 2018. The Complaint relied on 28 U.S.C. § 1332(d)(2), or so-called CAFA jurisdiction, as the basis for the Court's subject matter jurisdiction. The Complaint alleged violations of N.Y. General Business Law, sections 349 and 350, which relate to deceptive business acts or practices and false advertising, respectively.

Defendant filed a motion to dismiss the Complaint on March 13, 2020. Plaintiff Yang was voluntarily dismissed on August 4, 2020. On November 9, 2020, the recused judge granted Defendant's motion in part, dismissing the claims of Plaintiff Pearlman -- a Michigan resident whose transaction had no connection to New York -- because she lacked statutory standing under New York's statutes, but allowing the claims of Fishon. *Fishon v. Peloton Interactive, Inc.* ("*Fishon I*"), 2020 WL 6564755, at *13-14 (S.D.N.Y. Nov. 9, 2020).

Plaintiffs Fishon and Pearlman filed a First Amended Complaint ("FAC") on behalf of themselves and a putative nationwide class on January 21, 2021. On February 4, 2021, Defendant moved again to dismiss Pearlman's claims on the basis that she did not have statutory standing. On July 12, 2021, the recused judge again dismissed Pearlman's New York claims for lack of statutory standing, finding that she had failed to cure the deficiencies identified in the original complaint. *Fishon v. Peloton Interactive, Inc.* ("*Fishon II*"), 2021 WL 2941820, at *5 (S.D.N.Y. July 12, 2021). The opinion granted Pearlman leave to amend the complaint to plead her claims under Michigan law. *Id.*

Plaintiffs Fishon and Pearlman filed a Second Amended Complaint ("SAC") on July 26, 2021.  In the SAC, Fishon again asserted claims under New York's General Obligations Law, while Plaintiff Pearlman brought claims under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. §§ 445.901, *et seq*.  On August 9, 2021, Defendant moved to dismiss Plaintiff Pearlman's claims under the MCPA.  On September 16, 2021, Plaintiffs moved to certify two classes of Peloton purchasers -- a New York class and a Michigan class -- pursuant to Federal Rule of Civil Procedure 23.  On January 19, 2022, the recused judge decided both Defendant's motion to dismiss the SAC and Plaintiffs' motion for class certification.  The decision dismissed Pearlman's claims under the MCPA because they were not pleaded with the requisite specificity under Federal Rule of Civil Procedure 9(b).  *Fishon v. Peloton Interactive, Inc.*, 2022 WL 179771, at *7-8 (S.D.N.Y. Jan. 19, 2022) ("*Fishon III*").  The decision denied Plaintiffs' motion for class certification on the grounds that Pearlman's claim had been dismissed and Fishon was not an adequate class representative.  *Id*. at *11-12.  The decision permitted the filing of a fourth complaint that might remedy these infirmities.  *Id*. at *12-13.

The Third Amended Complaint ("TAC") was filed in February 2022 by two new Plaintiffs, Eric Passman and Ishmael Alvarado, both New York citizens, on behalf of themselves, a putative nationwide class and a New York sub-class.  Defendant moved to dismiss the TAC, arguing that Plaintiffs lacked standing and that the TAC failed to state a claim.  On August 11, 2022, the recused judge substantially denied the motion to dismiss, but struck the class allegations of class members who did not transact with Peloton in New York for lack of statutory standing to assert claims under the New York General Obligations Law.  *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 107 (S.D.N.Y. 2022) ("*Fishon IV*").

3

In October 2022, Plaintiffs moved to certify a class of all purchases of Peloton hardware or subscriptions in New York during the putative class period.  Defendant opposed the motion.  Oral argument was held on April 12, 2023.  On May 2, 2023, the recused judge denied class certification on the basis that Plaintiff Alvarado was not an adequate class representative and that common issues did not predominate over individual issues with respect to causation, injury and damages.  *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 448-49, 451-67 (S.D.N.Y. 2023).  Plaintiffs sought leave to appeal the denial of class certification to the Second Circuit Court of Appeals, which was denied.

Plaintiffs Passman and Alvarado continued to pursue their claims as individuals, rather than on behalf of a class.  In December 2023, Defendant moved for summary judgment and to preclude the expert reports and testimony of Plaintiffs' experts.  Plaintiffs opposed both motions.  Oral argument was held on the motions on May 29, 2024, but they were not decided because of intervening events.

## B.  Conflicts and Reassignment

On October 15, 2020, while the first motion to dismiss was pending, the recused judge informed the parties that his spouse owned shares in Defendant and determined that recusal was not required because the shares were being divested and recusal would not be in the public interest.  The recused judge notified the parties on November 2, 2020, that the shares at issue had been sold and that he intended to continue to preside over the case.  On November 9, 2020, the recused judge issued the decision in *Fishon I*.

A financial advisor, acting for the recused judge and his spouse, then made several purchases of Peloton stock, on April 15, April 19, May 11, May 12, May 13 and May 14, 2021.  On July 12, 2021, the recused judge issued the decision in *Fishon II*.  On August 25, 2021, the

recused judge again disclosed the purchases of Peloton stock and notified the parties that the

shares were being divested.  The disclosure stated, "Earlier this month, I became aware that an

investment advisor bought a total of 550 shares, split between an account for my wife and a joint

account . . . .  I was not aware of the purchases at the time they were made, I did not make any

decisions or issue any orders in this case at any time I was aware of the share ownership, and my

wife and I are in the process of divesting ourselves of the position."  On August 31, 2021, the

recused judge notified the parties that the divestment was complete.

On July 2, 2024, the Second Circuit issued its decision in *Litovich v. Bank of Am. Corp.*,

106 F.4th 218 (2d Cir. 2024), regarding similar conflicts in another case before the recused

judge.  The Second Circuit held that recusal had been required and vacated the district court's

decision dismissing the case.  *Litovich*, 106 F.4th at 228.

On July 30, 2024, at the request of the recused judge, the Clerk of Court issued a letter to

the parties here providing them the opportunity to execute or decline to execute a formal waiver

of the recused judge's conflict.  Plaintiffs did not waive the conflict.  On September 5, 2024, the

case was reassigned to the undersigned presiding judge (the "presiding judge").

After reassignment, the presiding judge denied the pending motion for summary

judgment without prejudice to renewal and ordered briefing on two issues: whether the exercise

of supplemental jurisdiction over the remaining claims in the action was appropriate and whether

waiver of judicial conflicts had occurred or whether vacatur of prior orders was appropriate.

Plaintiffs then filed the instant motion for the Court to vacate prior rulings and retain jurisdiction.

Defendant opposed the motion, arguing that the Court either lacks subject matter jurisdiction or

should decline to exercise supplemental jurisdiction, and that objections to the conflicts were

5

waived.  Defendant subsequently filed a notice of supplemental authority regarding *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), to which Plaintiff responded.

## II.    DISCUSSION

Plaintiffs move to vacate or review de novo the rulings made by the recused judge, including on the motions to dismiss, the motions for class certification and discovery rulings regarding the scope of discovery.  Plaintiffs argue that the rulings were made improperly by a judge who instead should have recused himself pursuant to 28 U.S.C. § 455.  As explained below, vacatur is required.

### A.  Standard

The framework for the disqualification of a judge when the judge's impartiality may reasonably be questioned or where a conflict of interest arises is set forth in 28 U.S.C. § 455. Section 455(a) states that any federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  "Section 455(a) has been described as a catchall recusal provision, that governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown." *Litovich,* 106 F.4th at 224.[1]  The purpose of the provision is "to promote public confidence in the integrity of the judicial process, which does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Id*.  As a result, "the test for whether an appearance of partiality exists is an objective one based on what a reasonable person knowing all the facts would conclude." *Id*.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

In addition to this catchall recusal provision in § 455(a), § 445(b) calls for recusal in particular circumstances, including, as relevant here, if the judge knows that he or his spouse has a financial "interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." This provision, unlike § 455(a), expressly requires actual knowledge of a conflict. 28 U.S.C. § 455(b)(4). A judge's discovery of a financial interest in a party after the matter was assigned to him does not require disqualification if the judge has already spent "substantial judicial time" on the matter and "divests himself . . . of the interest." *Id.* § 455(f).

Even if a financial interest conflict is excused by § 455(f), the circumstances may nevertheless require recusal under the catchall provision of § 455(a), as occurred in *Litovich.* The Second Circuit explained, "Section 455(a) applies when a reasonable person would conclude that a judge was violating Section 455(b)(4) due to a conflict of financial interest" and "[e]ven where the facts do not suffice for recusal under § 455(b), . . . those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a)." *Litovich*, 106 F.4th at 226. Applying that analysis here, the recused judge in this case was required to disqualify himself under § 455(a), rather than adjudicate the motions before him.

### B. Application of § 455(b)(4) and § 455(f)

The recused judge knew of financial conflicts that required recusal under § 455(b)(4) but that were cured by disclosure and divestment under § 455(f). At issue here are two occurrences of stock ownership. First, the recused judge's spouse owned Peloton stock; the judge disclosed that ownership on October 15, 2020, while Defendant's motion to dismiss the Complaint was fully briefed and pending; the stock was divested by November 2, 2020, and the judge decided *Fishon I* one week later, dismissing Plaintiff Pearlman's claim. The disclosure states, "I have

7

become aware that my wife holds shares in Defendant," without specifying when the judge

became aware or how long his wife had held the shares prior to the disclosure.

In the second instance, the recused judge and his spouse purchased Peloton stock in April

and May 2021, while Defendant's second motion to dismiss was fully briefed and pending; in

July 2021, the judge decided the motion in *Fishon II*, dismissing Plaintiff Pearlman's repleaded

claims in the FAC; on August 9, 2021, Defendant filed a third motion to dismiss, aimed at

Pearlman's new Michigan claims in the SAC; the judge disclosed the stock ownership on August

25, 2021; the stock was divested by August 31, 2021.  In January 2022, in *Fishon III*, the judge

dismissed Pearlman's claims and denied Plaintiffs' motion for class certification, which had been

filed after the divestiture of stock.  The disclosure notice, from August 25, 2021, states, "Earlier

this month [i.e., after *Fishon II*], I became aware that an investment advisor bought" shares of

Defendant's stock.

In both instances, the recused judge had a conflict as described in § 455(b)(4) -- the judge

or his spouse had a financial interest in a party, and the judge knew of that financial interest for a

period of time while he presided over the case and a motion to dismiss was pending.  In the first

instance, Defendant's first motion to dismiss was pending.  In the second instance, Defendant's

third motion to dismiss was pending.  In both instances, the conflict was cured pursuant to

§ 455(f) -- the recused judge disclosed and divested the interests each time he became aware of

them, and the conflicts arose after substantial judicial time had been devoted to the case.

### C.  Analysis under § 455(a)

The financial conflicts here must also be analyzed under § 455(a).  Section 455(a)

requires disqualification in any proceeding in which a judge's impartiality might reasonably be

questioned, and unlike § 455(b)(4), does not require the judge's knowledge of the circumstances

giving rise to the question.  The record does not include information on exactly when the recused judge acquired the Peloton stock he owned and disclosed in 2020, or precisely when he became aware of that stock.  A court should focus "on § 455(a), rather than § 455(b)(4) itself, [if] the record lacks clarity on precisely when the district judge learned of the conflict," which, as described above, is the case for both conflicts at issue.  *See Litovich*, 106 F.4th at 226.  Here, as confirmed by the recused judge, for each of the two conflicts, there was a period when he was unaware of the conflict.

In *Litovitch*, the Second Circuit held that recusal was necessary in circumstances that created a lesser appearance of impartiality than in this case.  Here, the recused judge held Defendant's stock during two periods when three dispositive motions were pending.  All three motions were decided, at least in part, in favor of Defendant.  The first motion was decided just one week after the stock was sold.  The second motion was briefed and decided while the judge held Peloton stock.  The third motion was filed and pending while the judge held the stock, which he sold five months later.  In *Litovich*, there was one period of holding a party's stock, and a single motion fully briefed and pending during that period, with a decision on the motion three months after divestment.  *See id*.  The Second Circuit in *Litovich* found a violation of § 455(a), concluding that, "[l]ooking at these facts fully from the perspective of an objective, disinterested observer, . . . it is reasonable to question the partiality of a judge presiding over a case in which his spouse holds an ownership interest in a party."  *Id*.  The same is true in this case.

Defendant argues that Plaintiffs waived any violation of § 455(a) by not moving for recusal within a reasonable time after either disclosure.  As a threshold matter, Plaintiffs declined to waive recusal when explicitly invited to do so.  Defendant's suggestion of an implied waiver is beside the point, as the recusal and reassignment process has already occurred.  The cases that

9

Defendant cites all concern situations where a recusal motion was made and was being analyzed

for procedural propriety. *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir.

1987) (holding recusal motion was untimely where intervenor knew of facts giving rise to

motion for months before moving); *In re Int'l Bus. Machs. Corp.*, 45 F.3d 641, 643 (2d Cir.

1995) (finding no undue delay in recusal motion filed years after facts became known where case

had been dormant in the intervening period); *United States v. Bayless*, 201 F.3d 116, 127 (2d Cir.

2000) (discussing the distinction between an untimely recusal motion, which does not preclude

appellate review of the issue, and implied waiver of recusal, which would preclude review).  In

contrast, recusal and reassignment have already occurred.  The question is not whether recusal is

required, but rather what is the proper remedy for the § 455 violation that led to recusal.

### D.  Vacatur

Vacatur of the prior rulings is the appropriate remedy in this case.  "[I]n determining how

best to address a violation of § 455(a)," courts consider three factors: "(i) the risk of injustice to

the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in

other cases, and (iii) the risk of undermining the public's confidence in the judicial process."

*Litovich*, 106 F.4th at 226-27.  "Although a judge must recuse when there is a disqualifying

conflict, the proper remedy varies when such a conflict is discovered after the judge's ruling."

*Id*.  If warranted by the circumstances, a court may grant vacatur of prior rulings in a case where

a judge has been disqualified.  *Litovich*, 106 F.4th at 226-27.  In the alternative, an unconflicted

court can review the conflicted rulings de novo.  *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th

163, 173-74 (2d Cir. 2022).

The first factor, risk of injustice to the parties in this case, favors vacatur.  There is no

indication that the conflicts had any influence on the recused judge's adjudication of this case,

nor is there any suggestion that the recused judge's rulings were based on anything other than his reasoned analysis and application of the law.  However, consistent with the focus of § 455(a) on avoiding the appearance of impropriety, and to avoid questions as to the impartiality of the rulings, this factor weighs in favor of vacatur.  *See Litovich*, 106 F.4th at 227.

The second factor, the risk of injustice in other cases, supports vacatur.  The risk presented by implementing a lesser remedy is that "judges will fail to recuse themselves in future cases, which . . . may increase the likelihood that conflicts go unnoticed and unremedied."  *Id.* at 227.  As in *Litovich*, adherence to the strictures of § 455 and vacatur of rulings that violate § 455(a) encourage compliance with the statute and reasonable diligence in avoiding cases that present a conflict.  *See id.*

Finally, the third factor, the risk of undermining public trust, also weighs in favor of vacatur.  This motion arose partially in response to *Litovich*, which addresses similar conflicts and explains the need to encourage public trust in the judiciary.  *Litovich*, 106 F.4th at 227-28 (discussing media coverage of recent § 455 violations and the need to minimize recurrent controversies that undermine public confidence in "the fair adjudication of the law").  Again, because the conflicts at issue here raise the appearance of impropriety, measures must be taken to maintain public trust and discourage similar issues in future cases.  Vacatur is therefore an appropriate remedy.

The rulings on the first three motions to dismiss, decided when the recused judge was in violation of § 455(a), are vacated.  Plaintiffs' amended pleadings, which followed each of these in an effort to accommodate the dismissal ruling, are stricken.  The ruling on the fourth motion to dismiss, addressed to the now-stricken TAC is vacated.  The ruling on the first motion for class certification is vacated because it relied, in part, on the now-vacated ruling dismissing

Pearlman's claims. The ruling on the second motion for class certification is vacated because it relied on the now-stricken TAC to assess the predominance of common issues. Discovery and other orders will be reviewed de novo as necessary. In light of the foregoing, the issue of supplemental jurisdiction, to the extent it ever was relevant, is moot. Similarly, Defendant's request to adjudicate its motion for summary judgment, presumably as to the claims in the TAC, is denied as moot.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **GRANTED**. The following orders are **VACATED**:

- the November 9, 2020, Opinion and Order granting in part and denying in part Defendant's motion to dismiss the Complaint (i.e., *Fishon I*) at Docket No. 65;

- the July 12, 2021, Opinion and Order granting Defendant's motion to dismiss the FAC (i.e., *Fishon II*) at Docket No. 102;

- the January 19, 2022, Opinion and Order granting Defendant's motion to dismiss the SAC and denying Plaintiffs' motion to certify a class (i.e. *Fishon III*) at Docket No. 168;

- the August 11, 2022, Opinion and Order denying in part and granting in part Defendant's motion to dismiss the TAC (i.e., *Fishon IV*) at Docket No. 207 and

- the May 2, 2023, Opinion and Order denying Plaintiffs' motion to certify a class at Docket No. 284.

The following pleadings are **STRICKEN**:

- the First Amended Complaint, filed January 21, 2021, at Docket No. 81,

- the Second Amended Complaint, filed July 26, 2021, at Docket No. 106 and

- the Third Amended Complaint, filed February 18, 2022, at Docket No. 195.

Plaintiffs' motion for oral argument is **DENIED** as moot.

By **May 16, 2025**, the parties shall file a joint letter proposing next steps in this action. To the extent the parties cannot agree, the letter shall state their respective positions.

A case management conference will be held on **May 20, 2025, at 3:30 pm**, in Courtroom 1106 at the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. Nos. 337 and 339.

Dated: May 2, 2025
   New York, New York

           LORNA G. SCHOFIELD
          UNITED STATES DISTRICT JUDGE