

DICELLO LEVITT

485 LEXINGTON AVENUE    SUITE 1001    NEW YORK, NEW YORK 10017

CHUCK DENDER
CDENDER@DICELLOLEVITT.COM
646.933.1000

June 25, 2026

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> **Re:** **Plaintiffs' Pre-Motion Letter Regarding Motion to Compel
> Discovery**: *Eric Passman, et al. v. Peloton Interactive, Inc.*, Case
> No. 19-cv-11711

Dear Judge Schofield:

Pursuant to the Court's February 18, 2026 Order (Dkt. 366), Plaintiffs respectfully request a pre-motion conference on a motion to compel Peloton to provide adequate responses to the Amended Third and Fourth Sets of Interrogatories ("Rogs") (attached as Exhibit ("Ex.") 1), Second Requests for Admission ("Second RFAs") (Ex. 2), and Fourth Requests for Production ("Fourth RFPs"). (Ex. 3). Peloton served boilerplate objections to Plaintiffs' Rogs on April 7, 2026 (Ex. 4), and a "supplement" on May 15, 2026 (Ex. 5), that did not cure Peloton's failure to substantively respond. Peloton also served inadequate Responses and Objections to Plaintiffs' Second RFAs (Ex. 6) and Fourth RFPs (Ex. 7) on April 7, 2026.

After meet-and-confers on April 16, May 1, and May 28, 2026, Peloton, on June 3, 2026, disclosed for the first time a third-party vendor ("Netlify") that may hold highly relevant marketing information—but maintained that, because Peloton no longer contracts with Netlify, the data is not within its "possession, custody, or control." Peloton produced five Netlify documents years ago, but those documents are largely in computer code, with

no intelligible explanation of Netlify's involvement in the "ever-growing library" marketing.

If a party has the legal right or practical ability to obtain documents from a third party, production may be compelled. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *Export-Import Bank v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341–42 (S.D.N.Y. 2005) (a "party controls documents that it has the right, authority, or ability to obtain upon demand," and must "ask [its] former [vendors] to cooperate before asserting that [it has] no control"). Peloton had that right during its contractual relationship with Netlify, but fails to explain what it did to preserve or obtain the data after. *See also Barkley v. Olympia Mortg. Co.*, No. 1:04-cv-00875, 2007 WL 656250, at *5 (E.D.N.Y. Feb. 27, 2007) (ordering a party to arrange for third-party advertising vendors to assist with a complete response). Peloton's failure to preserve those documents raises spoliation concerns.

A party objecting to discovery must do so with specificity. Fed. R. Civ. P. 33(b)(4). "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy . . . are a paradigm of discovery abuse." *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) (citation omitted). Peloton has failed to meet that burden.

Rogs 1–7 seek information about Peloton's "ever-growing" and "growing" class-library representations—representations central to Plaintiffs' claims. (Ex. 1 at 4). Peloton identifies only four URLs in the May 2016–April 2020 window (Ex. 5 at 7) and cites in support a disputed fact rather than evidence. *See* ECF No. 311 ¶ 11 (representations appeared on *at least* four webpages, including the four *examples* Peloton cites plus another describing the company and its story). Peloton then quotes a deposition for the proposition that it "did not 'maintain a database of *every* use of copy.'" (Ex. 5 at 7). That dodges what was asked—"the people . . . involved in creating the marketing or the public statements," whom Peloton names none of—and ignores whether something less than "every" use was tracked.

For Rogs 3 and 7, Peloton claims that after a "reasonable and diligent search" it could not locate visitor counts or reach metrics—but says nothing about whether it asked any third-party vendor (*e.g.*, Netlify) with the practical ability to provide the data. (Ex. 5 at 10,16). A "reasonable inquiry" includes "investigation and inquiry of any of [Peloton's] officers, administrators, agents, employees, [and] servants . . . who conceivably, but in realistic terms, may have information." *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43–44 (S.D.N.Y. 1997). And "control" includes the "right, authority, or practical ability to obtain the documents from a non-party." *Gordon Partners v. Blumenthal*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007). Peloton cannot satisfy its Rule 26(g) obligations by intoning "reasonable and diligent" without describing what it did.

Peloton's Rule 33(d) cross-references are facially deficient. In Supplemental Responses Nos. 2, 11, and 13, Peloton points to a handful of Bates numbers prefaced "see, e.g.," and asserts that the burden is "substantially the same for either party." (Ex. 5 at 8). But Rule 33(d) requires specification "in sufficient detail to enable the interrogating party to locate and identify [the records] as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). "See, e.g.," exemplars improperly shift to Plaintiffs the burden of guessing which other documents—out of the hundreds of thousands produced—contain the answer. The verification compounds the problem: it is on information and belief by an SVP who delegates her oath to "authorized employees and/or counsel." For the no-knowledge responses (Nos. 3, 7, 9, 11, 12), that is no substitute for a sworn description of the search. (Ex. 5 at 38).

Peloton's Local Rule 33.3 objection also fails. (Ex. 5 at 9-10). These interrogatories were served after the Court reopened discovery, near the close of fact discovery, and seek the kind of focused contention information the Rule authorizes.

Peloton's responses to the Second RFAs are evasive. RFAs 36–39 and 43 ask Peloton to admit it used "ever-growing" or "growing" on identified webpages and channels. (Ex. 2 at 3-4). Peloton admits only that "certain of its consumer-facing statements" used "those phrases . . . for a limited period of time"—never identifying which, where, or when. (Ex. 6 at 5). That non-admission is insufficient. Fed. R. Civ. P. 36(a)(4). RFAs 40–42 (traffic to Peloton's own webpages) draw a "can neither admit or deny" because the data is supposedly outside Peloton's control—even though they pertain to Peloton's own website. (Ex. 6 at 8-11). Rule 36 requires "reasonable inquiry" including inquiry with any vendor with the "practical ability to obtain" the data. *T. Rowe Price*, 174 F.R.D. at 43; *Gordon Partners*, 244 F.R.D. at 195. Peloton has not said it made that inquiry.

Peloton's responses to Plaintiffs' Fourth RFPs 59–61 are inadequate. For RFPs 59–60, Peloton purports that it did not locate responsive documents without describing the search (other than searching the word "reach"), the custodians, or any third-party inquiries (such as to Netlify, which Peloton refuses to approach). (Ex. 7 at 3-6). For RFP 61, Peloton points generally to documents produced for RFP 24 without identifying any by Bates number. Rule 33(d) was amended to prohibit such generic cross-referencing.

Thus, Plaintiffs seek an order directing Peloton, within 10 days, to: (1) provide complete, verified answers to Rogs 1–7, identifying each instance of the challenged statements by date, channel, and Bates number, and naming every Peloton or agency employee involved; (2) for Nos. 3, 7, and 9, provide a sworn declaration describing the search and inquiries undertaken; (3) for any Rule 33(d) reference, provide a complete Bates-range designation; (4) provide amended responses to RFAs 36–45 that fairly admit, deny, or specifically qualify after reasonable inquiry; and (5) provide amended responses to RFPs 59–61 identifying responsive documents with specificity and a search declaration. Plaintiffs also seek leave to subpoena Netlify, Inc.

Plaintiffs are available at the Court's convenience for a conference.

Respectfully Submitted,

/s/ Chuck Dender
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York
Telephone: (646) 933-1000
cdender@dicellolevitt.com

Adam J. Levitt
Adam Prom (pro hac vice)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
aprom@dicellolevitt.com

Benjamin J. Whiting
Alex J. Dravillas (pro hac vice)
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5222
ben.whiting@kellerpostman.com
ajd@kellerpostman.com

Aaron M. Zigler
**ZIGLER LAW GROUP, LLC**
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
Telephone: (312) 673-8427
aaron@ziglerlawgroup.com

*Counsel for Plaintiffs and the Proposed Class*