

**DICELLO LEVITT**

485 LEXINGTON AVENUE    SUITE 1001    NEW YORK, NEW YORK 10017

CHUCK DENDER
CDENDER@DICELLOLEVITT.COM
646.933.1000

June 25, 2026

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Judge
Danial Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007

> **Re:**    ***Eric Passman, et al. v. Peloton Interactive, Inc.***, **Case No. 19-cv-11711:**
> **Plaintiffs' Letter Regarding Peloton's Privilege Re-Review**

Dear Judge Schofield:

Pursuant to the Court's May 7, 2026 Order (Dkt. 384), Plaintiffs respectfully submit objections to Peloton's privilege re-review and redaction log that were not resolved through the meet and confer process. After Plaintiffs identified the re-review population, Peloton served a third supplemental privilege log and a redaction log and produced—out of 675 total documents—78 documents (70 with redactions and 8 in full). In other words, Peloton's re-review resulted in production of *over 11%* of withheld documents.

Plaintiffs then served their objections to the continued withheld population and certain redacted documents, and Peloton responded on June 23, 2026 by: (1) agreeing to produce another 36 documents, bringing the total re-review production to 114  documents (102 with redactions and 12 in full); and (2) standing on Peloton's assertions of privilege for all other documents. That brings the total re-review production to *nearly 17%*. That is in addition to the nearly 200 other documents that Peloton produced years ago when Plaintiffs first raised their privilege concerns, plus the documents Peloton has voluntarily produced due to the recent letter campaign before this Court and that this Court ordered peloton to produce (Dkt. 371).

Based on Peloton's objection responses, Plaintiffs have removed some of their challenges. Those that remain in dispute are detailed below.

Central to nearly all remaining privilege challenges is *one targeted issue*: whether Peloton's actions in response to its past alleged copyright infringement (and the *Downtown* dispute) that led to Peloton's purge of more than half of its class library were predominantly business-related or legal. Peloton's class library purge is at the heart of this case, so this issue matters greatly. And it turns out that Peloton continues to withhold a vast number of documents involving the effects of its copyright dispute, including the class purge and Peloton's messaging about that purge.

Business decisions are not protected, and when there is a mix of business and legal advice, the "predominant purpose" must be legal advice for privilege to apply. *See, e.g.*, *Durling v. Papa John's Int'l, Inc.*, No. 16CIV3592CSJCM, 2018 WL 557915, at *3-5 (S.D.N.Y. Jan. 24, 2018) (a "**stricter standard**" **applies to corporations and in-house counsel** because they often fulfill the dual role of legal and business advisor; whether a communication with legal and business advice is privileged depends on whether the "predominant purpose" is to render or solicit legal advice; business decisions are not protected simply because of legal considerations) (emphasis added). Courts apply privilege *narrowly and cautiously* when in-house lawyers wear two hats: one for business advice and the other for legal. *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996).

The inclusion of in-house attorneys on communications does not automatically cloak those communications with privilege. *See Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*, No. 13 CIV. 742 DLC, 2014 WL 1378127, at *2 (S.D.N.Y. Apr. 8, 2014) (business conclusions and assessments involving in-house counsel are not legal advice); *King v. Habib Bank Ltd.*, No. 20-CV-4322 (LGS) (OTW), 2025 WL 3215283, at *7 (S.D.N.Y. Nov. 18, 2025) (concluding communications from in-house counsel to a director and third-parties do not provide legal advice); *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, No. 03 Civ. 1818PKLJCF, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005) (e-mails from in-house counsel constituted business advice because counsel "collected facts just as any business executive would do" and did not engage in legal analysis); *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 323-25 (S.D.N.Y. 2020) (rejecting privilege assertions over communications involving business and legal officers including because the lack of clarity regarding whether advice is business or legal—including how to strategically communicate with a third party—cuts against the party asserting privilege).

For example, similar to the circumstances here where many withheld documents involve a high-ranking company executive who is also an attorney (Hisao Kushi) and copyright issues, in *TVT Recs. v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 145–46 (S.D.N.Y. 2003) the court found blanket privilege assertions for executives to be overly broad merely because they were also in-house attorneys, and the court ordered production of many documents because they involved business matters rather than legal advice. In particular, the court found some documents to not be privileged because they addressed

*the effect* of copyright clearances which was a business matter, and not legal issues surrounding the requisite clearances. *Id*. Also analogous is *In re OpenAI, Inc., Copyright Infringement Litig.*, 802 F. Supp. 3d 688, 696-98 (S.D.N.Y. 2025), where the court ordered production of certain communications having a business nature, despite involving in-house counsel. The court specifically ordered communications be produced regarding deleting "Library Genesis" despite being on a supposedly "privileged Slack [messaging] channel" because the communications did not clearly reflect on their face that they were for the predominant purpose of legal advice. *Id*.

Those cases are analogous to the facts here regarding **the effects** of the *Downtown* copyright lawsuit against Peloton. Peloton's business decisions in response to that lawsuit include purging/deleting over half of its class library, instructions given to employees (including class instructors) due to the purge, and how Peloton would message the purge internally and externally including with Peloton customers. In other words, such actions constitute business implementation and impacts from a legal matter. Plus, they are business matters directly at the heart of this case that Peloton has overbroadly blanketed with privilege assertions. Peloton fails its burden to show that the predominant purpose of such communications was to render legal advice.

## Plaintiffs' Challenges

Plaintiffs' challenges are organized by the subject matter of the documents (most of which are communications), as specified in the table below. If this Court conducts an *in camera* review, Plaintiffs respectfully suggest that Peloton should provide the email threads each as a continuous conversation (in date and time order) so that any review is convenient and efficient for the Court.

| Document(s) (log-entries) | # of Entries | Bases for Challenge |
|---|---|---|
| 1-305; 309; 314; 320; 323; 325 | 6 | Removing classes from the library and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| 2-741; 746 | 2 | "Library Purge Meeting" subject matter, removing classes from the library, and messaging regarding the class library are business-related. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| 1-331; 334-335; 338; 2-760–765; 1-343; 2-768; 2-1715 | 13 | Removing classes from the library and messaging regarding the class library are business-related. Multiple documents sent to group emails for Peloton's class instructors and "control room". |
| 1-368; 1-357 | 2 | "Classes for takedown" subject matter, removing classes from the class library, and messaging regarding the class library are business-related. "Requesting or |

| | | |
|---|---|---|
| | | providing information" can be dual business and purported legal purposes. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| 2-815–816; 821; 824; 827; 828; 830; 849; 857; 903–904 | 11 | "Purge Report & Consequences" subject matter, removing classes from the class library, and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 1-676–691; 693; 950–952; 968–970; 974–975 | 25 | Multiple documents from the same day and same subject matter produced with redactions (e.g. PELFISH0317533). Multiple draft emails. "Messaging" about the class library is business-related. "Requesting or providing information" can be dual business and purported legal purposes.<br><br>Although the Court previously reviewed *in camera* some communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| 1-1006; 2-1479; 2-1546–1547; 1559 | 5 | Multiple documents from the prior day and the same subject matter "# classes on demand claims" produced with redactions (e.g. PELFISH0317321). Removing classes from the library and its impact on marketing is business-related.<br><br>Although the Court previously reviewed *in camera* some communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| 2-1493–1496; 1515; 1519; 1521–1523; 1525; 1528–1529; 1534; 1537–1538; 1542; 1-1016; 2-1550–1551; 1572; 1575; 1-1070, 2-1605–1606 | 21 | Documents with same subject matter produced (e.g. PELFISH0317549; PELFISH0136426; PELFISH0014712). "Customer feedback" and "messaging" about the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes.<br><br>Peloton agreed to produce 3 of these documents in full and the remainder redacted. Plaintiffs challenge those 21 redacted documents. |
| 2-887; 2-932; 2-935–936; 2-942; 1-1074; 2-1720 | 7 | Documents with same subject matter produced (e.g. PELFISH0134558). "Purge Update" subject matter, removing classes from the library, and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |

|  |  | Peloton agreed to produce all these documents with redactions. Plaintiffs challenge those redactions. |
|---|---|---|
| 1-373 | 1 | Removing classes from the library is business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 1-518; 2-1084; 2-1086-1087; 1091; 1093; 1-549 | 7 | "Classes for Removal" subject matter, removing classes from the library, and messaging regarding the class library are business-related. |
| 2-1102 | 1 | "Question from Rider" subject matter, removing class from the library, and customer feedback are business-related.<br><br>Peloton agreed to produce this documents with redactions. Plaintiffs challenge those redactions. |
| 1-569; 1-592; 1-984; 2-1498; 1-1012-1013; 1-1018–1051; 2-1543; 2-1556 | 42 | "Reactive messaging re: Music Rights" subject matter and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. Some documents sent to non-legal group email addresses regarding reactive messaging, team leads, and business. |
| 1-624-625; 2-1232-1233; 1-657-658; 2-1242–1244; 2-1484-1485 | 11 | "New 'Do Not Play' Songs" subject matter, removing classes from the library, and messaging regarding the class library are business-related. |
| 1-1052–1069; 2-1555; 1557 | 20 | "Instructor Engagement" and "Reactive messaging re: Music Rights" subject matter, removing classes from the library, and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 1-627–652; 654–656 | 29 | Messaging regarding the class library and marketing activity are business-related. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| 2-1230-1231; 1240-1241 | 4 | "Path forward re: social" subject matter, removing classes from the library, and messaging regarding the class library are business-related. |
| 1-660 | 1 | Email sent to non-legal group email address for communications.<br><br>Peloton agreed to produce this documents with redactions. Plaintiffs challenge those redactions. |
| 2-1245; 2-1248–1265 | 19 | Removing classes from the library is business-related. "Requesting or providing information" can be dual business and purported legal purposes. |



| | | |
|---|---|---|
| 2-1266–1274; 1279–1475; 1477; 2-1524; 1527; 1533; 1535-1536; 2-1597-1598; 1601-1602; 1608, 1610; 1614–1619; 1624; 1627-1628; 1634; 1640-1641 | 230 | "Class ID List" subject matter and removing classes from the library are business-related. "Requesting or providing information" can be dual business and purported legal purposes.<br><br>Although the Court previously reviewed *in camera* some communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| 1-991-1000; 1003-1004 | 12 | "email to Members this afternoon" subject matter and messaging regarding class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 2-1504 | 1 | "immediate takedown classes" subject matter and messaging regarding the class library are business-related. |
| 2-1505 | 1 | Messaging regarding the class library is business-related. Sent from one instructor to a group email address for instructors. |
| 2-1564-1565 | 2 | Removing classes from the library and messaging regarding the class library are business-related. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| 2-1658; 1670; 1675; 1683; 1699 | 5 | "A few On-Demand Classes to Pull" and songs lists subject matters and removing classes from the library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 2-1742; 1745 | 2 | "marketing our content" subject matter, removing classes from the library, and messaging regarding the class library are business-related. "Requesting or providing information" can be dual business and purported legal purposes.<br><br>Peloton agreed to produce these documents with redactions. Plaintiffs challenge those redactions. |
| 2-1759; 1765 | 2 | "Updated playlist workout stream counts" subject matter and removing classes from the library are business-related. "Requesting or providing information" can be dual business and purported legal purposes. |
| 2-1770 | 1 | "Updated Class Content Language" subject matter and messaging regarding the class library are business-related. |
| PELFISH0317322 PELFISH0317324 | 7 | "Reactive Messaging" subject matter and describing content on the class library are business-related. |

| | | |
|---|---|---|
| PELFISH0317326<br>PELFISH0317329<br>PELFISH0317611<br>PELFISH0317615<br>PELFISH0317617 | | |
| PELFISH0317332<br>PELFISH0317344<br>PELFISH0317353 | 3 | "Class ID List" subject matter is business-related. Emails involving Peloton's head of music are redacted.<br><br>Although the Court previously reviewed *in camera* similar communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| PELFISH0317387<br>PELFISH0317390<br>PELFISH0317392 | 3 | "Question from Rider" subject matter is business-related. Redactions include communications from non-attorneys. |
| PELFISH0317397<br>PELFISH0317412<br>PELFISH0317421<br>PELFISH0317431<br>PELFISH0317441<br>PELFISH0317450<br>PELFISH0317463<br>PELFISH0317471<br>PELFISH0317483<br>PELFISH0317505<br>PELFISH0317516<br>PELFISH0317582<br>PELFISH0317595<br>PELFISH0317625<br>PELFISH0317631<br>PELFISH0317640<br>PELFISH0317668 | 17 | "Library Purge Update: APPROVED" subject matter is business-related. Hisao Kushi was Peloton's co-founder and Chief Legal Officer. |
| PELFISH0317321<br>PELFISH0317403<br>PELFISH0317404<br>PELFISH0317406<br>PELFISH0317408<br>PELFISH0317411<br>PELFISH0317659<br>PELFISH0317682<br>PELFISH0317684<br>PELFISH0317687<br>PELFISH0317691 | 11 | "# classes on demand claims" subject matter is business-related.<br><br>Although the Court previously reviewed *in camera* similar communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| PELFISH0317533<br>PELFISH0317537 | 7 | "Proactive and Reactive Messaging re: Music" subject matter is business-related. |

| | | |
|---|---|---|
| PELFISH0317541<br>PELFISH0317545<br>PELFISH0317574<br>PELFISH0317578<br>PELFISH0317660 | | Although the Court previously reviewed *in camera* some communications from this set, Plaintiffs do not believe Peloton has met its burden to show all such documents predominantly involve legal advice. |
| PELFISH0317563 | 1 | "Purge Update – Content Document" subject matter is business-related. |

\*\*\*

Plaintiffs have now successfully challenged well over 300 documents that Peloton previously withheld as privileged. The fact that Peloton's privilege re-review generated a production of nearly 17% (albeit with most documents still redacted) of the 675-document re-review population demonstrates that Peloton's privilege assertions have always been overbroad and problematic.

The breadth of the foregoing remaining challenges is targeted to the core issues in this case, and Plaintiffs respectfully request that the Court order their production in full. Should the Court agree with Plaintiffs that Peloton is improperly withholding a substantial number of business-related documents that are not for the predominant purpose of providing legal advice, then Plaintiffs request that the court order Peloton to conduct further re-review of its logs consistent with its opinion. In such circumstances, Plaintiffs also respectfully request that the Court order Peloton to conduct, at a minimum, a further re-review of up to 200 documents of Plaintiffs' choosing from the previously agreed time period (September 1, 2018 through June 30, 2019). Dkt. 383.

Respectfully submitted,

*/s/ Chuck Dender*

Chuck Dender
cdender@dicellolevitt.com
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York  10017
Telephone: (646) 933-1000

Adam J. Levitt
Adam Prom (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900

alevitt@dicellolevitt.com
aprom@dicellolevitt.com

Benjamin J. Whiting
Alex J. Dravillas (*pro hac vice*)
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100
Chicago, Illinois  60606
Telephone: (312) 741-5222
ben.whiting@kellerpostman.com
ajd@kellerpostman.com

Aaron M. Zigler
**ZIGLER LAW GROUP, LLC**
308 South Jefferson Street, Suite 333
Chicago, Illinois  60661
Telephone: (312) 673-8427
aaron@ziglerlawgroup.com

***Counsel for Plaintiffs
and the Proposed Class***