

DICELLO LEVITT

485 LEXINGTON AVENUE    SUITE 1001    NEW YORK, NEW YORK 10017

CHUCK DENDER
CDENDER@DICELLOLEVITT.COM
646.933.1000

July 10, 2026

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Judge
Danial Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007

> **Re:**    ***Eric Passman, et al. v. Peloton Interactive, Inc.*, Case No. 19-cv-11711:**
> **Plaintiffs' Letter Regarding Peloton's Privilege Re-Review**

Dear Judge Schofield:

Pursuant to the Court's July 6, 2026 Order (Dkt. 391), Plaintiffs respectfully submit ten representative challenges to Peloton's privilege re-review (from the group of challenges submitted at Dkt. 387).

As Plaintiffs explained in their prior letter (Dkt. 387), central to the ten representative challenges herein is one targeted issue: whether Peloton's actions in response to its past alleged copyright infringement (and the *Downtown* dispute) that led to Peloton's purge/deletion of more than half of its class library were business-related or predominantly legal.

In order for Peloton's privilege assertions to be proper, the "predominant purpose" must be legal advice; conversely, business advice and the business effects of legal considerations are not protected. *TVT Recs. v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 145-46 (S.D.N.Y. 2003) (finding some documents to not be privileged because they addressed **the effect** of copyright clearances which was a business matter, and not legal issues surrounding the requisite clearances); *In re OpenAI, Inc., Copyright Infringement Litig.*, 802 F. Supp. 3d 688, 696-98 (S.D.N.Y. 2025) (ordering communications be

produced regarding deleting "Library Genesis" despite being on a supposedly "privileged Slack [messaging] channel" because the communications did not clearly reflect on their face that they were for the predominant purpose of legal advice).

Peloton contends that the hundreds of documents it is withholding regarding its class library purge all were part of Peloton's litigation strategy for Peloton's *Downtown* dispute. That cannot be. For example, some of the withheld communications—including a challenge below—involve Peloton's class instructors. It's hard to fathom that litigation strategy was communicated to the Peloton employees who were teaching cycle classes. And other communications involved how Peloton was communicating internally and externally—including with its members—about the purge. Peloton would have this Court believe that such communications, including with third parties, relates only to litigation strategy rather than the *business effects* resulting from the *Downtown* dispute. Actions taken within Peloton's business (*e.g.* removing classes and communicating about those removals) are the effects from the *Downtown* dispute, not predominantly legal advice for the dispute itself.

It is not surprising that Peloton has pursued a broad privilege strategy, because the decision to purge over 50% of the class library and Peloton's communications, including externally, regarding the purge are central to this case. But Peloton runs afoul of the "stricter standard" that applies to corporations and in-house counsel who fulfill dual business and legal advisor roles, under which courts apply attorney-client privilege narrowly and cautiously. *Durling v. Papa John's Int'l, Inc.*, No. 16CIV3592CSJCM, 2018 WL 557915, at *3-5 (S.D.N.Y. Jan. 24, 2018); *ABB Kent-Taylor, Inc. v. Stallings & Co.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996). Moreover, a lack of clarity regarding whether advice is business-related or predominantly legal cuts against the party asserting privilege: Peloton. *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 323-25 (S.D.N.Y. 2020) (rejecting privilege assertions over communications involving business and legal officers, including how to strategically communicate with a third party which could have been driven by business or negotiating considerations).

**<u>Challenges to Ten Representative Entries</u>**

1.  <u>Log # 746</u>: Communication with "Library Purge Meeting" subject matter, removing classes from the library, and messaging regarding the class library are business-related, not predominantly legal advice. Involves non-attorney Peloton employees who worked with Peloton's class content, music, and membership experience.

2.  <u>Log # 764</u>: Email with "Songs not to program" subject matter, removing classes from the library and messaging regarding the class library are business-related, not predominantly legal advice. Involves many employees including those who worked with Peloton's class content, music, production, membership experience, and community relations, including *group* email addresses for Peloton's class instructors and "control room".

3. <u>Log # 368</u>: Email with "Classes for takedown" subject matter, removing classes from the class library, and messaging regarding the class library are business-related, not predominantly legal advice. Involves Peloton's music officer and employees who worked with Peloton's membership experience and community relations. Two in-house attorneys cc'd, one of whom was Peloton's co-founder.

4. <u>Log # 857</u>: Email with "Purge Report & Consequences" subject matter, removing classes from the class library, and messaging regarding the class library are business-related, not predominantly legal advice. Involving Peloton employees who worked with Peloton's class content, music, membership experience, and community relations.

5. <u>Log # 1091</u>: Communication with "Classes for Removal" subject matter, removing classes from the library, and messaging regarding the class library are business-related, not predominantly legal advice. Involving many Peloton employees, including music and content officers and those who worked with Peloton's class content, membership experience, music strategy, and production.

6. <u>Log # 984</u>: Email with "Reactive messaging re: Music Rights" subject matter and messaging regarding the class library are business-related, not predominantly legal advice. From Peloton employee who worked in membership experience to non-legal group email addresses for the business team, reactive messaging, and team leads. Also cc'd employees working with music and communications.

7. <u>Log # 1233</u>: Communication with "New 'Do Not Play' Songs" subject matter and removing classes from the library are business-related, not predominantly legal advice. From music supervisor and includes Peloton's music officer and employees who worked with Peloton's class content and music.

8. <u>Log # 656</u>: Messaging regarding the class library and marketing activity are business-related, not predominantly legal advice. Involving Peloton's music officer and employees who worked with Peloton's membership experience and communications, with a cc to an in-house attorney.

9. <u>Log # 1000</u>: Email with "email to Members this afternoon" subject matter and messaging regarding class library are business-related, not predominantly legal advice. Involves communicating with third-parties. Involves multiple Peloton executives, including its CEO, president, music officer, and employees with worked with Peloton's membership experience, communications, and community relations.

10.     <u>Log # 1241</u>: Email with "Path forward re: social" subject matter and messaging regarding the class library are business-related, not predominantly legal advice. From Peloton's president to employee who worked with Peloton's membership experience and also involving Peloton's music officer and employees who worked in communications and community relations, with in-house attorneys cc'd.

Based on the foregoing representative challenges, if the Court agrees with Plaintiffs that Peloton is improperly withholding business-related documents that are not for the predominant purpose of providing legal advice, then Plaintiffs request that the Court order Peloton to produce from Plaintiffs' challenges (Dkt. 387) similar withheld and/or redacted documents that involve the business effects of Peloton's *Downtown* dispute. Plaintiffs also request that the Court order Peloton to conduct further re-review of up to 200 documents of Plaintiffs' choosing from the previously agreed time period (September 1, 2018 through June 30, 2019). Dkt. 383. Such orders are appropriate because Plaintiffs have thus far successfully challenged well over 300 documents that Peloton previously withheld as privileged, including the fact that Peloton's recent privilege re-review so far generated a production of nearly 17%.

Respectfully submitted,

*/s/ Charles Dender*

Charles Dender
cdender@dicellolevitt.com
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, New York  10017
Telephone: (646) 933-1000

Adam J. Levitt
Adam Prom (*pro hac vice*)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
aprom@dicellolevitt.com

Benjamin J. Whiting
Alex J. Dravillas (*pro hac vice*)
**KELLER POSTMAN LLC**
150 North Riverside Plaza, Suite 4100

Chicago, Illinois  60606
Telephone: (312) 741-5222
ben.whiting@kellerpostman.com
ajd@kellerpostman.com

Aaron M. Zigler
**ZIGLER LAW GROUP, LLC**
308 South Jefferson Street, Suite 333
Chicago, Illinois  60661
Telephone: (312) 673-8427
aaron@ziglerlawgroup.com

*Counsel for Plaintiffs*
*and the Proposed Class*