**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Andrew Soukup

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5066
asoukup@cov.com

**By CM/ECF**

July 17, 2026

The Honorable Lorna G. Schofield
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

> Re:    *Passman v. Peloton Interactive, Inc.*, No. 19-cv-11711 (S.D.N.Y.)
>        **Peloton's Response to Plaintiffs' Letter Regarding Peloton's Privilege Re-Review**

Dear Judge Schofield:

Pursuant to the Court's July 6, 2026 order (ECF No. 391), Peloton respectfully submits this response to Plaintiffs' July 10 letter (ECF No. 393).  Peloton respectfully requests that the Court deny Plaintiffs' objections and request for further re-reviews.

**I.    Peloton Withheld Privileged Documents Containing Legal Advice.**

As explained in its July 2 letter, Peloton spent hundreds of hours completing a careful re-review of documents previously withheld as privileged.  In addition to diligently re-assessing the 675 documents that Plaintiffs hand-selected, Peloton reviewed many others to reconstruct factual records and accurately assess privilege claims.  This time-consuming and costly undertaking demonstrated there were no systemic issues with Peloton's prior privilege claims, and certainly did not support Plaintiffs' baseless assertion that 80% of the documents on Peloton's revised log were not privileged.

Peloton's limited post-re-review production overwhelmingly consisted of content Plaintiffs previously received.  And Plaintiffs exaggerate the "hundreds" of documents Peloton withheld. Over half (268) of the 451 withheld documents Plaintiffs raised in their June 25 letter are iterative drafts of just 13 emails.

Plaintiffs now challenge ten documents containing privileged communications closely tracking content this Court determined was properly withheld following two *in camera* reviews. All concern Peloton's legal strategy of removing classes to minimize current and future litigation exposure in connection with ongoing copyright disputes. *See La Liberte v. Reid*, 2024 WL 22781,

**COVINGTON**

July 17, 2026
Page 2

at *3 (E.D.N.Y. 2024) (communications providing advice regarding events "giving rise" to litigation, "including a response to plaintiff's threat," properly withheld).

Plaintiffs' speculation that these documents had a predominantly business rather than legal purpose is baseless.  The challenged documents themselves establish that these removals supported litigation strategy.  For example, No. 1233 reflects in-house counsel providing legal instructions regarding the *Downtown* lawsuit "filed yesterday."  And other documents link communications about removals to settlement negotiations.

Plaintiffs' attempt to recast Peloton's legal strategy as business strategy fails.  Recycling cases from their June 25 letter, Plaintiffs still fail to acknowledge those cases "did not involve litigation strategy."  ECF No. 390 at 2.  Additionally, Peloton's use of "listservs to convey information to a group" of relevant employees who acted upon legal advice does not vitiate privilege. *Blue Cross & Blue Shield of Vt. v. Teva Pharm. Indus. Ltd.*, 2026 WL 1990758, at *4–5 (D. Vt. 2026).  For example, No. 764 reflects in-house counsel advising instructors—the employees responsible for selecting class music—to avoid certain music *due to copyright litigation risk*.  That is not a "business" decision—it is a legal one recommended by Peloton's counsel.

Plaintiffs' suggestion that some communications here involve "third parties" is false.  All challenged communications occurred among Peloton's employees and lawyers.  It is also immaterial that some documents include "drafts of communications" eventually "sent to other persons."  *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984); *see Softview Comput. Prods. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *15 (S.D.N.Y. 2000) (properly withheld communications regarding "timing and content" of "press release" and "ongoing litigation").  The draft communications themselves are privileged where they reflect or request attorney advice and input, and the final emails are assessed separately.

Finally, there is no "lack of clarity" regarding the purpose of Peloton's communications.  In *In re Aenergy, S.A.*, the court concluded there was "nothing" suggesting communications regarding a business transaction provided "legal" rather than "business or negotiating" advice.  451 F. Supp. 3d 319, 325 (S.D.N.Y. 2020).  Here, these communications relate on their face to anticipated and pending litigation.  *See In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002) (communications sent "simultaneously" to "counsel" and "non-legal personnel" were privileged).

## II.     Peloton Properly Withheld These Documents.

Peloton properly withheld all challenged documents, which contain communications similar to those the Court reviewed *in camera* and did not order Peloton to produce.  For example, Nos. 764, 368, 857, 1091, 1233 reflect attorneys facilitating class removals—like the attorney-involved communications in No. 1638 that Peloton redacted.  ECF Nos. 370, 371.  No. 1000 contains attorney-involved communications regarding the same draft statement discussed in Nos. 704, 782, 875, which Peloton redacted.  ECF No. 374.

**COVINGTON**

July 17, 2026
Page 3

- **No. 746** discusses a privileged meeting with Peloton's in-house counsel regarding actions taken "last week" regarding *Downtown*.  The beginning email—directed to in-house counsel Caitlin Johnston and another employee—requests legal advice.  The remaining emails discuss further preparations.  All emails also include general counsel Hisao Kushi.

- **No. 764** contains two emails from Johnston providing legal instructions/advice regarding actions employees could not take due to "a music licensing issue" (*Downtown*).  The third email adds additional relevant employees.  All emails also include Kushi.  Other documents confirm these communications concern a *Downtown* cease-and-desist letter.

- **No. 368** begins with Johnston requesting information to facilitate legal instructions/advice in connection with the "DMP" (Downton Music Publishing) dispute.  The second email attaches a file with information Johnston requested.  The third email references a related "conversation" and implements Johnston's instructions/advice.  All emails also include Kushi.  Other documents confirm Johnston's instructions/advice concern *Downtown* settlement negotiations.

- **No. 857** begins with an email providing information in connection with a request for advice directed to Johnston and others.  Johnston responds by providing legal instructions/advice regarding *Downtown* and attaching the file from No. 368 with classes impacted by settlement negotiations.  The remaining emails request/provide additional information to implement Johnston's instructions/advice.

- **No. 1091** begins with in-house counsel Alx Bear providing legal instructions/advice regarding "a music licensing issue."  The remaining two emails discuss/implement Bear's instructions/advice.  All emails also include Johnston.  Other documents confirm these communications concern settlement negotiations.

- **No. 984** contains two emails directed to Peloton employees with privileged instructions regarding what they can say on Peloton's behalf regarding *Downtown*.  *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 2016 WL 4154274, at *3 (S.D.N.Y. July 22, 2016) (noting privilege protects communications among non-lawyers responsible for "obtaining or acting upon" advice).  Both emails are marked privileged and include in-house lawyers.  The first reflects "standard" legal policies.  The second reflects content "blessed by Legal."

- **No. 1233** begins with Johnston providing legal instructions/advice regarding the *Downtown* lawsuit "filed yesterday."  The remaining three emails discuss/implement Johnston's instructions/advice.  All emails also include Kushi and Bear.

- **No. 656** begins with an email directed to Johnston and two Peloton employees summarizing privileged conversations involving in-house and outside counsel and their advice regarding anticipated actions "related to this complaint" (*Downtown*).  The

**COVINGTON**

July 17, 2026
Page 4

remaining two emails discuss the summary, including a privileged conversation with Kushi.

- **No. 1000** contains three emails discussing CEO Foley's March 25 statement regarding class removals following the *Downtown* lawsuit. All emails include Kushi, Johnston, and Bear. Later emails include outside counsel and reflect further edits from Johnston and others.

- **No. 1241** reflects the final privileged summary from No. 656 provided to Peloton executive William Lynch. Lynch's response mentions "legal pitfalls in forthcoming litigation" (*Downtown*). Both emails include Johnston, Kushi, and Bear.

Peloton submits each challenged document for *in camera* review.

**\*\*\***

Peloton properly withheld these documents. Moreover, Plaintiffs still have not explained how any challenged information is at all relevant or material "at this late stage" of the litigation, ECF No. 373 at 1, besides a vague, unsupported assertion that these communications are "central to this case," ECF No. 393 at 2. Their wasteful fishing expedition should end, and their request for further re-reviews should be denied.

Respectfully Submitted,

/s/ *Andrew Soukup*
Andrew Soukup
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
Email: asoukup@cov.com

*Counsel for Defendant Peloton
Interactive, Inc.*