

Aaron Zigler
aaron@ziglerlawgroup.com
308 S. Jefferson St., Suite 333
Chicago, IL 60661
P: 312.673.8427

WWW.ZIGLERLAWGROUP.COM

July 20, 2026

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:**   *Eric Passman, et al. v. Peloton Interactive, Inc.*, Case No. 19-cv-11711:
Joint Letter Regarding Plaintiffs' Pre-Motion Discovery Letter

Dear Judge Schofield:

Pursuant to the Court's July 7, 2026 Memo Endorsement (Dkt. 392) requiring a joint letter on the discovery issues raised in the parties' pre-motion conference letter submissions (Dkt. 386 and 389), the parties state the following:

### I.      **Plaintiffs' Position**
**Parties' dispute over efforts required to respond to latest discovery**:

As a threshold matter – one which applies to every single discovery request in dispute – Plaintiffs object to Peloton's very limited efforts to obtain the requested information.  During the meet and confer, Peloton's counsel confirmed that, for the most part, Peloton's responses were obtained by searching the database of documents collected in the initial discovery period of the case and that Peloton did not go back to its company document repositories and run search terms to obtain information responsive to Plaintiffs' requests.  When asked what search terms were used to collect the documents during the initial discovery period, Peloton's counsel had no idea, but offered to inquire.  Plaintiffs should not be limited to a universe of documents already collected with unknown search terms, particularly given the specificity of these new requests.  Nor would Peloton's counsel have any reason to believe that the information sought by Plaintiffs now would be found in that prior collection of documents given that Peloton should have already produced all relevant non-privileged documents from that earlier collection. Plus, in 2021, Peloton had to largely re-do its entire document production due to its own problems, so merely searching within Peloton's prior document collection is inadequate. Peloton's limited effort now explains a lot about Peloton's current responses in which it either refers only to records already produced or claims that it is unable to locate any responsive documents or information at all.

**Parties' dispute over Peloton's obligation to collect and preserve third-party data**:

 

After meet-and-confers on April 16, May 1, and May 28, 2026, Peloton, on June 3, 2026, disclosed for the first time that a third-party vendor ("Netlify") may hold highly relevant marketing information—but maintained that, because Peloton no longer contracts with Netlify, the data is not within its "possession, custody, or control." Peloton produced five Netlify documents years ago, but those documents are largely in computer code, with no intelligible explanation of Netlify's involvement in the "ever-growing library" marketing.  Peloton now explains that Netlify was the sole source of website traffic information.   During the meet and confer on July 15, 2026, Peloton's counsel advised that it does not know (but will consider inquiring) whether Peloton ever contacted Netlify to obtain the requested data, data which is central to Plaintiffs' case.  Peloton claims the website traffic data was never requested in previous discovery and that it is too late to be requesting this from a third-party with which Peloton previously contracted but does not currently. At a minimum, Peloton should inquire with Netlify whether it possesses any relevant information. The website traffic information is relevant to Peloton's *very own* argument that consumers were insufficiently exposed to the representations at issue, including on Peloton's website. And Netlify publicly represents that it offers website analytics services, including visitor activity. *See* https://web.archive.org/web/20191122133609/https://docs.netlify.com/monitor-sites/analytics/ (2019).

If a joint request of Netlify by the parties' counsel does not convince Netlify to produce the requested information, then Plaintiffs request permission to subpoena those records (with a records custodian deposition).

**Parties' dispute over Peloton's interrogatory responses**:

When asked in Rog 1 to provide the time, place, and manner of any marketing or other public statements where Peloton characterized its on-demand Class Library as ever-growing or growing (including the people involved), Peloton refers to this line from a deposition: Peloton did not "maintain a database of every use of copy" and provided no names of people involved.  If Peloton is required to search Peloton's document repositories and not simply search already collected/produced documents, there is likely to be something less than "every use of copy" and it should be produced.  Peloton claims to have used search terms, but those search terms were run only on the set of documents it previously collected in this case and not the Peloton's broader document repositories. As with any ESI, the parties should agree on the search terms and custodians to be used through an iterative process based on the number of hits, not on a unilateral selection of restrictive terms with no custodians other than those initially selected by Defendant.

Similarly, for Rogs 3 and 7, Peloton claims that after a "reasonable and diligent search" it could not locate visitor counts or reach metrics—but says nothing about whether it asked any third-party vendor (*e.g.*, Netlify) with the practical ability to provide the data. And it is now clear after the meet and confer that there was no effort whatsoever to search anything but the court record and previously collected documents – to which it refers by bates number a handful of times. Peloton also claims no knowledge in its responses to Rogs 9, 11 and 12 (with 13 only referencing previous

bates numbers).  Again, given a proper search with agreed search terms and custodians, that is likely to change.

**Parties' dispute over Peloton's responses to Requests for Admissions**:

Requests Nos. 40–42, which concern traffic to the relevant Peloton webpages, draw a "can neither admit or deny" because the information is supposedly outside Peloton's "possession, custody, or control," even though the Requests pertain to Peloton's *own website*. Once again, given an appropriate search of Peloton's document repositories and an inquiry of the relevant custodians, Peloton is likely to have "possession" of such information.

**Parties' dispute over Peloton's responses to Requests for Production**:

For RFPs 59–60, Peloton claims a "reasonable and diligent search" did not locate any responsive documents—without describing the search, the custodians, or any third-party inquiries for website-traffic data. For No. 61, Peloton points generally to documents produced in response to Request No. 24 (years ago) without identifying any by Bates number. Again, given a proper search with agreed search terms and custodians, that is likely to change.

\*\*\*

Plaintiffs accordingly seek an order directing Peloton to: (1) Run agreed search terms across agreed custodian documents with an agreed maximum number of hits and provide complete, verified answers to all Interrogatories and responses to RFPs and RFAs based on the new information, including identifying each instance of the challenged "growing" and "ever-growing library" statements by date, channel, and Bates number, and name every Peloton or agency employee involved in drafting or approving them; and (2) Make a joint request of Netlify with Plaintiffs' counsel to seek all responsive data in its possession, custody or control.

## II.    Peloton's Position

Peloton respectfully opposes Plaintiffs' requests, which are disproportionate to this late stage of the proceeding and largely duplicative of previous discovery.  Plaintiffs are asking the Court to compel responses to discovery requests seeking information not within Peloton's control and interrogatories that contravene Local Rule 33.3.  Plaintiffs also impermissibly seek to convert the Court's limited reopening of discovery for information not previously sought into an open-ended do-over of the discovery process.  Indeed, Plaintiffs' requests seek information that Plaintiffs could have (and largely did) pursue years ago.  Their bid to re-do this discovery years later is unduly burdensome and prejudicial to Peloton, and should be denied.

Plaintiffs' purported complaint that Peloton undertook "limited efforts mischaracterizes those efforts, and ignores the significant responses Peloton provided after the Court permitted Plaintiffs to serve limited "additional written fact discovery" in February.  ECF No. 366.  Peloton

answered numerous ROGs Plaintiffs take no issue with, responded to RFAs, and produced additional documents following its privilege re-review. Although Peloton maintains that much of this discovery is duplicative of prior discovery and disproportionate to the needs of this seven-year-old case, Peloton undertook extensive efforts and provided further written responses in a good-faith effort to move this matter toward resolution.

Finally, Plaintiffs' requests will not change the course of this case before dispositive briefing. When Peloton filed its summary judgment motion in December 2023, Plaintiffs did not argue they needed any additional discovery to respond. *See* ECF No. 307. The Court should deny Plaintiffs' requests on this basis alone. Peloton is prepared to file its renewed dispositive motion; if Plaintiffs believe further discovery that they reasonably could not have pursued years ago is necessary, then they can argue for it in their opposition under Rule 56(d).

### a.     Peloton's Searches

In February, Plaintiffs requested, and the Court reopened, only "limited" discovery. *See* ECF Nos. 359, 364. The Court ordered that Plaintiffs would serve this discovery by March 10, Peloton would respond by April 7, and summary judgment briefing would begin on May 5. ECF No. 366. Five months later, Plaintiffs now demand that Peloton re-do its document collection from scratch—including recollecting documents from company "repositories"—without identifying any deficiencies in the existing document universe, which was the product of extensive negotiations in 2021 during which Plaintiffs expressly agreed to 25 custodians and search terms. Based on this agreement, Peloton collected over 750,000 documents, which Peloton diligently reviewed to provide its responses. Because Plaintiffs' current requests relate to the same subjects as prior requests—Peloton's use of "ever-growing" and "growing" to describe its class library during a period preceding Peloton's document collection—there is no reason to believe Peloton's recent searches were inadequate. *See PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027565, at *6 (S.D.N.Y. Dec. 30, 2022) (collecting cases enforcing discovery agreements because a party "cannot now complain about the deal it struck").

Peloton explained its efforts in its June 3 letter to Plaintiffs. Notwithstanding Peloton's numerous objections to Plaintiffs' requests, Peloton conducted additional targeted searches—including for documents containing summaries and analyses of website traffic, documents containing the challenged statements, documents mentioning purported competitors, documents involving non-Peloton parties mentioning class removals, and documents referencing cease-and-desist communications. Peloton also spoke with employees with relevant knowledge; reviewed deposition testimony and exhibits from witnesses with relevant knowledge; and reviewed briefing and exhibits from Plaintiffs' previous class certification motions and Peloton's prior summary judgment motion. This is precisely the kind of thorough discovery undertaking that the Rules contemplate. Nothing further is required.

### b.      Third-Party Data (ROGs 3 and 7; RFAs 40–42; RFPs 59–60)

Plaintiffs' arguments regarding Netlify are unavailing.  As Peloton explained, *see* ECF No. 389 at 3, Netlify is a third-party vendor that had no substantive involvement in Peloton's marketing, and Peloton has no current contractual relationship with, or obligations to, Netlify.  Because Peloton's relationship with Netlify ended well before Plaintiffs served web traffic-related requests, Peloton has no possession, custody, or control over Netlify's information, and has no obligation to request information from Netlify now.  *See Suriel v. Port Auth. of N.Y. & N.J.*, 2023 WL 2727522, at *5–7 (E.D.N.Y. Mar. 31, 2023).  Notably, Plaintiffs do not identify any prior requests that sought website traffic information.  And Plaintiffs wrongly contend that Peloton previously produced "Netlify documents"; rather, a few of Peloton's own documents passingly referenced Netlify.  Regardless, Plaintiffs already obtained and used website traffic information. *See* ECF No. 233 ¶ 41; ECF No. 233-41.  Peloton opposes Plaintiffs' request to subpoena Netlify because Plaintiffs could have pursued this information years ago, and fail to show that allowing a subpoena and further delaying the schedule will have any impact on this case—aside from further prejudicing Peloton.

### c.      Other Requests

Plaintiffs' other objections also fail.  To begin, none of the ROGs Plaintiffs discuss above comply with Local Rule 33.3.  *See* ECF No. 389 at 2 (explaining Plaintiffs' non-compliance). Plaintiffs' pre-motion letter defended their ROGs as contention interrogatories, *see* ECF No. 386 at 3, abandoning any argument that they are otherwise proper under that Rule.  But they are not contention interrogatories, as Judge Liman held.  ECF No. 115 at 2; *see also Pasternak v. Kim*, 2011 WL 4552389, at *3 (S.D.N.Y. Sep. 28, 2011) ("Contention interrogatories should be carefully drafted to obtain 'contentions,' rather than something more appropriately obtained through other discovery methods, such as depositions").

Even though Plaintiffs' interrogatories flout the Local Rules, Peloton nonetheless provided responses in a good-faith effort to avoid burdening the Court.  Responding to ROG 1, Peloton did not only cite a "line from a deposition" that it did not maintain a database of every use of copy. Rather, Peloton's verified response identified four specific webpages that contained the statements, and Peloton's June 3 letter to Plaintiffs identified by Bates number the emails and direct mail advertisements containing this statement.  Peloton has already provided the middle-ground response ("something less than every") that Plaintiffs request.

Plaintiffs similarly mischaracterize Peloton's responses to ROGS 9, 11, and 12.  When responding, Peloton did not claim "no knowledge."  For ROG 9, Peloton stated it did not track or maintain the information requested.  For ROG 11, Peloton provided Bates numbers to specific relevant documents while noting that other information may exist outside of its custody or control. For ROG 12, Peloton explained that the interrogatory included a false assumption and there were no persons with the requested knowledge. And Peloton's Rule 33(d) response to ROG 13 identified all cease-and-desist letters within the requested timeframe that Peloton located after searching its

productions.  Each response satisfies the Rules.  Plaintiffs provide no reason to believe Peloton's searches were inadequate or that new collections would yield different responses.

Regarding RFP 61, Peloton has no obligation to identify responsive documents by Bates number, and Plaintiffs cite no relevant authority.  Peloton cited prior discovery—including RFPs and 30(b)(6) deposition testimony—to illustrate how this request is duplicative of years-old discovery, contravening the Court's instruction that discovery be limited to information not previously sought.  It is inapposite that RFP 24 was served years ago; the information relevant to the class period could not have changed in the intervening years.

***

Plaintiffs' attempts to re-do discovery should be rejected.  Peloton respectfully requests that the Court deny Plaintiffs' requests.

Respectfully submitted,

_s/ Aaron M. Zigler_
Aaron M. Zigler
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
Telephone: (312) 673-8427
aaron@ziglerlawgroup.com

Chuck Dender
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, New York 10017
Telephone: (646) 933-1000
cdender@dicellolevitt.com

Adam J. Levitt
Adam Prom (pro hac vice)
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
aprom@dicellolevitt.com

_s/ Jordan Joachim_
Jordan Joachim
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
Tel: (212) 841-1000
jjoachim@cov.com

Andrew Soukup (*pro hac vice*)
Stephen Petkis (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Tel: (202) 662-6000
asoukup@cov.com
spetkis@cov.com

*Counsel for Defendant Peloton Interactive, Inc.*

Benjamin J. Whiting
Alex J. Dravillas (pro hac vice)
KELLER POSTMAN LLC
150 North Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5222
ben.whiting@kellerpostman.com
ajd@kellerpostman.com

Counsel for Plaintiffs and the Proposed Class

